# EXHIBIT 1

# UNITED STATES DISTRICT COURT

### For The District of Columbia

FELICE I. IACANGELO, et al.

### SUMMONS IN A CIVIL CASE

Plaintiffs

**v.**

MEDSTAR HEALTH, INC., et al.

CASE NUMBER: 1:05CV02086
JUDGE: Paul L. Friedman

Defendants

**TO:** (Name and address of Defendant)

Vance E. Watson, M.D.
4000 Reservoir Road, N.W.
Washington, DC 20007

## YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Anthony G. Newman, Esquire
NEWMAN & McINTOSH
7315 Wisconsin Avenue, Suite 700 E
Bethesda, MD 20814

an answer to the complaint which is served on you with this summons, within **20** days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must
be filed with the Clerk of this Court within a reasonable period of time after service.

**NANCY MAYER-WHITTINGTON**

NOV -7, 2005

_____          _____
CLERK                                                        DATE

_T. Davis_

_____
(By) DEPUTY CLERK

## COMPLAINT

COMES NOW the Plaintiffs, Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of

the Person and Property of Karyn A. Kerris and Karyn A. Kerris' husband Paul Kerris, by and

through her attorneys, Anthony G. Newman, Esq., and Andrew Greenwald, Esq., respectfully

represents as follows:

### COUNT I
*(Medical Negligence - Personal Injury)*

1.    Jurisdiction of this Court is founded on diversity of citizenship.

2.    Felice I. Iacangelo and Cicily A. Iacangelo were duly appointed as Guardians of

the Person and Property of Karyn A. Kerris by the Circuit Court of Montgomery County (28221-

FL) being so appointed on August 11, 2005 .

3.    Plaintiff Paul Kerris is husband of Karyn Kerris, an adult, and a resident of the

State of Maryland.

4.    Upon  information and belief, at all relevant times herein, the Defendants,

Georgetown University, owned, leased, operated, managed, maintained, supervised, and/or did

business as, Georgetown University Hospital, which is a hospital located in and doing business in

the District of Columbia.

5.    Upon information and belief, Georgetown University Hospital's assets and

liabilities were acquired by Defendant MedStar Health, Inc., who now owns and operates said

hospital.  Defendant MedStar Health, Inc., is a corporation incorporated in a jurisdiction other

than the State of Maryland.

6.    At all relevant times herein, Georgetown University Hospital was a duly licensed

-2-

and accredited health care facility, which held itself out to the public as an institution providing legally and ethically approved treatments to its patients, and was competent to provide legally and ethically approved health care services within the District of Columbia.

7. At all relevant times herein, Defendant Vance E. Watson, M.D., was a licensed physician in the District of Columbia who held himself out to the public as a specialist in the field of interventional neuro-radiology.

8. Defendant Vance E. Watson, M.D., is a resident of the District of Columbia.

9. At all relevant times herein, Defendants MedStar Health, Inc., and Georgetown University rendered care to Karyn A. Kerris through its employees, agents and/or servants acting within the scope of their employment, including Defendant Vance E. Watson, M.D.

10. On or about the dates of November 4, 1998, January 13, 1999, and March 3, 1999, Defendant Vance E. Watson, M.D., performed multiple embolizations on Karyn A. Kerris' arteriovenous malformations at the Georgetown University Hospital using a combination of two devices, Histoacryl and Lipiodol.

11. Histoacryl is chemically a n-butyl-cyanoacrylate, a polymer glue that is chemically identical to "Super Glue"™; Lipiodol is a mixture of poppy seed oil mixed with a radio-opaque material.

