8).    It is my opinion, to a reasonable degree of medical certainty, and in fact, to absolute certainty, that the use of Histoacryl inside the intima and media of a blood vessel in the manner in which Vance E. Watson, M.D. injected the glue into Karyn Kerris,  was forbidden by the expressed warnings found in the package inserted generated by its manufacturer i.e., "Histoacryl must not be used for closing wounds to internal organs or on the surface of the brain...[a]dministration to the intima and media of blood vessels should also be avoided on account of the risk of thrombosis and damage to the vascular wall]."

9).    It is my opinion, to a reasonable degree of medical certainty, that use of unapproved Class III devices by Vance E. Watson, M.D., without valid PMA or IDE, without review by an IRB, and in opposition to the manufacturers' warnings is a violation of the standard of care, hospital's standards, Federal law and Georgetown's IRB policies and procedures.

10).    In the absence of FDA authorization to use Histoacryl, and in the absence of any review by an IRB, Georgetown University had a duty to protect its patients, and in the exercise of that duty should not have allowed Vance E. Watson, M.D. to inject Histoacryl into any patient, including Karyn Kerris.  By allowing Vance E. Watson, M.D., to do so Georgetown University violated the standard of care, JCAH regulations, Federal law, and its own IRB policies and procedures.

11).    It is my opinion to a reasonable degree of medical certainty that Defendants' three general "consent" forms titled  "Consent for Surgery, Anesthetics, and Other Medical Services" failed to provide Karyn Kerris with proper informed consent for it failed to contain the following basic elements:

a.    Research Statement:

3

(i)   A statement that the use of the device involves research.
(ii)  An explanation of the purpose of the research including its long-term goal.
(iii) An explanation of the expected duration of subject's participation.
(iv)  A description of what procedures will be followed.
(v)   Identification of any procedures that are experimental.

b.   Reasonable Forseeable Risks or Discomforts associated with the use of the device.
c.   Reasonably Expected Benefits to Subjects or Others.
d.   Appropriate Alternatives.
e.   Extent of Confidentiality.
f.   Compensation or Treatment for Injury.
g.   Contact Information.
h.   Voluntary Participation Statement.

(these are identical elements of informed consent found in defendant Georgetown's Institutional Review Board Policies & Procedures Manual ch.12). In addition, the forms were deficient in failing to: inform Ms. Kerris of the "significant risks" associated with Histoacryl and Lipiodol and its mixture; identify the actual devices to be used a statement that they were unapproved; mention that the devices had to be obtained through Canada since they were the subject of a Trade Alert; and explain why the devices' use was merely theoretical. Failure to do the aforesaid was a violation of the standard of care.

12).   It is my opinion, to a reasonable degree of medical certainty, that the comments found in the Declaration of Vance E. Watson, M.D., regarding his communication with Karyn Kerris, even if true, did not provide adequate informed consent in that said statements did not explain the aforesaid (#11) nor did they appear in any written document for the patient to review and execute.

13).   It is my opinion, to a reasonable degree of medical certainty, based on the statements of Vance E. Watson, M.D. that no patient, who is not a subject of human experimentation in an IRB approved research, should be subjected to a procedure that is merely a

4

"theory" with "significant risks" without any benefit to "cure" their potentially life threatening condition, thus the use of Class III devices in this case was at best human experimentation.

14).    It is my opinion, to a reasonable degree of medical certainty, that the use by Vance E. Watson, M.D. and Georgetown University of the unapproved devices (Histoacryl and Lipiodol) does not fall under the exemption of 21 USC §360(g)(2) in that section only exempts practitioners use of devices that they are "licensed by law to ... administer".  No practitioner is "licensed by law to ... administer" unapproved devices.

15).    It is my opinion, to a reasonable degree of medical certainty that if Felice Iacangelo, Cicily Iacangelo and Paul Kerris had been told by Vance. E. Watson, M.D., that the embolizations likelihood of success was "95%," that Vance E. Watson, M.D. made an express warranty to Karyn Kerris related to the success of the procedures.

_____
Arthur Kaufman, M.D.


STATE OF MARYLAND          :
                                               : ss
COUNTY OF MONTGOMERY   :


        Arthur Kaufman, M.D., personally appeared before me, a Notary Public, for the State of Maryland, Montgomery County, on this 13th day of March , 2006.

_____
Notary Public

My Commission Expires: _01/01/09_____



DAPHNE L. HALLAS
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires January 1, 2009