# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, | ) | |
| As Guardian of the Person and Property of | ) | |
| KARYN A. KERRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05CV02086 |
| | ) | |
| Georgetown University Hospital, | ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a | ) | |
| Georgetown University, and | ) | |
| VANCE E. WATSON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO
## PLAINTIFFS' STATEMENT OF MATERIAL FACTS AT ISSUE

Defendants, Georgetown University and Vance E. Watson, M.D., (hereinafter, collectively referred to as "defendants"), by and through undersigned attorneys, hereby submit this Response to Plaintiffs' Statement of Material Facts At Issue to highlight that plaintiffs' facts are irrelevant or unsupported by evidence in the record. Additionally, failing to cite to any citations to the record pursuant to F.R.C.P. 56(e), defendants respect submit that summary judgment should be entered in their favor.

**a. General Issues not Related to IRB**

1. Whether Vance E. Watson, M.D., informed Mrs. Kerris or her family that Histoacryl and Lipiodol were unapproved Class III devices.

**Irrelevant and Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is

irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of all material facts regarding the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

2. Whether Vance E. Watson, M.D. informed Mrs. Kerris or her family that the substances were illegal and had to be procured from Canada.

**Irrelevant and Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was

informed of all material facts regarding the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

3.   Whether Vance E. Watson, M.D. informed Mrs. Kerris or her family that the use of Histoacryl® and Lipiodol® for her symptoms was, "only a theory with significant, great risks."

**Irrelevant and Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of the information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of the complications and risks of the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show

3

that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

4. Whether Vance E. Watson, M.D., informed Mrs. Kerris or her family that he had used Histoacryl and Lipiodol in the past with at least a 50% mortality.

**Irrelevant and Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of the information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of all material facts regarding the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure, including discussions regarding his past experience performing embolizations with the substances. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a

negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

5. Whether Vance E. Watson, M.D., informed Mrs. Kerris or her family that the use of Histoacryl and Lipiodol would not treat her AVM, her "risk of hemorrhage."

**Irrelevant and Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of all material facts regarding the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure, including that it would not address her risk of hemorrhage. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

5

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

6.  Whether any patient, including Mrs. Kerris, could provide informed consent to a procedure that was merely a theory with significant, great risks, with at least a 50% mortality rate.

**Irrelevant and Unsupported by Any Evidence in the Record.**  The undisputed proof in the record is that Ms. Kerris was fully informed.  District of Columbia law does not allow trials on lack of informed consent cases to turn into referendums on whether procedures are too risky for any patient to give consent – particularly in a case where the patient's choice was between certain decline and the possibility of a reprieve.  The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed.  The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit.  Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

**b.  Related to IRB**

7.  Whether Vance E. Watson, M.D. and Georgetown University Hospital created a consent form that was consistent with Georgetown University Institutional Review Board Policies and Procedures manual for the treatment of a patient with a device that carried substantial and/or great risks.

**Irrelevant.**  As shown by plaintiffs' pleadings, the IRB is only concerned with the clinical investigations.  Plts. Opp. at 11.  The IRB consent form requires a "statement that the

use of the device involves research" as well as an "explanation of the purpose of the research including its long-term goal" and an "explanation of the expected duration of a subject's participation." *Id.* at 12.  Neither the record, nor plaintiffs' Amended Complaint contains support for the idea that a clinical study, research or investigation is at issue in this case.  Ms. Kerris was not a subject in a study, and therefore, all of plaintiffs' allegations regarding the IRB and its procedures are inapplicable.

Therefore, no genuine dispute of material fact exists.

8.   Whether Georgetown University Hospital's IRB would have authorized Vance E. Watson, M.D.'s use of Histoacryl.

**Irrelevant.**  As shown by plaintiffs' pleadings, the IRB is only concerned with the clinical investigations. Plts. Opp. at 11.  The IRB consent form requires a "statement that the use of the device involves research" as well as an "explanation of the purpose of the research including its long-term goal" and an "explanation of the expected duration of a subject's participation." *Id.* at 12.  Neither the record, nor plaintiffs' Amended Complaint contains any support for the idea that a clinical study, research or investigation is at issue in this case.  Ms. Kerris was not a subject in a study, and therefore, all of plaintiffs' allegations regarding the IRB and its procedures are inapplicable.

