UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>    Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>    Defendants. | Civil Action No. 1:05CV02086<br><br>Judge Paul L. Friedman<br><br>Magistrate Judge Alan Kay |

## DEFENDANTS' OBJECTIONS TO
## MAGISTRATE JUDGE KAY'S RECOMMENDATIONS
## AS TO COUNT II (INFORMED CONSENT), SECTION III, B1

Pursuant to Rule 72.3 (b) of the Local Rules of the United States District Court for the District of Columbia, defendants, Georgetown University and Vance E. Watson, M.D. (hereinafter collectively, "defendants"), by and through undersigned attorneys, hereby submit their objection to the recommendation that summary judgment should not be entered as to plaintiff's Count II (Informed Consent) in Section III, B1 at pages 22-26 of the Report and Recommendation of United States Magistrate Judge Alan Kay, dated October 11, 2006 (hereinafter, the "Report"). The bases for the objection are set forth below.

### STANDARD OF REVIEW

The standard of review is de novo.[1]

---

[1] . "A judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made. . . . A judge may accept, reject, or

# ARGUMENT

Under District of Columbia law regarding informed consent, written consent forms are immaterial to the determination of whether a patient gave informed consent; therefore, any dispute as to a form's adequacy or inadequacy is of no importance and summary judgment as to Count II (Informed Consent) of plaintiffs' Amended Complaint should be entered for defendants. As the Court recognized, "[t]o prevail on an informed-consent theory, the plaintiff must establish that if she had been alerted to the material risk, she would not have consented to the surgery, and that the surgery caused her injury." Report at 22 (quoting *Dorn v. McTigue*, 157 F.Supp. 2d 37, 45 (D.D.C. 2001)). There is no requirement that consent be in writing. The issue in informed consent claims is the sum total of information provided to a plaintiff – in whatever form, oral, written, both – and the patient's reliance thereon. Since dispute over written consent forms is of no consequence to the issue, disputes regarding their adequacy cannot be deemed material, and as the only dispute the Court found as to Count II (Informed Consent) was as to "the adequacy of the Consent Forms that were used," Report at 26, summary judgment on Count II (Informed Consent) should be entered for defendants.

I. **The Written Consent Forms Provided to Ms. Kerris Have No Bearing on the Informed Consent Claim, Other than that They Add to the Information Provided to Her.**

Informed consent does not need to be in written form. The very case, *Canterbury v. Spence*, establishing the doctrine of informed consent in the District of Columbia, stated that the "scope of the physician's **communications** to the patient, then, must be measured by the patient's need, and that need is the information material to the decision." 464 F.2d 772, 786, 787

---

modify, in whole or in part, the findings and recommendations of the magistrate judge . . ."
Local Rules of the United States District Court for the District of Columbia 72.3(c).

(D.C. Cir. 1972) (emphasis added), "**communications**," whether they be written, oral or both. Universally, courts interpret informed consent as requiring that necessary information be communicated to a patient (*e.g.*, the material risks of the procedure, alternative treatments, *etc.*), not the manner in which such information is conveyed. *Rowe v. Kim*, 824 A.2d 19, 24 (Del. Super. 2003) ("even where the consent [form] is technically defective or where there is no written consent, consent is valid if it can be shown that the patient knew, from any source whatever, the general course of the treatment undertaken"; quotations omitted).

"[S]o long as the patient is provided sufficient information appropriate under the circumstances to make an intelligent choice about his or her own health care, the provider has discharged his duty without regard to the form [oral, written, or both] in which such information is conveyed." *Cooper v. U.S.*, 903 F.Supp. 953, 957 (D.S.C. 1995); *see also Lipscomb v. Memorial Hospital*, 733 F.2d 332, 335 (4th Cir. 1984). "There is no legal requirement that physicians must obtain the *written* consent of their patients before proceeding with a medical treatment." *Hodge v. UMC of Puerto Rico, Inc.*, 933 F.Supp. 145, 148 (D. Puerto Rico 1996) (emphasis in original) (noting that "Puerto Rico essentially follows the rule of consent that has been widely adopted in the United States"; *id.*).[2] "[W]here the form is inadequate . . . or where there is no written consent . . . summary judgment could still be obtained by establishing that the plaintiff-patient knew, from any source, the general course of treatment to be undertaken." *Parr v. Palmyra Park Hospital, Inc.*, 228 S.E. 2d 596, 598 (Ga. App. 1976) (affirming entry of summary judgment on informed consent claim for defendants); *Yahn v. Folse*, 639 So.2d 261, 265 (La. App. 2d Cir., 1993) ("consent to treatment need not be written; it may be verbal if

