UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FELICE I. IACANGELO, et al.** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | Case No.: 1:05CV02086 |
| : | Judge Paul L. Friedman |
| **GEORGETOWN UNIVERSITY, et al.** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS**

In accordance with Rule 72.3 (b) of the Local Rules of the United States District Court for the District of Columbia, Plaintiffs Felice I. Iacangelo and Cicily Iacangelo, as Gaurdians of Karyn A. Kerris and Paul Kerris, submit the following objections to the Report and Recommendations ("Report"). The specific portions of the Report at issue include: the recommendation to dismiss Counts III, IV and V of the Amended Complaint, [labeled as "1. Strict Product Liability and Breach of Warranty Claims (Counts III, IV and V)"]; the recommendation to dismiss (without prejudice) Counts IV of the Amended Complaint, [labeled as "2. Fraud (Count VI)"] and the recommendation to dismiss Counts VII of the Amended Complaint, [labeled as "3. Loss of Consortium (Count VII)"].

**1. Strict Liability and Breach of Warranties (Counts III, IV and V)**

As the District of Columbia views strict liability and doctrines of warranty as "two labels for the same legal right and remedy," these issues will be addressed together. *Cottom v. McGuire Funeral Service, Inc.*, 262 A.2d 807, 808 (D.C.1970).

The facts of this case present an issue of first impression for the Court. While there have been cases holding that the use of products in the stream of commerce by a physician was merely incidental to the provision of medical services, the facts of this case are distinguishable from

those cases. In this case, Dr. Watson crossed the line from using a product readily-available in the course of providing a service to becoming the manufacturer of an illegal compound, unique to the stream of commerce, and injecting his manufactured product, in the form of a Class III medical device, into Ms. Kerris's brain. This was the primary purpose of the procedure and the only way that this product entered the stream of commerce.

     Unlike the cases relied on by the Defendants, Dr. Watson was not merely using a product widely-available to hospitals as an incidental part of his provision of a medical service. (See *Brandt v. Sarah Bush Lincoln Health Center*, 329 Ill. App.3d 348, 352 (Ill. App. 4 Dist. 2002) (Doctor's use of a pubovaginal sling was incidental to the provision of services.); *In re: TMJ Implants Products Liablity Litigation*, 852 F.Supp. 1019 (D. Minn. 1995)(Doctor's use of temporomandibular joint (TMJ) implants was an incidental sale of a product necessary for rendering a medical service.); *In re: Breast Implant Product Liability Litigation*, 503 S.E.2d 445 (S.C. 1998)(Doctor's use of breast implants was incidental to the breast augmentation procedure.)

     In Defendants' line of cases, the products used were all available at the hospital and all manufactured by a third party. This is not the case here. To the contrary, ""Histadol"" is not available anywhere in the country by any manufacturer or distributor. Dr. Watson illegally imported, contrary to an FDA-issued trade alert and ban, two devices, Histoacryl® and Lipiodol®, mixed those ingredients together to form a unique device, ""Histadol"", and then injected that untested, illegal mixture into Ms. Kerris's brain. Thus, Dr. Watson became the one and only manufacturer of a unique product, "Histadol".

     Equally true is that an actual sale of a product is not necessary for strict liability and

liability under warranties to attach. In *Cottom v. McGuire Funeral Service, Inc.*, a handle on a casket broke causing the casket to fall injuring Mr. Cottom. 262 A.2d 807 (D.C.1970). The defense in *Cottom* argued that Mr. Cottom was not entitled to recover because he was not a purchaser of the coffin. The Court in *Cottom* held that "[t]here is no logical or legal reason why only a purchaser may recover for injuries sustained due to a defective product." <u>Id.</u> at 809. "Certainly, an intended user or consumer is entitled to as much protection as a purchaser." <u>Id.</u>

Defendants' argument that Ms. Kerris is not entitled to recover in strict liablity or breach of warranty for Dr. Watson's manufacture and use of "Histadol", is contrary to the DC Court of Appeal's holding in *Cottom*. Ms. Kerris, although not considered a "purchaser" of a good because the good was used incidental to the provision of a medical service, is certainly the intended consumer or user of the product. Dr. Watson introduced a unique product into the stream of commerce in a defective state because that product was illegal and unreasonably dangerous because it was a Class III device. Therefore, he became akin to the wholesaler in *Cottom* and, like the wholesaler in *Cottom*, he should not be able "to insulate himself from liability solely because he did not 'deal' with the injured party." <u>Id.</u> at 810.

According to the holding in *Cottom*, strict liability and liability under warranty claims extends beyond the traditional seller/purchaser relationship. While the Report states that "[t]he provision of drugs used by Dr. Watson/GUH was incidental to the provision of medical services," Dr. Watson did much more than provide drugs incidental to the provision of medical services. (Report, p.10) He introduced a unique product into the stream of commerce by manufacturing "Histadol". Therefore, while the Report may be correct in concluding that "because doctors and hospitals primarily provide medical services as opposed to medical

supplies or devices," Dr. Watson went beyond the mere provision of medical services by manufacturing a new product and introducing it into the stream of commerce, delivering it to its intended user, Ms. Kerris. And, since an actual purchase and sale is not necessary for strict liability and liability under warranties to apply, these claims should not be dismissed for failure to state a claim.

