UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Felice I. Iacangelo and Cicily Iacangelo, )
As Guardian of the Person and Property of )
KARYN A. KERRIS, )
)
      Plaintiffs, )
)
v. )    Civil Action No. 1:05CV02086
)    Judge Paul L. Friedman
Georgetown University Hospital, )
GEORGETOWN UNIVERSITY, t/a )
Georgetown University, and )
VANCE E. WATSON, M.D., )
)
      Defendants. )

CITY OF WASHINGTON )
)
DISTRICT OF COLUMBIA )

### DECLARATION OF VANCE E. WATSON, M.D.

I, Vance E. Watson, M.D., hereby declare and state as follows:

1. My name is Vance E. Watson, M.D. I am over the age of 18, and am otherwise competent and authorized to make and give this Declaration in connection with the above numbered and entitled case. I have personal knowledge of the facts set forth below. The statements set forth in this Declaration are true and correct based upon my personal knowledge to the best of my knowledge and recollection.

2. Plaintiff Karyn Kerris ("Ms. Kerris") was referred to Georgetown University Hospital ("GUH") in the summer of 1998 after she discovered that she had a bithalmic arteriovenous malformation ("AVM"), measuring 6 to 7 centimeters, from a magnetic resonance imaging ("MRI") performed in December 1997 at the National Institute of Health ("NIH"), while

experiencing progressive cognitive decline and increasing motion disorders. *See* 11/4/98 GUH Radiology Report ("28 yo woman with Turner's Syndrom [sic] had decreasing cognitive function and increasing gait ataxia [uncoordinated movement of the arms, hands, legs, or trunk] worsened with exertion . . . . She also reports slurring of speach [sic] and right sided headache's [sic] which occur at night") (Ex. 7).

11.  I told Ms. Kerris that her symptoms were unusual and there was a real concern that her cognitive issues, Parkinson's-like symptoms, focal deficits, and sleepiness would progress.

12.  I also explained that her AVMs carried a risk of hemorrhage, which could lead to stroke and/or death.

13.  I described the embolization procedure with a Lipiodol and Histoacryl mixture and that – while it would not be a cure or address her risk of hemorrhage – I had a previous patient whose cognitive decline had improved after undergoing a series of such embolizations, but another patient who had died after experiencing complications associated with the procedure.

14.  I clearly explained to Ms. Kerris that improvement of her cognitive symptoms with a series of embolization procedures using the Lipiodol and Histoacryl mixture was only a theory with significant, great risks – including a high rate of failure, death, stroke, neurological worsening – and that there was no way to predict whether Ms. Kerris would improve, stay the same, decline, or even die from the treatment. I also expressed to Ms. Kerris that it was unlikely that we could completely cure her AVM, and she would, therefore, remain at risk for hemorrhage.