UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, | ) | |
| As Guardian of the Person and Property of | ) | |
| KARYN A. KERRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05CV02086 |
| | ) | |
| Georgetown University Hospital, | ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a | ) | |
| Georgetown University, and | ) | Magistrate Judge Alan Kay |
| VANCE E. WATSON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS' OPPOSITION  TO PLAINTIFFS' MOTION TO COMPEL
THE DEPOSITION OF DEFENDANT VANCE E. WATSON, M.D.,
AND MOTION TO COMPEL SCHEDULING ORDER[1]

Federal Rule of Civil Procedure 26(f) requires, *inter alia,* that the parties must, "*as soon*

*as practicable* . . . confer to consider the *nature and basis of their claims* and defenses and *to*

*develop a proposed discovery plan* that indicates the parties' views and proposals concerning . . .

*the subjects on which discovery may be needed*, and whether discovery should be . . . *focused*

*upon particular issues,*" prior to a Scheduling Order being entered ("Fed. R. Civ. P.").

(*Emphasis added*); *see also* D.D.C. Local Rule 16.3(c) ("L. Cv. R.").  Neglecting to inform the

Court that plaintiffs filed five objections to Magistrate Alan Kay's October 11, 2006 Report and

Recommendations ("Magistrate Report"; Ex. 1) as to the disposition of certain counts in

---

[1] Pursuant to Federal Rule of Civil Procedure 11, defendants simultaneously served plaintiffs' counsel with a Motion for Sanctions under that rule for filing this motion (the fact of which plaintiffs' counsel was informed prior to filing their motion) and hope plaintiffs' counsel will withdraw it under Rule 11's 21 day "safe harbor" provision, thereby obviating the need for Court intervention.

plaintiffs' Amended Complaint (defendants filed one objection), plaintiffs' Amended Complaint could consist of twelve claims or six or some other number altogether.  As explained to plaintiffs' counsel on numerous occasions,[2] since the very subject of this litigation has not been established, at this juncture the parties cannot determine the subjects on which discovery might be needed.  Moreover, in refusing to provide any reason for forcing discovery at this time when their claims have not been established, as well as refusing to agree that if they depose Vance C. Watson, M.D., ("Dr. Watson") prior to their claims being established, the subject of the deposition will necessarily be limited to the medical malpractice claims that will go forward and that multiple depositions of a busy practicing doctor without good cause is not allowed, defendants can only believe that plaintiffs' counsel's motivation stems from an attempt to harass and inflict maximum harm on defendants.  Defendants simultaneously served plaintiffs' counsel with a Motion for Sanctions, hoping that he will withdraw the present motion, and that no Court intervention will be required.

Both a Scheduling Order and any discovery, including the deposition of Dr. Watson, would be premature until the Court decides which of Plaintiffs' twelve claims will be dismissed and which will go forward.  Before such determination, it is impossible to conduct formal discovery, as counsel cannot predict what issues are relevant, and which are out of bounds.  As Magistrate Judge John Facciola from this Court recently wrote, "plaintiff is not entitled to demand from defendants information that is neither relevant to a claim or defense nor likely to lead to information that is."  *Caldwell v. Center for Correctional Health and Policy Studies, Inc.*, 228 F.R.D. 40, 44 (D.D.C. 2005) (citing Fed. R. Civ. P. 26(b)(1); *Byrd v. Reno*, 1998 WL

---

[2] During the week, September 29-October 6, 2006, defendants were subjected to virtually, a daily barrage of letters from plaintiffs' counsel, each response to which set forth the Rule's objectives and the illogic of attempting to discuss the scope of discovery when the scope of claims had not been established.  *See* Exhibits 2-9 of Plts' Memo.

