UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KARYN A. KERRIS, et., al.** | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CASE NUMBER: 1:05CV02086 |
| | : | JUDGE:  Paul L. Friedman |
| v. | : | DECK TYPE:  Personal Injury/Malpractice |
| | : | |
| | : | |
| **GEORGETOWN UNIVERSITY, et., al.** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION  TO PLAINTIFFS' MOTION TO COMPEL[1]**

The present matter is at issue because Plaintiffs believe that proceeding with discovery and moving this litigation toward trial is the best interest of the parties and the Court.  While the Opposition argues that such forward motion is not only prejudicial it is sanctionable, such arguments strain all logic.  The Opposition is nothing but a monolog of *ad hominem* attacks, misstatements, fragmented citations and disingenuous arguments attempting to impugn ill motives to Plaintiffs and Plaintiffs' counsel.  Plaintiffs only motive in filing a Motion to Compel is to proceed with discovery to prove that Georgetown University employee Vance E. Watson, M.D., illegally smuggled unapproved Class III medical devices in to the United States and negligently injected them into Plaintiff Karyn Kerris in a manner forbidden by the manufacturer, leaving her permanently disabled.

---

[1] Plaintiffs recognize that during the pendency of the present Motion to Compel the Court may issue a final ruling on the Report and Recommendation of Magistrate Judge Kay, rendering all said issues moot.   However this pleading as with the others have been filed in an abundance of caution.

## **DEFENDANTS CONTINUES TO ARGUE IN FAVOR OF DELAYING THE LITIGATION**

Rather than providing a single reason for refusing to meet with Plaintiffs' counsel to discuss a potential discovery schedule, Defendants chose instead to avoid the issue by attempting to blame all of the delays on the Plaintiffs and/or Plaintiffs' counsel. First Defendants blame the catatonic plaintiff, by arguing that she, "neglected to tell the Court that [she] delayed over six and a half years before filing this lawsuit (for no discernible reasons)," thereafter Defendants blame Plaintiffs' attorneys arguing that "surely [plaintiffs] lawyers would have found their way to a courtroom in less that six and a half years." (Opp. 5). While these pre-suit issues are irrelevant to the present discovery dispute, plaintiffs' counsel, in response to Defendants' opposition, addresses them briefly.

If suit was delayed, it was because of the actions or inactions of *Defendants*. It was Vance E. Watson, M.D., and Georgetown University Hospital who withheld critical facts from Mrs. Kerris and her family and omitted in the medical records any reference to the illegal unapproved devices that were injected into her brain. It was only after Plaintiffs' counsel made a serendipitous discovery in another case that some embolizations may have been performed with illegal unapproved Class III devices (Histoacryl and Lipiodol), that Counsel began to become suspicious that the same devices may have been used on Mrs. Kerris. However, it was not until the Declaration of Vance E. Watson, M.D., on March 3, 2006 that the Defendants finally name the devices; however, to date they have not admitted that the devices were used in this Mrs. Kerris' care.

Defendant also ignores the issue that delaying the litigation delays Mrs. Kerris' medical care. Defendant flippantly states that "one wonders – if it is dependent on this litigation – what Mrs. Kerris did for "life saving medical care" during the six and a half years that plaintiffs waited to file suit" (Opp. 5). Defendants are either inferring that Mrs. Kerris does not require specialized medical care or that there is no urgency in providing her with said care. Both inferences lack merit. Mrs. Kerris is catatonic and cannot care for herself; she requires around-the-clock medical care and observation. To date, her family and a hand full of healthcare providers have attempted to provide her with some of her necessary medical care in a make-shift hospital room on the first floor of her parents' house; a situation that is grossly inadequate. The exact nature and extent of Mrs. Kerris's medical needs are attached hereto in a preliminary life care plan created by Plaintiffs' expert, Craig Lichtblau, M.D. (Exhibit A).

### MAGISTRATE KAY'S COMMENTS ARE CONSISTANT WITH THE CONTINUATION OF DISCOVERY

Defendants devote an entire page to the statements made by Magistrate Judge Kay on September 8, 2006, during a hearing, in an effort to demonstrate that Plaintiffs' counsel "completely misrepresents what the Court said." (Opp. 6). Plaintiffs' counsel recalled, without the benefit of a transcript, that Magistrate Kay stated "that the parties should cooperate in discovery, for **regardless of the scope** of the final ruling on motions, **the case would go forward**." (Opp. 6, emphasis added). When the relevant portions of the transcript are reviewed, it establishes that Plaintiffs' counsel was "completely" correct. In fact, Magistrate Judge Kay stated, "I think there is no doubt that **the case is going to go forward** regardless of how Judge

Friedman rules on this, with respect to a medical malpractice." (Opp. 6, emphasis added). Therefore it was the Court's intention to allow discovery to proceed.

It should be noted that the issue of discovery was brought to the Court's attention by Defendants' counsel in an effort to obtain certain medical records. Such a discovery request undermines Defendants' position that all discovery must be stayed pending a final order. Defendants' rebuttal to this issue is, "[p]laintiffs confuse the informal exchange or seeking of medical records with formal discovery." (Opp. 7). Discovery is discovery. There is no authority, nor do the Defendants offer any, for distinction between "formal" and "informal" discovery.[2] Defendants' request for medical records establishes Defendants' intent to conduct discovery before the Court's final order. Thus, on September 8, 2006, counsel and the Court agreed to conduct discovery. Now, the Defendants have decided to change their minds.

