UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | Civ. Act. No. 1:05CV02086 (PLF) (AK) <br><br> Judge Paul L. Friedman <br><br> Magistrate Judge Alan Kay |

### DEFENDANTS' OPPOSITION AND SUPPORTING MEMORANDUM TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS AND COSTS

A picture is worth a thousand words and perhaps, a videotape, even more. Defendants[1] submit the videotape of the deposition of Vance Watson, M.D. ("Dr. Watson") to Magistrate Judge Kay,[2] to arrive simultaneously with the electronic filing of this Opposition to Plaintiffs' Motion to Compel and for Sanctions, which motion is based on a deposition that plaintiffs noticed, yet who arrived without any copies of the documents for the witness on which they sought Dr. Watson to testify. Plaintiffs abruptly terminated the deposition by walking out after arguing with the witness as to the meaning of a document **without** ever providing a copy of the document to the witness or his counsel. Plaintiffs' counsel left the deposition room without

---

[1] Defendant Georgetown University and Defendant Vance E. Watson, M.D., are collectively referred to as "defendants."

[2] A place is held hereto for Exhibit 1 as the videotape of the 3/27/07 Deposition of Vance E. Watson, M.D., which videotape plaintiffs' counsel already has and which cannot be electronically filed.

mentioning the subpoena *duces tecum*, making any motion to compel or sanctions (as well as the Certification of Compliance) based thereon procedurally invalid and in violation of Federal Rule of Civil Procedure 37 ("Fed. R. Civ. P.").

Plaintiffs' counsel walked out of the deposition after objection was raised to reading a document – the Histoacryl package insert – to Dr. Watson, characterizing it, and asking Dr. Watson to agree with his characterization – **all without providing the document to the witness.** Plaintiffs' counsel appear to believe that they do not have to furnish documents to a witness, nor exhibits for an examination. As was said at the deposition:

> To object to misstating the document is not a speaking of
> Document [sic "objection"]. Moreover, [plaintiffs' counsel's] demeanor
> and his questions have been misleading of these documents, nor has he
> allowed the witness to look at these documents to show that they are
> misstated. If he chooses to leave now, we will ask the magistrate judge to
> ask that the expense be borne by the plaintiffs. We are prepared to stay
> here for the two and-a-half hours that he represented that he would be
> here. However, if they choose to leave after this expense, that is their
> choice.

3/27/07 Deposition of Vance E. Watson, M.D., at 43:2-14 ("3/27/07 Dr. Watson Dep."; transcript attached as Exhibit 2).

Without giving the document to Dr. Watson, plaintiffs' counsel purports to read it, characterize it, and challenge the witness as to counsel for the plaintiffs' interpretation of the document – all without giving the document to the witness.

> Q. Do you recall [reading from the document] there being a contraindication that **said the administration to blood vessels should be avoided** on account Of risk of thrombosis and damage to the Vascular wall? Do you recall that contraindication?
>
> A. I don't remember the exact wording. Our goal is to block off the blood vessels. And I do remember that wording but the sole purpose of the embolization is to block off the blood vessel.

2

> Q. I understand, doctor. That was your purpose. But then you did recognize, when **you were using Histoacryl, it was contrary to the manufacturer's contraindication that says do not put it in blood vessels**?
>
> MS. HILLS: Objection. Misstates the document. **You have the document before you so the document speaks for itself. But I believe what you read, sir, is that it <u>should be avoided</u>, not that the manufacturer said it was contrary to its use.**
>
> THE WITNESS: It very clearly did not say it is contraindicated for this purpose.
>
> \* \* \* \*
>
> Q. Doctor, **are you surprised that within Histoacryl's contraindication what you said would not be a contraindication specifically says administration to the intima and media of blood vessels should be avoided on account of risk of thrombosis and damage to the vascular wall**?
>
> MS. HILLS: Objection. The document speaks for itself.
>
> MR. NEWMAN: **My question is are you surprised by that being a contraindication when you said it wasn't?**
>
> A. It is not a contraindication. It is telling you, if you apply it to the blood vessel wall, you will block the blood vessel off. Since our entire goal is to block the blood vessel off, I don't follow your question.
>
> MR. NEWMAN: Doctor, **why did the manufacturer of Histoacryl say** it is contraindicated to block the blood vessel wall and you say that that is incorrect?

3/27/07 Dr. Watson Dep. at 39:15-40:18; 41:9-10. This entire discussion about what a document does or does not say is going on **without** the witness ever being given or shown the document. The witness is being told that he is wrong about what a document **says**, but only plaintiffs' counsel has a copy of the document.

