IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| **FELICE I. IACANGELO,** *et al.* : | |
| : | **Civil No. 1:05CV02086** |
| Plaintiffs, : | |
| : | **Judge Paul L. Friedman** |
| vs. : | |
| : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY**, *et al.* : | |
| : | |
| Defendants. : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

COME NOW, the Plaintiffs, by and through their undersigned counsel, and oppose the Defendants' Motion for Protective Order, and in support thereof state as follows:

I.  **INTRODUCTION AND FACTUAL BACKGROUND**

Once again Plaintiffs have attempted to obtain valid discovery only to be blockaded by a convoluted and baseless Motion, unnecessarily expending the resources of both the Court and Plaintiffs.  This is the latest opus in a long line of Defendants' obstructive behavior.  Defendants' continue to believe, quite incorrectly, that they have not only a duty to defend this case, but a duty to act as a self-appointed master and dictate how and when Plaintiffs should prosecute their case. Defendants have adopted positions and filed unnecessary motions to impede discovery and to attempt to control each and every aspect of this litigation so that little, but if any evidence, is even uncovered (the Complaint was filed on October 24, 2005, to date no depositions have been completed). Defendants believe that *they* dictate which liability issues will be tried, freely ignoring

1

the majority of the issues set forth in the Amended Complaint. Defendants believe that *they* dictate the scope of a deposition, freely ignoring any or all of Plaintiffs' counsel's questions. Now, Defendants argue that *they* will decide who should be deposed and how the depositions will be conducted.

The Motion demonstrates Defendants' belief and that *they* are also allowed to make unsworn, unsubstantiated factual assertions and assumptions which must be accepted blindly by the Court and Plaintiffs, in lieu of the depositions of witnesses who actually possess the information. Not only do Plaintiffs reject Defendants assertions of "facts," Plaintiffs will establish that, as in the past, the assertions are false.

Plaintiffs' Complaint alleges multiple causes of action against both the individual Defendant Vance Watson, M.D., *and, in addition,* the institution of Georgetown University ("GU") t/a Georgetown University Hospital ("GUH"). Specifically with respect to GU, Plaintiffs allege that GU was complicit in the purchase, smuggling, and implantation of prohibited devices into Plaintiff Karyn Kerris as well as other patients. As a result, Plaintiffs have an absolute right, and an absolute need to depose high-ranking members of GU and GUH, both past and present, to determine the scope and breadth of its involvement in this case.

In Plaintiffs' opinion the time has come, once and for all, for this Court to forcefully remind the Defendants that it is *the Court, and not Defendants*, who are in charge of this litigation.

## II. LEGAL ANALYSIS

### A. The Defendants Have Failed To Set Forth Good Cause To Be Entitled To A Protective Order.

Defendants devote the first section in their memorandum to their argument that the proposed depositions will cause them undue burden and expense. But the Defendants fail to set forth even a single fact supporting this contention. They claim, instead, that "[t]he central issue in this case is whether Dr. Watson breached the standard of care" and that therefore, only causation witnesses should be deposed. *See* Defs. Mot. at 3. But it is the Complaint, and not Defendants' proclamation, that determines the issues in this case. And indeed, the Complaint sets forth multiple causes of action against *both* the individual Defendant-doctor *and* GU.

Defendants go on to state that Plaintiffs "seek to use eight of their allotted depositions on individuals who can *only address* Plaintiffs' claim that Dr. Watson violated an IRB regulation." (emphasis added) *See* Defs. Mot. at 4. To put it bluntly, how Plaintiffs spend their allotted depositions should not be the subject of Defendants' commentary. As to the issue of the IRB (which is by no means the only issue to be addressed in the deposition, see section C below), it is clear that Plaintiffs have a right to depose the GU and GUH officials to find out what they knew or should have known about Dr.Watson's IRB violations.[1]

Finally, Defendants fail to set forth *how* the proposed depositions will result in undue burden and expense. A person's mere desire to avoid being deposed does not constitute undue burden or expense. In *Peskoff v. Faber*, 230 F.R.D. 25 (D. D.C. 2005),

---

[1] Defendants point out that "Plaintiffs have already submitted expert affidavits who opine that Dr. Watson violated IRB regulations." *See* Defs. Mot. at 5. Plaintiffs suggest that perhaps defense counsel should examine a potential conflict of interest here. D.C. Rule of Professional Conduct 1.7 sets forth the rule on conflicts of interest, which includes advancing two or more interests in litigation that may be adverse. Here, Dr. Watson's interests may well be adverse to GU's in terms of Dr. Watson's conduct and GU's involvement in that conduct. The rules further provide, in comment 14, which is titled "Special Considerations in Common Representation," that special care should be taken with regard to positions that cannot be reconciled in the litigation. Such may be the case here regarding Dr. Watson and GU.

