UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | Civ. Act. No. 1:05CV02086 (PLF) (AK) <br><br> Judge Paul L. Friedman <br><br> Magistrate Judge Alan Kay |

### DEFENDANTS'[1] REPLY
### IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

Precedent and Federal Rule of Civil Procedure[2] 26(b)(2) require plaintiffs to make an initial showing of personal knowledge and involvement in the specific events forming the basis of this litigation and to exhaust less costly and burdensome methods of discovery (*e.g.*, interrogatories, depositions of lower level people, a 30(b)(6) deposition, *etc.*), prior to allowing the depositions, if allowed at all, of high-level executives. If plaintiffs are permitted to exhaust their allotted ten depositions on duplicative, irrelevant depositions of former, high-level executives, defendants are prejudiced both by having the expense and burden of appearing at irrelevant, duplicative depositions of individuals such as the President of Marriott International,

---

[1] Defendants, Georgetown University and Vance E. Watson, M.D. (hereinafter, collectively referred to as "defendants" and individually as "GU" or "Dr. Watson").

[2] Hereinafter, "Fed. R. Civ. P."

Mr. J. Willard Marriott, and Father Leo O'Donovan,[3] as well as having the discovery costs of this litigation substantially increased by plaintiffs' stated intention to exceed their allotted ten depositions.[4]

Plaintiffs' Opposition to Defendants' Motion for Protective Order proves defendants' position: In order to justify the deposition of a high-level executive, plaintiffs must first present evidence to show that the individual "has **personal knowledge and involvement in certain relevant matters**." *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (emphasis added); quoted at 5-6 of Plaintiffs' Opposition ("Plts' Opp."). As the *Bridgestone/Firestone* court found, "**The evidence produced by the plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture.**" *Id.* (Emphasis added). Plaintiffs' Opposition – filled with case law supporting the entry of a protective order – never explains why they should be relieved of the obligation of showing personal knowledge and involvement of the proposed deponents or why initial interrogatories or other discovery tools should not precede the depositions, much less why a relatively straightforward medical malpractice case requires more depositions than contemplated by the Federal Rules.

"Good cause" sufficient for a protective order, prohibiting proposed depositions of high-level depositions is shown "[w]hen a vice president can contribute nothing more than a lower level employee." *Harris v. Computer Associates International, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (citation omitted). "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit

---

[3] *See* Plaintiffs' Witness List, filed April 24, 2007 (attached hereto as Ex. 1).

[4] *See* 4/16/07 and 4/19/07 Anthony Newman Letters to Megan Hills (both attached hereto as Ex. 2).

the deposition." *WebSideStory, Inc. v. Netrating, Inc.*, 2007 U.S. Dist. LEXIS 20481 at *7 (S.D. Cal. 2007)[5] (limited deposition of corporate president allowed only after plaintiffs proffered emails showing that corporate president had personal knowledge and after plaintiffs conducted a 30(b)(6) deposition). In other words, just pointing to a high-level person's former title without showing personal knowledge of the proposed deponent is insufficient to justify the deposition and sufficient to show good cause to quash the deposition.

"In the absence of a showing of unique personal knowledge, the circuit courts, including the Sixth Circuit, have upheld the entry of a protective order precluding the depositions of high level company executives." *Devlin v. Chemed Corp.*, 2005 WL 2313859 at *1 (E.D. Mich. 2005) (unreported). Significantly, the *Devlin* court denied the proposed depositions when the **plaintiffs forwarded the same argument for holding the depositions as plaintiffs advance here**:

> [T]he employees in question have filed affidavits stating that they have no personal knowledge of the facts of this case. **Plaintiffs argue that the depositions are necessary to prove their theory that a pervasive practice of inadequate supervision** over Allstate claims adjusters exists within the corporation. . . . **The Court finds that, to the extent the Plaintiffs have a right to pursue these issues, Allstate has already provided adequate information, or that the information can alternately be obtained from other sources without deposing these "apex" officers.**

