**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
*Civil Division*

| | | |
|---|---|---|
| **FELICE I. IACANGELO,** *et al*. | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' INITIAL 26(a)(1) DISCLOSURES

Plaintiffs pursuant to the Scheduling Order of April 11, 2007, provide the

following list of witnesses and documents that Plaintiffs may use to support their claims.

**A. Individuals[1]**

1) Felice I. Iacangelo
2109 Edgeware Street
Silver Spring, MD 20905
#  (301) 384-0752
Representative of Plaintiff and father of Karyn A. Kerris.

Subjects of information: see his affidavit, in addition, issues of informed
consent, life care needs of his daughter, costs, medical needs: supplies,
medications, hospitalizations, physician care; pain and suffering; mental and
physical condition prior to incident; work prior to the incident and relationships
prior to the incident, housing issues, family issues, and discussions with other
healthcare providers.

2) Cicly A. Iacangelo
2109 Edgeware Street
Silver Spring, MD 20905
#  (301) 384-0752
Representative of Plaintiff and Mother of Karyn A. Kerris

---

[1] The list of individuals does not include Plaintiffs' expert witnesses. Plaintiffs also reserve the right to
amend this list of individuals when discovery so mandates.

Subjects of information: see her affidavit, in addition, issues of informed consent, life care needs of her daughter, costs, medical needs: supplies, medications, hospitalizations, physician care; pain and suffering; her mental and physical condition prior to incident; work prior to the incident and relationships prior to the incident, housing issues, family issues, and discussions with other healthcare providers.

3)  Karyn A. Kerris
    2109 Edgeware Street
    Silver Spring, MD 20905
    # (301) 384-0752
    Plaintiff

    Subject of information: given her extremely limited ability to communicate, her physical condition and her inability to attend to her activities of daily living will be evidence for the jury of her impairment, future needs and pain and suffering.

4)  Paul Kerris
    8938 Footed Ridge
    Columbia, MD 21045
    # (301) 596-3524
    Husband of Plaintiff.

    Subjects of information: see his affidavit, in addition, issues of informed consent, life care needs of his wife, costs, medical needs: supplies, medications, hospitalizations, physician care; pain and suffering; her mental and physical condition prior to incident; work prior to the incident and relationships prior to the incident, housing issues, family issues, and discussions with other healthcare providers.

5)  Vance E. Watson, M.D. (Defendant)
    Present address and phone # unknown

    Subjects of information:  The care, treatment and medication received by Karyn A. Kerris during her GUH hospitalizations.  His testimony will be directed to the embolizations at issue, the ordering, procurement, use of the Histoacryl and Lipiodol, his involvement with the IRB, the illegality of the devices, the package insert, all issues in his Declaration, etc.,  Other fields of information will await his deposition, but will involve the issues set forth in the Amended Complaint and prior pleadings.

6)  Kenneth D. Bloem
    Present address and phone # unknown.
    One time Member of the Board of Directors and Chief Executive Officer for the Medical Center.

Subjects of information: During his tenure at the Medical Center (specifically during the relevant time periods of this case) he, by mandate of the Board of Directors, instituted new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for his termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

7)  Paul Katz
Present address and phone # unknown.
One time Chief Operating Officer for the Medical Center

Subjects of information: During his tenure at the Medical Center (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

8)  Sam Wiesel, M.D.
Present address and phone # unknown.
One time Executive Vice President for Health Sciences

Subjects of information: During his tenure at the Medical Center (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson,

M.D.'s department of interventional neuroradiology. He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures. Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

9) Michael Cole
Present address and phone # unknown.
One time Vice President of the Medical Center

Subjects of information: During his tenure at the Medical Center (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology. He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures. Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

10) Leo J. O'Donovan
Present address and phone # unknown
One time President of Georgetown University

Subjects of information: During his tenure at Georgetown University (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology. He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the

officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

11) John J. DeGioia, M.D
Present address and phone # unknown
One time Senior Vice President, Georgetown University

   Subjects of information: During his tenure at the Medical Center (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.  He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.


12) Joseph G. Verbalis, M.D.
Present address and phone # unknown
One time Director of the Georgetown University's GCRC (center for research)

   Subjects of information: During the relevant time periods of this case he was in charge of the Georgetown's research center and policies and procedures that related to research on human subjects, including being aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology. He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement of both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation of the Board and/or the officers of the Hospital performed regarding these procedures. Other fields of information will await discovery, but will involve the purchase, procurement and use of illegal devices.

