THE JOHNS HOPKINS HOSPITAL          HISTORY NO.

PATIENT'S NAME  IACANGELO, Karyn 207 32 28

Born:  8/2/70    Seen:  7/25/86          Pediatric Endocrinology

## INTERVAL NOTE

Karyn is a 15-11/12 years old white female with Turner's syndrome.  She is here today for a 7 month follow up visit.

Karyn has been very healthy over the past 7 months.  She has been taking Premarin 0.3 mg every day without any problems.  She has noticed an increase in breast size and growth of pubic hair.  In addition, she recently developed a thick white vaginal discharge, but has had no spotting or menses.  At the last visit, the possibility of starting birth control pills to induce menstrual cycling was raised.

The only other concern Karyn and her parents have is Karyn's predisposition to formation of moles and the presence of a birth mark on the left aspect of her neck.

Karyn is scheduled to have the pins removed from her left hip on 8/19/86.  The pins had been placed in 1/84 when she suffered a slipped capital femoral.

Karyn has been very active in dance this summer.  She took a trip with her dance troupe to Las Vegas.  She has also travelled to France with another school group this summer.  She has romatic interests and did begin to date a young man who just graduated from her heigh school.  However, she is not yet sexually active.  She just completed the tenth grade and earned A's and B's and will return to the same high school in the fall.  In addition, she recently got a learner's permit to drive which has added an exiciting new facet to her life.

PHYSICAL EXAM:  Normal.  Progression of puberty as evidence by an increase in pubic hair and breast development.

DISCUSSION:

Karyn has been very healthy over the past 7 months.  On physical exam, she has had an unexpected increase in height of 1.5 cm and is currently 137.1 cm.  In addition, she has had progression of her pubertal development and is now Tanner stage 4 for both pubic hair and breast development.  There was a minimal amount of white vaginal discharge thought most likely to be due to the premarin, although possibly a yeast infection.

The possibility of beginning Karyn on LoEstrin to start menstrual cycling was discussed in detail with Karyn and her parents.  All agreed that Karyn was ready to begin cycling.  Karyn is quite comfortable with this idea as well.  In addition, the prospect of switching Karyn's medical follow up to a gynecologist was addressed.  We encouraged Karyn to find a gynecologist with whom she is comfortable talking about all issues.  We have planned to see Karyn back in 6 months unless she locates a gynecologist she likes before that date.  If that is the case, we will forward all pertinent records to her new physician.

SUMMARY:                                          Claude Migeon, M.D.
    1.  C.A.  15-11/12 yrs.:  H.A.  9-3/12 yrs.   Barry Reiner, M.D.
    2.  Turner's syndrome.                         Laura Millman, M.S. IV
DISPOSITION:
    1.  Return in 6 months, 1/9/87 at 3:00 p.m.
    2.  Medications:  a)  LoEstrin - one pill every day beginning the first of each
                          month.  Take the pill for 21 days and then stop for the rest
                          of the month.
cc:  Dr. White

JHH0001

THE JOHNS HOPKINS HOSPITAL          HISTORY NO.

                                    PATIENT'S NAME
                                    IACANGELO, Karyn 207 32 28

Born: 8/2/70     Seen: 12/6/85          Pediatric Endocrinology

### INTERVAL NOTE

Karyn is a 15½ years old with Turner's syndrome. Over the last 6 months she has been on premarin 0.3 mg every day without complications. She does report continued sexual, breast and pubic hair development, but no breakthrough periods. She is doing well in school, is active with the school news paper and planning a trip to France.

PHYSICAL EXAM: Advancement of sexual development to Tanner Breast 3, pubic hair 2.

DISCUSSION:

Karyn continues to grow with a height increase at 2.3 cm and a weight increase of 3.2 kg during the last 6 months. She feels well and is sexually developing as noted. Plans are to continue the premarin for 6 months and then begin cycling her probably with a birth control pill.

SUMMARY:

   1.  C.A. 15-4/12 yrs.: H.A. 9-0/12 yrs.
   2.  Turner's syndrome.
   3.  S/P slipped capital femoral epiphysis repair 1/84.

DISPOSITION:

   1.  Return in 6 months, 6/13/86 at 12:00 noon.
   2.  Medications:  a)  Premarin 0.3 mg every day.

                                        Claude J. Migeon, M.D.
                                        Stuart Talor, M.D.

cc:  Dr. White
     Dr. James Rascher
/do

JHH0002

THE JOHNS HOPKINS HOSPITAL                    HISTORY NO.

                                              PATIENT'S NAME  IACANGELO, Karyn 207 32 28

Born: 8/2/70    Seen:  5/17/85              Pediatric Endocrinology

## INTERVAL NOTE

Karyn is a young girl with Turner's syndrome.  She has had a trial of Anavar, but it was interrupted between January and October, 1984; the growth velocity has not seemed to improve whilst on it.  In the interval, Karyn has been well and she is without complaints.  She is doing well in school, and is being tutored in Algebra, her perennial weak subject.  She is also still dancing and reports no pain in the right or left hip.

PHYSICAL EXAM: Abnormal - with change: apparition of pubic hair.

DISCUSSION:

Karyn's height increase has been 6 mm in 3 months and she gained 1 kg.  Subjectively, she feels well.  Of note, is the appearance of some pubic hair, either due to the androgenic effect of the Anavar, or to adrenarche.  Dr. Migeon's recommendation is to stop the Anavar and begin estrogen therapy, and Karyn readily agreed.  She will be started on premarin, 0.3 mg daily.  Possible side-effects were reviewed, and it was suggested that she see her private medical doctor in 3 months, and return to this clinic in 6 months.

SUMMARY:

1. C.A.  14-9/12 yrs.:  H.A.  9 yrs.
2. Turner's syndrome.
3. S/P SCEFE repair 1/84 on left.

DISPOSITION:

1. Return in 6 months 11/22/85 at 12:00 noon and in 3 months to private medical doctor.
2. Medications:  a)  Premarin 0.3 mg/day for 6 months.

