UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
FELICE I. IACANGELO and CICILY      )
IACANGELO, Guardians of the Person  )
and Property of KARYN A. KERRIS, *et al.*, )
                                    )
            Plaintiffs,             )
    v.                              )   Civil Action No. 05-2086 (PLF/AK)
                                    )
GEORGETOWN UNIVERSITY, *et al.,*    )
            Defendants.             )
_____ )

## MEMORANDUM ORDER

Pending before the Court is Defendants' Motion for a Protective Order ("Motion") [42], Plaintiffs' opposition to the Motion ("Opposition") [44], and Plaintiffs' reply to the Opposition ("Reply") [45]. Defendants move for a Protective Order to prohibit or limit the depositions of seven of the eight fact witnesses named by the Plaintiffs as proposed deponents, namely: Kenneth D. Bloem; Paul Katz; Leo J. O'Donovan; Charles M. Crawley; J. Williard Marriott, Jr.; Henry Yeager, M.D.; and Dieter Schellinger, M.D.[1] As a preliminary matter, this Court notes that while Defendants argue at length in their Motion that Plaintiffs intend to exhaust the presumed limit of ten depositions, it is self-evident that this argument is premature in light of the fact that Plaintiffs have listed only eight potential fact witnesses, which is two less than the

---

[1] The deposition of the eighth named deponent, Dr. Vance Watson, will reconvene on May 31, 2007. According to Defendants, Reverend O'Donovan was the former president of Georgetown University; Mr. Marriott and Mr. Crawley were former Georgetown University Board members; Mr. Bloem was Georgetown University Medical Center's former Chief Executive Officer; and Dr. Katz was Georgetown University Hospital's former Chief Operating Officer. (Memorandum in support of Motion at 6-7.) Mr. Marriott and Mr. Crawley are now high level executives with Marriott International and MBNA Corporation, respectively. Mr. Bloem is a senior fellow at Johns Hopkins, Center for Civilian Biodefense. (*Id.*) Defendants indicate that Reverend O'Donovan retired in 2001 and Mr. Bloem and Dr. Katz left their positions by mid to late 2000. (*Id.*) The medical procedures at issue in this case were performed in 1998 and 1999.

presumptive limit.[2]

## Background

In October 2005, Plaintiffs, Cicily and Felice Iacangelo, filed suit against Defendants, Georgetown University Hospital and Dr. Vance Watson, for medical malpractice, alleging that as a direct and proximate result of the Defendants' negligence, Karyn Kerris [Plaintiffs' daughter] has suffered permanent damage to her body, including seizures, ischemia and neurological impairments, "leaving her brain damaged and dysfunctional for the rest of her life."[3] (Am. Compl. ¶12.) Plaintiffs allege that the embolization procedures employed by Defendants should have been reviewed and approved by the Georgetown University Institutional Review Board ("IRB"). (Am. Compl. ¶11(h).) Plaintiffs also allege that the standard consent form used by Defendants, which did not mention the types of devices being used in the embolization or their names, the fact that the devices were procured from Canada, or the fact that the treatment was not approved in the United States, is insufficient to denote true informed consent. (Am. Compl., Count II.) Plaintiffs further allege that Dr. Watson concealed the illegality of the substances to be used in the embolization procedures and misrepresented the effectiveness of the embolization procedures. (Am. Compl., Count VIII.)

## Legal Standard

Federal Rule of Civil Procedure 26(b) provides that discovery is permitted "regarding any

---

[2]The trial court's Scheduling Order [37] limits each party "to a maximum of 10 depositions, unless otherwise agreed upon by the parties or unless the Court determines otherwise pursuant to motion." ([37] at 1.) This Court interprets that ten-person limitation to apply to fact witnesses only, particularly in light of the fact that the trial court set different schedules for fact discovery and expert discovery.

[3] Ischemia denotes a shortage of blood supply to an area of the brain.

matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery . . ." Under Fed. R. Civ. P. 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." *See Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985) (Rule 26(b)(1) was amended to give the court the power, *sua sponte*, to limit discovery.)

>Fed. R. Civ. P. 26(c) addresses protective orders, providing in part that:
>
>Upon motion by a party or the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c). Pursuant to Rule 26(c), the court may, *inter alia*, direct "(1) that the disclosure or discovery not be had; . . . (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) . . . that the scope of disclosure or discovery be limited to certain matters . . . . ." Fed. R. Civ. P. 26(c).

The party moving for a protective order bears the burden of making a showing of good cause required by Rule 26(c). *See, e.g,. Fonville v. District of Columbia*, 230 F.R.D. 38, 40 (D.D.C. 2005); *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998). The party requesting a protective order must present specific facts in support of the request as opposed to making conclusory or speculative statements about why a protective order is needed and what harm will result if such order is not entered. *Fonville, id.* A trial court possesses broad discretion in

issuing a protective order and determining what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also United States v. Microsoft Corp.*, 165 F. 3d 952, 959 (D.C. Cir. 1996). The decision to limit or deny discovery by means of a Rule 26 protective order requires the court to balance "the requestor's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. Dep't of Health and Human Servs.*, 87 F. 3d 508, 517 (D.C. Cir. 1996) (citation omitted); *see also Amfac Resorts, L.L.C. v. Dep't of the Interior*, 143 F. Supp. 2d 7, 14 (D.D.C. 2001).

