# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>        Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civ. Act. No. 1:05CV02086 (PLF) (AK)<br>)<br>)  Judge Paul L. Friedman<br>)<br>)  Magistrate Judge Alan Kay<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants, Georgetown University and Vance E. Watson, M.D. (hereinafter, collectively referred to as "defendants"), by and through undersigned attorneys, hereby move for a protective order prohibiting the duplicative, depositions of former, high-level officials at Georgetown University and Georgetown University Medical Center with no personal knowledge of the issues involved in this litigation and where the information sought by plaintiffs "is available through is obtainable from some other source that is more convenient, less burdensome, or less expensive" and "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues," pursuant to Federal Rule of Civil Procedure 26(b) and (c), and requiring initial interrogatories to determine whether the remaining two individuals have any relevant information on an issue tangential to plaintiffs' recovery, sufficient to justify

the cost and burden of sitting for a deposition, so that plaintiffs do not exhaust the presumptive

limit of ten (10) depositions under the Federal Rules and the Court's April 11, 2007 Scheduling

Order with duplicative, irrelevant depositions.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  April 26, 2007                    By:  _____

Megan E. Hills (D.C. Bar #437340)
Nicolas Muzin (D.C. Bar # 500106)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
nmuzin@wc.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, | ) | |
| As Guardian of the Person and Property of | ) | |
| KARYN A. KERRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 1:05CV02086 (PLF) (AK) |
| | ) | |
| Georgetown University Hospital, | ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a | ) | |
| Georgetown University, and | ) | Magistrate Judge Alan Kay |
| VANCE E. WATSON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## FEDERAL RULE OF CIVIL PROCEDURE 37
## CERTIFICATION OF GOOD FAITH EFFORTS
## TO REACH RESOLUTION ON NUMBER OF DEPOSITIONS

On Friday, April 20, 2007. the undersigned attorney spoke to the attorney for plaintiffs,

Anthony Newman, Esquire, by telephone in order to reach an agreement as to the number of

depositions plaintiffs would seek to take in the above-captioned case, notwithstanding plaintiffs'

prior representations that the limit of ten (10) depositions embodied in the Federal Rules would

apply to the action. Undersigned counsel was told, *inter alia*, that plaintiffs did not have an

absolute number of depositions that plaintiffs planned to take over the presumptive limit of ten

(10) depositions and that plaintiffs desired ten (10) depositions directed solely to the issue of

whether Vance E. Watson, M.D., violated the Independent Research Board regulations/Food and

Drug Administration regulations and would need additional depositions to develop other aspects

of the case.

Case 1:05-cv-02086-PLF-AK   Document 55-2   Filed 09/07/2007   Page 4 of 54

On Monday, April 23, 2007, the undersigned attorney participated in a telephonic hearing with plaintiffs' attorneys and Magistrate Judge Alan Kay to determine whether the Motion for Protective Order and was told to file this Motion for Protective Order as no resolution of the issue could be reached.

_____
Megan E. Hills, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, | ) | |
| As Guardian of the Person and Property of | ) | |
| KARYN A. KERRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 1:05CV02086 (PLF) (AK) |
| | ) | |
| Georgetown University Hospital, | ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a | ) | |
| Georgetown University, and | ) | Magistrate Judge Alan Kay |
| VANCE E. WATSON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM
## <u>IN SUPPORT OF MOTION FOR PROTECTIVE ORDER</u>

Defendants, Georgetown University and Vance E. Watson, M.D. (hereinafter, referred to as "Dr. Watson" and collectively, "defendants"), by and through undersigned attorneys, hereby move for a protective order, pursuant to Federal Rules of Civil Procedure[1] 26(b) and 26(c) to limit discovery in the above-captioned case to prohibit the depositions of former, high-level individuals with no apparent connection to the issues implicated by this lawsuit, much less personal knowledge of the events involved in this action, so that defendants do not have to waste resources on duplicative, irrelevant depositions; that the exorbitant costs of litigation are not increased by an increased number of depositions; and to prevent plaintiffs from exhausting the presumed limit of ten (10) depositions, as embodied by the Federal Rules and the Court's April 11, 2007 Scheduling Order, then petitioning the Court for more depositions.

---

[1] Hereinafter, "Fed. R. Civ. P."

Defendants further move that interrogatories to ascertain whether the remaining two high level individuals within defendants' control have relevant information as to this issue that that is not central to plaintiffs obtaining a recovery.

## PROCEDURAL HISTORY

On April 11, 2007, the parties appeared in front of the Honorable Paul L. Friedman for the Federal Rule of Civil Procedure 26 and Local Rule 16.3 Scheduling Order Hearing, at which time the Court asked whether the limits on discovery as set forth in the Federal Rules, should apply to the case. Hearing no objection,[2] Judge Friedman issued a Scheduling Order that same day in which based "on representations in the Rule 16.3 Joint Report and **the representations of counsel**, it is hereby ORDERED that . . . . Each party is limited to a **maximum of 10 depositions**, unless otherwise agreed upon by the parties or unless the Court determines otherwise pursuant to motion." *See* April 11, 2007 Scheduling Order (attached hereto as Exhibit B; emphasis added).

Regardless of this Court Order, five (5) days later plaintiffs' counsel sent a letter to defendants requesting deposition dates for twenty-five (25) people. *See* April 16, 2007 Anthony Newman Letter to Megan Hills (attached hereto as Exhibit C). Upon being reminded of the Federal Rules, Mr. Newman sent a subsequent letter to defendants, listing nine (9) individuals, for whom he wanted deposition dates and stating that he would "start discovery" by deposing them and then would "file a 30(a)(2)(A) motion in order to complete discovery." *See* April 19, 2007 Anthony Newman Letter to Megan Hills (attached hereto as Exhibit D).

---

[2] At this hearing though plaintiffs stated that they would request depositions of "members" of the Board of Georgetown University, they did not ask for any deviation from the deposition limit of ten (10) depositions embodied in Federal Rules. The transcript from the Scheduling Hearing is not available as of the filing of this pleading, but Exhibit A is reserved for its submission to the Court of the relevant pages and it will be filed with the Court upon its preparation.

Plaintiffs now file a Witness List of eight (8) individuals who they wish to depose[3] whose only claimed relevant information is **not** to the central issue as to whether defendants' alleged negligence **caused** Ms. Karyn Kerris's injuries.  *See* Plaintiffs' Witness List, filed April 24, 2007 (attached hereto as Exhibit E).  Plaintiffs seek the depositions of these individuals – some of whom have no apparent connection to the issues of the action – to see if they might recall relevant information from eight and half years ago, in 1998, as to whether Dr. Watson violated Georgetown Independent Research Board ("IRB") policies.  They seem to be stating that this one tangential issue is the only one on which they will conduct fact depositions.  Because the discovery sought is "obtainable from some other source that is more convenient, less burdensome, and less expensive" and "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues," defendants respectively request the Court enter a Protective Order, limiting discovery to cost-effective, appropriate limits, consistent with the Federal Rules.  Fed. R. Civ. P. 26(b).

## ARGUMENT

**I.**     **Fed. R. Civ. P. 26(b)(2)(C)(2) States that Discovery Should be Limited Where Its Expense and Burden Outweighs its Likely Benefit.**

The central issue in this case is whether Dr. Watson breached the standard of care (whether embodied in a statute or not) **and** if that breach **was the cause-in-fact** of Ms. Kerris's injuries.  In a professional negligence case, the plaintiff bears the burden of presenting evidence "'which establishes the applicable standard of care, demonstrates that this standard has been

---

[3] For purposes of this Motion, defendants do not include the deposition of Dr. Watson that plaintiffs have already commenced and who is contained on their List.

violated, **and develops a causal relationship between the violation and the harm complained of.**'" *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979) (quoting *Kosberg v. Washington Hospital Center, Inc.*, 394 F.2d 947, 949 (D.D.C. 1968); emphasis added). Similarly, a negligence *per se* theory requires a "plaintiff must establish the applicable standard of care, show that the defendant violated that standard, and **that the violation was the proximate cause of the injury.**" *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996) (emphasis added). **The violation of a regulation "does not, without more, meet the "cause in fact" requirement of proximate causation.** On that element, no presumption can relieve the plaintiff of her burden of proof." *Twyman v. Johnson*, 655 A.2d 850, 852 n3 (D.C. 1995) (citations omitted; emphasis added).

Yet, plaintiffs seek to increase the presumed limit of ten (10) depositions because they seek to use eight of their allotted depositions on individuals who can only address plaintiffs' claim that Dr. Watson violated an IRB regulation. Not only is this use of ten depositions wasteful in its duplicativeness, Federal Rule 30(a)(2)(A) states leave of Court must be sought prior to a party taking a deposition that "would result in more than ten depositions being taken under this rule" by either party, **not** whether leave of Court must be sought prior to a party taking a deposition that would result in more than ten depositions being taken under this rule, excepting expert depositions.[4]

---

[4] Similarly, the Federal Rules state that there will be a limit of 25 interrogatories total, not that there is a limit of 25 interrogatories, excepting contention interrogatories. While parties can agree that expert depositions fall outside the Rule 30(a)(2)(A ten deposition limit, the rule's plain language covers all depositions. *Gross v. Bare Escentuals, Inc.*, 2006 U.S. Dist. LEXIS 79320 at *2 n2 (S.D.N.Y. 2006) (parties can agree that expert depositions will not be included in the calculation of the 10 depositions under Fed. R. Civ. P 30(a)(2)(A)); *see also Archer Daniels Midland Co. v. Aon Risk Servs.*, 187 F.R.D. 578, 586 (D. Minn. 1999) ("In practical terms, a party seeking leave to take more depositions, or to serve more Interrogatories, than are contemplated by the Federal Rules or by the Court's Scheduling Order, must make a

The IRB regulations in effect in 1998 are captured in written form, which the plaintiffs have attached to their pleadings. *See* Exhibit 11 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment. Plaintiffs have already submitted expert affidavits who opine that Dr. Watson violated the IRB regulations. *Id.* at Exhibits 8-10. The regulations themselves are the best evidence to show what they are and what constitutes a violation of them and that information has already been obtained by plaintiffs.

## II. Plaintiffs Should Not Be Allowed to Exhaust Their Allotted Depositions by Conducting Duplicative Depositions of High Level *Former* Executives, Officers, and Members of Georgetown University's Board of Directors.

The Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Of course, the scope of discovery is not limitless. Federal Rule 26(b)(2) authorizes courts to restrict discovery that becomes overly burdensome if, *inter alia*, "the discovery is obtainable from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit taking into account . . . the importance of the proposed discovery in resolving the issues. . . ." Fed. R. Civ. P. 26(b)(2).

Five (5) of the individuals – half of plaintiffs' allotted depositions – plaintiffs seek to depose are individuals who are **former** high level executives or Board Members of Georgetown

---

particularized showing of why the discovery is necessary. *See Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996) (where plaintiff "presented no good reason why additional depositions were necessary . . . the district court committed no abuse of discretion" in denying leave to do so); *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 518 (D. Minn. 1992) (denying leave to serve additional Interrogatories, where party did not demonstrate necessity by showing the specific content of those Interrogatories); *Cappacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (denying leave to serve additional Interrogatories where party gave no explanation of their subject matter)"). Where a case – like this one – does not require more than ten depositions, more than ten depositions should not be taken.

University or Georgetown University Medical Center ("GUMC"). Three of these individuals appear to have no connection to the IRB or IRB procedures, other than being affiliated with Georgetown University. Plaintiffs seek to exhaust their allotted depositions by deposing Reverend Leo J. O'Donovan, the former president of Georgetown University, who retired from Georgetown in 2001, former Georgetown University Board Member, Mr. J. Willard Marriott, Chairman and Chief Executive Officer of Marriott International, and former Georgetown University Board Member, Mr. Charles M. Crawley, founder and Chief Executive Officer of MBNA Corporation. Pursuant to the Bylaws of Georgetown University, Board Members only have three (3) year terms and their responsibilities do not include the IRB.[5] Mr. Kenneth D. Bloem was GUMC's **former** CEO who became a senior fellow at Johns Hopkins, Center for Civilian Biodefense by November 2000. Dr. Paul Katz was Georgetown University Hospital's **former** Chief Operating Officer, which position has not existed since June 30, 2000 when

---

[5] *See* Section III, Article 1 of the Bylaws of the President and Georgetown College listing the general powers of the Board ("(1) appoint or remove the President; (2) approve degrees in course and honorary degrees; (3) approve and adopt all major changes or innovations in the education program of the University; (4) review and take appropriate action with respect to the budget, which shall be submitted to it upon recommendation of the President; (5) concur in the appointment by the President of the Provost, the Secretary, and the Treasurer of the University; (6) authorize the construction of new buildings and major renovations of existing buildings; (7) authorize the sale and purchase of land or buildings for the use of the University; (8) institute and promote major fund raising efforts of the University; (9) authorize any changes in tuition and fees within the University; (10) authorize the President or Treasurer to accept gifts on behalf of the University, and to adopt appropriate policies and procedures concerning the acceptance of gifts, except that the acceptance of restricted gifts of Five Million Dollars ($5,000,000) or greater or of gifts that would have a substantial impact on the programs or character of the University must be ratified by the Board of Directors. The President shall make regular reports to the Board of Directors of all gifts accepted in the name of the University by virtue of authority granted by the Board of Directors; [and] (11) authorize the incurring of debts by the University and the securing thereof by mortgage and pledge of real and personal property, tangible and intangible, owned or to be after-acquired of the University."). *See* http://president.georgetown.edu/board/bylaws.html.

6

Medstar, Inc. purchased the hospital and created GUMC. Dr. Paul Katz left GUMC in 2001.

They did not sit on the IRB, nor have direct responsibility for it when they were at GUMC.

Although broad, discovery is not without limits. *Oppenheimer Fund v. Sanders*, 437 U.S.

340, 351-52 (1978). The stated purpose of Rule 30(a)(2)(A) is

> **to assure judicial review under the standards stated in Rule
> 26(b)(2) before any side will be allowed to take more than ten
> depositions in a case** without agreement of the other parties. **A
> second objective is to emphasize that counsel have a
> professional obligation to develop a mutual cost-effective plan
> for discovery** in the case. Leave to take additional depositions
> should be granted when consistent with the principles of Rule
> 26(b)(2), and **in some cases the ten-per-side limit should be
> reduced** in accordance with those same principles. **Consideration
> should ordinarily be given at the planning meeting of the
> parties under Rule 26(f) and at the time of a scheduling
> conference under Rule 16(b) as to enlargements or reductions
> in the number of depositions, eliminating the need for special
> motions.**

1993 Amendments, comment a (emphasis added). Contrary to this admonition, plaintiffs never

raised their intent to take more than ten depositions at either the planning conference of the

parties or at the time of the scheduling conference. Additionally, plaintiffs' plan to take more

than ten depositions, particularly eight (8) duplicative depositions that do not bear on the central

allegation of the litigation, is not cost-effective.

"It is clear from experience that pretrial discovery by depositions . . . has a significant

potential for abuse." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). "Even if relevant,

discovery is not permitted where no need is shown, or compliance would be unduly burdensome,

or where harm to the person from whom discovery is sought outweighs the need of the person

seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous

Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). "Concern for the unwanted burden

thrust upon non-parties is a factor entitled to special weight in evaluating the balance of

competing needs." *Id.* at 927 (quoting *Cusumano v. Microsoft Corp.*, 162 F.2d 708, 717 (1st Cir. 1998)).

The Supreme Court has stated, because discovery rules should "'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P. 1).

When seeking to depose high-level executives "who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter at issue." *Baine v. Gen. Motors. Corp.*, 141 F.R.D. 332, 334 (M.D. Al. 1991) (quoting *Cmty Fed. Sav. & Loan Ass'n v. FHLLB*, 96 F.R.D. 619, 621-22 (D.D.C. 1983)). The information possessed by the high-level executive must be truly unique, and a deposition will not be permitted if the information could be obtained through other means. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) (plaintiff must submit interrogatories or avail herself of other means of discovery before requesting deposition of high-ranking executive in a multinational corporation where such deposition would be costly and burdensome); *Mulvey v. Chrysler Corporation*, 106 F.R.D. 364, 366 (D.R.I. 1985) (where plaintiffs in a products liability suit sought to depose Lee Iacocca, Chrysler's chairman, the court invoked Rule 26 as to convenience and burdensomeness, and ordered that interrogatories be propounded instead, without prejudice to plaintiffs' ability to depose Mr. Iacocca later if still warranted.). Surely, **former** high level executives deserve even more protection.

Only a party to the litigation may be compelled to give testimony pursuant to a notice of deposition, *United States v. Afram Lines (U.S.A.), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994); therefore, any attempt by plaintiffs to compel depositions from these people via a notice would

have to be quashed. *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 540 (D. Md. 1996); *JSC Foreign Economic Assoc. Tecnostroyexport v. International Development and Trade Services, Inc.*, 220 F.R.D. 235 (S.D.N.Y. 2004). Defendants have standing to move for a protective order if the subpoenas seek irrelevant information. *See Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (citing *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C.2005)).

"Although a witness might have discoverable information, a party is not always entitled to depose that individual. **Rule 30(a)(2)(A) was enacted to control discovery costs and prevent harassment or undue delay.**" *Gross, supra*, 2006 U.S. Dist. LEXIS 79320 at *3. The only reason plaintiffs request more than the ten depositions they agreed to at the Scheduling Order Hearing and contemplated by the Federal Rules is that they are using their allotment to take duplicative, irrelevant depositions.

Accordingly, for the remaining two individuals, Dr. Henry Yeager and Dr. Dieter Schellinger, who are still employed at Georgetown and/or the hospital, defendants request the Court enter an order that interrogatories be propounded first to see if these individuals have any relevant, personal knowledge regarding the IRB in 1998 and Dr. Watson and whether two depositions, as opposed to one, on the same issue is necessary. *See Mulvey, supra*; *Baine, supra*; *Patterson, supra*.

9

## CONCLUSION

**WHEREFORE,** Defendants respectfully request this Court to enter a protective order, prohibiting the duplicative, irrelevant depositions of former high up executives, officers, and Board Members, and requiring preliminary interrogatories to current high up employees to ascertain whether they possess any relevant knowledge prior to requiring both of them to sit for a deposition, and whether two depositions, as opposed to one, should take place.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  April 26, 2007

By: _____
Megan E. Hills (D.C. Bar #437340)
Nicolas Muzin (D.C. Bar # 500106)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
nmuzin@wc.com

10

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, <br> As Guardian of the Person and Property of <br> KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, <br> GEORGETOWN UNIVERSITY, t/a <br> Georgetown University, and <br> VANCE E. WATSON, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. Act. No. 1:05CV02086 (PLF) (AK) <br> ) <br> ) Judge Paul L. Friedman <br> ) <br> ) Magistrate Judge Alan Kay <br> ) <br> ) <br> ) <br> ) |

## ORDER

WHEREFORE, upon consideration of Defendants' Motion for Protective Order, the

Opposition thereto, any additional pleadings, and any argument thereon, it is hereby **ORDERED**

that consistent with Federal Rules of Civil Procedure 26(b) and 30(a)(2)(A) that

(1) Plaintiffs are prohibited from taking the depositions of Father Leo O'Donovan, Mr.

Kenneth Bloem, Dr. Paul Katz, Mr. J. Willard Marriott, and Mr. Charles M. Cawley;

(2) prior to taking the deposition of either Dr. Henry Yeager or Dr. Dieter Schellinger,

Plaintiffs shall serve case-specific interrogatories to determine whether the named individuals

have relevant, personal knowledge as to the issues implicated in this action;

(3) Plaintiffs are limited to taking **one** deposition on the issue of Vance E. Watson,

M.D.,'s interaction with the Independent Research Board and its regulations in the relevant time

frame such that there is no duplicative discovery in this case, if the deposition of Dr. Yeager or

Dr. Schellinger is deemed necessary by Plaintiffs after receiving the interrogatory responses;

(4) any request to increase the presumptive limit of ten (10) depositions as embodied in the Federal Rules by either party will be evaluated in light of the entirety of circumstances of this case.

**ORDERED,** this _____ day of _____, 2007.

_____
MAGISTRATE JUDGE ALAN KAY
United States District Court
  for the District of Columbia

Copies to:

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Newman & McIntosh
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Plaintiffs' Counsel

Andrew Greenwald, Esq.
Greenwald and Laake
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

Megan Hills, Esq.
Nicolas Muzin, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I

hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website

on the 26th day of April, 2007 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Newman & McIntosh
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel


Megan E. Hills

11

# SUPPLEMENTED EXHIBIT A
# TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

# (Relevant Pages of Transcript of 4/11/07 Scheduling Order Hearing)

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF COLUMBIA |
| 2 | |

FELICE I. IACANGELO, et al,      . Docket No. CA 05-2086 (PLF)

    Plaintiff,         .

                    . Washington, D.C.
      v.            . April 11, 2007
                    . 9:45 a.m.
GEORGETOWN UNIVERSITY,    .
trading as Georgetown University  .
Hospital, et al,          .

    Defendant.        .
. . . . . . . . . . . . . .

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:      Newman, McIntosh and Hennessey
                    By: Anthony G. Newman, Esquire
                    7315 Wisconsin Avenue
                    Bethesda, Maryland 20814
                    301.654.3400

                    Joseph, Greenwald and Laaker, PA
                    By:  Andrew E. Greenwald, Esquire
                    6404 Ivy Lane
                    Greenbelt, Maryland 20770
                    301.220.2200

For the Defendant:      Williams and Connolly, LLP
                    By: Megan E. Hills, Esquire
                        Nicolas D. Muzin, Esquire
                    725 Twelfth Street, Northwest
                    Washington, D.C. 20005
                    202.434.5393

Court Reporter:         Linda L. Russo, RPR
                    Official Court Reporter
                    Room 6403, U.S. Courthouse
                    Washington, D.C. 20001
                    202.354.3244

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription

Linda L. Russo, RPR
Official Court Reporter

18

1   soon as it needs to be, but if we don't have any deadlines

2   what's happened so far in this case is --

3            THE COURT:   We'll have deadlines.   The question is

4   what are the most reasonable deadlines.   Now you're saying, and

5   I think this is the first time that I have heard it, that

6   you're the only ones that are going to take fact discovery, and

7   the only discovery they're going to take is expert discovery.

8            MR. NEWMAN:   Then that was misspoken.   I just simply

9   meant that it is going to be an issue.   I doubt that there is

10  many more people that they will depose except for treaters and

11  our plaintiff.   We have people such as the administration of

12  Georgetown, people that were on the boards, the investigation

13  review committees, a lot of discovery to be done, meaning we're

14  going to be a driving force on that and have to get that done

15  in a reasonable time.   I have been there before with these

16  kinds of issues, deposing people on boards, and it can drag out

17  forever by saying they're not available here, we need some

18  other time, and so on.

19           THE COURT:   Do you all have an agreement on the

20  number of depositions?

21           MR. NEWMAN:   We do not have an agreement, no.

22           THE COURT:   There's something in here that says that

23  there shouldn't be any limits on discovery other than those

24  present in the Federal Rules.   Now, the Federal Rules does have

25  a limit on the number of depositions.   The Federal Rules has a

Linda L. Russo, RPR
Official Court Reporter

Case 1:05-cv-02086-PLF-AK   Document 43   Filed 08/01/2007   Page 4 of 7

1  limit on one day or seven hours per deposition.

2       MR. NEWMAN:   I think there's no problem in arranging

3  some kind of limitation, for example, how long depositions are

4  going to go so we can do a number at a certain time.   The only

5  thing I was getting at was that we're under the gun to do those

6  things in a reasonable time period and get it over with.   And

7  then they will depose our experts and perhaps the treating

8  doctors.

9       THE COURT:   Her proposal is that, okay, you're going

10  to exchange, within 30 days from today you're going to have an

11  exchange of initial disclosures to the extent --

12       MR. NEWMAN:   That we both agreed on.

13       THE COURT:   So her proposal is then that we go until

14  the end of September for fact discovery.   That's five months, a

15  little over five months.

16       MS. HILLS:   Your Honor, if I may, I think August is

17  pretty much a wash in terms of both doctors and board members,

18  and if he intends to depose members of the administration of

19  Georgetown University, school is out, which is why I was trying

20  to give us the full time frame of really the four months from

21  May 11th to September to get this fact discovery done.   It

22  does appear that we have a total of three claimants in the

23  case, so that there's three fact discoveries.  Ms. Harris has

24  at least -- you know, doctors in addition to the experts that

25  they, I assume that they're going to identify a causation

Case 1:05-cv-02086-PLF-AK   Document 55-43   Filed 08/07/2007   Page 22 of 54
Case 1:05-cv-02086-PLF-AK   Document 43   Filed 06/07/2007   Page 3 of 7

20

1    expert, but even without one, there's already four affidavits
2    that have been submitted.

3         And so, Your Honor, I thought it was reasonable to
4    say, okay, let's just start fact discovery once you identify
5    who you think are relevant.   Because this is the first I heard
6    a medical malpractice case is involving a member of the
7    internal research board, or a member of the administration.

8         MR. NEWMAN:   That's not the first she's heard of it.
9    It's been in every pleading since the complaint.   The
10   institutional review board is the case.   It is not just the
11   malpractice case.   It involves Federal statutes, it involves
12   failure to comply with the University rules on medical
13   treatment, specifically experiment.

14        The problem, Your Honor, I hate to go back to it, we
15   couldn't even get the deposition of Dr. Watson done without
16   huge speaking objections by the defense.   It's a dream to say
17   we can get these discovery things done.   I want it done, I
18   would like a person there at all times so we can move it.

19        I have done 20 to 30 depositions in 20 days
20   sometimes.   I can do it.   It's something we should move
21   forward.   If we can get these depositions accomplished in a
22   timely fashion, we will do it, but why the pleadings are before
23   the Court down below with the magistrate is because we can't
24   get past step one.   And I don't want an open calendar to allow
25   continuous motions.   Maybe just a pretrial setting would be in

1  bring them promptly to Judge Kay so we don't lose these dates.
2  I want you to try to solve them yourself, but if that doesn't
3  work, I don't want Judge Kay or me to be told that the schedule
4  is slipping because we spent a month trying to solve the
5  problem before bringing it to you.    Spend a few days trying to
6  solve the problem before bringing it to Judge Kay, but bring
7  him as few as you have to.
8            MR. NEWMAN:    Hopefully so.
9            THE COURT:    I don't know whether there have been
10  speaking objections or not, but if we're going to rely on the
11  stringency of the Federal Rules for how we're going to deal
12  with experts, we're also going to rely on the stringency of the
13  Federal Rules for how depositions are conducted.
14            MS. HILLS:    One of the items that I would like issued
15  in the order is when someone notices a deposition and intends
16  to examine a witness, similar to court, they bring a copy of
17  that document to give to the witness, and the Supreme Court
18  says simultaneously it should be given to the witness' counsel.
19  And that is the duty of the examiner, not the duty -- opposing
20  counsel doesn't jump up and give something to a witness on the
21  witness stand.    And that seems very basic.
22            I have never actually run into having a problem with
23  that, but apparently at our last deposition there were no extra
24  copies of documents that purportedly the witness was asked to
25  comment on.    So I'd like that as an order.

Case 1:05-cv-02086-PLF-AK   Document 55-5   Filed 08/07/2007   Page 24 of 54
Case 1:05-cv-02086-PLF-AK   Document 43   Filed 05/01/2007   Page 7 of 7

34

1   much easier if we just tender an order that said when the

2   witness is shown documents, just like in court, the witness is

3   provided with that document by the examiner, and to counsel.

4           THE COURT:    All right.    Thank you.

5      (Proceedings concluded.)

6

7                  CERTIFICATE

8        I, LINDA L. RUSSO, Official Court Reporter, certify

9   that the foregoing pages are a correct transcript from the

10   record of proceedings in the above-entitled matter.

11

12

13

14           Linda L. Russo, RPR
           Virginia CCR No: 0313102

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

Case 1:05-cv-02086-PLF-AK Document 55-3 Filed 08/07/2007 Page 26 of 54
Case 1:05-cv-02086-PLF-AK Document 42-3 Filed 04/26/2007 Page 2 of 4
Case 1:05-cv-02086-PLF-AK Document 37 Filed 04/11/2007 Page 1 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELICE I. IACANGELO, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-2086 (PLF) |
| GEORGETOWN UNIVERSITY, et al., | ) ) | |
| Defendants. | ) ) ) | |

## SCHEDULING ORDER

The parties appeared for a meet and confer status conference on April 11, 2007.

Based upon the Rule 16.3 Joint Report submitted to the Court and the representations of counsel,

it is hereby ORDERED that

      1.     Fact discovery shall be completed by September 3, 2007. Counsel must

resolve all discovery disputes or bring them to the Court's attention in a timely manner so as to

allow sufficient time for the completion of discovery by this date. All discovery matters have

been referred to Magistrate Judge Alan Kay.

      2.     Each party is limited to a maximum of 25 interrogatories to any other

party, unless otherwise agreed upon by the parties or unless the Court determines otherwise

pursuant to motion. Responses to all interrogatories are due 30 days after service.

      3.     Each party is limited to a maximum of 10 depositions, unless otherwise

agreed upon by the parties or unless the Court determines otherwise pursuant to motion.

4.     Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure shall be made by May 11, 2007.

5.     Disclosures of plaintiff's retained experts pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure are due by September 17, 2007.

6.     Disclosures of defendant's retained experts pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure are due by October 29, 2007.

7.     Depositions of each party's retained experts shall be completed by December 14, 2007.

8.     Dispositive motions shall be filed on or before January 15, 2008; oppositions by February 5, 2008; and replies, if any, by February 19, 2008.

9.     Counsel are required to confer in good faith in an effort to resolve all discovery disputes before bringing the dispute to Magistrate Judge Kay. If counsel are unable to resolve the discovery dispute, counsel shall arrange a telephone conference with Magistrate Judge Kay by contacting his chambers. Counsel shall not file a discovery motion without a prior conference with Magistrate Judge Kay and opposing counsel.

10.    Plaintiffs will present their initial settlement demand to defendants on or before April 25, 2007.

11.    A further status conference is scheduled before the undersigned for May 22, 2007 at 9:00 a.m. to discuss mediation and the status of discovery.

2

12.     Counsel are expected to evaluate their respective cases for settlement purposes.  Submission to alternative dispute resolution, e.g., mediation or neutral evaluation, is encouraged and is available by request of the Court at any time, as is a settlement conference before a magistrate judge.  If the case settles in whole or in part, plaintiff's counsel shall advise the Court by promptly filing a stipulation.

13.     Counsel are reminded to comply with Local Civil Rule 7(m), which requires counsel to confer on all nondispositive motions prior to filing them with the Court.  See LCvR 7.  The party filing the motion shall include in its motion a statement that the required discussion occurred and a statement as to whether the motion is opposed.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 11, 2007

3

# EXHIBIT C

# NEWMAN McINTOSH & HENNESSEY, LLP

Anthony G. Newman (DC, MD)
Ernest W. McIntosh (DC, MD, MI)
Joseph A. Hennessey (DC, MD)
Wendy Wyeth (MD)

THE AIR RIGHTS BUILDING
7315 Wisconsin Avenue, 700E
Bethesda, Maryland 20814

Main: (301) 654-3400
Fax: (301) 907-2975
www.nmhlaw.com

# Fax Cover Sheet

TO:   Megan Hills

FROM:   Anthony Newman

FAX: (202) 434-5029

DATE:   4/15/07

# PAGES (incl. cover)   3

RE:   Deposition date request

## Confidential Communication

The information contained in the facsimile is proprietary and confidential and is intended only for the addressee(s) named above. If you have received this communication in error, please notify us immediately at (301) 654-3400 and return the communication by mail to the above address.

# NEWMAN MCINTOSH & HENNESSEY, LLP

Anthony G. Newman (DC, MD)
Ernest W. McIntosh (DC, MD, MI)
Joseph A. Hennessey (DC, MD)
Wendy Wyeth (MD)

THE AIR RIGHTS BUILDING
7315 Wisconsin Avenue, 700E
Bethesda, Maryland 20814

Main: (301) 654-3400
Fax: (301) 907-2975
www.nmhlaw.com

April 16, 2007

*VIA FAX & US MAIL*
Megan E. Hills, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, D.C. 20005

### *Re: Karyn Kerris*

Dear Ms. Hills,

Plaintiffs request deposition dates for the following individuals:

**A. Officers of the Medical Center** (at the relevant times):

| Name | Title (at the relevant times) |
|------|-------------------------------|
| 1. Kenneth D. Bloem | Chief Executive Officer for the Medical Center |
| 2. Paul Katz | Chief Operating Officer for the Medical Center |
| 3. Sam Wiesel, M.D. | Executive Vice President for Health Sciences |
| 4. Michael Cole | Vice President of the Medical Center |

**B. Officers of Georgetown University** (at the relevant times):

| Name | Title (at the relevant times) |
|------|-------------------------------|
| 1. Leo J. O'Donovan | President, Georgetown University |
| 2. John J. DeGioia, M.D | Senior Vice President, Georgetown University |
| 3. Joseph G. Verbalis, M.D. | Georgetown University's CRC |

**C. Members of the Board of Directors** (at the relevant times):

| | |
|---|---|
| 1. Charles M. Cawley | 6. Leslie H. Jacobson |
| 2. James V. Kimsey | 7. Philip A. Marineau |
| 3. John J. Faith, IV | 8. J. Willard Marriott, Jr. |
| 4. Judge Arthur J. Gajarsa | 9. Frank L. Salizzoni |
| 5. James F. Higgins | 10. Stephen Wolf |

Megan E. Hills, Esq.
April 16, 2007
Page 2

**D. Members of the Institutional Review Board** (at the relevant times):

**Committee A**
1. Mary Young, M.D.
2. Margaret Rodan Sc.D
3. Henry Yeager, M.D.

**Committee B**
4. Harry G. Preuss, M.D.
5. Leonard Chiazze, Jr., M.D.
6. Jeanne Meck, Ph.D.
7. Dieter Schellinger, M.D.
8. Sorell L. Schwartz, M.D.

I stand ready to take their depositions as soon as possible.

Sincerely,

Anthony G. Newman

AGN/bms

# EXHIBIT D

# NEWMAN McINTOSH & HENNESSEY, LLP

Anthony G. Newman (DC, MD)
Ernest W. McIntosh (DC, MD, MI)
Joseph A. Hennessey (DC, MD)
Wendy Wyeth (MD)

THE AIR RIGHTS BUILDING
7315 Wisconsin Avenue, 700E
Bethesda, Maryland 20814

Main: (301) 654-3400
Fax: (301) 907-2975
www.nmhlaw.com

# **Fax Cover Sheet**

TO:   Megan Hills                     FROM:     Anthony Newman

FAX: (202) 434-5029              DATE:     4/19/0

# PAGES (incl. cover)   3

RE:   Depositions

# NEWMAN, McINTOSH & HENNESSEY, LLP

ANTHONY G. NEWMAN (DC, MD)
ERNEST W. McINTOSH (DC, MD, MI)
JOSEPH A. HENNESSEY (DC, MD)

THE AIR RIGHTS BUILDING
7315 WISCONSIN AVE, SUITE 700 EAST TOWER
BETHESDA, MARYLAND 20814

(301) 654-3400 MAIN
(301) 907-2975 FAX
WWW.NMHLAW.COM

April 19, 2007

*VIA FAX & US MAIL*
Megan E. Hills, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, D.C. 20005

*Re: Karyn Kerris*

Dear Ms. Hills,

Pursuant to your request Plaintiffs will start discovery by deposing the individuals listed below beginning with Kenneth D. Bloem.

## A. Officers of the Medical Center (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 1. Kenneth D. Bloem | Chief Executive Officer for the Medical Center |
| 2. Paul Katz | Chief Operating Officer for the Medical Center |

## B. Officers of Georgetown University (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 3. John J. DeGioia, M.D | Senior Vice President, Georgetown University |

## C. Members of the Board of Directors (at the relevant times):

4. Charles M. Cawley
5. J. Willard Marriott, Jr.
6. Judge Arthur J. Gajarsa

Megan E. Hills, Esq.
April 19, 2007
Page 2

**D. Members of the Institutional Review Board** (at the relevant times):

**Committee A**

7. Henry Yeager, M.D.

**Committee B**

8. Dieter Schellinger, M.D

Based on your letter it appears that defense will not stipulate to any additional depositions, thus Plaintiffs will be forced to file a Rule 30(a)(2)(A) motion in order to complete discovery. To that end this letter will serve as Plaintiffs' good faith attempt to reach an agreement under Rule 29, and unless I hear otherwise, the motion will be filed.

Finally it should be noted that it was not Plaintiffs' intent to involve Magistrate Kay oversee every deposition.

Sincerely,

Anthony G. Newman

AGN/bms

# EXHIBIT E

Case 1:05-cv-02086-PLF-AK Document 55-5 Filed 08/03/2007 Page 38 of 54
Case 1:05-cv-02086-PLF-AK Document 42-6 Filed 04/26/2007 Page 2 of 3
Case 1:05-cv-02086-PLF-AK Document 40 Filed 04/24/2007 Page 1 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

Felice I. Iacangelo and Cicily Iacangelo,     :
As Guardian of the Person and Property of     :
KARYN A. KERRIS,                              :
                                              :     **Civil No. 1:05CV02086**
            Plaintiffs,                        :
                                              :     **Judge Paul L. Friedman**
vs.                                           :
                                              :     **Magistrate Judge Alan Kay**
GEORGETOWN UNIV. HOSPITAL, *et al.* :
                                              :
            Defendants.                        :
_____ :

## PLAINTIFFS' (DEPOSITION) WITNESS LIST[1]

Pursuant to this Court's request on April 23, 2007, during a conference call, Plaintiffs

hereby submit the following list of individuals to be deposed:

1. Kenneth D. Bloem, Chief Executive Officer for the Medical Center

2. Paul Katz, Chief Operating Officer for the Medical Center

3. Leo J. O'Donovan, President, Georgetown University

4. Charles M. Cawley, Member of the Board of Directors (or the then Chairman of the
   Board)

5. J. Willard Marriott, Jr., Member of the Board of Directors

6. Henry Yeager, M.D., Member of the Institutional Review Board, Committee A

7. Dieter Schellinger, M.D., Member of the Institutional Review Board, Committee B

8. (Vance E. Watson, M.D., deposition to be reconvened)

---

[1] This does not, of course, include the depositions of Defendants' experts, since their identities are unknown at this time.

1

Respectfully submitted,

/s/ Anthony G. Newman
Newman, McIntosh & Hennessey LLP
Anthony G. Newman, Esquire No. 384809
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814
(301) 654-3400
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of Columbia

5.4(d), I hereby certify that a copy of the foregoing Witness List was served via electronic filing

on the Court's CM/ECF website on April 24, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

/s/ Anthony G. Newman
Anthony G Newman

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

FELICE I. IACANGELO, *et al.*        :

                              :

                              :      **Civil No. 1:05CV02086**

         Plaintiffs,        :

                              :      **Judge Paul L. Friedman**

vs.                          :

                              :      **Magistrate Judge Alan Kay**

**GEORGETOWN UNIVERSITY,** *et al.*    :

                              :

         Defendants.       :

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION FOR PROTECTIVE ORDER

COME NOW, the Plaintiffs, by and through their undersigned counsel, and

oppose the Defendants' Motion for Protective Order, and in support thereof state as

follows:

### I.     INTRODUCTION AND FACTUAL BACKGROUND

Once again Plaintiffs have attempted to obtain valid discovery only to be

blockaded by a convoluted and baseless Motion, unnecessarily expending the resources

of both the Court and Plaintiffs.   This is the latest opus in a long line of Defendants'

obstructive behavior.   Defendants' continue to believe, quite incorrectly, that they have

not only a duty to defend this case, but a duty to act as a self-appointed master and dictate

how and when Plaintiffs should prosecute their case. Defendants have adopted positions

and filed unnecessary motions to impede discovery and to attempt to control each and

every aspect of this litigation so that little, but if any evidence, is even uncovered (the

Complaint was filed on October 24, 2005, to date no depositions have been completed).

Defendants believe that *they* dictate which liability issues will be tried, freely ignoring

1

the majority of the issues set forth in the Amended Complaint. Defendants believe that *they* dictate the scope of a deposition, freely ignoring any or all of Plaintiffs' counsel's questions. Now, Defendants argue that *they* will decide who should be deposed and how the depositions will be conducted.

The Motion demonstrates Defendants' belief and that *they* are also allowed to make unsworn, unsubstantiated factual assertions and assumptions which must be accepted blindly by the Court and Plaintiffs, in lieu of the depositions of witnesses who actually possess the information. Not only do Plaintiffs reject Defendants assertions of "facts," Plaintiffs will establish that, as in the past, the assertions are false.

Plaintiffs' Complaint alleges multiple causes of action against both the individual Defendant Vance Watson, M.D., *and, in addition,* the institution of Georgetown University ("GU") t/a Georgetown University Hospital ("GUH"). Specifically with respect to GU, Plaintiffs allege that GU was complicit in the purchase, smuggling, and implantation of prohibited devices into Plaintiff Karyn Kerris as well as other patients. As a result, Plaintiffs have an absolute right, and an absolute need to depose high-ranking members of GU and GUH, both past and present, to determine the scope and breadth of its involvement in this case.

In Plaintiffs' opinion the time has come, once and for all, for this Court to forcefully remind the Defendants that it is *the Court, and not Defendants*, who are in charge of this litigation.

## II. LEGAL ANALYSIS

### A. The Defendants Have Failed To Set Forth Good Cause To Be Entitled To A Protective Order.

2

Defendants devote the first section in their memorandum to their argument that the proposed depositions will cause them undue burden and expense. But the Defendants fail to set forth even a single fact supporting this contention. They claim, instead, that "[t]he central issue in this case is whether Dr. Watson breached the standard of care" and that therefore, only causation witnesses should be deposed. *See* Defs. Mot. at 3. But it is the Complaint, and not Defendants' proclamation, that determines the issues in this case. And indeed, the Complaint sets forth multiple causes of action against *both* the individual Defendant-doctor *and* GU.

Defendants go on to state that Plaintiffs "seek to use eight of their allotted depositions on individuals who can *only address* Plaintiffs' claim that Dr. Watson violated an IRB regulation." (emphasis added) *See* Defs. Mot. at 4. To put it bluntly, how Plaintiffs spend their allotted depositions should not be the subject of Defendants' commentary. As to the issue of the IRB (which is by no means the only issue to be addressed in the deposition, see section C below), it is clear that Plaintiffs have a right to depose the GU and GUH officials to find out what they knew or should have known about Dr.Watson's IRB violations.[1]

Finally, Defendants fail to set forth *how* the proposed depositions will result in undue burden and expense. A person's mere desire to avoid being deposed does not constitute undue burden or expense. In *Peskoff v. Faber*, 230 F.R.D. 25 (D. D.C. 2005),

---

[1] Defendants point out that "Plaintiffs have already submitted expert affidavits who opine that Dr. Watson violated IRB regulations." *See* Defs. Mot. at 5. Plaintiffs suggest that perhaps defense counsel should examine a potential conflict of interest here. D.C. Rule of Professional Conduct 1.7 sets forth the rule on conflicts of interest, which includes advancing two or more interests in litigation that may be adverse. Here, Dr. Watson's interests may well be adverse to GU's in terms of Dr. Watson's conduct and GU's involvement in that conduct. The rules further provide, in comment 14, which is titled "Special Considerations in Common Representation," that special care should be taken with regard to positions that cannot be reconciled in the litigation. Such may be the case here regarding Dr. Watson and GU.

3

Magistrate Judge Facciola set forth the "good cause" standard necessary to obtain a protective order, stating:

> [T]he movant must articulate **specific facts** to support its request and **cannot rely on speculative or conclusory statements** ... **Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an [sic] 'extraordinary measures [ ] which should be resorted to only in rare occasions'** ... Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial."

*Id.* at 32 (emphasis added) (citations omitted). There, Judge Facciola found that "[t]he Defendant has made only general claims of potential harassment and embarrassment, unsupported by evidence of the specific harm that will result from [his] compliance with the subpoena." *Id.* The Court, therefore, denied the motion for protective order.

Here, the Defendants' Motion should similarly be denied as the Defendants have utterly failed to set forth any specific factual basis for their Motion other than their own self-serving, conclusory statements about the alleged burden and expense that will result from the proposed depositions. Furthermore, the Defendants ignore the procedural history of this case. It has been the Defendants, and not the Plaintiffs, who have driven up the costs of this litigation by filing frivolous motions. Indeed, this Court has already characterized one of Defendants' motions as "unwarranted and a misuse of judicial resources."[2]

In addition, after the Court expressly permitted Plaintiffs to depose Dr. Watson, *defense counsel* caused the filing of additional motions given her obstructive behavior in the deposition with speaking objections and running commentary. In this respect, it is quite disingenuous for the same defense counsel to now argue that deposing key

---

[2] *See* Memorandum Order dated Feb. 28, 2007 at p.3.

4

witnesses will cause undue burden and expense. The Court should summarily reject this argument as wholly without merit.

**B.      Defendants Have No Right To Dictate How Plaintiffs Use Their Allotted Depositions.**

Defendants' second argument is devoted to their unilateral determination as to how Plaintiffs should conduct discovery in this case. Defendants then cite authority and invite the Court to believe that prior to deposing high-level executives, Plaintiffs must first propound interrogatories to those executives. Thereafter, Plaintiffs presume that Defendants would argue that Plaintiffs should take the answers to those interrogatories, which would undoubtedly be prepared by defense counsel and be void of any valuable evidence, thereby concluding the inquiry.

The cases Defendants cite are inapposite. In the *Mulvey* case, the court would not permit Lee Iacocca to be deposed since the purported reason was to inquire as to things written in his autobiography. But the majority of courts have concluded that depositions of high-ranking corporate executives are often quite appropriate. For example, in *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002), the court permitted the Plaintiffs to depose Henry Ford, explaining:

> Several factors lead us to the conclusion that Magistrate Judge Shields's order allowing the Plaintiffs to take Mr. Ford's deposition is neither contrary to law nor clearly erroneous. First, the Plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues. **Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the Defendant are relevant in the case.** *See Six West Retail Acquisition v. Sony Theatre Management,* 203 F.R.D. 98 (S.D.N.Y.2001); *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140 (D.Mass.1987). The evidence produced by the Plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture in this action. Although Ford has attempted to elevate Magistrate

5

Judge Shields's comment that she "suspects that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate" to the level of a finding inconsistent with her conclusion, we do not read so much into that comment.

**Second, the cases upon which Ford relies for its position that courts impose a burden on the proponent of the deposition to demonstrate the "apex" official's unique personal knowledge stop well short of establishing a rigid rule applicable in all cases. Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement.** *See, e.g., Thomas v. IBM,* 48 F.3d 478 (10th Cir.1995)(individual employment case); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979)(individual negligence case); *Baine v. General Motors,* 141 F.R.D. 332 (M.D.Ala.1991)(individual personal injury case); *Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.R.I.1985) (individual personal injury case). Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts. **We are unwilling, however, to require rigid adherence to the burdens imposed under the facts of those cases, because the circumstances here are quite different and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case. First, conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this litigation.** *See Six West,* 203 F.R.D. at 105, and *Travelers,* 116 F.R.D. at 142-45 (both distinguishing on this basis several of the cases Ford has relied upon).

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation,* 205 F.R.D. 535,

536 (S.D. Ind. 2002) (emphasis added).

Here, the proposed depositions are quite relevant to this case as there are multiple

counts against GU that relate to the knowledge of high-ranking GU and GUH officials

regarding Dr. Watson's conduct here. Moreover, this Court has previously recognized

that though "[s]everal cases arising out of state law have held that a high-ranking

corporate official may not be deposed absent a showing that such official has 'unique or

superior knowledge of discoverable information'. . . [i]t is doubtful, however, that such is

the rule in federal litigation." *Taylor v. National Consumer Cooperative,* 1996 WL

525322, *1 (D. D.C. 1996); *see also Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th

Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92 (S.D. Iowa 1992) (Plaintiff was entitled to test an executive's professed lack of knowledge by taking his deposition); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 143 (D. Mass. 1987) (where four corporate executives submitted "remember nothing" affidavits and sought to be protected from being deposed, court ordered that the Plaintiffs were entitled to test the executives' personal knowledge as well their memories and thus, depositions were allowed).

"In short, high ranking corporate executives are not automatically given special treatment which excuses them from being deposed." *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 1987 WL 11994, *4 (D. D.C. 1987). In this case, the subject deponents cannot rest on defense counsel's unsworn assertions that they do not possess knowledge of facts relevant to this case. Plaintiffs are entitled to test that knowledge, whatever it ends up being.

Finally, Defendants point out that "[o]nly a party to the litigation may be compelled to give testimony pursuant to a notice of deposition." *See* Defs. Mot. at 8. Defendants are certainly aware that such non-parties must be served with subpoenas absent defense counsel's agreement to accept service on their behalf. Plaintiffs, therefore, are uncertain as to why Defendants included this in their Motion as it is a non-issue.

7

**C.     The Depositions Will Involve All  Viable Issues in the Amended
Complaint.**

While Defendants argue that the only issues that could possibly be addressed in

the proposed depositions are those involving the IRB, it is simply not so.  The

depositions will encompass a myriad of issues found in the Amended Complaint.  These

viable issues include: the failure to obtain an IDE (Count I  ¶11(d)); negligent

supervision, monitoring, ordering and invoicing (Count I  ¶11(h); failure to provide

proper informed consent (Count II); breach of fiduciary obligations (Count VIII);

punitive damages (Count IX); and violations of 21 U.S.C. § 360(a)(II) (Count X),  21

U.S.C. § 331(a),(b)(c)(g) and (k) (Count XI),  and 21 C.F.R.  Ch. 1  § 812.20(a)(2) (Count

XII). [3]

Indeed the oversimplification of the issues in this case is another classic example

of Defendants' attempts to manipulate the Court.  After Defendants make the *assumption*

that the only issue to be address in deposition is the IRB claim, and  the *assumption* that,"

"former, high-level individuals [have] no apparent connection to the issues implicated by

this lawsuit, much less personal knowledge of the events involved in this action" they

*conclude* that deposing them would "waste resources on duplicative, irrelevant

depositions." [4] *See*  Motion at 1. Then based on the aforesaid, Defendants argue that

Federal Rule of Civil Procedures 26(b) and 26(c) mandate limiting this type of discovery.

*Id.*

---

[3] Amazingly, Defendants persist in arguing that the only issues in the case involve negligence and/or IRB
violations.  Defendants are undaunted by the fact that the Court has denied their motions for summary
judgment and to dismiss regarding: lack of informed consent, violations of multiple federal statues and
punitive damages.  Clearly, without a strong admonition by the Court, even if the requested depositions are
scheduled, the defense will obstruct any questioning as to these other issues.
[4] This a bold assumption considering the fact that nowhere in the *Motion* or *Memorandum* does it state that
the defense counsel ever spoke to any of the potential deponents.

Contrary to Defendants' simplistic view,  it is clear that the board of directors and hospital administrators have a direct connection to the issues of breach of fiduciary, punitive damages and violations of the statutes.  They funded, managed and controlled the daily operation of the Hospital and the procedures performed therein.  Obviously, without their consent, approval, and permission Dr.Watson could have ordered, paid for, procured, stocked, or used the illegal devices he injected into patients.  Moreover, Dr. Watson could not have continued to use these illegal devices for years, if these individuals had not ratified his actions.  Even if one assumes, *arguendo*, that said individuals had no knowledge of these issues, their complete lack of knowledge itself sets forth important elements of proof. [5]

### III.    Plaintiffs' Counsel Never Agreed to Limit The Number of Depositions.

While the aforesaid is certainly dispositive, Plaintiffs must bring to the Court's attention another reason to question defense counsel's veracity.  Defense counsel has twice represented to the Court, first by telephone and now in a pleading, that Plaintiffs should be limited to only ten (10) discovery depositions because Plaintiffs' counsel agreed to the limitation during the April 11, 2007 Scheduling Order Hearing. Defendants state that Plaintiffs are requesting more depositions, "notwithstanding Plaintiffs' prior representations that the limit of ten (10) depositions embodied in the Federal Rules would apply to the action." *See* Certificate of Good Faith at 1.  This statement is absolutely false.

Fortunately, Defendants ordered a transcript of the Scheduling Order Hearing and later filed it to have it attached to their motion.  Perhaps this done in a vain hope that the

---

[5] Moreover, Federal Rules of Civil Procedure 26(b) and 26(c) do not act as an automatic limit on discovery. The rules allow for discovery to be limited only, "by the Court" and only "if it determines" that a limitiation is required, Defendants false assertions provide no such basis.

Court might believe defense counsel's proffer, and forego reading the transcript. The relevant portion completely eviscerates Defendants' argument and leaves no room for any argument that Plaintiffs' counsel either actively or passively agreed to a limitation in the number of depositions.

> THE COURT: Do you all have an agreement on the number of depositions?
> MR. NEWMAN: We do not have an agreement, no.

(Transcript of April 11, 2007, p.18 l.19-21, Ex.).  Nothing could be clearer.  In response to the Court's question as to whether there had been an agreement between the parties as to the number of witnesses, Plaintiffs' counsel answered, unequivocally, "**no**." Even if defense counsel claims that, for some unknown reason, she was distracted or inattentive when Plaintiffs' counsel spoke these words, surely that would not excuse her total lack of recall of the following multiple statements made by plantiffs' counsel to the Court regarding the issue of number of the potential deponents:

> MR. NEWMAN:  Then that was misspoken.  I just simply meant that **this is going to be an issue.** I doubt that there is many more people that they will depose except for treaters and our Plaintiff.  We have people such as the **administration of Georgetown, people that were on the boards, the investigational review committees, a lot of discovery to be done,** meaning we're going to be the driving force on that and have to get that done in a reasonable time. I have been there before with these kinds of issues, **deposing people on boards**, and it can drag out forever by saying they're not available here, we need some other time, and so on.

(bold added) (Transcript of April 11, 2007, p.18, l 8-18, Ex. A). [6]   The only explanation

---

[6] Based on Defense counsel's false assertion that there had been an agreement by the parties, this Court inquired of Plaintiffs' counsel during the phone conference, if there had been such an agreement, to which Plaintiffs' counsel responded with, "no."

   This Court then asked Plaintiffs' counsel why such a limitation was contained in paragraph 3 of the Scheduling Order,  to which Plaintiffs' counsel responded with, "I do not know."   Plaintiffs' counsel still remains at a loss as to explain the rational behind the limitation present in the Order, except that may have been the Court's belief that the phrase, "unless agreed upon by  the parties" usually results in an agreement between the parties and obviates the need to formally modify the Order.

   It is interesting to note that the defense seized on the inconsistency between Plaintiffs' counsel statements in open Court, and the Order itself, and then used the Order as evidence that there was an agreement between the parties.

for defense counsel's false statements to this Court is that they a deliberate attempt to mislead the Court. It appears to be Defense counsel's belief that when representing her clients, anything goes. In any event, it has always been, and continues to remain, Plaintiffs' position that the members of the Board of Directors, the high ranking officials in the administration as well as the hospital personnel, which includes members of the Institutional Review Board, must be deposed for proper and complete discovery to be conducted.

## IV.    CONCLUSION

Defendants' Motion should be denied because they have failed to set forth good cause to warrant this Court's protection.

Respectfully submitted,

By:    /s/ Anthony Newman
Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400

/s/ Andrew E. Greenwald
Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200

*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of

Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via

electronic filing on the Court's CM/ECF website on May 2, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

/s/ Anthony Newman
Anthony Newman

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### *Civil Division*

| | | |
|---|---|---|
| FELICE I. IACANGELO, *et al.* | : | |
| | : | |
| Plaintiffs, | : | **Civil No. 1:05CV02086** |
| | : | |
| vs. | : | **Judge Paul L. Friedman** |
| | : | |
| **GEORGETOWN UNIVERSITY**, *et al.* | : | **Magistrate Judge Alan Kay** |
| | : | |
| Defendants. | : | |

## <u>O R D E R</u>

UPON CONSIDERATION of the Defendants' Motion for Protective Order, and

Plaintiffs' Opposition thereto, it is this _____ day of _____, 2007, by the

United States District Court for the District of Columbia,

**ORDERED**, that the Plantiffs' Opposition to Defendants' Motion for Protective

Order be and the same is hereby **DENIED IN ITS ENTIRETY**.


_____
The Honorable Alan Kay
Magistrate Judge
United States District Court for the District of Columbia

13

**Copies to**:

Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

```
 1   soon as it needs to be, but if we don't have any deadlines
 2   what's happened so far in this case is --
 3           THE COURT:   We'll have deadlines.   The question is
 4   what are the most reasonable deadlines.   Now you're saying, and
 5   I think this is the first time that I have heard it, that
 6   you're the only ones that are going to take fact discovery, and
 7   the only discovery they're going to take is expert discovery.
 8           MR. NEWMAN:   Then that was misspoken.   I just simply
 9   meant that it is going to be an issue.   I doubt that there is
10   many more people that they will depose except for treaters and
11   our plaintiff.   We have people such as the administration of
12   Georgetown, people that were on the boards, the investigation
13   review committees, a lot of discovery to be done, meaning we're
14   going to be a driving force on that and have to get that done
15   in a reasonable time.   I have been there before with these
16   kinds of issues, deposing people on boards, and it can drag out
17   forever by saying they're not available here, we need some
18   other time, and so on.
19           THE COURT:   Do you all have an agreement on the
20   number of depositions?
21           MR. NEWMAN:   We do not have an agreement, no.
22           THE COURT:   There's something in here that says that
23   there shouldn't be any limits on discovery other than those
24   present in the Federal Rules.   Now, the Federal Rules does have
25   a limit on the number of depositions.   The Federal Rules has a
```