## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, ) | |
| As Guardian of the Person and Property of ) | |
| KARYN A. KERRIS, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civ. Act. No. 1:05CV02086 (PLF) (AK)** |
| ) | |
| Georgetown University Hospital, ) | **Judge Paul L. Friedman** |
| GEORGETOWN UNIVERSITY, t/a ) | |
| Georgetown University, and ) | **Magistrate Judge Alan Kay** |
| VANCE E. WATSON, M.D., ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### DEFENDANTS'[1] REPLY
### IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

Precedent and Federal Rule of Civil Procedure[2] 26(b)(2) require plaintiffs to make an

initial showing of personal knowledge and involvement in the specific events forming the basis

of this litigation and to exhaust less costly and burdensome methods of discovery (*e.g.*,

interrogatories, depositions of lower level people, a 30(b)(6) deposition, *etc.*), prior to allowing

the depositions, if allowed at all, of high-level executives.  If plaintiffs are permitted to exhaust

their allotted ten depositions on duplicative, irrelevant depositions of former, high-level

executives, defendants are prejudiced both by having the expense and burden of appearing at

irrelevant, duplicative depositions of individuals such as the President of Marriott International,

---

[1] Defendants, Georgetown University and Vance E. Watson, M.D. (hereinafter, collectively
referred to as "defendants" and individually as "GU" or "Dr. Watson").

[2] Hereinafter, "Fed. R. Civ. P."

Mr. J. Willard Marriott, and Father Leo O'Donovan,[3] as well as having the discovery costs of this litigation substantially increased by plaintiffs' stated intention to exceed their allotted ten depositions.[4]

Plaintiffs' Opposition to Defendants' Motion for Protective Order proves defendants' position: In order to justify the deposition of a high-level executive, plaintiffs must first present evidence to show that the individual "has **personal knowledge and involvement in certain relevant matters**." *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (emphasis added); quoted at 5-6 of Plaintiffs' Opposition ("Plts' Opp."). As the *Bridgestone/Firestone* court found, "**The evidence produced by the plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture.**" *Id.* (Emphasis added). Plaintiffs' Opposition – filled with case law supporting the entry of a protective order – never explains why they should be relieved of the obligation of showing personal knowledge and involvement of the proposed deponents or why initial interrogatories or other discovery tools should not precede the depositions, much less why a relatively straightforward medical malpractice case requires more depositions than contemplated by the Federal Rules.

"Good cause" sufficient for a protective order, prohibiting proposed depositions of high-level depositions is shown "[w]hen a vice president can contribute nothing more than a lower level employee." *Harris v. Computer Associates International, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (citation omitted). "When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute, courts have found that good cause exists to prohibit

---

[3] *See* Plaintiffs' Witness List, filed April 24, 2007 (attached hereto as Ex. 1).

[4] *See* 4/16/07 and 4/19/07 Anthony Newman Letters to Megan Hills (both attached hereto as Ex. 2).

the deposition." *WebSideStory, Inc. v. Netrating, Inc.*, 2007 U.S. Dist. LEXIS 20481 at *7 (S.D.

Cal. 2007)[5] (limited deposition of corporate president allowed only after plaintiffs proffered

emails showing that corporate president had personal knowledge and after plaintiffs conducted a

30(b)(6) deposition). In other words, just pointing to a high-level person's former title without

showing personal knowledge of the proposed deponent is insufficient to justify the deposition

and sufficient to show good cause to quash the deposition.

"In the absence of a showing of unique personal knowledge, the circuit courts, including

the Sixth Circuit, have upheld the entry of a protective order precluding the depositions of high

level company executives." *Devlin v. Chemed Corp.*, 2005 WL 2313859 at *1 (E.D. Mich.

2005) (unreported). Significantly, the *Devlin* court denied the proposed depositions when the

**plaintiffs forwarded the same argument for holding the depositions as plaintiffs advance**

**here**:

> [T]he employees in question have filed affidavits stating that they have no
> personal knowledge of the facts of this case. **Plaintiffs argue that the**
> **depositions are necessary to prove their theory that a pervasive practice of**
> **inadequate supervision** over Allstate claims adjusters exists within the
> corporation. . . . **The Court finds that, to the extent the Plaintiffs have a right**
> **to pursue these issues, Allstate has already provided adequate information,**
> **or that the information can alternately be obtained from other sources**
> **without deposing these "apex" officers.**

*Id.* (citations omitted; emphasis added); *see also Lewelling*, 879 F.2d at 218 (affirming issuance

of protective order based on deponent having no knowledge as to facts pertinent to the plaintiff's

action); *Thomas*, 48 F.3d at 483-84 (upholding protective order barring deposition of top

---

[5] Citing "*Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *see also* SHWARZER [sic], TASHIMA & WAGSTAFFE, CAL. PRACTICE GUIDE: FED. CIV. PRO. BEFORE TRIAL [¶] 11:345.5 (The Rutter Group 2002) ("The CEO of a corporation ... may obtain a protective order from being deposed about matters as to which he or she has no personal knowledge. This prevents use of depositions for harassment purposes and protects such persons from the interference of the discovery process."). *Id.* at *7 fn4.

executive where lower level employees were available for deposition and where executive lacked

personal knowledge of the matters at issue in plaintiff's case.); *Bush v. Dictaphone Corp.*, 16

F.3d 363 (6th Cir. 1989).

## I.   Precedent and Fed. R. Civ. P. 26(b)(2) Support that Plaintiffs Must Show Personal Knowledge and Involvement and Exhaust Less Expensive Forms of Discovery in Order to Justify Depositions of High-Level Executives – Much Less Former High-Level Executives.

Plaintiffs' citations prove defendants' position.   Relying mainly on unpublished

decisions,[6] plaintiffs' case law uniformly supports the proposition that high-level executives

should not be deposed until plaintiffs come forward with threshold evidence showing that the

individual has personal knowledge of and involvement in the specific allegations of the

litigation.   Specifically limiting its ruling to the facts of the case, *id.* at 536, the

*Bridgestone/Firestone* court only allowed the deposition of the chairman of the board, first,

"because [the proposed deponent] referred to **his personal knowledge of and involvement in**

the tire recall, automobile safety issues, and manufacturer's response to those issues," *id.* at 536;

second, because "the plaintiffs seek to depose Mr. Ford, **not for purposes of a single personal**

**injury case,** but to depose him once for all of the hundreds of personal injury cases pending in

---

[6] Although there is no specific rule in the District Court, the D.C. Circuit Court Rules state that "[u]npublished dispositions entered before January 1, 2002 . . . are not to be cited as precedent." D.C. Circuit Rule 32.1(b)(1)(A).  The D.C. Circuit, therefore,  would prohibit plaintiffs' use of *Taylor v. National Consumer Cooperative*, 1996 WL 525322 (D.D.C. 1996), cited by plaintiffs at page 6 of their Opposition and *Kuwait Airways Corp. v. American Sec. Bank, N.A.,* 1987 WL 11994 (D.D.C. 1987), cited by plaintiffs at page 7 of their Opposition as precedent.  D.C. Circuit Rule 32.1(b)(1) and Federal Rule of Appellate Procedure 32.1 acknowledge that "[w]hile unpublished dispositions entered on or after January 1, 2002 may be cited to the court in accordance with FRAP 32.1 and Circuit Rule 32.1(b)(1) [*e.g., Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005), cited by plaintiffs at page 3 of their Opposition], a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Circuit Rule 36(c)(2).  Whether unpublished district court cases are similarly treated by the district court is unknown, but it is relevant whether a case is unpublished versus published and it would seem that a case's unpublished status should be indicated in a brief.  Regardless of the precedential value the Court gives these cases, they support defendants' position.

the MDL, the MDL class action, and many state court cases," *id.*, and lastly, only **after** all of the other depositions had been taken. *Id.* at 537. (Emphasis added throughout). Significantly, the *Bridgeport/Firestone* court allowed the chairman of the board to be deposed because – unlike here – the case **was not a personal injury case:**

> Nearly every decision Ford has cited involves an individual personal injury,
> employment or contract dispute with which the "apex" official had no
> personal involvement . . [listing cases] [7] . . Generally, the courts' rationale for
> barring those depositions absent the required showing is that high level executives
> are vulnerable to numerous, repetitive, harassing, and abusive depositions, and
> therefore need some measure of protection from the courts. **We are unwilling,**
> **however, to require rigid adherence to the burdens imposed <u>under the facts</u>**
> **<u>of those cases, because the circumstances here are quite different</u> and the**
> **rationale for the severe limitations on the right to depose a high level**
> **executive is not compelling in this case.**

*Id.* at 536 (emphasis added). In other words, the rationale for prohibiting the depositions of "apex" witnesses is sound for personal injury cases, like this one, but does not apply to consolidated MDL litigation, particularly where the "apex" individual has stated he has personal knowledge of and involvement in the precise allegations of the litigation and the other depositions for the case have been taken.

Similarly, plaintiffs' other citations[8] support defendants' position that absent plaintiffs coming forward with threshold evidence that the high-level individual proposed for deposition has personal knowledge of – described by several courts as "unique knowledge" – and

---

[7] "*See, e.g., Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995 (individual employment case); *Salter v. Upjohn Co.*, (5th Cir. 1979) (individual negligence case); *Baine v. General Motors*, 141 F.R.D. 332 (M.D. Ala. 1991) (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.) 1985) (individual personal injury case)." *Id.*

[8] *Peskoff v. Faber*, 230 F.R.D. 25 (D.D.C. 2005) is simply irrelevant. It does not even address the issue of deposing high-level employees, but the deposition of a third party who was a shareholder – personally involved in the events serving the basis for plaintiff's claim – as to whether a lawsuit had been threatened, which was one of the claims of fraud in the inducement contained in plaintiff's complaint. *Id.* at 31.

involvement in the specific factual allegations of the litigation, the deposition is not warranted.

*Taylor v. National Consumer Cooperative Bank*, 1996 WL 525322 *1 (D.D.C. 1996)

(unreported), Plts' Opp. at 6, allowed the deposition after the plaintiff "**ha[d] made a sufficient**

**threshold showing to indicate that Synder does have unique knowledge with regards to**

**certain relevant events**." (The "apex" employee had personal conversations with the plaintiff

about her employment in an employment discrimination lawsuit; emphasis added). In *Salter*,

593 F.2d at 651, the appellate court **affirmed** the district court's **issuance of a protective order,**

**vacating the notice of deposition for the corporate president, requiring that plaintiffs first**

**depose other employees who indicated they had more knowledge, and renew their**

**application to depose the president if it was still needed after those depositions.**

   *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D.92, cited by plaintiffs on

page 7 of their Opposition, is even **more supportive of defendants' position.**  There, a memo

reflected that the proposed deponent had personal involvement in the determination of issuing

the conditional termination of plaintiff's distributorship, the crux of the case being the lawfulness

of that termination. *Id.* at 93-94. "Here, **Bevis does have personal knowledge** of the facts

relevant to the lawsuit.  **He is the individual who personally approved** the issuance of the

conditional notice of termination." *Id.* at 98 (emphasis added).  Even after this showing of

personal knowledge and involvement, the *Rolscreen* court required plaintiff to first depose lower

employees who had greater knowledge of the case's specific factual allegations. *Id.* at 98-99.

   Plaintiffs misread *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass.

1987), cited at page 7 of their Opposition.  Again, supportive of defendants' position, *Travelers*

*Rental Co.* stands for the proposition that **only after a plaintiff comes forward with evidence**

**showing that the proposed high-level executive deponents were personally involved in the**

**matters of the case**, they cannot resist a deposition by stating that they do not "remember" their involvement. Their claim of no-memory of previously demonstrated personal knowledge and involvement is what the plaintiff is entitled to test in a deposition, once the threshold showing of personal involvement has been made. "**Considering that Travelers has demonstrated these individuals were personally involved in matters relevant to this case, it would be extremely rare that an asserted failure of recollection would be sufficient to entitle the deponent to an order quashing the deposition.**" *Id.* at 143 (emphasis added). Plaintiffs, here, cannot "test" a claim of no-recall of personal knowledge and involvement until they first show the existence of that personal knowledge and involvement.

Lastly, *Kuwait Airways Corp. v. American Security Bank*, 1987 WL 11994 (D.D.C. 1987) (unreported), also supports defendants' position. In *Kuwait*, plaintiff produced testimony that the proposed high-level deponent "had a close" relationship with the individual who was alleged to have stolen funds, which was the subject of the lawsuit. *Id.* at *1.

In short, plaintiffs' citations show that plaintiffs must first come forward with threshold evidence to demonstrate that the former high-level executives proposed deponents have personal knowledge and involvement in Dr. Watson's use of Histoacryl and Lipiodol, prior to plaintiffs being allowed to "test" that knowledge in a deposition. *Travelers, supra.*

Precedent holds that plaintiffs may only take the depositions of high-level employees once they make a preliminary showing of personal knowledge of and involvement by the proposed deponents in the specific events alleged in the litigation. *Baine*, 141 F.R.D. at 333-35 (denying plaintiff's request to depose corporate vice president who lacked unique personal knowledge of the issues); prior to a deposition being allowed and only after plaintiffs exhaust less expensive and burdensome discovery methods. *See Community Federal Savings and Loan*

*Ass'n v. Federal Home Loan Bank Board*, 96 F.R.D. 619 (D.D.C. 1983); *Mulvey*, 106 F.R.D.

364;[9] *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067 (N.D. Cal. 2007); *Patterson*

*v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002); *Berning v. UAW Local 2209*, 2007 WL

1099532 (N.D. Ind. 2007) (listing cases); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518 (N.D.

Okla. 2003) (When a party seeks to depose high-level decision makers who are removed from

the daily subjects at issue in the litigation, the party must first demonstrate that the proposed

deponent has "unique personal knowledge" of facts relevant to the dispute.).

## II.    The Federal Rules Provide Protection When Proposed Discovery Violates Them.

The Federal Rules of Civil Procedure contemplate that the

> frequency or extent of use of the discovery methods otherwise permitted under
> these rules and by any local rule shall be limited by the court if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or is
> obtainable from some other source that is more convenient, less burdensome, or
> less expensive; (ii) the party seeking discovery has had ample opportunity by
> discovery in the action to obtain the information sought; or (iii) the burden or
> expense of the proposed discovery outweighs its likely benefit, taking into
> account the needs of the case, the amount in controversy, the parties' resources,
> the importance of the issues at stake in the litigation, and the importance of the
> proposed discovery in resolving the issues. The court may act upon its own
> initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2). Thus, the statement that "how Plaintiffs spend their allotted depositions

should not be the subject of Defendants' commentary" is demonstrably false. Plts' Opp. at 3. As

Plaintiffs state their intention to increase the costs of litigation by using the most expensive

discovery tool – depositions – and not availing themselves of less expensive discovery methods

(such as interrogatories or one 30(b)(6) deposition), as well as escalating overall litigation costs

---

[9] *Mulvey* is misread by plaintiffs at page 5 of their Opposition at 5. The *Mulvey* court
specifically required plaintiffs initially to use interrogatories because plaintiffs made no showing
that Iaccoca had any specific knowledge, but rather – like here – just pointed to "general
damaging statements." *Id.* at 366. The court ruled that "he is singularly unique and important
individual who can be easily subjected to unwarranted harassment and abuse. He has a right to
be protected." *Id.*

by taking more than the presumptive ten depositions, to which they agreed, defendants must turn

to the Court for aid.[10]

   If duplicative depositions are allowed without the required showing of personal

knowledge and involvement and exhaustion of alternative methods, such that plaintiffs are

allowed to take more than ten depositions (which, having left no slots for the depositions of

experts and/or any fact witnesses addressing causation, additional depositions will be difficult to

forbid), defendants will have increased litigation costs forced on them. Ten depositions are

---

[10] Plaintiffs misrepresent the April 11, 2007 Scheduling Conference hearing transcript. First, the Court asked whether there was an agreement as to the number of depositions – whether to take **more or less** than the ten depositions allotted by the Federal Rules – to which plaintiffs answered "no," 4/11/07 Hearing Transcript at 18:19-21, since there was no agreement (in fact, it had never been raised for discussion) as to whether more than ten depositions should be taken in this medical malpractice case. "One aim of this revision [30(a)(2)(A)] is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case **without agreement of the other parties.**" Advisory Committee Notes, 1993 Amendments regarding subsection 30(a)(2)(A) (emphasis added). The Court, therefore, **without objection from plaintiffs**, applied the ten deposition limitation set forth in the Federal Rules. Moreover, the Court stated that staying with the Federal Rules was generally the best course ("I have to say, my inclination is that everybody is going to be better protected later if we follow the provisions of the Federal Rules . . ."; "[I]f we're going to rely on the stringency of the Federal Rules for how we're going to deal with experts, **we're also going to rely on the stringency of the Federal Rules for how depositions are conducted.**"). *Id.* at 5:2-5 and 30:10-13 (emphasis added). In representing that the lengthy quote on page 10 of plaintiffs' Opposition refers to the number of depositions, plaintiffs omit the Court's statement that elicited the response, which demonstrates that plaintiffs' characterization of it is incorrect: "THE COURT: **We'll have deadlines. The question is what are the most reasonable deadlines.** Now you're saying, and I think this is the first time that I have heard it, that you're the only ones that are going to take fact discovery and the only discovery they're going to take is expert discovery. MR. NEWMAN: Then that was misspoken. **I just simply meant that this** [the deadlines] **is going to be an issue. . . . The only thing I was getting at was that we're under the gun to do those things in a reasonable time and get it over with.**" *Id.* at 18:3-9, 19:4-6 (emphasis added). To represent that this passage has anything to do with anything other than length of the discovery period is simply revisionist history. *See* Scheduling Conference Transcript (attached hereto as Ex. 3). Plaintiffs' agreement to limit themselves to the Fed. R. Civ. P. 30(a)(2)(A) limit of ten depositions is further shown by the fact that they signed and jointly submitted the Joint Local Rule 16.3 Report, in which they represented that "[a]t this time, the parties have no matters appropriate inclusion in the scheduling order" – matters such as additional depositions. *See* Joint Local Rule 16.3 Report at 8 (attached hereto as Ex. 4). Moreover, plaintiffs did not raise the issue of additional depositions at the Hearing itself.

presumed. As the court noted in *Mazur v. Lampert*, 2007 U.S. Dist. LEXIS 13934 at *6-7 (S.D. Fla. 2007):

> the fact that this case involves a complex securities fraud action does not, by itself, require that the parties be given a slew of additional depositions as contemplated in the Motion. Clearly, the drafters of the rule understood that many of the cases filed in Federal Court that would ever require more than ten depositions would be securities fraud actions. Yet, the drafters of the rule did not exempt such actions from the force of the rule. **Thus, absent a proper showing of necessity and good cause, this Motion to exceed the customary and rule-based limit of depositions in a case cannot be granted.**

(Emphasis added). "It is important for all parties to understand that prior to taking any deposition they must always assess whether or not a deposition of that witness is truly necessary, based in part upon the time and expense that even a single deposition incurs for all parties involved. Parties must also take into account the standard ten deposition limit in making that assessment." *Id.* at 7. "Rule 30(a)(2)(A) is intended to control discovery, with its attendant costs and potential for delay, by establishing a default limit on the number of depositions." *Barrow v. Greenville Independent School District*, 202 F.R.D. 480, 483 (N.D. Tex. 2001). As in *Barrow*, if plaintiffs here are required to forgo depositions where they fail to make the required threshold and prohibited from taking duplicative depositions, the presumptive limit of ten depositions would be sufficient – "[h]ad [they] opted not to take other depositions, [they] could have taken the ones in question [experts, fact witnesses regarding causation] without first obtaining leave of court [to take more than ten depositions]." *Id.* at 482. Defendants seek to prevent the escalation of litigation costs by having plaintiffs abide by the discovery rules, such that the presumptive limit of ten depositions, to which plaintiffs implicitly agreed by not requesting additional depositions or objecting to the ten deposition limit, is followed.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request this Court to enter a protective order, prohibiting the initial duplicative, irrelevant depositions of former presidents, high-up executives, officers, and Board Members, unless and until plaintiffs make the required showing and requiring preliminary interrogatories to current employees to ascertain whether they possess any personal knowledge and involvement, prior to requiring both of them to sit for a deposition, and whether two depositions, as opposed to one, should take place.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  May 9, 2007

By:  _Megan E Hills_

Megan E. Hills (D.C. Bar #437340)
Nicolas Muzin (D.C. Bar # 500106)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
nmuzin@wc.com

11

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website on the 9th day of May, 2007 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Newman & McIntosh
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel

Megan E. Wills

# EXHIBIT 1

Case 1:05-cv-02086-PLF-AK    Document 55-6    Filed 08/07/2007    Page 14 of 54
Case 1:05-cv-02086-PLF-AK    Document 45-2    Filed 05/09/2007    Page 2 of 3
Case 1:05-cv-02086-PLF-AK    Document 40    Filed 04/24/2007    Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| Felice I. Iacangelo and Cicily Iacangelo, | : | |
| As Guardian of the Person and Property of | : | |
| KARYN A. KERRIS, | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| GEORGETOWN UNIV. HOSPITAL, *et al.* | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFFS' (DEPOSITION) WITNESS LIST[1]

Pursuant to this Court's request on April 23, 2007, during a conference call, Plaintiffs hereby submit the following list of individuals to be deposed:

1. Kenneth D. Bloem, Chief Executive Officer for the Medical Center

2. Paul Katz, Chief Operating Officer for the Medical Center

3. Leo J. O'Donovan, President, Georgetown University

4. Charles M. Cawley, Member of the Board of Directors (or the then Chairman of the Board)

5. J. Willard Marriott, Jr., Member of the Board of Directors

6. Henry Yeager, M.D., Member of the Institutional Review Board, Committee A

7. Dieter Schellinger, M.D., Member of the Institutional Review Board, Committee B

8. (Vance E. Watson, M.D., deposition to be reconvened)

---

[1] This does not, of course, include the depositions of Defendants' experts, since their identities are unknown at this time.

Case 1:05-cv-02086-PLF-AK    Document 55-6    Filed 08/07/2007    Page 15 of 54
Case 1:05-cv-02086-PLF-AK    Document 45-2    Filed 05/09/2007    Page 3 of 3
Case 1:05-cv-02086-PLF-AK    Document 40    Filed 04/24/2007    Page 2 of 2

Respectfully submitted,

/s/ Anthony G. Newman
Newman, McIntosh & Hennessey LLP
Anthony G. Newman, Esquire No. 384809
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814
(301) 654-3400
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of Columbia

5.4(d), I hereby certify that a copy of the foregoing Witness List was served via electronic filing

on the Court's CM/ECF website on April 24, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

/s/ Anthony G. Newman
Anthony G Newman

# EXHIBIT 2

Case 1:05-cv-02086-PLF-AK    Document 55-6    Filed 08/07/2007    Page 17 of 54
04/16/2007 1:03 Case 1:05-cv-02086-PLF-AK    Document 45-3    Filed 05/09/2007    Page 2 of 7
NEWMAN MCINTOSH & HE    PAGE   01

# NEWMAN MCINTOSH & HENNESSEY, LLP

Anthony G. Newman (DC, MD)
Ernest W. McIntosh (DC, MD, MI)
Joseph A. Hennessey (DC, MD)
Wendy Wyeth (MD)

THE AIR RIGHTS BUILDING
7315 Wisconsin Avenue, 700E
Bethesda, Maryland 20814

Main: (301) 654-3400
Fax: (301) 907-2975
www.nmhlaw.com

# Fax Cover Sheet

TO:   Megan Hills          FROM:    Anthony Newman

FAX: (202) 434-5029        DATE:    4/15/07

# PAGES (incl. cover)   3

RE:   Deposition date request

## Confidential Communication

The information contained in the facsimile is proprietary and confidential and is intended only for the
addressee(s) named above. If you have received this communication in error, please notify us immediately
at (301) 654-3400 and return the communication by mail to the above address.

Case 1:05-cv-02086-PLF-AK   Document 55-6   Filed 08/07/2007   Page 18 of 54
04/16/2007  16:28  3013872375        NEWMAN MCINTOSH & HEN    PAGE 03/07
Case 1:05-cv-02086-PLF-AK   Document 45-3   Filed 05/09/2007   Page 3 of 7

# NEWMAN MCINTOSH & HENNESSEY, LLP

Anthony G. Newman (DC, MD)
Ernest W. McIntosh (DC, MD, MI)
Joseph A. Hennessey (DC, MD)
Wendy Wyeth (MD)

THE AIR RIGHTS BUILDING
7315 Wisconsin Avenue, 700E
Bethesda, Maryland 20814

Main: (301) 654-3400
Fax: (301) 907-2975
www.nmhlaw.com

April 16, 2007

*VIA FAX & US MAIL*
Megan E. Hills, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, D.C. 20005

*Re: Karyn Kerris*

Dear Ms. Hills,

Plaintiffs request deposition dates for the following individuals:

### A. Officers of the Medical Center (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 1. Kenneth D. Bloem | Chief Executive Officer for the Medical Center |
| 2. Paul Katz | Chief Operating Officer for the Medical Center |
| 3. Sam Wiesel, M.D. | Executive Vice President for Health Sciences |
| 4. Michael Cole | Vice President of the Medical Center |

### B. Officers of Georgetown University (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 1. Leo J. O'Donovan | President, Georgetown University |
| 2. John J. DeGioia, M.D | Senior Vice President, Georgetown University |
| 3. Joseph G. Verbalis, M.D. | Georgetown University's CRC |

### C. Members of the Board of Directors (at the relevant times):

| | |
|---|---|
| 1. Charles M. Cawley | 6. Leslie H. Jacobson |
| 2. James V. Kimsey | 7. Philip A. Marineau |
| 3. John J. Faith, IV | 8. J. Willard Marriott, Jr. |
| 4. Judge Arthur J. Gajarsa | 9. Frank L. Salizzoni |
| 5. James F. Higgins | 10. Stephen Wolf |

Case 1:05-cv-02086-PLF-AK    Document 55-6    Filed 08/07/2007    Page 19 of 54
Case 1:05-cv-02086-PLF-AK    Document 45-3    Filed 05/09/2007    Page 4 of 7
04/16/2007  16:18    301907Z975    NEWMAN  MCINNES    PAGE 03

Megan E. Hills, Esq.
April 16, 2007
Page 2

**D. Members of the Institutional Review Board** (at the relevant times):

**Committee A**
1. Mary Young, M.D.
2. Margaret Rodan Sc.D
3. Henry Yeager, M.D.

**Committee B**
4. Harry G. Preuss, M.D.
5. Leonard Chiazze, Jr., M.D.
6. Jeanne Meck, Ph.D.
7. Dieter Schellinger, M.D.
8. Sorell L. Schwartz, M.D.

I stand ready to take their depositions as soon as possible.

Sincerely,

Anthony G. Newman

AGN/bms

# NEWMAN MCINTOSH & HENNESSEY, LLP

| | | |
|---|---|---|
| Anthony G. Newman (DC, MD) | THE AIR RIGHTS BUILDING | Main: (301) 654-3400 |
| Ernest W. McIntosh (DC, MD, MI) | 7315 Wisconsin Avenue, 700E | Fax: (301) 907-2975 |
| Joseph A. Hennessey (DC, MD) | Bethesda, Maryland 20814 | www.nmhlaw.com |
| Wendy Wyeth (MD) | | |

## Fax Cover Sheet

TO:  Megan Hills          FROM:     Anthony Newman

FAX: (202) 434-5029          DATE:     4/19/0

# PAGES (incl. cover)   3

RE:   Depositions

# NEWMAN, McIntosh & Hennessey, LLP

ANTHONY G. NEWMAN (DC, MD)
ERNEST W. McINTOSH (DC, MD, MI)
JOSEPH A. HENNESSEY (DC, MD)

THE AIR RIGHTS BUILDING
7315 WISCONSIN AVE, SUITE 700 EAST TOWER
BETHESDA, MARYLAND 20814

(301) 654-3400 MAIN
(301) 907-2975 FAX
WWW.NMHLAW.COM

April 19, 2007

*VIA FAX & US MAIL*
Megan E. Hills, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, D.C. 20005

*Re: Karyn Kerris*

Dear Ms. Hills,

Pursuant to your request Plaintiffs will start discovery by deposing the individuals listed below beginning with Kenneth D. Bloem.

## A. Officers of the Medical Center (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 1. Kenneth D. Bloem | Chief Executive Officer for the Medical Center |
| 2. Paul Katz | Chief Operating Officer for the Medical Center |

## B. Officers of Georgetown University (at the relevant times):

| Name | Title (at the relevant times) |
|---|---|
| 3. John J. DeGioia, M.D | Senior Vice President, Georgetown University |

## C. Members of the Board of Directors (at the relevant times):

4. Charles M. Cawley
5. J. Willard Marriott, Jr.
6. Judge Arthur J. Gajarsa

Case 1:05-cv-02086-PLF-AK    Document 55-6    Filed 08/07/2007    Page 22 of 54
Case 1:05-cv-02086-PLF-AK    Document 45-3    Filed 05/09/2007    Page 7 of 7
04/19/2007  15:53   3015072375                    KORAN MOTIONS                      03

Megan E. Hills, Esq.
April 19, 2007
Page 2


**D. Members of the Institutional Review Board** (at the relevant times):
**Committee A**                     **Committee B**
7. Henry Yeager, M.D. .             8. Dieter Schellinger, M.D.


    Based on your letter it appears that defense will not stipulate to any additional depositions, thus Plaintiffs will be forced to file a Rule 30(a)(2)(A) motion in order to complete discovery.   To that end this letter will serve as Plaintiffs' good faith attempt to reach an agreement under Rule 29,  and unless I hear otherwise, the motion will be filed.

    Finally it should be noted that it was not Plaintiffs' intent to involve  Magistrate Kay oversee every deposition.


Sincerely,


Anthony G. Newman


AGN/bms

# EXHIBIT 3

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2
    FELICE I. IACANGELO, et al,      . Docket No. CA 05-2086 (PLF)
 3                                   .
         Plaintiff,                  .
 4                                   . Washington, D.C.
              v.                     . April 11, 2007
 5                                   . 9:45 a.m.
    GEORGETOWN UNIVERSITY,           .
 6  trading as Georgetown University .
    Hospital, et al,                 .
 7                                   .
         Defendant.                  .
 8  . . . . . . . . . . . . . . . .  .

 9              TRANSCRIPT OF STATUS CONFERENCE
             BEFORE THE HONORABLE PAUL L. FRIEDMAN
10                UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Plaintiff:       Newman, McIntosh and Hennessey
                             By: Anthony G. Newman, Esquire
13                           7315 Wisconsin Avenue
                             Bethesda, Maryland 20814
14                           301.654.3400

15                           Joseph, Greenwald and Laaker, PA
                             By:  Andrew E. Greenwald, Esquire
16                           6404 Ivy Lane
                             Greenbelt, Maryland 20770
17                           301.220.2200

18  For the Defendant:       Williams and Connolly, LLP
                             By: Megan E. Hills, Esquire
19                                Nicolas D. Muzin, Esquire
                             725 Twelfth Street, Northwest
20                           Washington, D.C. 20005
                             202.434.5393
21
    Court Reporter:          Linda L. Russo, RPR
22                           Official Court Reporter
                             Room 6403, U.S. Courthouse
23                           Washington, D.C. 20001
                             202.354.3244
24
    Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription
```

5

1   affidavits and everything else that's already been filed.  It's

2   a little rare that they have already done those.

3        THE COURT:  I have to say, my inclination is that

4   everybody is going to be better protected later if we follow

5   the provisions of the Federal Rules and provide reports in

6   conformity with the Federal Rules, and everybody knows what

7   targets they're shooting at.

8        MR. NEWMAN:   That was our position.  It's not a hard

9   fast situation.  We'll certainly do it.

10        THE COURT:   The other major disagreement I think is,

11   both of you I think in your proposed schedule would have a --

12   maybe not.   I guess the defendant's proposed schedule is, fact

13   discovery would end on a certain date, then the expert reports

14   would happen, then there would be a later date for the closing

15   of all discovery, including the expert reports.   And then

16   there would be dispositive motions.  Whereas the plaintiffs

17   would prefer just to set a date before which there would be

18   expert disclosures, and all discovery would end.   I don't know

19   whether that matters from your strategic or tactical

20   perspective, and it also prolongs the period somewhat.

21        MS. HILLS:  Your Honor, if I may.  The issue with

22   having fact discovery and then reports is that reports and

23   expert testimony become somewhat meaningless when fact

24   discovery is subsequent to experts.   For example, if an expert

25   gives his report June 1st and fact discovery closes September

18

1    soon as it needs to be, but if we don't have any deadlines

2    what's happened so far in this case is --

3            THE COURT:    We'll have deadlines.  The question is

4    what are the most reasonable deadlines.  Now you're saying, and

5    I think this is the first time that I have heard it, that

6    you're the only ones that are going to take fact discovery, and

7    the only discovery they're going to take is expert discovery.

8            MR. NEWMAN:    Then that was misspoken.  I just simply

9    meant that it is going to be an issue.  I doubt that there is

10   many more people that they will depose except for treaters and

11   our plaintiff.  We have people such as the administration of

12   Georgetown, people that were on the boards, the investigation

13   review committees, a lot of discovery to be done, meaning we're

14   going to be a driving force on that and have to get that done

15   in a reasonable time.  I have been there before with these

16   kinds of issues, deposing people on boards, and it can drag out

17   forever by saying they're not available here, we need some

18   other time, and so on.

19           THE COURT:    Do you all have an agreement on the

20   number of depositions?

21           MR. NEWMAN:    We do not have an agreement, no.

22           THE COURT:    There's something in here that says that

23   there shouldn't be any limits on discovery other than those

24   present in the Federal Rules.  Now, the Federal Rules does have

25   a limit on the number of depositions.  The Federal Rules has a

Linda L. Russo, RPR
Official Court Reporter

19

1    limit on one day or seven hours per deposition.

2         MR. NEWMAN:   I think there's no problem in arranging

3    some kind of limitation, for example, how long depositions are

4    going to go so we can do a number at a certain time.   The only

5    thing I was getting at was that we're under the gun to do those

6    things in a reasonable time period and get it over with.   And

7    then they will depose our experts and perhaps the treating

8    doctors.

9         THE COURT:  Her proposal is that, okay, you're going

10   to exchange, within 30 days from today you're going to have an

11   exchange of initial disclosures to the extent --

12        MR. NEWMAN:   That we both agreed on.

13        THE COURT:  So her proposal is then that we go until

14   the end of September for fact discovery.  That's five months, a

15   little over five months.

16        MS. HILLS:  Your Honor, if I may, I think August is

17   pretty much a wash in terms of both doctors and board members,

18   and if he intends to depose members of the administration of

19   Georgetown University, school is out, which is why I was trying

20   to give us the full time frame of really the four months from

21   May 11th to September to get this fact discovery done.   It

22   does appear that we have a total of three claimants in the

23   case, so that there's three fact discoveries.  Ms. Harris has

24   at least -- you know, doctors in addition to the experts that

25   they, I assume that they're going to identify a causation

Linda L. Russo, RPR
Official Court Reporter

30

1   bring them promptly to Judge Kay so we don't lose these dates.

2   I want you to try to solve them yourself, but if that doesn't

3   work, I don't want Judge Kay or me to be told that the schedule

4   is slipping because we spent a month trying to solve the

5   problem before bringing it to you.   Spend a few days trying to

6   solve the problem before bringing it to Judge Kay, but bring

7   him as few as you have to.

8           MR. NEWMAN:   Hopefully so.

9           THE COURT:   I don't know whether there have been

10  speaking objections or not, but if we're going to rely on the

11  stringency of the Federal Rules for how we're going to deal

12  with experts, we're also going to rely on the stringency of the

13  Federal Rules for how depositions are conducted.

14          MS. HILLS:   One of the items that I would like issued

15  in the order is when someone notices a deposition and intends

16  to examine a witness, similar to court, they bring a copy of

17  that document to give to the witness, and the Supreme Court

18  says simultaneously it should be given to the witness' counsel.

19  And that is the duty of the examiner, not the duty -- opposing

20  counsel doesn't jump up and give something to a witness on the

21  witness stand.   And that seems very basic.

22          I have never actually run into having a problem with

23  that, but apparently at our last deposition there were no extra

24  copies of documents that purportedly the witness was asked to

25  comment on.   So I'd like that as an order.

Linda L. Russo, RPR
Official Court Reporter

34

1　much easier if we just tender an order that said when the

2　witness is shown documents, just like in court, the witness is

3　provided with that document by the examiner, and to counsel.

4　　　　　THE COURT:    All right.    Thank you.

5　　　(Proceedings concluded.)

6

7　　　　　　　　　　CERTIFICATE

8　　　　I, LINDA L. RUSSO, Official Court Reporter, certify

9　that the foregoing pages are a correct transcript from the

10　record of proceedings in the above-entitled matter.

11

12

13

14　Linda L. Russo, )RPR
　　Virginia CCR No: 0313102

15

16

17

18

19

20

21

22

23

24

25

Linda L. Russo, RPR
Official Court Reporter

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felice I. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>        Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>        Defendants. | Civil Action No. 1:05CV02086 (PLF)<br><br>Judge Paul L. Friedman<br><br>Magistrate Judge Alan Kay |

### JOINT LOCAL CIVIL RULE 16.3 REPORT

Pursuant to Local Civil Rule 16.3 and Federal Rule of Civil Procedure 26(f), the attorneys for Plaintiffs Felice I. Iacangelo and Cicily Iacangelo (collectively, "Plaintiffs") and Defendants Georgetown University and Vance E. Watson, M.D., (collectively, "Defendants") conferred on April 2, 2007, and hereby submit the following succinct statement of all agreements reached and positions taken by the parties on matters about which there was disagreement.

**(1)    Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

Defendants believe this case may be disposed of by a motion for summary judgment. Section (8) reflects a proposed schedule for such a motion and discovery.

Plaintiffs do not believe this case will likely be disposed of by a dispositive motion.

**(2)    The date by which any other parties shall be joined or the pleadings amended; and whether some or all of the factual and legal issues can be agreed upon and narrowed.**

At this juncture, Defendants believe that no more parties should be joined, nor amendment of pleadings allowed. Plaintiffs' Complaint has already been amended once before. The subject matter of the litigation was over six and a half years old when Plaintiffs filed the first complaint. Plaintiffs began gathering records regarding the subject matter of this litigation in 2001, five years prior to the first complaint being filed. As of October 11, 2006 when Magistrate Judge Alan Kay's Report and Recommendation was filed, Plaintiffs were on notice both of the pleading requirements and the failings of the Amended Complaint, as specifically set out by Magistrate Judge Kay's Report and Recommendations. Plaintiffs chose to stand on the Amended Complaint in filing their Objections without submitting a proposed amendment to correct the pleading. The resources of the Court, the Defendants, and the judicial system have been expended to address the Amended Complaint as pled on which the Plaintiffs chose to stand. Defendants believe, therefore, that no amendments to the pleadings should be allowed.

Defendants believe that with the issues presented by the Amended Complaint set, the legal issues may be narrowed to:

1.    Given Ms. Kerris's medical conditions and presentation in August 1998 and the state of medicine in 1998-1999, was it a breach of the standard of care to attempt to treat her, *inter alia*, with embolization procedures using NBCA (Histoacryl®) in the November 1998 through March 3, 1999 time period?

2.    Given Ms. Kerris's medical conditions and presentation in August 1998 and the state of medicine in 1998-1999 and the undisputed fact that Plaintiffs have continued to obtain their medical care for Ms. Kerris at Georgetown University Hospital at least through 2005, a month prior to filing the first complaint, should punitive damages – required to be proved by clear and convincing evidence that defendants, *inter alia*, acted with

2

evil motive, actual malice, deliberate violence or oppression, or with the intent to injure and that the defendants' conduct itself was outrageous, grossly fraudulent be allowed to remain in the case?

3.     Given Ms. Kerris's medical conditions and presentation in August 1998 and the state of medicine in 1998-1999 and the undisputed fact that her underlying condition of arteriovenous malformation ("AVM") was symptomatic when she was first referred to Defendants, whether a reasonable person in her position would have sought treatment to prevent it from increasing and then whether her current medical condition results from the size of her AVM or from giving consent?

Plaintiffs disagree with Defendants' placement of the aforesaid arguments in this pleading in that the Rule 16.3 Report is not a proper forum for such. Furthermore, under the liberal pleading standards of Rule 15 of the Federal Rules Civil Procedure, plaintiffs are free to amend the Complaint. (See also n. 3 of the March 26, 2007, Memorandum Opinion wherein the Court stated that "Plaintiffs are free, of course, to move to amend their Complaint under the liberal pleading standards of Rule 15..."). In accordance with the March 26, 2007 Memorandum Opinion, plaintiffs are in the process of drafting a Motion to Amend the Amended Complaint regarding Count V, the express warranty claim, to reflect that said Count relates to the warranties made by Defendant Vance Watson, M.D. as to the potential outcomes of the procedures. It is also plaintiffs' position that any other amendment (i.e. an amendment regarding the particulars of Count VI, the fraud count) can be filed at any time prior to the close of discovery depending on the evidence that is uncovered. (See also n. 2 of the Memorandum Order stating that such matters "easily can be corrected.") As to the legal issues, it is plaintiffs' position that all said issues have already been narrowed by both Magistrate Kay and Judge Friedman and the remaining allegations set forth the issues to be tried.

(3)     **Whether this case should be assigned to a magistrate judge for all purposes, including trial.**

Defendants believe this case should not be assigned to a magistrate judge for purposes of trial.

Plaintiffs are agreeable to this case being assigned to either a magistrate judge or a judge for purposes of trial.

The parties defer to the Court on whether the case should be assigned to a magistrate judge for discovery purposes.

(4)     **Whether there is a realistic possibility of settling the case.**

On March 8, 2007, Defendants requested Plaintiffs provide them with a settlement demand as to what they believed Plaintiffs demanded for the settlement of this case, absent Plaintiffs' cost for caring for an individual with a progressive, degenerative disease. Plaintiffs' Prayers for Relief in their Amended Complaint as it currently stands requests $190 million in damages. To date, Plaintiffs have not provided Defendants with a settlement demand.

Plaintiffs believe that the possibility of settlement is unknown.

(5)     **Whether the case could benefit from the Court's alternative dispute resolution ("ADR") procedures or some other form of alternative dispute resolution, and, if so, which procedure should be used and whether discovery should be stayed or limited pending completion of the ADR.**

While Defendants believe that having a settlement demand prior to mediation would increase its chance for success, the parties believe that the Court's ADR procedures or some other form of alternative dispute resolution – such as a private mediator mutually selected by the parties – might benefit the case.

4

(6)     **Whether the case can be resolved by summary judgment or motion to dismiss; the dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision of the motions.**

Defendants believe that this case may be resolved by a motion for summary judgment.

Defendants submit a proposed schedule for such a motion in Section (8).

Plaintiffs believe that this case cannot be resolved by any dispositive motion.

(7)     **Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), Fed. R. Civ. P., and, if not, what, if any, changes should be made in the scope, form, or timing of those disclosures.**

The parties believe that the initial disclosures under Federal Rule of Civil Procedure

26(a)(1) should be made within thirty (30) days from the date of the initial Rule 26(f) conference

– on April 11, 2007.

(8)     **The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

Defendants do not believe at this time that it is necessary to impose any limits upon

discovery beyond those present in the Federal Rules of Civil Procedure.

Defendants suggest the following schedule:

| | | |
|---|---|---|
| ➢ | **April 11, 2007:** | Scheduling Conference |
| ➢ | **May 11, 2007:** | Federal Rule 26(a)(1) Disclosures Exchanged |
| ➢ | **September 28, 2007:** | Close of Fact Discovery |
| ➢ | **October 8, 2007:** | Deadline for Plaintiffs' Federal Rule 26(a)(2)(B) Expert Disclosure, as governed by Federal Rule 26(b)(4) |
| ➢ | **November 19, 2007:** | Deadline for Defendants' Federal Rule 26(a)(2)(B) Expert Disclosure, as governed by Federal Rule 26(b)(4) |

5

> **January 4, 2008:**           Close of All Discovery

> **February 4, 2008:**          Deadline for filing Dispositive Motions

> **February 25, 2008:**         Deadline for filing Oppositions to Dispositive Motions

> **March 10, 2008:**            Deadline for filing Replies for Dispositive Motions

> **April 7, 2008:**             Pretrial Conference (if necessary after disposition of motions)

Plaintiffs believe that prompt completion of discovery is mandatory given the nature and extent of the discovery disputes to date. Thus, Plaintiffs suggest the following deadlines:

> **April 11, 2007:**            Scheduling Conference

> **May 11, 2007:**              Federal Rule 26(a)(1) Disclosures Exchanged

> **May 31, 2007:**              Deadline for Plaintiffs' Federal Rule 26(a)(2)(B) Expert Disclosure without reports, as governed by Federal Rule 26(b)(4)

> **July 31, 2007:**             Deadline for Defendants' Federal Rule 26(a)(2)(B) Expert Disclosure without reports, as governed by Federal Rule 26(b)(4)

> **September 17, 2007:**        Close of All Discovery

> **September 24, 2007:**        Deadline for filing Dispositive Motions

> **October 8, 2007:**           Deadline for filing Oppositions to Dispositive Motions

> **October 11, 2007:**          Deadline for filing Replies for Dispositive Motions

> **October 31, 2007:**          Pretrial Conference

> **November 2007:**             Trial

**(9)    Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), Fed. R. Civ. P., shall be modified and whether and when depositions of experts should occur.**

6

Defendants believe that the exchange of expert witness reports and information as set forth in Federal Rule of Civil Procedure 26(a)(2) and the applicable rules of Federal Rule of Civil Procedure 26(b)(4) should apply to this case. Defendants have proposed a schedule for such reports and expert depositions in Section (8).

Plaintiffs believe that the expert witnesses should not be required to create reports merely for the purpose of exchanging the reports when their depositions are likely to be conducted.

**(10)    In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

This topic does not apply because this case is not a class action.

**(11)    Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

Defendants believe that the trial of this matter should be bifurcated, such that causation/liability is first submitted to a jury, and if proven, evidence heard on damages.

Defendants also request that when depositions occur, the examining attorney be required to provide sufficient copies of any document on which he or she wishes to question the witness at the deposition simultaneously to a) the witness and b) counsel for the witness at the time of the respective questions in the deposition.

Plaintiffs disagree with Defendants placement of the aforesaid arguments in this pleading in that the Rule 16.3 Report is not a proper forum for such. In addition, Plaintiffs believe that discovery should be conducted expeditiously given the fact that the Complaint was filed on October 24, 2005 and the second Amended Complaint was filed on February 14, 2006.

Plaintiffs also believe that the trial should not be bifurcated.

7

(12)    **The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

Defendants propose that the Pretrial Conference take place on April 7, 2008.

Plaintiffs propose that the Pretrial Conference on or before October 31, 2007.

(13)    **Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

Defendants prefer that a trial date be set at the Pretrial Conference, particularly as

occurrences in discovery may affect the trial date, such that setting a trial date prior to discovery

may unnecessarily burden the Court's docket.

Plaintiffs propose that a firm trial date must be set at the Scheduling Conference given

the present climate of discovery disputes and the delays in discovery that have already plagued

this litigation.

(14)    **Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

At this time, the parties have no other matters appropriate for inclusion in the scheduling

order.

Respectfully submitted,

_____/s/_____
WILLIAMS & CONNOLLY LLP
Megan E. Hills (D.C. Bar #437340)
Nicolas Muzin (D.C. Bar # 500106)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
nmuzin@wc.com

8

April 4, 2007

Attorneys for Defendants Georgetown University
and Vance E. Watson, M.D.


_____/s/_____

NEWMAN, MCINTOSH & HENNESSEY LLP
Anthony Newman, Esquire
Ernest McIntosh, Esquire

7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

and


_____/s/_____

GREENWALD AND LAAKE
Andrew Greenwald, Esquire

6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Attorneys for Plaintiffs Felice I. Iacangelo and Cicily
Iacangelo

```
 1   soon as it needs to be, but if we don't have any deadlines
 2   what's happened so far in this case is --
 3              THE COURT:   We'll have deadlines.   The question is
 4   what are the most reasonable deadlines.   Now you're saying, and
 5   I think this is the first time that I have heard it, that
 6   you're the only ones that are going to take fact discovery, and
 7   the only discovery they're going to take is expert discovery.
 8              MR. NEWMAN:   Then that was misspoken.   I just simply
 9   meant that it is going to be an issue.   I doubt that there is
10   many more people that they will depose except for treaters and
11   our plaintiff.   We have people such as the administration of
12   Georgetown, people that were on the boards, the investigation
13   review committees, a lot of discovery to be done, meaning we're
14   going to be a driving force on that and have to get that done
15   in a reasonable time.   I have been there before with these
16   kinds of issues, deposing people on boards, and it can drag out
17   forever by saying they're not available here, we need some
18   other time, and so on.
19              THE COURT:   Do you all have an agreement on the
20   number of depositions?
21              MR. NEWMAN:   We do not have an agreement, no.
22              THE COURT:   There's something in here that says that
23   there shouldn't be any limits on discovery other than those
24   present in the Federal Rules.   Now, the Federal Rules does have
25   a limit on the number of depositions.   The Federal Rules has a
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE I. IACANGELO,** *et al.* | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY,** *et al.* | : | |
| | : | |
| Defendants. | : | |

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR PROTECTIVE ORDER**

COME NOW, the Plaintiffs, by and through their undersigned counsel, and

oppose the Defendants' Motion for Protective Order, and in support thereof state as

follows:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Once again Plaintiffs have attempted to obtain valid discovery only to be

blockaded by a convoluted and baseless Motion, unnecessarily expending the resources

of both the Court and Plaintiffs.   This is the latest opus in a long line of Defendants'

obstructive behavior.   Defendants' continue to believe, quite incorrectly, that they have

not only a duty to defend this case, but a duty to act as a self-appointed master and dictate

how and when Plaintiffs should prosecute their case. Defendants have adopted positions

and filed unnecessary motions to impede discovery and to attempt to control each and

every aspect of this litigation so that little, but if any evidence, is even uncovered (the

Complaint was filed on October 24, 2005, to date no depositions have been completed).

Defendants believe that *they* dictate which liability issues will be tried, freely ignoring

1

the majority of the issues set forth in the Amended Complaint.  Defendants believe that *they* dictate the scope of a deposition, freely ignoring any or all of Plaintiffs' counsel's questions.  Now, Defendants argue that *they* will decide who should be deposed and how the depositions will be conducted.

The Motion demonstrates Defendants' belief and that *they* are also allowed to make unsworn, unsubstantiated factual assertions and assumptions which must be accepted blindly by the Court and Plaintiffs, in lieu of the depositions of witnesses who actually possess the information.   Not only do Plaintiffs reject Defendants assertions of "facts," Plaintiffs will establish that, as in the past, the assertions are false.

Plaintiffs' Complaint alleges multiple causes of action against both the individual Defendant Vance Watson, M.D.,  *and, in addition,* the institution of Georgetown University ("GU") t/a Georgetown University Hospital ("GUH").  Specifically with respect to GU, Plaintiffs allege that GU was complicit in the purchase, smuggling, and implantation of prohibited devices into Plaintiff Karyn Kerris as well as other patients.  As a result, Plaintiffs have an absolute right, and an absolute need to depose high-ranking members of GU and GUH, both past and present, to determine the scope and breadth of its involvement in this case.

In Plaintiffs' opinion the time has come, once and for all, for this Court to forcefully remind the Defendants that it is *the Court, and not Defendants*, who are in charge of this litigation.

## II.  LEGAL ANALYSIS

### A.    The Defendants Have Failed To Set Forth Good Cause To Be Entitled To A Protective Order.

Defendants devote the first section in their memorandum to their argument that the proposed depositions will cause them undue burden and expense. But the Defendants fail to set forth even a single fact supporting this contention. They claim, instead, that "[t]he central issue in this case is whether Dr. Watson breached the standard of care" and that therefore, only causation witnesses should be deposed. *See* Defs. Mot. at 3. But it is the Complaint, and not Defendants' proclamation, that determines the issues in this case. And indeed, the Complaint sets forth multiple causes of action against *both* the individual Defendant-doctor *and* GU.

Defendants go on to state that Plaintiffs "seek to use eight of their allotted depositions on individuals who can *only address* Plaintiffs' claim that Dr. Watson violated an IRB regulation." (emphasis added) *See* Defs. Mot. at 4. To put it bluntly, how Plaintiffs spend their allotted depositions should not be the subject of Defendants' commentary. As to the issue of the IRB (which is by no means the only issue to be addressed in the deposition, see section C below), it is clear that Plaintiffs have a right to depose the GU and GUH officials to find out what they knew or should have known about Dr. Watson's IRB violations.[1]

Finally, Defendants fail to set forth *how* the proposed depositions will result in undue burden and expense. A person's mere desire to avoid being deposed does not constitute undue burden or expense. In *Peskoff v. Faber*, 230 F.R.D. 25 (D. D.C. 2005),

---

[1] Defendants point out that "Plaintiffs have already submitted expert affidavits who opine that Dr. Watson violated IRB regulations." *See* Defs. Mot. at 5. Plaintiffs suggest that perhaps defense counsel should examine a potential conflict of interest here. D.C. Rule of Professional Conduct 1.7 sets forth the rule on conflicts of interest, which includes advancing two or more interests in litigation that may be adverse. Here, Dr. Watson's interests may well be adverse to GU's in terms of Dr. Watson's conduct and GU's involvement in that conduct. The rules further provide, in comment 14, which is titled "Special Considerations in Common Representation," that special care should be taken with regard to positions that cannot be reconciled in the litigation. Such may be the case here regarding Dr. Watson and GU.

Magistrate Judge Facciola set forth the "good cause" standard necessary to obtain a

protective order, stating:

> [T]he movant must articulate **specific facts** to support its request and **cannot rely on speculative or conclusory statements** ... <u>Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an [sic] 'extraordinary measures [ ] which should be resorted to only in rare occasions'</u> ... Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial."

*Id.* at 32 (emphasis added) (citations omitted).  There, Judge Facciola found that "[t]he

Defendant has made only general claims of potential harassment and embarrassment,

unsupported by evidence of the specific harm that will result from [his] compliance with

the subpoena." *Id.*  The Court, therefore, denied the motion for protective order.

Here, the Defendants' Motion should similarly be denied as the Defendants have

utterly failed to set forth any specific factual basis for their Motion other than their own

self-serving, conclusory statements about the alleged burden and expense that will result

from the proposed depositions.  Furthermore, the Defendants ignore the procedural

history of this case.  It has been the Defendants, and not the Plaintiffs, who have driven

up the costs of this litigation by filing frivolous motions.  Indeed, this Court has already

characterized one of Defendants' motions as "unwarranted and a misuse of judicial

resources."[2]

In addition, after the Court expressly permitted Plaintiffs to depose Dr. Watson,

*defense counsel* caused the filing of additional motions given her obstructive behavior in

the deposition with speaking objections and running commentary.  In this respect, it is

quite disingenuous for the same defense counsel to now argue that deposing key

_____

[2] *See* Memorandum Order dated Feb. 28, 2007 at p.3.

4

witnesses will cause undue burden and expense.  The Court should summarily reject this argument as wholly without merit.

### B.      Defendants Have No Right To Dictate How Plaintiffs Use Their Allotted Depositions.

Defendants' second argument is devoted to their unilateral determination as to how Plaintiffs should conduct discovery in this case.  Defendants then cite authority and invite the Court to believe that prior to deposing high-level executives, Plaintiffs must first propound interrogatories to those executives.  Thereafter, Plaintiffs presume that Defendants would argue that Plaintiffs should take the answers to those interrogatories, which would undoubtedly be prepared by defense counsel and be void of any valuable evidence, thereby concluding the inquiry.

The cases Defendants cite are inapposite.  In the *Mulvey* case, the court would not permit Lee Iacocca to be deposed since the purported reason was to inquire as to things written in his autobiography.  But the majority of courts have concluded that depositions of high-ranking corporate executives are often quite appropriate.  For example, in *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002), the court permitted the Plaintiffs to depose Henry Ford, explaining:

> Several factors lead us to the conclusion that Magistrate Judge Shields's order allowing the Plaintiffs to take Mr. Ford's deposition is neither contrary to law nor clearly erroneous. First, the Plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues. **Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the Defendant are relevant in the case.** *See Six West Retail Acquisition v. Sony Theatre Management,* 203 F.R.D. 98 (S.D.N.Y.2001); *Travelers Rental Co. v. Ford Motor Co.,* 116 F.R.D. 140 (D.Mass.1987). The evidence produced by the Plaintiffs persuades us that it is appropriate for Mr. Ford to be deposed at this juncture in this action. Although Ford has attempted to elevate Magistrate

5

Judge Shields's comment that she "suspects that Ford's assertion that Mr. Ford has no unique personal knowledge relevant to this litigation is accurate" to the level of a finding inconsistent with her conclusion, we do not read so much into that comment.

**Second, the cases upon which Ford relies for its position that courts impose a burden on the proponent of the deposition to demonstrate the "apex" official's unique personal knowledge stop well short of establishing a rigid rule applicable in all cases. Nearly every decision Ford has cited involves an individual personal injury, employment, or contract dispute with which the "apex" official had no personal involvement.** *See, e.g., Thomas v. IBM,* 48 F.3d 478 (10th Cir.1995)(individual employment case); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979)(individual negligence case); *Baine v. General Motors,* 141 F.R.D. 332 (M.D.Ala.1991)(individual personal injury case); *Mulvey v. Chrysler Corp.,* 106 F.R.D. 364 (D.R.I.1985) (individual personal injury case). Generally, the courts' rationale for barring those depositions absent the required showing is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts. **We are unwilling, however, to require rigid adherence to the burdens imposed under the facts of those cases, because the circumstances here are quite different and the rationale for the severe limitations on the right to depose a high level executive is not compelling in this case. First, conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this litigation.** *See Six West,* 203 F.R.D. at 105, and *Travelers,* 116 F.R.D. at 142-45 (both distinguishing on this basis several of the cases Ford has relied upon).

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535,

536 (S.D. Ind. 2002) (emphasis added).

Here, the proposed depositions are quite relevant to this case as there are multiple

counts against GU that relate to the knowledge of high-ranking GU and GUH officials

regarding Dr. Watson's conduct here. Moreover, this Court has previously recognized

that though "[s]everal cases arising out of state law have held that a high-ranking

corporate official may not be deposed absent a showing that such official has 'unique or

superior knowledge of discoverable information'. . . [i]t is doubtful, however, that such is

the rule in federal litigation." *Taylor v. National Consumer Cooperative*, 1996 WL

525322, *1 (D. D.C. 1996); *see also Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th

6

Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.");

*Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92 (S.D. Iowa 1992) (Plaintiff was entitled to test an executive's professed lack of knowledge by taking his deposition); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 143 (D. Mass. 1987) (where four corporate executives submitted "remember nothing" affidavits and sought to be protected from being deposed, court ordered that the Plaintiffs were entitled to test the executives' personal knowledge as well their memories and thus, depositions were allowed).

"In short, high ranking corporate executives are not automatically given special treatment which excuses them from being deposed." *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 1987 WL 11994, *4 (D. D.C. 1987). In this case, the subject deponents cannot rest on defense counsel's unsworn assertions that they do not possess knowledge of facts relevant to this case. Plaintiffs are entitled to test that knowledge, whatever it ends up being.

Finally, Defendants point out that "[o]nly a party to the litigation may be compelled to give testimony pursuant to a notice of deposition." *See* Defs. Mot. at 8. Defendants are certainly aware that such non-parties must be served with subpoenas absent defense counsel's agreement to accept service on their behalf. Plaintiffs, therefore, are uncertain as to why Defendants included this in their Motion as it is a non-issue.

**C.    The Depositions Will Involve All Viable Issues in the Amended Complaint.**

While Defendants argue that the only issues that could possibly be addressed in the proposed depositions are those involving the IRB, it is simply not so. The depositions will encompass a myriad of issues found in the Amended Complaint. These viable issues include: the failure to obtain an IDE (Count I ¶11(d)); negligent supervision, monitoring, ordering and invoicing (Count I ¶11(h); failure to provide proper informed consent (Count II); breach of fiduciary obligations (Count VIII); punitive damages (Count IX); and violations of 21 U.S.C. § 360(a)(II) (Count X), 21 U.S.C. § 331(a),(b)(c)(g) and (k) (Count XI), and 21 C.F.R. Ch. 1 § 812.20(a)(2) (Count XII). [3]

Indeed the oversimplification of the issues in this case is another classic example of Defendants' attempts to manipulate the Court. After Defendants make the *assumption* that the only issue to be address in deposition is the IRB claim, and the *assumption* that," "former, high-level individuals [have] no apparent connection to the issues implicated by this lawsuit, much less personal knowledge of the events involved in this action" they *conclude* that deposing them would "waste resources on duplicative, irrelevant depositions."[4] *See* Motion at 1. Then based on the aforesaid, Defendants argue that Federal Rule of Civil Procedures 26(b) and 26(c) mandate limiting this type of discovery. *Id.*

---

[3] Amazingly, Defendants persist in arguing that the only issues in the case involve negligence and/or IRB violations. Defendants are undaunted by the fact that the Court has denied their motions for summary judgment and to dismiss regarding: lack of informed consent, violations of multiple federal statues and punitive damages. Clearly, without a strong admonition by the Court, even if the requested depositions are scheduled, the defense will obstruct any questioning as to these other issues.

[4] This a bold assumption considering the fact that nowhere in the *Motion* or *Memorandum* does it state that the defense counsel ever spoke to any of the potential deponents.

Contrary to Defendants' simplistic view, it is clear that the board of directors and hospital administrators have a direct connection to the issues of breach of fiduciary, punitive damages and violations of the statutes. They funded, managed and controlled the daily operation of the Hospital and the procedures performed therein. Obviously, without their consent, approval, and permission Dr.Watson could have ordered, paid for, procured, stocked, or used the illegal devices he injected into patients. Moreover, Dr. Watson could not have continued to use these illegal devices for years, if these individuals had not ratified his actions. Even if one assumes, *arguendo*, that said individuals had no knowledge of these issues, their complete lack of knowledge itself sets forth important elements of proof. [5]

### III.    Plaintiffs' Counsel Never Agreed to Limit The Number of Depositions.

While the aforesaid is certainly dispositive, Plaintiffs must bring to the Court's attention another reason to question defense counsel's veracity. Defense counsel has twice represented to the Court, first by telephone and now in a pleading, that Plaintiffs should be limited to only ten (10) discovery depositions because Plaintiffs' counsel agreed to the limitation during the April 11, 2007 Scheduling Order Hearing. Defendants state that Plaintiffs are requesting more depositions, "notwithstanding Plaintiffs' prior representations that the limit of ten (10) depositions embodied in the Federal Rules would apply to the action." *See* Certificate of Good Faith at 1. This statement is absolutely false.

Fortunately, Defendants ordered a transcript of the Scheduling Order Hearing and later filed it to have it attached to their motion. Perhaps this done in a vain hope that the

---

[5] Moreover, Federal Rules of Civil Procedure 26(b) and 26(c) do not act as an automatic limit on discovery. The rules allow for discovery to be limited only, "by the Court" and only "if it determines" that a limitiation is required, Defendants false assertions provide no such basis.

Court might believe defense counsel's proffer, and forego reading the transcript. The relevant portion completely eviscerates Defendants' argument and leaves no room for any argument that Plaintiffs' counsel either actively or passively agreed to a limitation in the number of depositions.

> THE COURT: Do you all have an agreement on the number of depositions?
>
> MR. NEWMAN: We do not have an agreement, no.

(Transcript of April 11, 2007, p.18 l.19-21, Ex.).  Nothing could be clearer.  In response to the Court's question as to whether there had been an agreement between the parties as to the number of witnesses, Plaintiffs' counsel answered, unequivocally, "**no**." Even if defense counsel claims that, for some unknown reason, she was distracted or inattentive when Plaintiffs' counsel spoke these words, surely that would not excuse her total lack of recall of the following multiple statements made by plantiffs' counsel to the Court regarding the issue of number of the potential deponents:

> MR. NEWMAN:  Then that was misspoken.  I just simply meant that **this is going to be an issue.** I doubt that there is many more people that they will depose except for treaters and our Plaintiff.  We have people such as the **administration of Georgetown, people that were on the boards, the investigational review committees, a lot of discovery to be done,** meaning we're going to be the driving force on that and have to get that done in a reasonable time. I have been there before with these kinds of issues, **deposing people on boards,** and it can drag out forever by saying they're not available here, we need some other time, and so on.

(bold added) (Transcript of April 11, 2007, p.18, l 8-18, Ex. A).[6]   The only explanation

---

[6] Based on Defense counsel's false assertion that there had been an agreement by the parties, this Court inquired of Plaintiffs' counsel during the phone conference, if there had been such an agreement, to which Plaintiffs' counsel responded with, "no."

This Court then asked Plaintiffs' counsel why such a limitation was contained in paragraph 3 of the Scheduling Order,  to which Plaintiffs' counsel responded with, "I do not know."  Plaintiffs' counsel still remains at a loss to explain the rational behind the limitation present in the Order, except that may have been the Court's belief that the phrase, "unless agreed upon by  the parties" usually results in an agreement between the parties and obviates the need to formally modify the Order.

It is interesting to note that the defense seized on the inconsistency between Plaintiffs' counsel statements in open Court, and the Order itself, and then used the Order as evidence that there was an agreement between the parties.

for defense counsel's false statements to this Court is that they a deliberate attempt to

mislead the Court. It appears to be Defense counsel's belief that when representing her

clients, anything goes. In any event, it has always been, and continues to remain,

Plaintiffs' position that the members of the Board of Directors, the high ranking officials

in the administration as well as the hospital personnel, which includes members of the

Institutional Review Board, must be deposed for proper and complete discovery to be

conducted.

## IV.    CONCLUSION

Defendants' Motion should be denied because they have failed to set forth good

cause to warrant this Court's protection.

Respectfully submitted,

By:    /s/ Anthony Newman
Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400

/s/ Andrew E. Greenwald
Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200

*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of

Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via

electronic filing on the Court's CM/ECF website on May 2, 2007 to:


Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005


                /s/ Anthony Newman
                Anthony Newman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### *Civil Division*

FELICE I. IACANGELO, *et al.*            :
                                         :
                                         :     **Civil No. 1:05CV02086**
                   Plaintiffs,           :
                                         :     **Judge Paul L. Friedman**
vs.                                      :
                                         :     **Magistrate Judge Alan Kay**
**GEORGETOWN UNIVERSITY**, *et al.*      :
                                         :
                   Defendants.           :

---

## O R D E R

UPON CONSIDERATION of the Defendants' Motion for Protective Order, and

Plaintiffs' Opposition thereto, it is this _____ day of _____, 2007, by the

United States District Court for the District of Columbia,

**ORDERED**, that the Plantiffs' Opposition to Defendants' Motion for Protective

Order be and the same is hereby **DENIED IN ITS ENTIRETY**.


_____
The Honorable Alan Kay
Magistrate Judge
United States District Court for the District of Columbia

**Copies to**:

Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

Megan Hills, Esq.
Nicolas Muzin, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005