UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| Felice P. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Act. No. 1:05CV02086 (PLF) (AK)<br><br>Judge Paul L. Friedman<br><br>Magistrate Judge Alan Kay |

DEFENDANTS[1]' MEMORANDUM IN SUPPORT OF THE
MOTION FOR PROTECTIVE ORDER TO PROHIBIT IRRELEVANT
QUESTIONING ABOUT THE *GLAZER*[2] LAWSUIT IN DEPOSITIONS

Discovery does not allow wholesale, unrelated inquiry into areas irrelevant to the claims of a lawsuit, the purpose of which is only to harass and demean defendants. The Federal Rules of Civil Procedure do not allow discovery into unrelated matters just to see what later will be excluded. The prevention of such discovery abuse is the very purpose of Federal Rules of Civil Procedure[3] 26(b) and 26(c): "Parties may obtain discovery regarding any matter, not privileged, *that is relevant* to the claim or defense of any party." (emphasis added). Defendants, therefore, by and through undersigned attorneys, hereby move for a protective order, pursuant to,

---

[1] "Defendants" refers collectively to Defendant Georgetown University ("GU") and Defendant Vance E. Watson, M.D. ("Dr. Watson").

[2] The "*Glazer* lawsuit" means *Glazer v. Georgetown University*, CA No. 0000321-99 (D.C. Sup. Ct. 1999).

[3] Hereinafter, "Fed. R. Civ. P."

Fed. R. Civ. P. 26(b) and 26(c) to limit discovery in the above-captioned case to prohibit

plaintiffs[4] from questioning deponents about the *Glazer* lawsuit, a prior unrelated lawsuit that is

– and has already been found by this Court to be – **completely irrelevant** to the issues in this

litigation. *See* July 18, 2007 Magistrate Judge Memorandum Order at 2-3 ("7/18/07 MJ Mem.

Order"); attached hereto as Exhibit 1 ("Plaintiffs direct this Court's attention to the profit policy

and the resulting litigation [the *Glazer* lawsuit] without providing any evidence that there is a

link between such profit policy and the issues in the medical malpractice litigation.")

Because the prior *Glazer* lawsuit is demonstrably irrelevant to the claims and

defenses at issue in the current litigation, questions about it necessarily will cause defendants

undue burden, embarrassment, and annoyance.  Therefore, defendants submit that they have

shown good cause, justifying the entry of a protective order.  Fed. R. Civ. P. 26(c).

## BACKGROUND

Plaintiffs' Amended Complaint alleges a series of claims alleging at their crux,

medical malpractice against defendants based on a series of medical treatments that Dr. Watson

provided on plaintiff, Mrs. Karyn Kerris, in 1998-1999.  *See* Amended Complaint ("Am.

Cmpl."), filed February 14, 2006.  The central issue of plaintiffs' case is whether Dr. Watson

breached the standard of care (whether embodied in a statute or not) and if that breach was the

cause-in-fact of Mrs. Kerris's injuries.  *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 578

(D.C. 1996) ("plaintiff must establish the applicable standard of care, show that the defendant

violated that standard, and **that the violation was the proximate cause of the injury.**"

(emphasis added)).[5]  Plaintiffs also allege "lack of informed consent," "breach of fiduciary duty,

---

[4] "Plaintiffs" mean Plaintiff Felice P. Iacangelo and Plaintiff Cicily Iacangelo.

[5] **The violation of a regulation "does not, without more, meet the 'cause in fact' requirement of proximate causation.**  On that element, no presumption can relieve the plaintiff

punitive damages, and statutory violations," Plts.' Opp'n Def. Mot. Protective Order[6] at 9, which

claims focus on Dr. Watson's use of the medical devices Histoacryl® and Lipiodol® in his

treatment of Karyn Kerris ("Mrs. Kerris"), which had not been submitted to the FDA[7] for

approval.  In the alternative, plaintiffs assert that the standard of care was breached by Dr.

Watson because he allegedly should not have used unapproved FDA devices to treat Mrs. Kerris

without first having received approval to do so from Georgetown University Hospital's ("GUH")

Internal Review Board ("IRB").  *See generally* Am. Cmpl.

      Plaintiffs have already been allowed significant latitude in discovery to inquire

into matters of collateral relevance.  Plaintiffs have obtained leave of court to depose both

Doctors Henry Yeager and Dieter Schellinger because they "would be qualified to testify about

the IRB."  6/26/07 MJ Mem. Order[8] at 5; attached hereto as Ex. 2.  The IRB is the GUH

institutional review board established per federal regulations, 21 C.F.R. § 812.3(f)[9] to review

---

of her burden of proof."  *Twyman v. Johnson*, 655 A.2d 850, 852 n.4 (D.C. 1995) (citations
omitted; emphasis added); *see also Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)
(*quoting Kosberg v. Wash. Hosp. Ctr, Inc.*, 394 F.2d 947, 949 (D.D.C. 1968) (per curiam) (In a
professional negligence case, the plaintiff bears the burden of presenting evidence "'which
establishes the applicable standard of care, demonstrates that this standard has been violated, and
develops a causal relationship between the violation and the harm complained of.'").

[6] "Plts.' Opp'n Def. Mot. Protective Order" means Plaintiffs' Opposition to Defendants' Motion
for Protective Order to Prohibit the Depositions of High-Level Individuals, filed May 2, 2007.

[7] "FDA" means the federal Food and Drug Administration.

[8] "6/26/07 MJ Mem. Order" means the Magistrate Judge's Memorandum Order, docketed June
26, 2007.

[9] 21 C.F.R. § 812.3(f) states:  "Institutional review board (IRB) means any board, committee, or
other group formally designated by an institution to review biomedical research involving
subjects and established, operated, and functioning in conformance with Part 56.  The term has
the same meaning as 'institutional review committee' in section 520(g) of the act."  21 C.F.R.
§ 56.102(g) states:  "Institutional Review Board (IRB) means any board, committee, or other
group formally designated by an institution to review, to approve the initiation of, and to conduct
periodic review of, biomedical research involving human subjects.  The primary purpose of such

certain biomedical research involving human subjects, despite the fact that it is undisputed that Dr. Watson provided Mrs. Kerris with medical treatment and was not engaged in biomedical research. Testimony about the IRB's policies and procedures (almost ten years ago) is sought by plaintiffs from IRB members on the issue of whether Dr. Watson complied with IRB policies. Plaintiffs have already deposed one member of the IRB, Sheila Zimmet, Esq., who was legal counsel to the IRB, currently and at the time, and was in the best position to testify about the issues plaintiffs seek to explore. Already on a tangential inquiry to the real issue in this case – whether Mrs. Kerris was ever injured by care provided by Dr. Watson, and if so, whether Dr. Watson, and thereby GU, was negligent – plaintiffs seek to go beyond the realm of plausibly relevant inquiries and use the opportunity to ask deponents about the *Glazer* lawsuit, a lawsuit brought **solely** by tenured medical employees against GU, alleging breaches of contract relating **solely** to those tenure rights. A lawsuit of which Dr. Watson already testified he knew nothing about and which could not have affected him as he was never in a tenure track position, nor has he ever been tenured.[10]

       As set forth in more detail in Defendants' Response to Plaintiffs' Statement as to Relevant Witness Testimony, Ex. 3, the *Glazer* lawsuit was a litigation brought by **tenured faculty** of Georgetown University relating to the contractual rights of **tenured faculty** and whether GU could change the contracts governing their tenure. *See* The *Glazer* Complaint, attached hereto as Ex. 4. Previously, plaintiffs filed their Statement of Relevancy in which they incorrectly stated that the *Glazer* litigation showed that the "medical staff had to generate up to

---

review is to assure the protection of the rights and welfare of the human subjects. The term has the same meaning as the phrase institutional review committee as used in section 520(g) of the act."

[10] *See* Ex. 3, Defs' Resp. to Pls' Proffer of Relevancy, filed July 6, 2007, at Exs. 1-3 (Exhibit 3 is filed with only exhibits 1-3 thereto, as Exhibits 4 & 5 thereto are voluminous).

70% of their salary or face salary reductions of up to 30% per year." Ex. 5, Plts.' Stm. at 2.[11]

Plaintiffs then sought to substitute Dr. Leonard Chiazze ("Dr. Chiazze") to their list of

deponents. Plaintiffs' proffer never even states **how** the *Glazer* lawsuit, applicable only to

**tenured** medical faculty, is relevant to any claim or issue in **this** litigation. In their proffer,

specifically listing topics about which Dr. Chiazze is alleged to have knowledge, plaintiffs list

"[t]he law suit he and 17 other plaintiffs brought against Georgetown University, its officers, and

Board of Directors;" and "[k]nowledge of policies and procedures that required the staff and

faculty to produce profits or risk pay reductions; when they were in effect; whether they involved

the entire Medical Center, including the department interventional neurology." Ex. 4 at 5(e) &

(f). Plaintiffs proffer of relevance – that the *Glazer* lawsuit is pertinent because it allegedly

provides Dr. Watson with a motive to perform unnecessary procedures in order to meet a

requirement that he earn a certain income, as supposedly evidenced in the *Glazer* lawsuit, Ex. 4

at 2 – however, as Dr. Watson's Employment Contract definitively shows, **Dr. Watson is and**

**was not a member of the tenured faculty** and **Dr. Watson has never been on the tenure**

**track**. *See* Ex.6 Dr. Watson's Employment Contract[12] (providing that Watson's employment

"shall continue in effect for successive terms of one year" and shall be "on the AT [non-tenure]

track."). Therefore, Dr. Watson's conduct at issue in this litigation could not have been impacted

by the GU policies at issue in the *Glazer* litigation. Moreover, Dr. Watson has already testified

that he was not involved in the lawsuit and does not remember it. Ex. 7, Dep. of Vance E.

---

[11] "Plts.' Stm" means Plaintiffs' Statement as to Relevancy, filed July 2, 2007. The *Glazer* Complaint (Ex. 4) shows that regardless of plaintiffs' misstatement of the policy, it clearly only affected **tenured** faculty.

[12] Previously filed as Ex. 2 to Defendants' Response to Plaintiffs' Proffer of Relevancy, filed July 6, 2007.

Watson, M.D., 5/31/07 at 265-67[13] ("I heard rumors of a couple different kinds of lawsuits.  This particular one I don't recall.").

Plaintiffs' counsel cannot articulate how the *Glazer* lawsuit is relevant to any issue in this case as there is no suggestion that Dr. Watson was involved in, aware of, or impacted by, that lawsuit.  In a teleconference with Magistrate Judge Kay on August 15, 2007, plaintiffs' counsel stated that he was interested in asking questions about the *Glazer* lawsuit because defendants' counsel has been "protective" of the issue, and therefore he concludes that something might be relevant.  Plaintiffs' counsel articulated no other basis for his belief that the *Glazer* lawsuit is relevant to the issues presented by his case.

## PROCEDURAL HISTORY

In April, 2007, Defendants sought a protective order to prohibit plaintiffs from taking the depositions of high-up individuals, including Father Leo J. O'Donovan.  In its June 26, 2007 Memorandum Order, the Court found that some inquiry into the IRB was appropriate and that two deponents who sat on the IRB in the relevant time period (Drs. Yeager and Schellinger) would be sufficient to allow plaintiffs to explore that issue.  Ex. 2, 6/26/07 Mem. Order at 7.  The Court also found that **plaintiffs had not demonstrated sufficient relevance** of the testimony to be provided by the other deponents.  *Id.* at 7.  In their relevancy proffer, plaintiffs stated that their proposed deponents were relevant, including the addition of the first request for the deposition of Dr. Chiazze, because of their alleged knowledge of the *Glazer* lawsuit and the payment plan at issue therein.  Ex. 5, Plts.' Stm. at 2.  After reviewing the proffer and defendants' response thereto, this Court noted "as the sole grounds in support of their request to depose Dr. Chiazze. . . .  [P]laintiffs assert that [GUH] 'instituted a policy in 1997 (which

---

[13] Previously filed as Ex. 3 to Defendants' Response to Plaintiffs' Proffer of Relevancy, filed July 6, 2007.

remained in effect through the relevant time period) that the medical staff had to generate up to 70% of their salary or face salary reductions. . . .'" Ex. 1, 7/18/07 Mem. Order at 2.  The Court further found that plaintiffs did not provide "any evidence that there is a link between such profit policy and the issues in the medical malpractice litigation." *Id.* at 2-3.  Magistrate Judge Kay did not evaluate the other proposed deposition topics in plaintiffs' proffer because there was no indication that the proposed deponents, including Dr. Chiazze, had relevant knowledge on the topics at issue in **this litigation** and because to the extent Dr. Chiazze could testify about the IRB, plaintiffs had already been given leave to depose two additional members. Ex. 1, 7/18/07 MJ Mem. Order[14] at 7.  This Court **denied** plaintiffs the right to depose Dr. Chiazze – on the grounds that the issues of the *Glazer* lawsuit are not relevant to this litigation.  Therefore, this Court already expressly found that plaintiffs had not demonstrated that testimony about the *Glazer* suit is relevant or likely to lead to admissible evidence.[15]

## ARGUMENT

I.     **The Testimony Plaintiffs Seek Is Irrelevant; Therefore, Defendants Have Shown Good Cause for Entry of a Protective order.**

The Court may issue a protective order limiting or denying discovery " for good cause shown" to protect from "annoyance, embarrassment, oppression, or under burden or expense." Fed. R. Civ. P. 26(c).  Such a protective order may provide "that certain matters not

---

[14] "7/18/07 MJ Mem. Order" means the Memorandum Order, filed 7/18/07, by Magistrate Judge Alan Kay.

[15] On August 15, 2007, Magistrate Judge Kay permitted plaintiffs to substitute a deposition of Dr. Chaizze for Dr. Yeager, because both doctors were members of the IRB and either can provide testimony about it.  However, this substitution further indicates plaintiffs' intention to explore the *Glazer* litigation because Dr. Yeager opted out of the *Glazer* lawsuit, despite being a tenured faculty member.  Moreover, it is unclear that Magistrate Judge Kay has jurisdiction to grant the deposition of Dr. Chaizze while the Motion for Reconsideration of the Memorandum Order **denying** plaintiffs' request to depose Chiazze is pending before Judge Paul L. Friedman, which this Court described as his "Circuit Court."

be inquired into." Fed. R. Civ. P. 26(c)(4). As there is no relevancy to the *Glazer* lawsuit,

plaintiffs seek to question deponents on the *Glazer* litigation for no reason other than to cause

embarrassment to defendants by delving into a 10-year-old litigation. Therefore, the Court

should enter a protective order prohibiting irrelevant questions about the *Glazer* lawsuit or

tenured faculty compensation issues to uphold the requirements of the Federal Rules of Civil

Procedure and the governing law of the District of Columbia.

A.    **Testimony about the *Glazer* Litigation Is Outside the Scope of Discoverable Material Under Rule 26(b).**

Under the Federal Rules of Civil Procedure, parties may **only** obtain discovery

into any matter "not privileged, **that is relevant** to the claim or defense of any party. . . ." Fed.

R. Civ. P. 26(b)(1) (emphasis added); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d

83, 86 (D.D.C. 2005).

Although the rules of discovery are liberal, the Supreme Court has repeatedly

articulated that the right to discovery is not boundless: "[D]iscovery, like all matters of

procedure, has ultimate and necessary boundaries. . . . And as Rule 26(b) provides, . . .

limitations come into existence **when the inquiry touches upon the irrelevant** . . . ." *Hickman*

*v. Taylor*, 329 U.S. 495, 508 (1947) (emphasis added). As this Court has repeatedly held:

> All discovery is subject to the limitations of imposed by Rule 26(b)(2)(i)-(iii). *See* Fed. R. Civ. P. 26(b)(1). Furthermore, discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" are not within the scope of discovery. *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. at 352 (1978). . . . **Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the request is within the scope of discovery.**

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.,* 242 F.R.D. 1 (D.D.C. 2007) (*citing Alexander*

*v. FBI,* 194 F.R.D. 316, 325 (D.D.C. 2000) (citing, *inter alia*, Fed. R. Civ. P. 26(b)(1); (emphasis

added)); *see also Caldwell v. Ctr. for Corr. Health & Policy Studies, Inc.*, 228 F.R.D. 40, 44

(D.D.C. 2005) ("[P]laintiff is not entitled to demand from defendants information **that is neither relevant to a claim or defense nor likely to lead to information that is.**" (*citing* Fed. R. Civ. P. 26(b)(1) and *Byrd v. Reno*, No. CIV.A.96-2375, 1998 WL 429676, at \*9 (D.D.C. Feb. 12, 1998) (emphasis added)).

Similarly, in both *Moore v. Hartman*, 241 F.R.D. 59, 62-63 (D.D.C. 2007) and *Burlington Ins. Co.*, 368 F. Supp. 2d at 86, this Court stated:

> Put another way, "[a] showing of relevance can be viewed as a showing of need[, as] for the purpose of prosecuting or defending a specific pending civil action, **one is presumed to have no need of matter not relevant to the subject matter involved in the pending action." That said, relevancy does not encompass discovery of information with "no conceivable bearing on the case."**

*Burlington*, 368 F. Supp. 2d at 86 (emphasis added) (alterations in original) (*quoting Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) and *citing* 8 FED. PRAC. & PROC. § 2008 (2d ed.)).

As this Court has previously reminded litigants, "[t]here are limits under the Federal Rules of Civil Procedure, as well as limits set by both common sense and common decency. The purpose of the court system is to resolve civil disputes-and in a civil way." *Blumenthal v. Drudge*, 186 F.R.D. 236, 239 (D.D.C. 1999)(PLF). The information about which plaintiffs seek to inquire falls outside the limits of "relevant" or even "reasonably calculated to lead to admissible evidence" established by the Federal Rules and interpreted by the courts because it "is of no consequence to the determination of whether the position of the [defendants is] substantially justified," and therefore, is "not relevant and not properly discoverable." *Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 101 F.R.D. 342, 343-44 (D.D.C. 1984) (quotations omitted).

Plaintiffs cannot establish any fact to support that the prior *Glazer* lawsuit between tenured faculty and GU is relevant or reasonably calculated to lead to admissible (e.g., relevant) evidence because it has no bearing on Dr. Watson as he **was and is not tenured and has never been on tenure track,** where the policy at issue in the lawsuit only impacted tenured faculty, Ex. 6 (*Glazer* Complaint) ¶ 3 ("[Defendants] implemented a compensation plan, including productivity standards, that constitutes a direct and material breach of plaintiffs' tenure contracts…"), and where Dr. Watson testified that he had not even heard of the lawsuit.  *See* Ex. 7, Watson 5/31/07 Dep. at 265:10-266:19.

Here, because plaintiffs have not respected the limits set by the Federal Rules, defendants have no choice but to seek the assistance of the Court.  "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .' Rule 26(c)."  *Cobell v. Norton*, 226 F.R.D. 67, 82-83 (D.D.C. 2005) (second alteration in original).  Specifically, the court "may, in its discretion, limit the scope of individual depositions in order to provide that information produced is likely to be relevant and in order to ensure the efficiency of the litigation process."  *Id.  See also Alexander v. FBI*, 186 F.R.D. 123, 125 (D.D.C. 1998) (granting a protective order, limiting deposition topics, and commenting that "[t]he allowance of this deposition to go forward does not grant plaintiffs a 'roving commission' to investigate the subject matter of other [unrelated scandals].")

Since plaintiffs have utterly failed to show that the information sought relating to the *Glazer* lawsuit bears any relevance or is even reasonably calculated to lead to admissible evidence to the issues presented by this case, plaintiffs' basis for questioning deponents on the

topic of the *Glazer* lawsuit is, therefore, an explicit attempt **to go fishing** into a topic unrelated to any claim or issue in the litigation. At best, plaintiffs can accomplish only two things (both impermissible) by inquiring about this irrelevant litigation: 1) extend the length of depositions; and 2) gather fodder in an attempt to embarrass and prejudice GU on a totally unrelated issue. "The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition." *Bastin v. Fannie Mae*, 104 F.3d 1392, 1396 (D.C. Cir. 1997).

Defendants have shown good cause justifying a protective order prohibiting plaintiffs' proposed questioning on the *Glazer* lawsuit and respectfully request the Court enter a protective order prohibiting all questions related to the *Glazer* lawsuit and the payment plan at issue therein. In the alternative, pursuant to District of Columbia law as defendants have raised a relevancy objection to inquiry into the *Glazer* lawsuit and the payment plan at issue therein, defendants ask this Court to order plaintiffs to provide the appropriate proffer as to its relevancy, prior to deciding that plaintiffs' discovery may go forward. *See Tequila Centinela*, 242 F.R.D. 1; *Alexander*, 194 F.R.D. 316.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request this Court to enter a protective order, prohibiting the plaintiffs from questioning deponents about the *Glazer* litigation and the payment plan at issue therein, or in the alternative, requiring Plaintiffs to provide a relevancy proffer as to the *Glazer* lawsuit and the payment plan at issue therein and the issues in this litigation, prior to making any determination as to the permissible scope of discovery.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  August 28, 2007                    By:  _____
                                                Megan E. Hills (D.C. Bar #437340)
                                                Zoe C. Scharff (D.C. Bar # 490482)

                                                725 Twelfth Street, N.W.
                                                Washington, D.C. 20005
                                                (202) 434-5000
                                                (202) 434-5029 (fax)
                                                mhills@wc.com
                                                zscharff@wc.com

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I

hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website

on the 28th day of August, 2007 on the forgoing:

        Anthony Newman, Esquire
        Ernest McIntosh, Esquire
        Wendy Wyeth, Esquire
        Newman, McIntosh & Hennessy
        7315 Wisconsin Avenue
        Suite 700E
        Bethesda, Maryland 20814

        and

        Andrew Greenwald, Esquire
        Greenwald and Laake
        6404 Ivy Lane
        Suite 440
        Greenbelt, Maryland 20770

        Plaintiffs' Counsel

        Zoe C. Scharff