# EXHIBIT 6

AGREEMENT BETWEEN
GEORGETOWN UNIVERSITY MEDICAL CENTER
AND
VANCE E. WATSON, M.D.

WHEREAS, Vance E. Watson, M.D. (hereinafter "Dr. Watson") is a licensed, board certified physician specializing in the field of neuroradiology, and;

WHEREAS, Georgetown University Medical Center (hereinafter "GUMC") (Georgetown University Medical Center, Washington, D.C. 20007) maintains a Department of Radiology (hereinafter the "Department") and a Department of Neurosurgery (hereinafter "Neurosurgery") and desires to employ Dr. Watson on a full-time basis for the provision of professional services within those Departments; and

WHEREAS, Dr. Watson desires to be employed by GUMC; and

NOW THEREFORE, for the mutual promises and consideration set forth herein, the parties agree as follows:

ARTICLE I
CONTRACT TERM

The term of this Agreement shall be from September 1, 1994 to June 30, 1995. This Agreement shall continue in effect for successive terms of one year running from July 1 to June 30 unless terminated by either party as provided herein. This Agreement is contingent upon Dr. Watson receiving an appointment to the full time faculty of GUMC, on the AT track. Any successive terms are contingent upon Dr. Watson maintaining his status as a faculty member in good standing and are subject to the annual review, reappointment, and termination processes of GUMC as set forth in the Faculty Practice Plan and in the Georgetown University Faculty Handbook.

ARTICLE II
SCOPE AND DEFINITION OF DUTIES

A.   Dr. Watson shall provide professional services in the field of neuroradiology to patients of the Department on a full-time basis including but not limited to evaluation, treatment, and management of neuroradiology patients, on an inpatient and outpatient basis. Dr. Watson's duties shall include providing professional services as needed at other institutions where the Department has or develops extensions of its endovascular program. Dr. Watson shall be responsible for taking call as

designated by the GUMC Chief of Neuroradiology.  Dr. Watson shall serve as the Director of the Section of Endovascular Therapy Service within the Division of Neuroradiology, Department of Radiology.  Specifically, Dr. Watson duties shall include, but are not limited to:

1.  PRIMARY CLINICAL DUTIES:  To provide inpatient and outpatient neuroradiology services in the development of an endovascular therapy service.  Initially, one (1) day per week will be devoted to general neuroradiology coverage.

2.  ACADEMIC DUTIES:  To include, but not be limited to, medical student and/or resident teaching in the office practice and hospital setting, strengthening of the radiology residency training program as it relates to the teaching of neuroradiology and component technologies, committee or administrative responsibilities, research and scholarly writing or as otherwise assigned by the Chairman of the Department.

B.  Throughout the term of this Agreement, Dr. Watson at all times must be qualified, professionally competent, board certified, duly licensed in the District of Columbia and have a current narcotics number.  Dr. Watson must maintain a full-time faculty appointment in good standing in the Georgetown University School of Medicine, and appropriate clinical privileges at the Georgetown University Hospital (hereinafter "GUH") and such other facilities as the Chairman of the Department may designate.

C.  In order to assist Dr. Watson in fulfilling his clinical and academic responsibilities, GUMC, through the Department, agrees to provide the following:

1.  ADMINISTRATIVE SUPPORT:  Secretarial assistance, to be shared with the Division of Interventional Angiography, will be provided to handle phone calls, patient-related tasks, typing of manuscripts, grants and papers.  Although a secretary is assigned to a particular physician for specified periods of time, no secretary is considered to be associated exclusively with one physician.

2.  CLINICAL SUPPORT:  Dr. Watson will be provided with an office in the immediate vicinity of the Neuroangiography room, a dedicated nurse and appropriate technical support.  In addition, Neurosurgery will supply Dr. Watson with examining facilities in the outpatient department of Neurosurgery on an as-needed basis.

3. **MONEY FOR RESEARCH:** A start-up research fund of Twenty-Five Thousand Dollars ($25,000.00) per year during the initial two (2) years of this Agreement will be provided to be used solely for the purposes of research, as needed. This fund is a one time allocation. It is expected that research begun with monies from this fund will provide the basis to generate research grants from outside sources to provide for continued research needs.

D. GUMC shall withhold, on behalf of Dr. Watson as an employee of GUMC, all necessary sums for income tax, unemployment insurance, social security or other withholdings or benefits pursuant to any law or requirement of any governmental body.

## ARTICLE III
## COMPENSATION AND BILLING

A. GUMC, through the Department, shall pay to Dr. Watson a base salary in the sum of                per year to be paid in twelve equal    REDACTED

monthly payments of                each as compensation for professional and academic services rendered under this Agreement. In addition, Dr. Watson will be provided with a "Discretionary Account" in the amount of Five Thousand Dollars ($5,000.00) per year.

B. Upon the determination of the Chairman of the Department and after the net expenses of the endovascular section have been met through the revenues generated by the endovascular section, Dr. Watson will be eligible to participate in the Faculty Plan Program's incentive bonus program on a fifty per cent (50%) per case sharing formula. This formula shall allocate fifty percent (50%) of the net collections for each case to the endovascular section account and fifty percent (50%) of the net collections for each case to the department's account. The monies due under this formula shall be paid bi-annually.

1. For purposes of this paragraph, net expenses shall be defined to include the cost of salary, fringe benefits, including but not limited to, health, life, and disability insurance, expense account and professional liability coverage.

C. GUMC shall have the exclusive obligation and right to establish the schedule of charges and to bill for the services rendered by Dr. Watson at GUMC or any of its satellite locations

and to bill and collect revenues for services rendered by and under the direction of Dr. Watson. All such revenues shall become the sole property of GUMC.

D.  Dr. Watson shall be entitled to those benefits normally accruing to members of the full time faculty at GUMC. Specifically, Dr. Watson shall be entitled to receive twenty-two (22) days of annual leave, and fifteen (15) days of meeting time per year. Any additional meeting time must be approved by the Chief of the Division of Neuroradiology.

### ARTICLE IV
### NONCOMPETITION

GUMC has a responsibility to undertake reasonable efforts to protect its ability to provide adequate levels of financial support to the Georgetown University School of Medicine and the Georgetown University Hospital.

The terms of the following restrictive covenant are designed to accomplish these objectives in a reasonable and fair manner, taking into account the special circumstances attendant to faculty practice plans in academic medical centers. Individuals receiving full-time faculty appointments to the School of Medicine on or after July 1, 1993, agree as follows:

A.  In the event that Dr. Watson voluntarily leaves the GUMC full-time faculty, or is terminated for cause, for a period of two (2) years from the date of termination of employment, Dr. Watson shall not engage in or carry on, directly or, indirectly, or through an affiliate, or a s member of a partnership or joint venture, or as a stockholder or investor or as an agent, associate, employee or consultant of any person, partnership or corporation, the practice of neuroradiology or any business which offers the services of neuroradiology within a fifteen (15) mile radius of 3800 Reservoir Road, NW, Washington, DC.

B.  It is acknowledged that the covenants set forth in this paragraph are reasonable and necessary in order to protect GUMC's legitimate business interest and that any violation thereof by Dr. Watson would result in irreparable injury to GUMC. Consequently, in the event of Dr. Watson's breach of Article IV, Section A, Dr. Watson hereby consents to the granting of injunctive relief against him by a court of competent jurisdiction. Such relief shall be in addition to any and all remedies available to GUMC at law.

GUPR 00004

C.   If the covenants contained in Article IV, Section A., or any part thereof, are held to be unenforceable because of the duration or scope of such provisions, the court making such determination shall have the power, duty, and obligation to modify the duration or scope so as to bring the covenants within the bounds permitted by law, and the covenants, in their modified form, shall then be enforceable.

### ARTICLE V
### PROFESSIONAL LIABILITY COVERAGE AND INDEMNIFICATION

A.   GUMC shall provide professional liability coverage of the same kind and with the same limits of coverage as provided other full-time physician employees of GUMC for the provision of professional services on behalf of and within the scope of employment with GUMC in accordance with "The University Policy Concerning the Indemnification of faculty members" as set forth in the Georgetown University Faculty Handbook as it may be amended from time to time.

B.   Dr. Watson agrees to indemnify and hold harmless, and to defend at GUMC's election, Georgetown, its personnel, directors, administrators, officers, employees, agents, executors and assigns, with respect to any and all claims, damages, judgments, actions and causes of action arising out of Dr. Watson's actions or omissions outside the scope of his employment with GUMC, including all costs, expenses and reasonable attorneys' fees incurred in the defense of any and all claims and/or litigation.

### ARTICLE VI
### TERMINATION

A.   This Agreement may be terminated by Dr. Watson upon six (6) months prior written notice in accordance with the provisions of the Georgetown University Faculty Handbook.  Such notice shall be delivered certified mail, return receipt requested.

B.   GUMC may terminate this Agreement immediately and without notice in the event that:

     1.   Dr. Watson's license to practice medicine in the District of Columbia is suspended, revoked or not renewed; or

     2.   Dr. Watson's faculty appointment in the GUMC School of Medicine is terminated or not renewed;

or

3.    Dr. Watson's Medical Staff privileges at GUH, or
      at any other hospital at which Dr. Watson renders
      services, are suspended, restricted, revoked or
      not renewed; or

4.    Dr. Watson becomes the subject of any professional
      disciplinary action; or

5.    Dr. Watson fails to cooperate with GUMC in
      defending any malpractice claims.

C.    Dr. Watson must report to GUMC immediately and in
writing any of the events set forth in Article VI Section B
above.

D.    Effect of termination.  Neither Party shall have any
further obligation hereunder except for obligations accruing
prior to the date of termination and as set forth in Article IV
(Noncompetition) and Article V (Professional Liability Coverage
and Indemnification).

## ARTICLE VII
## GENERAL PROVISIONS

A.    Proprietary Information.  Dr. Watson shall not at any
time during the term of this Agreement and thereafter, except
with written permission by GUMC, disclose information relating to
GUMC's operations to persons other than members of GUMC's Medical
Staff, state licensing boards, Joint Commission on Accreditation
of Health Organizations or third party reimbursement agencies, or
other duly constituted governmental agencies, or pursuant to
subpoena and in all such cases Dr. Watson shall notify GUMC in
advance of making any such disclosure.  It is understood that in
the event of any violation of the restrictions set forth in this
Section, GUMC shall be entitled to preliminary and permanent
injunctive relief from any Court which may have jurisdiction, in
addition to any other remedies available under this agreement or
at law or in equity.

B.    Publication and Advertisement.  Dr. Watson agrees that
he will adhere to the policies on publication and advertisement
pertaining to GUMC faculty members as published in the Faculty
Handbook, Faculty Practice Group Practice Plan, Hospital Policy
and Procedure Manual or as otherwise adopted by the Board of
Trustees.  It is understood that in the event of any violation of
the restrictions set forth in this Section, GUMC shall be

entitled to preliminary and permanent injunctive relief from any Court which may have jurisdiction, in addition to any other remedies available under this agreement or at law or in equity.

C.    Intellectual Property/Inventions and Patents.  Dr. Watson agrees that he will adhere to the policies on copyrights, inventions, patents and grants as published in the Georgetown University Faculty Handbook whereas otherwise adopted by the Board of Trustees.

D.    Non-Assignment.  This agreement is personal to Dr. Watson and may not be assigned without the prior written consent of GUMC.

E.    Governing Law.  This Agreement shall be deemed to have been made and shall be construed and all of the rights, powers, and liabilities of the parties hereunder shall be determined in accordance with the laws of the District of Columbia.

F.    Integrated Agreement.  This Agreement contains the whole understanding of the parties and supersedes all prior oral or written representations and statements between the parties. In the event that specific terms of this Agreement shall be in conflict with the Faculty Handbook, the Faculty Practice Group Practice Plan, or GUMC policies and procedures, the terms of this Agreement shall prevail.

G.    Waivers and Amendments.  No waiver of any term, provision, or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further and continuing waiver of any such term, provision or condition of this Agreement.  No amendment to any provision of this Agreement shall be effective unless in writing and signed by each party.

H.    Severability.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of the agreement shall be valid and enforceable to the fullest extent permitted by law.

I.    Captions.  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, or extend the scope or intent of this Agreement or any provision hereof.

GUPR 00007

J.   Medical Records.   Any and all medical and billing records pertaining to patients seen by Dr. Watson at GUMC or any of its satellite locations shall be the sole property of GUMC. Dr. Watson may have access to such records at reasonable times upon reasonable notice, and may obtain photocopies of such records at Dr. Watson's expense.

K.   Notice.   Every notice, demand, request, consent, approval or other communication which the parties hereto are required or desire to give shall be in writing and shall be given by personally delivering the same or by mailing the same, registered or certified mail, first class postage and fees prepaid, return receipt requested as follows:

GUMC -          Larry P. Elliott, M.D., Chairman
                Department of Radiology
                Georgetown University Medical Center
                3800 Reservoir Road, NW
                Washington, D.C. 20007


Dr. Watson -    Vance E. Watson, M.D.

                _____

                _____

                _____

GUPR 00008

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective officers duly authorized and empowered.

FOR GEORGETOWN UNIVERSITY MEDICAL CENTER:

_____  11/5/93
Larry P. Elliott, MD,                    Date
Chairman, Department of Radiology

_____  4/22/93
Robert L. Martuza, MD,                   Date
Chairman, Department of Neurosurgery

_____  11/15/93
Nelson M. Ford,                          Date
Chief Financial and Operating Officer

_____ N/A _____
George R. Lasnier,                       Date
Assistant Treasurer and Vice President,
   Financial Affairs

FOR  Vance E. Watson, M.D.:

_____  11/9/93
Vance E. Watson, M.D.                    Date