| | | |
|---|---|---|
| JOHN W. VARDAMAN<br>PAUL MARTIN WOLFF<br>J. ALAN GALBRAITH<br>JOHN G. KESTER<br>WILLIAM E. McDANIELS<br>BRENDAN V. SULLIVAN, JR.<br>RICHARD M. COOPER<br>GERALD A. FEFFER<br>JERRY L. SHULMAN<br>ROBERT B. BARNETT<br>DAVID E. KENDALL<br>GREGORY B. CRAIG<br>JOHN J. BUCKLEY, JR.<br>TERRENCE O'DONNELL<br>DOUGLAS R. MARVIN<br>JOHN K. VILLA<br>BARRY S. SIMON<br>KEVIN T. BAINE<br>STEPHEN L. URBANCZYK<br>PHILIP J. WARD<br>F. WHITTEN PETERS<br>JAMES A. BRUTON, III<br>PETER J. KAHN<br>LON S. BABBY | MICHAEL S. SUNDERMEYER<br>JAMES T. FULLER, III<br>BRUCE R. GENDERSON<br>CAROLYN H. WILLIAMS<br>F. LANE HEARD III<br>STEVEN R. KUNEY<br>GERSON A. ZWEIFACH<br>PAUL MOGIN<br>HOWARD W. GUTMAN<br>STEVEN A. STEINBACH<br>MARK S. LEVINSTEIN<br>VICTORIA RADD ROLLINS<br>DANIEL F. KATZ<br>WILLIAM R. MURRAY, JR.<br>EVA PETKO ESBER<br>STEPHEN D. RABER<br>DAVID C. KIERNAN<br>LON E. MUSSLEWHITE<br>ROBIN E. JACOBSOHN<br>HEIDI K. HUBBARD<br>GLENN J. PFADENHAUER<br>GEORGE A. BORDEN<br>ROBERT J. SHAUGHNESSY<br>DAVID S. BLATT | LAW OFFICES<br>**WILLIAMS & CONNOLLY LLP**<br>725 TWELFTH STREET, N.W.<br>WASHINGTON, D. C. 20005-5901<br>(202) 434-5000<br>FAX (202) 434-5029<br>www.wc.com<br>EDWARD BENNETT WILLIAMS (1920-1988)<br>PAUL R. CONNOLLY (1922-1978) |

ARI S. ZYMELMAN
DANE H. BUTSWI[...]
LAURIE S. FULTO[...]
DENNIS M. BLAC[...]
PHILIP A. SECHLE[...]
LYNDA SCHULER
PAUL K. DUEFFER[...]
R. HACKNEY WIE[...]
ROBERT M. CARY
KEVIN M. HODGE[...]
DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
PAUL B. GAFFNEY
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN
CRAIG D. SINGER
JAMES L. TANNER, JR.
J. ANDREW KEYES
GILBERT O. GREENMAN

WILLIAM T. BURKE
LISA M. DUGGAN
JOHN E. JOINER
NICHOLAS J. BOYLE
ADAM L. PERLMAN
ANDREW W. RUDGE
DENEEN C. HOWELL
ALEX G. ROMAIN
DAVID A. FORKNER
JONATHAN M. LANDY
CHRISTOPHER N. MANNING
RYAN T. SCARBOROUGH
JENNIFER G. WICHT
STEPHEN D. ANDREWS

OF COUNSEL
RAYMOND W. BERGAN
JEREMIAH C. COLLINS
DAVID POVICH
ROBERT P. WATKINS
MARY G. CLARK
JACQUELINE E. MAITLAND DAVIES

August 3, 2007

**VIA ELECTRONIC MAIL**

Anthony Newman, Esquire
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

      Re:    <u>Iacangelo, et al. v. Georgetown University, et al.</u>

Dear Mr. Newman:

      Thank you for meeting with me on Thursday, July 26, 2007 regarding our discovery issues. I recognize your need to prepare the Plaintiffs' case and appreciate your willingness to acknowledge Defendants' mutual requirements, as well as the limitations of discovery on both parties. Summarizing what I believe are the agreements we reached at our meeting, as requested I am clarifying Defendants Georgetown University ("Defendant GU") and Vance E. Watson, M.D.'s ("Dr. Watson"; collectively, "Defendants") responses to Plaintiff Felice Iacangelo's requests for written discovery.[1] The following letter is based on my notes of what occurred and the information is provided to you as a result of our meet and confer. I am also setting out what I understand what you would agree to provide in response to Defendant Vance E. Watson's requests for written discovery to Plaintiff Felice Iacangelo.

      Starting with what I understand you to have represented as to what you would provide or consider providing:

      Regarding Plaintiff Felice Iacangelo's responses to Defendant Vance E. Watson's requests for production of documents, Plaintiffs provided a CD Rom containing over 10,000 documents without providing an index correlating the documents to the requests or producing the documents as they are kept in the usual course of business. (Federal Rule of Civil Procedure 34:

---

[1] Since many of the requests to defendant Georgetown University and defendant Vance E. Watson, M.D. are identical, I am combining Defendants' responses to the respective requests.

Anthony Newman, Esquire
August 3, 2007
Page 2

"a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."). **You agreed that you would provide us with a subject-matter index of these documents.**

Because we cannot assess your responses to Defendant Dr. Watson's Document Requests until we receive that index and the fact that discovery is to close in one month, we ask that you provide the index that Fed. R. Civ. P. 34 requires to have been provided with the response, no later than Wednesday, August 8, 2007, as you represented at the July 26, 2007 meeting that you would be shortly providing it and we have yet to receive one. Please let me know immediately if providing such an index by August 8, 2007 will be a problem.

I believe you represented that as currently written in each responses, the phrase, "**discoverable** documents in possession of Plaintiffs" means that Plaintiffs have not withheld any responsive documents under a claim of privilege and/or for any other reason and that Plaintiffs have produced all responsive documents within their possession and provided executed blank Authorizations for Defendants to use to obtain responsive records within Plaintiffs' custody and control, but not within their possession. I believe case law, at a minimum, requires Plaintiffs to identify those individuals/entities to whom/which have records regarding Ms. Kerris (and there is also D.C. case law requiring that the provision of authorizations is not sufficient and requires plaintiffs to provide actual copies of the records, *Bregman v. District of Columbia*, 182 F.R.D. 352, 361 (D.D.C. 1998) ("**As to plaintiff's claim that his providing authorization to secure the information from the concerned medical providers suffices to fulfill any discovery obligation he might have, Judge Kollar-Kotelly has recently pointed out that merely providing an authorization for one's opponent to secure medical records from third party does not comply with obligations the Federal Rules impose upon a party.** *Kifle v. Parks & History Association*, Ca No. 98-48 (D.D.C. Oct. 15, 1998). . . . '[I]n a personal injury case requiring copies of them is appropriate.'"; emphasis added)).

Mr. Iacangelo's interrogatories failed to provide addresses for many of the healthcare providers who have seen Ms. Kerris. As an example, the addresses provided for Dr. Guterman and Capital Care are incorrect. Moreover, Dr. Guterman's connection to Ms. Kerris's healthcare condition is that he **operated** on Ms. Kerris's arm. While he may have some records regarding Ms. Kerris, it is doubtful that he **operated** on Ms. Kerris in his office. Mr. Iacangelo did not provide us with the hospital's name at which this operation took place. **We are entitled to this information so that we may obtain the records. Please provide us with the name of that hospital and its contact information so we may serve a subpoena on it for records.**

In addition to the absence of information regarding where Dr. Guterman performed surgery on Ms. Kerris, as well as the several incorrect addresses with which Defendants were provided, Plaintiffs have also failed to provide me with **any information** as to certain individuals they list as knowledgeable about Ms. Kerris's medical condition, treatment, and/or care. In particular, I need some information regarding who **Monique Mitchell** (No. 19 on p. 7 of Felice Iacangelo's Response to Interrogatories) is and what is the basis for her knowledge. Who is **Mary Holsey** (No. 20 on p. 7 of Felice Iacangelo's Response to Interrogatories) and

Anthony Newman, Esquire
August 3, 2007
Page 3

what is the basis for her knowledge? It is unfair to list people, state they have knowledge of the care and treatment of Karyn A. Kerris and provide absolutely no information as to who they are or the basis of their information. I cannot obtain records from individuals and/or entities of whom/which I am not provided information. This letter serves as notice that subpoenas for records were served on MedStar Georgetown University Medical Center, Dr. Irvin Guterman, Karen Hill, Independence Now, and Priscilla Lissik on August 1, 2007. A subpoena for records was served on Capital Home Care on August 2, 2007.

At a minimum, I believe asking Plaintiffs to identify all medical providers to whom/which they sought medical treatment, advice, and/or consultation for Ms. Kerris, such that Defendants may know where to use the provided medical records is not only appropriate, but required. Additionally, we need Plaintiffs to provide promptly executed Authorizations for those entities which have their own specific format that will not honor the executed authorizations in the format Plaintiffs provided. In particular, I refer to Blue Cross/Blue Shield, about which we contacted you and provided Blue Cross/Blue Shield's own authorization on March 21, 2006. I previously sent to you all of that information and specialized release once again this week on August 1, 2006 (see enclosed, which once again encloses the Blue Cross/Blue Shield completed Authorization for execution). Although I appreciate receiving the required Rule 45 notice of your subpoena on Blue Cross/Blue Shield a year after you served it, it does not appear (because it was not sent to me) that you used their authorization such that they would release their information regarding Ms. Kerris. I have received no response regarding when you will provide me with an executed Blue Cross/Blue Shield Authorization, which I again enclose with this letter.

I also have received no response regarding my request as to whether Mr. Paul Kerris would like to be deposed on August 13th or 14, 2007. Should I just pick one of those dates and serve him with a subpoena. His previous deposition was scheduled by us at your convenience to begin at 2:00 p.m. because of your Status Conference scheduled at D.C. Superior Court earlier that day and then you subsequently canceled it. Therefore, with discovery closing in less than a month, I need Mr. Kerris to select one of these dates as soon as possible. Since I have not heard from you for a week to provide me with whether Mr. Kerris would prefer August 13th or 14th or heard anything at all regarding his deposition, I ask that you **immediately tell me which date you and he have selected no later than 5:00 p.m. on Tuesday, August 7, 2007.**

When you requested a deposition date for Dr. Dieter Schellinger, I immediately informed you that he was retired, and therefore, more difficult to locate, and then told you that his former assistant apprised me that Dr. Schellinger was out of town and that she had no contact information for him and that she didn't know when he was coming back. I disclosed this information to you as soon as I had it. I have left messages for him with his assistant, but as I wrote, I cannot provide you with possible dates because I have not had the ability to speak with him, but as soon as I am able to, I will provide you with possible deposition dates.

Lastly, I asked whether the deposition transcript to which you directed Defendant Dr. Watson during his May 31, 2007 deposition was going to be produced (Deposition of Vance E. Watson, M.D., 5/31/07, at 260:3-262:20). I represented that if this transcript is no longer in

Anthony Newman, Esquire
August 3, 2007
Page 4

your possession, you may simply provide me with the date of the deposition, the caption of the case in which this deposition was taken, and the contact information for the court reporting service that transcribed the deposition. You previously represented to Dr. Watson that you had the deposition transcript in question.

You must concede the transcript is "reasonably calculated to lead to admissible evidence," as you deemed it sufficiently relevant to ask Dr. Watson about it. Moreover, Defendant Dr. Watson requested all documents relating to Plaintiffs' allegations in the Amended Complaint – all of which are based on Ms. Kerris's embolizations and/or the alleged suitability of Histoacryl and/or Lipiodol for use in Ms. Kerris's embolization. Therefore, testimony from the inventor of an embolic substance about which Defendant Dr. Watson was asked is clearly relevant.

Defendant Dr. Watson requested this transcript in, *inter alia*, Document Requests to Plaintiff Felice Iacangelo No. 4 ("**All documents relating to any medical condition of Karyn A. Kerris prior to and including 1998 that potentially could, in whole or in even small part, contribute either to the medical condition for which she sought treatment from Defendants or to the injuries for which she is currently seeking compensation.**") and No. 9 ("**All documents containing or describing written or oral** statements made by you, Defendants, **or any other person relating to the matters set forth in the Complaint.**"), Interrogatory Nos. 19 ("**Identify all persons not previously identified by you in your responses to these interrogatories who have knowledge of facts relating to the matters set forth in the Amended Complaint, describing in detail** the exact nature of their knowledge.") and 20 ("**Identify any documents, which have information relating to or which were relied upon in responding to these Interrogatories.**") (Emphasis added throughout).

"Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 501 (D.Md.2000); *Poppino v. Jones Store Co.*, 1 F.R.D. 215, 219 (W.D.Mo.1940) ("It is quite true that if an attorney for a party comes into possession of a document *as attorney for that party* his possession of the document is the possession of the party.")." *American Society for the Prevention of Cruelty to Animals v. Ringling Bros. and Barnun & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006). "Further, deposition transcripts are not attorney work product as they constitute material that has been made public – not only to the court reporter, but to the deponent and the deponent's attorney. "Deposition transcripts are discoverable even when a protective order has been entered in the other case." *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495 (D. Md. 2000). Please let me know when you will be producing it.

We also discussed Defendants' Responses to Plaintiffs' written discovery. The following information is set forth in an attempt to capture what we discussed. Because the requests to Georgetown University ("GU") and Dr. Watson were often identical, I have combined them as we did during our meet and confer.

Anthony Newman, Esquire
August 3, 2007
Page 5

**Dr. Watson Interrogatory Response #2/GU Interrogatory Response #3:** We provided a page of information. Further information as to how I as an attorney apply the facts of this case to legal defenses is privileged under the work product doctrine.

**Dr. Watson Interrogatory Response #3/GU Interrogatory Response #4:** You asked us to interpret your original Interrogatory, "If you contend that a person/entity not now a party to this action in any way caused or contributed to the occurrence, please state the identity(ies) of the individual(s) and/or entity(ies) and all facts in your possession upon which you rely," to request information as to whether Defendants intended to name any additional defendants. I represented to you that at this time, Defendants have no intent to name any additional defendants at this time. Defendants, however, reserve the right to amend this response should additional information come to light in the future.

**GU Document Request Response #4:** You stated that you had no problems with signing the proposed confidentiality order to cover the production of insurance contracts. Upon receiving the executed confidentiality order from you, GU will make available the applicable insurance contract for inspection and copying.

**Dr. Watson Interrogatory Response #4/GU Interrogatory Response #5[2]:** You did not want to be surprised at trial with a different figure regarding the number of embolizations Dr. Watson had performed. I represented that I did not have any other information to support a different figure, other than what Dr. Watson testified.

**Dr. Watson Interrogatory Response #6/GU Interrogatory Response #8[3]:** You agreed that Dr. Watson/GU could not provide information that he/it doesn't have.

**Dr. Watson Interrogatory Response #7/GU Interrogatory Response #9[4]:** Defendants believe they have answered this request to the best of their respective abilities.

**Dr. Watson Interrogatory Response #8/GU Document Request Response #19[5]:** I believe that D.C. Code § 14-307 prohibits answering this request. You have not provided me with anything to show me that this view of the statute is incorrect.

**Dr. Watson Interrogatory Response #9[6]:** I believe that D.C. Code § 14-307 prohibits answering this request. You have not provided me with anything to show me that this view of the statute is incorrect.

---

[2] Both as numbered by Plaintiffs.

[3] Both as numbered by Plaintiffs.

[4] Both as numbered by Plaintiffs.

[5] Both as numbered by Plaintiffs.

Anthony Newman, Esquire
August 3, 2007
Page 6

**Dr. Watson Interrogatory Response #10/GU Document Request #20[7]:** You agreed that Dr. Watson could not answer the part of the question regarding whether the FDA sent correspondence to GU. You agreed that GU could not answer the part of the question regarding whether the FDA sent correspondence to anyone at GU.

**Dr. Watson Interrogatory Response #11/GU Interrogatory Request #13[8]:** You agreed that information regarding the reimbursement for medical procedures by third parties is distinctly within the particular patient's possession, custody, or control. To the extent you are asking for information regarding other patients, if it were possible to provide such information, it would violate § 14-307. To the extent you are asking for information regarding reimbursement for Ms. Kerris's medical procedures, you agreed that information from Blue Cross/Blue Shield, Ms. Kerris's insurer, that information is distinctly within Plaintiffs' possession, custody, or control. We have been asking Plaintiffs to execute Blue Cross/Blue Shield's particular release since March 2006, but have not received one. We are again enclosing the request. **Please have your clients execute the attached Release to Blue Cross/Blue Shield so that we may all have this information.**

**Dr. Watson Interrogatory Response #13/GU Interrogatory Response #15[9]:** You agreed that we could not provide what we do not have. Dr. Watson testified as to this Request and that is the information with which we provided you.

**Dr. Watson Interrogatory Response #14/GU Interrogatory Response #15[10]:** Your Requests include a legal conclusion. Defendants believe that asking for a legal conclusion in an interrogatory is improper; however, Defendants have answered this Request as best as they are able.

**GU Interrogatory #19[11]:** Enclosed with this letter is Defendant GU's Response.

At our meet and confer, you referenced "Procurement Forms" as documents you have seen at other hospitals and which might contain information regarding the procurement of Histoacryl®. With this new information, I am actively searching for documents that are

---

[6] As numbered by Plaintiffs.

[7] Both as numbered by Plaintiffs.

[8] Both as numbered by Plaintiffs.

[9] Both as numbered by Plaintiffs.

[10] Both as numbered by Plaintiffs.

[11] As numbered by Plaintiffs.

"Procurement Forms" or like "Procurement Forms" in order to glean the information you seek. That search is ongoing and I will immediately let you know if any additional information regarding the procurement of Histoacryl® is found. I am also trying to locate someone from billing who has knowledge of billing codes in the November 1998-March 1999 time frame such that I can find information on that topic for you. I am also trying to locate the former Chair of the Neuroradiology Department who may know whether there was a "Policy and Procedures" for embolizations during the November 1998-March 1999 time frame. Again, because it is over nine years ago obtaining such information is difficult, but my search is ongoing and I will immediately let you know if I am able to locate additional material.

Lastly, you reiterated your request that I look for the IRB material referenced by Ms. Sheila Zimmet during her deposition that stemmed from 1990. I have completed my search for those documents and find that, beyond my objections as stated in Defendants' Responses to Written Discovery that information, *inter alia*, from the IRB from January 1, 1990 to March 3, 1999 is overbroad, but there are no responsive documents regarding your Request for IRB documents regarding Histoacryl® and/or Lipiodol® from January 1, 1990 to March 3, 1999.

At Ms. Zimmet's deposition, you requested documents from the IRB related to NBCA (Avacryl®) from 1990. *See* Deposition of Sheila Cohen Zimmet, July 23, 2007, at 49. I believe this new request is not only objectionable for all of the grounds previously stated in your Requests for IRB documents related to Histoacryl® and/or Lipiodol, but also invades the qualified privilege set out in D.C. Code § 44-805. Enclosed as well is my response to your informal request at Ms. Zimmet's deposition.

Sincerely,

*Megan E. Hills*

Megan E. Hills

Enclosures: As stated

cc: Andrew Greenwald, Esq. (with enclosures)
Wendy Wyeth, Esq. (with enclosures)