UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>Defendants. | Civ. Act. No. 1:05CV02086 (PLF) (AK)<br><br>Judge Paul L. Friedman<br><br>Magistrate Judge Alan Kay |

## DEFENDANTS'[1] OPPOSITION TO
## PLAINTIFFS[2]' MOTION TO RE-DEPOSE SHEILA COHEN ZIMMET

Defendants' oppose Plaintiffs' Motion to Re-Depose Sheila Cohen Zimmet[3] to the extent Plaintiffs seek to expand the scope of a limited privilege waiver in order to invade the privileged legal processes of Defendant Georgetown University or to question Sheila Cohen Zimmet, Esq. ("Ms. Zimmet") on any topic other than that of the newly-produced notes themselves (Plaintiffs had a full opportunity to ask Ms. Zimmet questions on any other topic during her previous deposition, and therefore questions dealing with topics other than the notes

---

[1] Defendant Georgetown University ("GU") and Defendant Vance E. Watson, M.D. ("Dr. Watson") are collectively referred to as "Defendants."

[2] Plaintiff Felice Iacangelo and Plaintiff Cicily Iacangelo are collectively referred to as "Plaintiffs."

[3] Sheila Cohen Zimmet was originally deposed on July 23, 2007 in this matter.

would violate Federal Rules of Civil Procedure[4] regarding second depositions of individuals

without any showing of need being made). Defendants would not have opposed a request from

Plaintiffs to re-depose Sheila Cohen Zimmet limited to the six (6) pages of notes that were not

located and produced until after her deposition, however, Defendants were not given an

opportunity to consent to Plaintiffs' motion in that respect because Defendants were not

conferred with regarding the filing of this motion (as the absence of a Fed. R. Civ. P. 37

Certificate from Plaintiffs' Motion shows), thereby forcing Defendants to incur the legal fees and

costs associated with setting forth a position in this pleading. Per the Rule and applicable

precedent, Plaintiffs' motion should be denied in whole because Plaintiffs failed to comply with

Fed. R. Civ. P. 37 and Local Civil Rules of Procedure ("LCvR") 7(m) by failing to confer prior

to filing this motion and by failing to file a certificate detailing such conferral;[5] however, if

Plaintiffs agree to the limitation of the questions to the six (6) pages of notes described above,

Defendants will voluntarily consent to this request and withdraw the opposition so as to avoid

needless legal fees being incurred by both sides. In the alternative, Defendants respectfully

request that Plaintiffs' motion be denied insofar as it seeks to obtain privileged testimony outside

the scope of Defendants' privilege waiver and fails to obey Local Rule 7(m).

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs' Amended Complaint contains a series of claims alleging at their crux,

medical malpractice against Defendants based on a series of medical treatments that Dr. Watson

---

[4] Hereinafter referred to as "Fed. R. Civ. P."

[5] *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006) ("If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion **will be** denied." (citations omitted; emphasis added)); *United States v. Diabetes Treatment Ctrs. of Am.*, 235 F.R.D. 521, 529 (D.D.C. 2006); *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) ("If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied.").

provided on Plaintiff, Mrs. Karyn Kerris, in November 1998-March 3, 1999. *See* Amended

Complaint ("Am. Compl."). The central issue of Plaintiffs' case is whether Dr. Watson breached

the standard of care (whether embodied in a statute or not) and if that breach was the cause-in-

fact of Mrs. Kerris's injuries. *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 578 (D.C.

1996) ("plaintiff must establish the applicable standard of care, show that the defendant violated

that standard, and **that the violation was the proximate cause of the injury.**" (Emphasis

added)).[6] Plaintiffs also allege "lack of informed consent," "breach of fiduciary duty, punitive

damages, and negligence *per se*," Plts.' Opp'n Def. Mot. Protective Order[7] at 9, which claims

focus on Dr. Watson's use of the medical devices, Histoacryl® ( "Histoacryl") and Lipiodol®

("Lipiodol") in his treatment of Karyn Kerris ("Mrs. Kerris"), which had not been submitted to

the FDA[8] for approval. As proof of Dr. Watson's alleged negligence, Plaintiffs assert that Dr.

Watson should allegedly not have used unapproved FDA devices to treat Mrs. Kerris without

first having received approval to do so from Georgetown University Hospital's ("GUH")

Institutional Review Board ("IRB"). *See* Am. Compl.

---

[6] **The violation of a regulation "does not, without more, meet the 'cause in fact' requirement of proximate causation.** On that element, no presumption can relieve the plaintiff of her burden of proof." *Twyman v. Johnson*, 655 A.2d 850, 852 n.4 (D.C. 1995) (citations omitted; emphasis added); *see also Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979) (*quoting Kosberg v. Wash. Hosp. Ctr, Inc.*, 394 F.2d 947, 949 (D.D.C. 1968) (per curiam) (In a professional negligence case, the plaintiff bears the burden of presenting evidence "'which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of.'").

[7] "Plts.' Opp'n Def. Mot. Protective Order" refers to Plaintiffs' Opposition to Defendants' Motion for Protective Order to Prohibit the Depositions of High-Level Individuals, filed May 2, 2007.

[8] "FDA" refers to the federal Food and Drug Administration.

On May 31, 2007, during his second deposition, Dr. Watson was asked whether he believed that Histoacryl was illegal at the time he used it on Mrs. Kerris. Ex. 1, 5/31/07 Tr.[9] at 128. Dr. Watson answered that he did not. *Id.* at 128-130. Plaintiffs' counsel inquired further, and Dr. Watson responded to all of Plaintiffs' questions on the issue. Dr. Watson waived his personal privilege (but cannot waive the corporate privilege of Defendant GU, *Alexander v. F.B.I.*, 198 F.R.D. 306, 315 (D.D.C. 2000) ("a corporate employee cannot waive the corporation's privilege" (quotation omitted))), to reveal what he remembered about a conversation with Ms. Zimmet, counsel to Georgetown University and counsel to the IRB, as to whether he should submit something to the IRB, to treat patients with unapproved FDA devices. Dr. Watson did not affirmatively inject this information as a defense and only waived his personal privilege as to this conversation insofar as was required to respond honestly to Plaintiffs' questions. Ex. 1, 5/31/07 Tr. at 129-130.

During her July 23, 2007 deposition, Ms. Zimmet recognized that Defendant Dr. Watson had waived his attorney-client privilege as to his conversation with Ms. Zimmet regarding the IRB and the unapproved FDA devices and only refused to answer questions regarding topics that were outside of her conversation with Dr. Watson, affecting the corporation's attorney-client privilege and her own work product privilege—privileges that Ms. Zimmet, many times, asserted on her own. *See e.g.* Ex. 2, Zimmet Tr. at 72 ("To the extent this information goes beyond my conversation with Dr. Watson, for which there would be a waiver, I am not going to respond."). [10] In both depositions, the witnesses clearly limited any disclosure of

---

[9] "5/31/07 Tr." refers to the transcript of Dr. Watson's second deposition, taking May 31, 2007, in *Iacangelo, et al. v. Georgetown University, et al.*

[10] The power to waive the attorney-client privilege for a corporation rests solely with its Board of Directors and officers. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-

information to Dr. Vance Watson's conversation with Ms. Zimmet regarding the unapproved substances and the IRB. Ex. 2, Zimmet Tr. at 14.

The limited waiver of privileges and protections as to Dr. Watson's conversation with Ms. Zimmet was not made by Defendants so that advice of counsel could be used as a defense (which is the context of all of the cases Plaintiffs cite). As set forth above, it was made to respond fully to Plaintiffs' questions about whether Dr. Watson should have gone through the IRB prior to using Histoacryl and/or Lipiodol to treat patients. Dr. Watson testified that Ms. Zimmet told him that he did not need to seek IRB approval because he was not conducting a clinical research study. Ex. 1, 5/31/07 Tr. at 129-130. However, being so advised by Ms. Zimmet is not a defense to any alleged liability, because Plaintiffs' claim is that it was illegal to treat patients with unapproved FDA devices without having a Pre-Marketing Approval or an Independent Device Exemption, both of which the FDA, not the IRB, grant. The only conceivably relevant issue to a resolution of this case is whether IRB approval was actually required for Dr. Watson to use an unapproved device to treat patients (and that fact is not dependant on any legal advice received or given). Defendants are not using the privileged information as a shield and a sword because it has no legal significance to any defense. Instead, Defendants revealed the privileged information in order to permit Dr. Watson to tell a complete and coherent story.

Plaintiffs seek to expand the scope of the limited privilege waiver to delve into Ms. Zimmet's legal advice to Georgetown in general. For example (as cited in Plaintiffs' Motion to Re-Depose), Plaintiffs asked whether Ms. Zimmet discussed embolization devices with any other person at the hospital. Ex. 2, Zimmet at 129. Plaintiffs asked questions about

---

49 (1985). Because Defendant GU does not wish to use the attorney-client privilege as a sword and a shield, it has not asserted its privilege as to this conversation.

Ms. Zimmet's habits in providing legal representation and whether she generally conducted investigations into whether a doctor was providing treatment or performing research (*e.g.* "In the normal course of business would you, in fact, as a lawyer, not simply take the doctor's work that he was only doing – treating patients. . . .". Ex. 2, Zimmet Tr. at 54.).   Ms. Zimmet invoked the privilege and did not answer these questions.  However, Ms. Zimmet fully testified about her conversation with Dr. Vance Watson from her recollection (and Dr. Watson fully testified about his conversation with Ms. Zimmet from his recollection).  Ms. Zimmet also testified that she only recalls one relevant conversation with Dr. Watson, so she is not withholding information about other conversations with Dr. Watson under a claim of privilege.  Ex. 2,  Zimmet Tr. at 131.

   Defendants also wish to note that Plaintiffs have tried to obtain traction in this motion (without indicating any relevance of the point) by suggesting that Defendants and Ms. Zimmet violated a court order prohibiting Ms. Zimmet from being represented at her deposition by Georgetown University's counsel.  Plaintiffs make this argument by citing to a hearing transcript and totally ignoring the controlling order issued by Judge Friedman after the hearing. Although the point is not relevant to this motion, Defendants felt compelled to respond to the allegation of wrong-doing and to point out that Defendants **did not** disobey a court order.[11]

---

[11] On June 26, 2007 the parties appeared before Judge Paul Friedman for a status hearing.  At that time, the Court was informed that Plaintiffs had raised an issue about a conflict in the simultaneous representation of Dr. Vance Watson and Georgetown University by Williams & Connolly LLP.  During the hearing, the court noted that Dr. Watson's and Ms. Zimmet's "interests are identical, unless a primary spokesperson for Georgetown says that your other client isn't telling the truth." Ex. 3, 6/26/07 Tr. at 13.  The Court also noted that "you can waive the conflict if you think there's a conflict." *Id.* at 12.  At the end of that hearing, Defendants' counsel stated that she wanted to be informed that the conflict was lifted and the Court stated "I will talk with Judge Kay and one of us will be in touch." Ex. 3, 6/26/07 at 23.  The Order, issued June 27, 2007, explicitly <u>does not</u> state that Sheila Zimmet is required to be separately represented, nor does it state that Williams & Connolly LLP had a non-waivable conflict preventing them from representing Ms. Zimmet at her deposition. Ex. 4 (June 27, 2007 Memorandum Opinion).  Strikingly, while Judge Friedman's Order required the facilitation of

## ARGUMENT

**I.**   **Plaintiffs' Motion Should be Denied For Failure to File a Certificate of Conference in Accordance with LCvR 7(m) and Fed. R. Civ. P. 37(a)(2)(B).**

As a preliminary matter, Plaintiffs' entire motion should be denied because Plaintiffs failed to comply with the Federal and Local Court Rules governing nondispositive motions. Both Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37 and Local Rule of the United States District Court for the District of Columbia ("LCvR") 7(m) require Plaintiffs to confer in good faith with Defendants in an attempt to resolve or narrow issues prior to filing any nondispositive discovery motion. Plaintiffs must also file a certificate of good faith conference together with any nondispositive motion. *See* Rule 37(a)(2)(B); LCvR 7(m); ("A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."). Moreover, this Court, in the April 11, 2007 Scheduling Order specifically admonished counsel to comply with LCvR 7m and set forth the obligations of that rule therein. *See* Ex. 5 at ¶ 13 (Scheduling Order, April 11, 2007).

There is no ambiguity that Plaintiffs were required to first confer with Defendants and then to file a certificate attesting to the attempt to resolve or narrow the issues raised in the

---

obtaining separate counsel for Dr. Watson and filing the identity of same with the Court, *id.*, the Court did not make that requirement for Ms. Zimmet. Lastly, at her deposition, Ms. Zimmet waived independent representation: "Q.   The point of the matter, Ms. Zimmet, if I may, were you made aware that the court said you could have your own counsel? Were you made aware that the  defense -- that there was an order that said, according to defendant's counsel, obtaining counsel and preparing Ms. Zimmet for deposition will take about two weeks. Were you made aware of any of those things? A.   I am aware I had that choice. Q.   **Are you, as you sit here today, waiving the right to have independent counsel?** A.   **Yes.**" Ex. 2, Zimmet Tr. at 11. Because the June 27, 2007 Order did not require Ms. Zimmet to obtain separate counsel, Ms. Zimmet knowingly elected to waive any potential conflict and exercise her right to select counsel of her choice. *Id.* at 11. Moreover, no actual conflict exists because Ms. Zimmet has confirmed Dr. Watson's testimony, not contradicted it. Ms. Zimmet, therefore, appeared for her July 23, 2007 deposition represented by Ms. Hills of Williams & Connolly LLP.

motion. And, it is clear on the face of Plaintiffs' pleading that Plaintiffs failed to comply with that requirement here as Plaintiffs' pleading omits the required certificate. *See* Plaintiffs' August 29, 2007 Motion to Re-Depose Sheila Cohen Zimmet and all attachments.

Plaintiffs' failures – both to confer and to file a certificate of conference – require this Court to deny Plaintiffs' motion. *See Ellipso, Inc., supra,* 460 F. Supp. 2d at 102; *K & R Ltd., supra,* 456 F. Supp. 2d at 52; *Alexander, supra,* 186 F.R.D. at 187; *Diabetes Treatment Ctrs., supra,* 235 F.R.D. at 529. Defendants were not even given the chance to address Plaintiffs' Motion to Re-Depose Ms. Zimmet; indeed, Defendants would have agreed to her re-deposition to the extent Plaintiffs want to question her about newly produced notes, and thus the issues presented in this motion could have been narrowed. Both counsel for Plaintiffs and Defendants were at a deposition at the offices of Williams & Connolly LLP on August 29, 2007, the day on which Plaintiffs filed their three motions, including this Motion to Re-Depose and made **no mention whatsoever** of any of these motions on that day. Plaintiffs and Defendants also conferred on motions that Defendants planned to file on August 24th. *See* Ex. 6 (Email correspondence indicating conference). Therefore, Defendants were available to confer on this motion, and Defendants – if Defendants had been conferred with – would likely have consented in part, in order to give Plaintiffs a fair opportunity to ask the witness about newly located documents.

## II.     In the Alternative, Plaintiffs' Motion Should be Denied Insofar as Plaintiffs Seek to Expand the Scope of a Limited Privilege Waiver.

Plaintiffs are seeking to further invade the attorney-client privilege and work product doctrine to go foraging in Georgetown University's legal affairs on irrelevant matters. Plaintiffs have already obtained full testimony about the relevant conversation between Ms. Zimmet and Dr. Watson (and testimony that the conversation revealed is the only conversation

that Ms. Zimmet recalls on this subject with Dr. Watson).  Ex. 2, Zimmet Tr. 131.  Plaintiffs now

seek, without any date restriction or topical limitations, free access to invade Ms. Zimmet's

clients' privileges by asking about conversations with other, non-involved, personnel of

Georgetown University, and by asking about Ms. Zimmet's practices and methods in

representing her clients.  The issue before this Court is the extent of the "subject matter waiver"

effected by Ms. Zimmet and Dr. Watson's testimony.

         A subject matter waiver extends to "material related to the testimony and

necessary to proper evaluation of it."  *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 1994 WL

330381, at *1 (S.D.N.Y. 1994).  It does not extend to every topic conceivably relevant to the

litigation; instead, the waiver serves to prevent one side from gaining an unfair advantage by

presenting selected information while denying opposing counsel access to the context.  Courts

routinely find that a limited waiver of privileges does not extend beyond the narrow subject

matter that is relevant to the dispute being litigated.  *See e.g. Hercules, Inc. v. Exxon Corp.*, 434

F. Supp. 136, 156 (D. Del. 1977) ("The privilege . . . has been found to be waived only if facts

*relevant to* a particular, narrow subject matter have been disclosed in circumstances in which it

would be unfair to deny the other party an opportunity to discover the other relevant facts with

respect to the subject matter.").  Defendants submit that, having disclosed the entire conversation

between Ms. Zimmet and Dr. Watson, and all of the notes of that conversation, Defendants have

made a full disclosure of all privileged material inside the scope of the privilege waiver.

         The court in *U.S. v. Skeddle*, 989 F. Supp. 917, 919 (N.D. Ohio 1997) developed a

helpful test to assist courts in determining the scope of a privilege waiver.  The court enumerated

that the relevant considerations include:

         1) the general nature of the lawyer's assignment; 2) the extent to which the
         lawyer's activities in fulfilling that assignment are undifferentiated as unitary

or are distinct and severable; 3) the extent to which the disclosed and
undisclosed communications share, or do not share, a common nexus with a
distinct activity; 4) the circumstances in and purposes for which disclosure
originally was made; 5) the circumstances in and purposes for which further
disclosure is sought; 6) the risks to the interests protected by the privilege if
further disclosure were to occur; and 7) the prejudice which might result if
disclosure were not to occur."

*Id.* at 919. The court further observed that: "By applying these factors, and such other factors as

may appear appropriate, a court may be able to comply with the mandate that it construe 'same

subject matter' **narrowly** while accommodating fundamental fairness." *Id.* (emphasis added).

These factors demonstrate that there is no reason to further expand the scope of the privilege

waiver. *Id.*

The first two factors enumerated in *Skeddle* direct the inquiry to the lawyer's

activities and whether the lawyer's activities can be distinguished or separated from the activities

at-issue in the waiver. Ms. Zimmet represented Georgetown University, and Dr. Watson in his

capacity as an employee, as Senior Associate Medical Center Counsel. Ex. 2, Zimmet Tr. 14.

She also necessarily represented other doctors at the hospital and any conversation she had with

other doctors, or notes of those conversations, particularly those that can be distinguished, are

not within the scope of the privilege waiver as to one consultation with Dr. Watson. Plaintiffs'

attempt to obtain information about Ms. Zimmet's conversations with other doctors or her

research or work for Georgetown is akin to a party trying to discover privileged materials

relating to an attorney's work for a different client. Such discovery would never be permitted;

and it should not be permitted here.

Factors three and four direct the court to examine the nature of the disclosure and

the purpose for which it was made and whether the disclosed and undisclosed communications

are distinct. *Skeddle*, 989 F. Supp. at 919. Dr. Watson disclosed a conversation with counsel

about whether he needed to seek IRB approval to use an FDA unapproved medical device in his treatment of patients because he had been personally accused of failing to seek that approval, and in so failing, using an illegal substance. Ex. 1, 5/31/07 Tr. at 129-130. He did not disclose only the portion of the discussion related to IRB approval. Instead, he answered every question that Plaintiffs posed at his deposition – never once claiming the privilege. *Id.* Defendants have subsequently turned over all notes relating to that conversation. Any other conversation that Dr. Watson had with Ms. Zimmet, and any other conversation Ms. Zimmet had with others at Georgetown University or other work she did for Georgetown University is distinct and not part of the same communication. Therefore, factor three does not favor a broadening of the waiver.

Factor four, the "circumstances and the purposes for which the disclosure was initially made" also does not favor a broadening of the waiver because Defendants cannot use the disclosure as a defense in this action, nor do they intend to. Plaintiffs have cited, in support of this motion, only cases that find that a subject matter waiver prevents a party from using privilege as to a sword and a shield where a party "reveals part of a privileged communication in order to gain an advantage in litigation." *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 257 (D.D.C. 2004). Those cases are inapposite here because the privileged communications were not revealed in order to gain – and do not result in – any advantage in the litigation. As with the privileged communications at issue in *Skeddle*, these communications were not offered to prove the truth of the statements – *e.g.* that IRB approval was not in fact required – but rather, to prove what Dr. Watson was told about whether he needed to seek IRB approval. Both Dr. Watson and Ms. Zimmet have already testified that there was no further conversation on this point.

Moreover, Plaintiffs' requests for information are not circumscribed in time. Any communication **after** Mrs. Kerris's last treatment in 1999 is obviously irrelevant. Privileged communications after the events at issue remain protected by the attorney client privilege. *See Wieboldt Stores, Inc. v. Schottenstein*, No. 87 C. 8111, 1991 WL 105633 (N.D. Ill., June 7, 1991) (finding that a subject matter waiver did not reach advice rendered a year after the transaction at issue.)

Factors five, six and seven direct the court to examine the purpose for which Plaintiffs seek further disclosure, the risks attendant to that disclosure, and the potential prejudice to Plaintiffs if no further disclosure is obtained. Plaintiffs have not stated a purpose for which further disclosure is sought other than that the privilege prevents "natural follow-up questions." Pl.'s Mot. at 6. Plaintiffs did not claim any prejudice that will flow as a result of Defendants' invocation of the privilege outside the scope of the waiver. *See generally*, Pl.'s Mot. Moreover, factor six specifically suggests that consideration should be given to the risks to the privilege of an expanded waiver. An unnecessary expansion of the "subject matter" waiver into unrelated areas would, as another court has observed, "actually impede the fact-finding and judicial process" by making it less likely that parties will agree to limited waivers of attorney-client privilege "for fear that such limited waivers would later be expanded by means of the application of the subject matter waiver doctrine." *Nolan v. City of Yonkers*, 1996 WL 120685, at *2 (S.D.N.Y. 1996).[12]

---

[12] This is particularly true here where enlarging the scope of the permissible inquiry, necessarily impinges on the attorney-client privilege held by the corporation, as well as Ms. Zimmet's own work product privilege.

**CONCLUSION**

**WHEREFORE,** Defendant Georgetown University and Defendant Vance E.

Watson, M.D., respectfully request that Plaintiffs' Motion to Re-Depose Sheila Zimmet be

denied in whole based on Plaintiffs' failure to file a certificate as required by the Federal and

Local rules, or in part, as set forth in the attached proposed order.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  September 7, 2007                    By:

Megan E. Hills (D.C. Bar #437340)
Zoe C. Scharff (D.C. Bar #490    )
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
mhills@wc.com
zscharff@wc.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| **Felice P. Iacangelo and Cicily Iacangelo,** ) | |
| **As Guardian of the Person and Property of** ) | |
| **KARYN A. KERRIS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civ. Act. No. 1:05CV02086 (PLF/AK)** |
| ) | |
| **Georgetown University Hospital,** ) | **Judge Paul L. Friedman** |
| **GEORGETOWN UNIVERSITY, t/a** ) | |
| **Georgetown University, and** ) | **Magistrate Judge Alan Kay** |
| **VANCE E. WATSON, M.D.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

**WHEREFORE,** upon consideration of Plaintiffs' Motion to Re-Depose Sheila

Cohen Zimmet, the Opposition thereto, any additional pleadings, and any argument thereon, it is

hereby

      **ORDERED** that consistent with Federal Rule of Civil Procedure 37 and Local

Rule 7(m) that Plaintiffs' Motion is **DENIED;**

      Or, in the alternative,

      **ORDERED** that consistent with the Federal Rules of Civil Procedure 26(b) and

26(c):

      (1) Plaintiffs' Motion is **Granted In Part**; and

      (2) The scope of the privilege waiver includes only the conversation that Ms.

Zimmet and Dr. Watson had about the substances used for embolization and whether submission

to the IRB was required, prior to the treatment of Mrs. Kerris.  The limited subject matter waiver

does not extend to privileged materials beyond that conversation; and

      (3) Plaintiffs may re-depose Ms. Zimmet limited to questions regarding the six

pages of notes produced as GU 112-118.

      **SO ORDERED,** this ____ day of _____, 2007.


_____
MAGISTRATE JUDGE ALAN KAY
United States District Court
  for the District of Columbia

Copies to:

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Wendy Wyeth, Esq.
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Plaintiffs' Counsel

Andrew Greenwald, Esq.
Greenwald and Laake
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

Megan Hills, Esq.
Zoe Scharff, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I

hereby certify that a copy of the foregoing with exhibits was served via electronic filing on the Court's

CM/ECF website on the 7th day of September 2007 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Wendy Wyeth, Esquire
> Newman, McIntosh & Hennesy
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel

_Megan E. Hills_

Megan E. Hills