UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------x
                              :
FELICE I. IACANGELO,          :
et al.                        :
                              :
          Plaintiffs          :
                              : Case No.
     vs.                      : 1:05CV02086
                              : Judge Friedman
GEORGETOWN UNIVERSITY,        :
t/a Georgetown University     :
Hospital, et al.              :
                              :
          Defendants          :
                              :
--------------------------------x

                    Washington, D.C.

                    July 23, 2007

Videotaped Deposition of:

          SHEILA COHEN ZIMMET, ESQ.,

called for oral examination by counsel for

Plaintiffs, pursuant to notice, at the Law

Offices of Williams & Connolly, 725 12th

Street, N.W., Washington, D.C., beginning at

1:28 p.m., before Zev V. Feder, CSR, a Notary

Public in and for the District of Columbia,

when were present on behalf of the respective

parties:

Feder Reporting Company
(202) 863-0000

52318160-9e3d-438e-8ca7-fe223255c8ad

1    not wish to continue this deposition, you are

2    free, as always, not to continue it.

3    Otherwise, please proceed with your questions.

4    If you do not wish to proceed with the

5    deposition, you do not -- you noticed it, you

6    received our objections in response.  You knew

7    perfectly well who was representing Ms. Zimmet

8    at this deposition.  To spring it on us on the

9    day of the deposition presumptively for some

10   strategical advantage is not only unseemly, it

11   is inappropriate.  If you wish to proceed,

12   proceed.  If you don't, then you can go to the

13   Court and explain why you didn't proceed.

14          MR. NEWMAN:  If you don't

15   apologize for the way you acted on camera now,

16   I will go to other authorities on the subject.

17   You must behave with some sense of decorum.

18   You interrupted my comments and you screamed.

19   Please, counsel, don't do that.  It is now on

20   the record in full volume.

21          BY MR. NEWMAN:

22          Q.    The point of the matter,

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 11

1    Ms. Zimmet, if I may, were you made aware that

2    the court said you could have your own

3    counsel?  Were you made aware that the

4    defense -- that there was an order that said,

5    according to defendant's counsel, obtaining

6    counsel and preparing Ms. Zimmet for

7    deposition will take about two weeks.  Were

8    you made aware of any of those things?

9         A.    I am aware I had that choice.

10         Q.    Are you, as you sit here today,

11    waiving the right to have independent counsel?

12         A.    Yes.

13         Q.    Now, before the deposition I was

14    given a copy of your CV or what purports to be

15    your curriculum vitae.  It is a two-page

16    document.

17              You can mark it as Exhibit 1.

18              Is that in fact your CV?

19         A.    (Pause).  Yes.

20              (Document referred to marked

21    Deposition Exhibit No. 1 for identification

22    and subsequently attached to the deposition.)

Feder Reporting Company
(202) 863-0000

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 14

1      MS. HILLS:  For the record, since

2  counsel is asking about the CV, I am going to

3  provide the witness with my own copy.  And if

4  there are going to be further questions on

5  different documents, I ask at a break that you

6  provide me with them such that I can make

7  copies such that the deposition may be run as

8  an examination in court where all counsel have

9  copies of the documents.

10     MR. NEWMAN:  Counsel, it is a CV

11  that you gave to me.  Please.

12     BY MR. NEWMAN:

13     Q.    My only question, if I may

14  rephrase it, was at that time in 1998 to 1999,

15  the issue in this case up to March 3, 1999,

16  what was your position at Georgetown?

17     A.    Senior Associate Medical Center

18  Counsel.

19     Q.    What does that mean?  Go ahead,

20  tell me what that means.

21     A.    I was employed in the Medical

22  Center Counsel's Office to render general

Page 54

1       Q.    That's fair enough.  Did you do

2  any investigation beyond what Dr. Watson was

3  doing beyond him coming in and saying do I

4  need to go through the IRB for this device?

5       A.    I am going to claim a privilege

6  with respect to any activity subsequent to my

7  conversation with Dr. Watson.

8       Q.    Let me ask you this.  In the

9  normal course of business would you, in fact,

10  as a lawyer, not simply take the doctor's word

11  that he was only doing -- treating patients,

12  but you would have to do some kind of

13  independent investigation to determine if that

14  was true before you could simply say no IRB?

15          MS. HILLS:  Objection.

16          I instruct you not to answer

17  insofar as the question is premised on the

18  fact that you, as a lawyer, and you have a

19  privilege to your client, the corporation, as

20  well as your own work-product doctrine

21  privilege.

22          THE WITNESS:  I am claiming

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 71

1    had known that Histoacryl was being detained

2    one or more times at the border by Customs,

3    would that have changed your view as to

4    whether Histoacryl should have been used at

5    your institution at all?

6              MS. HILLS:  Objection.  Calls for

7    speculation.

8              THE WITNESS:  I don't believe I

9    have sufficient information on that.  Grabbed

10   from whom?

11             BY MR. NEWMAN:

12        Q.    Did you know that it was being

13   detained?  I mean literally many, many, many

14   shipments were detained from Georgetown.

15   There was an issue Dr. Watson testified to

16   from GW or other institutions.  Are you aware

17   of any of that?

18             MS. HILLS:  Objection.  Calls for

19   speculation.

20             BY MR. NEWMAN:

21        Q.    No.  Just are you aware of that?

22        A.    I don't have specific information.

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 72

1    To the extent this information goes beyond my

2    conversation with Dr. Watson, for which there

3    would be a waiver, I am not going to respond

4    to it.  But I will tell you, I don't have any

5    specific information.  My information was that

6    it was readily gotten through.

7                    BY MR. NEWMAN:

8        Q.    Would you agree that if you knew

9    in any way Customs was seizing any of these

10   shipments, you would not say, "Go ahead and

11   use it, Dr. Watson"?

12                   MS. HILLS:  Objection.  Misstates

13   prior testimony.  Assumes facts not in

14   evidence.  And calls for speculation.

15                   BY MR. NEWMAN:

16       Q.    We have to ask this question in

17   this case.  If you were told that there had

18   been seizures of Histoacryl on the border from

19   Canada because the device was adulterated in

20   Class III, would you have still told

21   Dr. Watson it was okay to use that device,

22   understanding you were not told?

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 129

1          BY MR. NEWMAN:

2          Q.    Did you discuss the issue of the

3   embolization devices used by Dr. Watson, be

4   they referred to as blue, n-BCA, Histoacryl,

5   Lipiodol, with any other individuals at the

6   hospital besides Dr. Watson, who we discussed?

7          MS. HILLS:   I instruct you not to

8   answer to the extent that it invades the

9   attorney-client communication and -- the

10  attorney-client communication.  To the extent

11  you can answer -- also, because it is

12  overbroad, and no time frame is attached to

13  it, you need to keep that in mind.

14         BY MR. NEWMAN:

15         Q.    Besides Dr. Watson, with the same

16  objections.

17         A.    I am declining to answer the

18  question as to whether there were or were not

19  any such conversations.

20         Q.    Is it your opinion that it is

21  privileged to give the name of the individual?

22         A.    Yes.

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 130

1           MR. NEWMAN:   That's all I have.

2       EXAMINATION FOR DEFENDANT DR. WATSON

3           BY MR. CLARK:

4       Q.    Ms. Zimmet, I think I identified

5   earlier.  My name is George Clark.  I have

6   been brought in as conflicts counsel for

7   Dr. Watson on this matter.  And I have just a

8   couple of questions for you.

9           One, in response to Mr. Newman's

10  question a few moments ago about your

11  conversations with Dr. Watson, you referred to

12  you meaning Dr. Watson or agent bringing it

13  over.

14          Did you discuss with Dr. Watson

15  whether he, in fact, could bring the glue into

16  the country?

17      A.    I don't have specific

18  recollection.  I know there was, during the

19  course of our conversation, the fact that it

20  came in from Canada was mentioned.  Who

21  brought it in, whether it was him or someone

22  else, I don't recall discussing that.  I do

52318160-9e3d-438e-8ca7-fe223255c8ad

Page 131

1  recall saying that whether it was him or

2  someone else, they should be totally truthful

3  with customs.  So whether he could or could

4  not, I suppose that's -- it didn't come up in

5  that context.

6        Q.    So what you told him didn't

7  depend, as far as you recall, on who brought

8  it in?

9        A.    Correct.

10       Q.    With respect to your conversations

11 with Dr. Watson about this subject, do you

12 remember whether it was one or more than one

13 conversation?

14       A.    I only recall one conversation.

15 But it is a long time ago so I am -- you know,

16 I can't be totally sure.  I recall one

17 conversation.

18       Q.    Do you recall whether, when he

19 asked you the questions that he did, that you

20 said to him -- let me strike that.

21             When he asked you the questions

22 that he did, did you tell him, "I need a

52318160-9e3d-438e-8ca7-fe223255c8ad

1      CERTIFICATE OF NOTARY PUBLIC

2          I, Zev V. Feder, the officer

3   before whom the foregoing deposition was

4   taken, do hereby certify that the witness,

5   whose testimony appears in the foregoing

6   deposition, was duly sworn by me; that the

7   testimony of said witness was taken by me in

8   shorthand and thereafter reduced to computer

9   type under my direction; that said deposition

10  is a true record of the testimony given by

11  said witness; that I am neither counsel for,

12  related to, nor employed by any of the parties

13  to which this deposition was taken; and

14  further, that I am not a relative or employee

15  of any attorney or counsel employed by the

16  parties hereto, nor financially or otherwise

17  interested in the outcome of the action.

18

19                      _____

19                      Notary Public in and for

20                      The District of Columbia

21  My Commission Expires:

21  April 14, 2012

22

Feder Reporting Company
(202) 863-0000

52318160-9e3d-438e-8ca7-fe223255c8ad