IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| **FELICE P. IACANGELO,** *et al*. : <br> : <br> : **Civil No. 1:05CV02086** <br> Plaintiffs, : <br> : **Judge Paul L. Friedman** <br> vs. : <br> : **Magistrate Judge Alan Kay** <br> **GEORGETOWN UNIVERSITY**, *et al*. : <br> : <br> Defendants. : <br> _____ | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO PROHIBIT IRRELEVANT QUESTIONING ABOUT THE *GLAZER* LAWSUIT IN DEPOSITIONS AND MOTION FOR IMMEDIATE RULING DUE TO DEPOSITION DATE OF SEPTEMBER 18, 2007**

COME NOW Plaintiffs, by and through their attorneys, and respectfully submit their opposition to Defendants' Motion for Protective Order and move this Court for an immediate ruling because the deposition of Leonard Chiazze has been set for September 18, 2007.

**I.      Introduction**

While reviewing the present motion and a subsequent pleading filed by the defendants only days ago, counsel was struck by the blatant hypocrisy between defendants two arguments. In the pleading at issue, entitled "Defendants' Memorandum in Support of the Motion for Protective Order to Prohibit Irrelevant Questions About the *Glazer* Lawsuit in Depositions" ("Memo"), defendants argue that, "[d]iscovery does not allow wholesale, unrelated inquiry into areas irrelevant to the claims of a lawsuit.  The Federal Rules of Civil Procedure do not allow discovery into unrelated matters just to see what later will be excluded." (Memo, p.1) On that basis, defendants' move the Court to prohibit discovery of Plaintiffs' counsel from questioning Leonard Chiazze about the *Glazer* litigation and lawsuit.

In arriving at their argument, Defendants ignore the facts that: a) Mr. Chiazze was a named plaintiff in that suit (a matter which is always discoverable of a deponent); b) Mr. Chiazze sat on the Institutional Review Board (IRB)(the inactions of which are a subject of this suit), c) Mr. Chaizze brought suit against *defendant* Georgetown (a named Defendant in this action); d) the subject matter of the *Glazer* suit was related to the hospital's compensation practices designed to enhance revenues (an issue in the present litigation); and e) that the *Glazer* litigation and suit occurred contemporaneously with the embolizations at issue; arguing that the requested discovery, "go[es] beyond the realm of plausibly relevant inquires" (D Memo, p. 4) and is so "unrelated" to the litigation. In fact, Defendants argue such inquiry into an unrelated matter is a clear discovery abuse." (*Id.*).

On the other hand, defendants in the more recent pleading entitled "Defendants' Memorandum in Support of Its Motion to Compel Previously Requested Materials from Plaintiffs and for Fed.R.Civ.P. 37 Attorneys Fees", ("D Memo") Defendants make the exact opposite argument demanding that unrelated materials must be produced. In arriving at their argument, Defendants ignore the facts that the deposition at issue: a) is not of any party in the present litigation; b) represents the testimony of an unnamed physician in a totally "unrelated matter," c) did not did not occur at a time relevant to this litigation, and d) will not be used as evidence by the Plaintiffs; arguing that "Rule 26 entitles a party to discover information if the information sought appears reasonably calculated to lead to the discovery of admissible evidence… [a] party may discovery information that is not privileged and 'is relevant to the claim or defense of any party.'") (D Memo, p. 5). In fact, Defendants argue failure to do so is sanctionable. (*Id.*).

Plaintiffs understand that the defense has the prerogative to shift its position as it so

chooses; however, the incongruity reveals the disingenuous nature of both pleadings. Which way does the defense want it, a tight limitation on any potentially tangential discovery or a loose license to discover any matters, even those totally unrelated to the litigation? Obviously, defense wants it both ways. Such a result would be at the best inequitable.

This Court should allow Plaintiffs to question Mr. Chiazze on matters concerning the litigation that he was involved in against Defendant Georgetown University in 1998 – 1999 because that litigation involves the economic incentives and rationale behind some of Plaintiffs' claims during the same time period. Certainly, the Court would agree that suddenly requiring staff to generate income revenue in order to maintain their employment status, a policy that affected the **entire** staff of Georgetown University Medical Center (not just "tenured" employees as defense counsel asserts), would provide the Court and the jury with potential motivations and intentions behind Defendants acts and omissions alleged in the Amended Complaint.

II. **This Court Should Allow Plaintiffs To Question Mr. Chiazze On Any Matter Relevant To This Case Or Any Matter Calculated To Lead To The Discovery Of Admissible Evidence.**

Simply put, the Federal Rules of Civil Procedure ("FRCP") provide for discovery into any matter "that is relevant to the claim or defense of any party… Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FRCP 26(b)(1).

The facts of this case demonstrate that testimony concerning the economic positions of faculty members and the financial condition of Defendant Georgetown University is relevant. The Court need only look to the *Glazer* complaint from which this discovery dispute arose.

In *Glazer et. al. v. Georgetown University et. al.*, the plaintiffs, including Mr. Chiazze, alleged that the new Faculty Compensation Guidelines "spelled out the productivity measures for

3

Medical Center faculty"[1] and "represented 'a ***profound cultural change*** for tenured faculty members at the Medical Center ***and for the University as a whole***.'" (See Complaint, attached hereto as Exhibit 1, p. 13, ¶¶ 51-52, emphasis added). The Complaint also stated:

> [t]he Guidelines made clear that henceforth **each Medical Center faculty member's compensation** would be determined ***only in reference to the faculty member's income generating activities*** and not, as in the past, on the basis of the faculty member's achievement of excellence in teaching, scholarship and service.

(*Id.* at ¶ 53, emphasis added). Finally, and perhaps most telling, was the allegation that the Guidelines:

> ***further required the faculty to fund a specified portion of their salaries from external sources, a system later characterized as an 'eat what you kill' approach***.

(*Id.* at ¶ 54, emphasis added). The complaint then states that, despite Georgetown University's Grievance Panel recommendation to forego the new salary plan, Defendant Georgetown University implemented it anyway, retroactive to July 1, 1998. (*Id.* at p. 16, ¶70).

While defense counsel may allege that the *Glazer* lawsuit alleges "breaches of contract relating **solely** to those tenure rights," a reading of the complaint shows that not to be the case. (Memo, p. 4, emphasis in original). Clearly, the entire faculty (including Defendant Watson) and, in fact, the entire cultural climate of Georgetown University was affected by these new Guidelines. Moreover, whether Defendant Watson was or was not a tenured professor at the time does not mean that Defendant Georgetown did not have an individualized profit motive which fostered the illegal use of unapproved substances for embolizations by its staff in order to raise revenues and put them at the forefront of interventional neuroradiology.[2] One need look no

---

[1] Dr. Watson became a full-time faculty member of the Medical Center on September, 1, 1994.
2 It is important to remember that Dr. Watson is not the only defendant in this action. Defendant Georgetown

4

further than Defendants' own website to see that they are still trying to position themselves, in their own words, as having "an established reputation for the treatment of complex brain and spinal disorders." (See, http://www.georgetownuniversityhospital.org/body.cfm?id=566, visited 9/12/07). Certainly, it would have boosted their reputation and income in 1998-1999 if they could establish a reputation for the treatment of Grade V AVMs (for which the majority of practitioners would not dare treat).[3]

Plaintiffs have moved this Court to Amend their Complaint to re-plead fraud with the requisite particularity. Punitive damages are, and have been, a viable claim in the Amended Complaint. This Court has stated recently:

> "[p]unitive damages may be awarded for conduct that is willful and outrageous, exhibits reckless disregard for the rights of others, or is aggravated by evil motive, actual malice, or deliberate violence or oppression." Moreover, the Supreme Court has stated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant[s'] conduct," which should be determined using such factors as whether "[1] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [2] the target of the conduct had financial vulnerability; [3] the conduct involved repeated actions or was an isolated incident; and [4] the harm was the result of intentional malice, trickery, or deceit, or mere accident."

*Bates v. Northwestern Human Services, Inc.*, 466 F.Supp.2d 69, 104 (D.D.C.,2006) (quoting *Cambridge Holdings Gp. v. Fed. Ins. Co.,* 357 F.Supp.2d 89, 97 (D.D.C.2004), *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575 (1996) (footnote omitted) and *State Farm Mut. Auto. Ins.*

---

University is another defendant with its own motivation to "fast-track" any procedures that would raise revenue and boost their reputation to help their current financial situation. The issue of tenure aside, Georgetown was obviously subject to and responsible for its own policies.

3 Drawing patients like Mrs. Kerris is quite profitable. For after embolization, successful or not, Georgetown University becomes the treating hospital for all complications or follow-up procedures. That is what occurred in this case. Due to complications, Georgetown University, over the last nine years, has received and continues to receive substantial revenue from providing medical services to Mrs. Kerris.

*Co. v. Campbell,* 538 U.S. 408, 419, (2003) (citation omitted).

Based on this reasoning, the information that Mr. Chiazze can provide concerning the allegations he made in his complaint against Defendant Georgetown University are certainly relevant to the overall reprehensibility of Defendants' conduct and the reckless disregard for the health or safety of others. Defendant Georgetown University was putting its own financial situation above the professional judgment of its medical staff by forcing them to make decisions based on income potential rather than safe and sound science. In fact, this conduct was so reprehensible that twelve employees risked their reputations and faced retribution and/or termination by suing their employer rather than subject themselves to the unethical and potentially patient-endangering policy. Further, any insight into the cultural and/or economic climate created by Defendant Georgetown University is critical information for Plaintiffs' burden of proof concerning the motivation, malice, intent and condition of mind required for the allegation of fraud as required under FRCP 9(b).

Defense counsel's unsupported statement that "Dr. Watson's conduct at issue in this litigation could not have been impacted by the GU policies at issue in the *Glazer* litigation" is not testimonial evidence. This Court has stated that a declaration by counsel or another party does not substitute for the necessity of deposing a party on the issue.

> A declaration "is simply not an adequate substitute for live testimony," such as a deposition. *Alexander v. FBI,* 186 F.R.D. 113, 121 (D.D.C.1998). "[S]uch an approach eschews the opportunity for opposing counsel to probe the veracity and contours of the statements. Furthermore, counsel propounding the. question is denied the opportunity to ask probative follow-up questions." *Id.* Our Court of Appeals has emphasized the importance of depositions among the discovery tools available to a litigant. *Founding Church of Scientology v. Webster,* 802 F.2d 1448, 1451 (D.C.Cir.1986) ("Depositions ... rank high in the hierarchy of pretrial, truth-finding mechanisms."). In the face of

6

>this case law, is it unreasonable to conclude that a declaration
>would provide an adequate substitute for the type of information
>Plaintiff sought in his demand.

*Cavanaugh v. Wainstein*, 2007 WL 1601723, *10 (D.D.C. 2007). (As this decision is currently a Slip Copy, Plaintiffs have attached a courtesy copy of the case attached hereto as Exhibit 2).

It is also interesting to note that the defense fails to mention a key point in their procedural history.[4] While it is true that Magistrate Kay's Order of July 18, 2007 listed only two deponents and excluded Mr. Chiazze from the list, Magistrate Kay clarified his ruling at both the telephone conference on July 20, 2007 and on August 15, 2007. In those conferences, Magistrate Kay told counsel that its ruling was intended to only limit the number of deponents plaintiffs could depose who sat on the IRB, and not to limit Plaintiffs' choice of who those deponents would be. Magistrate Kay stated that Plaintiffs were free to substitute Mr. Chiazze for one or the other if they wished. Immediately after the Court's ruling, defense counsel asked for Plaintiffs' counsel's agreement to limit the scope of Mr. Chiazze's deposition. After Plaintiffs' counsel refused such a limitation, defense counsel asked the Court for a reconsideration of its Order, to which the Court replied that it could see no reason to limit the scope of Plaintiffs' discovery deposition.

Thus, even the title of Defendants' present motion is misleading. Given the Magistrate's Order, the present pleading should have been entitled a "Motion to Vacate Magistrate Kay Ruling allowing Plaintiffs to Depose Leonard Chiazze as to the *Glazer* Complaint." The title further confuses the issue by referencing "*Depositions*," inferring that there will be a multitude

---

[4] Or for that matter anywhere else in their Memorandum.

of depositions into this matter. This is misleading, for the subject of the *Glazer* lawsuit is not expected to be referenced in any other depositions. The only person whom Plaintiffs' plan to depose regarding *Glazer* is Leonard Chiazze, unless, of course, something unexpected arises.

### III. Conclusion

Since there are allegations in this case that address conduct that may have been motivated by Defendant Georgetown University's mandate to increase revenue, the *Glazer* case demonstrates that financial motive is relevant to this litigation. Further discovery into *Glazer* may produce other evidence regarding the economic climate at Georgetown and its *laissez-faire* attitude regarding its employees' use of frontier medicine, including the use of Class III illegal devices. Plaintiffs, under the Federal Rules governing discovery as well as the case law in this District, should not be denied the opportunity to at least inquire into Mr. Chiazze's knowledge of such issues.

Finally, as time is of the essence because the deposition of Mr. Chiazze is currently set for September 18, 2007, counsel respectfully requests that this Court rule on this issue as soon as possible to afford time to prepare for Mr. Chiazze's deposition.

>Respectfully submitted,
>By:      /s/ Anthony Newman
>Anthony G. Newman
>NEWMAN, MCINTOSH & HENNESSEY, LLP
>7315 Wisconsin Ave., Suite 700E
>Bethesda, MD 20814
>(301) 654-3400
>
>     /s/ Andrew E. Greenwald
>Andrew E. Greenwald
>JOSEPH, GREENWALD & LAAKE, P.A.
>6404 Ivy Lane, Suite 400
>Greenbelt, MD 20770
>(301) 220-2200
>*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via electronic filing on the Court's CM/ECF website on September 12, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
Zoe C. Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

                                                                    ___/s/ Anthony Newman_____
                                                                      Anthony Newman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

**FELICE I. IACANGELO**, *et al*.          :
                                                                  :
                                                                  :      **Civil No. 1:05CV02086**
                  Plaintiffs,             :
                                                                  :      **Judge Paul L. Friedman**
vs.                                                           :
                                                                  :      **Magistrate Judge Alan Kay**
**GEORGETOWN UNIVERSITY**, *et al*.   :
                                                                  :
                  Defendants.        :
_____

# ORDER

UPON CONSIDERATION of the Defendants' Motion for Protective Order to Prohibit Irreelevant Questioning About the *Glazer* Lawsuit in Depositions, and any Opposition and Reply thereto, it is this _____ day of _____, 2007, by the United States District Court for the District of Columbia,

**ORDERED**, that Defendants' Motion for Protective Order to Prohibit Irrelevant Questioning About the *Glazer* Lawsuit in Depositions is hereby **DENIED**.

_____
The Honorable Alan Kay
Magistrate Judge
United States District Court for the District of Columbia

**Copies to**:

Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald

JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770


Megan Hills, Esq.
Nicolas Muzin, Esq.
Zoe C. Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005