## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE P. IACANGELO,** *et al*. | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

_____

### PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO RE-DEPOSE SHELIA COHEN ZIMMET

COME NOW Plaintiffs, by and through their attorneys, and respectfully submit this Reply clarifying certain erroneous arguments found in the Opposition. While the Opposition is riddled with misstatements, most issues were adequately addressed in plaintiffs' Memorandum. Therefore, this Reply will focus only on the glaring fabrication alleging some failure to "confer" prior to the filing of the Motion.

Once again Defendants make arguments of form over substance and blatantly misstates facts in order to curry favor for its position. Defendants argue, *inter alia*, that the Motion must fail as a result of "[p]laintiffs' failures – both to confer and to file a certificate of conference," (Opp., p.8), a conference that defendant's argue must be memorialized by a certificate of a good faith conference under Local Rule Civil Procedure 7(m). *Id.* at p 7. While it is true that there was no filing of a Certificate, (which is now attached hereto), the argument that there had not been a conference between the parties as to the issue[1] is ludicrous.

_____

1 The issue is not, as defense would like to couch it, a request for re-deposition of Ms. Zimmet based on six (6) pages of notes the defense withheld from plaintiffs until well after the deposition – which were requested by notice

The deposition of Ms. Zimmet was taken on July 23, 2007.  No less than thirteen (13) times defense counsel direct Ms. Zimmet not to answer the question based on attorney-client privilege (on several other occasions Ms. Zimmet chose on her own to invoke the privilege). Cleary, the entire deposition can be argued to be a "conference" on these issues.  Moreover, Defendants' position was undaunted, causing the deposition to end without full discovery of Ms. Zimmet.  The chance to cure the issues, by any agreement of the parties, had passed.

The deposition aside, there were other interactions regarding the precise subject matter of the Motion.   While the defense chose to ignore the actual interactions between counsel, plaintiffs' counsel did contact defense counsel by letter on August 10, 2007, some fourteen business days after Ms. Zimmet's deposition, and re-addressed the issue:

> Additionally, we now have the issue of Shelia Zimmet's refusal to answer certain questions regarding the same subject for which the attorney-client and work product privileges were waived by both her and Dr. Watson.  Given your steadfast position during Ms. Zimmet's deposition, it is clear that the Court must also be involved in resolving the extent and nature of the waiver.

(plaintiff's counsel letter to Defense counsel dated August 10, 2007, attached hereto as Exhibit 1).  Then, on August 14, 2007, in significant detail, Plaintiffs memorialized discussions with defense counsel.

### Shelia Zimmet and her waiver of the attorney client privilege:

> How can you argue that "this was the first time [you] heard any criticism from [me] of Shelia Zimmet's deposition?" There were countless "criticisms" raised by me during her deposition about the manner you and she attempted to carve-out the attorney client/work product privilege.   Ms. Hills, contrary to the Court's

---

*duces tecum* to be produced at the deposition – the subject to which the defense now magnanimously agrees to allow plaintiffs' to re-depose Ms. Zimmet.  The issue, instead, is the re-deposition regarding the thirteen plus questions she refused to answer based on attorney-client privilege.  That is the issue and based on the arguments found in the Opposition, is obviously one that can only be decided by the Court.  Certificate or not, we would be in the same place.

Order, you addressed these issues on behalf of Ms. Zimmet some twenty (20)times as to those issues, and on at least at least thirteen (13) of those **directed her not to answer the question**.  While the list below is not exhaustive, it is demonstrative.

I) Question on page 15

4  Q.   Did that general medical advice
5  include the decision as to whether certain
6  devices could be used at the institution?
6      MS. HILLS:  Objection.
7      I instruct you not to answer.
8  Attorney-client privilege on behalf of the
9  corporation.
10     BY MR. NEWMAN:
11     Q.   Now, Ms. Zimmet, I understood that
12  you waived the right to counsel.  Do you
13  understand that you are not bound by this
14  counsel if you wish to answer that question,
15  assuming that the court intended you to have
16  private counsel?
17     A.   I claim the privilege.

II) Question on page 20

13     Q.   Ms. Zimmet, to your recollection,
14  so, again, it saves us a lot of time and
15  effort, did you do any kind of even legal
16  research involving Histoacryl or Lipiodol at
17  any time prior to my involvement in this case?
18       MS. HILLS:  Objection.  I instruct
19  you not to answer in terms of your work
20  product doctrine privilege, and also the
21  attorney-client privilege on behalf of the
22  corporation.
P21
1       THE WITNESS:  I assert the
2  privilege.

III) Question on page 22
11     Q.   If there was a question that came
12  to the legal department or to you in the IRB
13  capacity about a device, and let's be
14  specific, about an adulterated device that was
15  going to be used at your institution, who
16  would be the one who would do the research,
17  determine if it could be used, or produce any
18  documents regarding that subject?
19       MS. HILLS:  Objection.  Again,
20  because it was directed as a question that was
21  presented to the legal office, to the extent
22  this invades attorney-client privilege or a
       (Page 23)
1  work-product doctrine privilege, I instruct
2  you not to answer.  However, if you can answer
3  the question outside of those parameters, you
4  may answer.
5       I also lodge the objection that it
6  assumes facts not in evidence.

7        THE WITNESS:  To the extent you
8    are asking a question about an issue coming to
9    the legal office and someone making a
10   determination that a legal question or problem
11   exists that requires to be researched,
12   investigated, I am going to claim the
13   privilege on it.

IV) Question on page 54
1        Q.    That's fair enough.  Did you do
2    any investigation beyond what Dr. Watson was
3    doing beyond him coming in and saying do I
4    need to go through the IRB for this device?
5        A.    I am going to claim a privilege
6    with respect to any activity subsequent to my
7    conversation with Dr. Watson.
8        Q.    Let me ask you this.  In the
9    normal course of business would you, in fact,
10   as a lawyer, not simply take the doctor's word
11   that he was only doing -- treating patients,
12   but you would have to do some kind of
13   independent investigation to determine if that
14   was true before you could simply say no IRB?
15       MS. HILLS:  Objection.
16       I instruct you not to answer
17   insofar as the question is premised on the
18   fact that you, as a lawyer, and you have a
19   privilege to your client, the corporation, as
20   well as your own work-product doctrine
21   privilege.
22       THE WITNESS:  I am claiming
(Page 55)
1    privilege.

V) Question on page 129
1        BY MR. NEWMAN:
2        Q.    Did you discuss the issue of the
3    embolization devices used by Dr. Watson, be
4    they referred to as blue, n-BCA, Histoacryl,
5    Lipiodol, with any other individuals at the
6    hospital besides Dr. Watson, who we discussed?
7        MS. HILLS:  I instruct you not to
8    answer to the extent that it invades the
9    attorney-client communication and -- the
10   attorney-client communication.  To the extent
11   you can answer -- also, because it is
12   overbroad, and no time frame is attached to
13   it, you need to keep that in mind.
14       BY MR. NEWMAN:
15       Q.    Besides Dr. Watson, with the same
16   objections.
17       A.    I am declining to answer the
18   question as to whether there were or were not
19   any such conversations.
20       Q.    Is it your opinion that it is
21   privileged to give the name of the individual?
22       A.    Yes.

What need would there have been for further discussion?

Your position was extremely clear and the only opportunity to repair the situation had passed when the deposition ended.

I must also point out that you are not Ms. Zimmet's lawyer. Judge Freidman made this clear, "I am ruling that you cannot represent Shelia Zimmet at her deposition" (trans. June 26, 2007 Status Hearing before Judge Friedman, p. 12, ll 3-4) Moreover, when I read the relevant portion of the Order to Ms. Zimmet during her deposition, and followed up with: "Q: Are you, as you sit here today, waiving the right to have independent counsel," she answered "Yes."   (Zimmet depo. page 11 lines 10-12).   It was Ms. Zimmet's choice to waive her right to counsel, but it did not bestow upon you right to ignore the Court's Order.

Ms. Zimmet waived her and Georgetown's attorney-client privilege.  This case involves, *inter alia*, defendant Vance Watson, M.D.'s, an employee of defendant Georgetown, conversation with Shelia Zimmet, Esq., Georgetown's Assistant General Counsel wherein Ms. Zimmet told Dr. Watson that he could used unapproved devices without IRB approval.  While you allowed Dr. Watson and Ms. Zimmet to give their accounts of these "attorney-client" conversations, you (and she) refused to allow my follow-up questions on the same subject matter.  Your attempts to stop Mrs. Zimmet's responses, and her refusals to answer the questions, were, quite improper.  As Judge Friedman aptly held,

Under the doctrine of "implied" or "at issue" waiver, the "attorney-client privilege is waived when the client places otherwise privileged matters in controversy." *Idea Electronic Security Co. v. International Fidelity Insurance Co.,* 129 F.3d 143, 151 (D.C.Cir. 1997).  The purpose of the implied waiver doctrine is to prevent"an abuse of the privilege," that is, to prevent confidentiality protected by the privilege from being used, "as a tool for manipulation of the truth-seeking process...[A party asserting the privilege] cannot be allowed, after disclosing as much as [it] pleases, to withhold remainder." *In re Sealed Case,* 676 F.2d 793, 807 (D.C.Cir1982)... (a party"may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").  Where the content of the attorney-client communications are "inextricably merged with the elements of plaintiff's case," "to deny access to them would preclude the court from a fair and just determination of the issues." *Hearn v. Rhay*, 68 F.R.D.574, 582(E.D.Wash1975).

*Minebea Co., LTD., v. Papst*, 355 F.Supp2d 518, (D.D.C. Cir.2005).

(plaintiff's counsel letter to Defense counsel dated August 14, 2007, attached hereto as Exhibit 2). The only response that came from defense counsel was dates for the conference call with the Court.

On August 15, 2007, the conference call took place.  There in the *presence of the Court* Plaintiffs argued their position that there had been a waiver of the attorney-client privilege requiring a re-deposition of Ms. Zimmet, to which the defendants raised counter-arguments in nauseating detail.   Following the arguments before the Court, Magistrate Kay recognized that the conflict could not be resolved, and gave Plaintiffs permission to file the present motion. Clearly, this constituted a "good faith conference" between the parties as to the issues on the present Motion.  Indeed, Plaintiffs went through the strict procedures for filing a motion as set forth by Magistrate Kay.

The Court, in its April 11, 2007 Scheduling Order, established the procedure for filing a motion based on a discovery dispute.  Judge Friedman mandated that "[c]ounsel must resolve all discovery disputes or bring them to the Court's attention in a timely manner …[a]ll discovery matters have been referred to Magistrate Judge Allen Kay."   Magistrate Kay further refined this procedure by telling counsel that brining the matter "to the Court's attention" did not simply mean that a motion could be filed after the parties conferred and met an impasse (as is required to file a Local Rule Civil Procedure 7(m) certificate).  Instead, the moving party had to schedule a three-way telephonic conference between counsel, opposing counsel, and the Court.  Only after hearing both arguments and determining that a true dispute existed, would the Court allow the requesting party to file a Motion.  All of these procedures were followed.  Given the fact that a pre-motion conference was held in the presence of the Court, Plaintiffs did not believe the Court

6

required a certificate reminding the Court that the conference had occurred.  However, rather than belaboring the point of form over substance, the Certificate of Good Faith is attached hereto.

It is appalling that defense counsel would dare to argue that Plaintiffs' counsel never addressed the issue in any conference.  After all, defense counsel had to ignore the thirteen objections (conferences) during the deposition, ignore the August 10, 2007 letter addressing the subject of the defense's "steadfast" position on those objections, ignore the August 14, 2007 letter fully memorializing (with case law) the discussions with defense counsel, and ignore the August 15, 2007 teleconference in hopes that the Court forgot that the conference ever took place.  This is indicative of the same tactics the defense has practiced from the beginning of this litigation; if the facts do not support the argument, distort the facts.

Respectfully submitted,

By:      /s/ Anthony Newman
         Anthony G. Newman
         NEWMAN, MCINTOSH & HENNESSEY, LLP
         7315 Wisconsin Ave., Suite 700E
         Bethesda, MD 20814
         (301) 654-3400
         *Counsel for Plaintiffs*

7

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via electronic filing on the Court's CM/ECF website on September 14, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
Zoe C. Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005


_____/s/ Anthony Newman_____
Anthony Newman

8

## **Certificate of Good Faith**

In accordance with Federal Rules of Civil Procedure 37 and Local Rule of Civil Procedure 7(m) this certificate will confirm that the parties conferred on July 23, 2007 during the deposition of Ms. Shelia Zimmet, conferred on or about August 14, 2007, and that the parties again conferred on August 15, 2007 in a teleconference with the Court.  The parties could not resolve the matter at issue and, after permission was given by the Court to file this Motion, the present Motion was filed.

                                                     /s/ Anthony G. Newman
                                                    Anthony G. Newman