# NEWMAN McINTOSH & HENNESSEY, LLP

| | | |
|---|---|---|
| Anthony G. Newman (DC, MD) | THE AIR RIGHTS BUILDING | Fax: (301) 907-2975 |
| Ernest W. McIntosh (DC, MD, MI) | 7315 Wisconsin Avenue, 700E | |
| Joseph A. Hennessey (MD, DC) | Bethesda, Maryland  20814 | |
| Wendy Wyeth (MD) | (301) 654-3400 Main | |

August 14, 2007

***VIA ELECTRONIC MAIL***
Megan E. Hills, Esq.
Nicolas Muzin, Esq.
Williams & Connolly, LLP
725 Twelfth Street, NW
Washington, D.C.  20005

Dear Ms. Hills and Mr. Muzin:

As usual you attempt to obscure defendants' repeated discovery abuses by bringing to the Court's attention, again by improper *ex parte* contact, any argument to draw attention away from the real discovery issues.  I will address each issue by category.

**Documents:**

As to the BC/BS authorizations, any purported "delay" has been cured - you have received the faxed authorizations and the originals have been placed in the mail to your office. On the other hand you continue to fail to produce the following documents that are known to exist:

1) **The Georgetown University IRB Policies and Procedures Manual for 1998 - 1999**; requested in the Plaintiffs' Request for Production of Documents, which, after a thirty day extension, you told me were in the hands of Med-Star, a false statement. The documents were requested again in the Notice of Deposition of Sheila Zimmet, Esq. To date you have told me that no versions prior to 2003 exist.
2) **The IRB protocols, submissions, letters, memoranda re: Embolizations, Histoacryl or NBCA;** requested in the Plaintiffs' Request for Production of Documents, and again requested in Ms. Zimmet's notice of deposition, and are now listed in your "privilege log."  These documents were first supposedly in MedStar's possession, then were missing and now are privileged.
3) **The Billing codes specifically for Histoacryl and Lipiodol;** requested in the Plaintiffs' Request for Production of Documents had to exist or BC/BS would not have paid for the devices. You have stated that you do not know who has possession of the billing codes.
4) **The list of specific devices for embolizations that were purchased by Georgetown University Hospital in 1998 -1999;** requested in the Plaintiffs' Request for Production of Documents.  You have stated that you have inquired and there aren't any. At a minimum,

the list of devices used on Ms. Kerris must exist and should be provided.
5) **The Textbooks, Reference material, and/or pamphlets available at Georgetown University in 1998 -1999 relating to embolizations**, requested in the Plaintiffs' Request for Production of Documents, which you admitted existed and have not yet produced.
6) **All documents at Georgetown University from 1995-1999 that relate to applications to the FDA for embolic devices;** requested in the Plaintiffs' Request for Production of Documents.  You have told us that these documents are in the public domain and, therefore, you will not produce be produced.
7) **The Georgetown University Hospital Bylaws for 1998 – 1999;** (regarding experimentation, surgeries, interventions, devices, IRB, etc); requested in the Plaintiffs' Request for Production of Documents,  which after a thirty day extension you told me were in the hands of Med-Star, a false statement. Every hospital, as required by the Joint Commission, has to have these manuals, yet none have been produced.
8) **The Bills of Lading, shipping documents, receipts from Yocan Pharmaceuticals, requisition forms involved in the procurement of the Histoacryl and Lipiodol in this case;** requested in the Plaintiffs' Request for Production of Documents.  You have told me that you do not know where these documents are, but, obviously, they exist as they were purchased, shipped, received and used on our client.
9) **The Georgetown University Policies and Procedures Manual for the Department of Inverventional Neuroradiology for 1998 - 1999**; requested in the Plaintiffs' Request for Production of Documents.  Every department, as required by the Joint Commission, has to have these manuals, yet none have been produced.

As to those documents listed in the "Privilege Log," plaintiffs will request an *in camera* review of the documents by Magistrate Kay.

**Paul Kerris' deposition:**

 This is another non issue. His deposition has been set for August 22, 2007 at 10:00am; a date and time you provided as convenient.

**Shelia Zimmet and her waiver of the attorney client privilege:**

How can you argue that "this was the first time [you] heard any criticism from [me] of Shelia Zimmet's deposition?" There were countless "criticisms" raised by me during her deposition about the manner you and she attempted to carve-out the attorney client/work product privilege.   Ms. Hills, contrary to the Court's Order, you addressed these issues on behalf of Ms. Zimmet some twenty (20)times as to those issues, and on at least at least thirteen (13) of those **directed her not to answer the question**.  While the list below is not exhaustive, it is demonstrative.

I) Question on page 15
```
                    Q.   Did that general medical advice
           4    include the decision as to whether certain
           5    devices could be used at the institution?
           6          MS. HILLS:  Objection.
```

2

```
 7        I instruct you not to answer.
 8   Attorney-client privilege on behalf of the
 9   corporation.
10          BY MR. NEWMAN:
11     Q.   Now, Ms. Zimmet, I understood that
12   you waived the right to counsel.  Do you
13   understand that you are not bound by this
14   counsel if you wish to answer that question,
15   assuming that the court intended you to have
16   private counsel?
17     A.   I claim the privilege.
```

II) Question on page 20

```
13     Q.   Ms. Zimmet, to your recollection,
14   so, again, it saves us a lot of time and
15   effort, did you do any kind of even legal
16   research involving Histoacryl or Lipiodol at
17   any time prior to my involvement in this case?
18          MS. HILLS:  Objection.  I instruct
19   you not to answer in terms of your work
20   product doctrine privilege, and also the
21   attorney-client privilege on behalf of the
22   corporation.
```
P21
```
 1          THE WITNESS:  I assert the
 2   privilege.
```

III) Question on page 22

```
11     Q.   If there was a question that came
12   to the legal department or to you in the IRB
13   capacity about a device, and let's be
14   specific, about an adulterated device that was
15   going to be used at your institution, who
16   would be the one who would do the research,
17   determine if it could be used, or produce any
18   documents regarding that subject?
19          MS. HILLS:  Objection.  Again,
20   because it was directed as a question that was
21   presented to the legal office, to the extent
22   this invades attorney-client privilege or a
```
(Page 23)
```
 1   work-product doctrine privilege, I instruct
 2   you not to answer.  However, if you can answer
 3   the question outside of those parameters, you
 4   may answer.
 5          I also lodge the objection that it
 6   assumes facts not in evidence.
 7          THE WITNESS:  To the extent you
 8   are asking a question about an issue coming to
 9   the legal office and someone making a
10   determination that a legal question or problem
11   exists that requires to be researched,
12   investigated, I am going to claim the
13   privilege on it.
```

IV) Question on page 54
```
 1     Q.   That's fair enough.  Did you do
```

    2  any investigation beyond what Dr. Watson was
    3  doing beyond him coming in and saying do I
    4  need to go through the IRB for this device?
    5     A.  I am going to claim a privilege
    6  with respect to any activity subsequent to my
    7  conversation with Dr. Watson.
    8     Q.  Let me ask you this.  In the
    9  normal course of business would you, in fact,
  10  as a lawyer, not simply take the doctor's word
  11  that he was only doing -- treating patients,
  12  but you would have to do some kind of
  13  independent investigation to determine if that
  14  was true before you could simply say no IRB?
  15     MS. HILLS:  Objection.
  16     I instruct you not to answer
  17  insofar as the question is premised on the
  18  fact that you, as a lawyer, and you have a
  19  privilege to your client, the corporation, as
  20  well as your own work-product doctrine
  21  privilege.
  22     THE WITNESS:  I am claiming
(Page 55)
    1  privilege.

V) Question on page 129
    1     BY MR. NEWMAN:
    2     Q.  Did you discuss the issue of the
    3  embolization devices used by Dr. Watson, be
    4  they referred to as blue, n-BCA, Histoacryl,
    5  Lipiodol, with any other individuals at the
    6  hospital besides Dr. Watson, who we discussed?
    7     MS. HILLS:  I instruct you not to
    8  answer to the extent that it invades the
    9  attorney-client communication and -- the
  10  attorney-client communication.  To the extent
  11  you can answer -- also, because it is
  12  overbroad, and no time frame is attached to
  13  it, you need to keep that in mind.
  14     BY MR. NEWMAN:
  15     Q.  Besides Dr. Watson, with the same
  16  objections.
  17     A.  I am declining to answer the
  18  question as to whether there were or were not
  19  any such conversations.
  20     Q.  Is it your opinion that it is
  21  privileged to give the name of the individual?
  22     A.  Yes.

     What need would there have been for further discussion?  Your position was extremely clear and the only opportunity to repair the situation had passed when the deposition ended.

     I must also point out that you are not Ms. Zimmet's lawyer.  Judge Freidman made this clear, "I am ruling that you cannot represent Shelia Zimmet at her deposition" (trans. June 26, 2007 Status Hearing before Judge Friedman, p. 12, ll 3-4) Moreover, when I read the relevant portion of the Order to Ms. Zimmet during her deposition, and followed up with: "Q: Are you, as you sit here today, waiving the right to have independent counsel," she answered "Yes."

(Zimmet depo. page 11 lines 10-12).  It was Ms. Zimmet's choice to waive her right to counsel, but it did not bestow upon you right to ignore the Court's Order.

Ms. Zimmet waived her and Georgetown's attorney-client privilege.  This case involves, *inter alia*, defendant Vance Watson, M.D.'s, an employee of defendant Georgetown, conversation with Shelia Zimmet, Esq., Georgetown's Assistant General Counsel wherein Ms. Zimmet told Dr. Watson that he could used unapproved devices without IRB approval.  While you allowed Dr. Watson and Ms. Zimmet to give their accounts of these "attorney-client" conversations, you (and she) refused to allow my follow-up questions on the same subject matter.  Your attempts to stop Mrs. Zimmet's responses, and her refusals to answer the questions, were, quite improper.  As Judge Friedman aptly held,

> Under the doctrine of "implied" or "at issue" waiver, the "attorney-client privilege is waived when the client places otherwise privileged matters in controversy." *Idea Electronic Security Co. v. International Fidelity Insurance Co.,* 129 F.3d 143, 151 (D.C.Cir. 1997).  The purpose of the implied waiver doctrine is to prevent"an abuse of the privilege," that is, to prevent confidentiality protected by the privilege from being used, "as a tool for manipulation of the truth-seeking process...[A party asserting the privilege] cannot be allowed, after disclosing as much as [it] pleases, to withhold remainder." *In re Sealed Case,* 676 F.2d 793, 807 (D.C.Cir1982)... (a party"may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").  Where the content of the attorney-client communications are "inextricably merged with the elements of plaintiff's case," "to deny access to them would preclude the court from a fair and just determination of the issues." *Hearn v. Rhay*, 68 F.R.D.574, 582(E.D.Wash1975).

*Minebea Co., LTD., v. Papst*, 355 F.Supp2d 518, (D.D.C. Cir.2005).

**Dr. Chaizze's deposition:**

I want to depose Dr. Chaizze instead of deposing Dr. Yaeger.  I have repeatedly requested the substitution of Dr. Chaizze for Dr. Yeager, but you have refused.  Clearly, the Court's intervention is needed.
While both Magistrate Kay and Judge Friedman have addressed the issue of deposing two members of the IRB, if Magistrage Kay believes that the matter is best left in the hands of Judge Friedman, the motion will be filed appropriately.

**Re-deposing Vance E. Watson, MD**

Pursuant to Judge Friedman's June 27, 2007 order, which stated that, "the Court is prepared to expedite the depositions of Dr. Watson and Ms. Zimmet." (Order, June 27, 2007, p. 3), it is clear that there have been no limitation placed on re-deposing Dr. Watson.  However, it is obvious that this deposition will address the following issues raised in Ms. Zimmet's deposition: 1) that the names of the devices were never told to her by Dr. Watson; 2) that there were no elements of his procedures that represented clinical research; 3) that Dr. Watson may

5

have been the investigator on an IRB submission involving embolizations; and 4) that Dr. Watson never discussed any issues with US Customs with her regarding the use of the devices.

                                                Sincerely,
                                                /s/ Anthony G. Newman

cc. Andrew Greenwald
    Magistrate Kay's chambers