IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| **FELICE P. IACANGELO**, *et al*. : <br> : <br> : **Civil No. 1:05CV02086** <br> Plaintiffs, : <br> : **Judge Paul L. Friedman** <br> vs. : <br> : **Magistrate Judge Alan Kay** <br> **GEORGETOWN UNIVERSITY**, *et al*. : <br> : <br> Defendants. : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL (ALLEGEDLY) PREVIOUSLY REQUESTED MATERIALS FROM PLAINTIFFS AND FOR FED.R.CIV.P. 37 ATTORNEYS FEES**

COME NOW Plaintiffs, by and through their attorneys, and respectfully submit their opposition to Defendants' Motion to Compel (Allegedly) Previously Requested Materials from Plaintiffs and for Fed.R.Civ.P. 37 Attorneys Fees Protective Order, and, as reasons thereto, state as follows:

**Defense failed to follow Discovery Procedures Set Forth By Magistrate Kay thus the Motion is not properly before the Court**

The Court, in its April 11, 2007 Scheduling Order, established the procedure for filing a motion based on a discovery dispute. Judge Friedman mandated that "[c]ounsel must resolve all discovery disputes or bring them to the Court's attention in a timely manner …[a]ll discovery matters have been referred to Magistrate Judge Allen Kay." Magistrate Kay further refined this procedure by telling counsel that bringing the matter "to the Court's attention" did not simply mean that a motion could be filed after the parties conferred and met an impasse (as is required to file a Local Rule Civil Procedure 7(m) certificate). Instead, the moving party had to schedule a three-way telephonic conference between counsel, opposing counsel, and the Court. Only after

hearing both arguments and determining that a true dispute existed, would the Court allow the requesting party to file a Motion.

This present Pleading demonstrates another hypocritical behavior by defense counsel. In a prior pleading, entitled Defendants' Opposition to Plaintiffs' Motion To Re-Depose Shelia Cohen Zimmet, Defendants argued, *inter alia*, that Plaintiffs failed to follow Local Civil Rule 7(m) by failing to "confer and to file a certificate of conference," under the Local Rule. (Zimmet Opp., p. 8). While Plaintiffs established that the required meeting had taken place and that the certificate of good faith had simply not been filed, the position of the defense, at least then, was that strict adherence to the Rules of this Court is paramount. Amazingly, in the present Pleading, Magistrate Kay's three-way teleconference Order was totally ignored. While Plaintiffs easily cured the prior procedural omission by filing the Local Rule 7(m) certificate, Defendants can not cure their glaring omission since without the prerequisite conference, the Defendants did not have permission to file the present motion. While Plaintiffs' abhor arguments of form over substance (the mainstay of the last three oppositions by defense counsel), if Draconian measures are to be instituted, the present motion must be denied. Plaintiffs will, however, address the "substantive arguments" below.

**None of the "Six Separate Pleadings," Requested, Nor Could They Have Requested, the Production of a Deposition Transcript Not in the Possession of the Plaintiffs, Not Generated During The Present Litigation, And Not Involving Any of the Parties in the Present Litigation**

In summary, Defendants makes a conclusory argument that in not less than "six pleadings" the purloined deposition transcript was requested, but not produced, listing: the notice of deposition *Duce Tecum* [sic] of Felice P. Iacangelo; the notice of deposition *Duce Tecum* [sic] of Cicily Iacangelo; the notice of deposition *Duce Tecum* [sic] of Paul Kerris; the amended

notice of deposition *Duce Tecum* [sic] of Paul Kerris; the interrogatories to Phil Iacangelo, the interrogatories to Cicily Iacangelo and the request for production of documents to Phil Iacangelo. That argument is sheer nonsense.

First of all, the plain language of the *duces tecum* requests states that the requests were only for: "transcripts…**in Felice P. Iacangelo's possession**;" "transcripts…**in Cicily Iacangelo's possession**;" and "transcripts…**in Paul Kerris's [sic] possession**." (Memo pp. 2-3, emphasis added). Similarly, the plain language of the document requests only require Felice P. Iacangelo to produce: "documents…describing written or oral statements made **by you** or any other person **relating to the matters set forth in the Complaint**." (Memo p. 3, emphasis added). The plain language of the interrogatory requests only request identifications of, "all persons not previously identified by you in your responses to these responses "**who have knowledge of the facts** relating to the matters set forth in the Amended Complaint;" and identification of any documents, which have **information** to or which were **relied upon** in responding to these interrogatories." (Memo p. 3, emphasis added). None of the "six requests" related to production of the transcript at issue.

While not required to do so, since the transcript is non-evidentiary, plaintiffs' counsel is willing disclose the following regarding the transcript requested. It is a four-year-old deposition of a physician who is not a party to, a fact witness to, an expert in, or in any manner related to this litigation and, to Plaintiffs' knowledge, no party or counsel has ever contacted this individual during the course of this litigation. Further, the transcript was never in the possession of the Plaintiffs, Felice Iacangelo and Cicily Iacangelo, nor in the possession of either Paul Kerris or Karyn Kerris. It is from a prior, sealed case, filed by another plaintiff, against a different defendant. Thus, as far as the "six requests" are concerned, the document is not in

3

Plaintiffs' "**possession**;" it is not a statement "**which relates to the matters set forth in the Complaint**;" and it was not information "**relied upon**" by plaintiffs in responding to the interrogatories.[1]

**The Only Passing Reference to the Transcript is Found in Dr. Watson's Deposition**

While defense counsel attempts to spin the facts and make the argument that plaintiffs' counsel has often referenced the document in the litigation, the only *oblique* reference to the document occurred during the deposition of Dr. Watson:

```
p. 260
 3     Q.  Who was the interventional
 4  neuroradiologist that developed Onyx?
 5         MS. HILLS:  Objection; calls for
 6  speculation.
 7         BY MR. NEWMAN:
 8     Q.  No, it doesn't, does it, Doctor?
 9  He's on the West Coast.  Do you know who he
10  is?
11         MS. HILLS:  He's not at
12  Georgetown.  Calls for speculation.
13         THE WITNESS:  No I don't.
14         BY MR. NEWMAN:
15     Q.  Were you in any way involved with
16  preliminary studies on Onyx when it was done
17  in his garage?  Do you remember any of this,
18  Doctor?
19     A.  In a garage.
20     Q.  I have his testimony, Doctor.  Do
21  you know anything about the creation of Onyx?
22         MS. HILLS:  Objection; vague.

p. 261
 1         BY MR. NEWMAN:
 2     Q.  Who --
 3         MS. HILLS:  Objection; overbroad.
 4  Do not speak over my objection, Counsel.
 5  Objection; badgering the witness.  Do not
 6  threaten another witness with testimony from
 7  another case unless you intend to produce that
 8  testimony.
 9         MR. NEWMAN:  Counsel, you should
10  apologize for that raising voice.  That's
11  outrageous.
```

---

[1] While Defendants argue speciously that the Plaintiffs had a duty to object to these requests, there was no reason to do so; the requests were complied with and did not involve the transcript at issue.

```
12          BY MR. NEWMAN:
13     Q.   Now, Doctor --
14          MS. HILLS:  Object to sidebar.
15          BY MR. NEWMAN:
16     Q.   -- I only want to know if you know
17  anything about who developed Onyx.
18          MS. HILLS:  Objection; overbroad
19  and irrelevant.
20          THE WITNESS:  By the time I was
21  involved with Onyx with this trial I was
22  meeting with engineers.  I thought they
```

p. 262
```
 1  developed it.  I don't see what the relevance
 2  is.
 3          BY MR. NEWMAN:
 4     Q.   Is the benefit of Onyx in use is
 5  that it does not break up into little droplets
 6  like n-BCA?  In fact, it stays kind of sticky
 7  and remains cohesive when it's embolizing an
 8  area.
 9          MS. HILLS:  Objection; calls for
10  speculation.  Objection; irrelevant.
11          THE WITNESS:  I wouldn't say
12  that's the main benefit.  And as you see in my
13  CV, I've proctored and taught Onyx injection
14  in many, many, many hospitals and
15  universities.  And, you know, Onyx has several
16  characteristics, like one, it's non-adhesive.
17  It doesn't stick to a catheter.  What you
18  said, and you can manipulate it to go to
19  different parts of the AVM easier.  But I
20  don't see, that was not available.  I don't...
21          BY MR. NEWMAN:
22     Q.   Do you actually know when the
```

p. 263
```
 1  first five 10-K was asked for for Onyx?
 2          MS. HILLS:  Objection; calls for
 3  speculation.
 4          BY MR. NEWMAN:
 5     Q.   If you don't know, just tell me.
 6     A.   I don't know.
```

The above is the *only* reference to the deposition (testimony) in this entire litigation. The question was simply a follow-up to Dr. Watson's earlier testimony[2] that he used different cyanoacrylates, one which was named "Onyx." Plaintiffs' counsel merely asked if Dr. Watson knew its inventor; he did not. Moreover, when defense counsel yelled out in an accusatory

fashion that Plaintiffs' counsel was, "badgering the witness," and stated, "do not threaten another witness with the testimony from another case unless you intend to produce that testimony," plaintiffs' counsel simply acquiesced and asked no further questions regarding the inventor. This is no basis for the production of the transcript.[3]

**Case Law Does Not Require Production**

All of the citations relied upon by defense state the obvious and do not mandate discovery of the transcript; in fact, they argue the opposite. As Defendants correctly point out, Fed R. Civil Procedure 34(a), allows for production of material if it is in the, "possession, custody or control **of the party;**" here the parties/plaintiffs have never had possession, custody or control of the transcript. The cited Kansas decision, while not particularly authoritative, logically states that "[f]inancial records **of the defendant** in the **possession of defendant's accountant** are documents which **defendant has the legal right to obtain**." (citing *Wardrip v. Hart*, 934 F. Supp. 1282, 1286 (D. Kan. 1996). That is clearly inapposite to the present requested discovery for the transcript at issue is neither a record of the plaintiffs nor was it ever in their possession. In fact, plaintiffs are in no better legal position to obtain the transcript than the defendants. "[I]f an attorney for a party comes into possession of a document **as attorney for that party** his possession of the documents is the possession of the party, " (citing, R*ingling Brothers*, 233 F.R.D. at 212). This may be true, but, again, it is inapplicable since this attorney did not "come into possession of [this] document as attorney for [plaintiffs]."

Defendants' argument that, "a party ha[s] right of access to documents in the possession of former counsel" (citing *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,

---

2 Dr. Watson testified earlier at page 206 of his deposition: "And I've seen from Onyx to TruFill…"
3 Nor does Plaintiffs' counsel's reference to "another lawsuit" or "another case" (Memo p. 4) made during oral

S.D.N.Y. Aug. 1994) is also irrelevant. Here, we are discussing the rights of an opposing party to access documents obtained when the other party's counsel was involved **in a different matter**, retained by a **different plaintiff**. Finally, the logic that "[b]ecause a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control" (citing *Poole ex rel. Elliot v. Textron, Inc.,* 192 F.R.D. 494, 501 (D. Md. 2000), does not mean that a defendant has a right to obtain documents gathered by the plaintiff's attorney for a prior case when the attorney was **not representing** the Plaintiffs.

Assuming, *arguendo*, that defendants' position is adopted and that *any* prior deposition from *any* prior litigation which is in the possession or control of present counsel is fair game for discovery, then the scope of discovery must include all documents in possession of the *same* counsel who represented the *same* defendant on other occasions. Therefore, Williams & Connolly, LLP, should be ordered to turn over any and all transcripts involving Georgetown University and/or its employees involving any other litigation which they have in their possession. Further, discovery should not end there. It should include copies of all prior complaints against Georgetown, copies of all (defense and plaintiff) responses to requests for production of documents, answers to interrogatories, and expert designations.[4] After all, Williams & Connolly, LLP has represented Georgetown University for decades, and, according to Defendants' position, if counsel "has or has access to the transcripts [and materials], they must be produced." (Memo, p. 5) (at least under Defendants' interpretation of Fed R. Civ. P. 34).

Adoption of defense's expansive discovery philosophy would, of course, not limit

---

argument open a door to discovery of the other matter.
4 Since discovery has been re-opened by court order of August 29, 2007 (at defendant's request), attached hereto is a

discovery to merely the production of matters where Williams & Connolly, LLP, represented Georgetown University and/or its employees, it would include discovery of non-party matters (as in the present Motion) mandating that Williams & Connolly, LLP produce all documents in their possession regarding other malpractice actions, including other embolizations, expert testimony in malpractice cases, FDA submissions, and device litigation and any document that might be even remotely relevant regardless of its relationship to the present Defendants.  After all, if plaintiffs' counsel's vague references in court to other cases open the door to discovery, so did defense counsel's statements that this case is like all of her other medical malpractice cases. What is good for the goose will be great for the gander.[5]

WHEREFORE, Plaintiffs request that this Court deny Defendants' Motion to Compel (Allegedly) Previously Requested Material from Plaintiffs and for Fed.R.Civ.P. 37 Attorney's Fees as both motions are baseless.

          Respectfully submitted,

By:     /s/ Anthony Newman
       Anthony G. Newman
       NEWMAN, MCINTOSH & HENNESSEY, LLP
       7315 Wisconsin Ave., Suite 700E
       Bethesda, MD 20814
       (301) 654-3400

       /s/ Andrew E. Greenwald

---

supplemental request for production of documents relating to the above.

5 Finally, Ms. Zoe C. Scharff's Affidavit misstates the facts.  Plaintiffs' counsel on several occasions asserted the position that the transcript is not part of the present litigation and that defense counsel has not demonstrated a basis to invade counsel's private files.   In the spirit of mutual cooperation, plaintiffs' counsel picked up the phone and again spoke to Ms. Scharff, re-iterating the same and adding that Plaintiffs' counsel had not yet located the transcript and had no intent on doing so unless the Magistrate so ordered during the mandatory teleconference.  At no time did plaintiffs' counsel state that discovery was being refused based solely on the inability to find the transcript. This is yet another instance of defense counsel's behavior that has created a situation wherein plaintiffs' counsel can no longer have discussions with defense counsel without a recordation by tape or in writing.

                    Andrew E. Greenwald
                    JOSEPH, GREENWALD & LAAKE, P.A.
                    6404 Ivy Lane, Suite 400
                    Greenbelt, MD 20770
                    (301) 220-2200
                    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Reply was served via electronic filing on the Court's CM/ECF website on September 20, 2007 to:

Megan Hills, Esq.
Nicolas Muzin, Esq.
Zoe C. Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

                    ___/s/ Anthony Newman_____
                        Anthony Newman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE I. IACANGELO**, *et al*. | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

## ORDER

UPON CONSIDERATION of the Defendants' Motion to Compel (Allegedly) Previously Requested Materials from Plaintiffs and for Fed.R.Civ.P. 37 Attorneys Fees, and Plaintiffs' Opposition and any Reply thereto, it is this _____ day of _____, 2007, by the United States District Court for the District of Columbia,

**ORDERED**, that Defendants' Motion to Compel (Allegedly) Previously Requested Materials from Plaintiffs and for Fed.R.Civ.P. 37 Attorneys Fees is hereby **DENIED**.

_____
The Honorable Alan Kay
Magistrate Judge
United States District Court for the District of Columbia

**Copies to**:

Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770


Megan Hills, Esq.
Nicolas Muzin, Esq.
Zoe C. Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005