UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, ) | |
| As Guardian of the Person and Property of ) | |
| KARYN A. KERRIS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. Act. No. 1:05CV02086 (PLF/AK) |
| ) | |
| Georgetown University Hospital, ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a ) | |
| Georgetown University, and ) | Magistrate Judge Alan Kay |
| VANCE E. WATSON, M.D., ) | |
| ) | |
| Defendants. ) | |

DEFENDANTS[1]' REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL PREVIOUSLY REQUESTED MATERIALS
FROM PLAINTIFFS[2] AND FOR FED. R. CIV. P. 37 ATTORNEYS' FEES

History repeats itself as Plaintiffs' attorneys bring the near identical lawsuit in this

Court using the same experts that the District of Columbia Superior Court ("D.C. Superior

Court") previously considered and struck **all** of Plaintiffs' negligence *per se* claims and expert

testimony on violations of the federal Food, Drug & Cosmetic Act ("FDCA").[3]  Like here,

Plaintiffs used material from the same experts in pleadings and now they use that material here,

yet refuse to produce the existing deposition transcripts (and even fail to acknowledge its

---

[1] "Defendants" refers collectively to Defendants Georgetown University ("GU") and Vance E.
Watson, M.D. ("Dr. Watson").

[2] "Plaintiffs" refers collectively to Plaintiffs Felice P. Iacangelo and Cicily Iacangelo.

[3] *See* April 27, 2000 Order and November 30, 2001 Order, entered by the Honorable William M.
Jackson, in *Rhonda Morton v. The George Washington University, et al.*, Civ. Act. No. 99-ca-
4599, ("*Morton* action"); both attached as Ex. 1.

existence). Plaintiffs' attorneys also appear to be conducting this litigation as they did the

*Morton* case – ignoring Court rules, despite having had such failure lead to the denial of relief in

the *Morton* action.[4] More importantly, Plaintiffs have consistently used information from the

*Morton* action in the current litigation, while misrepresenting facts to this Court.[5] Despite

Plaintiffs' disingenuous use of quotations, *see* Plts.' Opp. at 2-3, Defendants have repeatedly

asked that Plaintiffs produce non-privileged, relevant materials relating to the very subject matter

of this case – embolizations and embolic substances – used by Plaintiffs' attorneys in this case in

depositions of Defendants, in front of the Court, in pleadings filed with the Court, as well as

testified to by Plaintiffs as being the only basis for their claims.

Plaintiffs seek to avoid making the production for a panoply of collateral and

insignificant reasons without having made a prior objection to production (thereby waiving any

objection now raised), nor denying that the materials Defendants seek are relevant and

reasonably calculated to lead to admissible evidence. Defendants have met the burden of

demonstrating that the materials are relevant both because they relate to Plaintiffs' claims and

Defendants' defenses, the very subject matter of this case – embolizations and embolic

substances – and because Plaintiffs used the requested materials in order to support arguments

---

[4] *See* December 3, 2001 Order, entered by Judge Jackson, in the *Morton* litigation; attached as Ex. 2. There, too, Plaintiffs argued (unsuccessfully) against the application of the Court Rule – "In a wasteful effort to put form over substance . . ." *See* Plaintiff's Opposition to Defendant District Health Partners, L.P.'s Motion to Dismiss, filed October 3, 2000 (attached as Ex. 3). Similarly here, Plaintiffs argue that the Court should not apply Local Rule 7(m). *See* Plaintiffs' Replies in Support of Motions to Amend Complaint, Re-Depose Sheila Zimmet, and for *In Camera* Inspection.

[5] For example, Plaintiffs represent to this Court that the *Morton* case is sealed – "It is from a prior, **sealed case,** filed by another plaintiff, against a different defendant." – when Defendants' Exhibits 1 and 2, as well as the attached docket (Ex. 4) prove that the *Morton* case is **not** sealed. *See* Plaintiffs' Opposition to Motion to Compel Previously Requested Material ("Plts.' Opp.") at 4 (emphasis added).

in Court or in pleadings and to conduct questioning in depositions in this litigation.  Plaintiffs

seek to avoid production because the transcripts relate to a separate litigation, however, because

Since Plaintiffs have used this previously requested material and waived any

objection or privilege, it is properly discoverable and has been improperly withheld (and

concealed) by Plaintiffs.  Therefore, Plaintiffs should be compelled to provide it to Defendants

and to pay the attorneys' fees incurred by Defendants in seeking to compel production.[6]

## I.    Defendants Having Previously Requested this Demonstrably Relevant Material and No Objection Having Been Lodged, There is No Reason that Plaintiffs Should Fail to Produce It.

From the inception of this litigation, Plaintiffs have used material from the

*Morton* case in this lawsuit.  In their Opposition to Defendants' Motion for Partial Summary

Judgment, as authority for their position, Plaintiffs filed affidavits from William Damaska, Dr.

Melvin Van Woert, Robert Kamm, and Dr. Arthur Kaufman.[7]  Despite using this material as

persuasive authority, Plaintiffs did not inform the Court that all of these individuals previously

presented the same opinions to a District of Columbia Court as experts in the FDA and the use of

Histoacryl® and Lipiodol® in embolization for the medical care of patients in 1998 (the

previous case presenting virtually identical claims as presented here) and all expert testimony

regarding the FDA and the FDCA, as well as all claims based on violations of the FDCA (the

negligence *per se* claims) were **struck** by the Court, leaving a medical malpractice claim.[8]

---

[6] In the alternative to producing the actual transcripts, Defendants have already offered to Plaintiffs that they simply provide Defendants with the dates on which the depositions were taken and the contact information for the court reporting service which transcribed the depositions so that Defendants may obtain copies of the transcripts themselves.

[7] *See* Exs. 4, 9, 10, and 16 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, filed March 20, 2006.

[8] *See* Ex. 4 at Entries for 8/29/02 Order; 10/3/02 Order; 12/16/02 Order and Ex. 1, 4/27/00 Order and 11/30/01 Order.

In the very first Court hearings in this case, plaintiffs' attorney, Mr. Newman, stated that "given the affidavits that were filed by our experts in response to summary judgment and directed verdicts, we have laid forth a great majority of their opinions."[9] These experts and opinions offered here are the same ones previously offered and struck in the *Morton* case. It is incorrect for Plaintiffs to represent to this Court that there is only one transcript at issue or that the material requested is not by "an expert in, or in any manner related to this litigation and, to Plaintiffs' knowledge, no party or counsel has ever contacted this individual during the course of this litigation." Plts.' Opp. at 3.[10] The transcripts previously requested in discovery not only asked for all transcripts used in this litigation relating to embolic substances and/or embolization (the very claims of the Amended Complaint), but material specifically identified by submitted expert affidavit – none of which Plaintiffs produced, nor disclosed that they were withholding material.[11]

---

[9] *See* Ex. 5, 4/11/07 Status Hearing Transcript ("4/11/07 Hring Tr.") at 4.

[10] Clearly, Plaintiffs' counsel contacted these individuals to obtain their affidavits submitted to this Court.

[11] *See* Ex. 1 to Defendants' Motion to Compel Previously Requested Material, filed September 6, 2007, ("Defs.' Mtn. to Compel") at Request No. 7 ("All documents **relating to** the affidavit executed by Melvin Van Woert, M.D., on March 15, 2006 and submitted to the Court on March 30, 2006 as evidence as Exhibit 8 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, including but not limited to, all documents relied upon by Dr. Van Woert **related to his affidavit,** including but not limited to his current *curriculum vitae*, as his affidavit states that he relied upon his experience in reaching his submitted conclusions, all documents provided to Dr. Van Woert by Plaintiff and/or Plaintiffs' attorneys **relating to** his affidavit, and/or provided by Dr. Van Woert **relating to the subject matter of his affidavit and the subject matter of the Amended Complaint,** including, but not limited to all **communications** by, to, among, and/or copied to Dr. Van Woert and Plaintiff's attorneys and/or Plaintiff and/or her agents, all documents reviewed and/or shown to Dr. Van Woert **related to** his affidavit, including, but not limited to his notes, notes, emails, internet searches, internet sites, internet material, internet information, treatises, medical records, medical reviews, medical articles, and all documents provided to Dr. Van Woert by any source **related to** his affidavit. [Note: As Plaintiff has already submitted Dr. Van Woert's affidavit to the Court as persuasive evidence, Plaintiff has waived any privilege that might have applied to anything related to Dr. Van Woert's

Plaintiffs primarily seek to avoid producing the requested transcripts because they are in the possession of Plaintiffs' attorney, Mr. Newman, and not physically in the possession of the individual Plaintiffs. However, Plaintiffs' attorney, Mr. Newman, has acknowledged that they are relevant to this litigation and has used and repeatedly referred to them in this litigation.[12] Significantly, Plaintiffs do not state that the transcripts are **irrelevant** in the Opposition to this Motion.[13] As Defendants' indicated in the Memorandum in Support of the Motion to Compel, on June 26, 2007 before Judge Friedman, Plaintiffs' counsel argued that "[b]y the way, that did happen in another case where the doctor basically ordered the glue on his own, the procedure was called an embolization." Ex. 6, June 26, 2007 Status Hearing Transcript ("6/26/07 Hring Tr.") at 18. Plaintiffs presented the experts from the *Morton* action as authority to the Court here At the June 26, 2007 Hearing, Plaintiffs counsel used knowledge of his prior litigation to bolster arguments before the Court, and also demonstrated that the prior case relates to embolization using "glue" (Histoacryl® and Lipiodol®) in 1998 – identical to the facts of this litigation. Any materials in the possession of the attorney that are relevant to the case – and that are **actually used** in litigating the case – are discoverable unless they are protected by an applicable

---

affidavit. When Dr. Van Woert's affidavit was submitted to the Court, he was not designated as an expert, and while he may be so designated, Plaintiff must produce all documents related to evidence submitted to the Court (*e.g.*, the March 15, 2006 affidavit] and if designated as an expert, produce any subsequent material stemming from his designation at the time set by the Court for expert disclosure.]" Similar requests were made for Mr. Damaska, Mr. Kamm, and Dr. Kaufmann. *Id.* at Request Nos. 6, 8, and 9; *see also* footnote 20, *infra*.

[12] And in doing so, thereby demonstrating that the *Morton* case and the requested materials do **not** implicate any privilege and are **not** under seal.

[13] Contrary to Plaintiffs' representation to this Court, the *Morton* case is not sealed. *Compare* Ex. 4 to Plts.' Opp. at 3.

privilege.[14] Whatever information was developed, gleaned, and shared during depositions was clearly used in this case for presented arguments, authority, deposition questioning, and to form Plaintiffs' basis for their legal claims.[15]

"The Federal Rules of Civil Procedure explicitly permit discovery as to any claim one party asserts against another and plaintiffs are asserting a claim against [Defendants] and [Defendants] unquestionably [are] entitled to discovery." *Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4, 26 (D.D.C. 1999). Where an attorney makes testimonial use of material from his files, production of that attorney's files will be ordered. *United States v. Nobles*, 422 U.S. 225, 240 n 14 (1975). Moreover, this Court's precedent supports the production of all transcripts of depositions taken in other courts where there is testimony regarding the subject of the current litigation. *See Carey-Canada, Inc. v. California Union Ins. Co.*, 118 F.R.D. 242, 245-46 (D.D.C. 1986).

### A.    The Documents In Question Were Requested on Multiple Occasions and Are Not Covered by Any Privilege.

Notwithstanding Plaintiffs' disingenuous use of quotations, *see* Plts.' Opp. at 3, Defendants requested these relevant transcripts in multiple discovery pleadings. Had Plaintiffs used accurate quotations from Defendants' pleadings, Plaintiffs' Opposition would have looked like this:

---

[14] Privilege cannot be claimed for deposition transcripts as depositions occur in the presence of third parties.

[15] Plaintiffs also used the *Morton* case in this case to convince the Court of the merits of their claims in this case. *See* Ex. 5, 4/11/07 Hring Tr. at 14 ("**And in a similar case I had in Superior Court**, Judge Shuker was looked at as a mediator for that, **it was involving the same statute,** and before we got through all the rulings of the Court we mediated that because **it was clear where the case was going.**"; emphasis added).

First of all, the plain language of the *duces tecum* requests states that the requests were only for: "**All deposition transcripts**, court transcripts **relating to**[16] **AVMs and/or embolizations and/or material/substances used in embolizations in Felice I. Iacangelo's possession,** *custody or control (including documents within his attorneys' possession, custody or control*, see Ringling Brothers, supra, 233 F.R.D. 209); "**All deposition transcripts**, court transcripts **relating to AVMs and/or embolizations and/or material/substances used in embolizations in Cicily Iacangelo's possession,** *custody or control (including documents within his attorneys' possession, custody or control*, see Ringling Brothers, supra, 233 F.R.D. 209); and "**All deposition transcripts, court transcripts relating to AVMs and/or embolizations and/or material/substances used in embolizations** in **Paul Kerris's [sic] possession,** *custody or control (including documents within his attorneys' possession, custody or control*, see Ringling Brothers, supra, 233 F.R.D. 209).

Plts.' Opp at 3 (augmented with full quotations from Defendants' Subpoena *Duces Tecum* to

Plaintiffs Felice Iacangelo, Cicily Iacangelo and former Plaintiff Paul Kerris, attached as Exs. 3-

5 to Defs.' Mtn. to Compel (some emphasis added).

Similarly, had full quotations been used in Plaintiffs' Opposition, Plaintiffs'

Opposition would look like this:

Similarly, the plain language of the document requests only require Felice P. Iacangelo to produce: "[a]ll documents **containing or describing written or oral statements made by you, Defendants, or any other person relating to the matters set forth in the Amended Complaint**"; "All documents **relating to the matters set forth in the Amended Complaint**, including but not limited to . . ."; "**All documents that support or otherwise relate to the allegations in the Amended Complaint**"; "**All documents concerning the subject matter of the Action, including but not limited to all documents concerning any claims asserted by Plaintiff in the Complaint**."[17] The plain language of the interrogatory requests only request identifications of, "all persons not previously identified by you in your responses to these responses "**who**

---

[16] The phrase "relating to" is defined within all requests: "As used herein, a document "**relating to**" a given subject matter means a document that constitutes, embodies, comprises, reflects, identifies, states, refers to, deals with, comments upon, responds to, describes, analyzes, contains information concerning, or is in any way pertinent to that subject matter." *See* Exs. 1-6 to Defs.' Mtn. to Compel (emphasis in original).

[17] *See* Ex. 1 to Defendants' Mtn. to Compel (some emphasis added).

**have knowledge of the facts relating to the matters set forth in the Amended Complaint;"** and identification of any documents, which have **information** to or which were **relied upon** in responding to these interrogatories."; "Please **identify[18] each person having knowledge or information regarding the facts, circumstances, injuries, allegations, and all claims of damages contained in your Amended Complaint, stating each fact that summarizes the knowledge or information and the basis for that information or knowledge possessed by each such person.**[19]

Plaintiffs cannot seriously argue that discovery is limited to what is in an individual's possession. The case law and the Federal Rules of Civil Procedure are clear:  One must produce what is in one's possession, custody, or control – which includes what is in the possession of one's attorney-agent. *Alexander v. F.B.I.*, 194 F.R.D. 299, 301 (D.D.C. 2000); Fed. R. Civ. P. 34(a) ("Any party may serve on any other party a request [for] . . . any designated documents . . . **which are in the possession, custody, or control of the party** upon whom the request is served.") (emphasis added)

---

[18] The terms, **"identify," "identity,"** or **"identification"** were defined in the Requests as meaning: "a.  when used in reference to an individual **person**, means that person's full name, last known address, home and business telephone numbers, present occupation or business affiliation, and affiliation and/or relevance to the allegations of this case; b.  when used in reference to a **person** other than an individual person, means that person's full name, a description of the nature of the person (that is, whether it is a corporation, partnership, etc. under the definition of person below), and the person's last known address, telephone number, and principal place of business; c.  when used in reference to any **person** after the person has been properly identified previously means the person's name; d.  when used in reference to a **document**, requires you to state the date, the author (or, if different, the signer or signers), the addressee, the identity of the document's president custodian, and the type of document (e.g., letter, memorandum, etc.) or to attach an accurate copy of the document to your answer, appropriately labeled to correspond to the interrogatory; and e.  when used in reference to a **communication**, means to identify the mode of communication (e.g., oral, telephonic, written, electronic, etc.), the date it was made, and the persons from and to whom it was made." *See* Exs. 1-2 at Definitions to Defendants' Mtn. to Compel.

[19] Plts. Mtn. to Compel at 3 incorporating Exs. 3-5 to Defs.' Mtn. to Compel (some emphasis added).

Moreover, Defendants now know that the same experts who provided affidavits in this case were previously designated as experts in the *Morton* case and were deposed on the very opinions they gave in affidavits in this case. Though Defendants explicitly requested Plaintiffs to provide them with this material by making the following identical requests regarding Robert Kamm, William Damaska, Roger Kaufman, and Melvin Van Woert,[20] Plaintiffs produced nothing – no *curriculum vitae*, no communications, no deposition transcripts, nor anything else that was requested. This lack of production (and concealment of having relevant documents) is particularly disturbing since Plaintiffs represented to this Court that these individuals are some of their experts, *see* Ex. 5, (4/11/07 Hring Tr. at 4).

Because Defendants' discovery explicitly referred to documents in the files of the attorneys for Plaintiffs, *see* Exs. 3-5 to Defs.' Mtn. to Compel, Plaintiffs' attorneys were on notice that documents within their files were being requested and should have submitted a privilege log if they were going to object to the production of these relevant documents. Having failed to do so, Plaintiffs have waived all objections to the production of these documents. *See Pogue v. Diabetes Treatment Centers of America*, 235 F.R.D. 521, 523-24 (D.D.C. 2006). "Rule 34 requires a party who objects to a document request to state the 'reasons for the objection.'" *Ringling Brothers & Barnum & Bailey Circus*, 233 F.R.D. at 212. Plaintiffs concede that they did not do so. Therefore, even if any privilege or sustainable objection did apply to the transcripts or other requested material, they have now been waived. *See e.g. United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C.Cir.2003) (noting that privileges can be waived if they are not asserted in a log).

There are no grounds to withhold these transcripts:

---

[20] *See* Ex. 1 to Defs.' Mtn. to Compel.

9

> **In General.  Parties may obtain discovery regarding any matter, nor privileged, that is relevant to the claim or defense of any party,** including the existence, description, nature, custody, condition, and location of persons having knowledge of any discoverable matter.  **For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.**  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.[21]

The question that Mr. Newman posed to Defendant Dr. Vance Watson conveyed that Mr. Newman knew he had a transcript of a deponent who gave relevant testimony potentially to contradict Dr. Watson's testimony, and therefore, established that the person in question was a person with "knowledge of the facts relating to matters set forth in the Amended Complaint [*e.g.* embolic substances and/or embolization]."  That person's name should have been disclosed in response to Defendants' Interrogatory Requests.  *See* Ex. 2 to Defs.' Mtn. to Compel at No. 19.[22]  Moreover, Mr. Newman's repeated references to this "other" litigation in Court and in depositions prompted Defendants to issue document requests to the parties seeking *inter alia* "[a]ll deposition transcripts, court transcripts relating to AVMs and/or embolizations and/or material/substances used in embolizations in Felice I. Iacangelo's possession, custody or control (including documents within his attorneys' possession, custody or control, see Ringling Brothers, supra, 233 F.R.D. 209)."  Ex. 3 at Request No. 20 to Defs.' Mtn to Compel; *see also* Ex. 1 at Request No. 9, Ex. 2 at Request Nos. 19-20, Ex. 4 at Request No. 20, Ex. 5 at Request No. 19, Ex. 6 at Request No. 19 to Defs.' Motion to Compel.

These requests specifically seek transcripts of testimony concerning AVMs or embolizations or materials used in embolizations.  Ex. 1-6 to Defs.' Mtn. to Compel.  From Mr.

---

[21] Federal Rule of Civil Procedure 26(b)(1) (emphasis added).

[22] "Identify all persons not previously identified by you in your responses to these interrogatories who have knowledge of facts relating to the matters set forth in the Amended Complaint, describing in detail the exact nature of their knowledge."

Newman's question to Dr. Watson, Defendants are reasonably certain that the prior transcript relates to a deposition of the person who invented an embolic substances (or had knowledge of that invention), and therefore, falls squarely within the request.

Plaintiffs proffer in the Opposition as to the nature of one deposition transcript is too little too late. The information in the proffer as to the identity of the witness or the age of the deposition transcript, and the false claim of it being sealed, as basis for objecting to production, does not explain why Plaintiffs failed to acknowledge that they withheld all requested material regarding experts used here and used in the *Morton* litigation. If Plaintiffs believed they had a valid objection or privilege, it should have been made or presented in a privilege log. Plts.' Opp. at 3, and not silently withheld.

**B.      The Transcripts Are In the Parties' Possession based on Actual Use In This Litigation.**

Plaintiffs fail to distinguish relevant and on-point cases that acknowledge that a party can be required to produce materials in the possession of their attorney that are being relied upon by one party to the disadvantage of the other party. Where "a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." *Am. Soc'y For Prevention of Cruelty To Animals v. Ringling Brothers & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006). Although the transcript in question was presumably not "created" pursuant to this representation (though the expert affidavits and opinions also stated in the *Morton* case were), Mr. Newman's references to a transcript (when it is transcripts) from another litigation in this matter, combined with the fact that the transcript, as well as the transcripts and materials relating to experts presented in this case with near identical opinions as those presented in the *Morton* case, are within his possession, places those transcripts and expert

11

material at issue in the litigation and in the control of the clients. As the Supreme Court has

recognized in the context of requiring production of witness interviews "where access to

witnesses or to their information is unequal, discovery of their statements is often granted solely

to help a party prepare for trial regardless of any eventual evidentiary value of the out-of-court

statements." *U.S. v. Nobles, supra,* 422 U.S. at 251. In *Nobles,* the Supreme Court required the

production of materials that otherwise would have been subject to a claim of work product

protection because the materials had been put to testimonial use. *Id.* The questions to Dr.

Watson were similarly based on materials that Plaintiffs have exclusive access to and that

Defendants need to prepare for trial.

## II.    Plaintiffs Testified That the Bases for Their Claims Came Solely from Plaintiffs' Attorney.

Both Plaintiffs testified that – other than the information provided by Mr.

Newman – they have no basis for their claims. Plaintiff Felice Iacangelo testified:

> Q.           **Absent conversations with counsel, on what do you base your statement that the  substance is illegal?**
>
> A.           **I found out later on that it was an illegal substance.**
>
> Q.           **Absent conversations with counsel, how did you find out -- What do you mean, absent?**
>
> MR. NEWMAN: **She means not referring to anything we talked about. You found out any other way.**
>
> THE WITNESS: **No.**[23]
>
> * * * *
>
> Q.           Sir, **when did you start believing you had a legal claim regarding the medical treatment provided to Ms. Kerris?**

---

[23] Deposition of Felice P. Iacangelo, July 24, 2007, at 151:7-18 (emphasis added) (attached hereto as Ex. 7).

MR. NEWMAN:   I object to his knowledge.  Go ahead.

THE WITNESS:   **I had no knowledge of a legal claim.**  We had no legal claims.
We weren't for legal claims.  We were looking to try to make
Karyn better.  We had no legal claims.  **We didn't know we
had any legal claims.**

* * * *

Q.           **When did you start believing, on your own, outside of any
conversations with any attorneys, that you should file suit
against Georgetown?**

MR. NEWMAN:   Not the people involved, just the date you understood you
should file suit, or the time.

THE WITNESS:   **That happened when I met Tony Newman.**[24]

Plaintiff Cicily Iacangelo also testified that she had no basis for her legal claims

against Defendants, other than the information embodied in the previously requested materials:

Q.           **How did you learn it was illegal?**

A.           **I got a phone call from my husband when I was at work and he
mentioned that he had talked with Mr. Newman** and –

MR. NEWMAN:   Don't say anything about my conversation with your husband.  Or
what he said about me.  Just what you understood.

Q.           **When was that phone call?**

A.           **Sometime in the spring of 2005.**

Q.           Spring of 2005.  **Other than the information that your husband
gleaned from Mr. Newman, was there anything else that led you to
believe that the glue was illegal?**

A.           **No.**

Q.           **And to this day have you seen any evidence that the glue was
illegal?**

MR. NEWMAN:   Other than what –

_____

[24] *Id.* at 240:5-16 and 241:3-11 (emphasis added).

Q.          **Other than your conversation with your counsel.**

A.          **No.**

* * * *

Q.          **Other than the fact that Karyn went into the hospital and she had a bad result, is there any basis for your belief that the hospital or Dr. Vance Watson did something wrong in this case?**

MR. NEWMAN:    **Objection.  Other than what counsel has told you.  If you have any other basis.**

A.          **No.**

Q.          **I am asking about initiating a lawsuit.  What prompted that decision in 2005?**

MR. NEWMAN:    Objection attorney/client privilege.

THE WITNESS:    **I talked to Mr. Newman.**[25]

Defendants have a reasonable basis to believe that material filed in the initial pleadings of this litigation – namely, the expert opinions also used in the *Morton* case – is the information on which Plaintiffs base their claims.  Other than stating that their experts would elucidate their theories at the appropriate time, Plaintiffs were not able to answer **any** written discovery as to the basis of their claim, other than claiming privilege, except to the extent they would waive privilege by stating that the glue was "illegal" when, in fact, they are only stating that it is "illegal" (a claim dismissed by D.C. Superior Court) because their lawyer told them to.

---

[25] Deposition of Cicily Iacangelo, July 25, 2007, at 283:4-284:4; 285:10-18; 307:22-308:6 (attached hereto as Ex.8; emphasis added).

14

**III.   Defendants Did Not Fail to Comply with the Scheduling Order or the Rules of This Case.**

Plaintiffs make the spurious allegation that Defendants failed to comply with the required procedure to notify Magistrate Kay before filing any discovery motion. Plts.' Opp. at 1. As Plaintiffs' counsel is aware, the parties participated in two (2) teleconferences regarding discovery matters this summer. The first was on July 20, 2007 and the second was on August 15, 2007 (both are reflected by minute entries in the docket). Magistrate Kay was made aware, during those calls, by Defendants' counsel that Defendants were seeking to obtain certain materials from Plaintiffs and that it appeared that Plaintiffs' counsel was not inclined to produce them. Defendants informed the Court that the parties were continuing to meet and confer on these matters, but if no resolution was reached, a motion to compel would be filed. Plaintiffs' counsel implicitly acknowledged these facts when he told Defendants' counsel that no further conference about the requested transcripts was required because he would not change his position and that Defendants should just file their motion and he would look for the transcripts only if compelled to do so. *See* Ex. 9, Scharff Aff.

Moreover, Defendants are troubled by Plaintiffs' off-handed dismissal of the Local Rule 7(m) certification requirement as trivial and "form over substance." (an argument previously made unsuccessfully by Plaintiffs' counsel in the *Morton* case, *see* footnote 4, *supra.*) Plts.' Opp. at 2. Defendants have been put to a significant cost responding to three motions that Plaintiffs filed without the certificates because there had been no previous substantive conference as to the particular motions (though some of the disputes had been generally raised, had Plaintiffs conferred with Defendants, the scope of the disputes could have been narrowed). The conference required by the local rules would have reduced the number of issues in dispute, as

well as the number of motions to be briefed.  Therefore, the failure cannot be cured by a

subsequent filing of a certificate not based on an actual conferral.[26]

## IV.    Miscellaneous Matters in Plaintiffs' Opposition Requiring Response.

Plaintiffs' (perhaps facetious) claim of entitlement to all of Defendant

Georgetown University's legal files for more than a decade, in unrelated matters, is ludicrous.

The difference between the discovery that Defendants seek and Plaintiffs' new request is that

Plaintiffs have repeatedly referred to and used specific material from one particular litigation

regarding the identical subject matter as this lawsuit – the use of Histoacryl® and Lipiodol® in

embolization by a doctor providing medical care to a patient in 1998.  On their own, Defendants

discovered that the identical experts proffering the same opinions here that were used by

Plaintiffs' attorneys in the prior case.  Logic does not support Plaintiffs' contention that

disclosure of relevant materials that have been **relied upon in questioning of a deponent, filed**

**with the Court, and argued to the Court** would somehow require an extension of permissible

discovery to a law firm's entire warehouse of material regarding any case on any subject.

Moreover, Defendants have not sought a wholesale discovery of information covered by

privilege, such as presented by Plaintiffs' new requests.  Defendants have limited their requests

to deposition transcripts for which there is no privilege and expert material for which privilege

has been waived by presenting it as authority to the Court in this litigation.  Moreover,

Defendants requested the materials regarding the **precise subject of this litigation** (the use of

Histoacryl® and Lipiodol® in embolization by a doctor providing medical care to a patient in

---

[26] Although Plaintiffs state it would be "draconian" to deny their motions filed without Local
Rule 7(m) certificates, case law in fact indicates that denial is the required result. *See e.g.*
*Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).

1998).  While Plaintiffs may regret that they used material from the prior litigation in this

lawsuit, by doing so Plaintiffs have made the material discoverable.  Defendants have not.[27]

<div align="center">

**CONCLUSION**

</div>

**WHEREFORE,** for the reasons set forth herein and in Defendants'

Memorandum In Support of the Motion to Compel, pursuant to the Federal Rules of Civil

Procedure 26 and 37, as well as applicable, relevant precedent, Defendants request that Plaintiffs

be compelled to provide the previously requested transcripts and material, as well as assessed the

costs associated with this motion.

<div style="margin-left:40%">

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

</div>

Dated:  September 28, 2007                    By:  _Megan E. Hills_
                                                   Megan C. Hills (D.C. Bar # 437340)
                                                   Zoë C. Scharff (D.C. Bar # 490482)

                                                   725 Twelfth Street, N.W.
                                                   Washington, D.C. 20005
                                                   (202) 434-5000
                                                   (202) 434-5029 (fax)
                                                   mhills@wc.com
                                                   zscharff@wc.com

---

[27] On a point of personal integrity, Plaintiffs accuse Zoë Scharff of "misstate[ing] the facts" in an Affidavit filed in support of Defendants' Motion to Compel because Plaintiffs' counsel did not "state that discovery was being refused based solely on the inability to find the transcript." Plts.' Opp. at n. 5.  A cursory reading of Ms. Scharff's Affidavit reveals that it **does not** state that Mr. Newman refused to provide discovery **solely** on the basis that he would not look for the transcripts unless compelled to do so, but rather the Affidavit states that it was one of the reasons given.  The Affidavit's statements are virtually identical to Plaintiffs' footnote 5, which is that Mr. Newman stated that he would look for the transcripts if compelled to do so.  There is, therefore, no factual dispute (aside from the fabricated claim that Mr. Newman made reference to a mandatory telephone conference, an after-the-fact claim that does not comport with the substance of the telephone conversation as reported in the Affidavit).

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I

hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website

on the 28th day of October, 2007 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Wendy Wyeth, Esquire
> Newman, McIntosh & Hennessy
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Joseph, Greenwald and Laake, P.A.
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel

Megan E. Hills