
REPRODUCED AT THE NATIONAL ARCHIVES

<p align="center">SUPERIOR COURT OF THE DISTRICT OF COLUMBIA<br>Civil Division</p>

```
                                          :
RHONDA R. MORTON, Individually, :
As Mother and As Next Friend of  :
Monique M. Morton,               :
                                 :
          Plaintiff,             :        Case No. 99CA004599
                                 :        Calendar 2
     v.                          :        Judge William M. Jackson
                                 :        Next Event: Mediation 7/6/00
THE GEORGE WASHINGTON            :
UNIVERSITY (d/b/a THE GEORGE     :
WASHINGTON UNIVERSITY            :
MEDICAL CENTER), et al.,         :
                                 :
          Defendants.            :
```

<div style="border:1px solid">
FILED<br>
CIVIL ACTIONS BRANCH<br>
APR 2 7 2000<br>
Superior Court<br>
of the District of Columbia<br>
Washington, D.C.
</div>

<p align="center"><u>**ORDER**</u></p>

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgement.

In their Motion, plaintiffs contend that Defendants' use of histacryl, an unapproved "device" under the Food Drug and Cosmetic Act (hereinafter the FDCA), 21 U.S.C. § 301 *et seq.* in an embolization procedure involving the minor plaintiff constitutes negligence per se. Defendants have filed an opposition. [1]

Assuming for purposes of this Order that Defendants' failure to obtain the FDA's approval for the use of histacryl was in violation of the FDCA Act, the Court is not satisfied

---

[1]     The Court is mindful that Plaintiff's Motion for Partial Summary Judgement places this case in a rather peculiar posture. Plaintiffs filed their Motion prior to the Court's granting of Plaintiff's Motion to Amend the Complaint. Therefore, this motion was filed technically on the original complaint. However, in an effort to reach the merits of Plaintiff's Motion for Summary Judgement, the Court deems Plaintiff's Motion as a motion filed on the Amended Complaint.

REPRODUCED AT THE NATIONAL ARCHIVES

that Plaintiff has demonstrated that this failure constitutes negligence per se. In this connection, the Court is guided by the teachings of McNeil Pharm. v. Hawkins, 686 A.2d 567 (D.C. 1996), cert. denied, 522 U.S. 815 (1997), where the Court of Appeals counseled that, before admitting statutes and regulations as a basis for negligence per se, the trial court must independently examine such a statute or regulation to ascertain whether it in fact establishes a standard of care.

Although certain provisions of the FDCA may in some cases constitute a standard of care, the breach of which may constitute negligence per se, the statutory and regulatory provisions proffered by Plaintiff in this case do not contain sufficient substantive content from which one can ascertain a standard of care. See Talley Med., Inc. v. Danek, 179 F.3d 154 (4th Cir. 1999). At best, the purported violation of FDCA and its applicable regulations may constitute evidence of negligence. See Hawkins, 686 A.2d at 578.

Accordingly, it is this 27th day of April, 2000,

**ORDERED** that Plaintiff's Motion for Partial Summary Judgement is hereby **DENIED.**

**SO ORDERED.**

**William M. Jackson**
**Associate Judge**

DOCKETED  APR 2 8 2000

2

REPRODUCED AT THE NATIONAL ARCHIVES

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

RHONDA R. MORTON,          :
Individually, as mother and as :          **FILE COPY**
next friend of Monique Morton :
                           :
Plaintiff,                 :
                           :
v.                         :          Civil Action No. 99ca4599
                           :          Calendar 2
THE GEORGE WASHINGTON      :          Judge William M. Jackson
UNIVERSITY d/b/a THE GEORGE :
WASHINGTON UNIVERSITY      :
MEDICAL CENTER, et. al.    :
                           :
Defendant.                 :

### ORDER

In this medical malpractice action, Defendants have moved to dismiss Counts II, III, IV,

V and VII of Plaintiffs' Amended Complaint for failure to state a claim pursuant to Rule 12

(b)(6) of the Superior Court Rules of Civil Procedure.[1]  In their Motion, Defendants contend

that Counts III through VII, which allege violations of the Federal Food, Drug, and Cosmetic

Act (hereinafter "FDCA" or "the Act"), 21 U.S.C. §301 *et seq.*, must be dismissed because

there exists no private right of action under the FDCA.  In addition, Defendants maintain that

the claims of the mother of the minor plaintiff as set forth in Count II are not cognizable and

must also be dismissed.  Plaintiffs have filed an Opposition, and Defendants have filed a

Reply.[2]

---

[1]    Defendants William O. Bank, M.D. and District Health Partners, L.P., have also filed
Motions to Dismiss, alleging similar grounds for dismissal as those raised by Defendant
George Washington University Medical Center.

[2]    The question of whether the Amended Complaint states a claim upon which relief may be
granted is, of course, a question of law. *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207,
210 (1997), *cert. denied*, 525 U.S. 912 (1998).  "The allegations in the complaint must be taken
as true and construed in the light most favorable to Plaintiff and, if these allegations are



REPRODUCED AT THE NATIONAL ARCHIVES

### Background

On June 6, 1998, Monique Morton, the minor Plaintiff, fainted and became unresponsive while attending a junior prom at T.C. Williams High School in Alexandria, Virginia. She was subsequently transported to Alexandria Hospital. Tests at Alexandria Hospital revealed that she had an extensive intraventricular hemorrhage. Following a cerebral angiogram, she was diagnosed as having a "large complex arteriovenous malformation."[3] In view of the serious nature of Plaintiff's condition, she was transferred to George Washington University Medical Center for further evaluation and treatment.

Upon Plaintiff's arrival at George Washington University Medical Center on June 6, 1998, she was admitted to the Intensive Care Unit. She was evaluated and underwent a second cerebral angiogram.[4] After evaluating her condition, Defendants decided that it was in Plaintiff's best interest to undergo a procedure known as embolization. Embolization is a procedure that is designed to shrink the arteriovenous malformation. The procedure involves the introduction of various substances into the blood vessels to arrest or prevent hemorrhaging or to devitalize a structure or organ by occluding its blood supply.

It is this embolization procedure and more particularly the defendant's use of the substances Histocryl and Lipiodol that form the basis of Counts III through VIII and are the subject of this Motion to Dismiss. During the embolization, a microcatheter was placed into a cerebral artery that fed into the malformation. A combination of Histocryl and Lipiodol was injected into the arteriovenous malformation. During the course of the procedure, the fluid, the

---

sufficient, the case must not be dismissed even if the court doubts that plaintiff will ultimately prevail." *Wallace v. Stadden Arps, Slate, Meagher and Horn*, 715 A.2d 873, 877 (D.C. 1998) (citing *Atkins v. Industrial Telecomms. Ass'n, Inc.*, 660 A.2d 885, 887 (D.C. 1995)).

[3]     An arteriovenous malformation is described as an abnormal tangle of fragile blood vessels that diverts blood leaving the brain.

REPRODUCED AT THE NATIONAL ARCHIVES

combination of Histocryl and Lipiodol, spilled into an adjacent artery, resulting in minor Plaintiff suffering a stroke and ultimately brain damage.

According to Plaintiffs, the substances Histocryl or "super glue" and Lipiodol were not approved by the FDA for embolization. Under the regulatory structure of the FDCA, the embolization substances Histocryl and Lipiodol are considered "Class III devices." As such, Histocryl cannot be sold or distributed without first obtaining "Premarket Approval" from the FDA. *See* 21 U.S.C. § 360 (c). Even to use Histocryl occasionally for experimental purposes requires the submission of an application to the FDA for what is known as an "Investigational Device Exemption." *See* 21 U.S.C. §360 (e); *see also* 21 C.F.R. § 812.20. According to Plaintiffs, Defendants' use of Histocryl was illegal because the FDA neither had issued a "Premarket Approval" for Histocryl nor had the defendants sought and obtained an Investigational Device Exemption allowing them to use these embolization substances.[5] According to Plaintiffs, Defendants, knowing that the use of the substances was illegal, engaged in a scheme to circumvent FDA's ban on the use of Histocryl and illegally obtained the embolization substances from a supplier in Canada. Defendants, according to Plaintiffs, knowingly violated the FDCA by illegally importing and then using the substances on the minor Plaintiff.

### The Amended Complaint

Plaintiffs' claims at issue in this Motion involve claims by Rhonda Morton, the mother of the minor child, and claims predicated on violations of the FDCA. In Count II, Plaintiff

---

[4]    A cerebral angiogram involves the radiographic visualization of the blood vessels supplying the brain.

[5]    The FDCA's regulatory scheme is prophylactic in nature. Devices are deemed "misbranded" or "adulterated" under the Act, not necessarily because there has been a finding that the device is unsafe or dangerous, but because any device that has not been through the approval process is deemed illegal. *See* 21 U.S.C. §360 (a) and (e).

REPRODUCED AT THE NATIONAL ARCHIVES

Rhonda Morton asserts a claim for damages for "lost services and affection of her minor child" and for income the minor child would have received during the time that she was a minor. Finally, Plaintiff Rhonda Morton seeks past and future medical expenses. In Counts III and IV, Plaintiffs assert claims under the doctrine of negligence *per se* for Defendants' purported violation of the FDCA and its regulations. In Count V, Plaintiffs assert a claim for battery, again predicating this claim on Defendants' alleged violation of the FDCA. Count VI contains a claim based on a product liability theory and alleges that Defendants marketed and distributed a product banned by the FDA. Finally, Count VII seeks punitive damages for Defendants' violation of the FDCA.

<div align="center">Analysis</div>

Defendants contend that Plaintiffs' claims that are predicated on violations of the FDCA are not viable because no explicit private right of action exists under the FDCA. In determining whether an explicit private right of action exists, the Court must use the language of the statute: "the starting point for the interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Kaiser Aluminum & Chemical Corp. v. Borjorno*, 447 U.S. 102, 108 (1980). Even a cursory examination of the FDCA reveals that the statute, by its terms, does not provide for a private right of action. The relevant provisions of the FDCA provide as follows: "(a) Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C. §337 subd.(a).[6] The language of the statute is therefore clear and unambiguous: the FDCA does not explicitly create a private right of action. *See In re*

REPRODUCED AT THE NATIONAL ARCHIVES

*Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 788 (3rd Cir. 1999) (FDCA establishes no private right of action); *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) (same).

However, because the FDCA is silent as to whether a private party may bring a claim under the statute, there remains the issue of whether the FDCA creates an implied right of action. *See Cort v. Ash*, 422 U.S. 66, 78 (1995).

In determining whether if a private cause of action should be implied under the FDCA, the Court may consider the four factors set forth in *Cort*. First, is the plaintiff a member of the class for whose benefit the statute was enacted? Second, is there any indication of legislative intent to either create or deny a private remedy? Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy? Finally, is the plaintiff's cause of action one that was traditionally relegated to state law such that it would be inappropriate to infer a cause of action under federal law? *Cort*, *supra*, 422 U.S. at 78. While each of these factors are important, the Aupreme Court recently has emphasized that the critical inquiry is "whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979); *see also Jones v. Lifespring, Inc.*, 713 F.Supp. 426, 427-28 (D.D.C. 1988).

In applying these principles to the case at bar, it is clear that there exists nothing in the legislative history of the FDCA that suggests that Congress intended to create a private right of action under the FDCA. To the contrary, the 1933 draft legislation originally included a

---

[6]    The exceptions referenced in this provision pertain to a limited number of circumstances where states, and the District of Columbia, may bring an action in their own name. *See* § 337(b). This came about as a result of the 1990 Amendment to the FDCA.

REPRODUCED AT THE NATIONAL ARCHIVES

private right of action, but that provision was eventually deleted from the final Bill. *National Women's Health Network, Inc. v. A.H. Robbins Co.*, 545 F.Supp. 1177 (D. Mass. 1982) (citing *Hearings on S. 144 Before the Subcomm. of Comm. on Commerce*, 73rd Cong., 2nd Sess. (1933)). Moreover, despite a number of amendments to the FDCA over the years, Congress has never altered the statutory language to authorize private rights of action. In sum, the legislative history reveals that Congress considered and rejected a private right of action under the FDCA. *Cf. Consumer Federation of American v. Upjohn Co.*, 346 A.2d 725, 731 (D.C. 1975) (citing legislative history in holding that there is no federal common law damages remedy under the FDCA).

Although courts in this jurisdiction have not had occasion to address the question of whether there exists an implied right of action under the FDCA, every federal court that has considered this issue has concluded that no implied private right of action exists under the FDCA. *See e.g. Talbot v. C.R. Bard, Inc.*, 63 F.3d 25, 29 (1st Cir. 1995), cert. dismissed, 517 U.S. 1230 (1996); *PDK Labs Inc. v. Friedlander*, 103 F3d. 1105, 1113 (2nd Cir. 1997); *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 788 (3rd Cir. 1999); *Mylan Labs, Inc., v. Matkar*, F.3d 1130, 1139 (4th Cir. 1993), *cert. denied*, 510 U.S. 1197 (1994); *Bailey v. Johnson*, 48 F3d 965, 968 (6th Cir. 1995); *Pacific Trading Co. v. Wilson & Co.*, 547 F.2d 367, 370 (7th Cir. 1997); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1993); *Cottrell Ltd. V. Biotrol Intern, Inc.*, 191 F.3d 1248, 1255 (10th Cir. 1999).[7]

---

[7]    The Supreme Court has never squarely addressed the issue of whether an implied right of action exists under the FDCA. In *Merrill Dow Pharmaceuticals v. Thompson*, 487 U.S. 804 (1986), the lower court had ruled that no private right of action existed under the FDCA, and neither party challenged that ruling before the Supreme Court. The Supreme Court, therefore, assumed, without deciding, that no private right of action, either expressed or implied, exists under the FDCA.

REPRODUCED AT THE NATIONAL ARCHIVES

Moreover, lower federal courts have reacted a similar conclusion. *See e.g. Munson v. Eli Lilly*, 1987 U.S. Dist. LEXIS 11040 (D. Minn Nov. 25, 1987); *National Women's Health Network v. A.H. Robbins Co.*, 545 F.Supp. 1177 (D. Mass. 1982); *Kerl v. Eli Lilly & Co.*, 490 F. Supp. 479 (E.D. Mich. 1980); *American Home Corp. v. Johnson and Johnson*, 436 F. Supp. 785 (S.D.N.Y. 1977).

In sum, every federal court that has examined this issue has reached the same conclusion: no private right of action, either expressed or implied, exists under the FDCA. Having examined the statute and caselaw addressing this issue, this Court is likewise satisfied that no private right of action exists under the FDCA. Accordingly, to the extent that Counts III-VII of the Amended Complaint are predicated upon the existence of a private right of action under the FDCA, those counts fail to state a claim for which relief may be granted and must, therefore, be dismissed.

### Negligence *per se*

Although the Court has concluded that Plaintiff cannot maintain a cause of action either directly or by implication, under the FDCA, the Court's conclusion does not resolve the issue of whether Plaintiffs may proceed under the negligence *per se* theory that is alleged in Counts III and IV. As the Court of Appeals noted in *Zhon v. Jennifer Mall Rest.*, 534 A.2d 1268, 1273 (1987), determining the existence of negligence *per se* "is distinct from determining that a cause of action arises, by implication, under a statute." To proceed under a negligence *per se* theory, Plaintiff must rely upon a statute or regulation as proof of the applicable standard of care. As the Court noted in *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (1982):

> The "general rule" in this jurisdiction is that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his

REPRODUCED AT THE NATIONAL ARCHIVES

relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." (citations omitted) Id.

For the doctrine of negligence *per se* to be applied, "[a]t a minimum . . . the statute or regulation relied on must promote public safety and have been 'enacted to protect persons in the plaintiff's position as to prevent the type of accident that occurred.'" *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 303 U.S. App. D.C. 1, 9, 999 F.2d 549, 557 (D.C. Cir. 1993)).  Moreover, the statute or regulation must "impose specific duties on the defendant." *Id.*

Relying on *Zhou, supra,* Plaintiffs maintain that the FDCA and the regulations relevant to this case were designed to promote public safety and to prevent the specific harm that occurred in the case at bar.  According to Plaintiffs, these factors are sufficient for the application of negligence *pro se*.  Defendants, on the other hand, advance two arguments in support of their contention that Plaintiffs' negligence *per se* claims are not cognizable.  First, Defendants maintain that since the FDCA does not confer a private right of action, allowing Plaintiffs to use violations of the same federal statutes and regulations in state actions would be inconsistent with Congress' ban on private enforcement.  Secondly, Defendants maintain, that even assuming that Plaintiffs may invoke the doctrine of negligence *per se* and rely on the FDCA and the regulations issued thereunder, Plaintiffs' negligence *per se* claims are not actionable because the regulations at issue do not set forth a standard of care.

Our Court of Appeals has not addressed the issue of whether the FDCA and its regulations may support a claim of negligence per se.  In *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567 (D.C. 1996), *cert denied*, 522 U.S. 815 (1997), the Court of Appeals addressed the issue of whether, in a case involving claims for negligence *per se* and strict liability, it was error to admit a number of FDCA statutes and regulations without the benefit of expert

REPRODUCED AT THE NATIONAL ARCHIVES

testimony.  The court concluded that it was error to admit such statutes and regulations.  The court did not address the issue of whether the FDCA and its regulations could serve as the predicate for a negligence *per se* claim.  Thus, this too is an issue of first impression in this jurisdiction.

Given the long and well-established history in this jurisdiction of the doctrine of negligence *per se* and the absence of an explicit ban on the use of the FDCA as a predicate for negligence *per se*, the Court can discern no legal principle or sound policy for imposing a blanket prohibition on the use of the FDCA and its regulations as the standard of care for common law tort claims.

However, this is not such a case.  As Defendants point out, the FDCA provisions and regulations proffered by Plaintiffs in support of their negligence *per se* claims are devoid of an appropriate standard of care.  Rather, the statute and regulations relied upon by Plaintiffs are administrative in nature and do not set forth a standard of conduct, the breach of which would constitute negligence *per se*.  As the Court stated in *Talley v. Danek Medical, Inc.*, 179 F.3d 154, 160 (4th Cir. 1999):

> The administrative requirement that a given device be approved by the FDA before being marketed – as opposed to a specific substantive requirement that a device be safe and effective – is only a tool to facilitate administration of the underlying regulatory scheme.  Because it lacks any independent substantive content, it does not impose a standard of care, the breach of which could form the basis of a negligence *per se* claim.  Its breach is analagous to the failure to have a driver's license.

*See also Little v. Danek Medical, Inc.* 37 S.W.3d 429, 456-57 (Tenn. 2000).

REPRODUCED AT THE NATIONAL ARCHIVES

Based on the foregoing, the Court concludes that statutory provisions and regulations proffered by Plaintiffs do not contain a standard of care. Accordingly, Plaintiffs' negligence *per se* claims are therefore dismissed [8]

### Rhonda Morton's Claims

In Count II of the Complaint, Plaintiff Rhonda Morton, mother of the minor Plaintiff, seeks recovery for loss of her daughter's services and affection, loss of her minor daughter's income, and for medical expenses incurred. Because the loss of parent-child consortium is not recognized in this jurisdiction, this claim is not actionable. *See District of Columbia v. Howell*, 607 A.2d 501 (D.C. 1992). In all other respects, the claims in Count II remains.

### Conclusion

Based on the foregoing, it is

**ORDERED** that Defendant George Washington University's Motion to Dismiss Amended Complaint is hereby **GRANTED;** and it is

**FURTHER ORDERED** that Defendant Universal Health Services, Inc.'s Motion to Dismiss Amended Complaint is hereby **GRANTED;** and it is

**FURTHER ORDERED** that District Hospital Partners' Motion to Dismiss Amended Complaint is hereby **GRANTED;**

**FURTHER ORDERED** that Count II is hereby **DISMISSED** for loss of parent-child consortium; and it is

---

[8] This ruling is limited to the FDCA and regulations proffered by the Plaintiffs in this case. The Court does not, by this ruling, purport to rule that all FDCA statutory provisions and regulations cannot support a claim of negligence *per se.*

REPRODUCED AT THE NATIONAL ARCHIVES

**FURTHER ORDERED** that Counts III, IV, V, VI and VII are hereby

**DISMISSED** for failure to state claim pursuant to Rule 12 (b)(6).

**SO ORDERED**.

Date: 11/30/01

William M. Jackson
Associate Judge

Copies to:

Anthony G. Newman, Esquire
NEWMAN & MCINTOSH
7315 Wisconsin Avenue
Suite 220E
Bethesda, MD 20814

Ira Sherman, Esquire
CHAIKIN & SHERMAN, P.C.
1232 Seventeenth Street, NW
Washington, DC 20036

Cynthia L. Santoni, Esquire
MILES & STOCKBRIDGE, P.C.
1751 Pinnacle Drive
Suite 500
McLean, VA 22102

Vicki L. Layman, Esquire
MCCANDLISH & LILLIARD, P.C.
11350 Random Hills Road
Suite 500
Fairfax, VA 22030