# ORIGINAL

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------x
:
FELICE I. IACANGELO,         :
et al.                       :
:
:
        Plaintiffs           :
                             :  Case No.
    vs.                      :  1:05CV02086
                             :  Judge Friedman
GEORGETOWN UNIVERSITY,       :
t/a Georgetown University    :
Hospital, et al.             :
:
        Defendants           :
:
---------------------------x

                         Washington, D.C.
                         July 25, 2007

Deposition of:

              CICILY IACANGELO

called for oral examination by counsel for

Defendants, pursuant to notice, at the Law

Offices of Williams & Connolly, 725 12th

Street, N.W., Washington, D.C., beginning at

10:00 a.m., before Renee A. Feder, CSR, a

Notary Public in and for the District of

Columbia, when were present on behalf of the

respective parties:

FEDER REPORTING COMPANY

283

when you say the glue was illegal?

    A.   I don't know how to answer that question. I didn't know it was illegal.

    Q.   How did you learn it was illegal?

    A.   I got a phone call from my husband when I was at work and he mentioned that he had talked with Mr. Newman and --

    MR. NEWMAN: Don't say anything about my conversation with your husband. Or what he said about me. Just what you understood.

    BY MR. MUZIN:

    Q.   When was that phone call?

    A.   Sometime in the spring of 2005.

    Q.   Spring of 2005. Other than the information that your husband gleaned from Mr. Newman, was there anything else that led you to believe that the glue was illegal?.

    A.   No.

    Q.   And to this day have you seen any evidence that the glue was illegal?

    MR. NEWMAN: Other than what --

FEDER REPORTING COMPANY

284

BY MR. MUZIN:

Q.   Other than your conversation with your counsel.

A.   No.

Q.   You also mentioned that you believe that the glue broke off --

A.   It is an assumption on my part.

Q.   This is an assumption?

A.   Right.  I don't know.  Something happened.

Q.   Do you have any evidence that the glue bloke off during the embolization, during any of the embolizations?

A.   No.

Q.   And have you seen any evidence that the glue broke off?

A.   No.

Q.   So, what gave you that impression?

MR. NEWMAN:  Objection.  You asked for her impression.  She gave it to you.

THE WITNESS:  I assumed something happened during the embolizations that caused

some damage to Karyn's brain.

        BY MR. MUZIN:

    Q.    Do you assume something happened during all three embolizations or only during the last one?

    A.    I didn't think about the first two because I was told that she was going to get worse before she got better. And I just knew something was wrong after the third one.

    Q.    Other than the fact that Karyn went into the hospital and she had a bad result, is there any basis for your belief that the hospital or Dr. Vance Watson did anything wrong in this case?

        MR. NEWMAN: Objection. Other than what counsel has told you. If you have any other basis.

        THE WITNESS: No.

        BY MR. MUZIN:

    Q.    When did you decide to have yourself and your husband appointed as guardians of your daughter?

we went through this already, but go ahead. Give the same answer that you just answered about 2005.

        THE WITNESS: We are talking about the fact we are getting older. And I know there was a comment made about that. But there is some point in your life, even if you say to yourself every single day, I don't need a will, I will live forever, at some point you say you know what? I am not going to live forever and I do need a will. So we have been thinking about this for a long time, what are we going to do if something happened to us and Karyn is in our care, so what will happen to Karyn. So we wanted to make sure that we had the legal authority to make decisions where she was going to go and who was going to take care of her and that is why we did it at the particular time we did it in 2005.

        Q.    I understand. I am not asking about making a will or having yourself appointed as guardian. I am asking about

1  initiating a lawsuit. What prompted that
2  decision in 2005?
3              MR. NEWMAN: Objection
4  attorney/client privilege.
5              THE WITNESS: I talked to
6  Mr. Newman.
7              MR. NEWMAN: Stop.
8              BY MR. MUZIN:
9       Q.    Did you contact any attorneys
10 before you contacted Mr. Newman?
11             MR. NEWMAN: Objection. Same.
12             THE WITNESS: I didn't contact any
13 attorneys.
14             BY MR. MUZIN:
15      Q.    Did your husband contact any
16 attorneys?
17      A.    Not to my knowledge.
18             MR. NEWMAN: Same objection, but
19 you talk too fast.
20             THE WITNESS: I have been accused
21 of that for a long time.
22             BY MR. MUZIN:

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

347

1          CERTIFICATE OF NOTARY PUBLIC

2                  I, Renee A. Feder, the officer

3    before whom the foregoing deposition was

4    taken, do hereby certify that the witness,

5    whose testimony appears in the foregoing

6    deposition, was duly sworn by me; that the

7    testimony of said witness was taken by me in

8    shorthand and thereafter reduced to computer

9    type under my direction; that said deposition

10   is a true record of the testimony given by

11   said witness; that I am neither counsel for,

12   related to, nor employed by any of the parties

13   to which this deposition was taken; and

14   further, that I am not a relative or employee

15   of any attorney or counsel employed by the

16   parties hereto, nor financially or otherwise

17   interested in the outcome of the action.

18

19                         _____
                           Notary Public in and for
20                         The District of Columbia

21   My Commission Expires:
     November 30, 2011
22

               FEDER REPORTING COMPANY