UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FELICE I. IACANGELO and CICILY )
IACANGELO, Guardians of the Person )
and Property of KARYN A. KERRIS, *et al.*, )
                                              )
        Plaintiffs, )
    v.                                 )    Civil Action No. 05-2086 (PLF/AK)
                                              )
GEORGETOWN UNIVERSITY, *et al.*, )
        Defendants. )
                                              )

**MEMORANDUM ORDER**

Pending before the Court is Defendants' Motion for a Protective Order to Prohibit Irrelevant Questioning about the *Glazer* lawsuit in Depositions ("Motion") [60], Plaintiffs' opposition to the Motion ("Opposition") [70], and Plaintiffs' reply to the Opposition ("Reply") [74]. Defendants move for a Protective Order to prohibit Plaintiffs from questioning any deponents about *Glazer v. Georgetown University*, Civil Action No. 0000321-99 (D.C. Sup. Ct. 1999) ("*Glazer*"), on grounds that such inquiry is not relevant nor will it lead to discovery of relevant information. (Motion at 1.)[1]

Background

In October 2005, Plaintiffs Cicily and Felice Iacangelo filed suit against Defendants, Georgetown University Hospital and Dr. Vance Watson, for medical malpractice, alleging that as a direct and proximate result of the Defendants' negligence, Plaintiffs' daughter, Karyn Kerris, suffered permanent damage to her body, including seizures, ischemia and neurological

---

[1] The *Glazer* litigation was a lawsuit filed by 18 doctors against Georgetown University for interference with their practice of medicine by basing it on volume and income. (July 18, 2007 Memorandum Order [53] at 2.)

impairments, "leaving her brain damaged and dysfunctional for the rest of her life."[2] (Am. Compl. ¶12.) Karyn Kerris was diagnosed with arteriovenous malformations and she underwent three embolization procedures at Georgetown University Hospital in November 1998, January 1999 and March 1999. (Am. Compl. ¶9.) Plaintiffs allege that the embolization procedures employed by Defendants should have been reviewed and approved by the Georgetown University Institutional Review Board ("IRB"). (Am. Compl. ¶11(h).) Plaintiffs also allege that the standard consent form used by Defendants, which did not mention the types of devices being used in the embolization or their names, the fact that the devices were procured from Canada, or the fact that the treatment was not approved in the United States, is insufficient to denote true informed consent. (Am. Compl., Count II.) Plaintiffs further allege that Dr. Watson concealed the illegality of the substances to be used in the embolization procedures and misrepresented the effectiveness of the embolization procedures. (Am. Compl., Count VIII.)

Legal Standard

Federal Rule of Civil Procedure 26(b) provides that discovery is permitted "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery . . . ." Fed. R. Civ. P. 26(b); *see Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 86 (D.D.C. 2005). Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the request is within the scope of discovery. *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000). A plaintiff is "not entitled to demand from defendants information that is neither relevant to a claim or defense nor likely to lead to information that is." *Caldwell v. Center for Corr. Health &*

---

[2] Ischemia denotes a shortage of blood supply to an area of the brain.

*Policy Studies, Inc.*, 228 F.R.D. 40. 44 (D.D.C. 2005).

  Fed. R. Civ. P. 26(c), which addresses protective orders, provides in part that:

> Upon motion by a party or the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c). *See Cobell v.* Norton, 226 F.R.D. 67, 82-83 (D.D.C. 2005) (noting that the court has discretion to "limit the scope of individual depositions in order to provide that information produced is likely to be relevant and in order to ensure the efficiency of the litigation process.") Pursuant to Rule 26(c), the court may, *inter alia*, direct "(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters . . . ." Fed. R. Civ. P. 26(c).

  A trial court possesses broad discretion in issuing a protective order and determining what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also United States v. Microsoft Corp.*, 165 F. 3d 952, 959 (D.C. Cir. 1999). The decision to limit or deny discovery by means of a Rule 26 protective order requires the court to balance "the requestor's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. Dep't of Health and Human Servs.*, 87 F. 3d 508, 517 (D.C. Cir. 1996) (citation omitted.) The party moving for a protective order bears the burden of making a showing of good cause required by Rule 26(c). *See, e.g., Fonville v. District of Columbia*, 230 F.R.D. 38, 40 (D.D.C. 2005); *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998).

Analysis

The issue at the heart of this Motion is whether the Court should prohibit Plaintiffs from inquiring about the *Glazer* litigation during Dr. Chiazze's deposition.[3] Plaintiffs contend that such inquiry is appropriate because Dr. Chiazze was a named plaintiff in the *Glazer* litigation where Georgetown University was a named defendant and "the subject matter of the *Glazer* suit was related to the hospital's compensation practices designed to enhance revenues, an issue in the present litigation . . ." and further "the *Glazer* litigation . . . occurred contemporaneously with the embolizations at issue. . . ." (Opposition at 2.) Defendants assert that they have demonstrated good cause for issuance of a protective order prohibiting inquiry into the *Glazer* litigation because such testimony is outside the scope of discoverable material under Fed. R. Civ. P. 26(b).[4] More specifically, Defendants argue that "Plaintiffs cannot establish any fact to

---

[3]While the title of Defendants' Motion refers to "Depositions," Plaintiffs indicate that "the only person whom Plaintiffs plan to depose regarding *Glazer* is Leonard Chiazzze, unless, of course, something unexpected arises." (Opposition at 8.)

[4]Defendants note that this Court previously prohibited the deposition of Dr. Chiazze, in connection with its ruling on Defendants' prior motion for protective order. In response to the motion, Plaintiffs proffered that the President of Georgetown University and the CEO of the Medical Center "instituted a policy in 1997 . . . that medical staff had to generate up to 70% of their salary or face salary reductions of up to 30% per year." (Memorandum Order [53] at 2, citing Plaintiffs' Brief Statement at 2.) According to Plaintiffs, this policy resulted in the *Glazer* lawsuit, and Dr. Chiazze was one of the plaintiffs therein. In ruling on Defendants' prior motion for protective order, this Court denied Plaintiffs' request to depose Dr. Chiazze on grounds that Plaintiffs failed to "provid[e] any evidence that there is a link between such profit policy and the issues in this medical malpractice litigation." (Memorandum Order [53] at 2-3.) The Court notes that its ruling was based upon the information presented in Defendants' [prior] motion and Plaintiffs' response thereto. Plaintiffs later orally requested that Dr. Chiazze be substituted as a deponent for Dr. Yeager [because they both had knowledge of the Institutional Review Board] and this Court indicated that it did not object to such substitution. The parties were subsequently unable to agree on the scope of Dr. Chiazze's deposition because Plaintiffs indicated their intent to question Dr. Chiazze about the *Glazer* litigation.

support that the prior *Glazer* lawsuit between tenured faculty and GU is relevant or reasonably calculated to lead to admissible (e.g. relevant) evidence because it has no bearing on Dr. Watson as he was and is not tenured and has never been on a tenure track, where the policy at issue in the lawsuit only impacted tenure [medical] faculty. . . ." (Memorandum in support of Motion at 10, without emphasis .)  Defendants focus most of their argument in favor of a protective order on their contention that the deposition inquiry sought by Plaintiffs is not relevant to Defendant Dr. Watson's actions and motivations because "he was and is not tenured and has never been on tenure track. . . . " (*Id.*, without emphasis.)

Plaintiffs respond to Defendants' contention by asserting that the compensation policy measures applied not only to medical faculty members but to the University as a whole. "[W]hether Dr. Watson was or was not a tenured professor at the time does not mean that Defendant Georgetown did not have an individualized profit motive which fostered illegal use of unapproved substances for embolizations by its staff in order to raise revenues and put them at the forefront of interventional neuroradiology." (Opposition at 4.)[5]  Defendants argue that the contested inquiry is not relevant in terms of Defendant Watson because "the compensation policy only applied to tenured faculty and both Dr. Watson and Dr. Schellinger [Watson's 1998-1999 supervisor and Chief of Neuroradiology] testified that they have no knowledge of such a policy and the resulting lawsuit . . . [thus, it] cannot lead to proof of Dr. Watson's intent or motive to perform embolizations." (Reply at 8, emphasis removed.)  Defendants do not similarly rebut Plaintiffs' contention that this deposition inquiry may be relevant to claims against Defendant

---

[5]Plaintiffs note that they have moved the trial court for leave to [further] amend their Complaint "to re-plead fraud with the requisite particularity." (Opposition at 5.)  Furthermore, "[p]unitive damages are, and have been, a viable claim in the Amended Complaint. (*Id.*)

Georgetown University. The Court finds that while the relevance of this inquiry may be thin, that relevance outweighs any burden or prejudice to Defendants insofar as Dr. Chiazze was a plaintiff in the *Glazer* litigation, who has firsthand knowledge of that litigation, and further, this Court's ruling that Plaintiffs may question Dr. Chiazze regarding the *Glazer* litigation does not address the ultimate admissibility of such testimony, which is an issue reserved for the trial court. Accordingly, it is this 11th day of October, 2007,

ORDERED that Defendants' Motion for Protective Order to Prohibit Irrelevant Questioning about the *Glazer* Lawsuit in Depositions [60] is DENIED, with the proviso that such inquiry is limited to the deposition of Dr. Leonard Chiazze.

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE