IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, ) | |
| As Guardian of the Person and Property of ) | |
| KARYN A. KERRIS, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civ. Act. No. 1:05CV02086 (PLF) |
| ) | |
| Georgetown University Hospital, ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a ) | |
| Georgetown University, and ) | |
| VANCE E. WATSON, M.D., ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' EMERGENCY MOTION TO EXTEND DEADLINES FOR
DEFENDANTS' FED. R. CIV. P. 26(a)(2) EXPERT DISCLOSURES
AND TO STRIKE PLAINTIFFS' EXPERT REPORTS
FOR PLAINTIFFS' FAILURE TO COMPLY WITH FED. R. CIV. P. 26(a)(2)(B)**

Pursuant to Federal Rules of Civil Procedure 6(b), 26(a)(2)(B), and 26(b)(2)(C)(iii) and

Federal Rules of Evidence 702 and 704, Defendants Georgetown University and Vance E.

Watson, M.D., by undersigned attorneys, move to extend the current deadline of January 31,

2008 for the disclosure of Defendants' Expert Disclosures to five weeks after Plaintiffs provide

the required Rule 26(a)(2)(B) information or data considered by their thirteen (13) designated

experts, such that the material may be considered.  Defendants received no 26(a)(2)(B) material

with Plaintiffs' Expert Disclosures.  Defendants also move to strike Plaintiffs' designated legal

experts and experts who provide legal opinions and the cumulative designation of four to five

experts to testify on the same issues.

Respectfully submitted,

Dated:  January 15, 2008          By: _Megan E. Hills_
                                  David G. Kiernan (D.C. Bar # 413806)
                                  Megan E. Hills (D.C. Bar #  437340)
                                  Zoe C. Scharff (D.C. Bar # 490482)

                                  725 Twelfth Street, N.W.
                                  Washington, D.C. 20005
                                  (202) 434-5000
                                  (202) 434-5029 (fax)
                                  dkiernan@wc.com
                                  mhills@wc.com
                                  zscharff@wc.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS,<br><br>Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. Act. No. 1:05CV02086 (PLF)<br>)<br>) Judge Paul L. Friedman<br>)<br>)<br>)<br>)<br>)<br>) |

## FEDERAL RULE OF CIVIL PROCEDURE RULE 37
## CERTIFICATION OF GOOD FAITH EFFORTS

On Friday, January 11, 2008, after Defendants participated in a telephone call whereby tentative agreement with Plaintiffs seemed possible, *see* January 10, 2008 Scharff Letter to Plaintiffs (Ex. 10), Plaintiffs told Defendants they opposed Defendants' Motion for Extension, opposed a limitation on the number of experts, and Defendants were told "you can file a motion to strike anybody you want." Deposition of Arthur Kaufman, M.D., January 11, 2008, at 12; *id.* at 9-10 (Ex. 1).

.

Dated: January 15, 2008                By:  *Megan E. Hills*
                                                      David C. Kiernan (D.C. Bar # 413806)
                                                      Megan E. Hills (D.C. Bar # 437340)
                                                      Zoe C. Scharff (D.C. Bar # 490482)

                                                      725 Twelfth Street, N.W.
                                                      Washington, D.C. 20005

(202) 434-5000
(202) 434-5029 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, | ) | |
| As Guardian of the Person and Property of | ) | |
| KARYN A. KERRIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 1:05CV02086 (PLF) |
| | ) | |
| Georgetown University Hospital, | ) | Judge Paul L. Friedman |
| GEORGETOWN UNIVERSITY, t/a | ) | |
| Georgetown University, and | ) | |
| VANCE E. WATSON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS[1]' MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO STRIKE PLAINTIFFS' EXPERTS
AND TO ENLARGE TIME TO RESPOND
TO PLAINTIFFS' EXPERT DESIGNATIONS
AS PLAINTIFFS MADE NO FED. R. CIV. P. 26(a)(2)(B) DISCLOSURES

Providing conclusory opinions from thirteen (13) designated experts, Plaintiffs' expert disclosures came with **no** information or data considered by any of the thirteen (13) experts in forming their opinions as required by Fed. R. Civ. P. 26(a)(2)(B), when they transmitted the expert reports; yet, Plaintiffs oppose this Motion, stating "the rules were followed."[2] To date, Defendants have not received the required information or data that plaintiffs' thirteen (13) designated experts considered, nor even a date when Plaintiffs will provide the required information. Because Plaintiffs failed to provide the bases for the opinions rendered, Defendants

---

[1] "Defendants" refers collectively to defendants Georgetown University ("GU") and Vance E. Watson, M.D. ("Dr. Watson"). "Plaintiffs" refers collectively to plaintiffs Felice P. Iacangelo and Cicily Iacangelo. "Fed. R. Civ. P." refers to Federal Rule of Civil Procedure.

[2] *See* Deposition of Arthur Kaufman, M.D., January 11, 2008 ("Kaufman Dep.") at 92 (Ex. 1).

respectfully request the Court to extend Defendants' deadline to respond to Plaintiffs' expert reports until five weeks after Plaintiffs provide the full, required disclosures (and to modify the Scheduling Order to preserve the intervals currently in place for completing expert depositions and filing dispositive motions), such that Rule 26 is obeyed as the Court intended.[3]

Defendants also respectfully request this Court to strike those experts and those opinions that constitute only an opinion as to the law: What the law requires, what the law prohibits, what the law labels "illegal." An expert in the law has already been designated: "Each courtroom comes equipped with a 'legal expert,' called a judge . . ." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).

Lastly, Defendants request the Court limit the number of experts designated by Plaintiffs because even ten experts (assuming that the designation of three lawyers is deemed invalid), with four or five experts designated for the same topics is both violative of F.R.E.[4] 403 and Fed. R. Civ. P. 26(b)(2)(C)(iii).[5]

---

[3] As the Court observed at the April 11, 2007 Scheduling Hearing, "but I think this discussion we're having suggests **why it's important to have both sides proceed under the rules rather than in some less formal way.** Because if you [Plaintiffs' Attorney] just say here are the affidavits, now depose them, and you [Defense Attorney] thought these were too conclusory, you wouldn't have avenues to come back to me or to come to Judge Kay. But if you have the rule to rely on . . . at least everybody will understand the general principles are in which that dispute is going to be resolved . . . . **So I think we're smart to stick to the rules.**" April 11, 2007 Scheduling Hearing Transcript at 7, lines 7-17 (Ex. 2) (emphasis added).

[4] "F.R.E." refers to the Federal Rules of Evidence.

[5] Fed. R. Civ. P. 26(b)(2)(C)(iii) allows the Court to limit the burden and expense of expert discovery.

## FACTS OF THE CASE

In this case, Plaintiffs bring suit against Defendants on behalf of their daughter, Karyn A. Kerris ("Mrs. Kerris") for the medical care Defendants provided to her. In the Second Amended Complaint,[6] Plaintiffs allege, *inter alia*, that Defendants committed medical malpractice, breached their fiduciary duty, and failed to adequately warn in treating Mrs. Kerris's cranial arteriovenous malformation ("AVM").[7] *See* Sec. Am. Compl. Counts I-II & V. Plaintiffs also allege that Defendants willfully and wantonly defrauded Mrs. Kerris by failing to inform her that the devices to be used in her treatment were not FDA-approved and breached the allegedly stated 95% guarantee of success. *Id.* & Counts III-IV & VI. Plaintiffs separately bring three negligence *per se* claims based on alleged violations of the federal Food, Drug & Cosmetic Act ("FDCA"), claiming that providing clinical care to Mrs. Kerris with non-FDA approved devices violated various provisions of the FDCA and its regulations.

Therefore, Plaintiffs' Second Amended Complaint presents the following issues:

1. Was Mrs. Kerris given an appropriate recommendation to undergo treatment by defendant Dr. Watson and was that treatment free from negligence;

2. Did Defendants breach an alleged standard of care claimed to be outlined by the FDCA and its regulations by providing clinical care to Mrs. Kerris with a non-FDA approved device;

3. Did Defendants inform Mrs. Kerris of the risks and benefits of the procedure;

---

[6] On December 22, 2007, Plaintiffs filed a motion to amend their Amended Complaint. This motion has not yet been granted, but for purposes of this motion, Defendants use the Second Amended Complaint, as Plaintiffs' Expert Reports address claims that currently do not exist in the Amended Complaint

[7] An AVM is an abnormal tangle of arteries and veins that bypass the small vessels in the brain that make up the normal circulation. AVMs do not allow for a gradual pressure drop from the high arterials pressure to the low pressure on the venous side. Thus, AVMs represent a high flow short-circuit that reduces ("steals") blood flow from both the surrounding tissues as well as reducing ("stealing") blood that would otherwise pass through to more distant tissues and nourish them. National Institute of Neurological Disorders & Stroke (Dec. 11, 2007), http://www.ninds.nih.gov/disorders/avms/avms.htm.

4.  Did defendant Dr. Watson guarantee a 95% chance of success;

5.  Did Defendants willfully and wantonly defraud Mrs. Kerris in allegedly omitting to inform her of the regulatory status of the device to be used.

## ATTEMPTS TO OBTAIN REQUIRED RULE 26(a)(2)(B) INFORMATION

To date, Plaintiffs have not provided the required Rule 26(a)(2)(B) material as to what information or data their thirteen designated experts considered in reaching their conclusions. Moreover, Plaintiffs will not or cannot provide a date certain when the required disclosure—now three weeks overdue—will be made. *See* January 8, 2007 Newman Letter to Defendants ("I am receiving materials specific to your various concerns addressed in your January 7, 2008 letter. I am sending you many of the items in today's mail **and will continue to send them to you as I receive more.**") (Ex. 3) (Emphasis added). Fed. R. Civ. P. 26(a)(2)(B) does not contemplate a "rolling production" of information; such data is to be disclosed on the date that an expert's report is provided. *See* Fed. R. Civ. P. 26(a)(2)(B).

Pursuant to this Court's October 24, 2007 Minute Order, Defendants had five weeks from December 22, 2007 to have defense experts assess Plaintiffs' disclosed expert conclusions, which necessarily requires them to see the information or data on which the conclusions of Plaintiffs' experts are based in order to evaluate them and create their own reports. As the five weeks included the Christmas and New Year's holidays, Defendants needed Plaintiffs to abide by the time frames set by the Court. Plaintiffs' Rule 26(a)(2)(B) Expert Disclosures were due on December 22, 2007 and Defendants' Rule 26(a)(2)(B) Expert Disclosures are due on January 31, 2008. *See* Docket Entry on October 24, 2007, acting on Filing #80.

December 22, 2007:  On December 22, 2007, Plaintiffs filed an expert disclosure listing thirteen (13) experts, and placed those expert's reports with DHL, ignoring Defendants' emails, requesting that just the 2-3 page reports be sent to them by electronic mail (Plaintiffs' counsel were

present to receive the emails as they subsequently filed a Motion to Amend the Amended Complaint, *see* Docket at Filing #86) when informed that the disclosures would not be delivered to Defendants until December 26, 2007.[8]

A review of the disclosure packet immediately revealed significant deficiencies in each one of the thirteen reports. Simultaneously, Defendants saw that Plaintiffs had designated five (5) medical experts on the issue of medical causation and liability (Drs. DeBrun, Peerless, Latchaw, Harris, and Margulies), four experts to testify that the use of non-FDA approved devices for the treatment of patients breached a standard of care (Messieurs Damaska and Kamm, Drs. Kaufman and Van Woert), two experts on the issue of damages (Drs. Lurito and Dr. Lichtblau), as well as two attorneys to testify about their interpretation of the FDCA and its regulations establishing Institutional Review Boards ("IRBs") and the appropriateness of the legal advice defendant GU's counsel when viewed against their interpretations of the FDCA and its regulations (Ms. Gabis and Mr. Sherwin). *See* Plt.'s List of Expert Designations (Ex. 5).

Moreover, virtually all of Plaintiffs' expert reports stated a legal conclusion that either paraphrases a federal statute or regulation or explicitly references the federal statute or regulation the expert interprets as applying to Defendants and states the statute or regulation was violated, which alleged violation thereby breached the standard of care.

**January 3, 2007:**  On January 3, 2007, by teleconference and letter, Defendants alerted Plaintiffs to their failure to comply with the basic requirements of Rule 26(a)(2)(B). January 3, 2008 Hills Letter to Plaintiffs' counsel (Ex. 6). This January 3 letter pointed out that "all of plaintiffs' expert disclosures fail to provide the information or other data required by

---

[8] The package did not arrive at Williams & Connolly until December 26, 2007. As with many law firms, Williams & Connolly followed the Executive Order that granted all non-essential personnel leave on Monday, Christmas Eve, such that Office Services personnel were given a holiday, leaving no one to deliver the package to the attorneys. This information was provided to Plaintiffs after they filed their list of expert disclosures and prior to them filing their Motion to Amend the Amended Complaint, but Plaintiffs did not respond. *See* December 22, 2007 emails (Ex. 4).

Rule 26(a)(2)(B)," and pointed out to Plaintiffs that this delay was impeding the timely litigation of the case. *Id.* at 1-2. The letter gave numerous concrete examples of the type of deficiencies Defendants saw (without providing an exhaustive list). The letter also pointed out to Plaintiffs that they had basically admitted their disclosures were insufficient by stating that "ascertaining whether each expert considered other data or information would require you to contact each disclosed expert to see if and what they may have considered." Ex. 6 at 1.

**January 4, 2008:** On January 4, 2008, Plaintiffs responded to this initial communication by providing a list of bates numbers and the representation that all of the experts "considered" the same range of bates numbers (amounting to thousands of pages), but refused to stipulate that the bate stamp ranges they belatedly provided were all the information or data that an expert considered or which of the thousands of pages each expert considered in forming the opinion. January 4, 2008 Newman Letter to Defendants (Ex. 7); January 8, 2008 Newman Letter to Defendants (Ex. 3). Plaintiffs did not address the global deficiency raised by the January 3, 2008 Hills Letter or provide any information or data; rather, Plaintiffs limited their disclosure of information to providing a general bates range list of documents sent to the experts and partial document names of other information considered by the experts named as examples without providing any of the actual data or information considered by each expert (*e.g.*, stating Ms. Gabis considered a document called "Device Advice," but did not send it). January 4, 2008 Newman Letter (Ex. 7).

**January 7, 2008:** By letter dated January 7, 2008, Defendants again attempted to obtain the information that Rule 26(b)(2)(A) guarantees by repeating their previous requests for "**all material** that the expert considered"[9] and detailed the most glaring omissions in each of the thirteen experts. January 8, 2008 Hills letter to Plaintiffs (Ex. 8 ).

**January 8, 2008:** At 5:44 p.m., Plaintiffs responded by email that they were "faxing you the requested information I [Plaintiffs' attorney, Wendy Wyeth] have received from all of the experts now so you will get it before tomorrow." (Ex. 9). The fax consisted of material for only two of the designated thirteen experts (and two fee schedules for two other experts): 47 pages of documents for Dr. Kaufman, consisting of internet pages from Medical Health and Public Law's website of its statement of the law of Informed Consent, a medical article, and an Import Alert, the latter two items being explicitly referenced in Dr. Kaufman's expert report. Plaintiffs sent six pages of materials for

6

designated legal expert, Julia Gabis, Esq., consisting of the document, "Device Advice," referenced in her report and her notes, a fee schedule for Dr. Margulies, and a fee schedule for Dr. Harris. *See* January 8, 2008 email and Fax (Ex. 9).

**January 11, 2008:** Plaintiffs state that their Expert Disclosures were and are complete and that they oppose any extension. *See* Kaufman Dep. at 10-11 ("The answer to the question is yes, we do oppose the motion. And I would like to make this observation. Over 95 percent, I believe, of the information that was relied on by the experts is information that you provided to us, which includes the Georgetown records which you Bates stamped and provided, which were provided back again to you and which have now been brought again to this meeting in the box that Dr. Kaufman brought, which contains all of the information which was previously given to you. In addition to the documents that were attached to oppositions and to motions that were filed, and numerous motions you filed in this case. And the numerous exhibits were all in your possession, including the affidavits and including the other material that you have requested. Finally, the other material, which is public record, includes the statutes that are part of the United States Code. So I would suggest to you that all of that information is information you have.") (Ex. 1).

**January 11, 2008:** Dr. Kaufman appeared for his deposition with a box of the bates stamped documents, tabbed by him, as well as two six inch stacks of documents containing material Defendants had never seen and testified that he considered (and often relied) on this information or data in forming his conclusions. Kaufman Dep. at 92-97, 102, 134, 278, 281, 287-88. Dr. Kaufman further testified that he relied upon a document compiled of excerpts from medical records. Kaufman Dep. at 287-88 ("Q. When you say excerpts, is this a document that a lawyer, a paralegal, put together of excerpts of medical records? A. Yes. Q. And you considered that as part of your initial information and review? Is that the best of your recollection? A. I think that's correct. Q. So the August 22nd, 2007 report, the information or data you believe you considered with the excerpts of the medical records? A. That's correct."). This document has never been provided to Defendants, nor did they know of its existence prior to Dr. Kaufman's deposition. Lastly, Dr. Kaufman testified that **the first time he was asked for the information or data he considered in forming his opinions was the night preceding his deposition.** *Id.* at 298 ("Q. When was the first time you heard in this case that you should provide copies of your information or data underlying what you considered to reach the opinions in this case? A. Last night.") (Ex.1).

Under the Scheduling Order, Defendants had five weeks to prepare expert reports. Defendants now have only an approximate two weeks until their January 31, 2008 deadline without having the required information or data that Plaintiffs were required to provide on December 22, 2007.  Attempting to depose Plaintiffs' experts and addressing their conclusions in defense reports in this void creates a prejudicial imbalance for Defendants' creation of evidence—neither the depositions, nor any report can focus on the issues peculiar to **this** case, as the bases for Plaintiffs' proffered expert opinions have not been provided.

## ARGUMENT

Plaintiffs put Defendants in an untenable position with respect to responding to Plaintiffs' expert disclosures.  First, Plaintiffs disclosed an unreasonable number of experts – thirteen – given the number of issues in this case requiring expert testimony and the complexity of those issues.  Second, Plaintiffs provided Defendants with expert disclosures that are so deficient that Defendants' experts cannot properly begin to consider them in formulating their own reports. Significantly, Plaintiffs' experts failed to disclose what information or data they considered and what the basis for their opinions are as required by Rule 26(a)(2)(B).  Third, nine of Plaintiffs' designated experts state conclusions of law, professing opinions that presume to be the final arbiter on what a federal law or regulation means.

Therefore, Defendants respectfully request that the Court strike Plaintiffs' experts to reduce the number from thirteen to four or five – such that there is only one expert for an issue as opposed to Plaintiffs' designated four or five experts on each issue.  Defendants further ask this Court to strike those experts and opinions where the opinions are nothing more than the interpretation of federal law.  Lastly, Defendants ask the Court to enlarge Defendants' time to respond to Plaintiffs' experts' reports.  Given the volume of experts, and the inadequacies of

their reports and disclosures produced on December 22, 2007, it is impossible for Defendants'

experts to prepare responses by January 31, 2008 as required by the scheduling order.

## DEFICIENCIES IN PLAINTIFFS' 26(a)(2) EXPERT DISCLOSURE

As examples:[10]

➢ **None of Plaintiffs' thirteen expert reports were accompanied by any data or information as to what the expert considered in forming the opinion.** *See* Appendix hand-delivered to Court on January 15, 2008 with the entirety of December 22, 2007 Plaintiffs' Expert Disclosures, which is already within the possession of Plaintiffs.

➢ **Plaintiffs' thirteen expert disclosures do not state that their reports were based only on data or information to which the report explicitly referred sufficient to allow Defendants to identify that data or information.** *Id.*

➢ **Many of Plaintiffs' Expert Reports refer to a review of "material provided" without stating what the material provided was that each expert considered.** *See* App., Tabs 1 ( "[a]fter review of the materials provided, I have formulated the following opinions. ."); 6 (Dr. Kaufman 8/28/07 Expert Report; "I have reviewed the additional material . . . my opinion has not changed").

➢ **Plaintiffs' Expert Reports refer generically to "medical records" or "Georgetown Hospital medical records," when Mrs. Kerris was treated at Georgetown University Hospital—both in and out-patient—for over ten years and to the current day, as well as by other medical providers. Making this statement provides no information at all; nor as the deposition of Dr. Kaufman revealed, even with bate stamps belatedly provided, does not provide the actual information or data the expert considered in forming his or her conclusions.** *See* App., *inter alia*, Tabs 2, (Dr. Debrun October 2, 2007 Expert Report; "after reviewing the films and records of Karin [sic] Kerris . . ."); Tab 4 (Dr. Harris October 12, 2007 Expert Report; "In order to give an expert opinion . . . I reviewed the following documents . . . Georgetown University Hospital records for Karyn Kerris"); (Dr. Latchaw October 15, 2007 Expert Report; "I have reviewed the medical records of Ms. Karyn Kerris"); 12 (Dr. Van Woert October 12, 2007 Expert Report ("I have reviewed the medical records of Karyn Kerris").

➢ **Even when not referring to medical records, Plaintiffs' Expert Reports were so vague as to what data or information was considered that it was not possible to discern the basis of opinion.** *See* App., *inter alia*, Tab 3 ((Julia Gabis, Esq.

---

[10] Defendants do not detail all the deficiencies in Plaintiffs' Expert Reports in this pleading, but seek only to give the Court examples.

December 12, 2007 Expert Report; reviewed "various federal statutes and regulations pertaining to the use of devices.").

➢ **Plaintiffs' Expert Reports either baldly state the opinion that a national standard of care was breached without providing any information or data considered in forming that opinion or referring to data or information that is not identified.** *See* App., Tabs 1 (Damaska August 20, 2007 Expert Report); 6 (Dr. Kaufman August 22, 2007 Expert Report; "After careful review of the above material . . . it is my opinion that Georgetown University Hospital . . . failed under the national standard of care . . ."); 7 (Dr. Latchaw October 15, 2007 Expert Report; refers to "literature" as basis for knowledge of national standard; no literature is provided, nor identified);11 (Dr. Peerless's Expert Report; same); 12 (Donald Sherwin, Esq. September 11, 2007 Expert Report); 13 (Dr. Van Woert October 12, 2007 Expert Report; same).

➢ **Throughout Plaintiffs' Expert Reports, there are oblique references to information or data on which the expert relied, but no data or information was provided.** *See* App., Tabs 3 (Julia Gabis, Esq. December 12, 2007 Expert Report; "Device Advice"); 13 (Dr. Van Woert October 12, 2007 Expert Report; "IRB information sheets").

➢ **Approximately half of Plaintiffs' thirteen expert reports had no fee schedule or a fee schedule so inadequate that the cost of taking the deposition could not be ascertained.** *See* Fed. R. Civ. P. 26(a)(2)(B)(iii) (requires "a statement of the compensation to be paid for the study **and testimony in the case**"; emphasis added); No fee schedule for Harris;[11] Kaufman fee schedule (no information as to testimony fee); Dr. Latchaw fee schedule (same); Lurito fee schedule (same); Peerless fee schedule (same); Van Woert fee schedule (same). *See* App., Tabs 4, 6, 7, 9, 13

➢ **Plaintiffs' Expert Reports contain opinions without providing the information or data as to how it was formed,** assessing Defendants as responsible for some $20 million in damages without providing the information as to how this figure was reached. *See* App., *inter alia*, Tab 9 (Mr. Lurito's Expert Report).

➢ **Plaintiffs' Expert Reports opine as to what the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq., and its enacting regulations require or that actions violated federal law** . *See* App., Tabs 1-2, 4, 6-7, 11, 13.

➢ **Plaintiffs designate both lawyers and non-lawyers to opine as to whether an attorney's actions breached the standard of care for attorneys.** *See* App., *inter alia*, Tabs 3, 5-6, 12-13.[12]

---

[11] The omission of Harris's fee schedule was only provided more than two weeks late on January 8, 2008 after it was requested.

[12] Other obvious omissions include the fact that Plaintiffs failed to provide Defendants with Mr. Damaska's full report (App., Tab 1), omitting the last two pages, which pages were only

Defendants have spent the last three weeks attempting to get the information that was supposed to be provided on December 22, 2007. While Plaintiffs have provided some additional material, Plaintiffs refuse to extend Defendants' deadline for providing Expert Reports, as well refusing to stipulate that Defendants even have one part of the required Rule 26(a)(B)(2) material. Compare 1/7/08 Hills Letter[13] to Plaintiffs to 1/8/08 Newman Letter to Defendants to 1/8/08 Newman Letter (Ex. ).[14]

**I.    Plaintiffs' Thirteen Experts Should Be Reduced in Number, Given the Inadequacy of Expert Disclosure and the Cumulative Opinions Offered to Prevent Prejudice to Defendants.**

The number of Plaintiffs' designated experts should be reduced because:

1. Plaintiffs have failed in their obligation to provide the required basis for the reports of the actual information or data each expert considered in forming the particular opinion, instead submitting a cursory report from each of their thirteen experts with no underlying data.

2. The Rules of Evidence do not allow for four to five experts to testify on the same issue. F.R.E. 403.

---

provided to Defendants on January 7, 2008. The inclusion of a testimony list from Dr. Debrun (*id.* Tab 2) while dated "Revised 5/03," lists one of his previous cases with Plaintiffs' attorney Newman as "active" ("Monique Morton"), which case is no longer active, leaving the impression that the list may not have been updated for some time. Dr. Lurito's ""List of Dr. Lurito's Court Appearances over the Last Four Years" does not disclose whether the required deposition is included (*id.*, Tab 9).

[13] *Id.* ("**Unless I hear from you immediately**, you have stipulated that the bate stamp list of documents are the medical records for Karyn Kerris to which Dr. Kaufman refers [requesting same representation for all experts who refer in general to medical records or Georgetown University Hospital medical records]." ) (Ex. 8) (Emphasis in original).

[14] *Id.* ("As to your numerous demands for automatic stipulations, please be advised that Plaintiffs will not agree to any informal, automatic stipulation.") (Ex. 3).

3.  Federal Rule of Civil Procedure 26(a)(2)(C)(iii) does not allow a plaintiff to designate thirteen, duplicative experts, all of whom cannot testify, *id.*, much less thirteen experts who provide cursory and conclusory reports without providing any data or information, to increase litigation costs and burden on a defendant when the proposed designations far outweighs the needs of the case.

4.  Lawyers and non-lawyers are not permitted to provide expert testimony as to what the law requires.  F.R.E. 702, 704.

At this time, instead of requesting that the Court strike all of Plaintiffs' experts for failing to obey Rule 26(a)(2)(B), Defendants request the Court to strike all designated legal opinions and legal experts.  Defendants also request that the Court limit the number of Plaintiffs' experts to enable Plaintiffs to complete their disclosures so that Defendants can respond appropriately to the opinions of the remaining experts that Plaintiffs actually intend to present at trial.  The request is made now as now is when the expense of depositions and compiling expert reports are incurred.

## II.    Plaintiffs' Expert Reports Consist of Impermissible Legal Opinion.

Ten of Plaintiffs' thirteen expert reports contain impermissible legal conclusions— several consist entirely of them.  Either lifting language from the FDCA and its regulations or overtly citing them, Plaintiffs' experts conclude that Defendants violated the national standard of care by violating federal law.

- ➢ William Damaska:  "**It is my opinion that Georgetown University Hospital and Vance Watson, M.D. violated the national standard of care by violating the following statutes**: 21 U.S.C. § 351c," "21 U.S.C. §351(f)(1)(B)(1)," 21 C.F.R. § 812.20(a)(2)," "and 21 U.S.C. § 351(f)(1)(B)(I). . . by using Histoacryl . . ." App., Tab 1.

- ➢ Gerald Debrun, M.D.:  "**The use of NBCA and Lipiodol in the treatment of brain AVM's [sic] had to be approved by the Institutional Review Board at Georgetown**

12

**and under and IDE from the FDA. Short of those two permissions, the use of NBCA mixed with Lipiodol is below the standard of care.**" App., Tab 2.

- o An Institutional Review Board is created by the FDCA through its enforcing statutes as is what it is permitted to review. 21 CFR § 812.3(f); 21 C.F.R. § 56.109.

- o An IDE ("Investigational Device Exemption") is also created by statute—the FDCA—through its enforcing regulations. 21 C.F.R. §812.1.

- o In opining that the use of NBCA and Lipiodol in the treatment of brain AVM's [sic] had to be approved by the Institutional Review Board at Georgetown and under and IDE from the FDA, the expert is making a legal determination as to what these federal regulations mandate.

➤ Julia Gabis, Esq.: "It is my opinion to a reasonable degree of legal certainty that Ms. Zimmet . . . failed to conform to the national standard of care . . . . in that she failed to determine . . . . **that under the Federal Food, Drug and Cosmetic Act and regulations promulgated thereunder, the device Histoacryl could not be distributed lawfully in the United States , , , ,**" App., Tab 3 at 1-2

➤ A. Basil Harris, M.D.: "My opinion with reasonable medical certainty is that Georgetown University Hospital et al, failed a national standard of care . . . . [Histoacryl] **is classified as a Class III device permitted to be used otherwise only by FDA exception approval (IDE)** . . . . When the possible need to write FDA **showed there was a concern about the illegal use.**" App., Tab 4 at 1-2.

➤ Robert Kamm, B.S. Pharm, J.D.: "I am of the opinion that Dr. Watson failed to meet the applicable Standard of Care by a healthcare provider **by utilizing an illegal device product . . . . a violation of the** [FDCA] **Act. . . . In my view, use of an adulterated device violates one of the primary tenets of the law . . . . Dr. Watson acted in wanton disregard of the statute . . .**" App., Tab 5.

➤ Arthur Kaufman, M.D.: "[I] t **is my opinion . . .failed under the national standard of care . . . . [I]t is inconceivable that Sheila Cohen Zimmet, Esquire . . .** would allow this product to be used . . . . It should not have been used ; if it was to be used at all, it would have to be given an IDE by the FDA and go through a Georgetown Institutional Review Board . . . Dr. Watson could have and should have known that Histoacryl was not approved by the FDA and had to be **illegally imported** from Canada. Further, he could have and should have known that a Class III "investigational device had to be approved and overseen by the Georgetown Institutional Review Board. . . . **It is my opinion that this is willful and wanton misbehavior on the part of this hospital attorney** and therefore on the part of Georgetown University." App., Tab 2.

- o "Q. And you are relying -- you said it implies, **so you are interpreting Section 45 CFR 807 and I believe you said -- A. .94. Q. .94 to mean that a Class III device cannot be used absent someone getting an IDE. A. I think that is exactly what it means, yes. Q. What is the basis for your statement that --**

**your interpretation of this regulation is the national standard, that that is
how it is interpreted as a national standard of care?** A.  It is a regulation.
That's the national standard.  **The regulation is the  national standard.  Q.  And
your basis for saying that the regulation is the national standard and that
means 45 CFR 807.94 is based on just the fact that it is a Federal regulation?**
A.  **Exactly.**" Kaufman Dep. at 133-34 (emphasis added).

➢ Richard Latchaw, M.D.:  **"[U]se of a non-approved substance for the treatments . . .
required FDA and institutional IRB approval. . . .**  [T]here is no indication that Dr.
Watson had such an IDE or local IRB approval **which would have been required for
the legal use of the substance ("device") to conform to the national standard of care
for its use.  Both Dr. Watson and Georgetown University Medical Center violated
not only the national standard of care, but also the FDCA statues** [sic] **by using the
device without an IDE and without institutional IRB approval. . . .  It is my opinion
to a reasonable degree of medical certainty, in fact, to a high degree of certainty that
the aforesaid negligence and violations of the national standards of care by Dr.
Watson, and the national statutes regulating the use of a non-approved device . . ."**
App., Tab 7.

➢ S. J. Peerless, M.D.:  "[T]he choice and use of this particular liquid adhesive (NBCA)
was unacceptable in that this substance was not FDA approved and **nor was it approved
by the Georgetown University Institutional Review Board under an appropriate
IDE."** App., Tab 11.

➢ Donald Sherwin, Esq.:  "In this case which did involves [sic] direct patient care, i.e., the
injection of an **illegal glue . . . mandated IRB review. . . .**  In my opinion, to a
reasonable degree os [sic] **legal probability that Ms. Zimmet violated the national
standard of care, required by a** [sic] **of an attorney on the IRB, as well as violated
the IRB Policies and Procedures of Georgetown, by failing to instruct Dr. Watson to
submit his potential use of the glue to the IRB and require him to create a proper
and complete consent form."** App., Tab 12.

➢ Melvin Van Woert, M.D.:  **"The FDA defines Class III devices as those which could**
have major health risks and serious risks to the health, safety, and welfare. . . .  **The FDA
considers all unapproved Class III devices** as investigational and experimental **and
requires PMA (premarket approval) or IDE (Investigational device exemption) and
IRB (Institutional review board) approva**l. . . . .  **Therefore, it was a violation of the
national standard of care for Dr. Watson to treat patients with Histoacryl and
Lipiodol without an IDE, IRB approval and an approve detailed informed consent.** .
. . It is my opinion, with a reasonable degree of medical certainty, that Dr. Watson's
department and Georgetown University Hospital should have prevented him from his
**illegal use of Histoacryl and Lipiodol until he obtained an IDE and IRB approval**. .
.To a reasonable degree of medical certainty, if this appropriate and responsible action
had taken place, Karyn Kerris would not have been treated with **illegal**, unapproved and
unsupervised experimental devices . . . and the disabling consequences of these
procedures would not have occurred . . ." App., Tab 13.

### III.    Legal Opinions Are Impermissible.

Since *Marbury v. Madison*, 5 U.S. 137, 177 (1803), "[i]t is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." Allowing paid "experts in the law" to opine as to what a federal law requires renders the judiciary largely superfluous. Thus, reports from attorneys like Ms. Gabis and Mr. Sherwin should not be allowed. They should be struck as their opinions present nothing more than legal arguments to forward Plaintiffs' lawsuit.

Expert testimony on legal issues is improper and inadmissible. *Mossey v. Pal-Tech*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002). The Rules of Evidence provide that an expert witness may testify only if "scientific, technical or other specialized knowledge **will assist the trier of fact to understand the evidence or to determine a fact in issue**." F.R.E. 702 (emphasis added). Expert testimony that is not helpful to the jury in determining facts or understanding evidence is not admissible. Expert testimony as to the meaning and interpretation of laws, or the application of laws to facts, is not helpful to a jury and not admissible "because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court." *Mossey*, 231 F. Supp. 2d at 98 (citation omitted). *See also Burkhart v. Washington Metro. Area Transit Authority*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) ("[An expert] may not testify as to whether the legal standard has been satisfied").

In *Mossey*, an expert's opinion was stricken, in part because it used terms of art, with specific meanings in the context of contract interpretation, and reached legal conclusions. *Mossey*, 231 F. Supp. 2d at 98. Plaintiffs' experts are committing the same transgression, and infringing on the role of the Court to interpret the law, when they offer certain opinions as to

what federal law requires. For example, Plaintiffs' experts opine as to whether the FDCA required, permitted or prohibited certain actions by Defendants. *See e.g.*, Expert Report of Dr. Van Woert, App., Tab 13 ("An approved IDE is necessary for the legal shipment of a Class III device for clinical investigation."; "the use by Dr. Watson . . . of the unapproved devices . . . does not fall under the exemption of 21 U.S.C. 360(g)92). That section only exempts practitioners use of devices that they are "licensed by law to . . . administer.").).

This type of opinion lays bare the reality that Plaintiffs' experts are offering opinions as to what the federal statutes and regulations require and prohibit based on **reading those statutes** – Plaintiffs' experts have no special qualifications to read statutes that render their legal work more helpful to the jury than a Court's jury instructions would be. Plaintiffs' experts go one step further and offer their legal conclusion that Defendants violated federal statutes and regulations, based on their interpretations of those regulations. *See e.g.* Expert Report of Damaska, App., Tab 1 ("[Defendants'] use of Histocryl and Lipiodol was 'in violation of regulations,' 21 U.S.C. § 351(f)(1)(B)(I), and thus constituted "adulteration" as did the compounding of Histocryl with Lipiodol."); Expert Report of Dr. Van Woert, App., Tab 13 ("the use of Histacryl and Lipiodol for Karyn Kerris was a violation of . . . Federal law. . . ."). And Plaintiffs' experts state that such violation of the regulations was necessarily a violation of a national standard of care. *See e.g.* Expert Report of Damaska, App., Tab 1 ("Sheila Zimmet, Esq. as the IRB attorney, violated the national standard of care in failing to provide advice consistent with the FDCA . . . .").

Plaintiffs' experts' opinion as to what the national standard of care requires is based solely on their reading of the statute and therefore is an attempt to disguise a purely legal opinion. *See* Kaufman Dep. at 133-34 ("Q. What is the basis for your statement that -- your

interpretation of this regulation is the national standard, that that is how it is interpreted as a national standard of care? A. It is a regulation. That's the national standard. The regulation is the national standard.**")** (Ex. 1). In other words, Plaintiffs opine on the meaning of the law, and then opine that Defendants violated it and that the law established a national standard of care, so Defendants violated that too.

Defendants cannot, in this motion, set forth all the improper legal opinions sprinkled throughout Plaintiffs' expert reports. The opinions primarily relate to the interpretation of federal statutes and regulations, and opinions whether Defendants' conduct violated those statutes and regulations. Therefore, Defendants request that the court strike and prohibit Plaintiffs from presenting any experts who seek to opine what the law requires and to strike in their entirety those opinions who offer nothing more than their particular view as to what the law requires. Defendants believe that Ms. Gabis and Mr. Sherwin, lawyers whose entire reports based on "to a reasonable degree of legal certainty" should be struck in their entirety. Defendants also request that all legal opinions contained in the reports cited above be struck and direct the Court to the opinions of Mr. Damaska, Dr. Kaufman, Mr. Kamm, Esq., and Dr. Van Woert to see if the offered reports are so permeated with legal material that they also should be struck in entirety. In the alternative, Defendants request the Court to strike all legal opinions from Plaintiffs' expert reports, such as those interpreting law and/or regulations to require or prohibit certain behavior. *Halcomb v. Wash. Metro. Area Tran. Auth.*, 2007 U.S. Dist. LEXIS 89674 at *5-6 (D.D.C. 2007)

## IV.    Incomplete when Made, Plaintiffs' Expert Reports Are Subject to Being Stricken.

Rule 26(a)(2)(B) means more than simply pointing at the thousands of pages amassed in discovery, attachments to pleadings, and exhibits to pleadings or the Rule would be nonsensical.

This Court acknowledges that an expert report that does not comply with Rule 26(a)(2) may be stricken, particularly when the report does not supply or adequately identify "the data or information he considered." *Mossey*, 231 F. Supp. 2d at 94 (striking expert report as not prepared in compliance Rule 26(a)(2) because there was no indication of the basis for the experts' opinions, experts' rates, publications, exhibits).

Defendants are led to conclude that Plaintiffs determined to disclose so many experts that they were unable to produce even one single proper and complete disclosure. However, Plaintiffs' designation of a large number of individuals espousing duplicative opinions imposes a burden on Defendants of responding to, and deposing, a large number of experts that Plaintiffs do not sincerely intend to use for testimony at trial. Thus, Plaintiffs' experts should also be struck because they are cumulative. "This court has discretion to limit the number of expert witnesses when their testimony would be cumulative, a waste of time, or present a danger of unfair prejudice." *Washington v. Greenfield*, 1986 WL 15758 (D.D.C. Oct. 15, 1986) (limiting a party to two out of four cumulative experts) (citing *Aetna Casualty & Surety Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir. 1983); Federal Rules of Evidence 403; Federal Rules of Civil Procedure 16(c)(4)).

There is no need for Plaintiff to present testimony from five doctors when testimony from one or two would suffice. In similar cases, the court has limited the number of experts on a given issue where no need for multiple opinions is apparent. *See Parker v. Mills*, CIV. A. No. 86-0029-OG, 1988 WL 71464 (D.D.C. June 23, 1988). Defendants believe that Plaintiffs cannot demonstrate a need for more than two experts on causation and one expert on damages. Plaintiffs' experts on the use and importation of non-FDA approved substances, on the nature of informed consent, and on whether the approval of a hospital's Internal Review Board is required

have offered purely legal opinions and should be stricken. *See Mossey*, *supra*. Plaintiffs' should

be limited to one expert on each of those issues unless Plaintiff can demonstrate a clear need for

the multiple testimony.

**V.      Defendants Should Be Granted A Full Five Weeks From the Date of Plaintiffs
         Proper Disclosures To Respond.**

The Court-approved schedule in this case gives Defendants five weeks from the date of

Plaintiffs' Rule 26(a)(2)(B) disclosures to provide Defendants' disclosures. The timing of the

schedule should be preserved because the purposes of the schedule is to allow Defendants'

experts to review the opinions of Plaintiffs' experts and respond to them. "The purpose of Rule

(26(a)(2) is to prevent unfair surprise at trial and **to permit the opposing party to prepare**

**rebuttal reports** . . . ." *Minebea Co. Ltd v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (emphasis

added). Defendants request that the time for Defendants' Rule 26(a)(2)(B) disclosures be set at

no less than five weeks after Plaintiffs provide Defendants with written confirmation that all

required materials have been provided. The few examples of the deficiencies in Plaintiffs'

expert disclosures indicate that Plaintiffs must be required to supplement the disclosures. If

Defendants are required to respond on January 31, 2008, Defendants' experts will not be able to

review the materials relied upon and the basis for the opinions of Plaintiffs' experts and a second

round of expert reports will be required after the late disclosures are made.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court strike the expert reports containing only legal opinion and all opinions presenting legal conclusions. Defendants also request that the Court limit Plaintiffs' designation of experts to prohibit testimony from at least three of the five causation experts, and three of the four proposed "FDA" experts. Finally, Defendants seek an extension of time to provide Plaintiffs with Defendants' Rule 26(a)(2)(B) disclosures until five weeks after Plaintiffs represent in writing that they have obtained and produced the required Rule 26(a)(2) disclosure information for all of their designated experts who remain.

Dated:  January 15, 2008     By:  _Megan E. Hills_____

David C. Kiernan (D.C. Bar # 413806)
Megan E. Hills (D.C. Bar # 437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| Felice P. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>       Plaintiffs,<br><br>v.<br><br>Georgetown University Hospital,<br>GEORGETOWN UNIVERSITY, t/a<br>Georgetown University, and<br>VANCE E. WATSON, M.D.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Act. No. 1:05CV02086 (PLF)<br><br>Judge Paul L. Friedman |

## ORDER

Upon consideration of Defendants Georgetown University and Vance E. Watson, M.D.'s

Emergency Motion for Extension of Defendants' 26(a)(2) Expert Disclosures, hereby

**ORDERED** that Defendants' Motion for Extension of Defendants' 26(a)(2) Expert

Disclosures is **GRANTED**; Defendants' 26(a)(2) Expert Disclosures will be due five (5) weeks from

the data that Plaintiffs state in writing that after the specified reasonable efforts they have obtained

and produced the data or information considered by each of their designated experts to Defendants;

Upon consideration of Defendants' Motion to Strike Plaintiffs' Designated Legal Experts and

all legal opinions,

**ORDERED** that Defendants' Motion is **GRANTED;** Julia Gabis, Esq., Roger Kamm, Esq.,

and Donald Sherwin, Esq., are struck as experts;

**FURTHER ORDERED**, that all opinions that seek to interpret federal statutes and/or

regulations as stating the standard of care or requiring or prohibiting any action are also struck.

**FURTHER ORDERED,** after consideration of the expert reports from _____,

_____, and _____, these reports are also struck as consisting entirely of

legal conclusions.

Upon consideration of Defendants' Emergency Motion to Strike Plaintiffs' Experts as

Cumulative,

**ORDERED,** the Court will allow Plaintiffs to designate one expert to testify as to an issue

and allow Plaintiffs to provide a list of no more than five experts they have selected from their

previously made thirteen expert designations within ten days of the signing of this Order.

It is this the _____ day of _____, 2008.


_____
The Honorable Paul L. Friedman
United States District Court Judge
    for the District of Columbia


Copies to:

David C. Kiernan, Esq.
Megan Hills, Esq.
Zoe C. Scharff, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Wendy Wyeth, Esq.
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Plaintiffs' Counsel

Andrew Greenwald, Esq.

2

Joseph, Greenwald and Laake, P.A.
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing with exhibits was served via electronic filing on the Court's CM/ECF website on the 15th day of January, 2008 on the following:

Anthony Newman, Esq.    Andrew Greenwald, Esq.
Ernest McIntosh, Esq.     Laake and Greenwald
Wendy Wyeth, Esq.      6404 Ivy Lane
Newman, McIntosh & Hennessy  Suite 440
7315 Wisconsin Avenue    Greenbelt, MD  20770
Suite 700E
Bethesda, MD  20814

and a courtesy-copy with Appendix hand delivered on January 15, 2008 to:

The Honorable Paul L. Friedman
Chambers
United States District Court
  for the District of Columbia
3rd and Constitution Avenues, N.W.
Washington, D.C. 20001

Megan E. Hills