# ORIGINAL

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------x
                         :
FELICE I. IACANGELO,     :
et al.                   :
                         :
          Plaintiffs     :
                         : Case No.
     vs.                 : 1:05CV02086
                         : Judge Friedman
GEORGETOWN UNIVERSITY,   :
t/a Georgetown University :
Hospital, et al.         :
                         :
          Defendants     :
                         :
-------------------------x
```

Washington, D.C.
January 11, 2008

Deposition of:

ARTHUR KAUFMAN, M.D.,

called for oral examination by counsel for

Defendants, pursuant to notice, at the Law

Offices of Williams & Connolly, 725 12th

Street, N.W., Washington, D.C., beginning at

10:30 a.m., before Zev V. Feder, CSR, a Notary

Public in and for the District of Columbia,

when were present on behalf of the respective

parties:

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

1   for extension, based on the fact that we do

2   not have the documents to give, or information

3   of data, and documents defined as it is in the

4   rules to provide to our experts for their

5   reports.  That's all I need to know.

6             MR. GREENWALD:  The answer to the

7   question is yes, we do oppose the motion.  And

8   I would like to make this observation.  Over

9   95 percent, I believe, of the information that

10  was relied on by the experts is information

11  that you provided to us, which includes the

12  Georgetown records which you Bates stamped and

13  provided, which were provided back again to

14  you and which have now been brought again to

15  this meeting in the box that Dr. Kaufman

16  brought, which contains all of the information

17  which was previously given to you.  In

18  addition to the documents that were attached

19  to oppositions and to motions that were filed,

20  and numerous motions you filed in this case.

21  And the numerous exhibits were all in your

22  possession, including the affidavits and

10

1    including the other material that you have

2    requested.

3              Finally, the other material, which

4    is public record, includes the statutes that

5    are part of the United States Code.  So I

6    would suggest to you that all of that

7    information is information you have.

8              Unless, of course, there is

9    information from Georgetown that you have

10   failed to provide to us, which, based on the

11   history of this case, would not surprise me if

12   there is other material that existed that we

13   have not seen.

14             My suggestion to you is file your

15   motion.  Make whatever statements you wish to

16   make about what you don't have.  We will

17   respond in kind.  And the Magistrate will make

18   a decision as to whether or not you have an

19   extension or you don't have an extension.  And

20   then we can proceed.

21             MS. SCHARFF:  I want to make it

22   clear on the record that the motion I

12

1    behavior on how this case has been done.  I

2    don't need to reiterate that.

3              You can file a motion to strike

4    anybody you want.  That's what the case is

5    about.  But the law is a profession and I

6    think, in doing these things, one must

7    recognize that professionally.

8              MS. HILLS:  And I will ask, for

9    this deposition, that you keep your ad hominem

10   insults to counsel to yourself.  If you wish

11   to bring them up with the Court, that's fine.

12             MR. GREENWALD:  I am not making

13   insults.  I am merely stating the reasons why

14   and the facts why we do not object.  And the

15   letter --

16             MS. HILLS:  You do not object or

17   you object?

18             MR. GREENWALD:  Why we object to

19   your motion.  Mr. Newman asked me to make a

20   response to this two-page letter which he says

21   does not accurately state the discussion that

22   took place.  That's all I am saying.  Where we

92

1    preferred, the rule, to have gotten them on

2    December 22nd.

3              MR. GREENWALD:  The fact is the

4    rules were followed but the question is what

5    would you prefer to do about lunch.

6              MS. HILLS:  I have no idea since

7    this is the first I have heard about what the

8    doctor considered in reaching his opinion.

9              MR. GREENWALD:  That's not true.

10             The question was what do you want

11   to do about lunch.  You can make any

12   statements you want about this.  That doesn't

13   mean it is true.  I just want to know what you

14   want to do about lunch.

15             (Document marked Deposition

16   Exhibit No. 4 for identification and

17   subsequently attached to the deposition.)

18             BY MS. HILLS:

19        Q.    Sir, let me show you what is

20   marked as Exhibit 4, a notice of deposition

21   and subpoena duces tecum for your appearance

22   today.

FEDER REPORTING COMPANY
(202) 863-0000      (800) 956-8996

93

1      A.    I never saw this.  This never came

2   to me personally, never.

3                  MR. GREENWALD:  What was the date

4   this was issued?

5                  MS. HILLS:  I was given the date

6   for Dr. Kaufman's deposition on January 4th.

7   I was provided his documents on January 8th.

8   His deposition was noticed, I believe, on

9   January 8th.

10                  MR. GREENWALD:  You asked for

11  these deposition.  They were immediately

12  provided.  I just asked you what time, when

13  you sent out this notice.  Dr. Kaufman has

14  brought a box --

15                  THE WITNESS:  This article is

16  listed in my report.

17                  BY MS. HILLS:

18      Q.    I understand, sir.  I have never

19  disputed that on January 8th I received the

20  February, 2006 Consultants in Neurology

21  article.  I have never disputed.  What I am

22  saying is Exhibit 3, which is the May, 2002, a

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

94

1    different article from the n-BCA group was

2    never provided to me, sir.  Your mentioning of

3    it as data or information you considered in

4    your opinions is the first time I heard about

5    it.

6              I understand you brought materials

7    with you.  I want to make sure that I have

8    everything that you considered in formulating

9    your opinions.

10             A.    Sure.

11             Q.    Did you bring with you the

12   insurance carrier form to which you refer?

13             A.    The insurance carrier?  Yes.

14             Q.    Where is it?

15             A.    It is a Blue Cross/Blue Shield

16   phone message.

17             MR. GREENWALD:  It may be in the

18   box.

19             THE WITNESS:  No, it is in this.

20   (Pause).

21             BY MS. HILLS:

22             Q.    This is not -- what has been

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

95

1    handed me is DGUH0003.  This was not

2    represented to me on January 8th by Ms. Wendy

3    Wyeth as the insurance carrier form.  In fact,

4    the face of the document doesn't refer to

5    insurance law.

6         A.    Yes, it does.  It speaks to Blue

7    Cross/Blue Shield.

8         Q.    Where, sir?

9         A.    (Pause).  This is not it.  This is

10   not the one.

11             MR. GREENWALD:  Maybe it is in the

12   box.

13             THE WITNESS:  Maybe.

14             MS. SCHARFF:  The box is on the

15   way back.

16             MR. GREENWALD:  We can check that

17   when the box comes back.

18             BY MS. HILLS:

19        Q.    Doctor, did you consider the data

20   or information in what you referred to as the

21   insurance carrier form in forming your

22   opinions?

96

1            A.    I didn't think that it played very

2      much of a role in forming my opinion.

3            Q.    What was sent to me on January 8,

4      2007 is what is listed in your report --

5                  Let's get this marked as 5.

6                  (Documents referred to marked

7      Deposition Exhibit No. 5 for identification

8      and subsequently attached to the deposition.)

9                  THE WITNESS:  This is what you are

10     showing me?

11                 BY MS. HILLS:

12           Q.    I am showing you what was given to

13     me on January 8th as the entirety of the

14     material for information or data that you

15     considered in reaching your opinions.

16           A.    That box over there is a little

17     bit more --

18                 MR. GREENWALD:  Is that what it

19     says?  It doesn't say that on here.

20                 I don't remember what the question

21     is.

22                 THE WITNESS:  The insurance

                   FEDER REPORTING COMPANY
              (202) 863-0000    (800) 956-8996

97

1    carrier form.

2              BY MS. HILLS:

3        Q.    I am asking, in this material that

4    was provided to me, sir, do you see, first,

5    the May, 2002 article?

6        A.    Yes.

7        Q.    Where?

8        A.    The May?

9        Q.    Yes.

10       A.    No, I don't see that.

11       Q.    Is the May, 2002 article listed in

12   your report?

13       A.    No, it is not.

14       Q.    Let me hand to you, and we will

15   get this marked as well.

16              (Discussion off the record.)

17              (Document referred to marked

18   Deposition Exhibit No. 6 for identification

19   and subsequently attached to the deposition.)

20              BY MS. HILLS:

21       Q.    Were you aware, sir, that n-BCA --

22   the FDA had been told that n-BCA was widely

FEDER REPORTING COMPANY
(202) 863-0000     (800) 956-8996

102

1              (Document referred to marked

2     Deposition Exhibit No. 7 for identification

3     and subsequently attached to the deposition.)

4              BY MS. HILLS:

5         Q.    Again, sir, the copy you are

6     holding in front of you, was that material the

7     information or data you considered in forming

8     your opinions?

9         A.    Yes, absolutely.

10        Q.    Sir, you were talking to me -- let

11    me back up just a little bit.  Have you ever

12    been employed by the FDA?

13        A.    No.

14        Q.    Ever sat as a member on one of its

15    advisory committees?

16        A.    No.

17        Q.    Ever testified in front of the FDA

18    or one of its advisory committees?

19        A.    No.

20        Q.    When the FDA and HHS enacted these

21    regulations that we are talking about, were

22    you asked for input?

134

1        BY MS. HILLS:

2        Q.      You are handing me a pile of

3    documents.  Correct?

4        A.      Correct.

5        Q.      And the pile of documents, in

6    addition to the box that we copied earlier

7    this morning, are these documents which you

8    considered in reaching your opinions?

9        A.      Yes.

10               (A recess for lunch was taken from

11   1:13 p.m. to 2:01 p.m.)

12               BY MS. HILLS:

13       Q.      Closing out what I started, is

14   there any other basis for your conclusion that

15   experimentation is how the FDA defines

16   research?  I know you have said you relied on

17   45 CFR Section 46.102, which was the FDA

18   regulations defining research.

19       A.      D and E.

20       Q.      You said D and E.

21       A.      Right.

22       Q.      Other than those subsections of

278

1        BY MS. HILLS:

2        Q.    And that is implied in the

3    statute?

4        A.    Sure.

5        Q.    Based on your interpretation?

6        A.    Yes.

7        Q.    You refer to the fact that you

8    spoke with a neurologist or a neuroradiologist

9    that you spoke to as part of what you

10   considered for your opinions?

11       A.    I spoke to a guy by the name of --

12   last name is Pomeroy.  He used to be a

13   neuroradiologist at Holy Cross Hospital.  I

14   know him socially.  I spoke to him about what

15   would normally take place in AVMs.  And he was

16   saying that they use coils, they use a number

17   of other devices, but this has not yet been

18   approved for routine use.  That's what he was

19   telling me.

20       Q.    When you said this --

21       A.    Histoacryl has not been approved

22   for routine use but there are other devices

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

281

1    see you read their affidavits.  But did you

2    read or consider Mr. Iacangelo's deposition or

3    Mrs. Iacangelo, Cicily, or Felice Iacangelo,

4    Paul Kerris?

5         A.    I am not sure I read the

6    deposition.  I may have -- yes, I think I read

7    Paul Kerris' deposition.

8         Q.    Did you see where he did talk

9    about being shown coils?  Does that ring a

10   bell that you read it?

11        A.    It doesn't ring a bell but I may

12   have read it, and it may be there, but I just

13   don't recall.

14             (Discussion off the record.)

15             BY MS. HILLS:

16        Q.    The reason I ask, sir, again, none

17   of the depositions from these parties listed

18   is something you considered.  So you see my

19   concern that if I go through all these stacks

20   and I see depositions -- you recall you did

21   read Paul Kerris but you are not sure?

22        A.    I am not sure.

FEDER REPORTING COMPANY
(202) 863-0000    (800) 956-8996

287

1    You say in your August report, "I relied on

2    the affidavits."  And you also rely on the

3    depositions.

4              So I am asking if that is what you

5    relied on to put together your August 22nd

6    report --

7        A.    I don't remember what additionally

8    he provided me but he provided me with

9    additional material.  I think it had to do

10   with the clinical records.

11       Q.    You do also put down here that you

12   have Georgetown Hospital medical records.

13       A.    No.  There were lots of clinical

14   records.  I had seen excerpts of records.

15   This is the entire package.

16       Q.    When you say excerpts, is this a

17   document that a lawyer, a paralegal, put

18   together of excerpts of medical records?

19       A.    Yes.

20       Q.    And you considered that as part of

21   your initial information and review?  Is that

22   the best of your recollection?

288

1          A.     I think that's correct.

2          Q.     So the August 22nd, 2007 report,

3     the information or data you believe you

4     considered with the excerpts of the medical

5     records?

6          A.     That's correct.

7               (Discussion off the record.)

8               MS. HILLS:  Can I get this marked?

9     I don't have copies.  It is an invoice.

10               (Document referred to marked

11    Deposition Exhibit No. 18 for identification

12    and subsequently attached to the deposition.)

13               BY MS. HILLS:

14         Q.     Sir, I just want to ask you, do

15    you recall the meeting you had for three hours

16    on August 22, 2007 with Mr. Newman, or

17    Mr. Greenwald, or both?

18         A.     It wasn't with Mr. Greenwald.  It

19    was with Mr. Newman.

20         Q.     And that is the same date that

21    your August 22, 2007 report was done.

22    Correct?

                    FEDER REPORTING COMPANY
              (202) 863-0000      (800) 956-8996

298

1   report, to keep track of the information or

2   data you considered in forming your opinions?

3           A.    That's what I normally do.

4           Q.    But did anyone tell you to?

5           A.    No.  No one told me.

6           Q.    When was the first time you heard

7   in this case that you should provide copies of

8   your information or data underlying what you

9   considered to reach the opinions in this case?

10          A.    Last night.

11          Q.    And everything you brought here

12  today, is there anything else, any other

13  information or data -- and we have talked

14  about you talked to Pomeroy.  Is there any

15  other conversation with someone, or any other

16  information or data you relied on for your

17  opinions?

18          A.    No.

19          Q.     Is there any other opinion that

20  you are going to offer in this case?  I have

21  gone through every number other than what is

22  contained in this affidavit, which is the

306

## CERTIFICATE OF NOTARY PUBLIC

1

2          I, Zev V. Feder, the officer

3     before whom the foregoing deposition was

4     taken, do hereby certify that the witness,

5     whose testimony appears in the foregoing

6     deposition, was duly sworn by me; that the

7     testimony of said witness was taken by me in

8     shorthand and thereafter reduced to computer

9     type under my direction; that said deposition

10    is a true record of the testimony given by

11    said witness; that I am neither counsel for,

12    related to, nor employed by any of the parties

13    to which this deposition was taken; and

14    further, that I am not a relative or employee

15    of any attorney or counsel employed by the

16    parties hereto, nor financially or otherwise

17    interested in the outcome of the action.

18

19          _____
                Notary Public in and for
20              The District of Columbia

21    My Commission Expires:
      April 14, 2012
22

## FEDER REPORTING COMPANY
### (202) 863-0000     (800) 956-8996