IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE P. IACANGELO**, *et al*. | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | **Magistrate Judge Alan Kay** |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND
DEADLINES FOR DEFENDANTS' FED. R. CIV. P. 26(a)(2) EXPERT
DISCLOSURES AND TO STRIKE PLAINTIFFS' EXPERTS REPORTS FOR
FAILURE TO COMPLY WITH FED. R. CIV. P. 26(a)(2)(B)**

Defendants persist in their arguments that this merely is a "run of the mill" medical malpractice case, necessitating only one expert for the Plaintiffs on the issue of liability, one expert for causation and one expert for damages. The facts before the Court show that is a gross oversimplification. Plaintiffs, as set forth in the Second Amended Complaint as well as in Plaintiffs' 26(a)(2)(B) reports, make numerous claims of negligent conduct including: 1) that the glue embolizations, as performed by Defendant Vance E. Watson, MD were below the national standard of care; 2) that Defendants should have recognized that Karyn Kerris's Grade-5 arterial venous malformation (AVM) was inoperable given that it provided blood flow to eloquent (vital) portions of the brain; 3) that Defendant Watson's use of an unapproved, illegal, Class III device violated the federal code and statutory regulations; 4) that Defendant Georgetown negligently allowed the use of an unapproved, illegal, Class III device at its institution without Institutional Review Board (IRB) approval and without obtaining permission

from the FDA; 5) that Defendant Georgetown acted negligently through the actions of its employee, Sheila Zimmet, Esq., acting as legal counsel, in allowing Defendant Watson to use and continue using an unapproved, illegal, Class III device without permission from the FDA; 6) that Defendant Georgetown through the actions of Sheila Zimmet, Esq., acting as legal liaison for the IRB was negligent in not requiring Defendant Watson present his use of Histoacryl in the form of a protocol to the IRB; 7) that Defendants negligently ignored the FDA Import Alert and FDA statutes which prohibited the delivery and use of Histoacryl in the United States; and 8) that Defendants negligently failed to interact with the FDA. These failures span from Defendant Georgetown University's administrative department to the legal department to the IRB to the interventional neuroradiology department and to Defendant Watson individually. It is the culmination of all of these negligent acts that caused permanent, catastrophic neurological damage to Karyn Kerris necessitating lifelong medical care and support.

Counsel for both parties had a telephone conference with the Court and addressed the "emergency" nature of Defendants' motion and, after resolving the alleged "emergent" issues, the Court concluded that there was only a necessity for a hearing on the two remaining issues: 1) Plaintiffs' intent to present testimony from all of their named experts; and 2) Plaintiffs' use of legal experts testify on the issues of negligence *per se* by explaining the violations of federal code and federal statute and how they constituted a violation of the national standard of care.

I. **Plaintiffs must be allowed to present testimony from each of their named experts to assist the jury and the Court.**

This case deals with multiple levels of liability, causation and damages. Even if some of Plaintiffs' experts may have opinions that, by necessity, overlap, this does not

mean that they should not be permitted to testify. As stated recently by this District, the Court, pursuant to Federal Rules of Evidence 403, must go through a balancing test to decide whether presentation of evidence would create unfair prejudice that would outweigh the evidence's probative value:

> [T]he judge would have to make these calculations with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case, and the mere fact that two pieces of evidence might go to the same point would not, of course, necessarily mean that only one of them might come in. It would only mean that a judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point.
> In other words, "[t]he probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point." Id. at 185, 117 S.Ct. 644 (quotation and citation omitted).

*Henderson v. George Washington University*, 449 F.3d 127, 137 (C.A.D.C.,2006) (citing to *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997)).

Therefore, at a minimum, under the balancing test, Plaintiffs should be allowed to offer each of their experts to testify. Additionally, each of Plaintiffs' experts has unique knowledge, training and expertise to assist the trier of fact about one or more distinct issues of liability, causation and damages. Following is a brief description of Plaintiffs' proffered expert testimony concerning each prong of Plaintiffs' burden:

 **A.** **Issues of Liability**

As summarized above, the issues of liability are multi-fold and require multiple experts with particular expertise.

   i. The primary issue of negligence in this case is the allegation that

the glue embolizations, as performed by Defendant Vance E. Watson, MD, were below the national standard of care since embolization of the genetic AVM was unlikely to provide any benefit to the patient and were only likely to cause severe permanent neurological damage.  For this primary allegation, Plaintiffs have named two interventional neuroradiologists: 1) Gerard Debrun, MD, one of the founding fathers of interventional neuroradiology who retired in 2001; and 2) Richard Latchaw, MD, a "later-generation" interventional neuroradiologist and noted author who is presently practicing.  It would be unfair to limit Plaintiff to only one such expert, especially when one is now retired and the other was not one of the original pioneers in the field.  Further, the defense must call at least two interventional neuroradiologists to testify to liability issues in this case, one a named expert and one being Defendant Watson himself.

    ii. Plaintiffs allege that Defendants should have recognized that Karyn Kerris's Grade-5 AVM was inoperable given that it provided blood flow to eloquent (vital) portions of the brain.  Further, the "symptoms" suffered by Karyn Kerris were not from the AVM, but were caused by hydrocephalus, which is a treatable neurosurgical condition.  This requires the expert testimony of a neurosurgeon.  Plaintiffs have named Drs. Peerless and Harris.  Dr. Peerless is a well-known author in the field of neurosurgery. Dr. Harris was a neurosurgeon who had direct experience in the use of Histoacryl in his practice involving neurosurgery pursuant to an Investigational Device Exemption (IDE). Therefore, Dr. Peerless will be offered to testify to the national standard of care regarding the treatment of AVMs, including this particular AVM.  Beyond the aforesaid,  Dr. Harris will add that physicians who used Histoacryl did so

pursuant to FDCA regulations with FDA permission. Thus, Dr. Harris, in addition to being named as an expert witness, is a fact witness.

        iii.    Plaintiffs allege that Defendant Watson's use of an unapproved, illegal, Class III device violated the federal code and statutory regulations. Plaintiffs have named a physician/researcher/treater Dr. Melvin Van Woert. Dr. Van Woert spearheaded the orphan disease programs as well as research using unapproved substances. Dr. Van Woert will testify that physicians must follow FDCA regulations regarding research.

        iv.    Plaintiffs allege that Defendant Georgetown University's administration, was negligent in allowing the use of unapproved, illegal, Class III device without instituting IRB review or obtaining FDA permission. Plaintiffs have named Dr. Kaufman. Dr. Kaufman, a one-time Vice President of Prince Georges Hospital and a consultant to numerous government health care industries including VA Hospitals. Dr. Kaufman will testify that institutions such as Georgetown University, can only use unapproved Class III devices pursuant to a valid an IDE and full IRB review.

        v.    Plaintiffs allege Defendant Georgetown University was negligent through the actions of Sheila Zimmet, Esq., acting as assistant general counsel, in allowing Defendant Watson to use and to continue using an unapproved, illegal Class III device. Plaintiffs have named Julia Gabis, Esq., an attorney who was general counsel for Hahnemann University Hospital in Philadelphia, PA and is a consultant in the field of health care law. Ms. Gabis will testify that Defendant Georgetown's in house counsel, violated the national standard of care by condoning and allowing the use and continued use of illegal, unapproved Class III devices without both an IDE and IRB approval.

vi. Plaintiffs allege that Defendant Georgetown University was negligent through the actions of Sheila Zimmet, Esq., acting as the legal liaison for the IRB by not requiring IRB approval of Defendant Watson's use of Histoacryl. Plaintiffs have named Donald Sherwin, Esq. Mr. Sherwin is an attorney who has been an IRB member for numerous protocols. Mr. Sherwin will testify that it is a violation of the national standard of care to not use an IRB to review the treatement and develop consent for Histoacryl. He will also testify that it is the attorney for the IRB's duty to advise Defendant Watson that IRB oversight was needed.

vii. Plaintiffs allege Defendants were negligent in ignoring an FDA Import Alert and FDA statutes prohibiting the delivery and use of Histoacryl. Plaintiffs have named Mr. William Damaska, former Director of Compliance for the FDA and drafter of the relevant import alert as well as other statutes. Mr. Damaska will testify as both a fact and expert witness that it was prohibited by the FDCA to import Histoacryl into the United States and it was prohibited to be used by any practitioner in the United States. Mr. Damaska will testify that Defendant's use of Histoacryl violated the national standard of care in that its use did not comport with the statutes and that the statutes embodied the national standard of care. He will also testify to the nature of the statutes and that they are designed to protect the public from devices that have not been proved to be safe and effective. His testimony will be used as proof of the claims that Defendants' violations of those statutes constituted negligence *per se*.

viii. Finally, Plaintiffs allege that Defendants, in their interactions and inactions with the FDA, were negligent. Defendants failed to obtain permission from the FDA and failed to investigate the prohibition against the use of the device. Plaintiffs have

named Robert Kamm, Esq., an attorney who acted as FDA liaison for an institution. Mr. Kamm will testify to the required due diligence that was not performed and the interactions that should have taken place, which, if done, would have uncovered the fact that the device was illegal, was being used in derogation of the relevant statutes, and was the subject of an Import Alert.

### B.      Issues of Causation and Damages

Plaintiffs allege that the negligent acts aforesaid caused permanent damage to Mrs. Kerris. While Plaintiffs' liability experts will address the causation issue in general, there are specific experts required to address specific elements of damages. These include a neurologist and a physiatrist. Plaintiffs have named as a neurologist, Dr. Sheldon Marguiles, and, as a physiatrist, Dr. Craig Lichtblau. Dr. Marguiles examined Mrs. Kerris for the purposes of her competency hearing. Thus, in addition to being a fact witness in this case, Dr. Marguiles will be offered to testify as to the cause of the damages suffered by Karyn Kerris. Dr. Lichtblau will testify to the life-long effect of the damage on Mrs. Kerris's functional status and to her numerous life care needs.

Finally, since the District of Columbia requires Plaintiffs to discount any losses to present value dollars, Plaintiffs named Dr. Richard Lurito, an economist, to compute the present value of both the lost wages and future care costs.

Thus, given the complexities of this case and the multiplicity of issues concerning liability, causation and damages, Plaintiffs should be allowed to present the testimony of all of their expert witnesses at trial to meet their burden. Each expert provides specific testimony with probative value and each will assist the triers of fact in determining the

issues. Further, there is no prejudice to the Defendants, and the only issue of "prejudice" raised by Defendants is the cost to the Defendants of the depositions.[1]

This Court should find in accordance with the <u>Henderson</u> Court and allow for Plaintiffs "need for evidentiary richness and narrative integrity in presenting a case". 449 F.3d at 137.

**II.     Given the Allegations in this Litigation, Plaintiffs' Legal Experts Must be Permitted to Educate the Jury on the Standard of Care of Counsel as well as the Violations of Relevant Statutes.**

Defendants improperly attempt to eviscerate the administrative negligence portion of Plaintiffs claims by seeking to preclude Plaintiffs from producing evidence of the actions and inactions of Defendant Georgetown's assistant general counsel (and IRB officer) Ms. Zimmet. Defendants erroneously argue that "Plaintiffs' experts' opinion as to what the national standard of care requires is based solely on their reading of the statute and therefore is an attempt to disguise a purely legal opinion." *See* Defs. Mot. at 16. Defendants' argument misses the mark.

Inextricably intertwined in this medical malpractice litigation is a "legal malpractice" issue. Boiled down, however, these issues simply involve the negligent acts of a member of the administration, who happens to be a lawyer. Plaintiffs must produce expert testimony regarding the information and misinformation Ms. Zimmet provided to Dr. Watson on two occasions, the last of which occurred on September 21, 1998, only two-months prior to his injection of Histoacryl into Karyn Kerris.

The notes drafted by Ms. Zimmet, an employee of Defendant Georgetown who acted as both counsel for Defendant Georgetown and counsel for Defendant

---

[1] Given the manner with which the defense counsel has litigated this case, it is unlikely that Georgetown will even appreciate any added costs of these depositions.

Georgetown's IRB, establish that she knew, and therefore Defendant Georgetown knew, that: 1) the original manufacturer of Histoacryl (Tri-point Laboratories) had "quit making" Histoacryl "after at least a few trials" before determining the safety and efficacy of the device; 2) the manufacturer at the time (Braun) was "not interested in trials" to determine the safety and efficacy of Histoacryl; 3) the device was "never approved" for any purpose in the United States; 4) the FDA had "impounded a lot" of the device and was "not letting some shipments through"; 5) there had been discussions between Defendant Watson and US Customs regarding detentions of Histoacryl; 6) that Defendant Watson was requesting advice as to how to get this "reliably"; and 7) that there had been "some bad batches" due to delay. The documents further establish that after learning all of this, Ms. Zimmet, without any understanding of the nature of the Class III devices, without research or contact with the FDA, informed Defendant Watson that he was free to use the unapproved, illegal, Class III device at Georgetown.

Plaintiffs contend that Ms. Zimmet was negligent and that her negligence proximately caused the device to be used at Georgetown, which, in turn, provided Defendant Watson with the ability to commit medical malpractice by using the illegal, device. While the defense would obviously prefer not hear these issues discussed by an expert, unquestionably, expert testimony will be required to explain this to the jury. It is black-letter law that expert testimony is required to establish a claim for legal malpractice. *Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004); *Williams v. Callaghan*, 938 F.Supp. 46 (D. D.C. 1996). Indeed,

> the purpose of expert testimony is to guide the jury as to the relevant standard of care in the profession, based on rules and codes of professional responsibility. *See Stiver,* 975 F.2d at 273; *Lazy Seven Coal Sales,* 813 S.W.2d at 405-06; DiSabatino, *supra,* 294 N.W.2d 912, 14 A.L.R.4th at 173-85. **The expert**

**explains what the attorney's duties were to his client and what might constitute a breach of that duty. In other words, much like an expert in a medical malpractice case, the witness helps the jury understand a special professional standard of care that is different from the "reasonable person" standard used in ordinary negligence cases**.

<u>Innes v. Howell Corp.</u>, 76 F.3d 702, 711 (6th Cir. 1996) (emphasis added).

The counts in Plaintiffs' Second Amended Complaint involving negligence *per se* are viable. The core issue of these counts rests with the violation of the statutes proving a deviation from the national standard of care. The jury cannot hear the statutes in a vacuum. <u>McNeil Pharmaceutical v. Hawkins</u>, 686 A.3d 567, 582 (D.C. 1996) ("Where the statutes and regulations are admitted as the basis for a finding of negligence per se, or as evidence of negligence, the plaintiff must also prove a deviation from the standard of care, i.e., that the statutes were in fact violated.") (citing <u>Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.</u>, 534 A.2d 1268, 1277 (D.C.1987) (jury "must surmount the threshold question" of whether, in fact, the statute has been violated)).

In this case, Plaintiffs must provide expert testimony that the statutes were in fact violated, that the statutes embody the national standard care, and that violations were a deviation from the national standard of care. Without such guidance, the jury would be left to speculate as to the nature, purpose, and application of the hundreds of pages of the FDCA statutes and Code of Federal Regulations as well as whether they embodied the national standard of care. Presenting expert testimony is not only allowed in claims of negligence *per se*, it is required.<sup>2</sup> "[T]his jurisdiction has **required** expert testimony to

---

[2] An unapproved, illegal , Class III device which is used in the United States without an IDE is both misbranded and adulterated. When presented with a similar set of facts, the Court stated in <u>McNeil</u>, "it seems clear that the meaning and medical implications of several of the listed adverse reactions is outside the knowledge of the ordinary lay person, and a lay person "would be unable to determine, for example, whether a drug was 'misbranded' [as defined by the statute] unless expert testimony was provided." 686 A.2d at 584 (D.C.,1996). The <u>McNeil</u> Court held that the statutes required explanation by experts stating, "[i]n this case the trial court admitted dozens of statutes and regulations. Our examination satisfies us that,

explain the applicability of statutes where the statute is relied upon as establishing the standard of care." *Id.* at 583 (emphasis added). Indeed, the court must allow Plaintiffs to present evidence in order to meet their burden. The Court, in *McNeil* held:

> Hawkins was required to present expert testimony concerning the interpretation of the statutes and regulations relied upon by her, so that the jury would be guided in its application of those sources to the conduct at issue in this case. The jury then would have been able to determine whether McNeil deviated from the proper standard of care, i.e., whether McNeil's conduct violated the statutes and regulations.

*Id.* at 583. By seeking to exclude such testimony, the Defendants are merely attempting to drive a wedge between Plaintiffs' allegations and their required proof at trial.[3]

Given the particular facts and circumstances of this case, it would be inappropriate to preclude Plaintiffs' experts from testifying as to the applicable standard of care regarding Ms. Zimmet, which is required to set forth proof of Defendant Georgetown's negligence. It would similarly be inappropriate to preclude those same experts from offering opinions as to Defendants' violations of applicable statutes, which is required to set forth proof of negligence *per se*. Consequently, the Court should reject Defendants' attempts to preclude Plaintiffs' proof.

Plaintiffs request an oral hearing as to all merits of the issues herein.

---

with three possible exceptions, all involve use of generalized language which would require expert testimony to explain to jurors how McNeil violated them." *Id.*

[3] Defendants attempt to mislead the Court with their reliance on *Burkhart v. Washington Metro. Area Transit Authority*, 112 F.3d 1207, 1212-13 (D.C.Cir.1997). The *Burkhart* case is easily distinguished from the case at bar. *Burkhart* involved a violation of a criminal statute which allegedly led to a violation of Plaintiff's civil rights. Therefore, the violation did not establish a claim of negligence *per se* and was, at best, collateral.

Respectfully submitted,

NEWMAN, MCINTOSH & HENNESSEY, LLP.

By: /s/ Anthony G. Newman
     Anthony G. Newman
     7315 Wisconsin Ave., Suite 700E
     Bethesda, Maryland 20814
     301-654-3400
     Attorney for the Plaintiffs

**CERTIFICATE OF SERVICE**

      Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Extend Deadlines for Defendants' Fed.R.Civ.P. 26(a)(2) Expert Disclosurs and to Strike Plaintiffs' Experts' Reports for Failure to Comply with Fed.R.Civ.P. 26(a)(2)(B) was served via electronic filing on the Court's CM/ECF website on February 1, 2008 to:

Megan E. Hills, Esq.
Zoe Scharff, Esq.
David Kiernan, Esq.
Williams & Connelly, LLP
725 Twelfth Street, NW
Washington, D.C.  20005


                /s/ Anthony G. Newman
                Anthony Newman