IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, <br> As Guardian of the Person and Property of <br> KARYN A. KERRIS, <br><br>          Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, <br> GEORGETOWN UNIVERSITY, t/a <br> Georgetown University, and <br> VANCE E. WATSON, M.D., <br><br>          Defendants. | Civ. Act. No. 1:05CV02086 (PLF/AK) <br><br> Judge Paul L. Friedman <br><br> Magistrate Judge Alan Kay |

DEFENDANTS'[1] REPLY IN SUPPORT OF
MOTION TO STRIKE PLAINTIFFS' EXPERT REPORTS
FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 26(a)(2)(B),
CUMULATIVE, AND PRESENTING IMPERMISSIBLE LEGAL OPINIONS

Defendants respectfully request the Court to reduce the unnecessary burden imposed on Defendants by Plaintiffs' unreasonable and improper disclosure of thirteen (13) duplicative experts, unnecessary as many of these experts opine on the same issues and impermissibly opine on legal issues.[2]  Plaintiffs' Opposition contains no legal authority to support a position that (1) cumulative experts are permitted; or (2) experts are permitted to offer purely legal testimony.

---

[1] "Defendants" refers collectively to Defendants Georgetown University and Vance E. Watson, M.D.  "Plaintiffs" refers collectively to Plaintiffs Felice P. Iacangelo and Cicily Iacangelo.  "Fed. R. Civ. P." refers to the Federal Rules of Civil Procedure.

[2] Although Plaintiffs express an eagerness to advance this matter for trial, accusing Defendants of delay tactics, Plaintiffs disregarded the first December 22, 2007 deadline (their expert disclosures) and still have not provided the required Rule 26(a)(2)(B) disclosures.  Plaintiffs' on-going failure to comply with Rule 26 is currently the sole cause of any delay.

## ARGUMENT

**I.    Case Law and the Federal Rules Do Not Permit Duplicative Expert Opinions.**

Plaintiffs have not and cannot justify a need for cumulative experts.  Plaintiffs'

attempt to show that each expert has "unique" knowledge to assist the trier of fact is belied by

Plaintiffs' listing of eight (8) categories (purportedly distinct) of expert testimony.  Plaintiffs'

Opposition to Defendants' Motion, filed February 1, 2008, at 1-2 ("Opp.").  Six (6) of the eight

(8) categories of testimony listed as "required" by Plaintiffs from **six (6) different experts** opine

on the single issue of whether Defendants failed to follow statutory procedures for the use of a

device unapproved by the Food and Drug Administration ("FDA").  *Id.*[3]  Drs. Van Woert, and

Kaufman, Mr. Damaska, lawyer Mr. Kamm, and two additional lawyers, Ms. Gabis and Mr.

Sherwin, offer opinions on this issue (in addition to opinions on this topic offered by Plaintiffs'

other experts).  There is no basis for Plaintiffs to offer six experts on one issue.[4]

---

[3] Defendants strongly object to this entire category of "evidence," given that neither District of Columbia law, nor the Supreme Court, allows state law FDCA-based negligence *per se* claims, *see Morton v. GWU, et al.*, Civ. Act. No. 99ca4599 (D.C. Superior Court), Order Granting Defendants' 12(b)(6) Motion, dismissing plaintiffs' FDCA-based negligence *per se* claims, filed 11/30/01, at 9 (attached hereto as Ex.1), previously represented by Plaintiffs as sealed, Plts. Opp. to Motion to Compel Transcripts at 3, filed September 20, 2007; *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001); however, that issue will be fully briefed in a separate motion.

[4] Plaintiffs concede that these six (6) categories of expert testimony they list all relate to the alleged "administrative negligence" portion of their case.  Opp. at 8.  Plaintiffs artificially divide this "administrative negligence" into subcategories, but there is no substantive difference among the categories.  Even if, *arguendo*, such testimony is allowed, Plaintiffs provide no reason why one of the experts could not testify on all of the listed points, as in the reports and depositions taken to date, each of the experts on the FDA-related issues gives similar testimony.  The "distinctions" drawn are that:  1) Dr. Watson's use violated the federal code and statutory regulations; 2) Defendant Georgetown University was negligent in permitting Dr. Watson to use the substance; 3) Defendant Georgetown University was negligent (through Sheila Zimmet, in-house counsel) for permitting Dr. Watson to use the substance; 4) Defendant Georgetown

Plaintiffs' first two categories are proper topics of expert testimony: (1) whether glue embolizations breached the national standard of care; and (2) whether the embolizations caused her injury; expert testimony on these topics should be given by one or two experts. Opp. at 1. Plaintiffs have named **five (5) experts** to give opinions in whole or in part on these same issues—Drs. Lachtaw, Peerless, Debrun, Margulies, and Harris—with no valid justification for the duplication. Defendants request that Plaintiffs be limited to offering expert testimony in conformity with the Federal Rules of Evidence ("F.R.E.") and this Court's precedent—that in addition to the economist and life care planner—Plaintiffs may offer no more than one or two experts on the medical and FDA issues.

Though Plaintiffs attempt to distinguish the opinions offered by experts, Drs. Lachtaw, Debrun, Harris, Margulies, and Peerless, these five (5) experts give the same opinion—that it was negligent to perform embolizations on Karyn A. Kerris's arteriovenous malformation (respectively, "Mrs. Kerris," "AVM"). Opp. at 3-5. Plaintiffs claim they need to offer identical expert testimony from Drs. Debrun and Latchaw because Dr. Debrun is the "founding father" of embolizations, but retired, and Dr. Latchaw is not retired. Opp. at 4. This distinction has no bearing on the offered expert testimony and Plaintiffs should elect one expert. Case law dictates that Plaintiffs may not bolster their evidence with repetitive expert testimony merely because Plaintiffs wish to have multiple witnesses. *Washington v. Greenfield*, Civ. A. No. 86-830, 1986 WL 15758 (D.D.C. Oct. 15, 1986) (limiting number of medical experts).

Plaintiffs also state that the opinions of Drs. Latchaw and Debrun are different from the those of Drs. Harris and Peerless because the former doctors opine that the

---

University was negligent (through Sheila Zimmet) in not requiring IRB approval; 5) Defendants were negligent in ignoring an FDA Import Alert and FDA statutes; and 6) Defendants were negligent in not obtaining permission from the FDA. Opp. at 5-7.

embolizations were negligent while the latter opine that the embolizations were negligent because it was contraindicated. *Id.* at 4-5. However, all four doctors opine that the embolizations were contraindicated, and therefore, negligent. Exs. 2-5 (Expert Reports of Drs. Debrun, Latchaw, Harris, and Peerless, respectively). Plaintiffs' characterization of Dr. Margulies as a "fact" witness because he examined Karyn Kerris before her competency hearing in 2005, Opp. at 7, is not a basis for him to provide expert testimony, does not indicate how Dr. Margulies's expert testimony is different than Plaintiffs' four (4) other experts, and reveals that Plaintiffs violated the federal discovery rules and now seek to profit from it.[5] All five (5) doctors basically provide opinions on the same issue—whether medical treatment breached the standard of care and caused Mrs. Kerris injury.

The Federal Rules and this Court's precedent do not allow duplicative expert testimony, particularly when Plaintiffs' only basis for introducing thirteen (13) experts is that Plaintiffs want them. "This court has discretion to limit the number of expert witnesses when their testimony would be cumulative, a waste of time, or present a danger of unfair prejudice." *Washington*, *supra*, 1986 WL 15758 at *2 (limiting a party to two out of four cumulative experts) (citing *Aetna Casualty & Surety Co. v. Guynes*, 713 F.2d 1187, 1193 (5th Cir. 1983); Fed. R. Civ. P. 16(4) as authority for a court to limit the number of experts before trial; F.R.E.

---

[5] Plaintiffs' Opposition states that "Dr. Margulies examined Mrs. Kerris for the purposes of her competency hearing." Opp. at 7. Mrs. Kerris was adjudged incompetent on August 11, 2005 (Ex. 6). Plaintiffs, therefore, improperly omitted Dr. Margulies in their Responses to Interrogatories Nos. 3-6 (requiring identification of persons with knowledge of Mrs. Kerris's medical condition and injuries), as well as Interrogatory No. 18 (requiring disclosure of any potential testifying physicians). Ex. 7 (Interrogatory Responses). Given that Plaintiffs specifically did not disclose Dr. Margulies as required by the Rules, Dr. Margulies should not be allowed to testify.

403; Fed. R. Civ. P. 16(c)(D)[6]);  *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1257 (2d Cir. 1987).

> This Court has limited the number of experts in similar cases when no need for multiple opinions can be presented.  *Parker v. Mills*, Civ. A. No. 86-0029-OG, 1988 WL 71464 (D.D.C. June 23, 1988) (unreported) (limiting medical experts to one per party); *Washington*, 1986 WL 15758.  Plaintiffs have not and cannot demonstrate justification for more than two experts on medical causation and liability, one expert on FDA regulatory issues pending a determination on Defendants' motion to strike such testimony entirely, and one expert on damages.[7]  The Court should limit Plaintiffs to these numbers and force them to make an election prior to Defendants' date to disclose its experts.[8]

> The Court could strike all of Plaintiffs' designated experts based upon their failure to abide by Fed. R. Civ. P. 26(a)(2)(B).  *Scott v. District of Columbia*, 246 F.R.D. 49 (D.D.C. 2007).  Defendants have not yet requested that all of Plaintiffs' designated experts be struck, only asking for a rational restriction on the number of experts to preserve resources of both parties and the Court.  The number of Plaintiffs' experts should be limited, not only because the duplicative expert testimony will unduly and unfairly prejudice Defendants by misleading and

---

[6] Previously enacted as Fed. R. Civ. P. 16(4); the text of the Rule remains the same.

[7] Defendants will abide by any limitations placed on the number of experts and produce reports only from the same number of experts that Plaintiffs are permitted to introduce.

[8] Plaintiffs' reliance on F.R.E. 403 and *Henderson v. George Washington University*, 449 F.3d 127, 137 (D.D.C. 2006), as suggesting that the Court should apply a balancing test to weigh the evidence's probative value against its prejudice shows the lack of merit of Plaintiffs' argument. Opp. at 3.  The *Henderson* case does not even address cumulative expert testimony, involving the exclusion of a document and testimony regarding it.  Here, the Court does not just weigh the unfair, undue prejudice of repetitive, duplicative expert testimony, but also "confusion of the issues," "misleading the jury," "considerations of undue delay, waste of time," and "needless presentation of cumulative evidence."  F.R.E. 403; *see also* Fed. R. Civ. P. 16(c)(D).

confusing a jury (who may interpret the sheer repetition of Plaintiffs' expert opinions as persuasive, as opposed to evaluating the substance of the opinions) under F.R.E. 403 and 702, but also "avoiding unnecessary proof and cumulative evidence and limiting the use of testimony under Federal Rule of Evidence 702" under Fed. R. Civ. P. 16(c)(D) (as well as F.R.E. 403 "considerations of undue delay, waste of time," and "needless presentation of cumulative evidence").

## II.    Plaintiffs' Expert Testimony Interpreting Federal Law is Both Duplicative and Impermissible.

There is one issue here—whether Dr. Watson's use of unapproved devices in the clinical care of Mrs. Kerris violated the standard of care.[9]  Bringing a claim for negligence *per se* does not allow one to hire legal experts to demonstrate statutory violations of the FDCA. Plaintiffs' argument that somehow it does (with no supporting case law) shows how Plaintiffs misunderstand the roles of judge and jury – **a Court first determines** whether the FDCA provisions sued upon support a negligence *per se* claim, and if allowed, **then the jury determines** whether a statutory violation has occurred and if that constitutes a breach of the standard of care, not Plaintiffs' paid experts.

The jury is responsible for determining whether Defendants' conduct breached the standard of care.  The Court is the only permissible "expert" who will instruct the jury on the statute if it is allowed, then the jury makes the decision as to whether an alleged statutory violation has any relevance.  *See Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a

---

[9] Plaintiffs may not offer improper expert legal opinions on the basis that they now wish to bring in the standard of care for a legal malpractice case.  Plaintiffs bring a medical malpractice action, not a legal malpractice action.  Plaintiffs cannot now change actions some years after filing their first complaint in 2005 in an attempt to get their paid legal experts admitted.  Opp. at 10-11.

judge, and it is his or her province alone to instruct the jury on the relevant legal standards.");[10]
*Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) (PLF). Whether Plaintiffs may
maintain a negligence *per se* claim when District of Columbia law states they cannot, *see* Ex. 1,
does not make it appropriate for Plaintiffs to offer legal opinions as to whether or not the FDCA
was violated, Defendants' actions were illegal, or the meaning of the FDCA. Plaintiffs cite to no
case where a lawyer, or other expert offering solely legal interpretation of rules and regulations,
was permitted to testify to a jury as to the meaning of the FDCA.

      *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567 (D.C. 1996), does not stand for
the proposition that paid legal opinions are allowed. *McNeil* did not address whether the FDCA
set forth a standard of care (though it questioned whether it could, *id*. at 580); rather, the Court
held that the lower court erred in admitting FDCA regulations without **first** determining that the
FDCA stated a standard of care and also erred in failing to determine whether the statutes were
sufficiently clear for a jury, and lastly, the trial court was directed to then determine whether and
what expert testimony might help the jury understand the admitted provisions – by discussing the
FDCA in terms of the facts of the case – not to opine that the FDCA was violated. *Id*. at 581.

      This Court (and this judge) strikes legal opinions that purport to interpret the law.
*Mossey*, 231 F. Supp. 2d at 98; *Halcomb v. Wash. Metro Area Transit Auth.*, --- F. Supp. 2d ---,
2007 U.S. Dist. LEXIS 89674 at *5 (D.D.C. Dec. 7, 2007) (PLF) (citations omitted) (excluding
opinions to the extent they are "phrased in terms of inadequately explored legal criteria" or "tell
the jury what result to reach."; *citing* F.R.E. 704 Advisory Committee's Note); *Burkhart*, 112

---

[10] Though Plaintiffs try to distinguish *Burkhart* on the grounds that it was a decision in a criminal
case and it did not involve an issue of negligence *per se*, Opp. at 11 n.3, *Burkhart* stands for the
general principle that experts cannot instruct the jury on legal issues, and is not limited to a
particular context. Moreover, Plaintiffs fail to distinguish *Mossey*, *supra*, *Halcomb*, *supra*, civil
cases decided by this Court.

F.3d 1207 (striking an expert who lifted terms from a federal regulation to underlie his opinions, which were legal conclusions). Plaintiffs give no reason for the Court to disregard the "black letter law" principle that experts are not permitted to instruct the jury as to what the law means and what to conclude, designating ten (10) experts who (in whole or in part) unabashedly interpret federal statutes and regulations to provide paid "expert" legal opinions that Defendants "violated" federal statutes and/or federal regulations. *Burkhart*, 112 F.3d at 1212-13.

"Rather than being helpful, expert testimony purporting to state or apply the governing law risks misinterpreting that law and confusing or misleading the jury." *Steele v. D.C. Tiger* Market, 854 A.2d 175 (D.C. 2004). Plaintiffs' experts cannot testify as to the meaning of federal statutes or regulations or as to whether any conduct by Defendants was legal or illegal.[11] As examples,[12] lawyer Arthur Kamm opines that the "use of the device by Dr. Watson was an 'adulteration' as defined by the Federal Food and Drug Act and a violation of the Act ["FDCA"][13]. . . The receipt and use of an adulterated device violates one of the primary tenets of the law . . . Dr. Watson acted in wanton disregard of the standard of care." Ex. 8,

---

[11] *See e.g. Nat'l Westmister Bank PLC v. United States*, 69 Fed. Cl. 129, 139 (2005) ("The proper interpretation of a regulation or agency guidance, such as the Inland Revenue Manual, presents a question of law that the court must resolve."); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, n.14 (9th Cir. 2004) ("[T]he meaning of a statute is perhaps the quintessential question of law"); *Nieves-Villanueva*, 133 F.3d at 99 (collecting cases from seven circuits); *Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 900 (7th Cir.1994) ("The meaning of federal regulations is not a question of fact to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."); *Marx & Co.*, 550 F.2d at 512 (same).

[12] Many details about the legal testimony being offered were set forth in Defendants' Memorandum in Support of this Motion and are incorporated herein. Subsequent deposition testimony further illustrates the impermissible legal opinions being offered. For the sake of efficiency, just a few examples are included herein. In order to avoid dispute as to the precise scope of permissible opinions, Defendants offer to submit a list of objectionable testimony to the Court upon the Court's ruling on this Motion in a proposed order, but defer to the Court as to when and what it would like to receive.

Kamm Report at 1. Similarly, Dr. Van Woert opines that Defendants "illegally" used an unapproved "Class III device" "in violation of . . . FDA regulations." Ex. 9 at 4.[14] Mr. Damaska's entire report recites and interprets FDA law, including "Dr. Vance Watson violated the national standard of care by violating the following statutes [listing FDCA provisions]. . ." Ex. 10 at 1. Using legalese and concluding that Defendants acted illegally are precisely the legal opinions this Court prohibits. *Burkhart*, *supra*; *Halcomb*; *supra*.

Plaintiffs' duplicative expert opinions are replete with not only impermissible legal opinions, but improper opinions on Defendants' state of mind that must also be struck. *Lohrenz v. Donnelly*, F. Supp. 2d 25, 36 (D.D.C. 2002) ("courts have generally disfavored expert testimony in determining actual malice, which is essentially a determination of defendants' subjective state of mind."); *S.E.C. v. Johnson*, --- F. Supp. 2d ---, 2007 WL 4199595 at *7 (D.D.C. Nov. 29, 2007) (excluding opinions as to intent because "determinations of individuals' intent is a quintessential jury question."). Opinions that Defendants acted "knowingly" (*see, e.g.*, Dr. Van Woert Report at 3 (Dr. Watson "knowingly participated in the illegal importation of a Class III medical device"(Ex. 9)) or "wantonly" (Dr. Kaufman Expert Report at 2 ("this willful and wanton misbehavior") (Ex. 11) are not permitted. *Id.*

## III.    Untimely Oppositions May Not be Considered.

The District of Columbia Circuit holds that it is an abuse of discretion for the District Court to consider an untimely filing when there is no motion made for an extension

---

[13] "FDCA" refers to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301, et seq.

[14] Dr. Van Woert's legal opinion that Defendants acted contrary to FDA requirements goes so far as to state that his interpretation of FDA regulations is superior to the Court's. Deposition of Melvin Van Woert, M.D., taken January 25, 2008 ("Van Woert Dep."), at 231 ( "Q.: If a court considered this issue and said the FDA does not under these regulations have the authority to regulate a treatment, would you defer to that court's decision? MR. NEWMAN: Objection. A: It doesn't change FDA regulations as far as I am concerned.") (Ex. 12).

based on Fed. R. Civ. P. 6(b).  *Smith v. District of Columbia*, 430 F. 3d 450, 457 (D.C. Cir. 2005) ("In the absence of any motion for an extension, the trial court had no basis on which to exercise its discretion.").  Plaintiffs did not move for a nunc pro tunc extension of time to file the opposition.  Fed. R. Civ. P. 6(b).  Therefore, the Court must disregard Plaintiffs' untimely Opposition.

On February 1, 2008, Defendants filed a Notice to alert the Court to the fact that Plaintiffs' Opposition was not timely filed.  Plaintiffs argue that the Defendants' motion was somehow stricken, denied or converted during a conference call with Magistrate Judge Kay on January 16, 2008 thereby commuting their obligation to respond, a disingenuous argument given that if the motion were denied, Plaintiffs would not have filed an opposition to it, nor did the Court change the briefing schedule set out by the Federal Rules in the call.  Plaintiffs also relocated the federal holiday, Martin Luther King, Jr.'s birthday, from January 21, 2008 when it occurred to January 28, 2008.  Plaintiffs' filing deadline was at latest, January 31, 2008, such that their February 1, 2008 Opposition was untimely.  In addition to disregarding the Opposition, this Court has the discretion to treat Defendants' motion as unopposed, pursuant to Local Civil Rule 7(b).

## CONCLUSION

Defendants respectfully request that Plaintiffs be limited to presenting a reasonable number of experts on each issue in controversy; and that Plaintiffs be prohibited from having experts provide inadmissible legal testimony, including opinions regarding state of mind.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  February 11, 2008          By:  _Megan E. Hills_

David C. Kiernan (D.C. Bar # 413806)
Megan E. Hills (D.C. Bar # 437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby

certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website on the

11th day of February, 2008 on the forgoing:

> Anthony Newman, Esquire
> Ernest McIntosh, Esquire
> Wendy Wyeth, Esquire
> Newman, McIntosh & Hennesy
> 7315 Wisconsin Avenue
> Suite 700E
> Bethesda, Maryland 20814
>
> and
>
> Andrew Greenwald, Esquire
> Greenwald and Laake
> 6404 Ivy Lane
> Suite 440
> Greenbelt, Maryland 20770
>
> Plaintiffs' Counsel

Megan E. Hills
_____
Megan E. Hills