A. BASIL HARRIS, M.D.
Professor Emeritus Neurological Surgery
2847 Tillicum Beach Drive
Camano Island, Washington 98282

October 12, 2007

Anthony G. Newman, Esq.
NEWMAN, MCINTOSH & HENNESSEY
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814

RE: Iacangelo v. Georgetown University Hospital, et. al.

Dear Mr. Newman,

In order to give an expert opinion about the care of Karyn Kerris by Georgetown University Hospital, et al: I reviewed the following documents.
1. Deposition of Cicilly Iacangelo
2. Deposition of Felice Iacangelo
3. Video taped deposition of Vance E. Watson, MD
4. Declaration of Vance E. Watson, MD
5. Video taped deposition of Shelia Cohen Zimmet, Esq.
6. Institutional Review Board (IRB) Policies and Procedures Manuel of Georgetown University July 2003
7. Georgetown University Hospital records of Karyn Kerris
8. Current opinion in Neurology Vol. 19, February 2006
9. Package insert for Histoacryl –date of information 10/96
10. United States Code Annotated, Title 21-- Food and Drugs, chapter 9--Federal Food, Drug and Cosmetic Act, subchapter III—Prohibited Acts and Penalties, approved 8-06-02
11. Violation code translation, Detentions for Oasis for Canada
12. Important Alert (FDA) for Class III device
13. Affidavit of William Damaska
14. Affidavit of Arthur Kaufman, MD
15. Cerebral Angiogram 11/04/98
16. Cerebral Angiogram 03/03/99

My opinions in this case are based upon review of the materials provided, my medical knowledge, my training as a neurosurgeon (CV attached), and my neurosurgical experience using a similar device to that in question at the University of Washington Medical Center from 1978 to 1987. The device I used was isobutylcyanoacrylate (IBCA) plus Lipiodol as an adjunct in numerous neurosurgical cases to occlude feeding blood vessels in arteriovenous malformations (AVM) of various types in intracranial, extracranial and spinal locations. I used IBCA under the supervision of an interventional neuroradiologist, Larry Cromwell, MD, who had an Institutional Review Board (IRB) approval from the UWMC and an Investigational Device Exemption (IDE) from the FDA. Dr. Cromwell maintained records Anthony G. Newman, Esq.

Re: Iacangelo v. Georgetown
October 12, 2007
Page 2

and furnished the IBCA and Lipiodol. IBCA is similar to n-BCA and both are cyanoacrylates "crazy glue". Both are tissue adhesives. Histoacryl polymerizes within 1-2 seconds changing from a liquid to a solid upon contact with ion donors in blood plasma. Lipiodol mixed with IBCA or n-BCA delays the polymerization time and is an x-ray marker to locate the site of the device. Charles Kerber, MD and Larry Cromwell, MD reported the device (IBCA) in literature while working together at Oregon Health Sciences University. Dr. Cromwell left the UWMC in about 1987 and my use ceased with his departure because I no longer had access to IBCA.

My opinion with reasonable medical certainty is that Georgetown University Hospital, et al, failed a national standard of care in their duties to Karyn Kerris. Those failures were directly and causally related to the injuries she sustained.

IBCA importation was barred around 1992, because there was no existing Premarketing Application (PMA) and no approved Investigational Device Exemption (IDE). Dr. Watson must have questioned this because he raised the use question to Shelia Cohen Zimmel, Esq. for the need to have an IRB and an IDE for the use of n-BCA (Histoacryl) in patients. He said she told him he did not need this approval and she said she told him this because it was not used in research on animals. She failed to realize that human research protocols are present in most major universities and should have been used by Georgetown University, et al. Labeling on Histoacryl indicates its use was for superficial wound closure (skin closure) and not for injection to close internal organ blood supplies nor on the surface of the brain. It is classified as a Class III device permitted to be used otherwise only by FDA exception approval (IDE) and at that time had no PMA nor IDE. When the possible need to write FDA showed there was concern about the illegal use.

Dr. Watson declares that he discussed with Ms. Kerris and her family in great detail the implication for use of the Lipiodol/Histoacryl device for embolization procedures 11/04/98, 01/13/99 and 03/03/99. However, unless Ms. Kerris and her family knew the full disclosure of what it meant to administer a device as was done without an IRB, PMA nor IDE from FDA, the permit signed to proceed with the procedures lacked informed consent. Dr. Watson's Declaration has a distinct legal imprimatur to it, not his own.

Ms. Kerris' major complaint was severe headaches, which were not alleviated by embolization procedures. She had no hemorrhage from her AVM as seen on imaging studies. She probably had headaches from hydrocephalus which required shunting early on for relief.

The thalamus is a vital center in the brain which regulates sensation, motor activity and all motor control. Bilateral loss of all thalamic centers is not compatible with life. Partial loss of thalamic areas result in a constellation of dysfunctions which include: sensory and pain loss, ataxia (gross and fine motor control), disequilibrium, athetosis, paroxysmal pain, lethargy, apathy, impaired memory, abulia (impairment of ability to act or decide independently), somnolent apathy and memory loss dependency on the etiology of the involvement. This explains why it is such a critical no-mans land to have a spontaneous infarction from arterial disease or to have an induced infarction such as loss of blood supply

Anthony G. Newman, Esq.
Re: Iacangelo v. Georgetown
October 12, 2007
Page 3

to several vital arteries by an embolic agent (Lipiodol/Histoacryl) given to treat an AVM and explains why irradiation to shrink the abnormal AVM is so commonly used if any attempt to treat the thalamus is risked. The thalamus is the literal switchboard for many brain functions, some of which can be lost, but all of which are lost is not life compatible.

Since Ms. Kerris' AVM had not bled, according to imaging studies, it fits into a category addressed by Current Opinions in Neurology. That study is by authors from Columbia University, NY, Hopital Lariboisiere, Paris, France, Neurology Clinic, Halle/Salle, Germany, Neurology Clinic, Berlin, Germany. The article states that invasive treatment of unruptured brain AVM is experimental therapy. For Ms. Kerris there should have been more concern than the options she was presented since there is a higher risk for invasive management than there is for the natural history of untreated AVM patients.

My case testimony for the past 5 years is attached. I spent 10 hours work worth $3,000.00 on this case.

Sincerely,

A. Basil Harris, M.D.