## S. J. PEERLESS MD, FRCSC
2721 Hibiscus Ct, Punta Gorda, FL 33950

December 14, 2007

Mr. Anthony Newman
The Air Rights Building
Newman, McIntosh & Hennessey, LLP
7315 Wisconsin Ave
East Tower, Suite 700
Bethesda, MD 20814

**Re: Karyn Kerris**

Dear Mr. Newman:

At your request, I have reviewed this case and offer the following review and opinions.

### QUALIFICATION
I am a duly qualified Physician and Surgeon licensed to practice in the State of Florida and in the Canadian Provinces of Ontario and British Columbia. I am Board Certified in the speciality of Neurosurgery in Canada and the United States.
My Curriculum Vitae is attached as Appendix 1 to this report.
Appendix 2 is a listing of my Deposition and Trial appearances for the past 9 years

### DOCUMENTS AND RECORDS REVIEWED
Medical Records for Karyn Kerris from ;
Georgetown University Hospital
National Rehabilitation Institute
Dr. Uscinski

Deposition of Dr. Vance Watson
Deposition of Sheila Zimmet
Deposition of Dr. Gary Steinberg
Report of Dr. Gerard DeBruyn
Report of Dr. Richard Latchaw

Radiographic Studies pre and post embolization

### OPINION
It is my opinion that the care given to Karyn Kerris by Dr. Watson fell below the accepted standard for the following reasons.

Mr. Anthony Newman
2
December 14, 2007

Karyn Kerris was found to have a very large bi-thalamic arteriovenous malformation (AVM) involving the thalami bilaterally and adjacent areas of the upper brain stem and basal ganglia. This AVM would be classified as Grade 5 on the Spetzler-Martin Scale (the worst grade) and because of its size and location not amenable to any of the available treatments or combinations of treatments.
Moreover, this arteriovenous malformation had never bled and was only responsible for mild and not disabling symptoms. The future, long term risk of living with this AVM, untreated, was probably low.

Despite the large size and critical location of this AVM Dr. Watson embarked on a multiple-staged embolization program by injecting a liquid adhesive. This resulted in thalamic and subthalamic infarction when critical vessels supplying these important brain regions were plugged by the glue. The likelihood of this complication occurring was predictable.

As well, the choice and use of this particular liquid adhesive (NBCA) was unacceptable in that this substance was not FDA approved and nor was it approved by the Georgetown University Institutional Review Board under an appropriate IDE.
Furthermore, the patient and her Family did not appear to appreciate the very serious risks involved in this embolization procedure and the use of the unapproved glue. Considering the magnitude of the undertaking a very careful explanation was due to the patient and this should have been reflected in the informed consent and the clinical notes.

Mrs. Kerris was born with an un-treatable arteriovenous malformation. She had matured into a young woman with a husband and a good job. Her life was permanently altered by irreparable damage to deep bilateral areas of her brain by embolization procedures that had no chance of curing her AVM or of significantly altering its natural history.
The decision to embark on this treatment plan by Dr. Watson was negligent.

The breach of the standard of care in this case is a breach of the National Standard of Care. I am familiar with the National Standard of Care as a result of my teaching, review of the Medical literature and attendance at National meetings.

I hold these opinions to a reasonable degree of medical probability.

Sincerely,

S. J. PEERLESS MD, FRCSC