21/01/1999  00:15  8133251872    ROBERT E KAMM ASSOC    PAGE  02

# Robert E. Kamm, B.S. Pharm; J.D.

### Regulatory Consultant to the Pharmaceutical Industry
### 14 Mimosa Court West
### Homosassa Florida 34446

Email: rekamm@embarqmail.com                          Phone: 352 382-3045

August 29, 2007

MEMO

To: Anthony Newman

From:  Robert E. Kamm

Re:  Expert Report – Kerris v. Georgetown University

## I. OPINIONS

### A. Vance E. Watson, M.D.

I am of the opinion that Dr. Watson failed to meet the applicable Standard of Care by a healthcare provider by utilizing an illegal device product in the treatment of Ms Kerris, as part of a procedure which, in his own words, "was only a theory", and that neither the procedure nor the substance (Histoacryl/Lipiodol) were approved by the U.S. Food and Drug Administration.

Since the device was not available in the United States it was obtained from a wholesaler in Canada and the receipt and use of the device by Dr. Watson and Georgetown was an "adulteration" as that term is defined in the Federal Food Drug and Cosmetic Act (hereinafter the Act) and a violation of the Act.

This receipt and use of an adulterated device violates one of the primary tenets of the law, whose purpose is to assure that only products that have been proven to be "safe and effective" are available for use.

In my view such use of an illegal device in violation of the federal law cannot in any manner be construed as meeting the National Standard of Care. Dr. Watson acted in wanton disregard of the statute that is intended to prevent the very kind of injury that occurred in this case. This disregard is further demonstrated by the fact that an exemption, which could have made this use permissible, was not

01/01/1999  00:19    8139261070         ROBERT E KAMM ASCO.                    PAGE  03

pursued. The law and regulations provide for an Investigational Device Exemption (IDE) which had it been obtained would have exempted the product from being termed adulterated. Such an exemption requires approval of the Institutions IRB as well as approval of the FDA. Such an exemption was not sought since Dr. Watson did believe that he was engaged in investigation but rather patient treatment, even though he acknowledges that neither the procedure or device were approved and thus, in my view, violated the National Standard of Care.

Dr. Watson appears to believe that the use of this device is not covered by the Act and that he and the patient can waive the provisions of the Act. He writes a prescription and sends it to a jurisdiction where he is not licensed to practice. The prescription is sent to a distributor who then supplies the device. Prescriptions are normally dispensed by licensed pharmacies and not distributors. Knowing that some shipments have been held up he prepares a letter from himself to accompany the shipment and also has the patient send a letter to the distributor. This is an obtuse way to get prescriptions, and indicates a constant effort by Dr. Watson to avoid and evade the Act.

The recent decision by the U.S. Court of Appeals (D.C. Circuit) in Abigail Alliance et. al. v Von Eschenbach rejected the claim that a patient and doctor have a right to procure and use an experimental (unapproved) drug product for terminally ill patients.

As I understand this decision it means that a physician cannot waive the provisions of the Act, even if the patient consent to its use.

Another factor, which I believe demonstrates that Dr. Watson failed to meet the National Standard of Care, is that he used the device in a manner that was "Contraindicated" in the manufactures labeling of the device.

01/08/1999    06:14    8139261070    ROBERT E. KAMM ASS    PAGE   04

## B. Sheila Cohen Zimmet, Esq.

It is my opinion that to a reasonable degree of legal probability Ms. Zimmet failed to meet the National Standard of Care for a reasonable prudent minimally competent attorney in the opinions she provided in regard to the use of the product in question.

As a Senior Associate Medical Center Counsel and late the Vice-President for Regulatory Compliance, with Regulatory Compliance responsibilities for a health care institution she should have a nominal understanding of how drugs and devices are regulated and what regulations were applicable in order to determine compliance. She would also have a responsibility to exercise "Due Diligence" in regard to issues raised.

The fact that she was aware that the product was not available in the United States and that it was to be obtained from Canada should have been a "red flag" that should have caused her to ask additional questions and review the applicable statutes prior to coming to a conclusion and opinion.  In addition as a member of the IRB she should have been familiar with the institutions requirement that only approved drugs and devices be utilized and should have followed up on the product itself and how it was to be used.

It is my opinion that she lacks a basic understanding of the FFD&CA and the fact that it regulates devices and anyone who is involved in the distribution and use of the device and not just manufacturers.

According to her deposition she was not even aware of the name or nature of the device involved, its labeled uses and/or contraindications or its regulatory status as to whether it was a legal device under the applicable laws and regulations.

## C. Causation

It is my opinion that to a reasonable degree of legal probability that the failure of Dr. Watson and Georgetown University Hospital to follow the Federal Law and receive and use an unapproved device was the proximate cause of the injuries sustained by Ms. Ferris.

21/01/1999  00:19    8139261873    ROBERT E. KAMM ASSOC    PAGE  05

## II. BASIS

The opinions expressed are based on my training and over thirty-five years of practice as an attorney. The majority of my responsibilities in my various legal capacities were in the area of regulatory compliance. I advised management, sales and marketing personnel and others in regard to complying with the Legal and Regulatory requirements for the approval of products and the advertising, labeling registration and other aspects of manufacturing and selling products. Most of my experience was with products covered by the FFD&CA, prescription drugs, over-the-counter drugs, cosmetics, devices and dietary supplements.

During my 35 years of practice I have attended numerous conferences such as those by the Food and Drug Law Institute, the Regulatory Affairs Professionals (RAPS), trade associations such as PhRMA, and other groups that focused on the regulation of products covered by the Federal Food Drug and Cosmetic Act. Throughout my years of practice I utilized outside legal consultants who were and are recognized as experts in the area of drug and device regulation, and learned from them.

I also have coordinated conferences, been a speaker on many programs and taught several law classes for Pharmacy Students at the University of Florida, College of Pharmacy, and have been a guest lecturer at several law schools and colleges of pharmacy.

## III. Information Considered

The above opinions are based upon experience and the following information and documents:

21 USCA Sec.331(c )  Prohibted Acts – receipt of adulterated device
21USCA Sec 360(c )(a)(C ) – need for an approved PMA for class III device
21 USCA Sec 351 (f)—Class III device adulterated unless it has a PMA
Detentions for OASIS for Canada (Rev.17 march 1999) –March 2, 1999 stating no PMA for Histoacryl also show detentions on 2/24/99;8/2/99;8/3/99;8/6/99;8/10/99;8/16/99;8/17/99;and 8/26/99 for the same reason -- no PMA
Import Alert (8/11/92 revised 10/25/99) – automatic detention notice—no PMA --HISTOACRYL – 5/11/93;12/17/98;
12/17/98;5/11/93
Histoacryl instructions for use

Declaration of Vance E. Watson, M.D. dated March 3, 2006
Deposition of Sheila Cohen Zimmet dated July 23, 2007
Deposition of Vance E. Watson M.D. dated May 31,2007
Deposition of Felice P. Iacangelo dated July 24, 2007
Deposition of Cicily Iacangelo dated July 25, 2007
"Institutional Review Board Policies and Procedures Manual"
Georgetown University Office of Regulatory Affairs July 2003
Current Opinion in Neurology, February 2006
Patients letter to Yucan Medical Systems
Dr. Watson's "To whom it may concern" memo to be enclosed with the
device.
Purported Prescription written by Dr. Watson for Histoacryl.
August 7, 2007 Decision of the U. S. Court of Appeals, D.C. Circuit in
the case of Abigail Alliance et al v. VonEschenbach et al.

## IV. Exhibits

I have no exhibits.

## V. Qualifications and Publications

Attached is a copy of my current C.V.   Also see comments above
in the Basis section.
I have authored no publications in the past 10 years.

## VI. Compensation

In this case I have to this point thirteen billable hours at the rate of
$150/hour.

## VII. Previous Testimony

I have not testified nor have I been deposed in any case in the past
four years.

Robert E. Kamm