**William H. Damaska**
2 Bayswater Court
Gaithersburg, Maryland 20878
(301) 208-9033 (Voice) (301) 208-9037(Fax)
E-mail: BDamaska@att.net

Date: August 20, 2007
Re: Karyn Kerris v. Georgetown University

    After review of the materials provided, I have formulated the following opinions, to a reasonable degree of scientific certainty, (many of which were already stated in my prior Affidavit filed with the Court, which is incorporated here by reference and attached hereto):

    It is my opinion that Georgetown University and Vance Watson, M.D., violated the national standard of care by violating the following statutes: 21 U.S.C. §331c [procurement and receipt of adulterated devices]; 21 U.S.C. §351(f)(1)(B)(I) [adulteration of a device] 21 C.F.R. §812.20(a)(2) [requiring application for investigation]; and 21 U.S.C. §351(f)(1)(B)(I) [requiring PMA], by using Histoacryl and its combination with Lipiodol in the treatment of Karyn Kerris. My opinions are based on the following facts:

    a) Histoacryl is a tissue adhesive intended for use as an "artificial embolization device." It is prohibited from medical usage in the United States, absent specific approval by FDA.

    b) Histoacryl has not been the subject of a premarket approval submission providing clinical data to FDA sufficient to demonstrate its' safety and/or efficacy.

    c) A Class III device can only be marketed after submission and approval by FDA of an application for premarket approval (PMA), 21 U.S.C. §360e(a), or, an FDA approved investigational devise exemption (IDE), 21 U.S.C. §360 j(g)(1).

    d) Import Alert #89-08, issued by the FDA on August 11, 1992, is a notice to field personnel responsible for monitoring medical devices being imported identifying devices which have not been approved/cleared for marketing in the United States, i.e., have not been shown to be safe and/or effective.

    e) Import Alert #89-08 was maintained by my staff while I served as Director of the Division of Compliance Operations. Import Alert #89-08 and its subsequent revisions specifically list Histoacryl as a device which was and is subject to automatic detention, because it was being shipped in commerce without either an approved PMA or and an approved IDE.

    f) Import Alert #89-08 listed as one of the companies in violation of the act, a Canadian company, Yocan Medical Systems, Inc., the distributor from whom Vance E. Watson, M.D. and Georgetown University Hospital received their Histoacryl (see Declaration of Vance E. Watson, M.D.).

Report of August 20, 2007

      g) As a result of Import Alert #89-08, numerous shipments of Histoacryl and Lipoidol, which is apparently a diluent utilized in the administration of Histoacryl, from Yocan Medical Systems, Inc. have been detained by FDA.

      h) Vance E. Watson, M.D., and Georgetown University Hospital's use of Histoacryl and Lipiodol was "in violation of regulations," 21 U.S.C. §351(f)(1)(B)(I), and thus constituted "adulteration" as did the compounding of Histoacryl with Lipiodol.

      i) A Class III device, one without an approved PMA, which is still available for use is by definition "adulterated." 21 U.S.C. §351(f)(1)(B)(I).

      j) It is my understanding that the "Histoacryl," an adulterated device, was implanted (injected) into Karyn Kerris for a fee.

      k) Thus, Vance E. Watson, M.D., and Georgetown University violated the prohibited act in 21 U.S.C. §331c by their "receipt in interstate commerce of...[a] device... that is adulterated," and providing the service "for pay."

      l).Vance E. Watson, M.D. and Georgetown University were not exempt from the regulations of the FDCA under 21 U.S.C. §360 nor was he practicing medicine as defined by 21 U.S.C. §396 because Vance E. Watson, M.D. was not licensed by law to prescribe or administer the adulterated Histoacryl and Lipiodol, which were not legally marketed devices.

      m) 21 U.S.C. §360(g) of the FDCA allows practitioners to be exempt from the FDCA in prescribing or administering drugs or devices which they are licensed by law to prescribe. 21 U.S.C. §396 has defined that the FDCA only allows practitioners to prescribe or administer legally marked devices. Neither section allows the use by practitioners of illegal devices which are adulterated or misbranded.

      n)While the FDCA was not intended to regulate the practice of medicine by practitioners, it was intended to control the availability of drugs and/or devices by these practitioners

      o) The testimony of Vance E. Watson, M.D. and Shelia Zimmet, Esq., establishes that neither he nor Georgetown University Hospital ever sought to become a sponsor or begin an investigation under an IDE for either device before they were injected into Karyn Kerris.

      p) While an adulterated device may not be legally used for any purpose in the United States, a device that presents a potential substantial risk to the public under the 2003 version of the Georgetown University Institutional Review Board Policies and Procedures Manual ("IRB P&P") must receive IRB approval, which was not done in this case.

      q) Based on subsections (o-p) above, Vance E. Watson, M.D., Shelia Zimmet,

**William H. Damaska**
2 Bayswater Court
Gaithersburg, Maryland 20878
(301) 208-9033 (Voice) (301) 208-9037(Fax)
E-mail: BDamaska@att.net

Date: December 13, 2007
Re: Karyn Kerris v. Georgetown University

In addition to the prior materials, I have reviewed the deposition of Sheila Zimmet, Esq. taken on December 6, 2007 as well as an additional note from her file. It is my opinion to a reasonable degree of scientific certainty that the "letter of need" was not a document generated by the central office of the Food and Drug Administration (FDA). Assuming that the document had been provided to Defendants by a United States Customs Officer, it would not have the effect of law and it would not allow for multiple shipments of a Class III device to a hospital when there was an active trade alert. It is further my opinion to a reasonable degree of scientific certainty that a proper investigation, which would have included discussion with the FDA directly, would have uncovered that the "letter of need" was generated by a third party and, thus, of no legal consequence.

*[signature]*
William H. Damaska