**Arthur Kaufman, MD**
**10139 Crestberry Place**
**Bethesda, Maryland 20817**
**(301) 365-3424**

August 22, 2007

Anthony Newman, Esquire
Newman & McIntosh
7315 Wisconsin Avenue, Suite 700E
Bethesda, Maryland 20814

Re: Felice I. Iacangelo, et al v. Georgetown University Hospital

Dear Mr. Newman:

I have reviewed the following documents in order to render an expert opinion regarding the negligence of Georgetown University Hospital with respect to Karyn Kerris:

1. The Affidavit of Felice Iacangelo
2. The Affidavit of Cicily Iacangelo
3. The Affidavit of William Damaska
4. Package Insert for Histoacryl
5. United States Code Annotated, Title 21, Food and Drugs, Chapter 9 – Federal Food, Drug, and Cosmetic Act, Subchapter III – Prohibited Acts and Penalties
6. Complaint
7. Amended Complaint
8. Declaration of Vance E. Watson, MD
9. Insurance Carrier Form
10. Power of Attorney signed by means of a fingerprint of Karyn Kerris
11. Institutional Review Board Policies & Procedures Manual
12. Deposition of Sheila Cohen Zimmet, Esquire
13. Deposition of Vance E. Watson, MD
14. Violation Code translation – Detentions for OASIS for Canada
15. Important Alert (FDA) for Class III Device
16. Consent for Surgery, dated 11/04/98, 01/13/99, & 03/03/99
17. Current Opinion in Neurology – Volume 19(1) February 2006
18. Georgetown Hospital Records of Karyn Kerris

After careful review of the above materials, it is my opinion, with reasonable medical certainty, that Georgetown University Hospital, its agents/employees, failed under the national standard of care, in its duty to Karyn Kerris, and their failures were directly and causally related to the injuries she sustained.

According to the article in Current Opinion in Neurology (Volume 19[1] February 2006), titled, "Invasive treatment of unruptured brain arteriovenous malformations (AVM) is experimental therapy":
"No randomized clinical trial data exist on the benefit of invasive AVM treatment, and the most contentious issue at present is whether intervention should be considered for AVMs that have not bled. In a scientific sense, invasive treatment for unruptured brain AVMs may be considered experimental therapy awaiting the results from 'A Randomized Trial of Unruptured Brain AVMs' (ARUBA), which is currently underway." This article, written by members of The Neurological Institute at Columbia University in New York defines the status of invasive treatment of unruptured AVMs as of 2006. Thus, this reality would have existed at the time of Karyn Kerris' treatment by Dr. Watson.

Dr. Watson recommended the use of Histoacryl, similar to "superglue" to inject into the blood vessels feeding the patient's arteriovenous malformation. Histoacryl is not produced in the United States; therefore it had to be imported from Canada. According to the package insert for Histoacryl, under Contraindications: "Histoacryl must not be used for clotting wounds to internal organs or on the surface of the brain and to the central and peripheral nervous system since tissue damage with scar formation and subsequent disturbance of function can result. Administration to the intima and media of blood vessels should also be avoided on account of the risk of thrombosis or damage to the vascular wall."

According to the "Detentions for OASIS by Product," Histoacryl (a product of Yocan Medical Systems, Inc.) could not be imported from Germany or Canada because there was no Premarketing Application (PMA). Also according to the FDA Histoacryl is a Class III medical device for which there are no approved PMAs or Investigational Device Exemptions (IDE). "The article {Histoacryl} is subject to refusal of admission {into the United States} pursuant to Section 801 (a) (3) in that the device appears to be a Class III device and does not appear to have in effect an approved application for premarket approval pursuant to Section 515 of the Act, or an exemption pursuant to Section 520 (g) (1) [Adulteration, Section 501 (f) (1) (B)]." Thus, according to the FDA, Histoacryl is a Class III device, does not have premarket approval, and is classified as "Adulterated." All of these facts were easily obtained through an internet "Google" search.

With all of this information as preamble and realizing that this is the status of Histoacryl today as it was in 1998, it is inconceivable that Sheila Cohen Zimmet, Esquire, Associate Vice President for Regulatory Affairs and an employee of Georgetown University, would allow this product to be used in a way that would jeopardize both the patient and Georgetown University. It should not have been used; if it was to be used at all, it would have to be given an IDE by the FDA and go through a Georgetown Institutional Review Board with a carefully defined clinical protocol and a very specific patient informed consent. Since this device did not go through the IRB and since there was no approved use of this agent in blood vessels, it was impossible for a proper informed consent to be obtained from the patient.

According to Felice I. Iacangelo and Cicily Iacangelo, the patient's father and mother, who were present when Vance E. Watson, MD, discussed the proposed procedure with Karyn Kerris, Dr. Watson never told the family:
1. That he had experienced complications with any patients on whom he had used this treatment
2. That the procedure "would not be a cure or address the risk of hemorrhage"
3. That improvement of Karyn Kerris' symptoms with the "Lipiodol and Histoacryl mixture was only a theory with significant great risks including a high rate of failure, death, stroke or neurological worsening"
4. That "there was no way to predict whether [my daughter] would improve, decline, stay the same or die from the treatment"
5. That there were alternative treatments available for her vascular anomaly [in fact, he stated that the embolization was the only treatment available]
6. That neither the embolizations nor the devices to be used were approved by the Food and Drug Administration (FDA)
7. That a "letter of need" might be required to procure the device from Canada
8. That the embolization using Histoacryl was completely contrary to the manufacturer's express warning that the device should not be injected into blood vessels.

In short, there was no proper informed consent provided to Karyn Kerris by Dr. Watson at any time prior to the inappropriate procedures which took place on 11/04/98, 01/13/99 and 03/03/99.

Because of his knowledge of the field of neuroradiology and Interventional and Endovascular Therapy, Dr. Watson could have and should have known that Histoacryl was not approved by the FDA and had to be illegally imported from Canada. Further, he could have and should have known that a Class III "investigational" device had to be approved and overseen by the Georgetown Institutional Review Board.

In his deposition, Dr. Watson indicated that he went to Sheila Cohen Zimmet, Esquire, Vice President for Regulatory Affairs, asked her if he could use the Histoacryl, and was advised that he could do so without going through the Georgetown IRB. Ms. Zimmet claims that she did not so advise Dr. Watson. She also states in her deposition that she did not investigate the device, Histoacryl or its use for the purpose of embolization. She said, "Dr. Watson asked me if clinical use of this glue-like substance for the purpose of embolizing AVMs was within the jurisdiction of the IRB, and if an IRB application should be filed. I said no." Ms. Zimmet was asked: "Is it your testimony today that if you knew that there was a trade alert, and knew that it was a Class III unapproved device, that you would have still behaved in the same fashion that you did, and that is, tell Dr. Watson it doesn't need IRB approval, go ahead and use it?" She responded, "It would not have changed my opinion with respect to the response I gave to Dr. Watson." Further, Ms. Zimmet did nothing to determine if the FDA had made an exception with regard to the use of this Class III device nor did she investigate why this substance had a

trade alert. It is my opinion that this is willful and wanton misbehavior on the part of this hospital attorney and therefore on the part of Georgetown University.

Thank you for asking me to review this complex and unfortunate case. If you have any further questions, please call.

Sincerely,

Arthur Kaufman, MD