**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

_____
                                        )

**Felice P. Iacangelo and Cicily Iacangelo,** )
**As Guardian of the Person and Property of** )
**KARYN A. KERRIS,** )
                                        )

         **Plaintiffs,** )
                                        )

**v.** )  **Civ. Act. No. 1:05CV02086 (PLF)**
                                        )

**Georgetown University Hospital,** )  **Judge Paul L. Friedman**
**GEORGETOWN UNIVERSITY, t/a** )
**Georgetown University, and** )
**VANCE E. WATSON, M.D.,** )
                                        )

         **Defendants.** )
_____)

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS/
MOTION TO DISMISS PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS
BASED ON VIOLATIONS OF FEDERAL LAW AND PUNITIVE DAMAGES**

        Defendants, Georgetown University and Vance E. Watson, M.D., by and through

undersigned attorneys, respectfully move for judgment on the pleadings, pursuant to Federal

Rule of Civil Procedure 12(c), on Counts IX, X, XI, XII, and enumerated paragraphs of Plaintiffs

Felice and Cicily Iacangelo's Amended Complaint and/or to dismiss, pursuant to Federal Rule of

Civil Procedure 12(b)(6), Counts VI, VII, VIII, and IX and enumerated paragraphs of Plaintiffs

Felice and Cicily Iacangelo's Proposed Second Amended Complaint for failure to state a claim

on which relief can be granted under preemption principles, District of Columbia law, and legal

precedent.

                                      Respectfully submitted,

                                      WILLIAMS & CONNOLLY LLP

Dated:  February 14, 2008          By:    <u>/s/ Megan E. Hills          </u>

David C. Kiernan (D.C. Bar # 413806
Megan E. Hills (D.C. Bar #  437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

_____
                                 )
**Felice P. Iacangelo and Cicily Iacangelo,**  )
**As Guardian of the Person and Property of**  )
**KARYN A. KERRIS,**  )
                                 )
           **Plaintiffs,**  )
                                 )
**v.**  )  **Civ. Act. No. 1:05CV02086 (PLF)**
                                 )
**Georgetown University Hospital,**  )  **Judge Paul L. Friedman**
**GEORGETOWN UNIVERSITY, t/a**  )
**Georgetown University, and**  )
**VANCE E. WATSON, M.D.,**  )
                                 )
           **Defendants.**  )
_____)

**DEFENDANTS'[1] SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES
FOR MOTION FOR JUDGMENT ON THE PLEADINGS/MOTION TO DISMISS
PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS
BASED ON VIOLATIONS OF FEDERAL LAW AND PUNITIVE DAMAGES**

Alleged violations of the Federal Food, Drug, and Cosmetic Act[2] cannot state a

state law claim for negligence *per se*.  Five independent grounds prohibit FDCA-based state law

negligence *per se* claims, any one of which alone directs the dismissal of plaintiffs' three

---

[1] "Defendants" refers collectively to defendants Georgetown University (individually, "GU")
and Vance E. Watson, M.D. (individually, "Dr. Watson").  "Plaintiffs" refers collectively to
plaintiffs Felice and Cicily Iacangelo.

[2] 21 U.S.C. §§ 331, et seq.  Hereinafter, "FDCA."  All references to the FDCA include the
Medical Device Amendments, 21 U.S.C. §§ 301, et seq.  Both Plaintiffs' Amended Complaint
and Proposed Second Amended Complaint bring identical claims for violations of 21 U.S.C. §§
331, 360, and the federal regulations enacted pursuant to the FDCA as well as a claim for
punitive damages.  Am. Compl. at Counts IX-XII; Sec. Am. Compl. at Counts VI-IX.  The
standard for determining a motion to dismiss under Federal Rule of Civil Procedure ("Fed. R.
Civ. P") 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c) is the same, *Jung
v. Association of American Medical Colleges*, 339 F.Supp.2d 26, 35-36 (D.D.C. 2004) (PLF);
therefore, regardless of the complaint the Court adopts, the analysis of this motion does not
change.

negligence *per se* counts:[3]  1) The United States Supreme Court states that claims based solely on FDCA violations are preempted; 2) District of Columbia law prohibits a negligence *per se* claim based on the alleged breaches of the FDCA made here; 3) The FDCA sections sued upon establish only administrative requirements (not a judgment as to a device's safety or effectiveness) and lack a standard of care, barring a state law FDCA-based negligence *per se* claim; 4) A state law negligence *per se* claim based on alleged breaches of a duty arising out of federal law is prohibited when there is no analogous duty imposed by state law; and 5) Congressional intent and FDA antagonism proscribe FDCA-based state law negligence *per se* claims to enforce the FDCA.

Plaintiffs' Count for Punitive Damages (Am. Compl. Count IX; Proposed Sec. Am. Compl. Count VI) should also be dismissed as punitive damages are a disfavored remedy, not a freestanding claim.  Informed Consent precedent also dictates that plaintiffs' liability claims against defendants Dr. Watson and Georgetown University as to information regarding a device's regulatory status that plaintiffs allege should have been disclosed to the patient cannot form the basis for liability and should be dismissed.  Lastly, a hospital cannot be directly liable for lack of informed consent.  Both plaintiffs' Amended Complaint and Proposed Second Amended Complaint attempts to bring a claim of Lack of Informed Consent directly against defendant Georgetown University (*e.g.*, without reliance on *respondeat superior*).  *See* Am.

---

[3] The Court's March 26, 2007 Order on defendants' Partial 12(b)(6) motion adopted Magistrate Judge Kay's Report and Recommendations, at that time denying dismissal of plaintiffs' FDCA-based state law negligence *per se* claims **without prejudice**.  In making this ruling, the Court was not presented with the on-point District of Columbia prior decision dismissing FDCA-based negligence *per se* claims, as Plaintiffs represented that the case was sealed, Plts.' Opp. to Motion to Compel, filed September 20, 2007, at 3, nor did it address the arguments and case law contained in the current brief.

Compl. or Proposed Sec. Am. Compl. ¶¶ 14-21.  Lack of Informed Consent claims brought

directly against defendant GU should be dismissed.

## **INTERPRETING THE LAW**

The Court alone is qualified to pass on issues of statutory interpretation.  *Edwards*

*v. Aguillard*, 482 U.S. 578, 596 n. 19 (1987) (quotation omitted); *325-343 E. 56th Street Corp. v.*

*Mobil Oil Corp.*, 906 F.Supp. 669, 673 (D.D.C. 1995) (citing *Papasan v. Allain*, 478 U.S. 265,

286 (1986); *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276, and fn. 2 (listing cases) (D.C. Cir.

1994)).  The Court first interprets the law to determine whether it sets forth a standard of care.

*McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 580 (D.C. 1996).  "Each courtroom comes

equipped with a 'legal expert,' called a judge . . ."  *Burkhardt v. Washington Metro. Transit*

*Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) who is charged with interpreting the law.

The United States Supreme Court states that the "Court has previously found the

postenactment elucidation of the meaning of a statute to be of little relevance in determining the

intent of the legislature contemporaneous to the passage of the statute."  *Edwards*, 482 U.S. at

596 n. 19.  As stated by the Supreme Court, presentation of affidavits or paid "expert legal

opinions"[4] from lawyers and legal laypeople cannot aid the Court on issues of statutory

interpretation.  *Id.*

There can be no genuine issue of material fact when a statute's interpretation is

the sole issue presented to the Court because appropriate determination focuses on the statute's

language and legislative history.  "It is emphatically the province and duty of the judicial

department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803)

---

[4] Ten (10) of Plaintiffs' thirteen (13) designated experts opine in whole or in part as to the meaning of the law.  *See* Emergency Motion for Extension of Defendants' Expert Deadlines and to Strike Plaintiffs' Cumulative and Legal Experts, filed January 15, 2008; Reply in support of same, filed February 11, 2008.

(determining whether the law sets forth the entitlement to a commission).  "[T]his issue is a

strictly legal one for the court to decide."  *325-343 E. 56th Street Corp.*, 906 F. Supp. at 682; *see*

*also* Restatement (Second) of Torts § 286, cmt. d (1965).

## STATEMENT OF THE CASE

With the exception of plaintiffs' claims regarding alleged violations of the FDCA,

this matter is a straightforward medical malpractice lawsuit.  Suffering from a rare,[5] neurological

disease – a cranial AVM, Karyn A. Kerris ("Mrs. Kerris") came to Georgetown University

Hospital in 1998 for medical treatment.  Am. Compl. ¶ 9; Proposed Sec. Am. Compl. ¶ 8.

Plaintiffs' medical malpractice claims surround the medical treatment Mrs. Kerris

received from defendant Dr. Watson at Georgetown University Hospital, which plaintiffs state

was negligent, alleging damages that Mrs. Kerris's current medical state of being adjudged

incompetent, greater difficulty walking, severe headaches, double vision (nystagmus), and

limited speaking ability was caused by her medical treatment, as opposed to the progression of

her underlying disease.  Am. Compl. ¶ 12; Proposed Sec. Am. Compl. ¶ 11.

With the medical malpractice claim, plaintiffs also bring a lack of informed

consent count, breach of fiduciary duty count (containing averments of both negligent medical

treatment and lack of informed consent), fraud count (based on allegations of lack of informed

consent, dismissed March 26, 2007 from Amended Complaint; Proposed Second Amended

---

[5] Estimates of the number of people afflicted with arteriovenous malformations ("AVM") in the
United States range from 0.1% to 0.001%.  National Institute of Neurological Disorders &
Stroke (Dec. 11, 2007),   http://www.ninds.nih.gov/disorders/avms/avms.htm.  An AVM is an
abnormal tangle of arteries and veins that bypass the small vessels in the brain that make up the
normal circulation.  AVMs do not allow for a gradual pressure drop from the high arterials
pressure to the low pressure on the venous side. Thus, AVMs represent a high flow short-circuit
that reduces ("steals") blood flow from both the surrounding tissues as well as reducing
("stealing") blood that would otherwise pass through to more distant tissues and nourish them.
*Id.*

Complaint, Count IV), and a breach of express warranty count in the proposed Second Amended

Complaint (based on allegations regarding informed consent, dismissed March 26, 2007 from

Amended Complaint; Proposed Second Amended Complaint, Count III).  Am. Compl. Counts I-

II, VIII; Proposed Sec. Am. Compl. Counts I-V.

        Plaintiffs' remaining claims are based on alleged violations of the FDCA, cast as

state law negligence *per se* counts, Am. Compl. Counts X-XII; Proposed Sec. Am. Compl.

Counts VII-IX, on which violations, plaintiffs base their right to damages:  "The brain injury

suffered by Karyn A. Kerris would not have occurred had the Defendants not violated the

aforesaid [federal] statues.  WHEREFORE, Plaintiffs . . .  demand judgment of and against

Defendants, Georgetown University and Vance E. Watson, M.D., jointly and severally, in the

full sum of Thirty Million Dollars . . ."  Am. Compl. ¶ 80; *see also id.* at  ¶¶ 90, 94; Proposed

Sec. Am. Compl. ¶¶ 59, 68, 72.

        These claims arise from the use of the combination of Histoacryl® (chemical

name, n-butyl-cyanoacrylate, "NBCA") and Lipiodol® (radiological, contrast medium - ionized

poppy seed oil), a device unapproved by the FDA the medical treatment of Mrs. Kerris.  Am.

Compl. ¶¶ 9-10; Proposed Sec. Am. Compl. ¶¶ 8-9.  Plaintiffs claim that the use of an

unapproved device in the clinical care of a patient without an FDA awarded Investigational

Device Exemption ("IDE") or Pre-Marketing Approval ("PMA") was illegal.  Am. Compl. ¶¶

11(c), (f), (i), (l), 13-14, 21, 48(c), (d); Proposed Sec. Am. Compl. ¶¶ 10(c), (f), (i), (l), 12-13,

20, 24, 27(a), (c), (d), 34.

        Specifically, plaintiffs allege defendants violated FDCA sections:  21 U.S.C. §

360c (Am. Compl. Count X:  Use of an FDA Unapproved Device without Obtaining an

Investigational Device Exemption ("IDE") from the FDA; Proposed Sec. Am. Compl. Count

VII), 21 U.S.C. § 331, and federal regulation, (enacted pursuant to the FDCA), 21 C.F.R. § Ch. 1

812.20(a)(2).  Am. Compl. Count XI:  Misbranding & Adulteration, Count XII:  IDE

Applications; Proposed Sec. Am. Compl. Counts VIII, IX.

        In addition to requesting compensatory damages of approximately $300 million,

both the Amended Complaint and the Proposed Second Amended Complaint bring a claim for

punitive damages for $100 million.  Am. Compl. Count X; Proposed Sec. Am. Compl. Count VI.

Both the Amended Complaint and Proposed Second Amended Complaint also base liability upon

the alleged actionable failure of defendants to disclose the devices' regulatory status to Mrs.

Kerris and seek to hold defendant GU directly liable for lack of informed consent.  Am. Compl.

¶¶ 11(k), 14-22, 59 and all of its subparagraphs, 61; Proposed Sec. Am. Compl. ¶¶ 10(k), 13-21,

27(a)-(e), 28-32, 38 and all of its subparagraphs.

## **ARGUMENT**

        Superimposing a state law negligence *per se* claim based on alleged violations of

a federal statute or federal regulation—such as the FDCA—is primarily a matter of federal law.

Under Supreme Court precedent, it also raises issues of preemption.  This issue of statutory

interpretation is solely for the Court's determination and is poised for its resolution.

## I.    PLAINTIFFS' FDCA-BASED NEGLIGENCE *PER SE* CLAIMS ARE BARRED UNDER SUPREME COURT PRECEDENT.

        The United States Supreme Court states that state law claims based entirely on

violations of the FDCA are not allowed:  "In sum, were plaintiffs to maintain their fraud-on-the-

agency claims here, **they would not be relying on traditional state tort law which had**

**predated the federal enactments in questions. On the contrary, <u>the existence of these</u>**

**<u>federal enactments is a critical element in their case</u>**. . . .  [*Medtronic*] **does and cannot**

**stand for the proposition that any violation of the FDCA will support a state-law claim.**"
*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001) (emphasis added).

Plaintiffs' FDCA-based negligence *per se* counts are virtually the same as the claims the Supreme Court deemed preempted in *Buckman*—plaintiffs' negligence *per se* claims exist solely because of alleged violations of federal FDCA requirements: "The brain injury suffered by Karyn A. Kerris **would not have occurred had the Defendants not violated the aforesaid [federal] statues**. WHEREFORE, Plaintiffs . . . demand judgment . . ." Am. Compl. ¶ 80 (emphasis added); *see also id.* ¶¶ 90, 94; Proposed Sec. Am. Compl. ¶¶ 59, 68, 72.

The Supreme Court's explanation of the *Buckman* and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), cases directs the dismissal of plaintiffs' FDCA-based, state law negligence *per se* claims. The *Buckman* plaintiff sought to bring state law claims, including negligence *per se*, citing 21 C.F.R. § 807.87(j) and sections of the FDCA, against a manufacturer's consultant for alleged violations of the FDCA in the FDA's approval of orthopedic bone screws. *See Buckman*, 531 U.S. at 343; *In re Orthopedic Bone Screw Products Liability Litigation*, 1997 WL 305257 at * 1 (E.D. Pa. 1997) (unreported); *In re Orthopedic Bone Screw Products Liability Litigation* Second Amended Complaint, 1998 WL 34368848, Count III. Unlike the *Buckman* plaintiff, the *Medtronic* plaintiff did not rely on any FDCA statutory requirement, bringing instead state common law negligence claims that defendant Medtronic had failed to use reasonable care, *inter alia*, in the design and manufacturer of its pacemakers. *Medtronic*, 518 U.S. at 481.

In rejecting the *Buckman* petitioner's argument that his claims were the same as those of the *Medtronic* petitioner (whose state law claims were allowed), the Court made clear

that negligence *per se* actions that simply adopt federal statutory requirements as the basis for

their claims were not allowed.

> We must also reject respondent's attempt to characterize both the claims at issue in *Medtronic* (common-law negligence action against the manufacturer of an allegedly defective pacemaker lead) and the fraud claims here as "claims arising from violations of FDCA requirements." . . . **[I]t is clear that the Medtronic claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not solely from the violation of FDCA requirements.** **In the present case, however, the fraud claims exist solely by virtue of the FDCA disclosure requirements.** Thus, although Medtronic can be read to allow certain state-law causes of actions that parallel federal safety requirements, **it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim.**

*Buckman*, 531 U.S. at 352-53 (emphasis added).

Similarly here, plaintiffs' allegations of negligence *per se* are that defendants

violated federal statutes and **that alleged violation is the very basis of plaintiffs' claim for**

**damages**:  "the brain injury suffered by Karyn A. Kerris would not have occurred had the

Defendants not violated the aforesaid [federal] statues."  Am. Compl. ¶ 80; *see also* Counts X-

XII, ¶¶ 90, 94; Proposed Sec. Am. Compl. Counts VI-IX, ¶¶ 59, 68, 72.  Plaintiffs do not rely on

traditional tort law.  Absent the federal statutes, plaintiffs' negligence *per se* claims could not

exist as the duties imposed by the FDCA do not exist under District of Columbia law.[6]  *See also*

*Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 811 and 811 n.10 (1986).

---

[6] Courts that allow FDCA-based negligence *per se* claims do so when the particular state's law contains the requirements stated in the FDCA.  *Ezagui v. Dow Chemical Corp.*, 598 F.2d 727, 733 (2d Cir. 1979) (allowing negligence *per se* claim as the duties set forth in the FDCA did not differ from the duties set forth under New York statutory law (citing New York statute, McKinney's Education Law § 6815)); *In re Bendectin Litig.*, 857 F.2d 290, 313 (6th Cir. 1988) (same).

## II.    DISTRICT OF COLUMBIA LAW DOES NOT ALLOW A NEGLIGENCE *PER SE* CLAIM FOR THE FDCA VIOLATIONS BROUGHT HERE.

The Court does not need to guess as to what a D.C. Court would do with plaintiffs' FDCA-based, state law negligence *per se* claims—it would dismiss them with prejudice.[7]  Upon being presented with the virtually identical set of facts,[8] the Honorable William Jackson, Associate Judge of D.C. Superior Court, applied District of Columbia law and dismissed plaintiffs' FDCA-based negligence *per se* claims (the same ones brought here), holding that the statutory violations regarding FDA approval, IDEs, PMAs, and/or Misbranding and Mislabeling, *inter alia*, 21 U.S.C. §§ 360 and 21 C.F.R. § 812.20, "are devoid of an appropriate standard of care" and cannot support a claim for negligence *per se*.  *Morton v. George Washington University Hosp.*, Civ. Act. No. 99ca004599, Slip Op. at 9 (D.C. Super. Ct., filed Nov. 30, 2001) (order granting defendants' 12(b)(6) Motion, dismissing plaintiffs' FDCA-based negligence *per se* claims) ("11/30/01 *Morton* Order") (Ex. 1).

This Court relies on D.C. Superior Court rulings to assess whether D.C. law will allow a negligence *per se* claim based upon a federal statute.  *Adler v. Vision Lab Telecomm., Inc.*, 393 F. Supp. 2d 35, 37-38 (D.D.C. 2005) (dismissing negligence *per se* claims based on alleged violations of federal law as D.C. law did not contain similar requirements).  Agreeing

---

[7] On a motion to dismiss, "[t]he court . . . does not have to accept plaintiff's legal conclusions.  *325-343 E. 56th Street Corp.*, 906 F. Supp. at 673 (*citing Papasan*, 478 U.S. at 286; *Kowal*, 16 F.3d at 1276).  Moreover, "when a federal court is considering a state law claim, Fed. R. Civ. P. 12(b)(6) does not require the court to make a leap of faith and apply a legal theory that has not been recognized or applied in the particular state."  *Shoreham Hotel Ltd. Partnership v. Wilder*, 866 F. Supp. 1, 5-6 (D.D.C. 1994).

[8] Brought by plaintiffs' counsel in D.C. Superior Court, *Morton v. George Washington University Hosp.* involved, *inter alia*, allegations that in June 1998, it was illegal for the George Washington Hospital doctor to treat a patient by embolizing her with the FDA unapproved device, Histoacryl® and Lipiodol® without having obtained an IDE or PMA.  Based on District of Columbia law, the *Morton* court dismissed the same FDCA-based, negligence *per se* claims as presented here.  *See* Ex. 1 (11/30/01 *Morton* Order).

with courts around the nation, Judge Jackson held that "**the statute and regulations relied upon by Plaintiffs are administrative in nature and do not set forth a standard of conduct, the breach of which would constitute negligence *per se*.**" 11/30/01 *Morton* Order at 9 (Ex. 1) (emphasis added); *see also Talley v. Danek Med., Inc.*, 179 F.3d 154 (4th Cir. 2000) (listing cases); *Vanderwerf v. SmithKlineBeecham Corp.*, 414 F. Supp.2d 1023, 1028 (D. Kan. 2006) (dismissing negligence *per se* claim as violations of FDCA cannot support claim); *In re Orthopedic Bone Screw Products*, 193 F.3d 781, 796 (3d Cir. 1999) (same); *Hackett v. G.D. Searle & Co.*, 246 F. Supp. 591, 596 (W.D. Tex. 2002) (same); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp.2d 1310, 1321 (N.D. Okla. 2000) (same); *Uribe v. Sofamor, S.N.C.*, No. 8:95CV464, 1999 WL 1129703 (D. Neb. Aug. 16, 1999) (unreported) (same); *Baker v. Danek Med., Inc.*, 35 F. Supp.2d 875, 878 (N.D. Fla. 1998) (same); *Miller v. Connaught Labs, Inc.*, No. 93-1420-PFK, 1995 WL 579969 at *9 (D. Kan. September 13, 1995) (unreported) (same); *King v. Danek Med., Inc.*, 37 S.W. 3d 429 (Tenn. Ct. App. 2000) (same); *Johnson v. Smith & Nephew Richards, Inc.*, No. 97-CV-363-K, 1999 WL 1117105 at *2 (N. D. Okla. Sept. 30, 1999) (unreported) (same); *Bish v. Smith & Nephew Richards, Inc.*, No. W1998-00373-COA-R9-CV, 2000 WL 1294324 (Tenn. Ct. App. Aug. 23, 2000) (unreported) (same); and cases cited throughout this brief.[9]

   *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 580 (D.C. 1996), did not address the issue of whether these FDCA sections contained a standard of care, but in reversing the trial court's admission of FDCA sections, it expressed skepticism that, *inter alia*, 21 U.S.C.

---

[9] *See also Holland v. Hoffman-LaRoche, Inc.*, No. 3-06-CV-1298-BD, 2007 WL 4042757 (N.D. Tex. November 15, 2007 (affirming dismissal of FDCA-based negligence *per se* claim); *Estep v. Danek Med., Inc.*, No. 1:96CV2580, 1998 WL 1041330 (N.D. Ohio December 8, 1998) (unreported) (same); *Baker v. Smith & Nephew Richards*, No. 95-58737, 1999 WL 811334 (Tex. Dist. Ct. June 7, 1999) (unreported) (same); *Hill v. Danek Med., Inc.,* No. 4:96-CV-177-H1, 1998 U.S. Dist. LEXIS 21749 (E.D.N.C. Sept. 10, 1998) (same).

§§ 331, 352, and 353, contained a standard of care.  ("Our review of the statutes and regulations admitted here raises questions on whether they can be used to establish a standard of care for negligence *per se* purposes . . .").  The *McNeil* court stated that the trial court must **first** make the independent judgment as to whether the FDCA sections sued upon state a standard of care sufficient to support a negligence *per se* claim, prior to determining whether expert testimony should be admitted to help a jury understand any statute.  *Id.*; *see also King*, *supra*, 37 S.W. 3d at 459.  *McNeil* did not hold that the FDCA and FDA regulations were properly used in a negligence *per se* claim; rather, *McNeil* reversed the trial court for admitting FDCA statutes and regulations without first determining that they stated a standard of care such that they were properly admissible and then determining what expert testimony was properly admissible to help the jury.  *Id.*

Under D.C. law, the *Morton* case definitively stated that the violations plaintiffs allege here cannot form the foundation of a negligence *per se* claim.  The Court does not have to guess or take a leap of faith as to what a D.C. court would do as to plaintiffs' claims of negligence *per* se, a D.C. court, applying D.C. law, has already addressed and dismissed them. 11/30/01 *Morton* Order (Ex. 1).  Under either or both, state and/or federal law, plaintiffs' negligence *per se* claims should be dismissed with prejudice.  Am. Compl. Counts X-XII; Proposed Sec. Am. Compl. Counts VI-IX.

### III.     IN ADDITION TO THE DISTRICT OF COLUMBIA, STATES AND FEDERAL COURTS HOLD THAT THESE FDCA SECTIONS DO NOT EMBODY A STANDARD OF CARE AND CANNOT SUPPORT A CLAIM FOR NEGLIGENCE *PER SE.*

Numerous courts hold that the sections of the FDCA sued upon here do not contain a standard of care; therefore, alleged violations of them cannot support a negligence *per se* claim. *See Morton, supra* (listing cases) (Ex. 1); *Talley, supra, Alexander v. Smith & Nephew,*

*P.L.C.*, 98 F. Supp 2d 1310, 1321 (N.D. Okla. 2000) (violations of FDCA do not constitute negligence *per se* under state law); *Baker v. Danek Medical*, 35 F.Supp.2d 875, 878 (N.D. Fla. 1998) (same); *Holland, supra* (same); *Minisian*, *supra* (same); *Blazoski v. Cook*, 787 A.2d 910, 920 (N.J. Super. A.D. 2002) (same); *Baker v. Smith & Nephew Richards*, No. 95-58737, 1999 WL 811334 (Tex. Dist. Ct. June 7, 1999) (unreported) (same); and cases listed throughout brief.

### A. Administrative Requirements Cannot Support Negligence *Per Se* Claims.

Courts addressing FDCA-based negligence *per se* claims hold that sections regarding FDA approval, IDEs, PMAs, and/or mislabeling are administrative requirements of a regulatory scheme that cannot support state law FDCA-based negligence *per se* claims. Even if the regulatory scheme as a whole is designed to protect the public or to promote safety, these duties are not a standard of care, but an administrative requirement. *Talley*, 179 F.3d at 159.

> **The administrative requirement that a given device be approved by the FDA** before being marketed—**as opposed to a specific substantive requirement that a device be safe and effective—is only a tool to facilitate administration of the underlying regulatory scheme.** Because it lacks any independent substantive content, **it does not impose a standard of care, the breach of which could form the basis of a negligence *per se* claim.** Its breach is analogous to the failure to have a drivers license.
>
> **In concluding that the FDCA requirement for prior approval of a medical device does not itself support a claim for negligence per se**, we do not intend to trivialize the alleged violation of administrative statutory provisions. They are essential to the underlying federal regulatory scheme that serves important societal interests. **But because such specific approval rules are administrative, they do not amount to a legislative judgment as to the standard of care, and accordingly, breach of these provisions in themselves cannot underlie a negligence *per se* claim.**

*Talley*, 179 F.3d at 161 (emphasis added); 11/30/01 *Morton* Order at 9 (Ex. 1); *see also King*, *supra*, 37 S.W.2d at 460 (regulatory or administrative criteria cannot support negligence *per se* claims); *Baker v. Smith & Nephew Richards*, 1999 WL 811334 at *23, *supra* (same); *Johnson v.*

*Smith & Nephew Richards, Inc.*, *supra*, 1999 WL 1117105 at *2;  *Alexander*, *supra*, 98 F. Supp. at 1285; and cases cited throughout this brief.

"[W]here a particular statutory requirement does not itself articulate a standard of care but rather requires only regulatory approval, or a license, or a report for the administration of a more general underlying standard, violation of that administrative requirement itself is not a breach of a standard of care.  This violation rather indicates only a failure to comply with an administrative requirement, not the breach of a tort duty." *Talley*, 179 F.3d at 159;  11/30/01 *Morton* Order at 9 (Ex. 1); *Uribe*, 1999 WL 1129703 at *15-16 fn. 9 (quotation omitted) (same); and cases cited throughout this brief.  "Regulatory criteria which do not set forth specific substantive standards are not suitable negligence per se standards." *Baker v. Smith & Nephew Richards*, 1999 WL 811334 at *23 (*citing Myers v. United States*, 17 F.3d 890, 901 (6th Cir. 1994)).  Therefore, plaintiffs' negligence *per se* claims alleging solely a breach of administrative requirements cannot be maintained.

**B.      A Device's Unapproved Status Does Not Mean that the Device is Either Unsafe or Ineffective.**

The unapproved status of a drug or device does not mean that the device is unsafe or ineffective.  "The administrative requirement that a given device be approved by the FDA before being marketed—as opposed to a specific substantive requirement that a device be safe and effective—is only a tool to facilitate administration of the underlying regulatory scheme." *Talley*, *supra*, 179 F.3d at 161.  As a federal court stated:  "Even if, as plaintiff argues, defendant was in violation of the federal statute for failing to make proper filings with the FDA, this circumstance, in and of itself, has nothing to do with the safety and effectiveness of the device as such. *Knoth v. Smith & Nephew Richards*, 195 F.3d 355, 357 (8th Cir. 1999).  It "is not a qualitative determination that the device is risky or unsafe." *Blazoski*, 787 A.2d at 920.  "The

status of a device as unapproved and uncleared . . . does not necessarily mean that the device is

unsafe, defective, or unreasonably dangerous.  It means simply that the FDA has not yet

concluded that the device should be approved or cleared." *Baker v. Smith & Nephew Richards*,

1999 WL 811334 at *7.

An administrative requirement, even an administrative requirement that as a

whole is to promote safety, cannot support a state law claim of negligence *per se*.  *Southard v.

Temple University Hosp.*, 781 A.2d 101, 107 (Pa. 2001), *see also Alexander*, *supra*, 98 F.

Supp.2d at 1285.

### C.    District of Columbia Law Does Not Have Duties Analogous to the FDCA.

The negligence *per se* doctrine does not create new causes of action.  It only

recognizes a legislatively created standard of care where there is an underlying common-law

duty.  Negligence *per se* is not a magically transforming formula that automatically creates a

private right of action for the civil enforcement in tort law for every statute.  A plaintiff cannot

state a claim for negligence *per se* with a vague reference to "negligence."  The pertinent inquiry

is whether the duties set forth in federal law—here, the FDCA—are analogous to those imposed

under local tort law.  *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1158 (D.C. Cir.

1985) ("Duties set forth in *federal law* do not, therefore, automatically create duties under *local

tort law*.") (citations omitted; italics in original).

Unless plaintiffs can establish the requirement under District of Columbia law,

*inter alia*, to apply for an IDE prior to the clinical use of an unapproved device, plaintiffs cannot

state a claim for negligence *per se* based on the FDCA.  *Id.*; *Tripp v. U.S.*, 257 F. Supp. 2d 37, 45

(D.D.C. 2003) (dismissing negligent disclosure of confidential information on grounds that

duties under federal laws could not form the basis for a negligence claim where no analogous

duties exist under D.C. state law); *Baker v. Smith & Nephew Richards, Inc.*, *supra*, 1999 WL

81134 at *22 n.48 (listing cases); and cases cited throughout this brief.

In order to state a claim for negligence, plaintiffs must allege a duty of care,

breach of that duty, and injury proximately caused by that breach.  *Bullock v. National City*

*Mortgage Co.*, 735 A.2d 949, 952 (D.C. 1999).  The allegation that a federal statute was violated

does not in and of itself create a cause of action.  *Tripp*, 257 F. Supp. 2d at 44.  Plaintiffs'

contention that the FDCA can support a state law negligence *per se* claim is akin to the *per* se

claims dismissed in *Adler v. Vision Lab Telecomm.*, 393 F. Supp. 2d 35, 40 (D.D.C. 2005).  The

*Adler* plaintiffs argued that defendants were negligent in violating a duty not to intrude upon

plaintiffs' privacy, such as sending unsolicited faxes to plaintiffs, a duty to check and verify the

numbers to which defendants sent faxes, and a duty not to call plaintiffs in the early morning

hours—in other words, a duty not to violate the federal Telephone Consumer Protection Act

("TCPA").  *Id.* at 40.  In dismissing the count, this Court's observation is applicable here:

"plaintiffs have not pointed to any authority that might support the existence of the alleged

duties.  These duties would arise only from the TCPA's statutory proscriptions and not from any

duty recognized in the common law.  Accordingly, Count IV must be dismissed."  *Id.* at 41.

Plaintiffs must do more than simply assert that a federal law duty is appropriately

converted to a new cause of action because its purpose protects the public.  All legislation

promotes the public welfare to some degree; however, when state law has not adopted the duties

set out in federal law into its own, Congress explicitly prohibits a private right of action,[10]

federal courts state there is no implied private right of action, 11/30/01 *Morton* Order at 5-7 (Ex.

_____

[10] *Buckman*, 531 U.S. at 349 n.4 ("The FDCA leaves no doubt that it is the Federal Government
rather than private litigants who are authorized to file suit for noncompliance with the medical
device provisions . . . [quoting 21 U.S.C. § 337(a)]."

1), and Congress has vested the authority to prosecute violations of the federal law with the FDA

as it sees fit, 21 U.S.C. § 336 (1992), the inevitable conclusion is that plaintiffs' claims for state

law FDCA-based negligence *per se* to punish alleged administrative failures are not allowed.

**IV.    CONGRESSIONAL INTENT PROHIBITS PLAINTIFFS FROM ENFORCING THE FDCA BASED ON A DISTRICT OF COLUMBIA STATE LAW CLAIM OF NEGLIGENCE *PER SE*.**

Congress explicitly provided that only the FDA (a state only with the FDA's

permission) can enforce the FDCA.  21 U.S.C.A. § 337 (1992).[11]  While a state is free to apply

the doctrine of negligence *per se* to violation of its own food and drug laws, whether the

violation of a federal law, such as the FDCA, creates state tort liability is not solely a matter of

state law.  A state's ability to use a federal statute violation for state tort liability depends on the

intent of Congress.  *In re Bendectin Litig.*, 857 F.2d 290, 313 (6th Cir. 1988), *cert. denied*,

*Hoffman v. Merrell Dow Pharms., Inc.*, 488 U.S. 1006 (1989)  (*citing* W. Page Keeton, et al.,

Prosser and Keeton on the Law of Torts § 36, at 220-21 (5th ed. 1984)).  The absence of a

private cause of action under the federal statute is important in considering whether a negligence

---

[11] 21 U.S.C.A. § 337 states:  "**(a)** Except as provided in subsection (b) of this section, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States. Subpoenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any proceeding under this section. **(b)(1)** A State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations, of section 341, 343(b) 343(c), 343(d), 343(e), 343(f), 343(g), 343(h), 343(i), 343(k), 343(q), or 343(r) of this title if the food that is the subject of the proceedings is located in the State.  **(2)** No proceeding may be commenced by a State under paragraph (1)--**(A)** before 30 days after the State has given notice to the Secretary that the State intends to bring such proceeding, **(B)** before 90 days after the State has given notice to the Secretary of such intent if the Secretary has, within such 30 days, commenced an informal or formal enforcement action pertaining to the food which would be the subject of such proceeding, or **(C)** if the Secretary is diligently prosecuting a proceeding in court pertaining to such food, has settled such proceeding, or has settled the informal or formal enforcement action pertaining to such food.  In any court proceeding described in subparagraph (C), a State may intervene as a matter of right."

*per se* action is available under state law. *Id.*; 21 U.S.C.A. § 337 (1992); *Baker v. Smith & Nephew Richards*, *supra*, 1999 WL 811334 at *21.

When Congress has decided not to provide a particular federal remedy, the Supreme Court states that the courts are not free to "supplement" that decision in a way that makes it "meaningless." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978); *Merrell Dow*, *supra*, 478 U.S. at 811 n.10. Allowing a FDCA-based state law negligence *per se* claim when the state does not impose analogous duties does just that. Even if one were, *arguendo*, to allow plaintiffs' FDCA-based negligence *per se* claims to stand, under D.C. law the most one could maintain is that defendants arguably breached a duty to the FDA to follow its administrative regime, which plaintiffs have no standing to bring.

Further extrapolation of what an alleged administrative breach to the FDA (or Institutional Review Board ("IRB")) caused is sheer speculation—based on further supposition as to what that the FDA or IRB would have or (according to plaintiffs) should have then done. Plaintiffs ask the Court to allow further guesswork on this initial speculation based on supposition—that the alleged breach by defendants of an administrative duty to the FDA or IRB would then theoretically cause the FDA/IRB to act, which—as the final step in this false syllogism—would then have caused Mrs. Kerris to act differently.[12]

This Court holds that the single most important inquiry as to whether to recognize a negligence *per se* claim based on the violation of a federal statute is whether Congress intended to create the private remedy sought by the plaintiffs. *325-343 E. 56th Street*, 906 F. Supp. at 683

---

[12] As Mrs. Kerris cannot provide evidence as to what she would have done or on what she relied, Am. Compl. ¶ 13; Proposed Sec. Am. Compl. ¶ 12, defendants maintain the plaintiffs' claim for lack of informed consent should be dismissed pursuant to, *inter alia*, *Blincoe v. Luessenhop*, 669 F. Supp. 513, 518 (D.D.C. 1987) and *Haven v. Randolph*, 342 F. Supp. 538, 544 (D.D.C. 1972), but that argument is not presented to the Court in this pleading.

(listing cases; dismissing negligence *per se* claim based on alleged violation of D.C. statute, finding no legislative intent to create a private cause of action); *see also Mylan Pharms, Inc. v. Thompson*, 268 F.3d 1323 (Fed. Cir. 2001) (dismissing private claim styled as declaratory judgment action as private attempt to enforce FDCA violations); ." *Baker v. Smith & Nephew Richards*, *supra*, 1999 WL 811334 at *21.

Permitting a negligence *per se* action predicated on alleged FDCA violations allows a private litigant to circumvent Congress's intent not to allow FDCA-based private rights of action by pleading an FDCA claim as a state law tort claim. Allowing plaintiffs' FDCA-based state law negligence *per se* claims suggests that any alleged violation of the FDCA is automatically actionable as a state law tort. "Permitting enforcement of the FDCA through common law negligence per se claims places a plaintiff in a position to act as a prosecutor when the FDA has declined to accept that role." *Baker v. Smith & Nephew Richards*, *supra*, 1999 WL 811334 at *20. This interpretation renders meaningless the congressional prohibition on private rights of action to enforce the FDCA. *Id.*; *Merrell Dow*, *supra*, 478 U.S. at 811 n.10.

The D.C. Circuit and the majority of courts recognize the importance of congressional intent, *325-343 E. 56th Street*, *supra*, and courts have refused to avoid *de facto* private FDCA enforcement for negligence *per se* claims because of this deference. *See In re Orthopedic Bone Screw Products*, 193 F.3d 781, 791 (3d Cir. 1999) (MDL Court overseeing thousands of plaintiffs bringing claims involving Class III device, *inter alia*, for FDCA-based, state law negligence *per se* claims, including violations of many of the FDCA sections brought here, and dismissing same); *Baker v. Smith & Nephew Richards*, *supra*, 1999 WL 811334 at *22; and cases cited throughout this brief. Plaintiffs' negligence *per se* claims run directly

counter to explicit congressional intent not to provide a private right of action for FDCA violations.

## V.    THE FDA IS ADVERSE TO PRIVATE ENFORCEMENT OF THE FDCA.

Congress gave the FDA discretion in choosing which violations of the FDCA to prosecute, providing:  "Nothing in this chapter shall be construed as requiring the Secretary to report for prosecution ... minor violations of this chapter whenever he believes that the public interest will be adequately served by a suitable written notice or warning."  21 U.S.C. § 336 (2000); *Cutler v. Hayes*, 818 F.2d 879, 892 (D.C. Cir. 1987) (FDA is not statutorily required to bring enforcement actions against a FDCA violator, but can choose to act when it wishes).

On January 24, 2006, the FDA issued a final rule governing the Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products.  71 Fed. Reg. 3922 (Jan. 24, 2006) (hereinafter, ''Final Rule'').  Though addressing issues of preemption and failure-to-warn claims, the FDA made clear its concern over state court actions based on alleged violations of the FDCA in the Preamble to the Final Rule:

> State law actions . . . threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs. State actions are not characterized by centralized expert evaluation of drug regulatory issues.  Instead, they encourage, and in fact require, lay judges and juries to second-guess the assessment of benefits versus risks of a specific drug to the general public—the central role of FDA—sometimes on behalf of a single individual or group of individuals.

*Id.* at 3935.  While courts may not give the FDA's Preamble the controlling *Chevron*[13] deference to find preemption, most courts agree that the FDA's Preamble serves as a body of experience and informed judgment to which courts and litigants may properly resort for guidance, if lacking

---

[13] *Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

the power to control, having the power to persuade.  *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944); *see also United States v. Mead Corp.,* 533 U.S. 218, 228 (2001).

Indisputably, the FDA never brought an action against defendants to enforce the FDCA, nor did it make any judgment that the use of Histoacryl® and/or Lipiodol® were unsafe or ineffective.  For example, if the FDA believed that Histoacryl® and/or Lipiodol® presented safety risks or effectiveness concerns, the FDA could have used its power to ban the device under 21 U.S.C. § 360f (1990).  The FDA could have issued a Safety Alert regarding Histoacryl® and/or Lipiodol®, defined by the FDA as:  "**Medical device safety alert:**  issued in situations where a medical device may present an unreasonable risk of substantial harm."  *See* http://www.fda.gov/oc/po/firmrecalls/recall_defin.html.  The FDA never issued a Safety Alert regarding Histoacryl® and/or Lipiodol®, nor did it ban Histoacryl® and/or Lipiodol®.[14]

Moreover, the FDA developed a guidance entitled "Coverage of Personal Importations," setting forth that agency's enforcement priorities with respect to the personal importation of unapproved new drugs or devices by individuals for their personal use and representing the FDA's thinking regarding the issues of personal importation, intended to provide operating guidance for FDA personnel.  *See* www.fda.gov/ora/import/traveler_alert.htm.  The guidance identifies circumstances in which FDA may consider exercising enforcement discretion and refrain from taking legal action against unapproved imported drugs that present circumstances:

---

[14] In contrast to FDA actions commenting on the safety or effectiveness of a drug or device, other FDA actions do not implicate a drug or device's safety or effectiveness.  For example, the FDA may issue an Import Alert, which is directed not at medical device users or patients, but to Customs and distributors that the FDA lists on an Import Alert, stating that the reason for its issuance is the failure of the distributor to go through its administrative procedures (lacking a filed 501(k) or approved PMA required for commercial distribution).

1) the intended use [of the drug] is unapproved and for a serious condition for which effective treatment may not be available domestically either through commercial or clinical means;

2) there is no known commercialization or promotion to persons residing in the U.S. by those involved in the distribution of the product at issue;

3) the product is considered not to represent an unreasonable risk;

and

4) the individual seeking to import the product affirms in writing that it is for the patient's own use (generally not more than a 3 month supply) and provides the name and address of the doctor licensed in the U.S. responsible for his or her treatment with the product . . .

*Id.*[15]

While the FDA's guidance is not a license for individuals to import unapproved drugs for personal use into the United States, nor for purposes of this pleading are defendants arguing that it applies to the current situation, but the Personal Use Importation Doctrine does represent the FDA's desire for discretion over and control of the regulatory requirements addressed by the FDCA and its regulations.  The FDCA gives the FDA exclusive authority to enforce the FDCA and to determine which violations of the statute merit addressing and which do not.  21 U.S.C.A. §§ 336, 337.

The Supreme Court recognizes that the FDA's discretion to decide not to pursue arguable violations is virtually absolute.  *Heckler v. Chaney*, 470 U.S. 821 (1985).  In *Heckler*, plaintiffs sought to force the FDA to enforce the misbranding and mislabeling section of the FDCA—the  same section at issue here—in reversing the lower court, the Court stated that "an agency decision **not to enforce** often involves a complicated of a number of factors which are

---

[15] Federal courts recognize the viability of the "Personal Use Importation Doctrine." *Sifre v. Roble*, 917 F. Supp. 133, 136-37 (D. Puerto Rico 1996).

peculiarly within its expertise [such as] . . . whether an enforcement action requested best fits the agency's overall policies . . ." 470 U.S. at 831 (emphasis added).

In this lawsuit, plaintiffs seek to overrule the FDA by bringing their own enforcement action, after the FDA did not act. Lawsuits brought by private plaintiffs seeking to enforce the FDCA through the doctrine of negligence *per se* invades the FDA's province of discretion in that there are a variety of ways (e.g., Safety Alert, Ban, no action, etc.) the FDA could have and may have determined was appropriate. Plaintiffs' FDCA-based negligence *per se* claims represent plaintiffs substituting their judgment for the FDA's: "[Plaintiffs'] position would require us to usurp [the FDA's] responsibility for interpreting and enforcing potentially ambiguous regulation." *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (citation omitted).

As the *Heckler* court stated, the agency's decision not to enforce often involves a complicated balancing of factors, peculiarly in the FDA's expertise. *Heckler*, 470 U.S. at 831. There are a myriad of reasons that the FDA may have decided not to act. It may have determined that clinical use by doctors (even if it did not know specifically about Dr. Watson) was covered by the Personal Use Doctrine. It may have decided that it did not wish to regulate the clinical care of patients. It may have determined that there was no safety risk in the clinical use of this device. There is no way of knowing why the FDA chose not to act. Plaintiffs' negligence *per se* claims for alleged FDCA violations supplant the FDA's discretionary role, interpreting the federal statute in such a way as to allow plaintiffs a basis for recovery.

## VI. PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES IS INVALID.

Less than a year ago, this Court again reiterated the fact that "punitive damages is a remedy and not a freestanding cause of action" and dismissed plaintiffs' claim for punitive

damages. *Gharib v. Wolf*, 518 F. Supp. 2d 50, 56 (D.D.C. 2007) (*citing Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 74 (D.D.C. 2000)). Plaintiffs' Count for Punitive Damages must be dismissed. Am. Compl. Count IX; Proposed Sec. Am. Compl. Count VI.[16]

## VII.   INFORMED CONSENT DOES NOT REQUIRE A DISCUSSION OF THE REGULATORY STATUS OF A DRUG OR DEVICE.

Though defendants contend that Dr. Watson did tell Karyn Kerris of the regulatory status of the devices to be used in her medical treatment, the Informed Consent doctrine does not require this information to be conveyed. Thus, allegations contained in the Amended Complaint and Second Amended Complaint regarding disclosure of the regulatory status of the devices cannot serve as the basis for liability and should be dismissed. Am. Compl. ¶¶ 11(k), 14-16. 20-22, 59(c), (e), (h), 61; Proposed Sec. Am. Compl. ¶¶ 10(k), 13-16, 18-21, 27(a)-(e), 28-32, 38(c), (e).

The Informed Consent doctrine was most recently delineated in *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 330 (D.C. 2007) (affirming dismissal of informed consent claim):

> We have stated that 'at a minimum, a physician must disclose the nature of the condition, the nature of the proposed treatment, any alternate treatment procedures, and the nature and degree of risks and benefits inherent in undergoing and in abstaining from the proposed treatment.'

(quoting *Crain v. Allison*, 443 A.2d 558, 562 (D.C. 1982). "In order to prevail in an action based on a theory of informed consent, the plaintiff must prove that if **he had been informed of the**

---

[16] Beyond being disfavored by the law, the Supreme Court holds that plaintiffs may not base a prayer for punitive damages for the purpose of punishing a defendant for allegations of harm caused to others. *Philip Morris USA v. Williams*, 127 S.Ct. 1057, 1066 (2007). Thus, plaintiffs' averments of speculative allegations regarding defendants' actions affecting others have no bearing and do not provide grounds for punitive damages. Am. Compl. ¶¶ 63-66; Proposed Sec. Am. Compl. ¶¶ 41-44.

**material risk,** he would not have consented to the procedure and that he had been injured as a result of submitting to the procedure." *Cleary v. Group Health Association*, 691 A.2d 148, 155 (D.C. 1997) (emphasis added).

The regulatory status of a drug or device is not an element of the required disclosure. A physician need not disclose a device's FDA classification to the patient in order to ensure that the patient has been fully informed regarding that procedure, regardless of whether the general policy of the FDCA is safety. *Southard*, 782 A.2d at 107.[17] The regulatory status of a device is not a material risk, complication or alternative inherent in a particular surgical procedure, required to be disclosed for informed consent – particularly, since unapproved does not mean that the device was risky or unsafe. *Id.*; *Hill*, 933 A.2d at 330; *Cleary*, 691 A.2d at 155; *Blazoski*, 787 A.2d at 913; *Klein v. Biscup*, 673 N.E. 2d 225, 231 (Ohio App. 1996) ("we conclude that failure to disclose FDA status does not raise a material issue of fact as to informed consent").

Moreover, plaintiffs may not argue that consent "should have been" more fulsome and judged under the standards of research performed pursuant to an IDE. Plaintiffs' Amended Complaint and Proposed Second Amended Complaint contain **no facts or allegations** asserting Mrs. Kerris was part of a research study to which the FDCA IDE regulations explicitly state they apply. *See* 45 C.F.R. § 46.101: "To What Does This Policy Apply?";[18] Am. Compl.; Proposed Sec. Am. Compl.

---

[17] Pennsylvania's state law on informed consent is virtually identical to D.C. law. Like D.C., Pennsylvania requires that "doctors advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation." *Id.* at 106 (quotation omitted).

[18] 45 C.F.R. § 46.101(a), in pertinent part states: "**this policy applies to all research** involving human subjects conducted, supported or otherwise subject to regulation by any federal department or agency **which takes appropriate administrative action to make the policy**

Congress further recognized that the FDCA does not address issues of clinical care:  The legislative history of the federal Food, Drug and Cosmetic Act reveals that Congress recognized that the act was "not intended as a medical practices act and [would] not interfere with the practice of the healing art . . . ."  S. Rep. No.36l, 74th Cong., 1st Sess. at 3 (1935).  Thus, plaintiffs cannot "make" the FDCA apply, merely by stating that the use of an unapproved device as "investigational" or "experimental."

> Merely because a device is deemed "investigational" for purposes of an IDE does not establish that the device is "experimental" or "investigational" for all medical purposes. . . .  [T]he prevailing standard of care may dictate the opposite conclusion.  **We therefore decline to subject those physicians who do not voluntarily participate in FDA clinical investigations to the purview of the FDA's requirements for such investigations.**

*Southard*, 781 A.2d at 108 (emphasis added).

The allegations on which plaintiffs base much of their claims for Lack of Consent and Breach of Fiduciary Duty—the devices' regulatory status—have no bearing on plaintiffs' damage claims—as liability cannot spring from the alleged nondisclosure of a device's regulatory status.  Am. Compl. Counts II, VII; Proposed Sec. Am. Compl. Counts II, V.  "[B]ecause the injured plaintiff was not participating in a clinical investigation, FDA regulations did not require LIJ to obtain his informed consent or to disclose the regulatory status of the pedicle screw system . . ."  *Sita v. Long Island Jewish-Hillside Medical Center*, 803 N.Y.S.2d 112 at *2 (N.Y.A.D. October 24, 2005) (Slip Op. 07949).

---

applicable to such research. **This includes research** conducted by federal civilian employees or military personnel, except that each department or agency head may adopt such procedural modifications as may be appropriate from an administrative standpoint. **It also includes research** conducted, supported, or otherwise subject to regulation by the federal government outside the United States."  (emphasis added); *see also* 45 C.F.R. § 46.102(d) (definition of research); 45 C.F.R. § 56.102(c) (definition of clinical investigation synonymous with research).

Under the Informed Consent doctrine, defendants submit that averments that have no relevance to liability (as well as the inapplicability of the administrative requirements of the FDCA) should be dismissed. Am. Compl. ¶¶ 11(k), 14-16. 20-22, 59(c), (e), (h), 61; Proposed Sec. Am. Compl. ¶¶ 10(k), 13-16, 18-21, 27(a)-(e), 28-32, 38(c), (e); *see also* Sections I-V, *infra*.

## VIII.   GEORGETOWN UNIVERSITY HOSPITAL DOES NOT HAVE DIRECT LIABILITY FOR ANY ALLEGED FAILURE TO WARN.

A hospital cannot be directly held liable for failure to provide informed consent. The treating physician is charged with the responsibility of informing the patient: "Our case law on lack of informed consent recognizes the "**duty of a physician to inform the patient** . . ." *Miller-McGee*, 920 A.2d 439 (emphasis added). It is not the hospital's duty, but the doctor's. "In order to make an intelligent and informed choice, a patient must first obtain the facts necessary to make the decision **from the physician**." *Crain*, 443 A.2d at 561 (emphasis added).

A hospital cannot be held directly responsible for any allegation regarding an alleged failure adequately to warn. *Haven v. Randolph*, 342 F. Supp 538 (D.D.C. 1972) A hospital's indirect liability is determined under agency principles. *Id.* In this pleading, defendants do not challenge the indirect liability plaintiffs may or may not be able to prove regarding lack of informed consent and breach of fiduciary duty; however, plaintiffs seek to levy direct liability on defendant Georgetown University by holding Georgetown University Hospital singularly responsible for the allegations of failure to obtain informed consent. Am. Compl. ¶¶ 14-21, 59 and all of its subparagraphs; Proposed Sec. Am. Compl. ¶¶ 13-21, 38 and all of its subparagraphs.

An imposition of direct liability for allegations of lack of informed consent is not allowed. *Sherwood v. Danbury Hosp.*, 896 A.2d 777 (Conn. 2006); *Kelly v. Methodist Hospital*,

664 A.2d 148 (Pa. 1995); *Long v. Jaszczak*, 688 N.W.2d 173, 181 (N.D. 2004) (majority of

courts do not impose direct liability for lack of informed consent on hospitals) (listing cases);

*Auler v. Van Natta*, 686 N.E.2d 172 (Ind. App. 1997) (hospital has no independent duty to obtain

patient's informed consent); *Kelley v. Kitahama*, 675 So. 2d 1181 (La. App. 5 Cir. 1996) (same);

*Boney v. Mother Frances Hosp.*, 880 S.W. 2d 140 (Tex. App. 1994) (same);  *Newell v. Trident*

*Medical Center*, 597 S.E.2d 776 (S.C. 2004); *Bynum v. Magno*, 125 F.Supp.2d 1249 (D. Hawaii

2000).

* * * *

District of Columbia law does not recognize FDCA-based negligence *per se*

claims for alleged FDCA violations brought here.  The Supreme Court does not allow state law

claims based solely on federal statutes that create obligations under federal law..  Negligence *per*

*se* is rooted in deference to the legislature.  It is inescapable that Congress expressly entrusted all

power to enforce the FDCA to the FDA.  Beyond the acknowledgement by courts around the

nation that deference to congressional intent and the FDA precludes FDCA-based negligence *per*

*se* claims when no analogous duties are set forth under state law, FDCA-based state law

negligence *per se* claims are also barred by the unavoidable fact that the administrative standards

set forth in the FDCA do not exist under D.C. law and are held by D.C. courts and courts around

the nation not to contain a standard of care.  Each of these independent grounds prohibits

plaintiffs' FDCA-based negligence *per se* claims.

A claim for Punitive Damages may not be made.  The Informed Consent law also

prevents any alleged liability for alleged omission of statements regarding a device's regulatory

status.  A hospital cannot be held directly liable for Lack of Informed Consent.

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, defendants respectfully request the Court dismiss with prejudice plaintiffs' negligence *per se* claims, Am. Compl. Counts X-XII; Proposed Sec. Am. Compl. Counts VI-IX, as well as all allegations regarding the regulatory status of the device, as no liability can stem from these averments.  Am. Compl. ¶¶ 5, 11(c)-(d), (f), (h)-(l), 13-16, 20-22, 56, 58, 59(c), (e), (h), 61; Proposed Sec. Am. Compl. ¶¶ 4, 10(c)-(d), (f), (h)-(l), 13-15, 19-21, 24, 27 and all of its subparagraphs, 28-32, 36-37, 38(c), (e), (h), 39.

Defendants further request that plaintiffs' claim for Punitive Damages be dismissed with prejudice, as punitive damages are not a freestanding claim.  Am. Compl. Count IX; Proposed Sec. Am. Compl. Count VI.

Defendants further respectfully request the allegations regarding defendant Georgetown University's alleged direct liability for lack of informed consent, Am. Compl. ¶¶ 14-21, 59 and all of its subparagraphs; Proposed Sec. Am. Compl. ¶¶ 13-21, 38 and all of its subparagraphs, and the liability of defendants for alleged failure to inform Mrs. Kerris of the medical devices' regulatory status used in her medical treatment be dismissed.  Am. Compl. ¶¶ 11(k), 14-16. 20-22, 59(c), (e), (h), 61; Proposed Sec. Am. Compl. ¶¶ 10(k), 13-16, 18-21, 27(a)-(e), 28-32, 38(c), (e).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated:  February 14, 2008          By:     /s/ Megan E. Hills
                                           David C. Kiernan (D.C. Bar # 413806
                                           Megan E. Hills (D.C. Bar # 437340)
                                           Zoe C. Scharff (D.C. Bar # 490482)

                                           725 Twelfth Street, N.W.
                                           Washington, D.C. 20005

28

(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served by hand-delivery on the 14th day of February, 2008 on the forgoing:

Anthony Newman, Esquire
Ernest McIntosh, Esquire
Wendy Wyeth, Esquire
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

and

Andrew Greenwald, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

/s/ Megan E. Hills
Megan E. Hills

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

———————————————————————
                                                    )
**Felice P. Iacangelo and Cicily Iacangelo,**       )
**As Guardian of the Person and Property of**       )
**KARYN A. KERRIS,**                                )
                                                    )
                    **Plaintiffs,**                 )
                                                    )
**v.**                                              )   **Civ. Act. No. 1:05CV02086 (PLF)**
                                                    )
**Georgetown University Hospital,**                 )   **Judge Paul L. Friedman**
**GEORGETOWN UNIVERSITY, t/a**                      )
**Georgetown University, and**                      )
**VANCE E. WATSON, M.D.,**                          )
                                                    )
                    **Defendants.**                 )
———————————————————————

**<u>ORDER</u>**

   Upon consideration of Defendants Georgetown University and Vance E. Watson,

M.D.'s Motion for Judgment on the Pleadings of Plaintiffs Felice and Cicily Iacangelo's

Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(c), and/or Motion to

Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Plaintiffs Felice and Cicily

Iacangelo's Proposed Second Amended Complaint, ,any Opposition thereto, and any Reply, it is

this day,

   **ORDERED**, Defendants' Motion is **GRANTED**:  Counts IX, X, XI, and XII of

Plaintiffs Felice and Cicily Iacangelo's Amended Complaint and/or Counts VI, VII, VIII, and IX

of Plaintiffs' Proposed Second Amended Complaint are **DISMISSED WITH PREJUDICE**;

   **FURTHER ORDERED**, paragraphs 5, 11(c)-(d), (f), (h)-(l), 13-22, 56, 58, 59

and all of its subparagraphs, and 61 of Plaintiffs' Amended Complaint and/or paragraphs 4,

10(c)-(d), (f), (h)-(l), 13-21, 24, 27 and all of its subparagraphs, 28-32, 36-37, 38 and all of its

subparagraphs, and 39 of Plaintiffs' Proposed Second Amended Complaint are **DISMISSED**

**WITH PREJUDICE**.

So ordered, this _____ day of _____, 2008.

_____
The Honorable Paul L. Friedman
  Judge, United States District Court
  for the District of Columbia

Copies to:

David C. Kiernan
Megan E. Hills
Zoe C. Scharff
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

Anthony Newman, Esquire
Ernest McIntosh, Esquire
Wendy Wyeth, Esquire
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814


Andrew Greenwald, Esquire
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel