IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE P. IACANGELO**, *et al*. | : | |
| | : | |
| | : | Civil No. 1:05CV02086 |
| Plaintiffs, | : | |
| | : | Judge Paul L. Friedman |
| vs. | : | |
| | : | Magistrate Judge Alan Kay |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' EXPERT REPORTS
FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 26(a)(2)(B),
CUMULATIVE, AND PRESENTING IMPERMISSIBLE LEGAL OPINIONS**

By leave of Court, Plaintiffs files the following Surreply to the issues raised in Defendants' Reply. While many of the issues raised in the Reply were adequately responded to by Plaintiffs in their prior Opposition, this Surreply will briefly address the following additional issues: a) Plaintiffs' experts are required to explain the applicability of statutes when a statute is relied upon as establishing a standard of care; b) Plaintiffs must proffer experts who acted as legal counsel to testify to the negligent conduct of Sheila Zimmet, Esq., who acted as legal counsel for Georgetown University; and  c) This is a vastly complicated case requires a myriad of experts.

    **A.**    **Plaintiffs' experts are required to explain the applicability of statutes when statutes are relied upon in establishing the standard of care.**

While the defense enjoys macerating the ruling in the District of Columbia Court of Appeals in *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567 (D.C. 1996), and touts an unpublished Order at the local trial level as binding precedent, *McNeil* can not be ignored.

This jurisdiction has required expert testimony to explain the applicability of statutes when the statute is relied upon to establish a standard of care. *McNeil,* 686 A.2d at 583 (DC 1996). In fact, the "failure to receive expert testimony as to the interpretation, and consequent admissibility and application, of the regulation, and the instruction that its violation would constitute negligence *per se* required reversal." Id. (citing *Hecht Co. v.. McLaughlin,* 214 F.2d 212, 216 (1954)).

With the above being the law of the District of Columbia, how can the defense argue that *McNeil* "does not stand for the proposition that paid legal opinions are allowed."(Reply p.7). Defense argues that [t]his Court (and this judge) strikes legal opinions that purport to interpret the law" so defendant applies the philosophy of *Halcomb*, a civil rights case, to the present case where the statutes either set the standard of care or embody it and concludes that they are impermissible. (Reply 7) *Halcomb v. WMATA,* ---- F.Supp. 2d ----, 2007 WL 4270734, *2 (D.D.C. 2007). *Halcomb*'s reasoning is not applicable to a negligence *per se* case. In a case involving complicated statutes, such as this case and *McNeil*, expert testimony, whether paid or not, must be presented on the nature of the statutes and the violations thereof.

Therefore, plaintiffs' medical experts created reports demonstrating that in their opinions defendants' behavior that was is not in conformity with the national standard of care for physicians and that defendants violated the national standard of care, which was embodied in the statutes.[1] In addition, Plaintiffs non-medical experts' reports demonstrate that in their opinions,

---

[1] These issues include claims that:
 a) Georgetown and Dr. Watson violated the national standard of care by receiving unapproved, untested, illegal Class III devices, violations embodied in 21USC §331(c). (receipt of any adulterated or misbranded device prohibited);
 b) Georgetown and Dr. Watson violated the national standard of care by injecting unapproved, untested, illegal Class III devices, which had no valid approval or indication in the U.S.(The only indication was a foreign

defendants' behavior was not in conformity with the national standard of care and that the national standard of care was embodied in the statutes that defendants violated.(See above).[2]

The jury must have the benefit of Plaintiffs' experts' opinions regarding the statutes. In many malpractice cases, the jury is forced to decide on the national standard of care without the benefit of a written document setting forth the national standard. In this case, however, there is a document; it is the FDCA. To hide this from the jury and have plaintiffs' experts ignore the statutes may well be defense's dream, but it would create reversible error. *McNeil*, 686 A.2d at 583 (D.C. 1996). Equally baseless is Defendants' attempts to "pigeon hole" any opinion by any expert as "legal" simply because it involves a statute or a regulation.

**B.   Plaintiffs must proffer experts who acted as legal counsel to testify to the negligent conduct of Sheila Zimmet, Esq., counsel for the University.**

The defense attempts to brush plaintiffs' need for experts, who are legal counsel, under the carpet by claiming that this is "a medical malpractice action, not a legal malpractice action" (Reply n9). The mere fact that the issues involve the actions and inactions of a negligent

---

manufacturer's package insert stating that the device could only be used topically, and was not to be placed in blood vessels or on the surface of the brain) into the brain of patients, which is embodied in 21 USC §331(b)(misbranding of a device prohibited);
  c) Georgetown and Dr. Watson violated the national standard of care by adulterating (mixing) one unapproved, untested, illegal Class III device, with another unapproved, untested, illegal Class III device, which was also embodied in 21 USC §331(b) (adulteration of a device prohibited); and
  d) Georgetown and Dr. Watson, violated the national standard of care by introducing an unapproved, untested, illegal Class III device into the United States and used it in patients, which is embodied in 21 USC §331(a) (introduction of unapproved or misbranded devices prohibited).

[2] a) no employee of Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should allow the use of unapproved, untested, illegal Class III devices, which is in conformity with 21 USC §331(a) et seq.;
  b) no administrative person involved with patient care at Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should be ignorant of the FDCA act and its prohibitions;
  c) no employee of Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should facilitate the receipt of unapproved, untested, illegal Class III devices in conformity with 21 USC §331(c)

employee who happens to be counsel with a law degree (as opposed to an administrator with a masters in public health, or a corporate officer with a doctor of philosophy) does not change the nature of the case or alter plaintiffs' burden of proof. This is a medical malpractice case, but it involves, *inter alia*, the actions and inactions of an attorney, Sheila Zimmet, Esq., in that medical care. Plaintiffs are not "changing actions" (*Id.*) nor do they wish to do so. The negligent actions of Georgetown's employees and/or agents, including employees and/or agents other than Dr. Watson, have always been, and continue to be, at issue (See Amended Complaint Counts I-V). Thus, plaintiffs are required to proffer competent experts who can testify to what a reasonable attorney would do in like or similar circumstances. In fact, "there is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards." *Halcomb*, 2007 WL 4270734 at *2 (D.D.C. 2007). There is no shroud protecting attorneys from claims of negligence in a medical malpractice case where their acts proximately cause injuries to a plaintiff.

      **C.**      **This Complicated Case Requires a Myriad of Experts.**

As far as the number of experts is concerned, the defense is again attempting to oversimplify this case. (Defendants erroneously argue that "[t]here is one issue here - whether Dr. Watson's use of unapproved devices in the clinical care of Mrs. Kerris violated the standard of care." (Reply p.6)). This argument might be persuasive if it were so, but it is not.[3] Even the

---

[3] Defendants have not always argued that the case was so simple:
    in reference to Paragraph 11(o) of the Amended Complaint states that "Plaintiffs may also rely on res ipsa loquitur." Defendants assert that this paragraph should be stricken because the doctrine of res ipsa loquitur is not applicable to a complex medical malpractice case.
*Iacangelo v. Georgetown University*, 2007 WL 915224, *4 (D.D.C.,2007).

allegations against Dr. Watson for his negligence are multi-fold. They include medical procedural violations of the national standard of care by: attempting multiple embolizations without a chance of cure; embolizing an AVM that was too large to be embolized; deciding to risk neurologic devastation of the patient even though there was no hope of reducing symptoms; and treating an AVM that should have been left alone. They also include issues as to: whether Dr. Watson's comments on the success rate of his procedure constituted a warranty; whether he negligently failed to obtain informed consent for a procedure that was unlikely to produce any benefit but would probably neurologically compromise the patient; whether he negligently used a Class III unapproved device without IRB permission; and, of course, whether he violated a host of FDCA regulations.

      This case involves several issues of liability against Georgetown University and its employees and/or agents, including Sheila Zimmet, Esq. Whether they: were negligent in allowing the use of Histoacryl in patients at the Hospital when it had not been proven to be safe or effective (Class III); were negligent in allowing Dr. Watson to use Histoacryl without FDA permission; were negligent in allowing Dr. Watson to use an illegal device for a purpose that the manufacturer contraindicated; were negligent in allowing Dr. Watson to use devices that had been detained by customs (pursuant to an Import Alert) causing bad batches and premature hardening, etc., (Zimmet's notes dated 9/21/98); and were grossly negligent in allowing Dr. Watson to create false prescription written to a "company" (which was actually a private home in Canada) for an illegal Class III device.

      There are also issues regarding the inactions of the Georgetown University Institutional Review Board (IRB). Specifically, whether Georgetown University's IRB violated the national

standard or care by allowing patients to be treated with Class III devices that had been detained by U.S. Customs, shipped in bad batches, untested for levels of degradation, and was being used in a manner contraindicated by the manufacturer, without requiring full IRB review and without generating an IRB approved informed consent signed by the patient.

There are also claims of gross negligence and wanton misconduct by defendants. These acts include reckless violations of multiple statutes, fraudulent procurement of an unapproved devices, creating subterfuges to allow devices to slip though U.S. Customs (so called "letter of need"), fraudulent prescriptions for illegal devices, use of devices in a manner directly contraindicated by the manufacturer, use of a device for which delays in shipment created great safety concerns for the patients receiving the device.[4]

In addition, the trial of this case will involve expert testimony regarding Ms. Kerris' last ten years of medical care since her first embolic procedure.  It will include experts testifying to her rehabilitation, surgeries for feeding tubes and a neurosurgical shunt, medication history, hospitalizations and her need for around- the-clock care.  In a case of this magnitude, it is no surprise that multiple experts are needed.  The attempt to limit the number of plaintiffs' experts is simply an attempt to prejudice plaintiffs' case.[5]

---

[4] It should be noted that even if the Court, *arguendo*, forbid all of plaintiffs' experts to testify to any violations of any statutes, allowing the jury to flounder and speculate on its own as to the statutes application and whether they represented the standard of care, such a ruling would still not eliminate the testimony of plaintiffs' experts, including plaintiffs' expert lawyers, as to the other issues addressed above.

[5] It should be noted that this case will be defended by a number of experts.  The defense will surely call to the stand their employees, Dr. Watson and Sheila Zimmet, Esq.  To support their two employees' behavior, the defense will have to call at least one expert in interventional neuro-radiology and at least one expert legal counsel, they may also call another expert (or employee of the hopsital) to defend Ms. Zimmet's actions when she was acting as counsel for the IRB.  The defense will then have presented four (or five) experts to rebut issues on liability, but plaintiffs would be limited to only one interventionalist and *no* expert to testify regarding the negligence of Sheila Zimmet, Esq. if defendants' motion is granted.

All of this is just another thread in the fabric of the defense's attempt to either prejudice the plaintiffs or prolong this litigation through the overuse of motions practice.[6] In any event, plaintiffs should be allowed to present the expert testimony that is required for their proof. As demonstrated in their Opposition, each of plaintiffs' experts has a particular area of expertise in this extremely complicated technical (medical) and factual case. Further, explanations of complicated, multi-tiered FDCA statutes are vital to plaintiffs' claims of *negligence per se* and, at a minimum, are evidence of negligence requiring expert testimony.[7] Striking all of plaintiffs' experts' opinions simply because they mention statutes would prejudice plaintiffs' proof. Additionally, striking all of plaintiffs' legal experts simply because they are attorneys would leave plaintiffs without a single expert to testify to multiple breaches of professional duty by Sheila Zimmet, Esq., then assistant counsel for defendant Georgetown University.

The only solution to reducing the number of experts offered by Plaintiffs in presenting their case would be for the Court to hold that, as a matter of law, Defendants violated the FDCA statutes and that the statutes set forth the minimal applicable national standard of care. See *McNeil*, 686 A.2d at 581 ("a trial judge must examine each law to determine first, whether it in fact established a standard of care and if so, whether it could be reasonably understood by the

---

[6] It is interesting to note that the defense first argues that plaintiffs should only be allowed one expert on FDA regulations but quickly adds that, "pending determination on Defendants's motion to strike such testimony entirely, then the defense states, "[t]he Court should strike all of Plaintiffs' designated experts....[but] [d]efendants have not yet requested that." (Reply p.5) While any such subsequent motion is likely to fail, why would the defense file these mere fragments of the global motion, if the defense really believes that the matter could be resolved matter by a single motion? Whatever the reason, it results in delay, more bites at the apple by the defendants, and more billing (allegedly an issue to the defendants). It also overloads both the Court and plaintiffs' counsel's calendar (as seen by defendants' recent motion to dismiss based on the identical issues already adjudicated, i.e., negligence *per se* and lack of informed consent)

[7] If mention of the statute was not allowed there would be no place for Standardized Civil Jury Instruction 5-9 Violation of Regulation/Statute - Negligence Per Se and 5-10 Violation of Regulation/Statute - Evidence of Negligence.

jury without expert testimony or guidance by the court.") In such a case, there would be no requirement for Plaintiffs to prove any elements of negligence *per se* to a jury. Short of that measure, Plaintiffs must produce experts to sustain their burden.

Further to end the possibility of an endless discovery, and a barrage of additional discovery related motions, without any forward progress toward trial, plaintiffs ask the Court for assistance in setting a Pretrial Hearing and Trial Date at the February 27, 2008 hearing.[8]

                Respectfully submitted,

                NEWMAN, MCINTOSH & HENNESSEY, LLP.

By:   /s/ Anthony G. Newman
       Anthony G. Newman
       7315 Wisconsin Ave., Suite 700E
       Bethesda, Maryland 20814
       301-654-3400
       Attorney for the Plaintiffs

---

[8] Additionally, Defendants repeatedly assert that they have incurred excessive legal fees. Plaintiffs respectfully request that the Court order Defendants to produce all billings to Georgetown and/or Dr. Watson so that this issue of excessive legal fees can be thoroughly examined.

## CERTIFICATE OF SERVICE

      Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Plaintiffs' Surreply to Defendants' Reply In Support of Motion to Strike Plaintiffs' Expert Reports For Failure to Comply With Fed.R.Civ.P. 26(a)(2)(B), Cumulative, and Presenting Impermissible Legal Opinions was served via electronic filing on the Court's CM/ECF website on February 20, 2008 to:

Megan E. Hills, Esq.
Zoe Scharff, Esq.
David Kiernan, Esq.
Williams & Connelly, LLP
725 Twelfth Street, NW
Washington, D.C.  20005

                                            /s/ Anthony G. Newman
                                            Anthony G. Newman