UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | Civ. Act. No. 1:05CV02086 (PLF/AK) <br><br> Judge Paul L. Friedman <br><br> Magistrate Judge Alan Kay |

**DEFENDANTS'[1] RESPONSE TO PLAINTIFFS' SUR-REPLY
IN SUPPORT OF MOTION TO STRIKE EXPERT REPORTS
FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 26(a)(2)(B),
CUMULATIVE, AND PRESENTING IMPERMISSIBLE LEGAL OPINIONS**

The Federal Rules of Civil Procedure and Evidence, as well as precedent, prohibit a party from presenting multiple experts on the same issues, expert testimony on legal conclusions, the result a jury should reach, and the state of mind or intent of a party. As shown by Defendants, Plaintiffs' experts are duplicative, cumulative, and impermissible. Plaintiffs' experts should be culled at this juncture to prevent a meaningless waste of resources.[2]

---

[1] "Defendants" refers collectively to defendants Georgetown University (individually, "GU") and Vance E. Watson, M.D. (individually, "Dr. Watson"). "Plaintiffs" refers collectively to plaintiffs Felice and Cicily Iacangelo. "Fed. R. Civ. P." refers to the Federal Rules of Civil Procedure and "F.R.E." refers to the Federal Rules of Evidence.

[2] The added expense and delay of Plaintiffs' piecemeal production of expert information or data in violation of Fed. R. Civ. P. 26(a)(2)(B) (now more than three months late with no indication when the required material will be provided), designation of thirteen (13) experts needing to be deposed, and violations of the federal discovery rules, particularly as to Dr. Margulies, is self-evident, see Defendants' Emergency Motion to Strike Experts, filed January 15, 2008, and

I.  **Repetition of the Same Expert Opinion is Prohibited.**

Plaintiffs are not allowed to call multiple experts to repeat the same opinion. Regardless of the characterization Plaintiffs choose to give their case ("complex"),[3] the Federal Rules and precedent proscribe the repetition of expert testimony. Five (5) medical experts may not repeat virtually the same opinion that Defendants were negligent in treating Karyn A. Kerris's ("Mrs. Kerris") arteriovenous malformation ("AVM") with embolization because it was too large. Ten (10) experts may not repeat the same opinion that Defendants were negligent in allegedly violating requirements of the Federal Food, Drug and Cosmetic Act.[4]

Rephrasing the basic claim that Dr. Watson was negligent for embolizing Mrs. Kerris's AVM because it was not amenable to treatment because it was too large reveals that there are no "differences" or "multi-fold" allegations of negligence.[5] Sur-reply at 5. Similarly,

---

Defendants' Reply in support of same, filed February 11, 2008, at 4 & 4 n.5; therefore, Plaintiffs have no basis for their request for Defendants' legal bills. Plaintiffs' Surreply, filed February 20, 2008, at 8, fn. 8 ("Sur-reply").

[3] Sur-reply at 4.

[4] Hereinafter, "FDCA," 21 U.S.C. §§ 331 et seq., including the Medical Device Amendments, 21 U.S.C. §§ 360 et seq.

[5] *See* Dr. Debrun Report at 1 ("Karyn Kerris had a very large brain AVM .... My opinion is that this bilateral AVM was beyond the possibility of safe and efficient result by embolization. It was a contraindication to any type of embolization"); Dr. Harris Report at 2-3 ("[Mrs. Kerris] had no hemorrhage from her AVM as seen on imaging studies.... For Ms. Kerris there should have been more concern than the options she was presented since there is a higher risk for invasive management than there is for the natural history of untreated AVM patients."); Dr. Latchaw Report at 1 ("the care given to Ms. Kerris by Dr. Watson was below the national standard of care for the following reasons: the location and the size of the lesion, the number of embolization procedures that would have been required to change its size and thus the high risk of potential complications, the fact that all of this would be performed in a patient who had never bled ... should have never been performed ...." ); Dr. Margulies Report at 3, 6-7 (On August 31, 1998, Mrs. Kerris underwent a cerebral arteriogram which revealed a high flow 6-7cm [sic] bithalamic AVM .... Serious neurologic disability ... is a known complication for repeated embolizations .... To expose Mrs. Kerris to such a risk requires medical justification. It is unclear what that justification was in this case.... The marked deterioration of Mrs. Kerris' neurologic status ... was ... *caused* by the three embolizations.") (italics in original); Dr.

2

Plaintiffs' ten (10) designated experts rely, cite, or state the same FDCA requirements (embodied in the matching statutes and regulations) and opine violation of them as grounds for negligence.[6]

---

Peerless Report at 1-2 ("It is my opinion that the care given to Karyn Kerris by Dr. Watson fell below the accepted standard for the following reasons. . . . [B]ecause of its size and location was not amenable to any of the available treatments . . . . The decision to embark on this treatment plan by Dr. Watson was negligent."). Expert Reports from Drs. Debrun, Harris, Latchaw, Margulies, and Peerless, at tabs 2, 4, 7, 10-11, respectively, of *Appendix*, provided to the Court with Defendants' Motion to Strike, filed January 15, 2008.

[6] Mr. Damaska Report at 1 ("Georgetown University and Vance Watson, M.D. violated the national standard of care by violating the following statutes: [listing FDCA sections]"); Dr. Debrun Report at 1 ("The use of NBCA and Lipiodol in the treatment of brain AVM's had to be approved by the Institutional Review Board at Georgetown University and under an IDE from the FDA. Short of those two permissions, the use of NBCA mixed with Lipiodol is below [sic] national standard of care."); Ms. Gabis, Esq. Report at 1-2 ("It is my opinion to a reasonable degree of **legal certainty** that Ms. Zimmet . . . agent of Georgetown University responsible for determining whether the use of the device known as Histoacryl by Dr. Watson in treating Karyn Kerris required an investigational device exemption ("IDE") and approval of the Georgetown University Institutional Review Board ("IRB"), failed to conform to the national standard of care . . . . Had she [Ms. Zimmet] exercised reasonable diligence, Ms. Zimmet would have determined that Dr. Watson's use of histoacryl required an IDE and IRB approval.") (emphasis added); Dr. Harris Report at 2 ("My opinion with reasonable medical certainty is that Georgetown University Hospital, et al, failed a national standard of care in their duties to Karyn Kerris. Those failures were directly and causally related to the injuries she sustained. . . . [Histoacryl] is classified as a Class III device permitted to be used otherwise only by FDA exception [sic] approval (IDE) and at that time had no PMA nor IDE."); Mr. Kamm, Esq. Report at 1 ("[U]se of an illegal device in violation of the federal law cannot in any manner be construed as meeting the National Standard of Care."); Dr. Kaufman Report at 2 ("It should not have been used; if it was to be used at all, it would have to be given an IDE by the FDA and go through a Georgetown Institutional Review Board . . . and a very specific patient informed consent."); Dr. Latchaw Report at 2 ("Both Dr. Watson and Georgetown University Medical Center violated not only the national standard of care, but also the FDCA statues [sic] by using the device without an IDE and without institutional IRB approval."); Mr. Sherwin, Esq. 9/11/07 Report at 1 (""[I]t is my opinion to a reasonable degree of **legal probability** that Georgetown University violated the national standard of care, as well as its own IRB Policies and Procedures, by allowing Dr. Watson to use the unapproved device, Histoacryl without IRB review.") (emphasis added); Dr. Peerless Report at 2 ("[T]he choice and use of this particular liquid adhesive (NBCA) was unacceptable in that this substance was not FDA approved and nor was it approved by the Georgetown University Institutional Review Board under an appropriate IDE."); Dr. Van Woert Report at 1 ("It was a violation of the national standard of care for Dr. Watson to treat patients with Histoacryl and Lipiodol without an IDE, IRB approval and an approved detailed informed consent."). Expert Reports from Mr. Damaska, Dr. Debrun, Ms. Gabis, Esq., Dr. Harris, Mr. Kamm, Esq., Drs. Kaufman and Latchaw, Mr. Sherwin, Esq., and Dr. Van Woert, at tabs 1-7, 11-13, respectively, of *Appendix*, provided to the Court with Defendants' Motion to Strike, filed January 15, 2008.

Because "expert testimony can be both powerful and quite misleading . . . . [T]he judge . . . exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 578, 595 (1993) (quotation omitted). This Court limits expert testimony when it is similar. *Washington v. Greenfield*, 1986 WL 15758 at *2 (D.D.C. Oct. 15, 1986) (unreported) ("[t]he real issue here is whether the testimony of four experts would be cumulative or whether each expert will add to the evidence presented at trial in a meaningful way.") (limiting number of experts to two from four); *see also Parker v. Mills*, CIV A. No. 86-0029-OG, 1988 WL 71464 (D.D.C. June 23, 1988) (unreported) (limiting number of experts to one from three), as do other federal courts. *Thorndike v. DaimlerChrysler Corp.*, 266 F. Supp.2d 172, 185 (D. Me. 2003) (excluding expert's opinions which duplicated other experts' conclusions).[7] Plaintiffs should be limited to no more than one or two experts on the medical issues[8] and no more than one or two experts on the FDCA issues.[9]

## II.  Federal Law Prohibits Expert Testimony on Legal Issues.

In federal court, admission of expert scientific and nonscientific testimony is governed by *Daubert*, 509 U.S. 579 (1993). *Kumho v. Carmichael*, 526 U.S. 137 (1999).[10] All

---

[7] Plaintiffs sued Dr. Watson, choosing to make him a party; therefore, Plaintiffs' argument that Defendants have an "extra" expert because Defendant Dr. Watson will testify as a fact witness is absurd. Sur-reply at 6 fn. 5.

[8] With one of Plaintiffs' medical experts being Dr. Debrun as the expense of preparing for and taking his deposition in Paris, France—the first causation expert for whom Plaintiffs provided deposition dates and the only location given—was already incurred by Defendants.

[9] If any legal testimony is allowed, Defendants request that the Court require Plaintiffs to select their one or two FDCA experts from Plaintiffs' designated three FDCA experts, Mr. Damaska and Drs. Kaufman and Van Woert—the FDCA experts for whom Plaintiffs first provided deposition dates—as Defendants have already incurred the expense of preparing for and deposing them.

[10] The admissibility of expert testimony in diversity cases is governed by federal law. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005); *Bryte ex rel. Bryte v. American*

4

federal circuits prohibit the admission of expert testimony containing legal conclusions, applicable principles of law, or telling the jury the result to reach.[11] District of Columbia courts are not governed by *Daubert* or *Kumho*, using instead the test articulated in *Dyas v. United States*, 376 A.2d 827 (D.C. 1977), or *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), to determine the admissibility of expert testimony. *Daubert* replaced these tests for federal courts. *Daubert*, 509 U.S. at 587; *Kumho, supra*. Assuming that **first** the determination is made as to whether each FDCA provision sought to be admitted states a standard of care (D.C. Superior Court ruled they do not),[12] which *McNeil Pharmaceutical, Inc. v. Hawkins*, 686 A.2d 567, 581 (D.C. 1996), requires, *McNeil* is inapplicable to the admission of expert testimony here as its test was replaced. *Daubert*, 509 U.S. at 587; *Kumho, supra*.

There is no justification for this federal Court to reject the black letter law excluding legal testimony adopted by this and every other federal circuit, *see* fn.11, to adopt *McNeil* (Plaintiffs' sole argument, Sur-reply at 2) when the test used in *McNeil* for the admission of expert testimony has been explicitly rejected by the Supreme Court. *Id.*; *see also, Safeway, Inc. v. Sugarloaf Partnership, LLC*, 423 F. Supp. 2d 531 (D. Md. 2006) ("Evidence

---

*Household, Inc.*, 429 F.3d 469, 476 (4th Cir. 2005); *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).

[11] *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-101 (1st Cir. 1997) (listing cases); *Dibella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005); *Berkeley Inv. Group, Inc. v. Colkitt*, 455 F.3d 195, 217-18 (3d Cir. 2006); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368-69 (4th Cir. 1986), *aff'd in pertinent part, rev'd on grounds of how liability under Securities Act §12 determined, Pinker v. Dahl*, 486 U.S. 622 (1988); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985); *Good Shepherd Manor Foundation v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *Southern Pine Helicopters v. Phoenix Aviation Mngrs.*, 320 F.3d 838, 841-42 (8th Cir. 2003); *Elsayed v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063, 1065 n. 10 (9th Cir. 2002); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *Burkhardt v. Washington Metro. Area Transit Auth.*, 112 F.2d 1207, 1213-14 (D.C. Cir. 1997).

[12] *See* fn. 14, *infra*.

supplied by experts as to legal conclusions is not admissible, nor indeed evidence at all."); *In Re: Ocean Bank*, 481 F. Supp. 2d 892, 898, 901 (N.D. Ill. 2007) ("this Court is bound by [relevant] precedent and not by the legal opinions of a non-lawyer retained expert witness.").

Defendants note that the inappropriate legal testimony sought to be struck here relates to the issue of whether or not Defendants were negligent in allegedly violating provisions of the FDCA. When faced with the virtually identical facts also presented by Plaintiffs' counsel here, D.C. Superior Court found that Plaintiffs could not base a negligence *per se* claim on these FDCA provisions.[13] In a Motion for Judgment on the Pleadings/Motion to Dismiss currently pending before the Court, Defendants contend that the alleged violations of these FDCA provisions do not establish a standard of care and cannot support a negligence *per se* claim as D.C. has already held.[14] *See* 11/30/01 *Morton* Order (Ex. 1 of the Motion to Dismiss; Ex. 1 here). Should the Motion to Dismiss prevail, it would moot some of the issues presented in this current motion. If the Court is inclined to allow any legal testimony, the instant motion may need to be held in abeyance pending a ruling on the Motion to Dismiss. Ex. 1. Regardless, if a ruling on this motion allows legal testimony, Plaintiffs may not offer ten (10) duplicative experts

---

[13] *See* fn. 14, *infra*.

[14] Exhibit 1 (Defendants' Motion for Judgment on the Pleadings/Motion to Dismiss, filed February 14, 2008; "Motion to Dismiss"). "11/30/01 *Morton* Order" refers to *Morton v. George Washington University Hosp.*, Civ. Act. No. 99ca004599, Slip Op. at 9 (D.C. Super. Ct., filed Nov. 30, 2001) (order granting defendants' 12(b)(6) Motion, dismissing plaintiffs' FDCA-based negligence *per se* claims), the case previously represented by Plaintiffs' counsel as sealed, Plts.' Opp. to Motion to Compel, filed September 20, 2007, at 3. *Morton* involved, *inter alia*, allegations that in June 1998, it was illegal for the George Washington Hospital doctor to treat a patient by embolizing her with the FDA unapproved device, Histoacryl® and Lipiodol® without having obtained an IDE, PMA or IRB approval. Based on District of Columbia law, the *Morton* court dismissed the same FDCA-based, negligence *per se* claims as presented here.

to opine on the same issues. Therefore, if this Court is inclined to allow legal testimony, Defendants request that Plaintiffs' experts be reduced to no more than two experts.[15]

### III. Disobeying Fed. R. Civ. Pro. 26(a)(2)(B) While Requesting a Trial Date, Plaintiffs' Experts and Reports Should Be Struck.

Three months after it was due, Plaintiffs have yet to provide the compulsory Fed. R. Civ. P. 26(a)(2)(B) material. Plaintiffs have not even provided this material for experts who have already been deposed. Given Plaintiffs' ongoing delinquency, this Court should strike Plaintiffs' noncompliant experts and reports, pursuant to Fed. R. Civ. P. 26(a)(2)(B) as this Court (and judge) has previously done. *U.S. Ex. Rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp.2d 94, 98 (D.D.C. 2002), particularly with the prejudice caused to Defendants: the setting of a trial date without Plaintiffs having provided mandatory materials or even when the materials will be provided prevents Defendants from properly preparing for trial, as Plaintiffs "run out the clock," by failing timely to disclose materials.[16] Sur-reply at 8.

### IV. Defendants' Liability Stems Solely From Dr. Watson's Treatment of Mrs. Kerris.

Dr. Watson alone chose how he would medically treat Mrs. Kerris and Georgetown University allowed that treatment. If Dr. Watson breached the medical standard of care by allegedly violating the federal FDCA provisions as Plaintiffs allege in the Amended or Second Amended Complaints, both he and Georgetown University are liable for negligence. No statements by Ms. Zimmet or anyone else is relevant to the adjudication of Plaintiffs' allegations

---

[15] *See* fn. 9, *supra*.

[16] Defendants note that Plaintiffs have missed all deadlines set to date. Plaintiffs' request to take more fact depositions elongated the discovery cut-off from August 31, 2007 to October 3, 2007. *See* August 29, 2007 Minute Order. Because Plaintiffs wished to re-depose Ms. Zimmet, the expert disclosure deadline was moved from October 17, 2007 to December 22, 2007. *See* October 24, 2007 Minute Order. Plaintiffs have yet to comply with their expert discovery obligations due on December 22, 2007.

of medical malpractice or claims of negligence *per se*. It is the **same** issue – either Ms. Zimmet's comments were correct and Defendants are not liable, or they were incorrect and they are (assuming, *arguendo*, FDCA-based negligence *per se* claims are allowed) liable. Ms. Zimmet's statements to Dr. Watson cannot serve as justification for the Court to reject black letter law proscribing legal testimony.

V.   **The Court May Treat Plaintiffs as Conceding that Dr. Margulies Should Not Testify and that Expert Testimony on State of Mind Is Inadmissible.**

Plaintiffs failed to address their discovery violation concealing Dr. Margulies or Defendants' requested sanction for it. Defendants' Reply at 4 & 4 n. 5. Under this Court's precedent the Court may view Plaintiffs as conceding that Dr. Margulies may not testify in any capacity. *Bancoult v. McNamara*, 227 F.Supp.2d 144, 149 (D.D.C. 2002) (ruling on motion for injunction, "if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded . . . .") (citations omitted); *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (ruling on a motion to intervene; same). Similarly, Plaintiffs do not address the fact that this Court holds that expert testimony on state-of-mind is inadmissible, other than to state they are making such claims. Sur-reply at 6. The Court may treat this issue as conceded as well as no countervailing authority was presented to this Court. *Id.*; *see also Lohrenz v. Donnelly*, 202 F Supp.2d 25, 36 (D.D.C. 2002) (expert may not opine as to state-of-mind); *In re Baycol Prods. Litig.*, --- F.Supp.2d ----, 2007 WL 4794163 at *31 (D. Minn.) (MDL; listing cases).

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, defendants respectfully request the Court grant the relief requested.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: February 25, 2008            By: *Megan E. Hills*
David C. Kiernan (D.C. Bar # 413806)
Megan E. Hills (D.C. Bar # 437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

## CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website on the 25th day of February, 2008 on the forgoing:

>Anthony Newman, Esquire
>Ernest McIntosh, Esquire
>Newman, McIntosh & Hennessy
>7315 Wisconsin Avenue
>Suite 700E
>Bethesda, Maryland 20814

>and

>Andrew Greenwald, Esquire
>Greenwald and Laake
>6404 Ivy Lane
>Suite 440
>Greenbelt, Maryland 20770

>Plaintiffs' Counsel

_____
Megan E. Hills