IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo,<br>As Guardian of the Person and Property of<br>KARYN A. KERRIS,<br><br>Plaintiffs,<br><br>vs.<br><br>GEORGETOWN UNIV. HOSPITAL, *et al.*<br><br>Defendants. | **Civil No. 1:05CV02086**<br><br>**Judge Paul L. Friedman**<br><br>**Magistrate Judge Alan Kay** |

**PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' NEGLIGENCE *PER SE* CLAIMS BASED
ON VIOLATIONS OF FEDERAL LAW AND PUNITIVE DAMAGES**

COME NOW, the Plaintiffs, by and through their undersigned counsel, and by order of the Court, submit the following brief surreply addressing Defendants' argument that the learned intermediary doctrine, a doctrine which places an affirmative duty on physicians to warn patients of potential dangers associated with legally available prescription drugs, somehow precludes Plaintiffs' claims of negligence *per se* based on the FDCA.

Simply put, the learned intermediary doctrine holds that:

> [B]ecause prescription drugs are available to the public only through a physician and are to be administered only under a physician's supervision, the pharmaceutical manufacturer's duty is to adequately inform the physician, who is "expected to function as a 'learned intermediary' between the company and the patient in protecting the patient and in providing direct information about the drug to the patient."

*MacPherson v. Searle & Co.*, 775 F.Supp. 417, 422-423 (D.D.C. 1991)(quoting William J. Curran, Mark A. Hall & David H Kaye, *Health Care Law, Forensic Science, and Public Policy* 1198 (4th ed. 1990)).

Plaintiffs are not trying to "overturn the learned intermediary doctrine by forcing duties on practicing doctors" as stated by Defendants. (Reply, p. 14). Plaintiffs have no reason to do so, for the doctrine is inapplicable to the present case. The issue here is whether Defendants Georgetown and Watson were negligent *per se* by violating the various sections of the FDCA cited by Plaintiffs in their Amended Complaint.[1]

Equally erroneous is the Defendants' interpretation of the holding in *MacPherson v. Seal & Co.* The *MacPherson* Court did not dismiss the plaintiff's allegations regarding "labeling" against the defendant Searle as stated by Defendants. A proper reading of that case shows that Ms. MacPherson never claimed that the drug was mislabeled or that the Defendants' actions violated any sections of the FDCA as are

---

[1] Count VIII(Negligence Per Se - Violations of 21 U.S.C. §331 (a), (b), (c), (g) and (k)) Plaintiffs replead and incorporate by reference herein each and every allegation set forth above and further state as follows:
   60. 21 U.S.C. §331 entitled "Prohibited Acts" sets forth in subparagraph (a) that it is a violation of the statute to allow, "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."
   61. 21 U.S.C. §331(b) states that it is a violation of the statute to allow, "[t]he adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce."
   62. 21 U.S.C. §331(c) states that it is a violation of the statute to allow, "[t]he receipt in intestate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise."
   63. 21 U.S.C. §331(g) states that it is a violation of the statute to allow, "[t]he
Case 1:05-cv-02086-PLF-AK Document 101 Filed 02/27/2008 Page 24 of 51 manufacture within any Territory of any food, drug, device, or cosmetic that is adulterated or misbranded."
   64. 21 U.S.C. §331(k) states that it is a violation of the statute to allow, "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."

asserted by Plaintiffs in this case. Ms. MacPherson instead claimed that the package insert included with the prescription drug did not adequately warn her directly of the dangers associated with taking the drug. *Id.* at 424-425. The Court held that the drug manufacturer met its duty to warn by providing the necessary information in package insert and by providing the necessary information to the doctor, the learned intermediary, who had a duty to convey this information to the patient. *MacPherson* reiterated that the doctrine is only an "adjunct to the physician-patient encounter and is intended to reinforce and augment oral information given by the physician to the patient at the time the drug is prescribed." *Id.* at 425.

In this case, Plaintiffs are not suing the manufacturer of Histoacryl and/or Lipiodol, therefore there is no learned intermediary. Plaintiffs are instead claiming that Defendants Georgetown and Watson violated certain provisions of the FDCA by introducing an illegal, and therefore, misbranded and adulterated device into the United States: misbranded by being a Class III illegal device which was imported into the United States and; adulterated because it was used in violation of the statutes (Histoacryl was also chemically adulterated when Dr. Watson mixed an unknown quantity with another Class III illegal device, Lipiodol).[2] All of this was done in derogation to the express contraindications of the manufacturer found in Histoacryl's package insert, which specifically forbid the injection of Histoacryl into blood vessels.

---

[2] Defendant Watson was the de facto "manufacturer" of "Histodol" when he mixed the devices together. While the Court held that Dr. Watson was not a manufacturer for purposes of strict liability, it is clear that there was no intermediary, let alone a learned intermediary who stood between Defendant Watson and Mrs. Kerris, providing her with the necessary warnings.

While the Defendants would like to define "Misbranding" and "Adulteration" as mislabeling, the FDCA and the FDA do not define it as such. The statutory definitions of "misbranded" and "adulterated," regarding Histoacryl and Lipiodol, are clearly forth in the Import Alert IA8909:

> "The article is subject to refusal of admission pursuant to Section 801(a)(3) in that the device appears to be a Class III device and does not appear to have in effect an approved application for premarket approval pursuant to Section 515 of the Act [FDCA], or an exemption pursuant to Section 520(g)(1) [Adulteration, Section 501(f)(1)(B)]."

> "The article is subject to refusal of admission pursuant to Section 801(a)(3) in that it appears to be a post 1976 device for which a Section 510(k) application has not been determined substantially equivalent or a 510(k) has not been filed [Misbranding, Section 502(o)]."

(Import Alert IA8909 attached hereto as Exhibit 1). Thus, the devices Histoacryl and Lipiodol were being refused admission into the United States because of their illegal status (Misbranding and Adulteration) not because of some "labeling" issue. The negligence *per se* claims stated in Plaintiffs' Amended Complaint set forth these issues.

If further support were required (beyond the above and the language found in Plaintiffs' Amended Complaint), it is found in the Affidavit of the then Director of the Division of Compliance Operations in the FDA, William Damaska. Mr. Damaska affirms that:

> 4) Histoacryl is a tissue adhesive intended for use as an "artificial embolization device." It is prohibited from medical usage, absent specific approval by FDA.
>
> 5) Histoacryl has not been the subject of a premarket approval submission providing clinical data to FDA sufficient to demonstrate its' safety and/or efficacy.

      6) A Class III device can only be marketed after submission and approval by FDA of an application for premarket approval (PMA), 21 USC §360e(a), or, an FDA approved investigational device exemption (IDE), 21 U.S.C. §360j(g)(1).

      13) Vance E. Watson, M.D., and Georgetown University Hospital's use of Histoacryl and Lipiodol was "in violation of regulations, "21 U.S.C. §351(f)(1)(B)(I), and thus constituted "adulteration."

Therefore, since the importation, adulteration, and use of the Class III unapproved device by Defendants, are the issues involving negligence *per se*, and those issues do not involve any intermediary, Plaintiffs' negligence *per se* counts should be heard by the Court.

      Respectfully submitted,

By: _____/s/_____
Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400

      _____/s/_____
Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 24, 2008, a copy of the foregoing was sent via electronic mail via the Court's e-filing system to:

David Kiernan, Esq.
Megan Hills, Esq.
Zoe Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

                                          __/s/_____
                                          Anthony Newman