IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. Act. No. 1:05CV02086 (PLF/AK) ) |
| Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., | ) Judge Paul L. Friedman ) ) Magistrate Judge Alan Kay ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION TO CLARIFY THE JUNE 17, 2008 ORDERS
TO REQUIRE PLAINTIFFS TO PRODUCE PREVIOUSLY AGREED ON MATERIAL**

Defendants, Georgetown University and Vance E. Watson, M.D., hereby move, through counsel, to clarify the Court's June 17, 2008 Orders to include in the Court directed production eight (8) items Plaintiffs previously agreed to produce.

A memorandum of supporting points and authorities and a proposed order are attached.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: June 25, 2008    By: _/s/ Megan E. Hills_
David C. Kiernan (D.C. Bar # 413806)
Megan E. Hills (D.C. Bar # 437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br>Plaintiffs, <br><br>v. <br><br>Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br>Defendants. | Civ. Act. No. 1:05CV02086 (PLF/AK) <br><br>Judge Paul L. Friedman <br><br>Magistrate Judge Alan Kay |

### FEDERAL RULE OF CIVIL PROCEDURE RULE[1] 37
### CERTIFICATION OF GOOD FAITH EFFORTS TO REACH A RESOLUTION

On Monday, June 23, 2008, the undersigned attorney sent a letter to Plaintiffs' counsel seeking their confirmation that they would produce certain materials Plaintiffs had previously agreed to provide.[2] On June 24, 2008, the undersigned attorney had a telephone call with Plaintiffs' counsel, Anthony Newman, Esq., and requested that Plaintiffs produce the materials Plaintiffs already agreed to produce before the Court's June 17, 2008 Orders were issued, pursuant to Fed. R. Civ. P. 26(a)(2)(B), because the Court was unaware—as Plaintiffs' agreement to produce the materials rendered production of them undisputed, and therefore, not brought before the Court, as well as the fact that the June 17 2008 Order, by affirmatively requiring the production of certain materials, did not relieve Plaintiffs of the obligation to

---

[1] Hereinafter, "Fed. R. Civ. P."

[2] June 23, 2008 GU Letter to Plaintiffs attached hereto.

produce materials that they had already agreed Fed. R. Civ. P. 26(a)(2)(B) required them to produce. Defendants' understanding of the Court's June 17, 2008 Orders does not translate into allowing Plaintiffs to renege on their prior commitment to produce specific Fed. R. Civ. P. 26(a)(2)(B material. Defendants alerted Plaintiffs that, absent agreement, Defendants were contemplating filing a motion to clarify. Plaintiffs objected to making the previously agreed-on production and despite the parties' conferral, this Motion to Clarify was necessary.

                Respectfully submitted,

                WILLIAMS & CONNOLLY LLP

Dated: June 25, 2008      By: /s/ Megan E. Hills
                David C. Kiernan (D.C. Bar # 413806)
                Megan E. Hills (D.C. Bar # 437340)
                Zoe C. Scharff (D.C. Bar # 490482)

                725 Twelfth Street, N.W.
                Washington, D.C. 20005
                (202) 434-5000
                (202) 434-5029 (fax)
                dkiernan@wc.com
                mhills@wc.com
                zscharff@wc.com

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

www.wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

JOHN W. VARDAMAN
PAUL MARTIN WOLFF
JOHN G. KESTER
WILLIAM E. McDANIELS
BRENDAN V. SULLIVAN, JR.
RICHARD M. COOPER
GERALD A. FEFFER
JERRY L. SHULMAN
ROBERT B. BARNETT
DAVID E. KENDALL
GREGORY B. CRAIG
JOHN J. BUCKLEY, JR.
TERRENCE O'DONNELL
DOUGLAS R. MARVIN
JOHN K. VILLA
BARRY S. SIMON
KEVIN T. BAINE
STEPHEN L. URBANCZYK
PHILIP J. WARD
F. WHITTEN PETERS
JAMES A. BRUTON, III
PETER J. KAHN
LON S. BABBY
MICHAEL S. SUNDERMEYER
JAMES T. FULLER, III
BRUCE R. GENDERSON
CAROLYN H. WILLIAMS
F. LANE HEARD III

STEVEN R. KUNEY
GERSON A. ZWEIFACH
PAUL MOGIN
HOWARD W. GUTMAN
MARK S. LEVINSTEIN
VICTORIA RADD ROLLINS
DANIEL F. KATZ
WILLIAM R. MURRAY, JR.
EVA PETKO ESBER
STEPHEN D. RABER
DAVID C. KIERNAN
LON E. MUSSLEWHITE
ROBIN E. JACOBSOHN
HEIDI K. HUBBARD
GLENN J. PFADENHAUER
GEORGE A. BORDEN
ROBERT J. SHAUGHNESSY
DAVID S. BLATT
ARI S. ZYMELMAN
DANE H. BUTSWINKAS
LAURIE S. FULTON
DENNIS M. BLACK
PHILIP A. SECHLER
LYNDA SCHULER
PAUL K. DUEFFERT
R. HACKNEY WIEGMANN
ROBERT M. CARY
KEVIN M. HODGES

DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
PAUL B. GAFFNEY
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN
CRAIG D. SINGER
JAMES L. TANNER, JR.
J. ANDREW KEYES
GILBERT O. GREENMAN
M. ELAINE HORN
ENU MAINIGI
MICHAEL F. O'CONNOR
PAUL T. HOURIHAN
WILLIAM J. BACHMAN
MARGARET A. KEELEY
MEGAN E. HILLS
EDWARD J. BENNETT
TOBIN J. ROMERO
BETH A. LEVENE
THOMAS G. WARD
WILLIAM T. BURKE
LISA M. DUGGAN
JOHN E. JOINER

NICHOLAS J. BOYLE
ADAM L. PERLMAN
ANDREW W. RUDGE
DENEEN C. HOWELL
ALEX G. ROMAIN
DAVID A. FORKNER
JONATHAN M. LANDY
CHRISTOPHER N. MANNING
RYAN T. SCARBOROUGH
JENNIFER G. WICHT
STEPHEN D. ANDREWS
MALACHI B. JONES
THOMAS H. L. SELBY
KEVIN HARDY
EDWARD C. BARNIDGE
JOSEPH M. TERRY
AARON P. MAURER
JON R. FETTEROLF

_____

OF COUNSEL

RAYMOND W. BERGAN
JEREMIAH C. COLLINS
DAVID POVICH
J. ALAN GALBRAITH
ROBERT P. WATKINS
MARY G. CLARK
STEVEN A. STEINBACH
JACQUELINE E. MAITLAND DAVIES

June 23, 2008

**VIA ELECTRONIC MAIL & FIRST CLASS MAIL**

Anthony Newman, Esquire
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

   Re: **Iacangelo, et al. v. Georgetown University Hospital, et al.: Plaintiffs' Production of Data or Information Considered by Plaintiff-Designated Experts**

Dear Mr. Newman:

   Ms. Wyeth contacted me to seek an extension for Plaintiffs to produce additional information, directed by the Court to occur on June 28, 2008. She also sought Defendants' position as to an extension for Plaintiffs to file "objections" to the Court's June 17, 2008 Orders. Under Local Rule 72.2, Defendants cannot unilaterally give an extension in which to file a Motion for Reconsideration, however, depending on what part of the Orders Plaintiffs seek to have reconsidered, Defendants would consent to Plaintiffs' Motion for Extension of time to file a Motion for Reconsideration of whatever reasonable amount of time (ten, twenty or thirty days) Plaintiffs require, but Defendants need to know what portions of the Order Plaintiffs wish to have reconsidered as it affects whether any portion of expert discovery can go forward while reconsideration is pending.

   Defendants note that the Order did not separately reiterate Plaintiffs' obligation to produce certain expert materials that Plaintiffs already agreed to produce. Nothing in the Order abrogated Plaintiffs basic obligation pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) ("Fed. R. Civ. P.") to produce all documents or information "considered" by the expert in forming his opinion, and the other background information enumerated by the Rule. For the avoidance of doubt, Defendants seek your agreement that you will produce the already promised materials. If there is no dispute on that point that would have to be brought before the Court, **Defendants would not be adverse to consenting to an extension of time for production as much as**

Anthony Newman, Esquire
June 23, 2008
Page 2

thirty (30) days. Before this consent is effective, we request your agreement as to the production of the materials listed in this letter. Then the parties may submit a Consent Motion to Amend the June 17, 2008 Orders to reflect both the new production date for Plaintiffs and the items that were not explicitly enumerated in the Order.

Clarifying the Court's June 17, 2008 Order, the specific materials Plaintiffs agreed to produce are set out below. (This list does not include the materials required to be produced by the Court's June 17, 2008 Orders unless Defendants need to clarify the language of the Order.)

**Dr. Gerald Debrun:**

1. A current curriculum *vitae*, which was previously promised to be produced to us on January 18, 2008 during Dr. Debrun's deposition. Debrun Deposition at 21-22. If the curriculum *vitae* produced in *Waldt* is the most current curriculum *vitae* for Dr. Debrun, a representation from you that it is the most current curriculum *vitae* would satisfy Fed. R. Civ. P. 26(a)(2)(B)'s requirement. *See also* January 31, 2008 GU Letter to Plaintiffs' counsel (attached).

2. Dr. Debrun was to provide the medical literature he considered in forming his opinions, including the basis for his opinion that Karyn Kerris would have a 2-5% risk of bleeding (Dr. Debrun Deposition at 136), the articles on "the grading of the AVM" and medical literature supporting his opinion that embolization of her AVM was not within the standard of care. Defendants seek this information consistent with Fed. R. Civ. P. 26(a)(2)(B) **and Plaintiffs' counsel's agreement to provide the material** – Debrun Dep. at 186-87; [1] *see also* January 31, 2008 GU Letter to Plaintiffs' counsel (attached).

---

[1] ("THE WITNESS: I would not say the absence of literature in that topic. It is the absence of literature on cases presented which were treated. **But of course in the literature, they speak about cases of this magnitude, of this size, which are not amenable to any type of treatment.** BY MS. HILLS: Q. **Can you tell me what that literature is? A. I would have to go through the articles which have been written by Dr. Spetzler, by many others** on the grading of the AVM. Q. If you are relying -- I'm sorry, if that's part of the consideration that this AVM should not have been treated, the literature that you are saying, then I do need you to go through and -- A. **I could go through and to have the article dealing -- MR. NEWMAN: The answer is if counsel wants you to do that, <u>we will do that, it's fine.</u>** BY MS. HILLS: Q. That is what you basically -- A. **It is well described in the literature that there are cases which are unamenable to any type of treatment. This type shows the literature -- MR. NEWMAN: That's fine, that's all she** wants to know, and since you are relying on the fact that there is literature out there -- THE WITNESS: I rely on that, what I have read during my career. **MS. HILLS: Okay, and I understand that Tony will provide that** -- THE WITNESS: I did not bring any article dealing with that. I consider that you know, you know everything about it.

Anthony Newman, Esquire
June 23, 2008
Page 3

3.  Dr. Debrun was to provide an updated list of his expert deposition and trial testimony that contains all of the expert testimony he has given for the last four years. Dr. Debrun agreed to do so after admitting that the list produced with his report did not include his most recent testimony. Debrun Dep. at 8-9.[2] A listing of all Dr. Debrun's expert testimony at deposition and trial from 2004 should be provided. *See also* January 31, 2008 GU Letter to Plaintiffs' counsel (attached).

4.  Dr. Debrun was to provide information as to what he charged Plaintiffs for his work on this matter. *See* Debrun Dep. at 56-58.[3] Dr. Debrun should provide information as to

---

BY MS. HILLS: Q. Doctor, I had understood you to testify that the literature had not described the type of AVM -- A. The treatment. Q. The type of AVM bithalamic that Mrs. Kerris had, that was my understanding. My understanding now is that you are saying: **Yes, the literature does describe a bithalamic AVM of the size that Mrs. Kerris had, and that literature supports my position that embolization is unamenable to treatment, is that -- A. Yes, in the literature they show the cases that they consider unamenable to treatment.** Dr. Spetzler, when he described, when he published his article on the grading of AVM, shows cases of AVM which are inaccessible to any type of treatment. **Q. And you believe that literature describes the AVMs that are similar to Mrs. Kerris's? A. Yes. MS. HILLS: I will just get that literature, sir. I think, other than needing to copy what you brought today, we can conclude the deposition. MR. NEWMAN: Okay.**") (Emphasis added)

[2] ("Q. So the list that was provided as your testimony does not include the last four years of your expert testimony, correct? A. Yes. Q. And it's true that you have provided expert testimony in the last four years, correct? A. Yes."); , 9 ("**MR. NEWMAN: Can you create such a list, doctor? THE WITNESS: I could, I could.**"), 10-11 ("THE WITNESS: Yes, it could be easy for me to know. Maybe I did one or two every year so I can look at my calendar and find retrospectively how many times I had to give a deposition or to testify. BY MS. HILLS: Q. So how would you go about compiling a list of the cases in which you have provided expert testimony by deposition or in a court for the last four years? A. I have the cases at home, that's all, I can -- Q. And you would look at those cases presumably to put together a list, is that right? **A. I can provide a list if you need. Q. It is required under our rules.** And furthermore, doctor, what would you, how would you -- do you still have the cases from 2002 that you did? A. Yes. Q. So you have all the cases from 2002 to the present day? A. Yes, unless I know that the case is settled. I keep record of every case.") (Emphasis added).

[3] ("Q. How would I go about finding out if you had billed, provided a bill to plaintiffs in this case? A. Usually I keep a trace of what I bill. I did not find anything, so I don't even know if I bill Mr. Newman or not. Maybe he can tell you. MS. HILLS: Counsel, for the record, it is one of the requirements. MR. NEWMAN: **No one is saying that I won't provide you. I will look through my records and I will ask Dr. Debrun to look through his again. If not, he can also create the number of hours he believes he spent.**"); (Emphasis added).

Anthony Newman, Esquire
June 23, 2008
Page 4

what he charged Plaintiffs for his work on this matter. *See also* January 31, 2008 GU Letter to Plaintiffs' counsel (attached).

**Dr. Richard Latchaw:**

1. Dr. Latchaw should provide the notes of his conversation with counsel, referenced in his October 28, 2007 Report, prior to his final report [as well as any prior versions of his report reflecting any changes made after conversation with counsel, if the notes do not exist]. June 17, 2008 Memorandum Order at 4. Consistent with Fed. R. Civ. P. 26(a)(2)(B)'s requirement that the "report shall contain . . . the basis and reasons therefor; the data or other information considered by the witness in forming the opinions . . . ." and the Court's June 17, 2008 Memorandum Order, Dr. Latchaw should provide the notes of his conversation with counsel, referenced in his October 28, 2007 Report. *See also* January 7, 2008 GU Letter to Plaintiffs' counsel (attached).

2. Dr. Latchaw should provide the basis for the opinions he expresses in his October 15, 2007 Report, specifically the medical literature he considered, and literature that he references in his Report, stating that he opines on the "national standards of care [as opined in his October 15, 2007 Report] . . . via the literature." October 15, 2007 Report at 3. Consistent with Fed. R. Civ. Pro. 26(a)(2)(B) and Plaintiffs' prior agreement to provide such a list for Dr. Debrun – Plaintiffs' other causation expert – Dr. Latchaw should provide the basis for his opinions as to the "national standards of care" he expresses in his October 15, 2007 Report, specifically, he should identify "the literature" he considered in reaching his opinion on the "national standards of care" as set forth in his October 15, 2007 Report.

3. Dr. Latchaw should provide the basis for the opinions he expresses in his October 15, 2007 Report, specifically identifying "the national and international conferences and symposia," attendance at which serves the basis for his opinions as expressed in his October 15, 2007 Report as to the "national standards of care." October 15, 2007 Report at 3. Consistent with Fed. R. Civ. Pro. 26(a)(2)(B) and Plaintiffs' prior agreement to provide such a list for Dr. Debrun – Plaintiffs' other causation expert – he should specifically identify "the national and international conferences and symposia" or parts thereof that he considered and actually relied upon to opine the "national standards of care" as set forth in his October 15, 2007 Report. *See also* January 3, 2008 GU Letter to Plaintiffs' counsel; January 7, 2008 GU Letter to Plaintiffs' counsel; January 18, 2008 GU Letter to Plaintiffs' counsel (all referenced letters attached).

4. In his October 15, 2007 Report, Dr. Latchaw opines that there is a 5-7% complication rate for embolizations. October 15, 2007 Report at 2. Consistent with Fed. R. Civ. P. 26(a)(2)(B) and Plaintiffs' prior agreement to provide such a list for Dr. Debrun – Plaintiffs' other causation expert, Dr. Latchaw should provide the "data or information"

Anthony Newman, Esquire
June 23, 2008
Page 5

that he considered to form the basis of this opinion. *See also* January 7, 2008 GU Letter to Plaintiffs' Counsel; January 18, 2008 GU Letter to Plaintiffs' counsel (all referenced letters attached).

**Dr. S.J. Peerless:**

If Plaintiffs elect Dr. Basil Harris as their expert (as opposed to Dr. Peerless, *see* June 17, 2008 Memorandum Order at 7, 14), additional material for Dr. Peerless need not be produced, as he will not serve as Plaintiffs' expert in this matter and will not be deposed or testify at trial in this matter. *But see* June 17, 2008 Memorandum Order at 5, fn. 5. If Plaintiffs elect to have Dr. Peerless as one of their designated experts, Fed. R. Civ. P. 26(a)(2)(B) requires that additional material for Dr. Peerless be produced.

1. Dr. Peerless should provide the basis for the opinions he expresses in his December 14, 2007 Report, specifically the medical literature he considered and literature he references in his Report, stating that the "breach of the standard of care in this case is a breach of the National Standard of Care. I am familiar with the National Standard of Care as a result of my . . . review of the medical literature . . . ." December 14, 2007 Report at 2. Consistent with Fed. R. Civ. P. 26(a)(2)(B) and Plaintiffs' counsel's agreement to provide this information for Plaintiffs' other designated causation expert, Dr. Debrun, *see supra*, Dr. Peerless should identify the "medical literature" he reviewed, considered (as well as forming the basis) for his opinion that the treatment provided to Mrs. Kerris by Dr. Watson and Georgetown University Hospital was a "breach of the standard of care." December 14, 2007 Report at 2. *See also* January 18, 2008 GU Letter to Plaintiffs' counsel at 2, first paragraph (attached).

2. Dr. Peerless should provide the basis for the opinions he expresses in his December 14, 2007 Report, specifically identifying the "National meetings" he attended, attendance at which he considered, as well as forming the basis of his opinions as expressed in his December 14, 2007 Report, stating that the "breach of the standard of care in this case is a breach of the National Standard of Care. "I am familiar with the National Standard of Care as a result of my . . . attendance at National meetings." December 14, 2007 Report at 2. Consistent with Fed. R. Civ. P. 26(a)(2)(B) and Plaintiffs' counsel's agreement to provide the basis for the opinions for Plaintiffs' other designated causation expert, Dr. Debrun, *see supra*, Dr. Peerless should identify the "National meetings" he attended, considered (as well as forming the basis) for his opinion that the treatment provided to Mrs. Kerris by Dr. Watson and Georgetown University Hospital was a "breach of the National Standard of Care." December 14, 2007 Report at 2. *See also* January 18, 2008 GU Letter to Plaintiffs' counsel at 2, first paragraph (attached).

3. Dr. Peerless should provide the basis for the opinions he expresses in his December 14, 2007 Report, specifically by identifying the courses that he teaches or taught (as they are

Anthony Newman, Esquire
June 23, 2008
Page 6

not listed on his curriculum *vitae*) that he considered (as well as forming the basis of his opinions as expressed in his December 14, 2007 Report, stating that the treatment provided to Mrs. Kerris by Dr. Watson and Georgetown University Hospital was a "breach of the standard of care in this case is a breach of the National Standard of Care." ("I am familiar with the National Standard of Care as a result of my teaching . . . ." December 14, 2007 Report at 2). Consistent with Fed. R. Civ. P. 26(a)(2)(B) and Plaintiffs' counsel's agreement to provide the basis for the opinions for Plaintiffs' other designated causation expert, Dr. Debrun, *see supra*, Dr. Peerless should identify the courses he teaches or taught he considered and which form the basis) for his opinion that the treatment provided to Mrs. Kerris by Dr. Watson and Georgetown University Hospital was a "breach of the National Standard of Care." December 14, 2007 Report at 2. *See also* January 18, 2008 GU Letter to Plaintiffs' counsel at 2, first paragraph (attached).

**Dr. Arthur Kaufman:**

1. Dr. Kaufman should provide a list of the depositions, and other materials, considered by Dr. Kaufman who was "not sure" which he reviewed. Kaufman Dep. at 280-81.[4] Consistent with Fed. R. Civ. P. 26(a)(2)(B)'s requirement and Dr. Kaufman's prior agreement, Plaintiffs should provide the materials/depositions reviewed/considered by Dr. Kaufman. *See also* January 31, 2008 GU Letter to Plaintiffs' counsel (attached).

2. At his January 11, 2008 deposition, Dr. Kaufman committed to providing an accurate list of his expert trial and deposition testimony. Kaufman Dep. at 292-93.[5] Dr. Kaufman testified that he had not added in many cases in which he had testified as an expert, particularly from the year 2007. Kaufman Dep. at 293. Consistent with Fed. R. Civ. P. 26(a)(2)(B)'s requirement and Dr. Kaufman's prior agreement, Dr. Kaufman should provide an accurate list of his expert trial and deposition testimony for the last four years.

---

[4] ("Q. Did you read any of the plaintiffs' depositions? In other words, I see you read affidavits. But did you see or read or consider Mr. Iacangelo's deposition or Mrs. Iacangelo, Cicily, or Felice Iacangelo, Paul Kerris? A. I am not sure I read the deposition. I may have – yes, I think I read Paul Kerris' deposition."); ("Q. The reason I ask, sir, again, none of the depositions of these parties listed is something you considered. So you see my concern that if I go through all these stacks and I see depositions – you recall you did read Paul Kerris deposition but you are not sure? A. I am not sure.").

[5] ("Q. Is this a complete list? A. No. Q. Why not? A. I have not updated it. I need to update it."). Kaufman Dep. at 292. ("Q. Do you intend to put together an updated list of trial [and deposition] testimony? A. Yes, I will. I will update this. In fact, I think I have updated it in the computer already."). *Id.* at 293.

Anthony Newman, Esquire
June 23, 2008
Page 7

3. On January 11, 2008, Dr. Kaufman testified that he reviewed a document consisting of medical records and that document or compilation should be provided. Kaufman Dep. at 287-88.[6] If a document of medical record excerpts or analysis exists, it should be produced. If no document containing excerpts of medical records exists, regardless of who created it, Plaintiffs should so state without qualifying the denial of the existence of the document by saying "no lawyer or paralegal" created such a document.

**Dr. Craig Lichtblau:**

1. Dr. Lichtblau references a "lengthy conversation" with Dr. Delaney, Life Care Plan, Documentation at 1. If notes exist of Dr. Lichtblau's lengthy conversation with Dr. Delaney, other the typed memorialization of the "lengthy conversation" that is summarized in three (3) sentences in the Life Care Plan, these notes should be produced consistent with Fed. R. Civ. P. 26(a)(2)(B) and the Court's June 17, 2008 Memorandum Order at 5.

2. Dr. Lichtblau references a "lengthy conversation" with Dr. Musselman, Life Care Plan, Documentation at 2. If notes exist of Dr. Lichtblau's lengthy conversation with Dr. Musselman, other the typed memorialization of the "lengthy conversation" that is summarized in three (3) sentences in the Life Care Plan these notes should be produced consistent with Fed. R. Civ. P. 26(a)(2)(B) and the Court's June 17, 2008 Memorandum Order at 5.

3. Dr. Lichtblau references a conversation with Manish at Capital Home Care and references a "Debbie Eder" without explanation. Life Care Plan, Documentation at 3. If notes exist, other the typed memorialization of the conversation as contained in the Life Care Plan, Fed. R. Civ. P. 26(a)(2)(B) and the Court's June 17, 2008 Memorandum Order require that the notes be produced.

I do not foresee a conflict regarding the production of these documents as they consist of material that Plaintiffs previously agreed to provide. If my assumption is correct and Plaintiffs intend to make the above described production, Defendants have no issue with consenting to up to thirty days for Plaintiffs to make the production with Defendants' subsequent

---

[6] ("Q. You do also put down here that you have seen Georgetown Hospital medical records. A. No. There were a lot of clinical records. **I have seen excerpts of records.** This is the whole package. Q. When you say excerpts, **is this a document** that a lawyer, a paralegal, put together of excerpts of medical records? A. Yes. Q. And you considered that as part of your initial information and review? Is that the best of your recollection? A. I think that's correct. Q. **So the August 22nd, 2007 report, the information or data you believe you considered with [sic "was"] the excerpts of the medical records? A. That's correct.**"). (Emphasis added).

Anthony Newman, Esquire
June 23, 2008
Page 8

designation of experts falling four (4) weeks after Plaintiffs make the expert production. Defendants also note that if additional materials are identified in upcoming depositions, Defendants will seek those materials. However, in order to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B), and to prevent wasted time and re-depositions, Defendants urge Plaintiffs to contact these experts and ensure that they have provided all materials considered **prior** to the depositions consistent with Fed. R. Civ. P. 26(b)(4)(A).

Defendants do need to know what portion(s) of the Court's June 17, 2008 Order Plaintiffs seek to have reconsidered. Defendants are available to discuss the issues raised in this letter on June 23, 24 or 25 and would like immediately to do so. We understand that while one Plaintiffs' counsel, Mr. Newman, is involved in a trial, the other three Plaintiffs' counsel are not. We are also available after 4:45 p.m. – after the Court day is over.

Sincerely,

*Megan E. Hills*
Megan E. Hills

cc: Ernest McIntosh, Esq.,
    Andrew Greenwald, Esq.,
    **Wendy Wyeth, Esq.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | Civ. Act. No. 1:05CV02086 (PLF/AK) <br><br> Judge Paul L. Friedman <br><br> Magistrate Judge Alan Kay |

DEFENDANTS[1]' MEMORANDUM IN SUPPORT OF
MOTION TO CLARIFY THE JUNE 17, 2008 ORDERS SO
PLAINTIFFS HONOR THEIR PRIOR AGREEMENTS
TO PROVIDE CERTAIN EXPERT MATERIAL

Defendants do not believe the Court's June 17, 2008 Orders directed Plaintiffs to renege on their previous promises to provide eight (8) specifically defined Fed. R. Civ. P.[2] 26(a)(2)(B) material. Because of Plaintiffs' prior agreement to produce the eight (8) items (before the June 17, 2008 Orders were issued), production of these materials was undisputed and the issue was not brought before the Court in reliance on Plaintiffs' agreement to produce them. Because Fed. R. Civ. P. 26(a)(2)(B) explicitly requires the production of these eight (8) items and Plaintiffs previously agreed to produce the materials, Defendants move to clarify the Court's June 17, 2008

---

[1] "Defendants" refers collectively to Defendants Georgetown University and Vance E. Watson, M.D. "Plaintiffs" refers collectively to Plaintiffs Felice and Cicily Iacangelo.

[2] "Fed. R. Civ. P." refers to Federal Rule of Civil Procedure.

Orders to direct Plaintiffs to honor their commitment to produce the eight (8) items of material, upon which commitment Defendants relied.

Defendants respectfully request that the Court clarify that the June 17, 2008 Orders did not abrogate Plaintiffs' obligation to honor their previous commitment to produce the specific eight (8) items over which there was no dispute, pursuant to Fed. R. Civ. P. 26(a)(2)(B), and this Court's prior oral instructions to provide appropriate expert disclosure materials requested prior to the date of the June 17, 2008 Orders.[3] Defendants seek to have added to Plaintiffs' Court-directed production of expert materials the specific material that Plaintiffs already agreed to provide with the understanding that Defendants do not oppose any extension of the time should the addition of this previously agreed upon eight (8) items in addition to the information set forth in the Court's June 18, 2008 Orders require more time.

The limited already agreed upon Fed. Rule 26(a)(2)(B) eight (8) items Defendants seek to have added to the Court's June 17, 2008 Orders of production are:

**Dr. Gerald Debrun:**

1. **Plaintiffs and Dr. Debrun agreed to provide the medical literature he considered in forming his opinions.** Consistent with Fed. R. Civ. P. 26(a)(2)(B) requiring that the "report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; [and the production of] the data or other information considered by the witness in forming the opinions," **and Plaintiffs' counsel's agreement to provide the material**, this material should be produced. Debrun Dep. at 136, 186-87 ("THE WITNESS: . . . . **But of course in the literature, they speak about cases of this magnitude, of this size, which are not amenable to any type of treatment. BY MS. HILLS: Q. Can you tell me what that literature is? A. I would have to go through the articles which have been written by Dr. Spetzler, by many others** . . . . Q. If you are relying -- I'm sorry, if that's part of the consideration that this AVM should not have been treated, the literature that you are saying, then I do need you to go

---

[3] On January 16, 2008, Defendants and Plaintiffs participated in a teleconference with the Court. Plaintiffs were instructed to produce all outstanding expert materials and to certify the completion of the production. Thereafter, Defendants were to provide their expert disclosures. See Ex. 1, January 18, 2008 GU letter to Plaintiffs (detailing the teleconference). To date, Plaintiffs have not produced any documents or prepared a certification.

2

through and -- A. I could go through and to have the article dealing -- <u>**MR. NEWMAN: The answer is if counsel wants you to do that, we will do that, it's fine. . . . .**</u> A. . . . It is well described in the literature that there are cases which are unamenable to any type of treatment. This type shows the literature -- <u>**MR. NEWMAN: That's fine, that's all she wants to know . . . . MS. HILLS: Okay, and I understand that Tony will provide that --**</u> . . . . A. Yes, in the literature they show the cases that they consider unamenable to treatment. . . . Q. And you believe that literature describes the AVMs that are similar to Mrs. Kerris's? A. Yes. MS. HILLS: I will just get that literature, sir. I think, other than needing to copy what you brought today, we can conclude the deposition. MR. NEWMAN: Okay.") (Emphasis added); Debrun Deposition attached as Ex. 2.

2. **Plaintiffs and Dr. Debrun agreed to provide a list of his expert deposition and trial testimony that contains all of the expert testimony he has given for the last four years.** Consistent with Fed. R. Civ. Pro. 26(a)(2)(B) requirement that the "report shall contain . . . a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years . . . ." **and Plaintiffs' counsel's agreement to provide this requirement**, this information should be produced. Debrun Dep. at 8 ("Q. So the list that was provided as your testimony does not include the last four years of your expert testimony, correct? A. Yes. Q. And it's true that you have provided expert testimony in the last four years, correct? A. Yes."); 9 ("**MR. NEWMAN: Can you create such a list, doctor? THE WITNESS: I could, I could.**") (Ex. 2).[4]

3. **Plaintiffs and Dr. Debrun agreed to provide information as to what he charged Plaintiffs for his work on this matter.** Consistent with Fed. R. Civ. P. 26(a)(2)(B)'s requirement that the "report shall contain . . . the compensation to be paid for the study and testimony . . . . ;" and **Plaintiffs' counsel's agreement to provide it**, this item should be produced. Debrun Dep. at 56-58 ("Q. How would I go about finding out if you had billed, provided a bill to plaintiffs in this case? A. Usually I keep a trace of what I bill. I did not find anything, so I don't even know if I bill Mr. Newman or not. Maybe he can tell you. MS. HILLS: Counsel, for the record, it is one of the requirements. <u>**MR. NEWMAN: No one is saying that I won't provide you. I will look through my records and I will ask Dr. Debrun to look through his again. If not, he can also create the number of hours he believes he spent.**</u>") (Emphasis added) (Ex. 2).

---

[4] Debrun Dep. at 10-11 ("Q. So how would you go about compiling a list of the cases in which you have provided expert testimony by deposition or in a court for the last four years? A. I have the cases at home, that's all, I can -- Q. And you would look at those cases presumably to put together a list, is that right? **A. I can provide a list if you need. Q. It is required under our rules. . . . .** ") (Emphasis added) (Ex. 2); *see also* January 31, 2008 GU Letter to Plaintiffs (Ex. 3).

3

**Dr. Richard Latchaw:**

1. **Plaintiffs agreed to provide the medical literature upon which their other designated causation expert, Dr. Debrun, considered (and relied upon) to form his opinions.** Consistent with Fed. R. Civ. P. 26(a)(2)(B) **and Plaintiffs' agreement to provide the medical literature for Dr. Debrun,** *supra*, **Ex. 2, Dr. Latchaw should provide the medical literature upon which he bases his opinions.** *See* October 15, 2007 Dr. Latchaw Report at 3-4 ("It is my opinion to a reasonable degree of medical certainty, in fact to a high degree of certainty, that the aforesaid negligence and violations of the national standards of care by . . . [Defendants] resulted in significant neurological and neurocognitive impairment by Ms. Kerri. **I am aware of the national standards of care . . . via the literature.**") (Emphasis added) (Ex. 4).

**Dr. S.J. Peerless:**

If Plaintiffs elect Dr. Basil Harris as their expert (as opposed to Dr. Peerless, *see* June 17, 2008 Memorandum Order at 7, 14), additional material for Dr. Peerless need not be produced, as he will not serve as Plaintiffs' expert in this matter and will not be deposed or testify at trial in this matter. *But see* June 17, 2008 Memorandum Order at 5, fn. 5. If Plaintiffs elect to have Dr. Peerless as one of their designated experts, Fed. R. Civ. P. 26(a)(2)(B) requires that additional material for Dr. Peerless be produced.

1. **Plaintiffs agreed to provide the medical literature upon which their other designated causation expert, Dr. Debrun, considered (and relied upon) to form his opinions.** Consistent with Fed. R. Civ. P. 26(a)(2)(B) and **Plaintiffs' agreement to provide the medical literature for Dr. Debrun,** *supra*, **Ex. 2, Dr. Peerless should provide the medical literature upon which he bases his opinions.** *See* December 14, 2007 Peerless Report at 2 (the "breach of the standard of care in this case is a breach of the National Standard of Care. I am familiar with the National Standard of Care as a result of my . . . review of the medical literature . . . .") (Emphasis added) (Ex. 5).

**Dr. Arthur Kaufman:**

1. **Plaintiffs and Dr. Kaufman should provide a list of the depositions considered by Dr. Kaufman who was "not sure" those he considered.** Kaufman Dep. at 280-81 ("Q. Did you read any of the plaintiffs' depositions? In other words, I see you read affidavits. But did you see or read or consider Mr. Iacangelo's deposition or Mrs. Iacangelo, Cicily, or Felice Iacangelo, Paul Kerris? A. I am not sure I read the deposition. I may have – yes, I think I read Paul Kerris' deposition."); ("Q. The reason I ask, sir, again, none of the depositions of these parties listed is something you considered. So you see my concern that if I go through all these stacks and I see depositions – you recall you did read Paul Kerris deposition but you are not sure? A. I am not sure.") (Ex. 6). This list should be provided.

2. **At his January 11, 2008 deposition, Dr. Kaufman committed to providing an accurate list of his expert trial and deposition testimony.** Kaufman Dep. at 292 ("Q.

4

Is this a complete list? A. No. Q. Why not? A. I have not updated it. I need to update it."), 293 ("Q. Do you intend to put together an updated list of trial [and deposition] testimony? A. Yes, I will. I will update this. In fact, I think I have updated it in the computer already."); (Ex. 6). Fed. R. Civ. Pro. 26(a)(2)(B) requires that the "report shall contain . . . a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." This list should be provided.

3. **On January 11, 2008, Dr. Kaufman testified that he reviewed a document consisting of excerpts of medical records.** Kaufman Dep. at 287-88 ("Q. You do also put down here that you have seen Georgetown Hospital medical records. A. **No.** There were a lot of clinical records. **I have seen excerpts of records.** This is the whole package. Q. **When you say excerpts, is this a document** that a lawyer, a paralegal, put together of excerpts of medical records? A. **Yes.** Q. And you considered that as part of your initial information and review? Is that the best of your recollection? A. I think that's correct. Q. **So the August 22nd, 2007 report, the information or data you believe you considered with [sic "was"] the excerpts of the medical records? A. That's correct.**"). (Emphasis added) (Ex. 6)

   a. If a document exists consisting of excerpts of medical records regardless of who created it, Fed. R. Civ. Pro. 26(a)(2)(B) requires that it be produced by Plaintiffs. **If no document containing excerpts of medical records exists, regardless of who created it, Plaintiffs should so state in writing without qualifying the denial of the existence of the document by saying "no lawyer or paralegal" created such a document.**

As these eight (8) items were uncontested, Defendants did not include requests for them in pleadings to the Court. Because the Court's June 17, 2008 Orders did not preclude production of expert items previously agreed to by Plaintiffs or the basic requirements of Fed. R. Civ. P. 26(a)(2)(B), Defendants seek this clarification of the June 17, 2008 Orders to include these items.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court's June 17, 2008 Orders be clarified so that the eight (8) items Plaintiffs previously agreed to produce and upon which agreement Defendants relied are added to Plaintiffs' Court-directed production.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

Dated: June 25, 2008

By: /s/ Megan E. Hills
David C. Kiernan (D.C. Bar # 413806)
Megan E. Hills (D.C. Bar # 437340)
Zoe C. Scharff (D.C. Bar # 490482)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (fax)
dkiernan@wc.com
mhills@wc.com
zscharff@wc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. Act. No. 1:05CV02086 (PLF/AK) <br> ) <br> ) Judge Paul L. Friedman <br> ) <br> ) Magistrate Judge Alan Kay <br> ) <br> ) <br> ) <br> ) |

## ORDER

Upon consideration of Defendants Georgetown University and Vance E. Watson, M.D.'s Motion to Clarify the June 17, 2008 Orders to add the previously uncontested eight (8) items of expert materials to the Plaintiffs' Court-ordered production.

**ORDERED** that Defendants' Motion is **GRANTED;** and Plaintiffs shall produce the eight (8) items enumerated in Defendants' Motion to Clarify with the production ordered by the Court in its June 17, 2008 Orders;

It is this the _____ day of _____, 2008.

_____
Magistrate Judge Alan Kay
United States Magistrate Court Judge
for the District of Columbia

Copies to:

David C. Kiernan, Esq.
Megan Hills, Esq.
Zoe C. Scharff, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Wendy Wyeth, Esq.
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Plaintiffs' Counsel

Andrew Greenwald, Esq.
Joseph, Greenwald and Laake, P.A.
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

# CERTIFICATE OF SERVICE

Pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing was served via electronic filing on the Court's CM/ECF website on the 25th day of June, 2008 on the forgoing:

>Anthony Newman, Esquire
>Ernest McIntosh, Esquire
>Wendy Wyeth, Esquire
>Newman & McIntosh
>7315 Wisconsin Avenue
>Suite 700E
>Bethesda, Maryland 20814
>
>and
>
>Andrew Greenwald, Esquire
>Greenwald and Laake
>6404 Ivy Lane
>Suite 440
>Greenbelt, Maryland 20770
>
>Plaintiffs' Counsel

_/s/ Megan E. Hills_
Megan E. Hills