1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

------------------------------X

Felice P. Iacangelo and :
Cicily Iacangelo, As :
Guardian of the Person and :
Property of KARYN A. :
KERRIS, :
  :
       Plaintiffs, :
  : Civ. Action No.
V. : 1:05CV02086 (PLF/AK)
  :
Georgetown University : Judge Paul L.
Hospital, GEORGETOWN : Friedman
UNIVERSITY, t/a Georgetown :
University, and VANCE E. : Magistrate Judge
WATSON, M.D., : Alan Kay
  :
       Defendants. :

------------------------------X

ORIGINAL

Oral Deposition of GERARD DEBRUN

(Taken by Defendants)

Paris, France

Friday, January 18, 2008

Job N⸱ 119086

8

1  testimony in Exhibit 1 May 2003?
2      A.   Yes.
3      Q.   So the list that was provided as your
4  testimony does not include the last four years of
5  your expert testimony, correct?
6      A.   Yes.
7      Q.   And it's true that you have provided
8  expert testimony in the last four years, correct?
9      A.   Yes.
10     Q.   Did anyone ever ask you, in connection
11 with this case, as to whether you had an updated
12 list of cases in which you were deposed as an
13 expert or testified in court as an expert?
14     A.   No.
15          MR. NEWMAN: Doctor, do you understand
16 that she is asking if we asked for the most updated
17 list, and this is the only one you had.
18          THE WITNESS: Yes.
19          MR. NEWMAN: She just wants to know if
20 you have another list updated.
21          THE WITNESS: No, I have not kept a
22 record of the cases that I did since that.
23 BY MS. HILLS:
24     Q.   So in other words, you don't have a
25 record of where you testified as an expert either

1 in a deposition or at court the last four years,
2 correct?
3     A.   Yes.
4          MR. NEWMAN:  Can you create such a list,
5 doctor?
6          THE WITNESS:  I could, I could.
7 BY MS. HILLS:
8     Q.   Well, isn't it true, doctor, that since
9 you have left Chicago, you have not kept a straight
10 list, you don't keep a straight record of the cases
11 in which you have testified?
12     A.   No.  I have the cases at home, so I can
13 find, I can find them.  There are a few cases that
14 I did every year, so I could find them.
15     Q.   Do you recall testifying under oath that
16 you did not keep a straight record of the cases
17 that you did after you left Chicago?
18     A.   Yes.
19     Q.   And was that accurate when you testified
20 that way?
21          MR. NEWMAN:  Objection.  He just
22 testified that way.  He didn't keep a straight
23 list, but he can formulate one.  Go ahead.
24          Doctor, was that accurate that you didn't
25 have a list then?

1     THE WITNESS:  I don't have the list now
2  to give you.
3  BY MS. HILLS:
4     Q.  What you actually testify, sir, is that
5  you do not keep a straight record of the cases?
6     A.  I don't.
7     Q.  And you don't know how to compile the
8  list accurately of the cases in which you
9  testified?
10    MR. NEWMAN:  Objection.
11    THE WITNESS:  Yes, it could be easy for
12 me to know.  Maybe I did one or two every year so I
13 can look at my calendar and find retrospectively
14 how many times I had to give a deposition or to
15 testify.
16 BY MS. HILLS:
17    Q.  So how would you go about compiling a
18 list of the cases in which you have provided expert
19 testimony by deposition or in a court for the last
20 four years?
21    A.  I have the cases at home, that's all, I
22 can --
23    Q.  And you would look at those cases
24 presumably to put together a list, is that right?
25    A.  ==I can provide a list if you need.==

1          Q.    It is required under our rules.  And
2    furthermore, doctor, what would you, how would you
3    -- do you still have the cases from 2002 that you
4    did?
5          A.    Yes.
6          Q.    So you have all the cases from 2002 to
7    the present day?
8          A.    Yes, unless I know that the case is
9    settled.  I keep record of every case.
10         Q.    I know that you've testified in a
11   deposition in May 2006, in a case Waldt, W-A-L-D-T,
12   versus the University of Maryland Medical Center.
13   And that case is not on this list.  Do you recall
14   the Waldt case?
15         A.    I do.
16         Q.    And I also know that you testified in
17   court in December 2006 as an expert in the Waldt
18   case in the Baltimore City Circuit Court.  Do you
19   recall giving that testimony, sir?
20         A.    I do.
21         Q.    I also note at the bottom of the first
22   page, number 8, the Monique Morton case on
23   Exhibit 1, do you see that, sir?  First page, sir.
24         A.    First page.
25         Q.    Number 8?

56

1   that deposition transcript affect your opinion?
2       A.  No, my opinion is still the same.
3       Q.  Did anything in the deposition transcript
4   of Dr. Watson strike you as particularly
5   interesting?
6       A.  No.
7       Q.  How much did you charge -- have you
8   charged the plaintiffs in this case for your work
9   on it?
10      A.  No.
11      Q.  Have you billed them for anything?
12      A.  No.
13      Q.  Why not?
14      A.  If I have -- no, maybe I don't understand
15  the question.
16      Q.  ==Do you normally get paid for your expert==
17  ==work?==
18      A.  ==Yes.==
19      Q.  ==Have you been paid for the expert work==
20  ==you are giving in this case?==
21      A.  ==So far?  I don't know, I don't remember.==
22      Q.  How would I go about finding out if you
23  had billed, provided a bill to plaintiffs in this
24  case?
25      A.  Usually I keep a trace of what I bill.  I

1  did not find anything, so I don't even know if I
2  bill Mr. Newman or not.  Maybe he can tell you.
3          MS. HILLS:  Counsel, for the record, it
4  is one of the requirements.
5          MR. NEWMAN:  No one is saying that I
6  won't provide you.  I will look through my records
7  and I will ask Dr. Debrun to look through his
8  again.  If not, he can also create the number of
9  hours he believes he spent.
10 BY MS. HILLS:
11     Q.   How much time have you spent to date
12 looking at this case?
13     A.   If I include the two hours that I spent
14 yesterday by reading Dr. Watson's deposition and
15 the time that I spent two years ago by reviewing
16 the case, maybe I have spent so far four hours.
17     Q.   So you spent, my understanding is you
18 spent two hours two years ago looking at the films?
19     A.   Films and records.
20     Q.   And then yesterday night, you spent two
21 hours reading Dr. Watson's deposition?
22     A.   Yes.
23     Q.   So how much time do you believe you spent
24 creating the record -- strike that.
25          The report you created on October 2nd,

1  2007?
2      A.   I spent also some time in preparing this
3  letter.  So maybe one hour.
4      Q.   So prior to generating, creating your
5  opinions, you spent approximately three hours on
6  this case, is that correct?
7      A.   Yes.
8      Q.   Did you perform a literature search about
9  the issues regarding this case?
10     A.   If I have to, but I did not think I had
11 to search anything.
12     Q.   So the answer is no, you did not?
13     A.   No, the answer is no.
14     Q.   Have you spoken to Mr. or Mrs. Iacangelo
15 about this case, the parents?
16     A.   No.
17     Q.   Have you examined Karyn Kerris in this
18 case?
19     A.   No.
20     Q.   Have you done anything else -- strike
21 that.
22          Have you done anything other than the two
23 hours you spent looking at some medical records and
24 the medical films two years ago, and the hour you
25 spent compiling the report, and the two hours you

1  prognosis was, statistically speaking, for further
2  neurological deficits to occur, correct?
3          MR. NEWMAN:  Objection.  Asked and
4  answered.
5          THE WITNESS:  Yes.  The medical
6  literature dealing with the prognosis of Grade V
7  AVM, with deeply seated AVM on both sides like this
8  one, with this enormous venous drainage;
9  statistically, the drainage shows that she has more
10 than 2 per cent risk of bleeding per year.  We
11 would say that from the medical literature in '97,
12 '98, '99, and we would have been wrong, because she
13 had not bled, and we are in 2007.  So you see even
14 applying the statistic evaluation of the
15 literature, the prognosis of a given AVM, even at
16 Grade V, is unpredictable.
17 BY MS. HILLS:
18     Q.   And the statistics of the 2 to 5 per cent
19 that you were citing me actually for Karyn Kerris
20 was higher, correct?
21     A.   Yes.
22     Q.   Your opinion basically is that she should
23 have been offered in November 4, 1998 no treatment.
24 At that time, in November '98, she didn't have
25 hydrocephalus, correct?

186

1   on the topic and the absence of successful
2   presentation of AVM treatment, such as
3   Mrs. Kerris's, is that correct?
4            MR. NEWMAN:  Objection.
5            THE WITNESS:  I would not say the absence
6   of literature in that topic.  It is the absence of
7   literature on cases presented which were treated.
8   But of course in the literature, they speak about
9   cases of this magnitude, of this size, which are
10  not amenable to any type of treatment.
11  BY MS. HILLS:
12       Q.    Can you tell me what that literature is?
13       A.    I would have to go through the articles
14  which have been written by Dr. Spetzler, by many
15  other on the grading of the AVM.
16       Q.    If you are relying -- I'm sorry, if
17  that's part of the consideration that this AVM
18  should not have been treated, the literature that
19  you are saying, then I do need you to go through
20  and --
21       A.    I could go through and to have the
22  article dealing --
23            MR. NEWMAN:  The answer is if counsel
24  wants you to do that, we will do that, it's fine.
25  BY MS. HILLS:

```
 1         Q.    That is what you basically --
 2         A.    It is well described in the literature
 3   that there are cases which are unamenable to any
 4   type of treatment.  This type shows the literature
 5   --
 6              MR. NEWMAN:  That's fine, that's all she
 7   wants to know, and since you are relying on the
 8   fact that there is literature out there --
 9              THE WITNESS:  I rely on that, what I have
10   read during my career.
11              MS. HILLS:  Okay, and I understand that
12   Tony will provide that --
13              THE WITNESS:  I did not bring any article
14   dealing with that.  I consider that you know, you
15   know everything about it.
16   BY MS. HILLS:
17         Q.    Doctor, I had understood you to testify
18   that the literature had not described the type of
19   AVM --
20         A.    The treatment.
21         Q.    The type of AVM bithalamic that Mrs.
22   Kerris had, that was my understanding.  My
23   understanding now is that you are saying:  Yes, the
24   literature does describe a bithalamic AVM of the
25   size that Mrs. Kerris had, and that literature
```

192

1          CERTIFICATE OF REPORTER

2

3     I, YVONNE VANVI, the Court Reporter
4  before whom the foregoing deposition was taken, do
5  hereby certify that the witness whose testimony
6  appears in the foregoing deposition was duly sworn
7  by me; that the testimony of said witness was taken
8  by me to the best of my ability and thereafter
9  reduced to typewriting under my direction; that I
10 am neither counsel for, related to, nor employed by
11 any of the parties to the action in which this
12 deposition was taken, and further that I am not a
13 relative or employee of any attorney or counsel
14 employed by the parties thereto, nor financially or
15 otherwise interested in the outcome of the action.
16         Done and signed this 25th day of January
17 2008, in the city of Paris, France.

23 _____
24         YVONNE VANVI