## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

FELICE P. IACANGELO, *et al*.   :
           :
           :  **Civil No. 1:05CV02086**
      Plaintiffs, :
           :  **Judge Paul L. Friedman**
vs.          :
           :
**GEORGETOWN UNIVERSITY**, *et al*. :
           :
      Defendants. :
_____

### PLAINTIFFS' MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE KAY'S JUNE 17, 2008 MEMORANDUM OPINION

   Plaintiffs, through counsel, respectfully requests *de novo* review, pursuant to Fed. R. Civ.

P. 72 and LCvR 72.2, of Magistrate Kay's June 17, 2008 Memorandum Opinion striking

Plaintiffs' legal experts.

**I.**   **INTRODUCTION**

   The present case presents a rare set of facts and circumstances.  The issues in this case

involve the importation, receipt and adulteration of a Class III unapproved and illegal devices

Histoacryl (a form of Super Glue) and Lipiodol, and their injection into Karyn Kerris.  Specific to

the present issue, are the interactions between Defendant Georgetown University's assistant

general counsel, Shelia Zimmet, Esq., who allowed the devices to be used at the hospital and the

neuroradiologist who injected the Class III glue device into Mrs. Kerris, Defendant Vance E.

Watson, M.D.

Briefly, in Defendant Watson's deposition he stated that he would not have been allowed to use the Class III unapproved devices if Ms. Zimmet had advised him that they were illegal:

> Q.   Doctor, let me ask you a question:
> If Ms. Zimmet told you it was illegal to use
> the Histoacryl would you have continued to do
> so?
> THE WITNESS:  I don't think I
> would have been given a choice.  I mean if the
> counsel said that, they would stop you.  I
> mean, they would come over and say, "Give it
> up."

May 31, 2007 Deposition of Defendant Dr. Watson, pp. 140-141.  Then when Ms. Zimmet was deposed, she described what she did, or di not do, after she spoke to Dr. Watson (Ms. Zimmet wore "two hats" one of hospital administrator and one of advisor to the Institutional Review Board (IRB)).   Surprisingly, Ms. Zimmet testified that she did no research at all as to into the devices status and made no attempts to contact the Food and Drug Administration (FDA) and/or US Customs regarding the use of the illegal devices:

> Q.   Do you have any recollection of
> doing any research or any kind of evaluation
> through the FDA documents, IRB documents, or
> any other document you were involved with
> involving Histoacryl or Lipiodol prior to my
> request?
> THE WITNESS:  The question goes to
> prior to your document request?
> BY MR. NEWMAN:
> Q.   Correct.
> A.   No.  I did not do such a search.
> I mean, I know there was a document request to
> me, a document request to the University.  One
> or the other.  Any search that was done was
> pursuant to your request.

July 23, 2007 Deposition of Sheila Zimmet, Esq., pp. 18-19.

Q.   Did you make any attempt -- by the
way, after you had this discussion with Dr.
Watson on 9/21 --
A.   Yes.
Q.   -- did you do any follow-up
yourself with the FDA or with Customs to
verify, or confirm, or investigate any of the
things that Dr. Watson told you about the
superglue, the Histoacryl and Lipiodol for the
purpose of getting back to him and reviewing
with him your findings?
MR. GREENWALD:  That was my
question.
THE WITNESS:  No.

December 6, 2007 Deposition of Sheila Zimmet, Esq.

## II.   **EXPERTS**

On the basis of the above, Plaintiffs alleged, in their Amended Complaint, that Defendant

Georgetown University was negligent (through the actions of Sheila Zimmet, Esq.), in allowing

Defendant Watson to use and to continue using an unapproved, illegal Class III devices and to

use them without oversight.   To establish Plaintiffs' case, Plaintiffs named three experts lawyers

to testify to the various aspects of negligence by Ms. Zimmet.  Plaintiffs named Julia Gabis, Esq.,

an attorney and one time general counsel for Hahnemann University Hospital in Philadelphia,

PA, and Robert Kamm, Esq., one time general counsel of a major drug firm, and offered these

experts to testify that Ms. Zimmet violated the national standard of care by allowing the use of

and continued use of, illegal, unapproved Class III devices without performing any independent

inquiry (which would have uncovered the device's illegality). (26(a)(2)(b) Reports of Experts

attached).

Since Ms. Zimmet also acted as the advisor to the IRB, Plaintiffs named Donald Sherwin,

Esq.  Mr. Sherwin is an attorney who has been an IRB member on numerous occasions. Plaintiffs

offered him to testify that it is a violation of the national standard of care to not require IRB

review and consent for Histoacryl. (26(A)(2)(b) Report of Expert attached)

The Memorandum Opinion struck all three of these experts, leaving Plaintiffs with no

expert with the training, experience and/or background of Shelia Zimmet, Esq.

III.    <u>ARGUMENT</u>

**Plaintiffs' experts are required to produce testimony that the National Standard of Care was Violated by Georgetown University, in this case by Shelia Zimmet, Esq**

The Amended Complaint set forth, in relevant portion, the claims against Georgetown

University:

Count I:
10.     Defendant Georgetown University, through their servants, agents and employees, including Defendant Vance E. Watson, M.D., were negligent in their management, care and treatment of Karyn A. Kerris on November 4, 1998 and continuing thereafter, including but not limited to the following particulars:
        d.      negligent performance of embolizations without obtaining an investigational device exemption (IDE), without any other exemption or waiver from the Federal Government or its agencies and without providing notice to said entities of their intent to use such a device;
        i.      negligent supervision and/or monitoring by Defendant Georgetown University of the ordering, invoicing and use of illegal Class III devices by their employees, agents and/or servants, including Vance E. Watson, M.D., on patients within Georgetown University Hospital;
        n.      Defendants were otherwise negligent;

Count VIII:
65.     Defendants' violated the aforesaid "Prohibited Acts"subsections, in that they:
        (a)     introduced and or caused introduction of, Histoacryl and Lipiodol, both adulterated and misbranded devices, into interstate commerce,

-4-

(b)      adulterated both Histoacryl and Lipiodol by mixing and/or compounding the two devices together,

(c)      received a misbranded and adulterated device,

(d)      manufactured a "new" Class III adulterated and misbranded device when they mixed Histoacryl with Lipiodol,

(e)      ignored the warnings and/or destroyed the labeling on the Class III device Histoacryl.

In order to prove the aforesaid, Plaintiffs must produce expert testimony to establish the national standard of care. See *Morrison v. MacNamara*, 407 A.2d 555, 561 (DC 1979)("The plaintiff bears the burden of presenting evidence which established the applicable standard of care, demonstrates that this standard has been violated..."). Further, when the issues of standard of care touch on statutes, as they do in the present case, expert testimony is also required to explain the applicability of statutes when the statute is relied upon to establish a standard of care. *McNeil,* 686 A.2d at 583 (DC 1996). In fact, the "failure to receive expert testimony as to the interpretation, and consequent admissibility and application, of the regulation, and the instruction that its violation would constitute negligence *per se* required reversal." *Id.* (citing *Hecht Co. v.. McLaughlin,* 214 F.2d 212, 216 (1954)). Thus, Plaintiffs' medical experts created reports demonstrating that in their opinions defendants' behavior that was is not in conformity with the national standard of care for physicians and that Defendants violated the national standard of care, which was embodied in the statutes.[1]

---

[1] i.e., a) no employee of Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should allow the use of unapproved, untested, illegal Class III devices, which is in conformity with 21 USC §331(a) et seq.;

b) no administrative person involved with patient care at Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should be ignorant of the FDCA act and its prohibitions;

c) no employee of Georgetown, its administrators, general counsel, and/or IRB officers, including Sheila Zimmet, Esq., should facilitate the receipt of unapproved, untested, illegal Class III devices in conformity with 21 USC §331(c)

IV.    **THE MEMORANDUM OPINION**

Magistrate Judge Kay erroneously stated in the Memorandum Opinion:

> Plaintiffs in the instant case imply that there is a "National
> Standard of Care" applicable to attorney advisors who provide
> hospitals with legal advice on utilization of Class III devices. They
> contend that they need legal experts to testify about breach of this
> standard of care but Plaintiffs provide no statutory or case law
> support for imposition of such standard in this case....

When did the law require plaintiffs to produce a specific "statutory or case law" spelling out the

standard of care before they can call an expert on the subject of professional negligence?  The

simple rule is clear: expert witnesses assist the trier of fact in determining whether the defendant

did what a reasonable and prudent (professional, hospital, etc.) would have done under the

circumstances. The question in this case is whether did Sheila Zimmet, Esq., violated the

national standard of care by failing to do what a reasonable hospital counsel would have done

when she allowed Dr. Watson, to use illegal Class III devices at Georgetown, and to use them

without IRB oversight.  The law in the District of Columbia is summarized quite well in

*Standard Civil Jury Instruction 9-2*:

**General Standard of Care**
**of Professionals:**

> A professional [*doctor, lawyer, architect, dentist*
> *surveyor, heatlhcare professional*] is not negligent if
> [he][she] adheres to the standard of care in the field.
>         You must decide whether the defendant was
> negligent by deciding whether the defendant failed to
> perform according to the professional standard of care.
>         To make this decision you must answer this
> question: Did the defendant do what a reasonable and
> prudent professional in [his][her] field would have done
> under the circumstances?

There is a plethora of case law stating that expert testimony is mandatory to establish the

standard of care. See *Ray v. American Nat. Red Cross,* 696 A.2d 399, 404 (D.C.App.,1997)

("[T]he duty of reasonable care requires that those with special training and experience adhere to

a standard of conduct commensurate with such attributes. It is this notion of specialized

knowledge and skill which animates the law of professional negligence.")(quoting *Washington*

*Hosp. Ctr. v. Butler*, 384 F.2d 331, 335 (1967)). On the other hand, there would be very few, if

any, professional malpractice claims if plaintiffs were required, in advance, to produce a specific

"statute" or "case law" identical to their specific set of facts prior to naming an expert or bringing

an action for professional negligence.

　　　　While there is no requirement for a particular statute, in the present case, there is one, it is

the FDCA.  It states, in pertinent portion, that it is prohibited for *anyone* (including a hospital,

lawyer, doctor, etc.) to be involved in the : 21 U.S.C. §331(a) - [t]he introduction or delivery for

introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or

misbranded; (b) - t]he adulteration or misbranding of any food, drug, device, or cosmetic in

interstate commerce; (c) - [t]he receipt in intestate commerce of any food, drug, device, or

cosmetic that is adulterated or misbranded; (g) - [t]he manufacture within any Territory of any

food, drug, device, or cosmetic that is adulterated or misbranded; and (k) - [t]he alteration,

mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the

doing of any other act with respect to, a food, drug, device.   Thus, Plaintiffs have complied with

an extremely harsh burden by proving that there is a statute setting forth the "National Standard

of Care."  Still Plaintiffs experts are not allowed to testify.

　　　　Notwithstanding the above, the ruling punishes Plaintiffs for doing what is required.

*McNeil*, requires the Plaintiffs to call experts to explain whether a statute embodies the standard

of care and that its violation cased the injury to Ms. Kerris. When Plaintiffs followed *McNeil*

and proffered experts to testify, the Court held that, "attempting to use legal experts to prove

liability ... and to interpret statutory language...usurp[s] the function of the trier of fact." (Mem p

10). While it may be true that the testimony of Plaintiffs' expert administrators, who happen to

be lawyers, must follow a fine line when testifying at trial, the solution is not to exclude all of

their testimony. Further, to hide this from the jury would create reversible error. *McNeil*, 686

A.2d at 583 (D.C. 1996).

Moreover, removing Plaintiffs' attorneys as experts prejudices Plaintiffs' case. After all,

Defendant Georgetown's general counsel, Sheila Zimmet, Esq., can freely take the stand, testify

about why she didn't call the FDA, US Customs or research the legal status of the devices, and

testify that it was not necessary. If the present ruling stands, Plaintiffs can not rebut this

testimony or establish by a witness who has been trained like Ms. Zimmet that her behavior fell

below the national standard of care, allegedly, because said is an "impermissible legal opinion."

Just because a witness is a lawyer does not make each and every or his/her opinion a

"legal opinion." The opinions to be solicited in the present matter are opinions regarding

professional negligence. Plaintiffs' experts are not testifying that Ms. Zimmet's legal reasoning

is flawed, for she did not do any. She did no research; she made no inquiries. She simply made

an uninformed decision, contrary to the FDCA, and that simple act of negligence was below the

national standard of care for *any* professional.[2]

Indeed, there is also a difference between administrative negligence by an assistant

---

[2]It should be added that Magistrate Kay's reasoning excluding legal testimony because "there is no claim for legal malpractice" is irrelevant. There would be no reason to bring such a claim, for the allegations against Ms. Zimmet are referenced in the Amended Complaint.
(See Sec. III, A, supra).

counsel and negligence in advice given by a general counsel to his client.  The latter is not

present at bar.   This case involves Ms. Zimmet, who should have been acting in her role as a

"gatekeeper" and stopped the use of illegal devices at Georgetown.  It does not involve Ms.

Zimmet's legal advice, if any, given to her client.  In any event, there is no such evidence in the

record because Ms. Zimmet claimed attorney client privilege on those conversations (July 23,

2007 depo p. 129).  The alleged negligent acts involve her role as gatekeeper and decision maker

who Dr. Watson was sent to by an unknown member of the board:

> A.   Discussing Histoacryl in general
> would be Sheila Zimmet would be counsel.
> Q.   And why did you ask counsel Sheila
> Zimmet whether your use of Histoacryl was
> legal?
> THE WITNESS:  I was never under
>  the assumption it was illegal because it was
> used at Duke during my residency, it was used
> at UCLA, it was used many places around the
> country.  The question to counsel evolved by
> somebody questioning whether, or just a
> general discussion about should the use of
> this go through the, what's called the
> Georgetown IRB.
> I don't remember which board
> member I asked this to, to see who I should
> talk to.  And then I was referred to Sheila
> Zimmet who is on the IRB and was also counsel.
> And I asked her, told her unapproved, and do
> we need to put this through the IRB.  And she
> said no.

(May 31, 2007 Deposition of Defendant Dr. Watson, pp. 128-129).

While Magistrate Kay allowed Arthur Kaufman, M.D., an administrator to testify

regarding Ms. Zimmet's behavior (as well as the administration's other failures), having a doctor

testify against a lawyer leads to obvious cross-examination and potential prejudice to Plaintiffs'

case.  One need look no further than the first question during Dr. Kaufman's discovery

deposition:

> Q.   Dr. Kaufman, do you have a law
> degree?
> A.   I do not.

(January 11, 2008 Deposition of Dr. Arthur Kaufman, p. 13.)  The questions thereafter, further

demonstrate the cross-examination Dr. Kaufman will endure given his lack of legal training.[3]

---

[3]Q.   Have you ever been appointed or elected as a Judge of a State or Federal Court?
A.   I have not, no.
Q.   Have you ever been appointed as an Administrative Law Judge?
A.   No.
Q.   Have you ever sat as either a Judge in a State proceeding, or a Federal Court proceeding, or as an Administrative Law Judge?
 A.   No.
 Q.   What is your understanding as to what a Judge does in terms of a legal dispute involving facts and law?
THE WITNESS:  I assume that they make a decision with regard to material that is presented.
Q.   Do you recognize or do you have an understanding as to what a Judge's role is related to facts versus related to law?
THE WITNESS:  I don't understand the direction you are going in.  Since I am not an attorney and since I am not dealing with an expression of law, and I am not dealing with issues of law, I don't know why we are going in this direction.
Q.   My question is do you defer to a Judge insofar as his or her interpretation of the law?
A.   Of course.
Q.   Have you ever served as a Congress-person?
A.   Not yet.
Q.   Have you ever served as a Senator?
A.   Not yet.
Q.   Were you consulted by either the House or the Senate, or any of their staff members, on the passage of the Federal Food, Drug and Cosmetic Act?
A.   No, I have not.
Q.   Do you know what year the Federal Food, Drug and Cosmetic Act passed?
A.   I do not.
Q.   Do you mind if I call it the FDCA for short?
A.   I think it would be better if you called it FDA.
Q.   FDA is the administration.  I want to distinguish between the entity FDA and the act.  What would you like me to call the Federal Food, Drug and Cosmetic Act?
A.   FDA Act.
Q.   I think I will refer to it as the full name because there are more than one FDA act.  Do you understand that?
A.   Sure.
Q.   Were you present or did you hear any of the debates regarding the passage of the Federal Food, Drug and Cosmetic Act?
Q.   Were you present or did you hear any of the debates regarding passage of the medical device amendments?
A.   No.
Q.   Were you consulted on either the medical device amendments or the Federal Food, Drug and Cosmetic Act?

Without overstating the obvious, the best expert to testify against a hospital counsel is another hospital general counsel.[4]  If both the board members and Defendant Watson himself felt that the matter needed specific advice from a general counsel, so in all likelihood would the jury.  Dr. Kaufman should not have to stand alone to testify about the failures of the officers and directors as well as non-lawyer administrators, as well as the failures of Ms. Zimmet.

Further, explanations of complicated, multi-tiered FDCA statutes are evidence of negligence requiring expert testimony and are best given by an attorney.[5]   Striking all of plaintiffs' expert attorneys would prejudice Plaintiffs in that manner as well.

WHEREFORE, the foregoing considered, Plaintiffs respectfully move this Court to Reconsider Magistrate Kay's June 17, 2008 Memorandum Opinion.

Respectfully submitted,
NEWMAN, MCINTOSH & HENNESSEY, LLP.
By:     /s/ Anthony G. Newman
Anthony G. Newman
7315 Wisconsin Ave., Suite 700E
Bethesda, Maryland 20814
301-654-3400
Attorney for the Plaintiffs

A.   No, I was not.

[4]For clarity, Plaintiffs expect to only call one of the aforementioned attorneys at the time of trial.

[5]If mention of the statute was not allowed there would be no place for Standardized Civil Jury Instruction 5-9 Violation of Regulation/Statute - Negligence Per Se and  5-10 Violation of Regulation/Statute - Evidence of Negligence.

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 1, 2008, a copy of the foregoing was sent via electronic mail via the Court's e-filing system to:

David Kiernan, Esq.
Megan Hills, Esq.
Zoe Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005


           __/s/_____
           Anthony Newman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

FELICE P. IACANGELO, *et al.*            :
                                          :
                                          :    **Civil No. 1:05CV02086**
                          Plaintiffs,     :
                                          :    **Judge Paul L. Friedman**
vs.                                       :
                                          :
**GEORGETOWN UNIVERSITY**, *et al.*       :
                                          :
                          Defendants.     :
_____

## ORDER

UPON CONSIDERATION of Plaintiffs' Motion for Reconsideration, any Opposition

and Reply thereto, and the entire record herein, it is this __ day of _____, 2008, by the

United States District Court for the District of Columbia,

   ***ORDERED***, that Plaintiffs' Motion for Reconsideration be, and the same hereby is,

***GRANTED***; it is

   ***FURTHER ORDERED***, that Plaintiffs may call one of their attorney experts identified

in their Federal Rule of Civil Procedure 26(a)(2)(B) disclosure.


_____
Judge, United States District Court for the District of Columbia

Copies to:

Anthony Newman
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814

Andrew E. Greenwald
JOSEPH, GREENWALD & LAAKE, P.A.

6404 Ivy Lane, Suite 400
Greenbelt, MD 20770

and
David Kiernan, Esq.
Megan Hills, Esq.
Zoe Scharff, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth St., N.W.
Washington, D.C. 20005

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| **FELICE P. IACANGELO,** *et al*. | : | |
| | : | |
| | : | **Civil No. 1:05CV02086** |
| Plaintiffs, | : | |
| | : | **Judge Paul L. Friedman** |
| vs. | : | |
| | : | |
| **GEORGETOWN UNIVERSITY**, *et al*. | : | |
| | : | |
| Defendants. | : | |

_____

### FEDERAL RULE OF CIVIL PROCEDURE RULE 37 CERTIFICATION
### OF GOOD FAITH EFFORTS

On June 24, 2008, the undersigned counsel had a telephone clal with defense counsel,

Megan Hills, Esq., and advised counsel that Plaintiffs intended on filing a motion to reconsider

the June 17, 2008 ruling of Magistrate Kay as to the issue of excluding Plaintiffs' attorney expert

witnesses.  Defense counsel stated that they would oppose such a motion.  Thereinafter, the

motion was drafted.

Respectfully submitted,
NEWMAN, MCINTOSH & HENNESSEY, LLP.
By:    /s/ Anthony G. Newman
Anthony G. Newman
7315 Wisconsin Ave., Suite 700E
Bethesda, Maryland 20814
301-654-3400
Attorney for the Plaintiffs