IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, <br> As Guardian of the Person and Property of <br> KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, <br> GEORGETOWN UNIVERSITY, t/a <br> Georgetown University, and <br> VANCE E. WATSON, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. Act. No. 1:05CV02086 (PLF) <br> ) <br> ) Judge Paul L. Friedman <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS'[1] OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE KAY'S JUNE 17, 2008 ORDERS, STRIKING PLAINTIFFS' LEGAL EXPERTS

It is neither "clearly erroneous," nor "contrary to law," to exclude legal experts offering expert testimony as to the meaning of the law because interpreting the law is the Court's exclusive province, particularly where no claim for legal negligence is alleged. *See* Rule 72.2(c) of the Rules of the United States District Court for the District of Columbia ("LCvR").

Magistrate Judge Kay correctly found, after extensive briefing and argument, that paid legal experts were not appropriate in this case to interpret the law and struck Plaintiffs' legal

---

[1] "Defendants" refers collectively to Defendants Georgetown University and Vance E. Watson, M.D. (singularly, "Dr. Watson"). "Plaintiffs" refers collectively to Plaintiffs Felice P. Iacangelo and Cicily Iacangelo. Hereinafter, the June 17, 2008 Orders are referred to as the "Orders." Since Magistrate Judge Kay issued both an Order and a Memorandum Opinion on June 17, 2008 striking Plaintiffs' legal experts, Defendants interpret Plaintiffs' Motion for Reconsideration of Magistrate Judge Kay's June 17, 2008 Memorandum Order, striking Plaintiffs' legal experts ("Mtn. for Recon.") as directed at both Orders.

experts. As Magistrate Judge Kay's Memorandum Order states, if Plaintiffs were allowed "legal experts to prove that liability and causation have been established and to interpret statutory language," then "Plaintiffs would effectively usurp the function of the trier of fact in this case." Memorandum Order at 10 (Ex. 1).[2] Magistrate Judge Kay correctly stopped Plaintiffs' attempt to supplement their legal arguments and replace the judge and jury with paid legal "experts" to corroborate their interpretations of the law.

It is black letter law that experts are not admissible to fill the judge's role as "'legal expert' . . . [whose] province alone [is] to instruct the jury on relevant legal standards." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). Plaintiffs proposed "trial" has their legal experts, instead of the judge, resolving critical legal issues of this case that are supposed to be reserved for the Court.

Plaintiffs ask this Court to overrule the Orders without even approaching the required standard for such an action. In this Court, "the magistrate judge's decision is entitled to great deference . . . . In view of this standard [quoting LCvR 72.2(c)], the court will affirm the magistrate judge's determination unless on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Beale v. District of Columbia*, 545 F. Supp.2d 8, 10-11 (D.D.C. 2008) (quotations and citation omitted) (affirming Magistrate Judge Kay's Order). "A motion for reconsideration of a magistrate judge's decision is reviewed for clear error. Local Civil Rule 72.2(c)." *Summers v. U.S. Dept. of Justice*, 2007 WL 2111049 at *1 (Slip Copy) (D.D.C. July 23, 2007).

To prevail on their medical malpractice claims, *see* Sec. Am. Compl., Plaintiffs must show **only** that the medical treatment and care provided to Karyn A. Kerris ("Mrs. Kerris") by

---

[2] Defendants refer the Court to those briefs for a more detailed discussion of the legal issues,

2

Defendants breached the standard of care for treating interventional neuroradiologists.[3] Plaintiffs seek to bolster their medical experts' testimony by introducing legal experts to interpret the law to show that Defendant Georgetown University was additionally culpable by giving its employee, Dr. Watson, bad legal advice through another of its employees, Sheila Cohen Zimmet, Esq., a member of its legal department, and that thereafter the Federal Food Drug and Cosmetic Act ("FDCA") was violated in the treatment of Mrs. Kerris.[4]

Although Defendants believe that Ms. Zimmet accurately stated the federal regulations, *see* fn. 4, *supra,* her communication of legal information is wholly irrelevant to any issue relating to Defendants' ultimate liability in this case because 1) this is not (nor could it be) a legal malpractice action where plaintiffs have a direct cause of action against either of the Defendants or the witness, Ms. Zimmet; and 2) the only issue is whether Dr. Watson's medical treatment of Mrs. Kerris breached the standard of care for treating interventional neuroradiologists (regardless if the alleged breach implicates the FDCA), causing her harm.[5]

---

merely summarizing them here.

[3] Plaintiffs are well aware of this requirement as they have designated three (3) medical doctors to meet that burden.

[4] Plaintiffs contend that Ms. Zimmet was wrong in her summary of the federal regulations, stating that the use of a non-FDA-approved device in clinical care to treat a patient did not fall within the jurisdiction of Institutional Review Board ("IRB") and its approval. *But see* 21 C.F.R. §§ 56.109, 812.3(f); 45 C.F.R. §§ 46.101(a), 46.102(d) and (h).

[5] Not only, as Magistrate Judge Kay observed, Memorandum Order at 9, does the Second Amended Complaint **not** bring a legal malpractice claim against Defendant Georgetown University or Ms. Sheila Cohen Zimmet, Esq., but Plaintiffs could **not** bring a legal malpractice against either the entity or the individual as Plaintiffs do not have privity for such a claim. *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985) ("To show that an attorney has been negligent, a **party must prove: (1) that there is an attorney-client relationship**; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client." (citations omitted) (emphasis added)). Similarly, any argument that an "advice of counsel" defense might allow legal experts is unavailing as it has not been, nor will it ever be asserted.

If Mrs. Kerris's medical treatment breached the standard of care for an interventional neuroradiologist rendering treatment and damaged her, then Defendants are liable. If it did not, than Defendants are not liable.

The accuracy of Ms. Zimmet's summary of the federal regulations has nothing to do with whether Mrs. Kerris's medical treatment breached the medical standard of care. As the healthcare provider at issue, Dr. Watson's decision to use a non-FDA approved device to treat a patient was his alone. Both Defendants' liability turns on whether the medical standard of care was breached and nothing more.

Plaintiffs brought a claim of medical negligence, not legal negligence. *See* Sec. Am. Compl. Plaintiffs' extensive quotation of Count I, a count entitled "Medical Negligence – Personal Injury," proves the point that the only standard of care Plaintiffs must show through expert testimony is the standard of care applicable to a treating interventional neuroradiologist, not a lawyer. If, as Plaintiffs claim, "through their servants, agents, and employees, including Vance E. Watson, M.D., were negligent in their management, care and treatment of Karyn A. Kerris . . . .," Mtn. for Recon. at 4-5, Defendant Georgetown University is liable for medical malpractice, as is Defendant Dr. Watson.

Plaintiffs' only burden to prove their claim of medical negligence is to produce **medical** expert testimony to show that the "management, care and treatment" of Mrs. Kerris fell below the national standard of **medical** care—in this case, the national standard of care for a treating interventional neuroradiologist. The "simple rule," as Plaintiffs put it for a claim of medical negligence is that Plaintiffs must have an expert witness to assist the jury as to "what a reasonable and prudent" treating interventional neuroradiologist in November 1998-March 1999 "would have done . . . ." to treat Mrs. Kerris. Mtn. for Recon. at 6 (quoting Standard Civil Jury

Instruction 9-2). Plaintiffs' claim for medical malpractice has nothing to do with a standard of care for lawyers.

The text of reports from Plaintiffs' legal experts makes abundantly clear that Plaintiffs offer their experts to interpret the law, instead of the Court. Some examples include:

- "It is my opinion to a reasonable degree of legal certainty that Ms. Zimmet . . . failed to conform to the national standard of care . . . . **If Ms. Zimmet had acted with reasonable diligence, Dr. Watson <u>would not have been permitted</u> to use histoacryl in treating Karyn Kerns without an IDE and IRB approval, including the requisite informed consent.**" December 12, 2007 Julia Gabis, Esq. Expert Report at 1-2 (attached as Ex. 1 to Mtn. for Recon.).

- "**Ms. Zimmet failed to act with reasonable diligence in that she failed to determine** (in 1994/1995 and again in September 1998) <u>**that under the Federal Food, Drug and Cosmetic Act and regulations promulgated thereunder, the device histoacryl could not be distributed lawfully**</u> **in the United States by the manufacturer without a PMA or an IDE and, under those circumstances, could not be used by Dr. Watson to treat patients at Georgetown University.**" *Id.* at 2.

- "Since the device was not available in the United States it was obtained from a wholesaler in Canada and **the receipt and use of the device by Dr. Watson and Georgetown was an "adulteration" as that term is defined in the Federal Food Drug and Cosmetic Act (hereinafter the Act) <u>and a violation of the Act</u>.**" August 29, 2007 Roger Kamm, Esq. Expert Report at 2 (attached as Ex. 2 to Mtn. for Recon.).

- "**This receipt and use of an adulterated device violates one of the primary tenets of the law**, whose purpose is to assure that only products that have been proven to be "safe and effective" are available for use. In my view such <u>**use of an illegal device in violation of the federal law**</u> **cannot in any manner be construed as meeting the National Standard of Care**" *Id.*

- "It is my opinion that to a reasonable degree of legal probability that **the failure** of Dr. Watson and Georgetown University Hospital **to follow the Federal Law and receive and use an unapproved device was the proximate cause of the injuries sustained by Ms. Kerris.**" *Id.* at 4.

- "Given that the device was not approved for any purpose by the FDA and the fact that it was a subject of a Import Alert, **it could not be assumed to be a standard device <u>so its use required IRB review</u>.**" September 11, 2007 Donald Sherwin, Esq. Expert Report at 1 (attached as Ex. 3 to Mtn for Recon.).

- "It is my opinion to a reasonable degree of legal probability that the reliance by Sheila Zimmet, Esq. on Dr. Vance E. Watson to communicate with the Food and Drug

5

> Administration was a violation of the national standard of care. It was her duty to have undertaken any such communication. Additionally, Sheila Zimmet, Esq.'s reliance on the forms allegedly provided to her by Dr. Vance E. Watson, also violated the national standard of care, and **they did not allow for <u>subversion of federal statutes</u>**." December 13, 2007 Donald Sherwin, Esq. Expert Report (attached as Ex. 3 to Mtn. for Recon.).

(Emphasis added throughout). These excerpts show that Plaintiffs' legal experts not only opine as to what the law means (e.g., "illegal"), but what the law requires. Delivering opinions regarding what the law means and what the law requires is exclusively reserved for the judge. *Burkhart*, 112 F.3d at 1213.

Plaintiffs seek to have their legal experts establish a "standard of care" based on their interpretation of the law to change the plain meaning of the law and thus create liability when the law does not. The FDCA does not say it applies to treating physicians. The FDCA does not say that FDA-unapproved devices are prohibited from use in clinical care. The FDCA does not say that IRB oversight is required for the use of FDA-unapproved devices for treatment. All of these elements—needed for Plaintiffs' claim—are stated as "facts" by Plaintiffs experts, but contested by Defendants. Disputed legal issues are determined by the judge. Plaintiffs cannot bypass the Court to have their legal experts opine as to what the law means, then further opine that Defendant "violated" the law as they opine it should be interpreted.

In arguing reconsideration to the Court, Plaintiffs misquote, miscite, and misunderstand *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 582 (D.C. 1996). Contrary to Plaintiffs' assertion that "*McNeil*[] requires the Plaintiffs to call experts to explain whether a statute embodies the standard of care and that its violation cased [sic] the injury to Ms. Kerris," Mtn. for Recon. at 7-8, *McNeil* held that the Court (not paid legal experts) must first decide whether a statute sets forth a standard of care for negligence *per se* purposes: "**<u>we do conclude that the trial court did not adequately examine the statutes and regulations to determine whether</u>**

**they established a standard of care** and, if so, whether they could be understood by the jury without further guidance." *Id.* at 579 (emphasis added).  Only **after the Court determines** that a statute sets forth the applicable standard for care for the issues in the case, **then, the Court decides** what expert testimony should be admitted.  *McNeil*, 686 A.2d at 580-82; *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 578, 591 (1993).

District of Columbia law does not "require" Plaintiffs to designate experts to opine that the FDCA sets out a standard of care, it "requires" that they do not for it is the Court who makes that determination.  Beyond explicitly stating the requirement that the Court first determines whether a proposed statute contains a standard of care applicable to the case, the *McNeil* court went farther and opined that it was doubtful that the proposed statutes here contained a standard of care: "**Our review of the statutes and regulations admitted here** [Plaintiffs' proposed statutes and regulations] **raises questions on whether they can be used to establish a standard of care for negligence *per se* purposes . . . .**" *Id.* at 580 (emphasis added).  Moreover, upon conducting this required view, D.C. Superior Court already found that Plaintiffs' FDCA provisions did **not** contain a standard of care and could **not** provide the basis for a negligence *per se* claim.  *Morton v. George Washington University Hosp.*, Civ. Act. No. 99ca004599, Slip Op. at 9 (D.C. Super. Ct., filed Nov. 30, 2001) (order granting defendants' 12(b)(6) Motion, dismissing plaintiffs' FDCA-based negligence *per se* claims) (attached as Ex. 1 to Defendants' Motion to Dismiss Negligence *Per Se* Claims).

The *McNeil* court admonished that the "decision to adopt from a statute a standard of care to be applied in determining common law negligence is "purely a judicial one, for the court to make." *McNeil*, 686 A.2d at 580 (quotations omitted).  "In fact, a court may decline to apply negligence *per se* to a particular case "if sufficient policy considerations militate against it." *Id.*

7

(quotation omitted). As set forth fully in Defendants' Motion to Dismiss the Negligence *Per Se* Claims, prior rulings under District of Columbia law, 21 U.S.C. § 337 (giving the FDA exclusive jurisdiction to enforce the FDCA), congressional deference, prior federal and state holdings, and preemption, counsel not only against using these FDCA provisions for negligence *per se* claims, but require the denial of Plaintiffs' Motion for Reconsideration where Plaintiffs seek to have experts provide what the law does not.

## CONCLUSION

**WHEREFORE**, for all the reasons set forth herein, the required standard for obtaining reconsideration, the briefing submitted to the Magistrate Court, the June 17, 2008 Orders, and the briefing of Defendants' Motion to Dismiss the Negligence *Per Se* Claims, Defendants respectfully request that Plaintiffs' Motion for Reconsideration be denied.

              Respectfully submitted,

              WILLIAMS & CONNOLLY LLP

Dated: July 11, 2008    By: /s/ Megan E. Hills
              David C. Kiernan (D.C. Bar # 413806)
              Megan E. Hills (D.C. Bar # 437340)
              Zoe C. Scharff (D.C. Bar # 490482)

              725 Twelfth Street, N.W.
              Washington, D.C. 20005
              (202) 434-5000
              (202) 434-5029 (fax)
              dkiernan@wc.com
              mhills@wc.com
              zscharff@wc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Felice P. Iacangelo and Cicily Iacangelo, As Guardian of the Person and Property of KARYN A. KERRIS, <br><br> Plaintiffs, <br><br> v. <br><br> Georgetown University Hospital, GEORGETOWN UNIVERSITY, t/a Georgetown University, and VANCE E. WATSON, M.D., <br><br> Defendants. | Civ. Act. No. 1:05CV02086 (PLF) <br><br> Judge Paul L. Friedman |

## ORDER

Upon consideration of the briefing submitted to the Magistrate Court resulting in Magistrate Judge Kay's June 17, 2008 Orders, the June 17, 2008 Orders themselves, Plaintiffs Felice P. and Cicily Iacangelo's Motion for Reconsideration of Magistrate Judge Kay's June 17, 2008 Orders, striking Plaintiffs' legal experts, Defendants Georgetown University and Vance E. Watson, M.D.'s Opposition thereto, and any Reply, it is

**ORDERED** that Plaintiffs Felice P. and Cicily Iacangelo's Motion for Reconsideration of Magistrate Judge Kay's June 17, 2008 Orders, striking Plaintiffs' legal experts, is and shall be **DENIED**.

This the _____ day of _____, 2008.

_____
Paul L. Friedman, Judge
United States District Court
for the District of Columbia

Copies to:

David C. Kiernan, Esq.
Megan Hills, Esq.
Zoe C. Scharff, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Defendants' Counsel

Anthony Newman, Esq.
Ernest McIntosh, Esq.
Wendy Wyeth, Esq.
Newman, McIntosh & Hennessy
7315 Wisconsin Avenue
Suite 700E
Bethesda, Maryland 20814

Andrew Greenwald, Esq.
Joseph, Greenwald and Laake, P.A.
6404 Ivy Lane
Suite 440
Greenbelt, Maryland 20770

Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via hand-delivery and, pursuant to United States District Court Local Rule for the District of Columbia 5.4(d), and also via electronic filing on the Court's CM/ECF website on the 11th day of July, 2008 on the forgoing:

>Anthony Newman, Esquire
>Ernest McIntosh, Esquire
>Wendy Wyeth, Esquire
>Newman & McIntosh
>7315 Wisconsin Avenue
>Suite 700E
>Bethesda, Maryland 20814
>
>and
>
>Andrew Greenwald, Esquire
>Joseph, Greenwald and Laake, P.A.
>6404 Ivy Lane
>Suite 440
>Greenbelt, Maryland 20770

Plaintiffs' Counsel

_____
Megan E. Hills