12. Defendants MedStar Health, Inc. and Georgetown University, through their servants, agents and employees, including Defendant Vance E. Watson, M.D., were negligent in their management, care and treatment of Karyn A. Kerris on November 4, 1998 and continuing thereafter, including but not limited to the following particulars:

     a.   negligent performance of examinations and evaluations;

-3-

b.    negligent decision to perform multiple embolizations on Karyn A. Kerris' vascular anomaly;

c.    negligent decision to perform embolizations utilizing a Class III, medical device that had not been approved and was thus illegal;

d.    negligent performance of embolizations without obtaining an investigational device exemption (IDE), without any other exemption or waiver from the Federal Government or its agencies and without providing notice to said entities of their intent to use such a device;

e.    negligent performance of embolizations on a AVM where the risk of failure outweighed any potential benefit;

f.    negligent technique in compounding a new device using two unapproved illegal Class III devices employed in the performance of the multiple embolizations;

g.    negligent failure to follow the express warnings and/or contraindications found on the manufacturer's package insert regarding the use of Histoacryl;

h.    negligent failure by Defendant Vance Watson, M.D., to submit his use of an "investigational" Class III device to Defendants Georgetown University's research body governing human experimentation and/or Institutional Review Board (IRB) prior to its usage;

i.    negligent supervision and/or monitoring by Defendants MedStar Health, Inc., and Georgetown University of the ordering, invoicing and use of illegal Class III devices by their employees, agents and/or servants, including Vance E. Watson, M.D., on patients within Georgetown University Hospital;

j.    negligent failure by Vance E. Watson, M.D. to follow Georgetown

-4-

University's human experimentation and/or IRB rules and regulations;

        k.     negligent failure to disclose patients in general, and Karyn A. Kerris in particular, that Defendants intended on using a device that had been the subject of a trade alert and had been seized by the FDA prior to its use on Karyn A. Kerris;

        l.     negligent failure to record the embolizations of Karyn A. Kerris by video tape or otherwise, since it was an experiment using human subjects with an unapproved and illegal Class III device;

        m.     negligent failure to document the precise combination and/or strength of Histoacryl and its diluent Lipiodol;

        n.     Defendants were otherwise negligent; and,

        o.     Plaintiffs may also rely on *res ipsa loquitur*.

13.     As a direct and proximate result of the aforesaid negligence of the Defendants, Karyn A. Kerris, suffered serious permanent and disabling damage to her body, including but not limited to: glue particles escaping into eloquent portions of her brain causing: ischemia, brain damage, seizures, hydrocephalus, psychological damages and other neurological and physical impairments leaving her brain damaged and dysfunctional for the remainder of her life. She has suffered, and will in the future suffer, she will endure expenses for medical services and supplies, physical and occupational therapy and testing, careful and frequent psychological and psychiatric evaluation and treatment, as well as for specialized devices required for the activities of daily living. She has suffered and forevermore will suffer a total loss of future earnings, earning capacity, and the ability to lead a normal life. She has endured in the past, and will endure in the future, pain, suffering, disability, humiliation, embarrassment, mental anguish and emotional

-5-

distress. She presently requires and will require around-the-clock care and supervision for the remainder of her life.

14.    Karyn A. Kerris was adjudicated incompetent by the Circuit Court for Montgomery County, MD. As a result of her incompetence, the Circuit Court for Montgomery County, MD appointed Felice I. Iacangelo and Cicily A. Iacangelo, as Guardians of the Person and Property of Karyn A. Kerris. Thus, Karyn A. Kerris did not have and does not have the mental capacity to discover any of the negligent acts and/or omissions contained in this Complaint because after the negligent and illegal embolizations were performed, she became brain damaged, and will forevermore remain so, unable to comprehend or otherwise be cognizant of what had occurred, or what is presently occurring, nor can she express any understanding of said, assuming *arguendo* she had any such understanding, given her inability to communicate.

15.    Defendants' failure to provide proper informed consent as stated below in Count II and Defendants' fraud as set forth below in Count VI, also precluded Karyn A. Kerris from discovering that the device(s) which was/were implanted into the vessels of her brain was/were unapproved and illegal and/or that the Defendants' physician was not authorized to perform embolizations with Histoacryl, thus she could not have discovered, even if she had been mentally competent to discover, the exact nature and extent of the negligent and/or illegal conduct of the Defendants.

WHEREFORE, Plaintiffs Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the

full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT II
### *(Lack of Informed Consent)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

16.   Defendants never disclosed before any of the embolizations had occurred, *inter alia*, their intent to use the unapproved Class III devices, Histoacryl and/or Lipiodol, during the embolizations, in a combination manufactured at the time of the procedure which had never been tested previously and could never be tested and could never again be duplicated, since the concoction and combination of Histoacryl and Lipiodol had neither been precisely measured nor recorded.

17.   Defendants never disclosed that the Histoacryl and Lipiodol which were to be injected into the vessels of Karyn A. Kerris' brain had to be smuggled into the United States since the two devices were not approved by the FDA and had been the subject of an FDA trade alert.

18.   Defendants never described the high failure rates for embolizations utilizing Histoacryl and/or Lipiodol and/or its combination to treat vascular anomalies.

19.   Defendants never disclosed to Karyn A. Kerris the fact that the Histoacryl was to be employed in the vessels of her brain in a manner specifically forbidden by the manufacturer's labeling.

20.   Defendants never disclosed to Karyn A. Kerris the fact that any attempted embolization would have an extremely high risk of failure with catastrophic results.

-7-

21.    Defendants never disclosed to Karyn A. Kerris that the use of unapproved and untested devices, such as Histoacryl and Lipiodol and/or their combination was experimental, never disclosed that their use had not been approved by Georgetown University Hospital's IRB, and never disclosed that approval was required before any experimental procedure could be conducted at the Hospital.

22.    Had Karyn A. Kerris been informed of the aforesaid facts in paragraphs 16 - 21, she would not have consented to the embolizations, because she would have knowledge that: a) the treatments had not received FDA approval; b) the risks and dangers inherent with the use of Histoacryl, and/or Lipiodol, and/or a combination thereof were extremely high; c) the concocted embolization device made up of unknown quantities and strengths of Histoacryl and/or Lipiodol was never previously tested, could not be duplicated, so its efficacy was unknown; d) defendants intended on utilizing unapproved medical devices without IRB oversight; e) defendants were unauthorized to use these devices; f) the illegal devices had unacceptable failure rates; g) their use was contrary to warnings by the manufacturer; and h) any attempted embolization with these devices could have catastrophic results.

23.    Defendant had not authorized and/or created a proper IRB-approved informed consent form for human experimentation that set forth: a) the purpose of the treatment; b) the fact that the decision to use the experimental device was purely voluntary; c) the availability of alternative devices and/or treatments; d) that the use of the experimental device would not be charged to the patient; e) a full description of the risks and benefits of the proposed treatment; f) the number of persons in the study; and g) the failures during present and prior usage; without said information, Karyn A. Kerris could not provide proper consent and the Defendants were

thus not authorized to provide said treatments.

WHEREFORE, Plaintiff Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT III
### (Strict Products Liability)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

24.    A Class III device is one for which the Food and Drug Administration ("FDA") does not have "reasonable assurance" of its "safety and effectiveness." See 21 U.S.C. § 360e(a).

25.    A Class III device is unreasonably dangerous requiring restrictions on its use and those that are authorized to use it.

26.    At all relevant times herein, Histoacryl and Lipiodol were Class III artificial embolization devices as defined by 21 CFR Ch.1 § 882.5950.

27.    The only acceptable process by which Class III devices can be marketed in the United States is by an approved application to the FDA, known as an application to obtain Pre-Market Approval (PMA) or pursuant to a §510(k)(substantial equivalence) application. See 21 U.S.C. § 360c(a)(II).

28.    No application for PMA was filed with the FDA, and no PMA was obtained at anytime prior to the date of Defendants' attempted embolization of Karyn A. Kerris.

29.    The only exemption which allows a physician and/or a hospital to treat a patient with

a Class III device is an investigational device exemption (IDE).  See 21 U.S.C. § 360j(g)(1).

30.  An application to obtain an IDE was never submitted by any Defendant.

31.  The application for IDE which was submitted by other practioners prior to the embolizations at issue had been denied and/or withdrawn.

32.  21 U.S.C. § 351(f)(1)(B)(I) defines a Class III device that does not have an approved, "application for Pre-Market Approval," as adulterated.

33.  21 U.S.C. § 352(q) defines a Class III device that is "used in violation of regulations," as misbranded.

34.  At all relevant times herein, Defendants MedStar Health, Inc., Georgetown University, acting by and through its agents, servants and/or employees, including but not limited to Defendant Vance E. Watson, M.D., combined two devices, Histoacryl (a Class III device) and Lipiodol or some other diluent, Class III devices, thereby compounding, creating and manufacturing a new "medical device" which Plaintiffs will hereafter refer to as "Histadol". This "medical device" was defectively designed and unreasonably dangerous, in that, *inter alia*:

a.  "Histadol" was manufactured without any specifications, controls and/or safe manufacturing procedures;

b.  "Histadol" was manufactured without any record keeping to permit reconstruction of its components and the percentage of each component;

c.  "Histadol" was designed for use contrary to the instructions provided by the manufacturer of the Histoacryl, one of its component parts;

d.  "Histadol" was never submitted for approval to the Food and Drug Administration (FDA);

e.  none of the component parts of "Histadol" were approved by the FDA for

-10-

internal use; and,

    f.    injecting "Histadol" into the brain, in the combination used at the time at issue, had never been formally tested.

35.    The defect in "Histadol" - the combined compound of Histoacryl and Lipiodol - existed when on or about November 4, 1998, and on each occasion it was used thereafter by Defendant Vance E. Watson, M.D., when he attempted to embolize an arteriovenous malformation (AVM) found in the Karyn A. Kerris.

36.    "Histadol" - the combination of Histoacryl and Lipiodol, or another diluent - was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it or by a member of the general public who uses it with ordinary knowledge common to the community as to its characteristics.

37.    Defendants MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., failed to warn purchasers and users, including the named Plaintiffs, of the unreasonably dangerous, defective and/or unadulterated condition of "Histadol" the device it created for injection into the human body.

38.    At no time herein did Karyn A. Kerris have the ability to use the "Histadol" compound in a manner other than what was intended by Defendants since she had no control over, or knowledge of, the device prior to its being injected into her brain.

39.    As a direct and proximate result of the Defendants' use of the aforesaid device, the Estate of Karyn A. Kerris, suffered injuries and damages as set forth above.

    WHEREFORE, Plaintiff Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full

-11-

sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT IV
*(Breach of Implied Warranty of Fitness for a Particular Purpose)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

40.    At all relevant times herein, Defendants were aware of the particular purpose for which Karyn A. Kerris would receive "Histadol" and its component parts, Histoacryl with Lipiodol, and/or some other diluent namely for the purpose of attempting to embolize Karyn A. Kerris' arteriovenous malformations (AVM).

41.    At all relevant times herein, Defendants, acting by and through their agents, servants, and/or employees, impliedly and/or by operation of law warranted that the medical device, "Histadol", was reasonably fit and suitable for the particular purpose for which Karyn A. Kerris was receiving it.

42.    Defendants, acting by and through their agents, servants, and/or employees, breached the implied warranty of fitness for a particular purpose by designing, producing, assembling, selling, and/or otherwise distributing the medical device, "Histadol", at issue in an unreasonably dangerous, defective and/or adulterated condition, as set forth above.

43.    As a direct and proximate result of the Defendants' use of the aforesaid product, Plaintiffs Felice I. Iacangelo and Cicily A. Iacangelo, as Guardians of the Person and Property of Karyn A. Kerris and Paul Kerris, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiff Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc.,

-12-

Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT V
### (Breach of Express Warranties)

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

44.     At all relevant times herein, Defendants, acting by and through their agents, servants, and/or employees, expressly warranted to the Karyn A. Kerris and Paul Kerris that the "medical device" at issue was reasonably fit and safe for the intended, ordinary, foreseeable, and particular purpose of being injected and embolizing Karyn A. Kerris' arteriovenous malformation (AVM).

45.     At all relevant times herein, Defendants' express representation to Karyn A. Kerris was the basis of the bargain between the Defendants, and Karyn A. Kerris, in that, *inter alia*, Karyn A. Kerris would not have agreed, that the medical device be injected into her body, but for Defendant's representation that it was reasonably safe and effective.

46.     Defendants, acting by and through their agents, servants, and/or employees, breached the express warranty of fitness for a particular purpose by designing, producing, assembling, selling, and/or otherwise distributing the medical device at issue in an unreasonably dangerous, defective and/or adulterated condition, as set forth above.

47.     As a direct and proximate result of the Defendants aforesaid product, Karyn A. Kerris and Paul Kerris, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar

-13-

Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT VI
*(Fraud)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above, and further state as follows:

48.    Defendant Vance E. Watson, M.D., acting individually and/or as the agent, servant and/or employee of Defendants MedStar Health, Inc., and Georgetown University, made and/or fraudulently withheld representations of material facts which were false and/or the falsity of what was known or should have been known to Defendants at the time the representations were made.

49.    Defendants' fraud included, but was not limited to, failing to advise the Karyn A. Kerris that:

a.    Defendants intentionally did not seek and/or obtain approval from the FDA to use the experimental devices, Histoacryl and Lipiodol or provide the FDA with notice of its use; Defendant did not advise Karyn A. Kerris of that fact;

b.    Defendant Vance E. Watson, M.D. did not seek and/or obtain an IDE for use of these experimental devices;

c.    the illegal status of Histoacryl and/or Lipiodol;

d.    that an untested illegal product would be injected into the vessels of her brain;

e.    the device intended to be inserted into the Karyn A. Kerris was to be extemporaneously manufactured by Defendant Vance E. Watson, M.D. in the operating room, by combining Histoacryl with a diluent such as Lipiodol, and that the precise combination of diluent and

-14-

Histoacryl had not been determined, and had never been tested at the time of, or at any time before, the manufacture and/or use of the product manufactured during the procedure.

     f.    the treatments were not curative and were at best paliative.

50.    The representations and/or omissions were made by Defendants for the purpose of defrauding Karyn A. Kerris and Paul Kerris.

51.    Defendants knew or should have known that the Karyn A. Kerris and Paul Kerris would rely upon said representations and/or omissions and that said representations and/or omissions were material to a knowing and intelligent decision.

52.    Based on the special relationship which exists between Karyn A. Kerris and Paul Kerris and each Defendant, Defendants had a duty to disclose the information concealed from Karyn A. Kerris and Paul Kerris.

53.    Defendants' deceptive practices concealed, *inter alia:* the truth about the legal status of the components and the combination of components of the device Defendants intended to manufacture and insert into Karyn A. Kerris; how they were being unlawfully acquired, combined, and injected into her as well as the truth about the potential for "success" of the procedures.

54.    As a direct and proximate result of the Defendants' fraud, Karyn A. Kerris and Paul Kerris, suffered injuries and damages as set forth above.

WHEREFORE, Plaintiffs Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris and Paul Kerris, demand judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

## COUNT VII
*(Consortium Claim of Paul Kerris)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

55.    Karyn A. Kerris and Plaintiff Paul Kerris, were at all relevant times, and remain to this day, husband and wife.

56.    As a result of the severe injuries suffered by Karyn A. Kerris, her spouse Paul Kerris, has suffered mental anguish, and emotional pain and suffering, from the loss of services, society, companionship and consortium of his spouse, as well as other related damages.

WHEREFORE, Plaintiff Paul Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of One Million Dollars ($1,000,000.00) plus costs and interest.

## COUNT VIII
*(Breach of Fiduciary Obligations)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

57.    At all relevant times herein, Defendant Vance E. Watson, M.D., owed a fiduciary duty to Karyn A. Kerris to, *inter alia,* use only approved medical devices and/or be authorized to use unapproved devices.

58.    Vance E. Watson, M.D. and Georgetown University, breached their fiduciary duty of loyalty and care to Karyn A. Kerris and the duty to, at all times, act in good faith and in the best interests of the Plaintiff, abide by the Hippocratic oath of loyalty, care and to do no harm to her.

59.    Defendant, Vance E. Watson, M.D., owed fiduciary duty to each individually,

-16-

jointly and severally to, *inter alia*, utilize only medical devices that were approved and/or which were legally authorized to utilize and/or which had a reasonable chance for success versus its risk.

60. Defendant, Georgetown University and Defendant MedStar Health, Inc., who assumed Georgetown's liabilities, breached their fiduciary duty of loyalty and care and to act in good faith and in the best interests of the Karyn A. Kerris by, *inter alia*:

a) Failing to disclose the risks associated with each embolization.

b) Failing to disclose that the medical device utilized would include the use of cyanoacrylate, and that was a device which the manufacturer specifically warned against using internally and specifically, in the area of the brain.

c) Failing to disclose that the cyanoacrylate and its diluent were Class III medical devices which required a physician to have sought and obtained an exemption prior to employing its use.

d) Failing to reveal Defendant Vance E. Watson, M.D.'s failure rates utilizing cyanoacrylates when he had previously attempted embolization with this medical device.

e) Failing to disclose that Histoacryl and Lipiodol were not approved medical devices.

f) Failing to disclose the Defendant Vance E. Watson, M.D., intended to manufacture a totally new, previously untested medical device and insert it into Karyn A. Kerris.

g) Failing to disclose that the medical device Defendant Vance E. Watson, M.D., manufactured could not be duplicated and efficacy tested accuracy.

h) Failing to fulfill its responsibility pursuant to 21 CFR Sections 50 & 56 to establish an IRB and/or implement appropriate procedures to protect subjects in experimentation.

-17-

i)      Failing to disclose the high risk and low benefit of the proposed

embolizations.

61.    Defendant Vance E. Watson, M.D., breached his fiduciary duties with Co-

Defendant Georgetown University Hospital, by *inter alia*:

a)      Failing to notify the hospital that the United States Government had issued a

trade alert regarding cyanoacrylate to stop its importation into the United States of America.

b)      Failing to notify the Defendant hospital of his procurement of cyanoacrylate

by smuggling it into the United States from Canada despite the existence of a trade alert.

c)      Failing to disclose that his intention was to use a cyanoacrylate in a manner

specifically prohibited by the manufacturer according to the package insert.

d)      By failing to disclose that he intended to use a cyanoacrylate by combining it

with Lipiodol (or some other Class III diluent) at the time the procedure was to be performed,

thereby manufacturing a totally new product.

e)      Failing to disclose that the precise combination of cyanoacrylate and

Lipiodol (or another diluent) had never previously been manufactured before and therefore could

not have been tested in advance of utilizing it during the procedures at issue nor could it be re-

created for testing subsequent to the procedure at issue.

f)      By failing to report his failure rate and other consequences of using

cyanoacrylate as an embolization device.

g)      Failing to disclose the high risk and low benefit of the proposed

embolizations.

62.    Defendant Georgetown University acting by and through its actual and/or apparent

agents, servants and/or employees breached their fiduciary duty to Karyn A. Kerris in that

-18-

Defendants, *inter alia*, intentionally, recklessly and/or negligently failed to provide proper custodial care, treatment and supervision to her to, *inter alia*, insure that only medical devices which were approved, or for which an exemption had been provided and used by authorized personnel had been utilized and that any and all use of cyanoacrylate was done in a completely ethical, and procedurally and legally appropriate manner.

63.    As a direct and proximate result of the aforesaid breaches of the fiduciary duty by the Defendant Vance E. Watson, M.D., and/or Georgetown University Karyn A. Kerris suffered severe and permanent injuries and great pain of body and mind, as set forth above.

WHEREFORE, Plaintiffs Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of Thirty Million Dollars ($30,000,000.00) plus costs and interest.

### COUNT VIII
*(Punitive Damages)*

Plaintiffs re-plead and incorporate by reference herein each and every allegation set forth above and further state as follows:

64.    Defendants MedStar Health, Inc., (individually, and by assuming the liabilities of Defendant Georgetown University) and Georgetown University, acting by and through their agents, servants and/or employees, including their administrators, board of directors, financial directors, purchasing department and staff physicians, including Defendant Vance E. Watson, M.D. willfully, maliciously and fraudulently injected and/or allowed the injection into patients' cerebral blood vessels, of unapproved and un-exempted Class III devices to wit: Histoacryl and the combination of Histoacryl with Lipiodol, or some other diluent, on multiple occasions, including into Plaintiff, with

-19-

full knowledge that the devices' safety and/or the effectiveness had never been and could not be tested.

65.    Defendants recklessly and wantonly permitted Vance E. Watson, M.D. to obtain the component parts necessary to manufacture "Histadol" and then to manufacture and inject the product described above.

66.    Defendants when they repeatedly ratified the conduct of Defendant Vance E. Watson, M.D. by continuing to order, purchase and stock and provide the component parts of "Histadol" with the knowledge that they would be mixed in an unscientific fashion and injected into patients, including Karyn A. Kerris.

67.    Defendants intentionally performed all of the aforesaid without any provision for review of Vance E. Watson, M.D.'s manufacturing process, method of performance when utilizing the product and/or success/failure rate and/or an analysis of the reasons therefore.

WHEREFORE, Plaintiff Felice I. Iacangelo and Cicily A. Iacangelo as Guardians of the Person and Property of Karyn A. Kerris, demands judgment of and against Defendants, MedStar Health, Inc., Georgetown University, and Vance E. Watson, M.D., jointly and severally, in the full sum of One Hundred Million Dollars ($100,000,000.00) plus costs and interest.

Anthony Newman, Esquire
NEWMAN & McINTOSH
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814
(301) 654-3400

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, ) | |
| As Guardian of the Person and Property of ) | |
| KARYN A. KERRIS, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 1:05CV02086 |
| ) | |
| MEDSTAR HEALTH, INC. d/b/a/ ) | Judge Paul L. Friedman |
| Georgetown University Hospital, ) | |
| GEORGETOWN UNIVERSITY, t/a ) | |
| Georgetown University, and ) | |
| VANCE E. WATSON, M.D., ) | |
| ) | |
| **Defendants.** ) | |

## DECLARATION OF ELIZABETH A. SIMPSON, ESQ.

I, Elizabeth A. Simpson, Esq., hereby declare and state as follows:

1.      My name is Elizabeth A. Simpson. I am over the age of 18, and am otherwise competent and authorized to make and give this Declaration in connection with the above numbered and entitled case. I have personal knowledge of the facts set forth below. The statements set forth in this Declaration are true and correct based upon information and belief.

2.      I am currently employed at MedStar Health, Inc. as Vice-President and Deputy General Counsel.

3.      MedStar Health, Inc. is a corporation incorporated in the state of Maryland.

4.      MedStar Health, Inc.'s primary place of business is 5565 Sterrett Place, 5th Floor, Columbia, Maryland 21044.

I declare under penalty of perjury that the foregoing is true and correct.


Elizabeth A. Simpson
Vice-President and Deputy General Counsel for MedStar Health, Inc.


Executed on: December 28, 2005