Therefore, no genuine dispute of material fact exists.

9.   Whether Georgetown University Hospital's IRB could have created an adequate informed consent document given the issues in this matter.

**Irrelevant.**  As shown by plaintiffs' pleadings, the IRB is only concerned with the clinical investigations. Plts. Opp. at 11.  The IRB consent form requires a "statement that the use of the device involves research" as well as an "explanation of the purpose of the research

7

including its long-term goal" and an "explanation of the expected duration of a subject's participation." *Id.* at 12. Neither the record, nor plaintiffs' Amended Complaint contains any support for the idea that a clinical study, research or investigation is at issue in this case. Ms. Kerris was not a subject in a study, and therefore, all of plaintiffs' allegations regarding the IRB and its procedures are inapplicable.

Therefore, no genuine dispute of material fact exists.

## STATEMENT OF FACTS AT ISSUE REGARDING EXPRESS WARRANTY

10. Whether Vance E. Watson, M.D., made an express guarantee to Mrs. Kerris that the embolization had a 95% chance of being successful.

**Irrelevant as Stated and Unsupported by Any Evidence in the Record and No Facts can be Developed through Discovery to Support It.** The issue is not whether words understood by others to be a guarantee were uttered, but whether 1) Ms. Kerris understood it to be a guarantee and 2) Ms. Kerris relied on the words in deciding to undergo the embolization; and 3) Ms. Kerris was injured as a result of her reliance on the words. The only evidence in the record as to what was represented to Ms. Kerris is her contemporary acknowledgment that no guarantees had been made to her and Dr. Watson's statement under oath that no such guarantee was given. Exs. 4, 6, 8, 10, and 15 to Defs. SOF. Ms. Kerris cannot provide evidence as to whether a guarantee was in fact given to her and whether she relied upon it in deciding to have the embolizations.

Therefore, no genuine dispute of material fact exists.

11. Assuming the truth of the Declaration of Vance E. Watson, M.D., whether any patient could provide adequate informed consent to a procedure when the chances of success was merely

a theory, the only offered documented success rate was at most 50% and if they survived they had a substantial chance of neurologic damage.

**Irrelevant and Unsupported by Any Evidence in the Record.** The undisputed proof in the record is that Ms. Kerris was fully informed. District of Columbia law does not allow trials on lack of informed consent claims to turn into referendums on whether procedures are too risky for any patient to give consent – particularly in a case where the patient's choice was between certain decline and the possibility of a reprieve. The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

12. Whether an executed boiler plate informed consent form, entitled, "Consent for Surgery, Anesthetics and Other Medical Services," was adequate to perform the embolization.

**Irrelevant and Unsupported by Any Evidence in the Record.** The undisputed proof in the record is that Ms. Kerris was fully informed. District of Columbia law does not allow trials on lack of informed consent claims to turn into referendums on consent forms in general. The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit.

Therefore, no genuine dispute of material fact exists.

13. Assuming the truth of the Declaration of Vance E. Watson, M.D., whether his statements and the executed boiler plate informed consent forms were sufficient to provide Mrs. Kerris informed consent.

**Irrelevant and unsupported by the record.** The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Ms. Kerris cannot provide evidence as to whether or not she felt fully informed when she consented to the embolizations. The only evidence in the record from her is that she felt that she was. District of Columbia law does not allow trials on lack of informed consent cases to turn into referendums on consent forms in general. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

Therefore, no genuine dispute of material fact exists.

14. Assuming the truth of the Declaration of Vance E. Watson, M.D., whether his statements and an executed boiler plate informed consent form, entitled, "Consent for Surgery, Anesthetics and Other Medical Services," was sufficient if it was not in writing.

**Irrelevant.** The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF. The undisputed proof in the record is that Ms. Kerris was fully informed.

10

Ms. Kerris cannot provide evidence as to whether or not she felt fully informed when she consented to the embolizations. The only evidence in the record from her is that she felt that she was. Exs. 4, 6, 10, and 15 to Defs. SOF. District of Columbia law does not allow trials on lack of informed consent claims to turn into referendums on consent procedures in general. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

Therefore, no genuine dispute of material fact exists.

15. Whether a specialized consent approved by an IRB and contains all the elements required by Georgetown University's Institutional Review Board Policies and Procedures Manual B Ch. 12 a-h was required.

**Irrelevant.** As shown by plaintiffs' pleadings, the IRB is only concerned with the clinical investigations. Plts. Opp. at 11. The IRB consent form requires a "statement that the use of the device involves research" as well as an "explanation of the purpose of the research including its long-term goal" and an "explanation of the expected duration of a subject's participation." *Id.* at 12. Neither the record, nor plaintiffs' Amended Complaint contains any support for the idea that a clinical study, research or investigation is at issue in this case. Ms. Kerris was not a subject in a study, and therefore, all of plaintiffs' allegations regarding the IRB and its procedures are inapplicable. The only issue in the case is whether the patient, Ms. Kerris, consented to the procedures when informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

11

Therefore, no genuine dispute of material fact exists.

## STATEMENT OF MATERIAL FACTS DEFENDANT'S HAVE PLACED AT ISSUE REGARDING THE FOOD DRUG AND COSMETIC ACT

Paragraphs 16 through 20 are irrelevant and immaterial as 21 U.S.C. § 377 does not allow private litigants to bring suits based on alleged violations of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*

## STATEMENT OF MATERIAL FACTS DEFENDANTS HAVE PLACED AT ISSUE REGARDING THE STATUS OF DEFENDANTS AS MANUFACTURERS

21. Defendants initiated the introduction into interstate commerce of two unapproved devices Histoacryl® and Lipiodol® which would not have been in interstate commerce by for their negligent action.

This is a statement of law, not a statement of fact. Per *Fisher v. Sibley Memorial Hospital,* 403 A.2d 1130 (D.C. 1979); *Brandt v. Sarah Bush Lincoln Health Center,*    329 Ill.App.3d 348, 352 (    Ill.App. 4 Dist., 2002). *Nevauex v. Park Place Hosp., Inc.,* 656 S.W.2d 923 (Tex.Ct.App.1983); *Vergott v. Deseret Pharmaceutical Co., Inc.,* 463 F.2d 12 (5th Cir.1972); *North Miami General Hosp., Inc. v. Goldberg,* 520 So.2d 650 (Fla.Dist.Ct.App.1988); *Silverhart v. Mt. Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971), neither GUH, nor Dr. Watson are manufacturers, distributors or sellers under the law.

Therefore, no genuine dispute of material fact exists.

22. Defendants manufactured Histadol, a misbranded and mislabeled device made from the combination of two other misbranded and mislabeled and mislabeled devices, Histoacryl and Lipiodol on multiple occasions over a period of years selling their product along with its implantation to patients of the Washington metropolitan area.

12

This is a statement of law, not a statement of fact. Only the FDA determines whether something is mislabeled or misbranded. *International Union of Bricklayers and Allied Craftworkers v. Insurance Co. of The West*, 366 F.Supp.2d 33, 39 fn. 4 (D.D.C. 2005). Per *Fisher v. Sibley Memorial* Hospital, 403 A.2d 1130 (D.C. 1979); *Brandt v. Sarah Bush Lincoln Health Center*, 329 Ill.App.3d 348, 352 ( Ill.App. 4 Dist., 2002). *Nevauex v. Park Place Hosp., Inc.,* 656 S.W.2d 923 (Tex.Ct.App.1983); *Vergott v. Deseret Pharmaceutical Co., Inc.,* 463 F.2d 12 (5th Cir.1972); *North Miami General Hosp., Inc. v. Goldberg,* 520 So.2d 650 (Fla.Dist.Ct.App.1988); *Silverhart v. Mt. Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971), neither GUH, nor Dr. Watson are manufacturers, distributors, or sellers under the law.

Therefore, no genuine dispute of material fact exists.

23. Defendants were part of the distribution process and introduced unapproved devices into the stream of commerce.

This is a statement of law, not a statement of fact. Per *Fisher v. Sibley Memorial* Hospital, 403 A.2d 1130 (D.C. 1979); *Brandt v. Sarah Bush Lincoln Health Center*, 329 Ill.App.3d 348, 352 ( Ill.App. 4 Dist., 2002). *Nevauex v. Park Place Hosp., Inc.,* 656 S.W.2d 923 (Tex.Ct.App.1983); *Vergott v. Deseret Pharmaceutical Co., Inc.,* 463 F.2d 12 (5th Cir.1972); *North Miami General Hosp., Inc. v. Goldberg,* 520 So.2d 650 (Fla.Dist.Ct.App.1988); *Silverhart v. Mt. Zion Hospital,* 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971), neither GUH, nor Dr. Watson are manufacturers, distributors or sellers under the law.

Therefore, no genuine dispute of material fact exists.

24. Defendants are strictly responsible for Histodol and thus are responsible for any and all warranty claims as its manufacturer.

13

This is a statement of law, not a statement of fact.  Per *Fisher v. Sibley Memorial Hospital*, 403 A.2d 1130 (D.C. 1979); *Brandt v. Sarah Bush Lincoln Health Center*,    329 Ill.App.3d 348, 352 (    Ill.App. 4 Dist., 2002).  *Nevauex v. Park Place Hosp., Inc.*, 656 S.W.2d 923 (Tex.Ct.App.1983); *Vergott v. Deseret Pharmaceutical Co., Inc.*, 463 F.2d 12 (5th Cir.1972); *North Miami General Hosp., Inc. v. Goldberg*, 520 So.2d 650 (Fla.Dist.Ct.App.1988); *Silverhart v. Mt. Zion Hospital*, 20 Cal.App.3d 1022, 98 Cal.Rptr. 187 (1971), neither GUH, nor Dr. Watson are manufacturers under the law.

Therefore, no genuine dispute of material fact exists.

## STATEMENT OF MATERIAL FACTS REGARDING FRAUD

25. Whether Vance E. Watson, M.D. concealed the fact that the devices Histoacryl® and Lipiodol® were unapproved and subject to a trade alert requiring their procurement from Canada.

**Irrelevant and Unsupported by Any Evidence in the Record.**  Plaintiffs have no evidence to support this allegation.  The only evidence in the record is undisputed that Dr. Watson informed Ms. Kerris that Histoacryl and Lipiodol were unapproved and that she might have to write a "Letter of Need" to obtain the substances from Canada. Ex. 8 to Defs. SOF.  The undisputed evidence is that Ms. Kerris was fully informed.  Exs. 4, 6, 8, 10, and 15 to Defs. SOF.  The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. *Id.*

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

14

26. Whether Vance E. Watson, M.D. concealed the experimental nature of his compound made up of Histoacryl® and Lipiodol® and the fact that he had only had a 50% success rate with the procedure.

**Irrelevant and Unsupported by Any Evidence in the Record.** Plaintiffs have no evidence to support this allegation. The only evidence in the record is undisputed that Dr. Watson informed Ms. Kerris of his past experience with embolizations with Histoacryl and Lipiodol. Ex. 8 to Defs. SOF. The undisputed evidence is that Ms. Kerris was fully informed. Exs. 4, 6, 10, and 15 to Defs. SOF. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. *Id.*; Ex. 8 to Defs. SOF.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

27. Whether Vance E. Watson, M.D. concealed the fact that the importation and use of Histoacryl® and Lipiodol® was illegal.

This is a statement of law, not a statement of fact. Only the FDA determines whether the use of a substance is "illegal." *International Union of Bricklayers and Allied Craftworkers v. Insurance Co. of The West*, 366 F.Supp.2d 33, 39 fn. 4 (D.D.C. 2005). The undisputed evidence is that Ms. Kerris was fully informed. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. Exs. 4, 6, 8, 10, and 15 to Defs. SOF.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

28. Whether Vance E. Watson, M.D. misled Mrs. Kerris into believing that the embolization was legal, non-experimental and had a 95% success rate.

**Unsupported by Any Evidence in the Record.** Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of the complications and risks of the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

30. Whether Vance E. Watson, M.D. concealed the fact that he did not seek or obtain FDA approval for the use of Histoacryl® and Lipiodol®.

This includes an assumed statement of law. Only the FDA determines whether one must seek or obtain an FDA approval. *International Union of Bricklayers and Allied*

16

*Craftworkers v. Insurance Co. of The West*, 366 F.Supp.2d 33, 39 fn. 4 (D.D.C. 2005). The undisputed evidence is that Ms. Kerris was fully informed, including the fact that Histoacryl and Lipiodol were not approved. Exs. 4, 6, 8, 10, and 15 to Defs. SOF. The undisputed facts in the record are that she did consent – as evidenced by her four executed consent forms – and that Dr. Watson informed her of all material facts concerning the procedure – as evidenced by his affidavit. *Id.*

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

31.     Whether Vance E. Watson, M.D. concealed the fact that the combination of devices to be injected was untested and its safety and efficacy were unknown.

**Unsupported by Any Evidence in the Record.** Only Ms. Kerris could provide competent evidence on this issue for only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of the complications and risks of the procedure, as evidenced by a consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they

cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

32. Whether Mrs. Kerris relied on the aforesaid misleading statement in deciding to go ahead with her embolization.

**Unsupported by Any Evidence in the Record.** Only Ms. Kerris could provide competent evidence as to whether she relied on statements when she made the decision to have embolization and was injured thereby. Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of the information) to make the decision to have the medical treatment and whether the patient was injured as a result of that reliance. Defendants have come forward with evidence that Ms. Kerris was informed of the complications and risks of the procedure, as evidenced by a consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure. Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33. The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do. Defs. SOF ¶¶ 34-35. Plaintiffs cannot prove a negative – although they may not

be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

33. Whether Mrs. Kerris was injured as a result of her reliance on the misleading statements of Vance E. Watson, M.D.

**Unsupported by Any Evidence in the Record.**  Only the patient can bring a claim for lack of informed consent, breach of express warranty or breach of implied warranty. Whatever information Ms. Kerris's family claims Dr. Watson imparted to them is irrelevant to their claims brought on behalf of the patient, as relevant facts are what was imparted to the patient and whether the patient relied upon that information (or omission of information) to make the decision to have the medical treatment.  Defendants have come forward with evidence that Ms. Kerris was informed of the complications and risks of the procedure, as evidenced by the consent forms she signed, Exs. 4, 6, 10, and 15 to Defs. SOF, as well as Dr. Watson's affidavit (Ex. 8 to Defs. SOF) as to the discussions they had about the procedure.  Defs. SOF ¶¶ 14-16, 19, 22-24, 27, 30, 33.  The burden of production, therefore, shifts to plaintiffs to adduce some evidence to show that Mrs. Kerris did not give her informed consent for the procedure, something plaintiffs admit in their Amended Complaint that they cannot do.  Defs. SOF ¶¶ 34-35.  Plaintiffs cannot prove a negative – although they may not be aware of discussions that Dr. Watson and Ms. Kerris had alone, that does not prove or approach proving that those discussions did not occur.

Defendants' proof stands uncontradicted by similar proof, and therefore, no genuine dispute of material fact exists.

19

Respectfully submitted,

WILLIAMS & CONNOLLY LLP


Dated:  March 27, 2006          By:    //s// Megan E. Hills
                                       Megan E. Hills ((D.C. Bar #437340)
                                       Nicolas Muzin (N.Y. Bar Registration # 4378626
                                       *D.C. Bar pending*)

                                       725 Twelfth Street, N.W.
                                       Washington, D.C. 20005
                                       (202) 434-5000
                                       (202) 434-5029 (fax)
                                       mhills@wc.com
                                       nmuzin@wc.com

                                       Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' Response to Plaintiffs' Statement of Material

Facts at Issue was mailed, first-class mail, and postage prepaid this 27th day of March, 2006 to:

> Anthony Newman, Esquire
> Newman & McIntosh
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Attorneys

and a courtesy-copy hand-delivered to:

> The Honorable Paul L. Friedman
> Chambers
> 3 rd & Constitution Avenue, N.W.
> Washington, D.C. 20001

Nicolas Muzin