---

[2] *Accord Santiago v. Hospital Cayetano Coll y Toste*, 260 F.Supp.2d 373, 384 (D. Puerto Rico 2003 ("Puerto Rico follows the rule of consent that has been widely adopted in the United States.").

necessary information is conveyed to the patient and the patient is given an opportunity to ask questions which are answered satisfactorily."); *Church v. Perales*, 39 S.W.3d 149, 161 (Tenn. App. 2000) (consent may be given verbally or in writing); *Wilkerson v. Mid-America Cardiology*, 908 S.W. 2d 691 (Mo. App. W. Dist., 1995); *Kaplan v. Blank*, 419 S.E. 2d 127 (Ga. App. 1992). A search of case law in D.C., federal, and state courts around the nation failed to find any case where a written consent was deemed required, absent a statute codifying the requirement (and even then, most states find that a "legally adequate," as statutorily defined, consent form creates a rebuttable presumption of informed consent, not that the absence of one defeats summary judgment). *Parr, supra.*

The current situation is strikingly similar to *Graff v. Malawer*, 592 A.2d 1038, 1041 (D.C. 1991), in which the District of Columbia Court of Appeals affirmed the entry of summary judgment for defendants on the informed consent claim where defendants presented plaintiff's signed consent form that only listed the procedure and the treating physicians' affidavits as to their conversations with the plaintiff as to material facts, particularly possible amputation, regarding the medical procedure. The entry of summary judgment was affirmed, despite the fact that the plaintiff – who, unlike here, could provide testimony disputing that the possibility of amputation had been disclosed to him – because the D.C. Court of Appeals found: "In sum, the factual material before the court established overwhelmingly that prior to surgery Graff had an understanding of and consented to the surgical procedure that was performed, knowing that it possibly entailed a possible hemipelvectomy. He has not identified any dispute as to material facts sufficient to present a genuine issue for trial." *Id.* at 1042 (citing *Matsubushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

What *Graff, supra*, directs and is most important for the Court to apply in the current situation, is that the *Graff* court considered all of the avenues by which information was imparted to plaintiff – both written and oral – and did not find informed consent missing by separately analyzing the consent form that limited itself to listing the procedure, while disregarding the conversations the treating physicians had with the plaintiff, to find a dispute of fact regarding whether the plaintiff was informed, since the existence of consent forms or their adequacy are immaterial to a lack of consent claim. *See Hall v. Carter*, 825 A.2d 954 (D.C. 2003) (determination of consent made on both oral and written communications).

A claim for lack of informed consent requires "'proof of nondisclosure of material risks.'" *Lasley v. Georgetown University*, 688 A.2d 1381, 1384 (D.C. 1997) (quoting *Gordon v. Neviaser*, 478 A2d 292, 294 (D.C. 1984)), which plaintiffs cannot do, as the Court found that only Dr. Watson can "affirm the substance of all conversations between himself and Ms. Kerris. Report at 26. Dr. Watson unequivocally states that he disclosed all material information and facts regarding the embolizations to Ms. Kerris, prior to her deciding to have the procedures. *See* Affidavit of Vance E. Watson, M.D. ("Dr. Watson Aff.") (attached hereto as Exhibit 1). Informed consent does *not* require that the information be imparted via a written consent form or any particular type of written consent form.[3] The elements of proof for informed consent make no mention of written consent forms or even a requirement that information be conveyed to a patient in writing.

---

[3] To the extent plaintiffs wish to argue that an IRB Consent Form was required under FDA regulations, such argument may be pertinent to their negligence *per se* claim, but it has no bearing on an informed consent claim. Informed consent case law does *not* require that *any* consent form be used, much less a particular type of form. *See also*, Sections III and IV, *infra*.

Therefore, as the only dispute of fact that the Court found was as to the written consent form, Report at 26, which is immaterial to a claim of lack of informed consent, summary judgment should be entered on Count II (Informed Consent) for defendants.

II. **Summary Judgment Should Be Entered for Defendants as Plaintiffs Cannot Show that Ms. Kerris Would Not Have Decided to Have the Embolizations, Regardless of What She Was Told.**

To prevail on an informed consent theory, the plaintiff must establish that if she had been alerted to the material risk, she would not have consented to the surgery, and that the surgery caused her injury. *Dorn*, 157 F.Supp.2d at 45, *supra* (citing *Kelton v. District of Columbia*, 413 A.2d 919, 922 (D.C. 1980)); *Reetz v. Jackson*, 176 F.R.D. 412, 415 (D.D.C. 1997) ("plaintiff cannot successfully prove a causal connection between defendant's failure to disclose material information and her decision to go through with surgery.") (citing *Canterbury*, *supra*). Plaintiffs cannot show that Ms. Kerris would not have undergone the embolizations, regardless of what she was told as they have no evidence that such was the case, Report at 4-5; therefore, summary judgment should be entered for defendants on Count II (Informed Consent).

III. **Beyond Being Immaterial to an Informed Consent Claim, an IRB Consent Form Is Only Used When Research is Being Conducted.**

The Court based its recommendation regarding Count II (Informed Consent) on its finding that the plaintiffs' argument that "Defendants should have used a specialized consent form approved by Georgetown University's Institutional Review Board ("IRB") requiring eight elements of informed consent" created a material dispute of fact. Report at 26. As set out above, there is no requirement that any form be used to obtain consent in informed consent claims, much less a specialized form.[4] Beyond the immateriality of the issue of consent forms, the

---

[4] Plaintiffs insist that Dr. Watson was required to communicate to Ms. Kerris the eight basic elements of the IRB informed consent. Report at 25. Dr. Watson has given incontrovertible

6

Court's crediting plaintiffs' argument regarding IRB consent forms seems internally inconsistent with the remainder of the Report.

The Court found that this lawsuit involved a treating situation – Ms. Kerris came to Georgetown Hospital for treatment of her medical condition, not to be a subject in a study.

> The instant case involves claims brought on behalf of a patient against her physician where the primary purpose of such relationship was . . . **the receipt of medical services. Dr. Watson, an interventional neuroradiologist, provided medical services to Ms. Kerris, the patient, relating to treatment of her AVM, in the form of embolization. Ms. Kerris's relationship with Defendant GUH was similarly developed for the purpose of her receipt of treatment** and health care services.

Report at 10 (emphasis added).

---

testimony that he communicated to Ms. Kerris the elements of the form applicable to Ms. Kerris's situations – Reasonable Forseeable Risks, Reasonably Expected Benefits, and Appropriate Alternatives. *Compare* Dr. Watson Aff. at ¶¶ 5-6, 8, 11-17, 19-20, 23, 26 *to* IRB Reasonable Forseeable Risks Section b at 12-2 of IRB Policies & Procedures Manuel ("IRB Manual); *Compare* Dr. Watson Aff. at ¶¶ 5-6, 8, 13-14, 19-20, 23, 26 *to* Reasonably Expected Benefits Section c at 12-2 of IRB Manual; *Compare* Dr. Watson Aff. at ¶¶ 5-6, 8, 19-20, 23, 26 *to* Appropriate Alternatives Section d at 12-2 IRB Manual (Dr. Watson's affidavit and the IRB Manual are attached hereto as Exhibits 1 and 2, respectively). The remaining elements of the IRB Consent Form - Research Statement at 12-1 [the reason the study is being conducted], Extent of Confidentiality at 12-2 [to be expected by subjects in a study], Compensation or Treatment for Injury at 12-3 [for subjects participating in the study], Contact Information, and Voluntary Participation Statement [that the individual is voluntarily participating in the study], both at 12-3 - pertain solely to research and could not be given to Ms. Kerris. How could she have been given a research statement about why a study was being conducted when no study was being conducted? How could she have been told about compensation for her participation in a study, when there was no study? How could she be asked whether her participation in a study was voluntary when there was no study in which she was participating? How could she be told the extent of the confidentiality she could expect as a study subject, when she was not a study participant? The applicable portions of the IRB Consent Form to a treatment situation (*e.g.*, Reasonable Forseeable Risks, Reasonably Expected Benefits, and Appropriate Alternatives) was information given to Ms. Kerris. Dr. Watson Aff. at ¶¶ 5-6, 8, 11-17, 19-20, 23, 26. Therefore, even assuming *arguendo*, that Dr. Watson is to be held to the higher standard of an IRB Consent Form, the Court should find that he fulfilled his duty to obtain such consent where relevant to his treating situation.

By definition, Georgetown's Institutional Review Board ("IRB") is only involved in "**research involving human subjects conducted at GU** [Georgetown University] or its affiliates [which] **must be reviewed by one of Georgetown's Institutional Review Boards (IRBs)**." IRB Manual at 3-1 (emphasis added). The IRB defines human subject and research by adopting the federal regulations' definition. **Research** is defined as "'a **systematic investigation, including research development, testing, and evaluation,** designed to develop or contribute to generalizable knowledge.'" *Id.* (quoting 45 C.F.R. § 102(d); emphasis added). **Human subject** is defined (again by adopting the definition in federal regulations) as "'**a living individual about whom an investigator** (whether professional or student) **conducting research obtains (1) data** through intervention or interaction with the individual or (2) identifiable private information.'" *Id.* (quoting 45 C.F.R. § 46.102(d); emphasis added).

Since the Court found that Dr. Watson was not engaged in research when he treated Ms. Kerris, Report at 10, how can IRB procedures and processes, which by definition are limited to research, be relevant? Regardless, as set out in Sections I and II, *supra*, despite the inherent inconsistency in finding that Dr. Watson was only involved in a treating situation with Ms. Kerris, but applying IRB research procedures, consent forms are extraneous to the issues presented by an informed consent claim, unless they are the only evidence defendants have to show that a patient was informed of material risks. Such is not the situation here where Dr. Watson, because of Ms. Kerris's atypical presentation, remembers the information with which he provided her. The consent forms are merely additional, not determinative, information given to Ms. Kerris.

IV.   **Similarly, All Arguments Regarding the Applicability of the FDA's[5] Investigational Device Exemption or Premarket Approval is Immaterial to the Informed Consent Claim.**

Plaintiffs submit affidavits by their experts who state that, in their opinion, "hospitals and practitioners may not used any Class III (unapproved) device without a valid Investigational Device Exemption (IDE) or Premarket Approval (PMA)" (notably, neither doctor cites a regulation or statute on which they base their opinions). Report at 26. Again, an argument about whether defendants should have utilized an IRB Consent Form has nothing to do with whether informed consent was given. Again, one must note that, by definition, an IDE "applies [only] to all **clinical investigations of devices**," 21 C.F.R. § 812.2(a), and PMAs are to provide "procedures for the **premarket approval** of medical devices intended for human use." 21 C.F.R. § 814.1 (emphasis added throughout).[6]

The Court found that Dr. Watson was neither seeking to gain FDA approval for a device so that he could market and sell it nor conducting a clinical investigation; he was treating a patient, Report at 10, and, as such, FDA regulations have no relevance to this case, much less an informed consent claim. While plaintiffs may seek to use them for their negligence *per se* claims, the regulations have no bearing on their lack of informed consent claim. The type of consent form and whether a consent form is even used is immaterial for District of Columbia law on informed consent does not require written consent, simply that "the plaintiff . . . establish that if she had been alerted to the material risk, she would not have consented to the surgery, and that the

---

[5] Federal Food and Drug Administration.

[6] 21 C.F.R. § 814.2 Purpose: "The purpose of this part is to establish an efficient and thorough **device review process** . . ." (emphasis added).

surgery caused her injury. *Dorn*, 157 F.Supp.2d at 45 (citing *Kelton, supra*, 413 A.2d at 922).

As the only dispute of fact the Court found as to Count II (Informed Consent) was as to the adequacies of consent forms, Report at 26, which defendants submit is immaterial to the claim, defendants respectfully submit that summary judgment should be entered in their favor as to Count II of plaintiffs' Amended Complaint.

## CONCLUSION

For all of the reasons stated above, defendants respectfully submit that the Court should enter summary judgment for defendants on Count II (Informed Consent) of plaintiffs' Amended Complaint.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: October 25, 2006       By: _____
                              Megan E. Hills ((D.C. Bar #437340)
                              Nicolas Muzin (D.C. Bar # 500106)

                              725 Twelfth Street, N.W.
                              Washington, D.C. 20005
                              (202) 434-5000
                              (202) 434-5029 (fax)
                              mhills@wc.com
                              nmuzin@wc.com

                              Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing with exhibits was electronically filed pursuant to Court Rules and mailed, first-class mail and postage prepaid, this 25th day of October, 2006 to:

>Anthony Newman, Esquire
>Newman & McIntosh
>7315 Wisconsin Avenue
>Suite 700E
>Bethesda, Maryland 20814
>
>and
>
>Andrew Greenwald, Esquire
>Greenwald and Laake
>6404 Ivy Lane
>Suite 440
>Greenbelt, Maryland 20770
>
>Plaintiffs' Attorneys

and courtesy-copies hand-delivered to:

>The Honorable Paul L. Friedman
>Chambers
>3 rd & Constitution Avenue, N.W.
>Washington, D.C. 20001
>
>and
>
>The Honorable Alan Kay
>Chambers
>3 rd & Constitution Avenue, N.W.
>Washington, D.C. 20001

_____
Nicolas Muzin