### 2. Fraud (Count VI)

The Report concludes that, "Plaintiffs cannot meet their burden of proof to show that Dr. Watson made false representations of material fact upon which Ms Kerris relied" (Report, p.15). Plaintiffs object to this portion of the Report because plaintiffs did meet their burden. The Amended Complaint specifically alleges several material issues that were not disclosed to the Ms. Karyn Kerris and "either active misrepresentation, nondisclosure or silence may constitute fraud." (Report, p.15).

The specific allegations at issue are Dr. Watson's intentional withholding of the fact that: (a) he intentionally did not seek the required FDA approval or provide the FDA with required notice; (b) he intentionally did not seek or obtain an Investigational Device Exemption; (c) he intended to use illegal devices; (d) he intended to inject the illegal devices into her brain; and/or (e) he would manufacture a third illegal device in the operating room that had never been tested. (Amended Complaint ¶48 subparagraphs (a-e)). Furthermore, Dr. Watson omitted any mention that the Histoacryl was going to be used in a manner expressly prohibited by its manufacturer. (Amended Complaint, ¶11, subparagraph g; ¶48, subparagraph e). Such withholding of material facts is not only below the standard of care, it is fraudulent. (See Affidavit of Dr. Kaufman, ¶¶8-9, attached hereto as Exhibit 1; Affidavit of Dr. Van Woert, ¶¶5-9, attached hereto as Exhibit 2)

Plaintiffs also proffered evidence supporting their allegations of fraud. The Affidavits of Mrs. Kerris' mother, father and husband, attest to the fact that Dr. Watson never made any of the above material disclosures. (Felice Iacangelo Affidavit, ¶¶5-14, attached hereto as Exhibit 3; Cicily Iacangelo Affidavit, ¶¶5-14, attached hereto as Exhibit 4; and Paul Kerris Affidavit, ¶¶5-14, attached hereto as Exhibit 5). Moreover, Dr. Watson's own declaration is consistent with the above, for he does not allege that he made any such disclosures. (Watson Affidavit, attached hereto as Exhibit 6).

As to the issue that plaintiffs have not "proffered any substantiation for their claim that Dr. Watson's actions were taken with the purpose of defrauding Ms. Kerris," (Report, p.15) again the amended complaint and affidavits set forth the substantiation. The most important of which is the fact that the embolizations were performed at all. Reasonable people do not consent to the use of unapproved and untested illegal Class III devices, mixed in an uncontrolled environments into a third unapproved and untested device, which is then injected into the blood vessels of their brains in a manner expressed forbidden by the manufacturer, unless they are somehow induced to do so. And as for Dr. Watson's purpose in concealing this information, it can clearly be inferred from his declaration. He was trying to perfect his skill with a rare type of vascular malformation, one which he only had the opportunity to treat on only two other occasions resulting in the death of a patient. (Exhibit 6). For reasons aforesaid, the claim of Fraud should not be dismissed for failure to state a claim.

### 3. Loss of Consortium (Count VII)

The Report called for dismissal of Count VII (Loss of Consortium) on the basis that, "loss of consortium by a spouse is not subject to the tolling of a statute of limitation" (p.17)

5

Plaintiffs object to this portion of the Report on the basis that application of such a harsh rule in inherently unfair in the circumstances of this case. Mrs. Kerris became catatonic after her last embolization procedure and remains so to date, thus she had could not bring the present action until her representatives decided to do so on her behalf. Following the logic of the Report, Mr. Kerris would have had to file his consortium claim prior to the date his wife's representatives brought a claim on her behalf. Of course that would have been impossible, for Mr. Kerris' claim is derivative and could only be brought in conjunction with his wife's action. For reasons aforesaid, the claim of Fraud should not be dismissed for failure to state a claim.

WHEREFORE, Plaintiffs pray that the aforesaid be adopted into the final Order.

Respectfully submitted,

_____
Anthony G. Newman, Esq.
NEWMAN, McINTOSH & HENNESSEY, LLP
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814
(301) 654-3400


_____
Andrew Greenwald, Esq.
JOSEPH, GREENWALD AND LAAKE, P.A.
6404 Ivy Lane, Suite 440
Greenbelt, Maryland 20770
(301) 220-2200
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing with exhibits was electronically filed pursuant to Court Rules and mailed, first-class and postage prepaid, this 25th day of October, 2006 to:

Megan E. Hills
Williams & Connelly, LLP
725 Twelfth Street NW
Washington, DC 20005

                                                                            Anthony G. Newman