429676, at *9 (D.D.C. Feb. 12, 1998)).  Since plaintiffs' claims have yet to be established, there

is no way to determine what is relevant to a claim as what claims there are is not known.[3]

## ARGUMENT

I.     **SINCE PLAINTIFFS' CLAIMS HAVE NOT BEEN DETERMINED, NO SCHEDULING ORDER CAN BE ENTERED AS THE TOPICS ON WHICH RELEVANT DISCOVERY IS NECESSARY IS NOT KNOWN.**

After misrepresenting to the Court the residency of MedStar, Inc.,[4] plaintiffs filed their

Amended Complaint, in which they brought four additional claims.  *Id.*  Currently, the claims

plaintiffs bring against defendants have not been delineated as a Motion to Dismiss, Motion for

Summary Judgment, and Motion to Strike are pending before the Court.  Although a Magistrate

Report has been filed, plaintiffs omitted to tell the Court that they objected to five separate

recommendations (defendants filed one) and the Court has yet to enter an Order based on the

Magistrate Report.  Both a Scheduling Order and any formal discovery, including the deposition

of Dr. Watson, are premature because the contours of the case have yet to be determined.  The

Magistrate Report recommended that five of plaintiffs' claims be dismissed.  *See* Ex. 1.

Subsequently, objections were filed.  Given the procedural position of the Amended Complaint,

plaintiffs' claims are indeterminate:  there may be six claims; there may be twelve; or there may

be some other number altogether.

---

[3] Attorneys' fees as a sanction (which is the sanction defendants seek) were awarded in that case for other discovery abuses by plaintiffs.

[4] In their Original Complaint, plaintiffs additionally brought their claims against MedStar, Inc., misrepresenting MedStar, Inc. "was a corporation incorporated in a jurisdiction other than the State of Maryland" when, in fact, MedStar, Inc. is incorporated in Maryland, which a quick telephone call would have revealed.  Iacangelo Complaint at ¶ 5.  After dismissing that original Complaint, plaintiffs filed a subsequent Amended Complaint, in which they dropped MedStar, Inc. as a defendant and added four new claims.  *Compare* Iacangelo Complaint, filed 11/7/05, *to* Amended Complaint, filed 2/14/06.

"Rule 26(b)(1) authorizes discovery 'regarding any matter, not privileged, **that is relevant** to the claim or defense of any party.'" *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp.2d 83, 86 (D.D.C. 2005) (quoting Fed.R. Civ. P 26(b)(1)) (emphasis added). "[D]iscovery should be tailored to the issues involved in the particular case." *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (denying plaintiff's motion to compel and awarding defendants' attorney's fees incurred in opposing the motion).

The United States Supreme Court states that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 349, 98 S.Ct. 2380, 2389 (1978) (citations omitted).

> [I]n order for information to be relevant to the subject matter of the pending action it must either bear on or reasonably lead to other information which could bear on any issue that is or may be in the case. . . . Conversely, **if an issue is not properly part of the case, as a matter of law, then discovery in that vein is inappropriate**. . . . Rule 401 states that '[r]elevant evidence means evidence having a tendency to make *the existence of any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence.' If information that plaintiffs seek is of no consequence to the determination of whether the position of the [opposing litigant] was substantially justified then it is not relevant and not properly discoverable.

*Planned Parenthood Federation of America, Inc. v. Heckler*, 101 F.R.D. 342, 344 (D.D.C. 1984) (citations omitted; bolding added; italics in original).

The black letter law governing discovery could not be clearer; yet plaintiffs do not seem to grasp their basic concept. In filing their Motion to Compel the deposition of Dr. Watson and for a Scheduling Order, plaintiffs have utterly failed to explain how relevancy can be determined when the very issues of the case have not been determined. Even more egregious, in bringing their Motion to Compel, plaintiffs make several misrepresentations to the Court, which defendants must correct. These disingenuous statements are enumerated below.

## II.    PLAINTIFFS' MISREPRESENTATIONS TO THE COURT.

Without ever informing the Court (or defendants) the reason to proceed to discovery at this juncture in violation of basic discovery principles, plaintiffs accuse defendants of a "tactical ploy delaying this litigation, which in turn delays potential life saving medical care required by Keryn [sic it should be "Karyn"] Kerris." Plts' Memo at 1, 6. Plaintiffs neglect to tell the Court *that they delayed over six and a half years before filing this lawsuit* (for no discernible reasons) over events that occurred no later than March 3, 1999;[5] yet, take umbrage at defendants' basic observation that discovery should be into relevant issues.

Second, one wonders – if it is dependent on this litigation – what Ms. Kerris did for "life saving medical care" during the six and a half years that plaintiffs waited to file the suit. If life saving treatment for Ms. Kerris hinged on a verdict in their favor in this litigation, surely her lawyers would have found their way to a courtroom in less than six and a half years.

Third, plaintiffs state that they provided an authorization for Ms. Kerris's records by letter dated March 30, 2006. Plts' Memo at 2. Interestingly, while attaching a letter that was never received by defendants, they do not submit authorizations that are dated from March 2006 or earlier. To the contrary, plaintiffs' Motion to Compel is the first defense counsel has ever seen this purported letter and wonders why authorizations, dated September 21, 2006, were subsequently sent to defendants by plaintiffs by letter, dated September 28, 2006, without mention of previously provided authorizations (or even copies of them), nor enclosing authorizations dated in March 2006 or earlier. *See* 9/28/06 Anthony Newman Letter to Defense Counsel including enclosure of Authorizations, dated 9/21/06 (Ex. 2).

---

[5] Ms. Kerris' final embolization procedure took place on March 3, 1999. Plaintiffs did not file their original complaint until November 7, 2005.

Fourth, Plaintiffs misstate the Court's words at the September 8, 2006 Motions Hearing, misrepresenting that the Court said "that the parties should cooperate in discovery, for regardless of the scope of the final rulings on motions, the case would go forward . . ." Plts' Memo at 2. This statement completely misrepresents what the Court said at the September 8, 2006 Motions Hearing:

| | |
|---|---|
| Defense: | We are now providing counsel with copies of two authorizations forms, one was sent over six months ago to try and get the Kerris' signature from Blue Cross Blue Shield's demands [for] their own authorization, and also we're trying to get – and these are all HPPA [sic "HIPPA] approved – employment records from NIH, and also participation in the study.  Again, we're just trying to get at records and we're not able to . . . |
| | . . . . |
| Court: | Okay, then there isn't a problem, Ms. Hills.  They're prepared to get them signed. |
| Plts' Counsel: | I sent a subpoena to Blue Cross. |
| Court: | They're prepared to get them signed. |
| Plts' Counsel: | Absolutely. |
| Court: | If there's a problem, you come back to me.  Alright? |
| | . . . . |
| Court: | . . . . I'm doing the report and recommendation, Judge Friedman ultimately he will make the decision as to how the motion is finally decided.  But I think there is no doubt that the case is going to go forward regardless of how Judge Friedman rules on this, with respect to a medical malpractice, **so somewhere along the line if there is a request for records, the Defendant would be entitled to them.  So why don't you go ahead and make sure those are signed**, and whether or not Ms. Hills or the Defendant seeks to pursue that pending a decision by Judge Friedman is their decision. |

Transcript of September 8, 2006 Motions Hearing before Magistrate Judge Kay at 96-98 (emphasis added) (Ex. 3).

The Court never mentioned formal discovery *per se*, other than to observe that somewhere down the line, if defendants served a formal request for documents, they would be entitled to Ms. Kerris's medical records.  Defendants were not engaged in any type of formal discovery – such as document requests, interrogatories, or depositions – rather they merely sought signed authorizations, allowing them to obtain records from third parties.  If, as he states, plaintiffs' counsel saw no problem with issuing a subpoena based on this case to Blue Cross/Blue Shield (in violation of Fed. R. Civ. P. 45 in that defendants have not been provided with *any* notice of any subpoenas issued by plaintiffs in this case and would ask the Court to order plaintiffs immediately to comply with the rule and belatedly provide defendants with copies of all subpoenas they have issued to date), defendants find his current position inexplicable.)  Plaintiffs confuse the informal exchange or seeking of medical records with formal discovery.

Lastly, plaintiffs' counsel gives an utterly false account of the content of defense counsel's letters, stating that "as Defense counsel argues, that the parties delay conferring until after a scheduling conference has been held or a scheduling order has been issued."  Plts' Memo at 7.  As is shown by plaintiffs' own attachments, defense counsel never even mentioned a scheduling order or conference, but observed the obvious:

> Responding to your letter dated October 23, 2006, **it seems illogical to schedule or hold a Rule 26(f) meeting when the scope of your claims has not been set**. . . . Rule 26(f) specifically contemplates that the parties "confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case" and "the subjects on which discovery may be needed," in addition to others.  **Obviously, we cannot confer the nature of your claims when it is not clear what those claims are nor can we discuss the subjects on which discovery may be needed as the subjects that may be relevant have not been established.**
> **Once the Court has ruled upon the Judge Kay's Recommendations and Objections thereto, we will schedule a Rule 26(f) meeting at a mutually agreeable time.**

October 30, 2006 Defense Counsel Letter to Plaintiffs' Counsel (attached as Ex. 4; attached to

Plts' Memo as Exh. 9) (emphasis added).  As was stated, defendants are more than willing to

confer pursuant to Fed. R. Civ. P. 26(f) to discuss the scope of discovery when the scope of

plaintiffs' claims has been set.  The position that discovery was premature until the breadth of

plaintiffs' claims in the Amended Complaint is established is constant throughout defendants'

correspondence to plaintiffs' counsel.[6]

### III.    IF PLAINTIFFS STIPULATE AND AGREE TO DISMISS WITH PREJUDICE ALL CLAIMS OTHER THAN THE MEDICAL MALPRACTICE/BREACH OF FIDUCIARY DUTY CLAIMS, THE PARTIES CAN CREATE A DISCOVERY PLAN.

Fed. R. Civ. P 26(f) states that the parties "must, **as soon as is practicable**. . . confer to

consider the nature and basis of their claims and defenses," including  "the subjects on which

discovery may be needed, when discovery should be completed, and whether discovery should

be conducted in phases or be limited to or focused upon particular issues."  (Emphasis added);

*see also* L. Civ. R. 16.3.  As explained above with anywhere from none to six of plaintiffs'

claims in play, plaintiffs' Amended Complaint is in flux, any reasonably competent attorney

would know that it is impossible to determine what the claims are, much less what their bases

are.  It is similarly impracticable to know "the subjects on which discovery may be needed," as

no one knows what information will make the unknown claims more or less likely.  Whether

---

[6] *See* 9/29/06 Defendants' Letter to Plaintiffs ("As this subpoena was not served, it is invalid, as are any attempts to take the deposition of any fact witness in this above-captioned case **until the scope of your Amended Complaint has been determined by the Court.**  As I have informed you many times in the past, **depositions at this juncture are inappropriate because it is unclear what counts make up your claims.**") (Attached to Plts' Memo as Ex. 3); 10/4/06 Defendants' Letter to Plaintiffs ("**as I said to you in March of this year, before the scope of your lawsuit is determined, depositions of witnesses are inappropriate as it is unclear as to the permissible discovery since the nature of your claims has not been established.** Witnesses will not be produced twice for deposition simply because you wish to take premature depositions.") (attached to Plts' Memo as Ex. 7) (emphasis added throughout).

material is relevant is "in turn, a function of the relationship to the . . . central accusations of [the] lawsuit." *McPeek v. Ashcroft*, 212 F.R.D. 33, 34 (D.D.C. 2003). No one knows what plaintiffs' accusations are, much less, what the central accusations are until plaintiffs' claims are determined. Holding a Rule 26(f) conference is truly impracticable and the parties, defendants being one, have not agreed to conduct discovery.

However, plaintiffs could remove this uncertainty by dismissing with prejudice claims unrelated to the medical malpractice/breach of fiduciary claims. Then, the parties would know what the claims were and develop a discovery plan for the entire case. Plaintiffs, however, want both to have their cake by wanting immediate discovery and to eat it too by maintaining – and indeed, filing five objections – to keep the uncertainty of their claims alive.[7]

## IV.    DEPOSING DR. WATSON ON MATTERS WHICH MAY BE OUTSIDE THE SCOPE OF PLAINTIFFS' CLAIMS AND DESIRING IMMEDIATE DISCOVERY DOES NOT JUSTIFY PLANNING TO DEPOSE DR. WATSON ON MULTIPLE OCCASIONS.

The scope of examination on a discovery deposition is limited in that "first, that **it must deal with a topic which is relevant to the subject matter involved in the pending action**, and, second, that the deponent may not be examined regarding any privileged matter." *O'Donnell v. Breuninger*, 9 F.R.D. 245, 248 (D.D.C. 1949) (emphasis added). In attempting to depose Dr. Watson before the final contours of the Amended Complaint are set, plaintiffs seem to hope to question him about issues relating to all twelve of their original counts. It is impermissible, however, for Dr. Watson to be asked questions regarding claims that the Court later dismisses. *See Oppenheimer Fund, supra*, 437 U.S. at 349.

---

[7] Despite repeated requests to date, plaintiffs' counsel has never explained why he needs to take immediate discovery, nor will he agree to one deposition of fact witnesses, limited to the medical malpractice claims should he wish to take discovery now or wait to take discovery until the breadth of plaintiffs' claims are known, which would appear to be the logical options.

Allowing plaintiffs to take the deposition of Dr. Watson now as to the medical malpractice claims and then to allow a second bite at the apple should any claims be returned to the Amended Complaint is totally unwarranted when plaintiffs' only justification for repeat deposition is their unwillingness to wait for discovery (although they waited for six and half years to file their Complaint) until the appropriate time when their claims are set. While re-deposing any witness always creates "undue burden and expense," this is particularly true when the deponent is a practicing doctor. Dr. Watson is currently the Chief of Interventional Neuroradiology at Georgetown University Hospital, and in that capacity serves as a professor, researcher, and medical care provider. While Dr. Watson is ready to give his testimony in this case, he should not be forced to do so *twice* merely because plaintiffs – who waited over six years to bring their claims – are unwilling to wait until their claims are established.

Under Federal Rule 30(a)(2)(B), "[a] party must obtain leave of the court ... [whenever] the person to be examined has already been deposed in the case." "[C]ourt[s] rarely grant the opportunity for a second deposition." *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 605 (D. Kan. 1998); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996) (quoting *TBG Inc. v. Bendis*, No. 89-2423-EEO, unpublished op. at 2-3 (D. Kan. Feb. 17, 1993)). "Scheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense." *Id.*

Desiring to violate the discovery rules by taking two depositions because plaintiffs cannot wait (despite having delayed for six and a half years before filing suit) to conduct discovery cannot be characterized as "good cause" as set forth in Federal Rule of Civil Procedure 30. Clearly, "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the

nmuzin@wc.com

Attorneys for Defendants

importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"[8] as plaintiffs should conduct their deposition pursuant to a discovery plan, set after plaintiffs' claims are established. For these reasons, Defense counsel have maintained from the outset that Plaintiffs should either agree to limit their deposition questioning to those claims which have been fixed and be allowed only one deposition of Dr. Watson (or any other witness), or hold off on the deposition until the Court decides the contours of the case.

## CONCLUSION

No reasonably competent attorney would move to compel a Scheduling Order or deposition when the claims that make up the litigation have not been set. Hopefully, no Court action will be required as plaintiffs may avail themselves of the "safe harbor" provision of Rule 11, served simultaneously with this Opposition, and withdraw this motion.

However, in the event that plaintiffs' motion is not withdrawn, for all the foregoing reasons, defendants urge the Court to deny plaintiffs' Motion to Compel the Deposition of Vance E. Watson and Motion for Scheduling Order.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: December 4, 2006        By:  _Megan P. Hills_
                                    Megan E. Hills (D.C. Bar #437340)
                                    Nicolas Muzin (D.C. Bar #500106)

                                    725 Twelfth Street, N.W.
                                    Washington, D.C. 20005
                                    (202) 434-5000
                                    (202) 434-5029 (fax)
                                    mhills@wc.com

---

[8] Fed. R. Civ. P. 26(b)(2).

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendants' Opposition to Plaintiffs' Motion to Compel the

Deposition of Vance C. Watson and Motion to Compel Scheduling Order was served, pursuant to Local

Rule 5.4(d)(1), by electronically filing the foregoing on the CMF/ECF software on lead counsel of record,

Anthony Newman, Esq., and simultaneously hand-delivered, as well hand-delivering Defendants' Motion

for Sanctions Pursuant to Federal Rule of Civil Procedure 11, this 4th day of December, 2006 on:

> Anthony Newman, Esquire
> Edward McIntosh, Esquire
> Newman & McIntosh
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Attorneys

and a courtesy-copy of Defendants' Opposition to Plaintiffs' Motion to Compel the Deposition of Vance C.

Watson, M.D. and Motion to Compel Scheduling Order hand-delivered to:

> The Honorable Paul L. Friedman
> Chambers
> United States District Court for the District of Columbia
> 3 rd & Constitution Avenue, N.W.
> Washington, D.C. 20001
>
> The Honorable Alan Kay
> Chambers
> United States District Court for the District of Columbia
> 3 rd & Constitution Avenue, N.W.
> Washington, D.C. 20001



Megan E. Hills