### DR. WATSON'S DEPOSITION SHOULD GO FORWARD REGARDING ISSUES RELATED TO COUNTS I,VII,IX,X-XII.

The central argument behind Defendant's refusal to proceed with discovery is because there are, according to Defendants, "…from **none** to six of plaintiffs' claims in play, plaintiffs' Amended Complaint is in flux, [and] any reasonable competent attorney would know that it is impossible to determine what the claims are, much less what their bases are…" So no discovery can be conducted. (Opp. 8). First of all the predicate to the argument is false. Regardless of the final order, the number of plaintiffs' claims could never be reduced to "**none**." After all, two counts were not the subject of Defendants' motions to dismiss and for summary

---

2 Even assuming, *arguendo*, that there was a such a distinction, nothing is more "formal" than making a request for discovery in open Court.

judgment, Count I (malpractice) and Count VII (breach of fiduciary). Moreover, neither Plaintiffs nor Defendants filed Objections to the Report and Recommendation's finding regarding Count IX (punitive damages) and Counts X-XII (negligence p*er se*) which remain in the case. (See Report &Recommendation and Objections thereto). Therefore, the litigation will, in all probability, continue as to at least six (6) Counts.

Defendants cite to the Supreme Court decision in *Oppenheimer Fund, Inc. v. Sanders* for the proposition that all discovery should be denied if any claims could be stricken. 437 U.S. 340, 349 (1978)[3]. Unfortunately for Defendants' argument, the District of Columbia is a notice-pleading jurisdiction. With that in mind, a proper reading of the *Oppenheimer* holding shows,

> [c]onsistently with the notice-pleading system established by the Rules, **discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.**

437 U.S. at 351 (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)(emphasis added). Following on with Defendants' "authority" is *Planned Parenthood Federation of America, Inc. v. Heckler*, which Defendants cite for the proposition that Oppenheimer stands for an absolute limitation on discovery. A complete reading of the cited portion, including the sentences conspicuously missing in the Opposition and replaced with an ellipse (…) demonstrates the opposite:

> [I]n order for information to be relevant to the subject matter of the pending action it must either bear on or reasonably lead to other information which could bear on any issue that is or may be in the case. **This broad test is self-limiting. The information sought must at a minimum, lead to other matter which**

---

[3] Plaintiffs searched Defendants' citation and were unable to locate said quote until page 352.

**could be properly in the case.** Conversely, if an issue is not properly part of the case, as a matter of law, then discovery in that vein is inappropriate.

*Planned Parenthood Federation of America, Inc.* 101 F.R.D. 342, 344 (D.D.C. 1984) (emphasis added). The test for discovery is that the information sought is evidence that could "lead to other matter[s] which could be properly in the case." *Id.*

Finally, Defendants' argument that a "premature" deposition would subject Dr. Watson to a second deposition is baseless. Delaying the deposition of Dr. Watson under the theory that the remainder of plaintiffs' claims [Count II(lack of informed consent), Counts III, IV, V (product liability), Count VI(fraud)] are not yet established is simply an argument of form over substance. It is hard to see how a deposition on the broad issue of negligence would not allow Plaintiffs the latitude to discover all the issues that there will ever be in this litigation regardless of how many Counts are ultimately tried.[4]

                                      Respectfully submitted,

                                      NEWMAN, MCINTOSH & HENNESSEY, LLP.

                                      By:    /s/ Anthony G. Newman_____
                                                   Anthony G. Newman
                                                   7315 Wisconsin Ave., Suite 700E
                                                   Bethesda, Maryland 20814
                                                   301-654-3400
                                                   Attorney for the Plaintiffs

---

[4] Plaintiffs also note that accompanying plaintiffs' copy of Defendants' Opposition was a Motion for Sanctions under Federal Rule of Civil Procedure 11. Defendants stated that they included this motion "hoping that he will withdraw the present motion" (Opp., 2). Regardless of the propriety of such an offer, it is curious that such a Motion would be sent when Rule 11 specifically states that it does "not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 though 37." Therefore, the very threat of filing a motion for rule 11 Sanctions and/or the filing of such a motion is, in itself, a violation of Rule 11. Fortunately, Plaintiffs will not focus the Court's resources on such a matter.

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing Reply to Defendants' Opposition to Plaintiffs' Motion to Compel the Deposition of Vance E. Watson, M.D., or In the Alternative, Motion For Scheduling Order was sent via US Mail postage pre-paid first class on December 6, 2006 to the following:

Megan E. Hills, Esq.
Nicolas Muzin, Esq.
Williams & Connelly, LLP
725 Twelfth Street, NW
Washington, D.C. 20005

Andrew Greenwald, Esq.
Joseph, Greenwald and Laake
6404 Ivy Lane, Suite 440
Greenbelt, Maryland 20770

                                           /s/ Anthony G. Newman
                                           Anthony Newman