Defendants request the Court to view the short tape to hear the respective tones, comments, and behavior of counsel in assessing the claims of Plaintiffs' Motion. As plaintiffs' citations throughout their Motion show as does the tape, at no time did defense counsel make a

"speaking objection" or a statement that "provided the witness with a response to a deposition question" or that "coached the witness." Plaintiffs' Motion at 9-10, but preserved the objection that when being asked to comment on a document, the witness should be given the document as a witness testifying in a deposition is no different than a witness testifying in Court: If he is asked about a document and states that he cannot answer the question without being provided a copy of the document, the examiner either provides copies of the document to the witness, opposing counsel, and the Court (here, the court reporter) or decides that if the witness cannot answer without the document and he does not wish to provide it, the examiner will forgo the answer.

Plaintiffs' Motion attempts to obfuscate counsel's failure to bring documents for the deposition by pointing to the subpoena *duces tecum*. (Attached as Exhibit 3). On March 9, 2007, defendants delivered over 3,500 pages of records regarding Ms. Kerris – all of the records in defendants' possession, custody, and control. This production was supplemented by 102 documents from NIH when plaintiffs provided an authorization to NIH for medical records. Although plaintiffs never mentioned the subpoena *duces tecum* at Dr. Watson's deposition – leaving before any statement could be made – Dr. Watson cannot produce items that are not in his possession, custody, or control or where production would be illegal. Thus, plaintiffs' Motion for Sanctions is based on the false statement – "failure to produce documents in response to Dr. Watson's deposition notice" – as there are no documents responsive to the <u>valid</u> requests, nor did plaintiffs ever discuss the subpoena *duces tecum* with defendants and, in fact, left prior to defendants being able to provide them with the documents that may be responsive to Request 11,

4

which are attached hereto as Exhibit 4.[3] Plaintiffs' Motion at 1.[4] Dr. Watson has no documents responsive to Requests 7-9, 12, and 15-17. The remaining requests are either or both invalid and illegal.[5] Dr. Watson has no document responsive to Request 8; however, plaintiffs already have the documents that Georgetown University Hospital produced that were responsive.

---

[3] As no "letter of need" was required for Ms. Kerris, Dr. Watson has no records responsive to Request 11; however, out of an abundance of caution, Dr. Watson produces the documents, attached hereto at Exhibit 4.

[4] Requests 1-6, and 8 of the subpoena *duces tecum* ask Dr. Watson for Karyn Kerris's medical records. *See* Exhibit 3. **These records were already produced to plaintiffs on March 9, 2007 by Defendant Georgetown University Hospital** (If plaintiffs would like copies of nondocumentary records – films, x-rays, *etc.* from Georgetown University, it can certainly be arranged), none of these items are in Dr. Watson's possession, custody, or control. Fed. R. Civ. P. 33(b) and 34. These are Georgetown Hospital medical records, not Dr. Watson's medical records. *Parsley v. Assoc. in Internal Medicine*, 484 N.Y.S.2d 485 (Sup. Broome 1985). Ms. Kerris was a Georgetown patient, not Dr. Watson's private patient. As he testified, 3/27/07 Dr. Watson Dep. at 35:11, it has been a long time since Dr. Watson has even seen (and even then not professionally) Ms. Kerris. Only Georgetown and plaintiffs may exercise control over them. *Parsley, supra.* One cannot argue that Dr. Watson has "control" over Ms. Kerris's medical records because his counsel has custody of the records. Counsel obtained these records from her client, Georgetown University Hospital, not from her client, Dr. Watson. It would result in an irrefutable conflict of interest if a client was deemed to have control over documents that his counsel gained through counsel's representation of another co-defendant client. If Dr. Watson were to remove or copy a record of any Georgetown patient, he would be sanctioned. One cannot serve a subpoena *duces tecum* for documents that a defendant does not possess and does not have custody or control over. **Plaintiffs already have these records from defendants**; therefore, it would seem to be an abuse of the discovery rules as well as overly burdensome for plaintiffs to attempt to use the discovery rules to obtain a second copy of the same documents. Absent good cause, plaintiffs should not be able to require documents to be produced over and over, merely because they want additional copies of them, but here where a party does not have control over the documents, he cannot produced them, regardless. *See* Exhibit 3.

[5] Requests #10, #13, and #14 are invalid under Fed. R. Civ. P. 34, in that a party cannot be compelled to create a new document or other tangible item in order to comply with a discovery demand, but as to Requests #13 and #14, D.C. Code 14-307(a) forbids physicians from disclosing the identity and information regarding other patients. *Orzech v. Smith.* 785 N.Y.S.2d 643 (N.Y.A.D. 2004); *Smithson v. Stanton,* 2 Mackey 6 (D.C. Sup. 1869); *In re Guzman*, 19 S.W.3d 522 (Tex. App. – Corpus Christi – 2000).

At the outset, one should note the cooperative attempts both the witness and defense counsel made to get plaintiffs the information they sought. After the witness asked for a question to be rephrased so that he would be able to answer it, counsel **never** entered an objection (as is shown by the excerpt plaintiffs' counsel placed in their Motion at 4), but attempted to get the examiner the information he sought – an attempt with which the witness agreed. The full exchange (and the tone of the tape) shows that defense counsel acted in the best interests of discovery – to get each side the information it deems relevant – and not to obstruct it.

> Q. Is there any particular training for interventional neuroradiology at the present time that results in any kind of certificate or certification?
>
> A. Rephrase the question.
>
> Q. Isn't there presently a process by which people can become certified in interventional neuroradiology?
>
> A. There is no special added qualification at the current time.
>
> Q. There is actually, though, criteria and a process by which one takes courses and becomes certified in interventional radiology, isn't there, at the present time?
>
> A. No, there is not.
>
> MS. HILLS: I think the problem, counsel, is your word certified.
>
> THE WITNESS: Yes.
>
> MS. HILLS: I think the doctor is trying to answer your question but I think you are misusing the term, certified or certification. Perhaps that's why the doctor asked you to rephrase.
>
> MR. NEWMAN: Thank you, counsel. But I would ask that there be no speaking objections on the record. You may object to it and I will clarify.

3/27/07 Deposition of Vance E. Watson, M.D., at 6:4-9 ("3/27/07 Dr. Watson Dep."). **No objection was made**, but having been told that any attempts to help plaintiffs' counsel get information was viewed as offensive, it was not done again.

Similarly, when plaintiffs' counsel started to question Dr. Watson on documents without providing a copy for Dr. Watson or his counsel, defense counsel went off the record to make copies for the room. For example, on pages 4-5 of Plaintiffs' Motion for Sanctions, plaintiffs' counsel omits transcript showing that **he brought no copies of the documents on which he wished to question Dr. Watson for Dr. Watson or his counsel.**

| | |
|---|---|
| MR. NEWMAN: | Doctor, let me switch now to an issue involving a document which is eight pages long and entitled the declaration of Vance Watson. While there is other writing on that document, I am going to ask you if you recognize that document. |
| MS. HILLS: | Do you have a copy for counsel? |
| MR. NEWMAN: | Of the declaration that you drafted? **I don't think so.** |
| MS. HILLS: | Let's go off the record. I would like to have a copy at the same time my witness has a copy. |
| MR. NEWMAN: | That's fine. |
| MR. GREENWALD: | A clean copy. [However, plaintiffs' counsel had not brought a clean copy of the document on which he wished to question the witness such that copies were made of the document on which his questions were based.] |
| MR. NEWMAN: | All right. Go off the record. |
| MR. NEWMAN: | Dr. Watson, **since counsel demanded a copy that I have** my own not clean version, that has some writings on it, I am going to ask you to disregard what is there in penmanship. We are referring to, of course, the printed section of this document. |
| MS. HILLS: | Objection to sidebar. |

3/27/07 Dr. Watson Deposition at 12:11-13:18 (emphasis added).

"[T]he deposing attorney should furnish counsel with a copy of the document [simultaneously as to the witness]." *In re Amezaga*, 195 B.R. 221, 227 (Bankr. D.P.R. 1996). Some courts even hold that the precise documents to be used by an examiner during a deposition

7

should be provided prior to that deposition, which is far more than what was being requested here. "Interrogating counsel should make a sincere effort to supply the witness and opposing counsel with all documents about which he intends to question him within a reasonable time prior to the deposition." *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98 (S.D.Ohio,1995).

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it **is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom.** Thus, the witness is placed under oath and a court reporter is present.

*Id.* (Emphasis added). If a witness on the witness stand were asked to testify as to a document's veracity or otherwise comment on it, the document would be provided by the examiner posing the question when the document was requested. Opposing counsel would not jump up and run to the witness stand to hand anything up. How would one ever be able to anticipate the particular documents another counsel wishes to use in an examination?

"An oral deposition is conducted by examination and cross-examination in the same manner as the taking of testimony during trial." 11A Am. Jur. Pl. & Pf. Forms Federal Practice & Procedure § 771. "Deposing counsel shall provide to the witness's counsel a copy of all documents shown to the witness during the deposition, and may do so either before the deposition begins or contemporaneously with the showing of each document." 7Ann.2005 ATLA-CLE 1511 2 Ann.2005 ATLA-CLE 1511 (2005). "[As] a general rule books, papers, or documents offered in evidence, identified or referred to by the witness, should be annexed to the deposition." CORPUS JURIS SECUNDUM: Depositions – Exhibits § 86.

| | |
|---|---|
| MR. NEWMAN: | Let me ask you specific questions rather than have you look through the whole document as to the areas I am questioning you about. |
| MS. HILLS: | Are we going to mark this as an exhibit for this deposition? |
| MR. NEWMAN: | Counsel, you have asked me to provide him a copy that is dirty. I will do that. We will mark it as Exhibit 1. I don't ask to attach it because it does have notes that may or may not be relevant. Certainly, we can identify it as Exhibit 1. |
| MS. HILLS: | Let's get it marked as Exhibit 1. If you didn't bring a clean copy for your exhibit, I don't think you can withhold it as an exhibit at this deposition. |
| MR. NEWMAN: | **Counsel, you are kidding. You drafted the declaration, had your client sign it. Now you are telling me that I can't use because I didn't bring a copy? You didn't bring a copy.** |
| MS. HILLS: | **No, sir, it is not my deposition.** |
| MR. NEWMAN: | That's fine. |

3/27/07 Dr. Watson Deposition at 15:13-16:14 (emphasis added).

Throughout the deposition, plaintiffs' counsel refused to provide the witness with the documents for which the witness asked and misstated documents where plaintiffs' counsel had the only copy. As an example, plaintiffs' counsel repeatedly represented to the witness that he had read the entire paragraph of a document, which was demonstrably untrue.

| | |
|---|---|
| MR. NEWMAN: | **I will do the entire paragraph again**, since counsel is not allowing the questions. Ms. Kerris was asymptomatic until 1998 when she began experiencing increasing difficulty with balance and progressive slurring of speech, comma, increasing in frequency, so that by November, 1998 Ms. Kerris was experiencing them every two to three days and she reported having blacked out on July 4, 1998 while driving. First of all, did I read that – |
| MS. HILLS: | Objection, fails to read the entire paragraph. Objection, fails to provide the records which the reader is directed to in the paragraph. And fails to provide the witness the basis on which he signed this affidavit which are the records to which both the reader is directed to and is cited in the paragraph. |

3/27/07 Dr. Watson Dep. at 25:5-26:2. The entire paragraph reads: "Ms. Kerris was asymptomatic until March 1998 when she began experiencing increasing difficulty with balance and progressive slurring of her speech, increasing in frequency so that by November 1998, Ms. Kerris was experiencing them every 2 to 3 days and she reported having blacked out on July 4, 1998 while driving. *See* **11/4/98 GUH Consultation Report (Ex. 3). Ms. Kerris also carried the diagnosis of having Turner's Syndrome.** *Id.*[6]" *See* Exhibit 1 to Watson's Deposition (attached hereto as Exhibit 5; emphasis added). In turn, footnote 2 directs one to additional medical records – all of which are in plaintiffs' counsel's possession – and paragraph two of the Statement of Facts that accompanied defendants' Motion for Partial Summary Judgment.

As even cited in Plaintiffs' Motion, plaintiffs' counsel went on to ask the witness to swear to the statements in his affidavit, which he had sworn to earlier with the records, **without having the records.**

| | |
|---|---|
| MR NEWMAN: | **Can you testify under oath that, in fact, as you swore under the penalty of perjury, that those were Ms. Kerris' symptoms at the time you evaluated her, as it states in paragraph three?** Can you swear under oath that that is true? |
| MS. HILLS: | Same objections, particularly of not providing the doctor with the records to which the paragraph directs. |
| **THE WITNESS:** | **May I see my records?** |
| BY MR. NEWMAN: | Sure. Let me ask you this. **Doctor, did you tell counsel not to give you any of your office records, or any medical records in this case?** |
| MS. HILLS: | Objection. Do not answer that. It intrudes upon the attorney-client privilege. |

---

[6] Footnote 2 of Dr. Watson's Affidavit states in full: "*See* definition of Turner's Syndrome at SOF ¶ 2," referencing in turn Defendants' Statement of Undisputed Facts.

10

| | |
|---|---|
| MR. NEWMAN: | Doctor, can you answer any questions in this deposition without your full medical record? |
| MS. HILLS: | Objection. Calls for speculation. |
| THE WITNESS: | **I have a recollection that Karyn came to us with abnormal gait, slurring, decreased mental function. <u>If we want to go into further details, it does reference this record, and I should match paragraph three with the record.</u>** |

3/27/07 Dr. Watson Dep. at 26:14-27:22 (emphasis added). Plaintiffs' counsel is free to ask a witness about his general recollections, but when an examiner bases a question on a document that refers to other documents he should provide the witness with those documents. It is unfair to ask a witness to answer a question based on a document, which the examiner refuses to provide.

Beyond asking a witness about a document – the affidavit – copies of which plaintiffs' counsel had not brought for that witness, when a document incorporates others Federal Rule of Evidence 106 requires: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The United States Supreme Court similarly holds:

> The common-law "rule of completeness," which underlies Federal Rule of Evidence 106, was designed to prevent exactly the type of prejudice of which Rainey complains. In its aspect relevant to this litigation, the rule of completeness was stated succinctly by Wigmore: "[T]he opponent, against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance." 7 J. Wigmore, Evidence in Trials at Common Law § 2113, p. 653 (J. Chadbourn rev. 1978).[FN14] The Federal Rules of Evidence have partially codified the doctrine of completeness in Rule 106. . . . FN 14: **In addition to this concern that the court not be misled because portions of a statement are taken out of context, the rule has also addressed the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a *subsequent* presentation of additional**

>   **material.** The issue in this litigation, however, involves only the first concern.

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 451 (U.S. 1988) (emphasis added). To the extent plaintiffs' counsel complains that he could not question a witness on documents because he failed to bring the witness a copy of documents, he is correct, but he can only blame himself.

To the extent plaintiffs' counsel now complains of objections (none of which were speaking) not dealing with his failure to provide the witness with the document on which he was questioning him, defense counsel's objections were used by plaintiffs' counsel in his questions to the witness, as if the objection had been overruled; thus, telling the witness that his questions were proper. What is more is that plaintiffs' counsel **accepted the validity** of the objections of which he now complains by changing his question:

| | |
|---|---|
| MR NEWMAN: | Probably greater. Do you know, do you have a percentage opinion as opposed to just probably greater? |
| MS. HILLS: | Objection. Calls for speculation. Asked and answered. |
| MR. NEWMAN: | **Doctor, <u>let me tell you that every question I ask you to a reasonable degree of medical certainty does not ask you to speculate</u> but give me your opinion as a clinician, if you had one, <u>now or at the time.</u>** |
| MS. HILLS: | Objection. Overbroad. Dr. Watson's opinion in 2007 has no relevance as to his questions here today as a fact witness regarding what happened in 1998. I stand by my objections. |
| MR. NEWMAN: | Doctor, then let's, for counsel's sake and for this deposition, refer to your opinions in 1998 to a reasonable degree of medical certainty. Now, **did you have an opinion in 1998** to a reasonable degree of medical certainty as to the percentage chance of Karyn Kerris' AVM bleeding beyond the fact that it was somewhere greater than four percent? |
| MS. HILLS: | Objection. **Calls for speculation.** |

| | |
|---|---|
| MR. NEWMAN: | **Doctor, first of all, <u>are you speculating</u> or can you answer that to a reasonable degree of medical certainty?** |
| MS. HILLS: | Objection to counsel's sidebar. Objection, calls for speculation. We are in 2007. You are speculating on 1998. |

3/27/07 Dr. Watson Dep. at 21:8-22:20 (emphasis added).

    Defendants believe there is no basis for Plaintiffs' Motion and that they were in error to conduct a deposition without documents for the witness as well as unilaterally terminating it. Defendants also believe Plaintiffs' Motion for Sanctions is unwarranted as documents that plaintiffs already have cannot be compelled from a person who does not have possession, custody, or control of them. Defendants further believe that stating one is going to file a Motion to Compel when leaving a deposition does not meet the requirements of a meet and confer. Lastly, plaintiffs' statement of costs is patently overreaching and contrary to what is allowed under the law, even if one were, *arguendo*, to find them warranted.[7]

---

[7] Plaintiffs' account of their expenses is wildly exaggerated. On their Schedule of Attorney Fees and Costs (Exhibit 3 to Plaintiffs' Motion to Compel), plaintiffs have included a barrage of extraneous charges **dating as far back as March 21, 2006.** The Federal and D.C. local rules only allow sanctions for reasonable costs and attorney's fees incurred *as a result* of the conduct in question. *See* Fed. R. Civ. P. 37(a)(4)(A) ("reasonable expenses *incurred in making the motion*"); D.C. District Court Rule 26.2 ("reasonable costs and attorney's fees incurred by any party *as a result* [of the conduct alleged]") (emphasis added). Plaintiffs' costs prior to the Court's Order of February 28, 2007 could not reasonably have been incurred as a result of Defense counsel's complained of behavior since Plaintiffs' whole premise for costs begins with Defendants' alleged defiance of the February 28th Order *at Dr. Watson's deposition* and alleged failure to produce documents *at Dr. Watson's deposition*. Charges, therefore, that *predate* these events cannot have been incurred as a result of complained of behavior. A tally of the charges alleged to have been incurred by Plaintiffs *after* the Court's Order of February 28, 2007 – the earliest date from which Plaintiffs' charges could have begun – shows the total to be $2029.25 – less than 1/6 of what Plaintiffs have asked for. Defendants, however, do not believe that any sanctions are warranted.

## CONCLUSION

**WHEREFORE,** Defendants request the Court to deny Plaintiffs' Motion to Compel, For Relief, and For Sanctions and Costs and to award Defendants reasonable attorney's fees and costs spent in opposing the motion and attending the March 27, 2007 deposition, which plaintiffs' counsel chose to terminate, should the Court allow plaintiffs' counsel to depose Dr. Watson again, pursuant to Fed. R. Civ. P. 37(B).

Depositions should be conducted as examinations in Court with copies of documents for all, if having future depositions in front of a Magistrate Judge would effect that goal, Defendants have no objection to it. Defendants also request the Court to require that the Examiner at any deposition to provide simultaneous copies of documents on which they wish to question a witness to the witness and the witness's counsel.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: April 16, 2007          By: _____
                                    Megan E. Hills (D.C. Bar #437340)
                                    Nicolas Muzin (D.C. Bar # 500106)

                                    725 Twelfth Street, N.W.
                                    Washington, D.C. 20005
                                    (202) 434-5000
                                    (202) 434-5029 (fax)
                                    mhills@wc.com
                                    nmuzin@wc.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, <br> As Guardian of the Person and Property of <br> KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, <br> GEORGETOWN UNIVERSITY, t/a <br> Georgetown University, and <br> VANCE E. WATSON, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. Act. No. 1:05CV02086 (PLF) (AK) <br> ) <br> ) Judge Paul L. Friedman <br> ) <br> ) Magistrate Judge Alan Kay <br> ) <br> ) <br> ) <br> ) |

## ORDER

**WHEREFORE**, after consideration of Plaintiffs' Motion to Compel and For Sanctions and Costs, Defendants' Opposition thereto, and any Reply, it is:

**ORDERED**, that Plaintiffs' Motion to Compel and For Sanctions and Costs is **DENIED**;

**FURTHER ORDERED**, that Defendants shall submit a Statement of Attorneys' Fees and Costs for attending the March 27, 2007 deposition (should Plaintiffs seek to depose Vance E. Watson, M.D., an additional time without ruling upon whether such petition to take a second deposition of Dr. Watson would be granted) and a Statement of Attorneys' Fees and Costs for opposing Plaintiffs' Motion within ten (10) days of the entry of this Order for an award of fees and costs pursuant to Federal Rule of Civil Procedure 37(B).

This ___ day of _____, 2007.

_____
The Honorable Alan Kay
United States Magistrate Court Judge for the
District of Columbia

Copies to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Newman & McIntosh
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Plaintiffs' Counsel

Andrew Greenwald, Esq.
Greenwald and Laake
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br>Plaintiffs, <br><br>v. <br><br>Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br>Defendants. | Civ. Act. No. 1:05CV02086 (PLF) (AK) <br><br>Judge Paul L. Friedman <br><br>Magistrate Judge Alan Kay |

### CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing with exhibits (excepting Exhibit 1, already in plaintiffs' counsel's possession) was served via electronic filing on the Court's CM/ECF website on the 16th day of April 2007 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Newman & McIntosh
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel

15

and a copy of the foregoing with all exhibits, including Exhibit 1, delivered simultaneously with filing to:

>The Honorable Alan Kay
>Chambers
>300 Constitution Avenue, N.W.
>Washington, D.C. 20016

*Megan E. Hills*
Megan E. Hills