3

Magistrate Judge Facciola set forth the "good cause" standard necessary to obtain a protective order, stating:

> [T]he movant must articulate **specific facts** to support its request and **cannot rely on speculative or conclusory statements** ... <u>Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an [sic] 'extraordinary measures [ ] which should be resorted to only in rare occasions</u>' ... Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial."

*Id*. at 32 (emphasis added) (citations omitted). There, Judge Facciola found that "[t]he Defendant has made only general claims of potential harassment and embarrassment, unsupported by evidence of the specific harm that will result from [his] compliance with the subpoena." *Id*. The Court, therefore, denied the motion for protective order.

Here, the Defendants' Motion should similarly be denied as the Defendants have utterly failed to set forth any specific factual basis for their Motion other than their own self-serving, conclusory statements about the alleged burden and expense that will result from the proposed depositions. Furthermore, the Defendants ignore the procedural history of this case. It has been the Defendants, and not the Plaintiffs, who have driven up the costs of this litigation by filing frivolous motions. Indeed, this Court has already characterized one of Defendants' motions as "unwarranted and a misuse of judicial resources."[2]

In addition, after the Court expressly permitted Plaintiffs to depose Dr. Watson, *defense counsel* caused the filing of additional motions given her obstructive behavior in the deposition with speaking objections and running commentary. In this respect, it is quite disingenuous for the same defense counsel to now argue that deposing key

---

[2] *See* Memorandum Order dated Feb. 28, 2007 at p.3.

witnesses will cause undue burden and expense. The Court should summarily reject this argument as wholly without merit.

### B. Defendants Have No Right To Dictate How Plaintiffs Use Their Allotted Depositions.

Defendants' second argument is devoted to their unilateral determination as to how Plaintiffs should conduct discovery in this case. Defendants then cite authority and invite the Court to believe that prior to deposing high-level executives, Plaintiffs must first propound interrogatories to those executives. Thereafter, Plaintiffs presume that Defendants would argue that Plaintiffs should take the answers to those interrogatories, which would undoubtedly be prepared by defense counsel and be void of any valuable evidence, thereby concluding the inquiry.

The cases Defendants cite are inapposite. In the *Mulvey* case, the court would not permit Lee Iacocca to be deposed since the purported reason was to inquire as to things written in his autobiography. But the majority of courts have concluded that depositions of high-ranking corporate executives are often quite appropriate. For example, in *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002), the court permitted the Plaintiffs to depose Henry Ford, explaining:

> Several factors lead us to the conclusion that Magistrate Judge Shields's order allowing the Plaintiffs to take Mr. Ford's deposition is neither contrary to law nor clearly erroneous. First, the Plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues. **Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the Defendant are relevant in the case**. *See Six West Retail Acquisition v. Sony Theatre Management,* 203 F.R.D. 98 (S.D.N.Y.2001); *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140 (D.Mass.1987). The evidence produced by the Plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture in this action. Although Ford has attempted to elevate Magistrate

5

> Judge Shields's comment that she "suspects that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate" to the level of a finding inconsistent with her conclusion, we do not read so much into that comment.
> **Second, the cases upon which Ford relies for its position that courts impose a burden on the proponent of the deposition to demonstrate the "apex" official's unique personal knowledge stop well short of establishing a rigid rule applicable in all cases. Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement.** *See, e.g., Thomas v. IBM,* 48 F.3d 478 (10th Cir.1995)(individual employment case); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979)(individual negligence case); *Baine v. General Motors,* 141 F.R.D. 332 (M.D.Ala.1991)(individual personal injury case); *Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.R.I.1985) (individual personal injury case). Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts. **We are unwilling, however, to require rigid adherence to the burdens imposed under the facts of those cases, because the circumstances here are quite different and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case. First, conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this litigation.** *See Six West,* 203 F.R.D. at 105, and *Travelers,* 116 F.R.D. at 142-45 (both distinguishing on this basis several of the cases Ford has relied upon).

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (emphasis added).

Here, the proposed depositions are quite relevant to this case as there are multiple counts against GU that relate to the knowledge of high-ranking GU and GUH officials regarding Dr. Watson's conduct here. Moreover, this Court has previously recognized that though "[s]everal cases arising out of state law have held that a high-ranking corporate official may not be deposed absent a showing that such official has 'unique or superior knowledge of discoverable information'. . . [i]t is doubtful, however, that such is the rule in federal litigation." *Taylor v. National Consumer Cooperative*, 1996 WL 525322, *1 (D. D.C. 1996); *see also Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th

6

Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92 (S.D. Iowa 1992) (Plaintiff was entitled to test an executive's professed lack of knowledge by taking his deposition); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 143 (D. Mass. 1987) (where four corporate executives submitted "remember nothing" affidavits and sought to be protected from being deposed, court ordered that the Plaintiffs were entitled to test the executives' personal knowledge as well their memories and thus, depositions were allowed).

"In short, high ranking corporate executives are not automatically given special treatment which excuses them from being deposed." *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 1987 WL 11994, *4 (D. D.C. 1987). In this case, the subject deponents cannot rest on defense counsel's unsworn assertions that they do not possess knowledge of facts relevant to this case. Plaintiffs are entitled to test that knowledge, whatever it ends up being.

Finally, Defendants point out that "[o]nly a party to the litigation may be compelled to give testimony pursuant to a notice of deposition." *See* Defs. Mot. at 8. Defendants are certainly aware that such non-parties must be served with subpoenas absent defense counsel's agreement to accept service on their behalf. Plaintiffs, therefore, are uncertain as to why Defendants included this in their Motion as it is a non-issue.

### C. The Depositions Will Involve All Viable Issues in the Amended Complaint.

While Defendants argue that the only issues that could possibly be addressed in the proposed depositions are those involving the IRB, it is simply not so. The depositions will encompass a myriad of issues found in the Amended Complaint. These viable issues include: the failure to obtain an IDE (Count I ¶11(d)); negligent supervision, monitoring, ordering and invoicing (Count I ¶11(h); failure to provide proper informed consent (Count II); breach of fiduciary obligations (Count VIII); punitive damages (Count IX); and violations of 21 U.S.C. § 360(a)(II) (Count X), 21 U.S.C. § 331(a),(b)(c)(g) and (k) (Count XI), and 21 C.F.R. Ch. 1 § 812.20(a)(2) (Count XII). [3]

Indeed the oversimplification of the issues in this case is another classic example of Defendants' attempts to manipulate the Court. After Defendants make the *assumption* that the only issue to be address in deposition is the IRB claim, and the *assumption* that," "former, high-level individuals [have] no apparent connection to the issues implicated by this lawsuit, much less personal knowledge of the events involved in this action" they *conclude* that deposing them would "waste resources on duplicative, irrelevant depositions."[4] *See* Motion at 1. Then based on the aforesaid, Defendants argue that Federal Rule of Civil Procedures 26(b) and 26(c) mandate limiting this type of discovery. *Id.*

---

[3] Amazingly, Defendants persist in arguing that the only issues in the case involve negligence and/or IRB violations. Defendants are undaunted by the fact that the Court has denied their motions for summary judgment and to dismiss regarding: lack of informed consent, violations of multiple federal statues and punitive damages. Clearly, without a strong admonition by the Court, even if the requested depositions are scheduled, the defense will obstruct any questioning as to these other issues.

[4] This a bold assumption considering the fact that nowhere in the *Motion* or *Memorandum* does it state that the defense counsel ever spoke to any of the potential deponents.

Contrary to Defendants' simplistic view, it is clear that the board of directors and hospital administrators have a direct connection to the issues of breach of fiduciary, punitive damages and violations of the statutes. They funded, managed and controlled the daily operation of the Hospital and the procedures performed therein. Obviously, without their consent, approval, and permission Dr. Watson could have ordered, paid for, procured, stocked, or used the illegal devices he injected into patients. Moreover, Dr. Watson could not have continued to use these illegal devices for years, if these individuals had not ratified his actions. Even if one assumes, *arguendo*, that said individuals had no knowledge of these issues, their complete lack of knowledge itself sets forth important elements of proof. [5]

### III.    Plaintiffs' Counsel Never Agreed to Limit The Number of Depositions.

While the aforesaid is certainly dispositive, Plaintiffs must bring to the Court's attention another reason to question defense counsel's veracity. Defense counsel has twice represented to the Court, first by telephone and now in a pleading, that Plaintiffs should be limited to only ten (10) discovery depositions because Plaintiffs' counsel agreed to the limitation during the April 11, 2007 Scheduling Order Hearing. Defendants state that Plaintiffs are requesting more depositions, "notwithstanding Plaintiffs' prior representations that the limit of ten (10) depositions embodied in the Federal Rules would apply to the action." *See* Certificate of Good Faith at 1. This statement is absolutely false.

Fortunately, Defendants ordered a transcript of the Scheduling Order Hearing and later filed it to have it attached to their motion. Perhaps this done in a vain hope that the

---

[5] Moreover, Federal Rules of Civil Procedure 26(b) and 26(c) do not act as an automatic limit on discovery. The rules allow for discovery to be limited only, "by the Court" and only "if it determines" that a limitiation is required, Defendants false assertions provide no such basis.

Court might believe defense counsel's proffer, and forego reading the transcript. The relevant portion completely eviscerates Defendants' argument and leaves no room for any argument that Plaintiffs' counsel either actively or passively agreed to a limitation in the number of depositions.

> THE COURT: Do you all have an agreement on the number of depositions?
> MR. NEWMAN: We do not have an agreement, no.

(Transcript of April 11, 2007, p.18 l.19-21, Ex.).  Nothing could be clearer.  In response to the Court's question as to whether there had been an agreement between the parties as to the number of witnesses, Plaintiffs' counsel answered, unequivocally, "**no**." Even if defense counsel claims that, for some unknown reason, she was distracted or inattentive when Plaintiffs' counsel spoke these words, surely that would not excuse her total lack of recall of the following multiple statements made by plantiffs' counsel to the Court regarding the issue of number of the potential deponents:

> MR. NEWMAN:  Then that was misspoken.  I just simply meant that **this is going to be an issue.** I doubt that there is many more people that they will depose except for treaters and our Plaintiff.  We have people such as the **administration of Georgetown, people that were on the boards, the investigational review committees, a lot of discovery to be done**, meaning we're going to be the driving force on that and have to get that done in a reasonable time. I have been there before with these kinds of issues, **deposing people on boards**, and it can drag out forever by saying they're not available here, we need some other time, and so on.

(bold added) (Transcript of April 11, 2007, p.18, l 8-18, Ex. A). [6]   The only explanation

---

[6] Based on Defense counsel's false assertion that there had been an agreement by the parties, this Court inquired of Plaintiffs' counsel during the phone conference, if there had been such an agreement, to which Plaintiffs' counsel responded with, "no."

  This Court then asked Plaintiffs' counsel why such a limitation was contained in paragraph 3 of the Scheduling Order,  to which Plaintiffs' counsel responded with, "I do not know."   Plaintiffs' counsel still remains at a loss to explain the rational behind the limitation present in the Order, except that may have been the Court's belief that the phrase, "unless agreed upon by  the parties" usually results in an agreement between the parties and obviates the need to formally modify the Order.

   It is interesting to note that the defense seized on the inconsistency between Plaintiffs' counsel statements in open Court, and the Order itself, and then used the Order as evidence that there was an agreement between the parties.

10

for defense counsel's false statements to this Court is that they a deliberate attempt to mislead the Court. It appears to be Defense counsel's belief that when representing her clients, anything goes. In any event, it has always been, and continues to remain, Plaintiffs' position that the members of the Board of Directors, the high ranking officials in the administration as well as the hospital personnel, which includes members of the Institutional Review Board, must be deposed for proper and complete discovery to be conducted.

### IV.    CONCLUSION

Defendants' Motion should be denied because they have failed to set forth good cause to warrant this Court's protection.

Respectfully submitted,

By:   \_\_/s/ Anthony Newman_____
Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400

\_\_\_/s/ Andrew E. Greenwald_____
Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via electronic filing on the Court's CM/ECF website on May 2, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

                                                                                                   /s/ Anthony Newman
                                                                                                      Anthony Newman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
*Civil Division*

| | | |
|---|---|---|
| F<small>ELICE</small> I. I<small>ACANGELO</small>, *et al*. | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| GEORGETOWN UNIVERSITY, *et al*. | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

UPON CONSIDERATION of the Defendants' Motion for Protective Order, and Plaintiffs' Opposition thereto, it is this _____ day of _____, 2007, by the United States District Court for the District of Columbia,

**ORDERED**, that the Plantiffs' Opposition to Defendants' Motion for Protective Order be and the same is hereby **DENIED IN ITS ENTIRETY**.

_____
The Honorable Alan Kay
Magistrate Judge
United States District Court for the District of Columbia

13

**Copies to**:

Anthony Newman
Newman, McIntosh & Hennessey, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Megan Hills, Esq.
Nicolas Muzin, Esq.
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, D.C. 20005