*Id.* (citations omitted; emphasis added); *see also Lewelling*, 879 F.2d at 218 (affirming issuance of protective order based on deponent having no knowledge as to facts pertinent to the plaintiff's action); *Thomas*, 48 F.3d at 483-84 (upholding protective order barring deposition of top

---

[5] Citing "*Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649. 651 (5th Cir. 1979); *see also* SHWARZER [sic], TASHIMA & WAGSTAFFE, CAL. PRACTICE GUIDE: FED. CIV. PRO. BEFORE TRIAL [¶] 11:345.5 (The Rutter Group 2002) ("The CEO of a corporation ... may obtain a protective order from being deposed about matters as to which he or she has no personal knowledge. This prevents use of depositions for harassment purposes and protects such persons from the interference of the discovery process.")." *Id.* at *7 fn4.

executive where lower level employees were available for deposition and where executive lacked personal knowledge of the matters at issue in plaintiff's case.); *Bush v. Dictaphone Corp.*, 16 F.3d 363 (6th Cir. 1989).

I.  **Precedent and Fed. R. Civ. P. 26(b)(2) Support that Plaintiffs Must Show Personal Knowledge and Involvement and Exhaust Less Expensive Forms of Discovery in Order to Justify Depositions of High-Level Executives – Much Less Former High-Level Executives.**

Plaintiffs' citations prove defendants' position. Relying mainly on unpublished decisions,[6] plaintiffs' case law uniformly supports the proposition that high-level executives should not be deposed until plaintiffs come forward with threshold evidence showing that the individual has personal knowledge of and involvement in the specific allegations of the litigation. Specifically limiting its ruling to the facts of the case, *id.* at 536, the *Bridgestone/Firestone* court only allowed the deposition of the chairman of the board, first, "because [the proposed deponent] referred to **his personal knowledge of and involvement in** the tire recall, automobile safety issues, and manufacturer's response to those issues," *id.* at 536; second, because "the plaintiffs seek to depose Mr. Ford, **not for purposes of a single personal injury case,** but to depose him once for all of the hundreds of personal injury cases pending in

---

[6] Although there is no specific rule in the District Court, the D.C. Circuit Court Rules state that "[u]npublished dispositions entered before January 1, 2002 . . . are not to be cited as precedent." D.C. Circuit Rule 32.1(b)(1)(A). The D.C. Circuit, therefore, would prohibit plaintiffs' use of *Taylor v. National Consumer Cooperative*, 1996 WL 525322 (D.D.C. 1996), cited by plaintiffs at page 6 of their Opposition and *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 1987 WL 11994 (D.D.C. 1987), cited by plaintiffs at page 7 of their Opposition as precedent. D.C. Circuit Rule 32.1(b)(1) and Federal Rule of Appellate Procedure 32.1 acknowledge that "[w]hile unpublished dispositions entered on or after January 1, 2002 may be cited to the court in accordance with FRAP 32.1 and Circuit Rule 32.1(b)(1) [*e.g.*, *Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005), cited by plaintiffs at page 3 of their Opposition], a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Circuit Rule 36(c)(2). Whether unpublished district court cases are similarly treated by the district court is unknown, but it is relevant whether a case is unpublished versus published and it would seem that a case's unpublished status should be indicated in a brief. Regardless of the precedential value the Court gives these cases, they support defendants' position.

the MDL, the MDL class action, and many state court cases," *id.*, and lastly, only **after** all of the other depositions had been taken. *Id.* at 537. (Emphasis added throughout). Significantly, the *Bridgeport/Firestone* court allowed the chairman of the board to be deposed because – unlike here – the case **was not a personal injury case:**

> **Nearly every decision Ford has cited involves an individual personal injury, employment or contract dispute with which the "apex" official had no personal involvement . .** [listing cases] [7] **. .** Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts. **We are unwilling, however, to require rigid adherence to the burdens imposed <u>under the facts of those cases, because the circumstances here are quite different</u> and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case.**

*Id.* at 536 (emphasis added). In other words, the rationale for prohibiting the depositions of "apex" witnesses is sound for personal injury cases, like this one, but does not apply to consolidated MDL litigation, particularly where the "apex" individual has stated he has personal knowledge of and involvement in the precise allegations of the litigation and the other depositions for the case have been taken.

Similarly, plaintiffs' other citations[8] support defendants' position that absent plaintiffs coming forward with threshold evidence that the high-level individual proposed for deposition has personal knowledge of – described by several courts as "unique knowledge" – and

---

[7] "*See, e.g., Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995 (individual employment case); *Salter v. Upjohn Co.*, (5th Cir. 1979) (individual negligence case); *Baine v. General Motors*, 141 F.R.D. 332 (M.D. Ala. 1991) (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.) 1985) (individual personal injury case)." *Id.*

[8] *Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005) is simply irrelevant. It does not even address the issue of deposing high-level employees, but the deposition of a third party who was a shareholder – personally involved in the events serving the basis for plaintiff's claim – as to whether a lawsuit had been threatened, which was one of the claims of fraud in the inducement contained in plaintiff's complaint. *Id.* at 31.

involvement in the specific factual allegations of the litigation, the deposition is not warranted. *Taylor v. National Consumer Cooperative Bank*, 1996 WL 525322 *1 (D.D.C. 1996) (unreported), Plts' Opp. at 6, allowed the deposition after the plaintiff "**ha[d] made a sufficient threshold showing to indicate that Synder does have unique knowledge with regards to certain relevant events**." (The "apex" employee had personal conversations with the plaintiff about her employment in an employment discrimination lawsuit; emphasis added). In *Salter*, 593 F.2d at 651, the appellate court **affirmed** the district court's **issuance of a protective order, vacating the notice of deposition for the corporate president, requiring that plaintiffs first depose other employees who indicated they had more knowledge, and renew their application to depose the president if it was still needed after those depositions.**

*Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D.92, cited by plaintiffs on page 7 of their Opposition, is even **more supportive of defendants' position.** There, a memo reflected that the proposed deponent had personal involvement in the determination of issuing the conditional termination of plaintiff's distributorship, the crux of the case being the lawfulness of that termination. *Id.* at 93-94. "Here, **Bevis does have personal knowledge** of the facts relevant to the lawsuit. **He is the individual who personally approved** the issuance of the conditional notice of termination." *Id.* at 98 (emphasis added). Even after this showing of personal knowledge and involvement, the *Rolscreen* court required plaintiff to first depose lower employees who had greater knowledge of the case's specific factual allegations. *Id.* at 98-99.

Plaintiffs misread *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987), cited at page 7 of their Opposition. Again, supportive of defendants' position, *Travelers Rental Co.* stands for the proposition that **only after a plaintiff comes forward with evidence showing that the proposed high-level executive deponents were personally involved in the**

**matters of the case**, they cannot resist a deposition by stating that they do not "remember" their involvement. Their claim of no-memory of previously demonstrated personal knowledge and involvement is what the plaintiff is entitled to test in a deposition, once the threshold showing of personal involvement has been made. "**Considering that Travelers has demonstrated these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition**." *Id.* at 143 (emphasis added). Plaintiffs, here, cannot "test" a claim of no-recall of personal knowledge and involvement until they first show the existence of that personal knowledge and involvement.

Lastly, *Kuwait Airways Corp. v. American Security Bank*, 1987 WL 11994 (D.D.C. 1987) (unreported), also supports defendants' position. In *Kuwait*, plaintiff produced testimony that the proposed high-level deponent "had a close" relationship with the individual who was alleged to have stolen funds, which was the subject of the lawsuit. *Id.* at *1.

In short, plaintiffs' citations show that plaintiffs must first come forward with threshold evidence to demonstrate that the former high-level executives proposed deponents have personal knowledge and involvement in Dr. Watson's use of Histoacryl and Lipiodol, prior to plaintiffs being allowed to "test" that knowledge in a deposition. *Travelers*, *supra*.

Precedent holds that plaintiffs may only take the depositions of high-level employees once they make a preliminary showing of personal knowledge of and involvement by the proposed deponents in the specific events alleged in the litigation. *Baine*, 141 F.R.D. at 333-35 (denying plaintiff's request to depose corporate vice president who lacked unique personal knowledge of the issues); prior to a deposition being allowed and only after plaintiffs exhaust less expensive and burdensome discovery methods. *See Community Federal Savings and Loan*

*Ass'n v. Federal Home Loan Bank Board*, 96 F.R.D. 619 (D.D.C. 1983); *Mulvey*, 106 F.R.D. 364;[9] *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067 (N.D. Cal. 2007); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002); *Berning v. UAW Local 2209*, 2007 WL 1099532 (N.D. Ind. 2007) (listing cases); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D. Okla. 2003) (When a party seeks to depose high-level decision makers who are removed from the daily subjects at issue in the litigation, the party must first demonstrate that the proposed deponent has "unique personal knowledge" of facts relevant to the dispute.).

## II.   The Federal Rules Provide Protection When Proposed Discovery Violates Them.

The Federal Rules of Civil Procedure contemplate that the

> frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2). Thus, the statement that "how Plaintiffs spend their allotted depositions should not be the subject of Defendants' commentary" is demonstrably false. Plts' Opp. at 3. As Plaintiffs state their intention to increase the costs of litigation by using the most expensive discovery tool – depositions – and not availing themselves of less expensive discovery methods (such as interrogatories or one 30(b)(6) deposition), as well as escalating overall litigation costs

---

[9] *Mulvey* is misread by plaintiffs at page 5 of their Opposition at 5. The *Mulvey* court specifically required plaintiffs initially to use interrogatories because plaintiffs made no showing that Iaccoca had any specific knowledge, but rather – like here – just pointed to "general damaging statements." *Id.* at 366. The court ruled that "he is singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected." *Id.*

by taking more than the presumptive ten depositions, to which they agreed, defendants must turn to the Court for aid.[10]

If duplicative depositions are allowed without the required showing of personal knowledge and involvement and exhaustion of alternative methods, such that plaintiffs are allowed to take more than ten depositions (which, having left no slots for the depositions of experts and/or any fact witnesses addressing causation, additional depositions will be difficult to forbid), defendants will have increased litigation costs forced on them. Ten depositions are

---

[10] Plaintiffs misrepresent the April 11, 2007 Scheduling Conference hearing transcript. First, the Court asked whether there was an agreement as to the number of depositions – whether to take **more or less** than the ten depositions allotted by the Federal Rules – to which plaintiffs answered "no," 4/11/07 Hearing Transcript at 18:19-21, since there was no agreement (in fact, it had never been raised for discussion) as to whether more than ten depositions should be taken in this medical malpractice case. "One aim of this revision [30(a)(2)(A)] is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case **without agreement of the other parties.**" Advisory Committee Notes, 1993 Amendments regarding subsection 30(a)(2)(A) (emphasis added). The Court, therefore, **without objection from plaintiffs**, applied the ten deposition limitation set forth in the Federal Rules. Moreover, the Court stated that staying with the Federal Rules was generally the best course ("I have to say, my inclination is that everybody is going to be better protected later if we follow the provisions of the Federal Rules . . ."; "[I]f we're going to rely on the stringency of the Federal Rules for how we're going to deal with experts, **we're also going to rely on the stringency of the Federal Rules for how depositions are conducted**."). *Id.* at 5:2-5 and 30:10-13 (emphasis added). In representing that the lengthy quote on page 10 of plaintiffs' Opposition refers to the number of depositions, plaintiffs omit the Court's statement that elicited the response, which demonstrates that plaintiffs' characterization of it is incorrect: "THE COURT: **We'll have deadlines. The question is what are the most reasonable deadlines.** Now you're saying, and I think this is the first time that I have heard it, that you're the only ones that are going to take fact discovery and the only discovery they're going to take is expert discovery. MR. NEWMAN: Then that was misspoken. **I just simply meant that this** [the deadlines] **is going to be an issue. . . . The only thing I was getting at was that we're under the gun to do those things in a reasonable time and get it over with.**" *Id.* at 18:3-9, 19:4-6 (emphasis added). To represent that this passage has anything to do with anything other than length of the discovery period is simply revisionist history. *See* Scheduling Conference Transcript (attached hereto as Ex. 3). Plaintiffs' agreement to limit themselves to the Fed. R. Civ. P. 30(a)(2)(A) limit of ten depositions is further shown by the fact that they signed and jointly submitted the Joint Local Rule 16.3 Report, in which they represented that "[a]t this time, the parties have no matters appropriate inclusion in the scheduling order" – matters such as additional depositions. *See* Joint Local Rule 16.3 Report at 8 (attached hereto as Ex. 4). Moreover, plaintiffs did not raise the issue of additional depositions at the Hearing itself.

presumed. As the court noted in *Mazur v. Lampert*, 2007 U.S. Dist. LEXIS 13934 at *6-7 (S.D. Fla. 2007):

> the fact that this case involves a complex securities fraud action does not, by itself, require that the parties be given a slew of additional depositions as contemplated in the Motion. Clearly, the drafters of the rule understood that many of the cases filed in Federal Court that would ever require more than ten depositions would be securities fraud actions. Yet, the drafters of the rule did not exempt such actions from the force of the rule. **Thus, absent a proper showing of necessity and good cause, this Motion to exceed the customary and rule-based limit of depositions in a case cannot be granted.**

(Emphasis added). "It is important for all parties to understand that prior to taking any deposition they must always assess whether or not a deposition of that witness is truly necessary, based in part upon the time and expense that even a single deposition incurs for all parties involved. Parties must also take into account the standard ten deposition limit in making that assessment." *Id.* at 7. "Rule 30(a)(2)(A) is intended to control discovery, with its attendant costs and potential for delay, by establishing a default limit on the number of depositions." *Barrow v. Greenville Independent School District*, 202 F.R.D. 480, 483 (N.D. Tex. 2001). As in *Barrow*, if plaintiffs here are required to forgo depositions where they fail to make the required threshold and prohibited from taking duplicative depositions, the presumptive limit of ten depositions would be sufficient – "[h]ad [they] opted not to take other depositions, [they] could have taken the ones in question [experts, fact witnesses regarding causation] without first obtaining leave of court [to take more than ten depositions]." *Id.* at 482. Defendants seek to prevent the escalation of litigation costs by having plaintiffs abide by the discovery rules, such that the presumptive limit of ten depositions, to which plaintiffs implicitly agreed by not requesting additional depositions or objecting to the ten deposition limit, is followed.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request this Court to enter a protective order, prohibiting the initial duplicative, irrelevant depositions of former presidents, high-up executives, officers, and Board Members, unless and until plaintiffs make the required showing and requiring preliminary interrogatories to current employees to ascertain whether they possess any personal knowledge and involvement, prior to requiring both of them to sit for a deposition, and whether two depositions, as opposed to one, should take place.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: May 9, 2007

By: /s/ Megan E. Hills
Megan E. Hills (D.C. Bar #437340)
Nicolas Muzin (D.C. Bar # 500106)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
nmuzin@wc.com

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website on the 9th day of May, 2007 on the forgoing:

Anthony Newman, Esquire
Ernest McIntosh, Esquire
Newman & McIntosh
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

and

Andrew Greenwald, Esquire
Greenwald and Laake
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

_____
Megan E. Hills