13) Charles M. Cawley
   Present address and phone # unknown
   One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of
Directors (specifically during the relevant time periods of this case) he was
aware of the mandate of the Board of Directors and Kenneth D. Bloem, to
institute new policies and procedures that required the staff and faculty to
produce a specific profit or risk termination, this included defendant Vance E.
Watson, M.D.'s department of interventional neuroradiology.   He will testify
to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement
of the both the Board of Directors and the Hospital Administration in the
embolization procedures performed at their institution with illegal devices.
He will produce evidence of the risk/benefit evaluation the Board and/or the
officers of the Hospital performed regarding these procedures.  Other fields of
information will await discovery, but will involve the purchase, procurement
and use of the illegal devices.


14) James V. Kimsey
   Present address and phone # unknown
   One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of
Directors (specifically during the relevant time periods of this case) he was
aware of the mandate of the Board of Directors and Kenneth D. Bloem, to
institute new policies and procedures that required the staff and faculty to
produce a specific profit or risk termination, this included defendant Vance E.
Watson, M.D.'s department of interventional neuroradiology.   He will testify
to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement
of the both the Board of Directors and the Hospital Administration in the
embolization procedures performed at their institution with illegal devices.
He will produce evidence of the risk/benefit evaluation the Board and/or the
officers of the Hospital performed regarding these procedures.  Other fields of
information will await discovery, but will involve the purchase, procurement
and use of the illegal devices.


15) John J. Faith, IV
   Present address and phone # unknown
   One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of
Directors (specifically during the relevant time periods of this case) he was

aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

   In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.


16) Judge Arthur J. Gajarsa
    Present address and phone # unknown
    One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

   In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.


17) James F. Higgins
    Present address and phone # unknown
    One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

18) Leslie H. Jacobson
Present address and phone # unknown
One time Board of Directors Member, Georgetown University

Subjects of information: During her tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) she was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   She will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
In addition, she will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. She will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

19) Philip A. Marineau
Present address and phone # unknown
One time Board of Directors Member, Georgetown University

Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of

information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

20) J. Willard Marriott, Jr.
   Present address and phone # unknown
   One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

21) Frank L. Salizzoni
   Present address and phone # unknown
   One time Board of Directors Member, Georgetown University

   Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.
   In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.

22) Stephen Wolf
   Present address and phone # unknown

One time Board of Directors Member, Georgetown University

Subjects of information: During his tenure as a Member of the Board of Directors (specifically during the relevant time periods of this case) he was aware of the mandate of the Board of Directors and Kenneth D. Bloem, to institute new policies and procedures that required the staff and faculty to produce a specific profit or risk termination, this included defendant Vance E. Watson, M.D.'s department of interventional neuroradiology.   He will testify to the lawsuit that ensued and the reasons for Mr. Bloem's termination.

In addition, he will produce evidence of the knowledge and involvement of the both the Board of Directors and the Hospital Administration in the embolization procedures performed at their institution with illegal devices. He will produce evidence of the risk/benefit evaluation the Board and/or the officers of the Hospital performed regarding these procedures.  Other fields of information will await discovery, but will involve the purchase, procurement and use of the illegal devices.


23) Mary Young, M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During her tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) she was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus she was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, she is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  She will be asked her knowledge and involvement with other procedures performed at their institution involving illegal devices.  She will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.


24) Margaret Rodan ScD
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During her tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) she was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus she was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, she is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  She will be asked her knowledge and involvement with other procedures performed at their institution involving illegal devices.  She will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.

25) Henry Yeager, M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During his tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) he was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus he was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, he is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  He will be asked his knowledge and involvement with other procedures performed at their institution involving illegal devices.  He will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.

11

26) Harry G. Preuss, M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During his tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) he was aware that the use of Histocryl and Lipiodol were not presented to, or approved by, the IRB.  Thus he was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, he is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  He will be asked his knowledge and involvement with other procedures performed at their institution involving illegal devices.  He will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histocryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.

27) Leonard Chiazze, Jr., M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During his tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) he was aware that the use of Histocryl and Lipiodol were not presented to, or approved by, the IRB.  Thus he was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

Dr. Chiazze will introduce evidence of a lawsuit brought by himself and 18 other Plaintiffs against Georgetown University, its officers, and Board of Directors. He will address the fact that there were policies and procedures that required the staff and faculty to produce profits or risk termination. These policies and procedures when they were in effect, involved the entire Hospital including the department interventional neuroradiology. He will be asked the effect these policies and procedures had on treatments performed on patients such as Karyn A. Kerris.

In addition, he is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  He will be asked his knowledge and involvement with other procedures performed at their institution involving illegal devices.  He will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.


28) Karen N. Gale
    Present address and phone # unknown
    One time faculty member (GUH employee/staff)

    Professor Gale will introduce evidence of a lawsuit brought by herself and 18 other Plaintiffs against Georgetown University, its officers, and Board of Directors. She will address the fact that there were policies and procedures that required the staff and faculty to produce profits or risk termination. These policies and procedures when they were in effect, involved the entire Hospital including the department interventional neuroradiology. She will be asked the effect these policies and procedures had on treatments performed on patients such as Karyn A. Kerris.
    Other fields of information will await discovery.


29) Robert I. Glazer
    Present address and phone # unknown
    One time faculty member (GUH employee/staff)

    Professor Glazer will introduce evidence of a lawsuit brought by himself and 18 other Plaintiffs against Georgetown University, its officers, and Board of Directors. He will address the fact that there were policies and procedures that required the staff and faculty to produce profits or risk termination. These policies and procedures when they were in effect, involved the entire Hospital including the department interventional neuroradiology. He will be asked the effect these policies and procedures had on treatments performed on patients such as Karyn A. Kerris.
    Other fields of information will await discovery.


30) Jeanne Meck, Ph.D.
    Present address and phone # unknown
    One time Institutional Review Board Member, Georgetown University

Subjects of information: During her tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) she was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus she was aware that no IRB approved informed consent was ever generated,  and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, she is expected to introduce evidence that the IRB should be involved in any research or human experimentation and that includes the use of illegal devices.  She will be asked her knowledge and involvement with other procedures performed at their institution involving illegal devices.  She will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the protocol would not have been accepted and thus the embolizations would not have occurred including those performed on Karyn A. Kerris.

Other fields of information will await discovery, but will involve the knowledge of the IRB and the role of its members, with the use of the illegal devices.


31) Dieter Schellinger, M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During his tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) and his tenure in the department of interventional neuroradiology he was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus he is aware that no IRB approved informed consent was ever generated, and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, he is expected to introduce evidence that the IRB should be involved in any research or experimentation on human subjects and that includes the use of illegal devices.  He will be asked his knowledge and involvement with other procedures performed at their institution involving illegal devices.  He will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the embolizations would not have been performed, including the procedure performed on Karyn A. Kerris.

He is also aware of the failure rates of Histoacryl and Lipiodol based on his own use of these and other illegal devices.   He will testify to his own usage of Histoacryl and Lipiodol and the policies and procedures within the department of interventional neuroradiology regarding the use of illegal and

14

unapproved devices as well as the decision by the department to continue to use these devices without being part of an Investigational Device Exemption (IDE) and without IRB approval.  He will testify to the offices, directories, and Administration who knew of the ordering, procurement, and payment for the Histoacryl and Lipiodol, and their approval of said.

Other fields of information will await discovery.

32) Sorell L. Schwartz, M.D.
Present address and phone # unknown
One time Institutional Review Board Member, Georgetown University

Subjects of information: During his tenure as an Institutional Review Board (IRB) Member (specifically during the relevant time periods of this case) and his tenure in the department of interventional neuroradiology he was aware that the use of Histoacryl and Lipiodol were not presented to, or approved by, the IRB.  Thus he is aware that no IRB approved informed consent was ever generated, and that a proper consent would have included: the known risks of the treatment, a statement that the use of these devices was illegal, that enrollment was voluntary,  a list of alternative (legal) treatments, and the risks if no treatment was provided, etc.

In addition, he is expected to introduce evidence that the IRB should be involved in any research or experimentation on human subjects and that includes the use of illegal devices.  He will be asked his knowledge and involvement with other procedures performed at their institution involving illegal devices.  He will produce evidence that if the IRB had been presented with a protocol for the illegal use of Histoacryl or Lipiodol, the embolizations would not have been performed, including the procedure performed on Karyn A. Kerris.

He is also aware of the failure rates of Histoacryl and Lipiodol based on his own use, these and other illegal devices.   He will testify to his own usage of Histoacryl and Lipiodol and the policies and procedures within the department of interventional neuroradiology regarding the use of illegal and unapproved devices as well as the decision by the department to continue to use these devices without being part of an Investigational Device Exemption (IDE) and without IRB approval.  He will testify to the offices, directories, and Administration who knew of the ordering, procurement, and payment for the Histoacryl and Lipiodol, and their approval of said.

Other fields of information will await discovery.

33) John Doe, M.D. and others (Identity(ies) unknown)
Present address(es) and phone # unknown

Subjects of information: One of the individuals at the "multidisciplinary neurovascular conference" referenced in the Declaration of Vance E. Watson, M.D.

34) Robert Laureno, M.D.
Present address and phone # unknown (WHC employee/staff)

Subjects of information:   The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 hospitalization at WHC.  He will testify to her condition at the time of admission and that, "neurosurgery felt that the patient's symptoms were related to ischemia secondary to embolization."   He will also testify to the diagnostic testing performed including the 3/25/99 and 4/08/99 WHC's EEGs, and the laboratory results the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

35) Dr. Furlong
Present address and phone # unknown (WHC employee/staff)

Subjects of information:  The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

36) P. Brinnare, P.T.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

37) Jeffrey Jacobson, M.D.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

38) L. Berger, M.D.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

39) D. Adeno
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

40) Mary Beth Brooks, O.T.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

41) Dr. Casey
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

42) Neil Moskovska, M.D.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization.
Other fields of information will await discovery.

43) S. Todd Bernstein, M.D.
Present address and phone # unknown (WHC employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization and to the findings of the 4/5/99 Ct Scan as well as the laboratory lab results for the hospitalization.
Other fields of information will await discovery.

44) James S. Jelinek, M.D.
    Present address and phone # unknown (WHC employee/staff)

    Subjects of information The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization and specifically to the findings of the 4/5/99 Ct Scan, the MRI of 4/07/99.
    Other fields of information will await discovery.


45) Marc Schlosberg, M.D.
    Present address and phone # unknown (WHC employee/staff)

    Subjects of information:  The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during the 4/6/99 WHC hospitalization and specifically to the finding of the EEG of 4/07/99.
    Other fields of information will await discovery.


46) Carlo Tornatore, M.D.
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH hospitalizations and follow-up care at various institutions.  He will asked the basis for his recordations found in the medical record as well as his 7/16/99 letter that stated that, "in no uncertain terms that in the absence of the continued therapy that Karyn is receiving, she will no doubt decline physically and will need to be hospitalized for an intercurrent medical problem."
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


47) Paul Goldberg, M.D.
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH hospitalizations. He will be asked specifically about the informed consent issues and his involvement with Karyn A. Kerris and her family.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


48) Robert Musselman, M.D.
    9707 Medical Center Dr. 310
    Gaithersburg, M.D.

18

301-593-0002

Subject of information:  The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris over the years as her treating gastroenterologist. He will be asked questions regarding her various GI related problems, including her PEG tube and her peptic ulcer disease.

Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

49) Richard Delaney, M.D.
3929 Serrara Drive
Wheaton MD 20906
301-962-3311

Subjects of information:  The care, treatment and medication received by Karyn A. Kerris for general medicine issues.

Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

50) Irvin Guterman, M.D.
2101 Medical Park Dr. 305
Silver Spring, MD 20902
301-589-3324

Subjects of information:  The care, treatment and medication received by Karyn A. Kerris for an arm fracture which occurred while her aides assisted in repositioning her.

Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

51) Ken Accorsti, M.D. (sp?)
Present address and phone # unknown (GUH employee/staff)

Subjects of information:  The care, treatment and medication received by Karyn A. Kerris during the GUH hospitalizations. His testimony will be directed to the embolizations at issue, the ordering, procurement, use of the Histoacryl and Lipiodol, his involvement with the embolizations, his knowledge of the legality of the procedures, the package insert, etc.

Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

52) W. Courell (sp?)
Present address and phone # unknown (GUH employee/staff)


   Subjects of information:  The care, treatment and medication received by
Karyn A. Kerris during the GUH hospitalizations.  His testimony will be
directed to the embolizations at issue when he was a resident, the ordering,
procurement, use of the Histocryl and Lipiodol, his involvement with the
embolizations, his knowledge of the legality of the procedures, the package
insert, etc.
   Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.


53) Seth Kravet, M.D. (sp?)
Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment and medication received by
Karyn A. Kerris during the GUH hospitalizations.  His testimony will be
directed to the embolizations at issue, including the ordering, procurement,
use of the Histoacryl and Lipiodol, his involvement with the embolizations,
his knowledge of the legality of the procedures, the package insert, etc.
    Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.


54) Alan Abou Saif, M.D.
Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
prognosis of Karyn A. Kerris specifically surrounding the placement of PEG
device in Karyn A. Kerris at GUH on or about 5/3/99.
   Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.


55) Shamin Nouri, M.D.
Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
prognosis of Karyn A. Kerris, during her hospitalization on 4/13/99 at GUH.
Specifically, he will be addressing the fact that, "[a]fter the second
intervention on 3/3/99, her mental status, as well as her ambulation started to
deteriorate."
   Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.

56) C.L. Kauffman, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH 4/13/99 hospitalization.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


57) Robbie Harlowe, RNCN
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH 4/13/99 hospitalization.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


58) Janet Aires, CN
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH 4/13/99 hospitalization.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


59) James W. Lewis, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH 4/13/99 hospitalization, specifically the endoscopy performed on 5/3/99.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


60) Aliza S. Levine, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her GUH 10/11/99 hospitalization.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

61) Daniel Drubach, M.D.
   2200 Kernan Drive
   Baltimore, MD 21207
   # 410-448-2500

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during 5/07/99 – 6/18/99 hospitalization and neuro-rehabilitation evaluation at Kernan Hospital.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


62) June McIver, RN,CRRN
   Kennedy Krieger Institute
   Baltimore, MD
   #410-550-3176

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris and other specifics found in the Progress Report of 7/26/99, 8/09/99, etc.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

63) Mai-Chi T. Nguyen, M.D.
   Howard County General Hospital
   5755 Cedar Lane
   Columbia, MD 21044

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her hospitalization of 8/17/99, including the determination that the treatment of "multiple AVMs resulting in "one mini stroke.""
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


64) Willie Bivings, Jr.
   Howard County General Hospital
   5755 Cedar Lane
   Columbia, MD 21044

   Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris during her hospitalization of 12/14/99.
   Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

65) Jeffrey A. Williams, M.D.
    Johns Hopkins Oncology Center
    Baltimore, MD  21287-8922
    410-955-6980

    Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris in general and as reflected by the consult of
    12/14/99, including the notation that, "[a]fter the third embolization, she
    became unable to walk, talk, or open her eyes."
    Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


66) Derek Shickell, M.D.
    Johns Hopkins Oncology Center
    Baltimore, MD  21287-8922
    410-955-6980

    Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris in general and JHH and as reflected by the
    consult of 12/14/99, including the notation that, "[a]fter the third
    embolization, she became unable to walk, talk, or open her eyes."
    Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


67) Daniel Rigamonti, M.D.
    Johns Hospkins Hospital
    600 North Wolfe Street
    Meyer 5-181
    Baltimore, MD   20211
    Phone unknown

    Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris while at JHH.
    Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


68) Kristen O'Toole, MS, CCC-SLP
    Central Maryland Rehab. Center
    (phone and address unknown)

    Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris involved in the speech pathology evaluation of
    11/23/99 at CMRC.

    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

69) Sharon Dickman, PT
    Central Maryland Rehab. Center
    (phone and address unknown)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris involved in the OT, SLP, PT evaluation of 10/21/99 at CMRC.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

70) Alka Singh, M.D.
    CRA
    18111 Prince Philip Dr.
    Suite T-20
    Olney, MD  20832
    #301-774-3400

    Subject of information: The findings of the 2/20/2004 MRI and 6/13/02 upper GI series.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

71) Ronald H. Uscinski, M.D.
    18111 Prince Philip Drive, Suite 104
    Olney, MD 20832
    301-774-9518

    Subjects of information: The care, treatment and medication received by Karyn A. Kerris relating to her AVM. He will be specifically asked about the following statements: 8/13/98 note, whether his statement that, "embulization[sic]"included embolization with the illegal device, Histoacryl; in the 3/15/01 note " [s]he has had an obvious deterioration since I saw her last in the office several years ago, and I am well aware that she has been through a great many attempts at her galenic malformation including multiple embolization procedures; " and in the 2/18/01 Operative Report that stated "[s]he has undergone embolization of the same with longstanding impairment of mental status." He will also address her multiple hospitalizations, and the insertion of the ventriculoperitoneal shunt.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

72) Nancy I. Inman, MAT CCC-SLP
    Kennedy Krieger Institute
    Baltimore, MD

        Subject of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris involved in her Augmentative Communication
    Evaluation of 5/11/00 at KKI.
        Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


73) Gary K. Steinberg, M.D.
    Stanford University Medical Center
    Stanford, CA  94305
    650-723-5572

        Subjects of information: The medical records evaluation of Karyn A.
    Kerris resulting in the letter of 11/20/200, and his prior letter of 10/20/2000.
    He will he asked to address specifically, the comment that after reviewing the
    records he concluded that, "[f]ollowing the embolization sessions, she
    suffered neurologic deterioration."  He will also be asked whether his
    recommendation of further embolization included the illegal use of
    Histoacryl.
        Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


74) Elizabeth Kennedy, MD
    Present address and phone # unknown (GUH employee/staff)

        Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris involved in her intake into the GUH Pain
    Management Center.   This will include her finding that, "[p]atient underwent
    AVM embolization x 3 with significant compromise in her neurologic status
    following each embolization with residual left hemiparesis."
        Other fields of information will await discovery, but will involve the
    issues set forth in the Amended Complaint and prior pleadings.


75) Veronica Mitchell, MD
    Present address and phone # unknown (GUH employee/staff)

        Subjects of information: The care, treatment, medications, diagnosis and
    prognosis of Karyn A. Kerris involved in her intake into the GUH Pain
    Management Center.   This will include her finding that, "[p]atient underwent

AVM embolization x 3 with significant compromise in her neurologic status following each embolization with residual left hemiparesis."
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


76) Lori Beason-Held, Ph.D.
    Present address and phone # unknown (prior NIH employee/staff)

    Subjects of information: The nature of, and specifics regarding, the NIH protocol entitled, "Cognitive Activation in X-Chromosome Disorders: Assessment of Turners and Fragile X Syndromes," and how it made a serendipitous finding of an AVM in Karyn Kerris in an MRI.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


77) Penelope P. Feuillan, M.D.
    Present address and phone # unknown (prior NIH employee/staff)

    Subjects of information: The nature of, and specifics regarding, the NIH protocol entitled, "Cognitive Activation in X-Chromosome Disorders: Assessment of Turners and Fragile X Syndromes," and how it made a serendipitous finding of an AVM in Karyn Kerris.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


78) Stanley B. Benjamin, MD
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, on various dates including 7/13/00 and 3/24/04 during her endoscopy procedures at GUH.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


79) Margaret Timmons, M.D.
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, during her hospitalization on 2/18/01 at GUH. This will include the placement of the ventriculoperitoneal shunt.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

80) Ranit Mishon, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
   prognosis of Karyn A. Kerris, during her hospitalization on 2/18/01 at GUH.
   This will include the placement of the ventriculoperitoneal shunt.
   Other fields of information will await discovery, but will involve the
   issues set forth in the Amended Complaint and prior pleadings.

81) Dr. Cantero
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
   prognosis of Karyn A. Kerris, during her hospitalization on 2/18/01 at GUH.
   This will include the placement of the ventriculoperitoneal shunt.
   Other fields of information will await discovery, but will involve the
   issues set forth in the Amended Complaint and prior pleadings.

82) Lori McDonald, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
   prognosis of Karyn A. Kerris, during her hospitalization on 2/18/01 at GUH.
   This will include the placement of the ventriculoperitoneal shunt.
   Other fields of information will await discovery, but will involve the
   issues set forth in the Amended Complaint and prior pleadings.

83) Ricardo Gonzalez, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and
   prognosis of Karyn A. Kerris, during her hospitalization on 3/23/04 at GUH.
   This will include the evaluation of her abdominal complaints and her G tube.
   Other fields of information will await discovery, but will involve the
   issues set forth in the Amended Complaint and prior pleadings.

84) Pamela Blake, M.D.
   Present address and phone # unknown (GUH employee/staff)

   Subjects of information: The care, treatment, medications, diagnosis and

prognosis of Karyn A. Kerris, during her hospitalization on 3/23/04 at GUH. This will include the evaluation of her abdominal complaints and her G tube.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


85) Dr. Crawford
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, during her hospitalization on 3/23/04 at GUH. This will include the evaluation of her abdominal complaints and her G tube.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


86) Harry Marshall, M.D.
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, during her hospitalization on 3/23/04 at GUH. This will include the evaluation of her abdominal complaints and her G tube.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


87) Lucienne Reed, M.D.
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, during her hospitalization on 10/12/03 at GUH for pneumonia. This will include the evaluation of her abdominal complaints and her G tube.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.


88) Amanda Lytton, RDLD
    Present address and phone # unknown (GUH employee/staff)

    Subjects of information: The care, treatment, medications, diagnosis and prognosis of Karyn A. Kerris, during her hospitalization on 3/23/03 at GUH for pneumonia. This will include the evaluation of her abdominal complaints and her G tube.
    Other fields of information will await discovery, but will involve the issues set forth in the Amended Complaint and prior pleadings.

89) Todd Morrell, M.D.
Present address and phone # unknown (GUH employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and
prognosis of Karyn A. Kerris, during her hospitalization on 10/12/03 at GUH
for pneumonia. This will include the evaluation of her abdominal complaints
and her G tube.
Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.

90) David Fleischer, M.D.
Present address and phone # unknown (GUH employee/staff)

Subjects of information: The care, treatment, medications, diagnosis and
prognosis of Karyn A. Kerris, during her GI evaluation on 8/16/00 at GUH.
Other fields of information will await discovery, but will involve the
issues set forth in the Amended Complaint and prior pleadings.[2]

**B. Description of documents to be used to support claims[3]**

1) The following documents have already been provided by Plaintiffs to the

Defendants (Plaintiffs are not aware as to whether, if any, of the following records were

complete, however, all said in Plaintiffs' possession were provided):

a.  Washington Hospital Center Records 4/06/99
b.  National Rehabilitation Hospital for 3/17/99
c.  Histoacryl package insert (provided with pleadings)
d.  Present IRB protocols (provided in pleadings)
e.  Kernan Hospital records 5/07/99 – 6/18/99.
f.  Report of Dr. Lichtblau (provided in pleadings and in settlement)
g.  Summary report of Dr. Lurito (attached)
h.  Trade Alert regarding Histoacryl and Lipiodol (provided with
    pleadings)

---

[2] Plaintiffs reserve the right to call any of the 400+ individuals listed in Defendant Georgetown University
and Vance E. Watson, M.D. Federal Rule of Civil Procedure 26 Initial Disclosure.
[3] Plaintiffs also reserve the right to amend this list of documents when discovery so mandates and
incorporates herein all documents listed by Defendants in Defendant Georgetown University and Vance E.
Watson, M.D. Federal Rule of Civil Procedure 26 Initial Disclosure.

2) The following documents were produced originally produced by the

Defendants and provided to Plaintiffs:

    a.  Georgetown University Hospital Records for  12/3/98
    b.  Georgetown University Hospital Records for  11/4/98
    c.  Georgetown University Hospital Records for  1/13/99
    d.  Georgetown University Hospital Records for  3/3/99
    e.  Georgetown University Hospital Follow–up Records
    f.  Georgetown University Hospital Records for  4/13/99
    g.  Georgetown University Hospital Records for  10/11/99
    h.  Georgetown University Hospital Records for  7/13/00
    i.  Georgetown University Hospital Records for  2/18/01
    j.  Georgetown University Hospital Records for  3/23/04
    k.  Georgetown University Hospital Clinic Notes 3/23/04 dated 3/26/04
    l.  Georgetown University Hospital Records 10/12/03
    m.  Georgetown University Hospital Records Neurology Records
    n.  James H. Lewis, M.D.'s Endoscopy Reports 5/3/99, 7/27/00
    o.  Georgetown University Hospital Gastroenterology Records
    p.  Records of the VNA
    q.  Prescription records
    r.  Office chart of Ronald H. Uscinski, M.D 12/8/00
    s.  Partial records of Richard Delaney, M.D., attached to the Dr. Uscinski's records. 12/11/97-1/24/02
    t.  Partial Johns Hopkins records attached to Dr. Uscinski's records.
    u.  NIH medical records 10/15/97-1/20/98
    v.  NIH protocol entitled, "Cognitive Activation in X-Chromosome Disorders: Assessment of Turners and Fragile X Syndromes."
    w.  NIH personnel records of Karyn Kerris
    x.  Howard County General Hospital Records (various dates)
    y.  Resume of Karyn Kerris
    z.  Declaration of Vance E. Watson, M.D.

3) The following documents are in the sole possession of the Defendants and are the subject of a Request for Production:

    a.  Procurement documents for the Histoacryl and Lipiodol
    b.  Payment documents for the Histoacryl and Lipiodol
    c.  Shipping documents for the Histoacryl and Lipiodol
    d.  Letters from and to the FDA regarding Histoacryl and Lipiodol
    e.  Memoranda regarding the ordering, procurement and use of illegal devices including Histoacryl and Lipiodol.
    f.  Minutes of the meetings of the Board of Directors regarding sending Kenneth Bloem to be in charge of the Hospital and raise its profitability.
    g.  Pleadings regarding the Georgetown physicians suit against

Kenneth Bloem and the Board of Directors regarding the change to profitability.

h. Documents/news articles reflecting the lawsuit stated in (g) above

i. Inter-office memorandum regarding the profitability of the Department of Neuroradiology including the profit in procedures such as the ones performed on Karyn Kerris.

j. Morbidity and mortality statistics for the embolization procedures performed by Vance E. Watson, M.D.

k. Any and all correspondence between Georgetown University, the Medical Center and any agent and/or employee with "Yocan Pharmaceuticals" a fraudulent "pharmaceutical company" in Thornhill, Canada.

l. Minutes of IRB meetings discussing the use of Lipiodol and/or Histoacryl and/or any other illegal devices.

m. Policies and Procedures for the IRB in effect in 1998-1999.

n. All Documents generated at the "multidisciplinary neurovascular conference" described in Vance E. Watson, M.D.'s Declaration.

o. All documents authorizing payment, including those insurance documents referenced in Vance E. Watson, M.D.'s Declaration, for Histoacryl and/or Lipiodol and or embolization procedures with said illegal devices.

p. X-ray films of Karyn Kerris

q. Angiographies of Karyn Kerris

4) The following documents are known to Plaintiffs, but are not in their possession, and it is unknown whether Defendants have possession of said:

a. The complete Johns Hopkins medical records for 11/04/99, etc.

b. The complete Kennedy Kreiger Institute records

c. Holy Cross medical records relating to the care and treatment by Dr. Musselman

d. Financial data of Georgetown University establishing their total assets in excess of 2.5 billion dollars

## C. Computation of Damages

1. Future Care Costs: $18,600,000.00 - $19,200,000.00 (estimated)(see report of Plaintiffs' economist, Ex. A. Richard J. Lurito, Ph.D., based on the report of Plaintiffs' Physical Medicine and Rehabilitation expert, Craig H. Lichtblau, M.D.)[4]

---

[4] Plaintiffs have not attached Dr. Lichtblau's report as it is quite voluminous (it has already been provided in its entirety to the defense). It contains, *inter alia*: a twenty (21) page "Comprehensive Medical Evaluation;" a two (2) page "Vocational Position Statement;" a two (2) page "AMA Impairment Rating;" one (1) page "Functional Assessment;" and a eleven (11) page "Continuation of Care;" and a five (5) page "Summary Report." Fortunately, Dr. Lurito's report (which was previously provided to the defense)

2.  Future Lost wages: $900,000.00 (estimated) (see report of Plaintiffs' economist, Richard J. Lurito, Ph.D., Ex. A)

3.  Lost pension Benefits: $200,000.00 (estimated) (see report of Plaintiffs' economist, Richard J. Lurito, Ph.D., Ex.A)

4.  Past medical expenses March 3, 1999 to date. (this calculation is unknown and must await receipt of the medical bills by Plaintiffs).

5.  Thrift Savings Plan Benefits (this calculation must also await discovery).

6.  General Damages: $80,000,000.00 (based on Plaintiff Karyn Kerris' permanent pain and suffering).[5]

7.  Punitive damages: $110,000.00 (estimated).


Respectfully submitted,

By:  ___/s/ Anthony Newman_____
Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400

___/s/ Andrew E. Greenwald_____
Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200

*Counsel for Plaintiffs*

---

attached hereto gives a breakdown of the present value of each of the losses referenced in Dr. Lichtblau's report.
[5] Plaintiffs provided defense with some eighty (80) photographs of Karyn A. Kerris, which depict her present level of pain, suffering, humiliation and disability.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the United States District Court Local Rule for the District of

Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via

electronic filing on the Court's CM/ECF website on May 11, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

_____/s/ Anthony Newman_____
Anthony Newman