                                        Claude J. Migeon, M.D.
                                        Nick Jospe, M.D.

cc:  Dr. White
     Dr. Rascher
/do

THE JOHNS HOPKINS HOSPITAL          HISTORY NO.

                                    PATIENT'S NAME  IACANGELO, Karyn 207 32 28

Born: 8/2/70     Seen: 2/1/85          Pediatric Endocrinology

---

## INTERVAL NOTE

Karyn is a 14-6/12 years old white female with diagnosis of Turner's syndrome (karyotype 45,XO). She had been on Anavar since 9/83 but this was discontinued when Karyn had surgical repair of a slipped capital femoral epiphysis in 1/84. Karyn was restarted on Anavar in 10/84.

Karyn has recently felt some pain in both knees and was seen by Dr. Rascher has orthopedic surgeon, concerning this. Left hip pins may be removed this summer.

Now in the 9th grade, Karyn is on the honor roll and is only having difficulty with Algebra.

PHYSICAL EXAM: Normal.

DISCUSSION:

Karyn's height has increased only 1.7 cm over previous 4½ months. Velocity of growth has not really increased on Anavar as compared to period when she was off Anavar. She has no evidence of virilization on physical exam and bone age is still delayed (12-0/12 years with S.D. of 10 months). Karyn has a 3 months supply of Anavar remaining at home and both Karyn and mother are comfortable with their decision to finish the Anavar and return in 3 months. Estrogen therapy will probably be started at that time.

SUMMARY:

    1. C.A. 14-6/12 yrs.: H.A. 8-5/12 yrs.: B.A. 12-0/12 yrs. S.D. 10 months.
    2. Turner's syndrome.
    3. SCPE 1/84.

DISPOSITION:

    1. Return in 3 months, 5/17/85 at 12:00 noon.
    2. Medications: a) Anavar 2.5 mg every day.


                                    Claude Migeon, M.D.
                                    M. Cortese, M.S. III
cc: Dr. White
    Dr. Rascher
/do

X-RAY CONSULTATION REPORT

# THE JOHNS HOPKINS HOSPITAL

**DEPARTMENT OF RADIOLOGY
AND RADIOLOGICAL SCIENCE**

MEDICAL RECORD COPY

| AGE OR D.O.B. | RACE | SEX | X-RAY SECTION | PATIENT'S HISTORY NUMBER |
| DATE OF EXAM | PATIENT'S PHYSICIAN | | | PATIENT'S NAME |
| NO. OF EXAMS | SEND COPY TO | | | REFERRING WARD OR CLINIC |



CONCISE POSITIVE FINDINGS AND RELEVANT MEASUREMENTS REPORTED.
STRUCTURES NOT MENTIONED ARE JUDGED NORMAL FOR AGE.

JHH X-22-4006

JHH0005

# THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME    IACANGELO, Karyn 207 32 28

Born: 8/2/70    Seen: 9/12/84    Pediatric Endocrinology

## INTERVAL NOTE

14-1/12 years old white female with Turner's syndrome (karyotype 45,XO). Patient was on anavar until an unfortunate hip fracture 1/84. Anavar was discontinued after left hip pinning due to concern of exacerbating a left length discrepancy. Last bone age 9.9 (8/83). Has grown 2 cm since 4/84. Estrogens being withheld for maximal growth attainment. Patient has been comfortable with this decision to date.

**PHYSICAL EXAM:**    No change.

**DISCUSSION:**

The orthopedic surgeon, Dr. Rasher, feels that the left hip pinning will probably not provoke assymetric epiphyseal growth. Karyn can be re-started on anavar 2.5 mg every day.

Mr. Iacongelo stated that he felt the school had been negligent in relation to the fall of Karyn and he has started sueing procedures.

**SUMMARY:**

1. C.A.  14-1/12 yrs.:  H.A.  8 yrs.
2. Turner's syndrome.

**DISPOSITION:**

1. Return in 4 months, 1/18/85 at 12:00 noon.
2. Medications:  a)  Anavar 2.5 mg every day.
3. Bone age is needed at next visit.

Claude J. Migeon, M.D.
Gary Wand, M.D.

cc:  Dr. Merton White
     Dr. James Rascher
/do

# THE JOHNS HOPKINS UNIVERSITY

## SCHOOL OF MEDICINE

### DEPARTMENT OF PEDIATRICS



DIVISION OF PEDIATRIC CARDIOLOGY

Langford Kidd, M.D., Director
Anthony F. Cutilletta, M.D.
Jean S. Kan, M.D.
Catherine A. Neill, M.D.
Gregory B. Wright, M.D.
Kenneth G. Zahka, M.D.

THE HELEN B. TAUSSIG CHILDREN'S
CARDIAC CENTER

The Johns Hopkins Hospital
Baltimore, Maryland 21205
Tel.: (301) 955-5990
If no answer, (301) 955-6070

March 23, 1984

Dr. Claude Migeon
Pediatric Endocrinology
CMSC 3-110

Re: Karyn Iacangelo
JHH: 207-32-28

Dear Claude:

I saw this 13-year old recently when she was in to see you about her Turner's syndrome. I understand that she had dislocated her hip with a fall, but it had been replaced. She was a fit and active young lady before this, I understand, without shortness of breath or fatigue.

On physical examination, she had many of the stigmata of Turner's syndrome, and was wearing braces. Her pulse was in sinus rhythm. The blood pressure in her right arm was 90/60, and in the left arm, 90/50, and in the right leg, 110/80. Her femoral pulses were brisk. Her apex beat was not displaced. The first heart sound was normal, and the second heart sound was split, and the splitting varied with respiration. There was a grade II ejection systolic murmur maximum in the pulmonary area which was not conducted. There was no murmur in her back. Her chest was clear, and the liver and spleen were not enlarged.

The electrocardiogram showed the heart to be in normal sinus rhythm with a mean QRS axis of +21°. The QRS interval was 1.2 seconds, which suggests mild interventricular conduction delay, but the record was otherwise normal. The echocardiogram showed no abnormalities with a left ventricular ejection fraction of .78. The aortic valve appeared to close centrally. There was no left ventricular hypertrophy, and no signs of coarctation of the aorta.

In conclusion, I believe that this young lady with Turner's syndrome, is in good cardiovascular condition. I could detect no signs of coarctation of the aorta or aortic valve disease. She does have a functional murmur.

JHH0007

With very many thanks for referring her, and with best personal regards,

Yours sincerely,

Langford Kidd, M.D., F.R.C.P.
Harriet Lane Home Professor
Director
Division of Pediatric Cardiology

LK/tf

# THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME  IACANGELO, Karyn 207 32 28

Born:  8/2/70    Seen:  3/14/84

Pediatric Endocrinology

## INTERVAL NOTE

Karyn is a 13-5/12 years old white female with Turner's syndrome (karyotype 45,XO). Karyn was started on anavar in September, 1983 to induce a growth spurt, on which she had a 1.3 cm growth spurt over 3 months. She experienced a fall in January, 1984 and had a slipped capital femoral epiphysis (left). The decision was made to discontinue anavar due to concern re exacerbating a left length discrepancy as the left femoral growth plate will fuse subsequent to orthopedic pinning.

Karyn had a minor superficial wound infection treated with local debridement and $AgNO_3$ with good results. She is otherwise feeling well and planning to go back to school the end of March.

PHYSICAL EXAM:  Abnormal:  Non weight bearing on left leg due to SCFE, on crutches. She has a healing surgical scar on her left upper lateral thigh.

## DISCUSSION:

Karyn suffered a very unfortunate fall in January and is being treated for a left slipped capital femoral epiphyses. Unfortunately, this situation seems to have put a halt to efforts aimed at optimizing her ultimate stature. Since no further efforts will be made in this regard, consideration will soon be given to embarking on estrogen therapy. Karyn wishes to wait six months in order to gain a bit more height prior beginning on estrogens. She will return to clinic in six months at which time the situation will be reviewed and discussed again.

Karyn remains under the care of Dr. Rascher for management of her SCFE.

Karyn was seen by Dr. Kidd in Pediatric Cardiology for evaluation of a soft systolic murmur. Her EKG and ECHO were normal and Dr. Kidd reported no evidence of cardiovascular abnormality. She has a "functional" murmur.

SUMMARY:

1. C.A. 13-7/12 yrs.:  H.A.  7-10/12 yrs.
2. Turner's syndrome.

DISPOSITION:

1. Return in 6 months, 9/12/84 at 10:00 a.m.
2. No medications.

Claude J. Migeon, M.D.
Pat Donohoue, M.D.
Nancy Dalos, M.D.

cc:  Dr. Merton White
     Dr. James Rascher
/do

JHH0009

THE JOHNS HOPKINS HOSPITAL                  PEDIATRIC HEART STATION

HISTORY #: 207 32 28                        DIAGNOSIS: R/O COA, Turner's
NAME: Iacangelo, Karyn                      FLOOR: 218
BIRTHDATE: 8-2-70                           DATE: 3-14-84

TWO-DIMENSIONAL ECHOCARDIOGRAM:
LONG AXIS:
    MITRAL VALVE: ___Normal ___Flutter ___Prolapse ___SAM ___Thick
    AORTIC VALVE: ___Normal ___Flutter ___Eccentric ___Thick ___Domed
    SEPTAL MOTION: ___Normal ___Paradoxical ___Flat ___VSD
    LEFT VENTRICLE: Size ___Normal ___Abnormal
                    Wall Motion ___Normal ___Abnormal
    RIGHT VENTRICLE: Size ___Normal ___Abnormal
    CONTINUITY: ___Mitral-aortic ___IVS-aortic ___Override
    ADDITIONAL COMMENTS:

SHORT AXIS:
    GREAT VESSEL RELATIONS: ___Normal ___Abnormal
    AORTA: ___Normal ___Abnormal
    PULMONARY ARTERY & BRANCHES: ___Normal ___Abnormal
    LEFT VENTRICULAR WALL MOTION: ___Normal ___Abnormal
    MITRAL VALVE & PAPILLARY MUSCLE: ___Normal ___Abnormal
    CORONARY ARTERIES: ___Normal ___Abnormal
    ADDITIONAL COMMENTS:

FOUR-CHAMBER:
    INTERVENTRICULAR SEPTUM: ___Intact ___Defect
    INTERATRIAL SEPTUM: ___Intact ___Defect
    MITRAL VALVE: ___Normal ___Abnormal
    TRICUSPID VALVE: ___Normal ___Abnormal
    RIGHT VENTRICULAR SIZE: ___Normal ___Abnormal
    LEFT VENTRICULAR SIZE: ___Normal ___Abnormal
    ADDITIONAL COMMENTS:

INTERPRETATION:   LA 3cms          LVED 4.5      PW .7
                  Ao 3cms          ES 3.0        IVS .7
                                   LVEF .70

                  Normal echo!

                                            L King
                                                    M.D.

#118    H624 - 5021

JHH0010

THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME
                    IACANGELO, Karyn 7 207 32 28

Born:  8/2/70                    Pediatric Endocrinology

ADDENDUM:*** 2/2/84:

   Mr. Iacangelo phoned 1/25/84 to report that Karyn had been operated on for a slipp-
ed capital femoral epiphysis.  She had been limping for several weeks, and suffered
a fall at school.  She was unable to walk and was taken to Holy Cross Hospital
Emergency Room where the diagnosi of SCFE was made on 1/16/84.  She had surgery
which was apparently quite extensive.  The orthopedic surgeon, Dr. Rasher, had
questioned whether Anavar could have had anything to do with the development of
SCFE, and hence Karyn had been off Anavar since 1/16.  I spoke with Dr. Rasher
(881-5900) on 1/27/84 and discussed with him that we knew of no association between
Anavar therapy and increased risk of SCFE.  He stated that the treatment of choice
for this condition is stabilization of this epiphysis to prevent further growth there.
He says there is a 20% risk of developing the same problem in the other hip.  She
is also at risk of developing aseptic necrosis of the femoral head on the involved
side.  He will be sending us a report of Karyn's surgery and follow-up.

   It is of interest that Karyn developed this problem.  We have found no evidence
in endocrine texts of any association between Turner's syndrome and SCFE.  The bony
abnormalities in Turner's syndrome include osteoporosis secondary to lack of estrogen,
short 4th metacarpal, and  enlargment or deformities of the medial tibial condyle.
This was also confirmed after discussion with Dr. Dorst in radiology, and after con-
sulting several radiology texts.

   Karyn has multiple features which are opposite to the commonly known predisposing
factors for SCFE.  She is short, thin and prepubertal.  Predisposing factors:  it
occurs most often in individuals during puberty, tall persons, obese persons, more
often males than females, more often black persons than white.

   Because of the risk of Karyn developing a leg length discrepancy, a growth
acceleration from Anavar may worsen this problem.  It is our feeling, therefore,
that Anavar should be discontinued.

   I phoned Mr. Iacangelo to inform him of our thoughts and recommendations.  He
understood our concerns.  He says that Karyn is feeling much better, and is learning
to walk with crutches without difficulty.

   Karyn has a follow up appointment with Dr. Migeon on 3/14/84.


                                        Pat Donohoue, M.D.
cc:  Dr. Merton White
/do

JHH0011

THE JOHNS HOPKINS HOSPITAL - DEPARTMENT OF LABORATORY MEDICINE
************
CUMULATIVE DISCHARGE SUMMARY
************
* FINAL REPORT *
************

CHEMISTRY -- ELECTROLYTES

| | NA<br>135-148<br>MEQ/L | K<br>3.5-5.0<br>MEQ/L | CL<br>99-111<br>MEQ/L | CO2<br>24-30<br>MEQ/L | ANION<br>4-20 | BUN<br>12-25<br>MG/DL | CREAT<br>0.4-1.5<br>MG/DL | BUN/CR | GLU<br>60-105<br>MG/DL | OSMOL<br>285-295<br>MOS/KG | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE<br>12/28/83<br>TIME<br>TIME? | RMK | | | | | | | | | SPEC<br>815902 | MD<br>E4331 |
| | 144 | 4.5 | 106 | 25 | 18 | 12 | 0.5 | 24 | 81 | | |

GENERAL CHEMISTRY

| | T BILI<br>0.3-1.2<br>MG/DL | DBILI<br>0.0-0.4<br>MG/DL | MG<br>1.5-2.0<br>MEQ/L | CA<br>9.0-11.0<br>MG/DL | PO4<br>3.2-6.3<br>MG/DL | URIC A<br>4.0-7.8<br>MG/DL | TP<br>6.0-8.5<br>G/DL | ALB<br>3.2-5.3<br>G/DL | AMMON<br>11-35<br>UMOL/L | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE<br>12/28/83<br>TIME<br>TIME? | RMK | | | | | | | | | SPEC<br>815902 | MD<br>E4331 |
| | 0.4 | 0.1 | 2.4 | 10.5 | 4.8 | 5.4 | 7.3 | 4.6 | | |

CHEMISTRY -- ENZYMES

| | AST<br>0-41<br>IU/L | ALT<br>0-33<br>IU/L | AST/ALT | ALKPHOS<br>27-221<br>IU/L | LDH<br>0-223<br>IU/L | AMYLAS<br>0-160<br>CU/DL | 5'NUCL<br>0-17<br>U/L | GAM-GT<br>8-51<br>MIU/L | ALDOLS<br>0-8.0<br>IU/L | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE<br>12/28/83<br>TIME<br>TIME? | RMK | | | | | | | | | SPEC<br>815902 | MD<br>E4331 |
| | 26 | 11 | | 140 | 259* | | | | | |

CHEMISTRY -- CARDIAC

| | CHOL<br>124-201<br>MG/DL | TRIG<br>35-130<br>MG/DL | H-CHOL<br>30-70<br>MG/DL | CK TOTAL<br>0-135<br>IU/L | CK-MM<br>IU/L | CK-MB<br>IU/L | CK-BB<br>IU/L | | |
|---|---|---|---|---|---|---|---|---|---|
| DATE<br>12/28/83<br>TIME<br>TIME? | RMK | | | | | | | | SPEC<br>815902 | MD<br>E4331 |
| | SEE A | | | | | | | | |

* = ABNORMAL VALUE
A = CHANNEL MALFUNCTION

218CL    PRINTED: 01 JAN 84    2:48 AM    PERMANENT RECORD - FILE ON PATIENT'S CHART
PAGE 1    IACANGELO, KARYN

JHH0012

J.H.H. 207-32-28

JHHH0013

THE JOHNS HOPKINS HOSPITAL DEPARTMENT OF LABORATORY MEDICINE
CUMULATIVE DISCHARGE SUMMARY
* * * * F I N A L   R E P O R T * * * *

CHEMISTRY -- ELECTROLYTES

GENERAL CHEMISTRY

CHEMISTRY -- ENZYMES

CHEMISTRY -- CARDIAC

CHEMISTRY -- ANEMIA

* - ABNORMAL VALUE
# - VALUES ARE NOT ...

PERMANENT RECORD - FILE ON PATIENT'S CHART

218 ch

# PEDIATRIC ENDOCRINE LABORATORY

CMSC 3 - 122          P. ENDO
                      22-3B1735

THE JOHNS HOPKINS HOSPITAL
                      DR. H HARRISON
                      RETURN TO CMSC-3
SAMPLE RECEIVED: 1/4/84          CMSC 3-110

RESULT SENT:

DATE: 1/3/84

LOCATION: Peds Endocrine Clinic

HISTORY NUMBER: 7 207 32 28

NAME: Iacangelo, Karyn

APPROVED BY Baltick, M.

| AGE | HEIGHT | WEIGHT | STAGE OF SEXUAL DEVELOPMENT | REQUESTING M.D.: | | | PRINT CLEARLY | | DR. CODE NUMBER | | | | |
|-----|--------|--------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 13 | 128.3 cm | 32.5 Kg | pre-pubertal | Germain/ Donahue | | | | | B | 4 | 4 | 0 | 3 |

**REASON FOR TEST    PRESUMPTIVE DIAGNOSIS**

Turner's Syndrome

DATE OF SAMPLE: 12/28/83 → sent to main Chem & serum remaining sent to Peds Endo on 1/3/84

DATE OF ASSAY:

TOTAL URINE VOLUME:

| CHECK APPROPRIATE BLOCK: | RESULTS | NORMAL VALUES · COMMENT |
|---|---|---|
| ☒ 4857 ANTIBODIES, ADRENAL - SERUM | UNDIL.   DIL 1:2   DIL 1:4  *negative* | *insignificant* |
| ☒ 4858 ANTIBODIES, GASTRIC - SERUM | UNDIL.   DIL 1:4   DIL 1:256  *negative* | " |
| ☒ 4855 ANTIBODIES, THYROID - COONS    AGG. | UNDIL.   DIL 1:4   DIL 1:256  *negative*   TITER 1:2 | " |
| ☐ 1884 FSH - SERUM (RADIOIMMUNOASSAY) | mIu/ml. | |
| ☐ 5972 FSH - URINE (RADIOIMMUNOASSAY) | Iu/24H. | |
| ☐ 1882 LH - SERUM (RADIOIMMUNOASSAY) | mIu/ml. | |
| ☐ 5975 LH - URINE (RADIOIMMUNOASSAY) | Iu/24H. | |
| ☐ 5970 GONADOTROPHINS, PITUITARY - URINE (BIOASSAY) | | |
| RANGE REQUESTED: LOW ☐ NORMAL ☐ HIGH ☐ | | |
| ☐ 9450 RADIOIODINE UPTAKE        (% DOSE) | 4 HR.        24 HR. | |
| ☐ 6100 SMEAR. BUCCAL - SEX CHROMATIN | | |
| ☐ 6101 SMEAR, VAGINAL | | |
| ☐ 1715 TSH - SERUM (RADIOIMMUNOASSAY) | µU/ml. | 0 - 7 µU/ml. |
| ☐ OTHER (SPECIFY) | | |

JHH 15-13320

MEDICAL RECORD

THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME    IACANGELO, Karyn 7 207 32 28

Born:  8/2/70    Seen:  12/28/83    Pediatric Endocrinology

---

### INTERVAL NOTE

Karyn is a 13-5/12 years old white female with Turner's syndrome (karyotype 45,XO) who is here for follow up after her first 3 months (of a one year trial) of Anavar (oxandrolone therapy).  She is doing well.  She noticed that her pants have gotten shorter over the past 3 months.  She has been taking her Anavar religiously having missed only 3-4 doses over the course of the 3 months.

Karyn is currently in the 8th grade and is an Honor Roll student, matematics seems to be her only difficulty.

PHYSICAL EXAM:  No change.

DISCUSSION:

Karyn has grown 1.3 cm since she was started on the Anavar 3 months ago.  This is an adequate rate of growth, and the Anavar will be continued to finish the one year trial.  Although she had a good rate of browth the past 3 months, Dr. Migeon explained that the medication is difficult to predict and there are no promises for growth that can be given.  Since on the Anavar, Karyn has no signs of virilization.  Her SMA-6 and SMA-12 were normal.  Thus, she is not having any side effects to the medication.

On physical exam a murmur (systolic ejection, grade II-VI) was heard, but no click was heard.  Radial and femoral pulses were equal and regular.  The above evidence points against coarctation of the aorta (which is associated with Turner's syndrome).  To be safe, however, Karyn will have a cardiology consult at her next visit (she never had the echocardiogram that had been suggested in Washington).  Since there is no record of antibodies being measured, she had thyroid, gastric and adrenal antibodies sent (with the serum remaining from the SMA-6 and SMA-12)... Mrs. Iacangelo was called on 1/3/84 and it was explained that the antibody tests were necessary for a full work-up and she agreed to these tests.  They were all negative.

At the end of a one-year trial on Anavar, Karyn would like a trial of low dose estrogens.  At her next visit, she will have a bone age done.

SUMMARY:

1.  C.A.  13-5/12 yrs.:  H.A.  8-6/12 yrs.
2.  Turner's syndrome.

DIBPOSITION:

1.  Return in 3 months, 3/14/84 at 8:30 a.m.  Please pull chart for fellow one week before visit so card. consult can be arranged.
2.  Medications:  a)  Anavar 2.5 mg every day p.o.
3.  Get bone age and cardiology consult to be arranged for the same day at next visit.

Claude J. Migeon, M.D.
Emily Germain, M.S. III
Pat Donohoue, M.D.

cc:  Dr. Merton White
/do

JHH0015

# THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME   IACANGELO, Karyn 7 207 32 28

Born: 8/2/70    Seen: 8/19/83    Pediatric Endocrinology

## ENDOCRINE CONSULTATION FORM

Parent's Names:  Cicily and Phil Iacangelo       Ref.M.D.:  Dr. Merton White
Address:  2109 Edgeware Street                               Georgia Avenue
          Silver Spring, Maryland  20904                     Silver Spring, Md.20904
Phone:  384-0752, FW 322-4550                                Phone:  681-5727
Parent's Occupations:  Father-Shoe buyer
                       Mother-High School teacher

IMMEDIATE COMPLAINT: Turner's syndrome.

PRESENT ILLNESS:

Karyn is a 13-1/12 years old white female who presents today for evaluation of the management of her Turner's syndrome.

Karyn was diagnosed in July, 1982 when she was referred by her orthopedist to the Department of Endocrinology at the Children's Hospital National Medical Center in Washington, D.C.  She was evaluated for short stature by Dr. Gilbert August.

Karyn has many of the stigmata attached to girls with Turner's syndrome.  She has short stature, way below the 5th percentile, a short neck, low-set ears, a low posterior hair line, a broad chest with widely-spaced nipples, multiple pigmented nevi and light cubitus valgus.  In addition, Karyn was of low birth weight (5 pounds 4 ounces) and her father noticed a swelling of one of her feet (the characteristic lymphedema found at birth in Turner's children).

In her work-up at Washington, Karyn was found to have the following: a 45, XO karyotype; a greatly elevated FSH and a normal LH.  (In Turner's girls, the gonado-trophins are usually raised with the FSH markedly higher than the LH.)  She had a normal $T_4$.  No mention was made of any laboratory work for thyroid antibodies.  (Turner's children have an increased frequency of Hashimoto's thyroiditis).  Her somatomedin-C level was normal for her pubertal status (Tanner stage 1) although low for her age. She had a bone age of 9 years which was delayed (chronological age of 12 years).  She had osteoporotic changes in her bones and deformities in her knees which are characteris-tic in Turner's syndrome.  A renal screen showed no evidence of a double collecting system nor of a horseshoe kidney.

DISCUSSION:

Clinically, Karyn today is in good health.  Her cardiovascular system shows no abnormalities especially that of coarctation of the aorta.  Her systematic review was unremarkable except for stigmata of Turner's syndrome mentioned in the "Present Illness". Karyn is clinically euthyroid.  Her bone age is delayed.

The main concerns in Karen's management are:  a)  the type of treatment regime to be used and b) the timing of the onset of treatment.

The 4 alternative treatment regimes with their relative advantages and deficiencies were spelt out to the family. These were: 1) no treatment.  2) treatment with hGH involving an NIH study.  3) treatment initially with Anavar, an anabolic steroid. 4) treatment straight away with estrogens.

- 1 -                    JHH0016

# THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME  IACANGELO, Karyn 7 207 32 28

Born:  8/2/70    Seen:  8/19/83         Pediatric Endocrinology

At the moment the family are still undecided about the treatment regime but are inclined to follow regime #3.  Before Anavar is started, Karyn should have blood drawn for routine chemistries especially looking at liver and kidney function (SMA-6 and SMA-12).

This information was communicated to the family by telephone.  As they are still undecided, we shall give them another month to think it over.  We shall see Karyn again in a month to get the final decision and then to institute the desired therapy.

SUMMARY:

1. C.A.  13-1/12 yrs.:  H.A.  7-4/12 yrs.:  B.A.  9-9/12 yrs. 1 SD $\pm$ 10.5 months
   -delayed bone age.
2. Turner's syndrome.

DISPOSITION:

1. Return in one month, 9/28/83 at 11:00 a.m.
2. No medications.
3. Get SMA-6 and SMA-12 at next visit.

                                        Claude J. Migeon, M.D.
                                        David Kandiah, M.D.

cc:  Dr. Merton White
/do

JHH0017



# THE JOHNS HOPKINS HOSPITAL

HISTORY NO.

PATIENT'S NAME   IACANGELO, Karyn 207 32 28

Born:  8/2/70     Seen:  9/28/83          Pediatric Endocrinology

### INTERVAL NOTE

Karyn is a 13-2/12 years old white female with Turner's syndrome here for follow-up after discussion among the family members, Karyn has decided to embark upon a one year trial of Anavar (oxandrolone) therapy.

PHYSICAL EXAM:  No change.

DISCUSSION:

She has been given a prescription for Anavar (oxandrolone) 2.5 mg po every day. We will see her again for follow-up in 3 months.  Dr. Migeon explained that her response to this medication is difficult to predict.  Karyn would like a trial of low dose estrogens after the end of the year on Anavar.

SUMMARY:

    1.  C.A.  13-2/12 yrs.:  H.A.  7-6/12 yrs.
    2.  Turner's syndrome.

DISPOSITION:

    1.  Return in 3 months, 12/28/83 at 8:30 a.m.
    2.  Medications:  a)  Anavar 2.5 mg every day p.o.

Claude J. Migeon, M.D.
Peter Rowe, M.D.

cc:  Dr. Merton White
/do

JHH0018

X-RAY CONSULTATION REPORT

# THE JOHNS HOPKINS HOSPITAL

DEPARTMENT OF RADIOLOGY
AND RADIOLOGICAL SCIENCE

MEDICAL RECORD COPY

| AGE OR D.O.B. | RACE | SEX | X-RAY SECTION | PATIENT'S HISTORY NUMBER |
|---|---|---|---|---|
| 13Y | 2 | F | | 2073228    P652 |

| DATE OF EXAM | PATIENT'S PHYSICIAN | PATIENT'S NAME |
|---|---|---|
| 08 26 83 | MIGEON, CLAUDE J | ARCANGELO, KARYN |

| NO. OF EXAMS | SEND COPY TO | REFERRING WARD OR CLINIC |
|---|---|---|
| 1 | PED. ENDOCRINE CONSULT. | PED. ENDOCRINE CONSULT. |

BONE AGE, HAND AND WRIST
------------------------
LEFT.
GREULICH AND PYLE 2 METHOD BONE AGE GIRL -- APPROXIMATELY 9 YEAR 9
MONTH.
CHRONOLOGIC AGE 13 YEAR 1 MONTH.
STANDARD DEVIATION +/- 10.6 MONTH.
DELAYED BONE AGE.

MINIMAL CHANGES COMPATIBLE WITH CLINICAL DX: TURNER'S SYNDROME.

08.30.83

LUCIEN M. LEVY, M.D.
JOHN P. DORST M.D.





## Johns Hopkins Medicine

*Clinic Note*

| | | | |
|---|---|---|---|
| **Name:** | Kerris, Karyn | **History:** | 7-207-32-28 |
| **Address:** | 8938 Footed Ridge | **Visit Date:** | 11/04/1999 |
| | Columbia MD 21045 | | |
| **Phone:** | (301)596-3524 | **Location:** | 163 |
| **DOB:** | 08/02/1970 | | |
| **Race:** | White | | |
| **Gender:** | Female | | |
| **Primary Provider:** | Rigamonti,Daniele E | | |
| **Other Provider:** | | **Document No:** | 1383600030 |

**Reason for Visit:**

Ms. Kerris is a 29-year-old Caucasian female who comes with her parents and her husband for second opinion on treatment of arterial venous malformation.

**History of Present Illness:**

Patient was given a diagnosis of arterial venous malformation when an MRI was performed as a part of a Turner syndrome workup in 11/96. In 07/98 the patient began blacking out, complaining of headache, and fell a couple of times when turning to the left. Her speech began to be difficult to understand and she became somewhat easily tired and ready to take naps. She was seen by Dr. Vance Watson at Georgetown and a series of embolizations was started. Three were performed in 11/98, 01/99, and 03/99. The headache improved after the first injection immunization but she slowed down significantly after the second. After the third one in 03/99 she became unable to walk, talk, or open her eyes. She developed a Parkinson disease-like syndrome and Sinemet was attempted. She went into national rehabilitation on 03/17/99, did well for about a week, and then she began falling. Her eyes would go back and forth and EEG could not document any seizures. A nasogastric tube needed to be inserted and this may have caused an escalation pneumonia. Again, another EEG overnight was performed but no seizure was found and slowing only was noted.

The patient was put on Dilantin and then she was transferred to Georgetown and from Georgetown she went to Kernan in 05/99 through 06/99. She was eating well, talking, walking, working on computers for a while. At present this family does not know what to do next.

Family History: Father and mother, respectfully 60 and 56 years old, with no medical problems. Some cancer history in 3 grandparents. She has no brothers and no children. She went to college. She is married. She lives with her spouse. She likes singing, reading, and movies. She does not smoke, she does not drink.

Medical History: Turner's syndrome diagnosed in 1982 at Hopkins.

Surgical History: Embolizations x 3, hip surgery in 01/84 and 05/86.

**Medications:**

Ritalin 25 mg q.d., Dilantin 300 mg q.d., Zoloft 25 mg q.d., Loestrin 1 q.d. 21 days each month.

**Allergies:**

She is allergic to codeine and tetanus toxoid.

**Major Findings:**

Kerris, Karyn (7-207-32-28)          SIGNED DOCUMENT          Printed: 04/03/2007

Page 1 of 2

JHH0020

On examination she is awake, but not fully alert. She has nystagmus in every direction of her gaze. Extraocular movement seems to be a slightly decreased output. She has decreased facial grimacing bilaterally. Fascial sensation seems to be equal throughout. Hearing seems to be symmetrical. Tongue is midline. Strength seems to be equal, although slightly diminished throughout. She seems to feel pinprick and vibration equally throughout. She has hyperreflexia and a Babinski on the left. Gait could not be tested and the Romberg could not be tested. She had an MRI which shows a fairly large AVM which had been embolized.

**Assessments:**

Arterial venous malformation status post 3 embolizations.

**Problems/Diagnoses:**

AVM

**Plans:**

To discuss with Dr. Mike Williams the possibility of doing a radiosurgery. Addendum: Dr.Williams will see her in consultation

**Dictated By:**

RIGAMONTI, DANIELE E, M.D./732 D: 11/28/1999 T: 11/29/1999

SIGNED BY:  RIGAMONTI, DANIELE
**THIS DOCUMENT HAS BEEN ELECTRONICALLY SIGNED.**

DATE SIGNED: 12/02/1999

Note:  This clinic note provides information pertaining only to the patient's most recent visit.  A more detailed medical history is available in the Medical Record.

Kerris, Karyn (7-207-32-28)                **SIGNED DOCUMENT**                Printed: 04/03/2007

JHH0021



1030 Ontario Road
P.O. Box 8408
Green Bay, WI 54308-8408
phone.920.469.5000
fax.920.469.5010

**iod incorporated** has been retained by the Medical Record Department of

# Johns Hopkins Hospital

to fulfill requests for copies of medical records. Enclosed are the reproduced medical documents specifically authorized by the patient or his/her legal representative. We wish to emphasize that the increasing demands for patient data pose a rising threat to the confidentiality of the patient's medical information. **iod incorporated** strives to take every opportunity to safeguard the patients' right to privacy as outlined in the AHA's Patient Bill of Rights. Specifically, all patients have the right "to expect that all communications and records pertaining to their care will be treated as confidential by the hospital and any other party entitled to review certain information in such records." As one such party, we ask that all information transmitted herewith be treated with utmost respect and the dignity such personal medical information warrants. Please be advised of the following state and federal disclosure statements governing medical records in Maryland:

> This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR Part 2). The rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2.

> This information has been disclosed to you from state records whose confidentiality is protected by state statute. State regulations limit your right to make any further disclosure of this information without prior consent of the person to whom it pertains.

> This information has been disclosed to you from records protected by Maryland law. Maryland law prohibits you from making any further disclosure of this information unless further disclosure is expressly permitted by the written consent of the person to whom it pertains or is authorized by the HIV-related confidentiality statute. A general authorization for the release of medical or other information is not sufficient for this purpose.

Based upon guidelines provided by the American Health Information Management Association, the records should be destroyed after the stated need has been fulfilled.

We thank you for your cooperation in maintaining the patient's right to privacy. Each medical record has been carefully reviewed to assure that proper disclosure goes only to the authorized Requestor. If you have any questions, please do not hesitate to contact us at 866 420-7455 and one of our Customer Service Representatives will be happy to assist you.

March 20, 2007

*1 - 201 - 32 - 28*

Attention: Dorothea
Release of Medical Records
Johns Hopkins Hospital

Re:   **Medical Records of Ms. Karyn Kerris**
      **DOB: 08/02/1970**
      **SSN # 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**

Dear Dorothea:

      As you can see from the enclosed Complaint, Karyn Kerris, through her parents,
Felice and Cicly Iacangelo, is suing my client, Georgetown University Medical Center, for –
among other things – medical malpractice. I understand that Ms. Kerris has been a patient at the
Johns Hopkins Hospital. I write to request your assistance in obtaining her medical records.

      Under D.C. procedure, a subpoena *duces tecum* is used to obtain these records,
which technically requires you to sit for a deposition, bringing the documents with you. Given
that my current interest is in the records themselves, we do not need your presence if the
documents are sent to my office. I appreciate your compliance with the attached subpoena.

      I enclose a signed authorization by Felice Iacangelo, Ms. Kerris' father and
guardian, for release of her medical records. As I mentioned to you in our telephone call, we are
in somewhat of a time crunch to obtain these medical records. Of course, we will reimburse you
for the reasonable costs of copying and mailing of all Ms. Kerris's records. We would also be
glad to pay Federal Express charges to ensure overnight delivery of the records. Our billing
number with Federal Express is 0200-3027-5. Please feel free to call me with any questions.
My direct dial number is 202-434-5138.

      Very truly yours,

      Nicolas D. Muzin

Enclosures: As stated

**SOURCECORP HEALTHSERVE**

Req #: *709123*    Initials: *CWP*  Date: *4/10/07*

ages: *21*    Fiche: _____    Images: _____

| | |
|---|---|
| FS  ☐ PATH | ☐ NURSES NOTES |
| DS  ☐ X RAYS | ☐ MINIMUM NECESSARY |
| HP  ☐ LABS | ☐ ENTIRE |
| ER  ☐ PROGRESS NOTES | ☐ OTHER |
| CONS ☐ ORDERS | |
| OR  ☐ MEDICATIONS | |

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

Iacangelo

v.

Georgetown University

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:05CV02086

TO:

$7-201-32.28$

☐  **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
Nicolas Muzin, Esq.
Williams & Connolly LLP
725 12TH Street, NW  Washington, DC  20005

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

MAR 21 2007

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 3/20/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Nicolas D. Muzin, Esq.
725 12TH Street, NW  Washington, DC  20005  (202) 434-5138

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

03/20/2007 TUE 05:06 FAX 202 434 5029    WILLIAMS & CONNOLLY LLP    ☒033

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

|  | DATE | SIGNATURE OF SERVER |
|---|---|---|
|  |  | ADDRESS OF SERVER |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



/20/2007 TUE 04:37 FAX 202 434 5029    WILLIAMS & CONNOLLY LLP    ☒001

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D.C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

Nicolas D. Muzin
(202) 434-5138
nmuzin@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

## TELECOPY

TO:                                  Dorothea

FIRM OR COMPANY:

TELECOPY NUMBER:         410-502-5186

---

FROM:                                Nicolas Muzin, Esq.

TELEPHONE:                        (202) 434-5138

DATE:                                  March 20, 2007

MATTER NUMBER:

NUMBER OF PAGES INCLUDING THIS PAGE:    3

IF THERE ARE ANY PROBLEMS RECEIVING THIS TRANSMISSION, PLEASE
CALL (202) 434-5226 **IMMEDIATELY**.  THANK YOU.

*This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service.*

Williams & Connolly LLP Telecopy Number: (202) 434-5029

March 20, 2007

Attention: Dorothea
Release of Medical Records
Johns Hopkins Hospital

Re:  **Medical Records of Ms. Karyn Kerris**
     **DOB: 08/02/1970**
     **SSN # 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**

Dear Dorothea:

As you can see from the enclosed Complaint, Karyn Kerris, through her parents, Felice and Cicly Iacangelo, is suing my client, Georgetown University Medical Center, for – among other things – medical malpractice. I understand that Ms. Kerris has been a patient at the Johns Hopkins Hospital. I write to request your assistance in obtaining her medical records.

Under D.C. procedure, a subpoena *duces tecum* is used to obtain these records, which technically requires you to sit for a deposition, bringing the documents with you. Given that my current interest is in the records themselves, we do not need your presence if the documents are sent to my office. I appreciate your compliance with the attached subpoena.

I enclose a signed authorization by Felice Iacangelo, Ms. Kerris' father and guardian, for release of her medical records. As I mentioned to you in our telephone call, we are in somewhat of a time crunch to obtain these medical records. Of course, we will reimburse you for the reasonable costs of copying and mailing of all Ms. Kerris's records. We would also be glad to pay Federal Express charges to ensure overnight delivery of the records. Our billing number with Federal Express is 0200-3027-5. Please feel free to call me with any questions. My direct dial number is 202-434-5138.

Very truly yours,

Nicolas D. Muzin

Enclosures:  As stated

**ATTACHMENT A:**
**DOCUMENTS TO BE PRODUCED PURSUANT TO ATTACHED RELEASE**
Re:    Medical Records of Ms. Karyn Kerris
        DOB: 08/02/1970
        SSN # 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

Pursuant to the attached subpoena, please produce the following list of items to Williams & Connolly LLP, 725 12th Street, N.W. Washington, D.C. 20005:

1.    All documents or other materials relating to the care and treatment of Ms. Karyn Kerris – medical records – in your possession, custody, or control.  The documents and materials requested include all medical records, **from both inpatient and outpatient treatment,** related to Ms. Karyn Kerris.  This includes, but is not limited to:

a) medical records - patient chart, patient consent forms, patient questionnaires, patient histories, patient records, notes, memoranda, records, protocols, intake forms, etc.

b) financial and billing information - insurance forms, medical bills, etc.

c) test results - x-rays, EKGs, imaging studies, MRI films, MRA films, reports, blood tests, etc.

d) other records - disability applications, referrals, prescriptions, assessments, correspondence, etc.

Documents include recorded material of any kind, whether recorded in writing, electronically, or by any other means.