Analysis

Defendants assert generally that the expense and burden of the proposed depositions outweigh the likely benefit, but Defendants fail to specifically establish how the proposed depositions will result in undue burden and expense to them, other than noting that their counsel would have to attend such depositions. Defendants instead focus most of their argument in favor of a protective order on their contentions that the depositions sought by Plaintiffs are of limited value because they are duplicative and such depositions are limited to "address[ing] plaintiffs' claim that Dr. Watson violated an IRB regulation" and do not relate to the breach of standard of care, which is the main issue in Plaintiffs' case. (Memorandum in support of Motion ("Memorandum") at 4.)[4] Plaintiffs respond to these contentions by asserting that they "have a

---

[4] Defendants' commentary regarding [their view of] the merit and focus of the proposed depositions does not demonstrate good cause why a protective order should be granted. *See Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005) ("[T]he movant must articulate specific facts to support its request [for a protective order] and cannot rely on speculative or conclusory statements . . . .")

right to depose the GU and GUH officials to find out what they knew or should have known about Dr. Watson's IRB violations." Plaintiffs further assert that the issues to be addressed during the proposed depositions may also include "[Defendants'] failure to obtain an IDE [investigational device exemption](Count I ¶11(d)); negligent supervision, monitoring, ordering and invoicing (Count I ¶11(h)); failure to provide proper informed consent (Count II); breach of fiduciary obligations (Count VIII); punitive damages (Count IX); and violations of 21 U.S.C. §360(a)(II) (Count X), 21 U.S.C. §331(a),(b),(c),(g) and (k) (Count XI) and 21 C.F.R Ch. 1 §812.20(a)(2) (Count XII)." (Opposition at 3, 8.)

Plaintiffs generally assert that "the proposed depositions are quite relevant to this case as there are multiple counts against GU that relate to knowledge of high-ranking GU and GUH officials regarding Dr. Watson's conduct here" but Plaintiffs do not provide any specific information about the personal knowledge of any particular proposed deponent. (Opposition at 6.) While it appears that deponents Drs. Yeager and Schellinger would be qualified to testify about the IRB, because they are committee members of the IRB, there is no indication by Plaintiffs that any of the other contested deponents have knowledge about the IRB or any of the aforementioned issues mentioned by Plaintiffs such as failure to obtain an IDE, negligent supervision, and breach of fiduciary obligations.[5] This lack of personal knowledge is one factor for the Court to consider in weighing Plaintiffs' need to depose these individuals versus the burden imposed upon them.

---

[5]Defendants assert that [former] Board Members [Mr. Marriott and Mr. Crawley] served three year terms and their responsibilities, set forth in the Memorandum at 6, n.5, do not include the IRB. Defendants note that Mr. Bloem and Dr. Katz did not sit on the IRB, nor have direct responsibility for it when they were at GUMC. (*Id.* at 6.) In contrast, Drs. Yeager and Schellinger are Committee members of the IRB.

In considering the potential burden to the deponents, the Court notes that such proposed deponents are high level corporate executives or persons who are or were in public positions of power. While the depositions of high ranking corporate officials are not automatically precluded, *see Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 1987 WL 11994, *4 (D.D.C. 1987), courts have found good cause for issuing a protective order to prohibit the depositions of executives where there is no evidence that such executives have personal knowledge of information relevant to the lawsuit. *See e.g., Thomas v. Int'l Bus. Mach.*, 48 F. 3d 478, 483 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus*, 879 F. 2d 212, 218 (6th Cir. 1989); *acccord Low v. Whitman*, 207 F.R.D. 9, 13 (D.D.C. 2002) (issuing a protective order prohibiting the deposition of a high ranking government official in a discrimination case because he was not a participant in the employment decision at issue and the only relevant information he could provide was duplicative of information already provided during depositions); *Cmty. Fed. Savings and Loan Ass'n v. Fed. Home Loan Bank Board*, 96 F.R.D. 619 (D.D.C. 1983) (issuing a protective order prohibiting the depositions of two government officials where plaintiff presented no information to support the conclusion that these persons had unique personal knowledge about the contested matter.)

Courts have held that a protective order prohibiting an executive's deposition is necessary to guard against harassment, in cases where such executives do not have personal knowledge relating to the claims asserted. *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985). The *Mulvey* court noted that persons in executive level positions could be "easily subjected to unwarranted harassment and abuse . . . [and] ha[ve] a right to be protected, and the courts have a duty to recognize [the

executive's] vulnerability." 106 F.R.D. at 366.

Plaintiffs cite *Taylor v. National Consumer Cooperative Bank*, Civ. A. No. 95-1918-LFO, 1996 WL 525322 (D.D.C. Sept. 10, 1996) for the proposition that a high-ranking corporate official need not possess "unique or superior knowledge of discoverable information" in order to be subject to deposition, but notably in *Taylor*, the plaintiff did make a "threshold showing to indicate that [the corporate official] [did] have unique knowledge with regard to certain relevant events." *Id.* at *1. In the instant case, the Court may summarily find that Dr. Yeager and Dr. Schellinger, current employees and members of the Institutional Review Board possess knowledge about the IRB, where the IRB plays an integral role in Plaintiffs' claims. Plaintiffs have made no showing however that the remaining proposed deponents, who are current or former high level executives or persons in positions of power, have relevant knowledge of the claims in this case that outweigh the burden and harassment that they will experience if they are deposed. Accordingly, it is this 26th day of June, 2007,

ORDERED that the Defendants' Motion for Protective Order [42] is **denied in part** with respect to the depositions of Drs. Yeager and Schellinger, and **deferred in part** with respect to the depositions of Kenneth Bloem, Paul Katz, Leo J. O'Donovan, Charles Cawley and J. Williard Marriott. Within five business days following the date of this Memorandum Order, Plaintiffs shall provide the Court with a **brief** statement demonstrating that each such proposed deponent likely possesses information relevant to Plaintiffs' claims. Defendants shall be allowed three

business days thereafter to respond. Such response shall be **limited** to the statements set forth by Plaintiffs and shall not include any extraneous argument.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE